**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x
In re:                                                            :    Chapter 11
                                                                  :
IMERYS TALC AMERICA, INC., *et al.*,[1]           :    Case No. 19-_____ (_____)
                                                                  :
                      Debtors.                              :    (Joint Administration Requested)
                                                                  :
---------------------------------------------------------- x

**DEBTORS' MOTION FOR ORDERS UNDER 11 U.S.C. §§ 105(a), 362(d), 363(b), AND
503(b) AUTHORIZING DEBTORS TO (I) PAY THEIR PREPETITION INSURANCE
OBLIGATIONS, (II) PAY THEIR PREPETITION BONDING OBLIGATIONS,
(III) MAINTAIN THEIR POSTPETITION INSURANCE COVERAGE, AND
(IV) MAINTAIN THEIR BONDING PROGRAM**

The debtors and debtors in possession in the above-captioned cases (collectively,

the "**Debtors**") hereby file this motion (the "**Motion**") for entry of interim and final orders,

substantially in the forms attached hereto as Exhibit A and Exhibit B (respectively, the "**Interim**

**Order**" and the "**Final Order**"), under sections 105(a), 362(d), 363(b), and 503(b) of title 11 of

the United States Code (the "**Bankruptcy Code**") authorizing the Debtors to (a) continue to (i)

administer insurance coverage currently in effect, as set forth below, and pay or set off all

amounts on account of prepetition premiums, taxes, charges, fees, and other obligations owed

under or with respect thereto (including any fees and commissions (collectively, the "**Brokers'**

**Fees**") due to certain insurance brokers, AON Risk Services, Siaci Saint Honore, Marsh S.A.,

and Aon Reed Stenhouse (collectively with their affiliates, the "**Brokers**")) (collectively, the

"**Prepetition Insurance Obligations**") and (ii) pay and set off amounts on account of any

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax
identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and
Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell,
Georgia 30076.

obligations owed to issuers of surety bonds on the Debtors' behalf that accrued but remain unpaid as of the Petition Date (as defined below), and any fees and other obligations associated therewith (the "**Prepetition Bonding Obligations**"), to the extent the Debtors determine in their discretion that such payments are necessary or appropriate; (b) in the ordinary course of business, pay all postpetition premiums, administrative fees, deductibles, and other obligations (including the Brokers' Fees) relating to (i) the insurance coverage and related programs, and any other additional, revised, or supplemental insurance policies or programs obtained by the Debtors (the "**Postpetition Insurance Obligations**" and, together with the Prepetition Insurance Obligations, the "**Insurance Obligations**") and (ii) the Debtors' surety bond program (the "**Postpetition Bonding Obligations**" and, together with the Prepetition Bonding Obligations, the "**Bonding Obligations**"), as such payments become due; and (c) revise, extend, supplement, change, terminate and/or replace the Debtors' insurance coverage or purchase new, supplemental, or replacement surety bonds (such bonds, together with the surety bonds outstanding as of the Petition Date, the "**Bonding Program**") as needed in the ordinary course of business.  In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings*, filed with the Court concurrently herewith (the "**Picard Declaration**").  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28

US-DOCS\105945243.1

U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 363(b), 506, 553, 1107, and 1108 of title 11 of the Bankruptcy Code.  Such relief is warranted under Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

2.     On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Picard Declaration and is fully incorporated herein by reference.

3.     The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

4.     Simultaneously with the filing of this Motion, the Debtors have filed a motion with this Court pursuant to Bankruptcy Rule 1015(b) seeking joint administration of the Chapter 11 Cases.

## RELIEF REQUESTED

5.     By this Motion, the Debtors seek entry of the Interim Order and the Final Order substantially in the forms of Exhibit A and Exhibit B, authorizing the Debtors to (a) continue to (i) administer the Insurance Policies (as defined below) and pay their Prepetition Insurance Obligations and (ii) pay their Prepetition Bonding Obligations, to the extent the Debtors determine in their discretion that such payments are necessary or appropriate; (b) in the

ordinary course of business, pay their Postpetition Insurance Obligations and their Postpetition

Bonding Obligations, as such payments become due; and (c) revise, extend, supplement, change,

terminate and/or replace the Debtors' insurance coverage or the Bonding Program as needed in

the ordinary course of business.

6.      The Debtors request authority to pay amounts due on account of Insurance

Obligations and/or Bonding Obligations either (i) directly to the applicable Insurance Carriers (as

defined below), Brokers, or Sureties (as defined below) or (ii) to the Debtors' non-debtor,

indirect parent entity, Imerys USA, Inc. ("**Imerys USA**") and its wholly-owned subsidiary,

Imerys Clays, Inc. ("**Imerys Clays**"), as reimbursement for amounts paid by Imerys USA or

Imerys Clays on behalf of the Debtors in connection with the Insurance Obligations and the

Bonding Obligations.

7.      The Debtors believe that approximately $600,000 may be currently due on

account of Prepetition Insurance Obligations.  Accordingly, the Debtors seek authority under this

Motion to make payments or setoffs on account of Prepetition Insurance Obligations in an

amount not to exceed $600,000 in the aggregate, unless further authorization is obtained from

this Court.

8.      The Debtors do not believe that any amounts are currently due on account

of Prepetition Bonding Obligations  Nevertheless, out of an abundance of caution, the Debtors

seek authority under this Motion to make payments or setoffs on account of Prepetition Bonding

Obligations in an amount not to exceed $100,000 in the aggregate, unless further authorization is

obtained from this Court.

9.      While the Debtors do not believe Court approval is required to maintain

their existing Insurance Policies and Bonding Program or to amend, extend, or renew the

Insurance Policies or the Bonding Program in the ordinary course of business, or to terminate and subsequently initiate new Insurance Policies or Bonding Programs, out of an abundance of caution, the Debtors request entry of the Interim Order and the Final Order authorizing them to take such actions and to pay their Insurance Obligations and their Bonding Obligations where necessary to maintain their Insurance Policies and Bonding Program.

10.    Finally, the Debtors request that the Court authorize and direct the Debtors' banks and financial institutions to receive, process, honor, pay, and, if necessary, reissue all prepetition and postpetition checks, including prepetition checks that the Debtors reissue postpetition, and fund transfers on account of the Insurance Obligations or the Bonding Obligations and authorize the Debtors' banks and financial institutions to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid in respect of the Insurance Obligations or the Bonding Obligations, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

## BASIS FOR RELIEF

### A.    The Debtors' Insurance Obligations

11.    In the ordinary course of the Debtors' businesses, the Debtors maintain certain insurance policies that are administered by multiple third-party insurance carriers (the "**Insurance Carriers**"), which provide coverage for, among other things, commercial and general liability, umbrella liability, automobile, ERISA bond, fiduciary liability, property, employment practices liability, crime, directors' and officers' liability, and cargo (collectively, the "**Insurance Policies**").  A detailed list of the Insurance Policies under which the Debtors are currently covered is attached hereto as Exhibit C.  The Insurance Policies are essential to the preservation of the Debtors' businesses, property, and assets, and, in some cases, such coverage

5

is required by various federal and state laws and regulations, as well as the terms of the Debtors'
various commercial contracts.  The Insurance Policies provide coverage that is typical in scope
and amount for businesses within the Debtors' industry.

12.    The Insurance Policies can be broken down into three categories: Imerys
Global, U.S. Group, and Debtor Standalone.  The owner and named insured of each category of
Insurance Policies is set forth in Exhibit C.

13.    The manner in which the Debtors pay premiums, Brokers' Fees, and other
costs associated with the Insurance Policies depends on the Insurance Policy.  With respect to
some Insurance Policies, the Debtors pay the applicable Insurance Carrier or Broker, who in turn
pays the applicable Insurance Carrier, on account of the Debtors' Insurance Obligations.  With
respect to other Insurance Policies, Imerys Talc America, Inc. ("**ITA**") pays the applicable
Insurance Carrier or Broker, who in turn pays the applicable Insurance Carrier, on account of the
collective Insurance Obligations of itself, Imerys Talc Vermont, Inc. ("**ITV**"), and, with respect
to certain Insurance Policies, Imerys Talc Canada Inc. ("**ITC**").  With respect to yet other
Insurance Policies, Imerys USA pays the applicable Insurance Carrier or Broker, who in turn
pays the applicable Insurance Carrier, on account of the collective Insurance Obligations of ITA,
ITV and certain of their non-debtor affiliates.  In such latter instances, Imerys USA then
allocates the appropriate portion of the Insurance Obligations to the Debtors, who then reimburse
Imerys USA (either directly or indirectly through Imerys Clays)[2] in the ordinary course of

---

[2]    As described in the Cash Management Motion (as defined below), certain shared services
provided through the North American Imerys Group are administered by the USA Shared Service Center
(the "**SSC**"), a unit of non-debtor affiliate, Imerys USA.  In some instances, as discussed herein, the SSC
includes Imerys Clays as an intermediary with respect to reimbursements from the Debtors to Imerys
USA.  References in this Motion to the Debtors' reimbursement of Imerys USA are meant to include both
instances in which Imerys USA is reimbursed directly by the Debtors as well as instances in which the
Debtors reimburse Imerys USA indirectly through Imerys Clays.

business.  As described in the Cash Management Motion,[3] ITA historically reimbursed Imerys USA for payments made on account of ITA and ITV by setting off those amounts against intercompany loan amounts owed by Imerys USA to ITA.  Such intercompany transactions were then recorded in ITA's and Imerys USA's books and records.  Following the Petition Date, however, ITA intends to pay amounts owed to Imerys USA on account of Insurance Obligations directly via wire or ACH rather than by setting off such amounts against intercompany loans.  Nevertheless, out of an abundance of caution, ITA retains the option to apply such setoffs.

14.    To account for Insurance Obligations paid by ITA on behalf of ITV and ITC, ITA records ITV's and ITC's portion of the payment as an intercompany receivable on ITA's books and ITV and ITC record such amounts as an intercompany payable on their books.  Following the Petition Date, ITV, ITA and ITC intend to continue this practice.

15.    For the avoidance of doubt, by this Motion, the Debtors seek authority to make payments directly to the Insurance Carriers or Brokers on account of the Insurance Obligations and make payments to, or set off against amounts owed from, Imerys USA, Imerys Clays or the other Debtors, on account of the Insurance Obligations.

16.    The Debtors' Insurance Policy payments are summarized in further detail below:

---

[3]    The "**Cash Management Motion**" means the *Debtors' Motion for Orders Under 11 U.S.C. §§ 105(a), 345, 363, 503(b), and 507(a), Fed. R. Bankr. P. 6003 and 6004, and Del Bankr. L.R. 2015-2 (I) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, Business Formers, (II) Authorizing Continuation of Existing Deposit Practices, (III) Approving Continuation of Intercompany Transactions with the Non-Debtor Affiliates, and (IV) Granting Superpriority Status to Postpetition Intercompany Claims,* filed concurrently herewith.

US-DOCS\105945243.1

| Debtor Included as a Named Insured | Policy Owner | Program Type | Payee | Insurance Policy | Payment Detail |
|---|---|---|---|---|---|
| ITA ITV | Imerys SA | Imerys Global | Imerys USA | Master GCL, EPL, crime, D&O | Paid by Imerys USA, which is reimbursed by ITA on account of ITA and ITV |
| ITC | Imerys Graphite & Carbon Canada, Inc. | Imerys Global | ITC | Commercial general liability | Paid directly by ITC |
| ITA ITV | Imerys USA | U.S. Group | Imerys USA | Commercial general liability, umbrella liability, ERISA bond, fiduciary liability and excess fiduciary liability | Paid by Imerys USA, which is reimbursed by ITA on account of ITA and ITV |
| ITA ITV ITC | ITA | Debtor Standalone | ITA | Cargo, property | Paid by ITA, on behalf of itself, ITV and ITC |
| ITA ITV | ITA | Debtor Standalone | ITA | Automobile | Paid by ITA, on behalf of itself and ITV |
| ITC | ITC | Debtor Standalone | ITC | Automobile | Paid directly by ITC |

17.    The manner in which accrued premium amounts are paid is summarized

below:

| Program Type | Debtor(s) Included as a Named Insured | Policy Number | Policy Type | Approximate Annual Premium Allocated to Debtors (USD) | Owed to |
|---|---|---|---|---|---|
| Imerys Global | ITA / ITV | FRL00162315 | Master GCL | $50,000 | Imerys USA |
| Imerys Global | ITC | CAL000456170 | Commercial General Liability | $20,000 | Aon Reed Stenhouse[4] |
| U.S. Group | ITA / ITV | CGL 2011179 | Commercial General Liability | $70,000 | Imerys USA |
| U.S. Group | ITA / ITV | ULA 20111180 | Umbrella Liability | $75,000 | Imerys USA |
| U.S. Group | ITA / ITV | 8208-4128 | ERISA Bond (includes UCM) | $5,000 | Imerys USA |
| U.S. Group | ITA / ITV | G25078263 006 MPL 5543234-05 | Fiduciary Liability / Excess Fiduciary Liability | $10,000 | Imerys USA |
| Debtor Standalone | ITA / ITV / ITC | M20964 | Cargo | $20,000 | Aon Risk Services |
| Debtor Standalone | ITA / ITV / ITC | ARL30000951100 | Property | $275,000 | Aon Risk Services |
| Debtor Standalone | ITA / ITV | 1000635928191 | Automobile | $50,000 | Aon Risk Services |
| Debtor Standalone | ITC | 1000199546191 | Automobile | $25,000 | Aon Risk Services |

18.     In addition to the above listed Insurance Policies, and as further described in the Picard Declaration, the Debtors have access to, and rights under, various historical liability policies and indemnification agreements (collectively, the "**Historical Policies**") with insurers,

---

[4]     AON Reed Stenhouse as Broker pays the Insurance Carriers directly on account of the Debtors' applicable Insurance Obligations.

US-DOCS\105945243.1

indemnitors, and other third parties (collectively, the "**Historical Policy Counterparties**") that cover, among other things, certain talc-related personal injury liabilities and related litigation costs (including defense costs).[5]  The payment of defense costs by certain of the Historical Policy Counterparties (specifically, The American Insurance Company, Truck Insurance Exchange, National Union Fire Insurance Company of Pittsburgh, PA, Zurich American Insurance Company, Zurich Insurance Company, and XL Insurance America, Inc.) does not erode the underlying coverage available to the Debtors under the Historical Policies.  The Debtors do not believe Court approval is required to maintain such Historical Policies, as no current or future payments are expected to be made by the Debtors with respect thereto.  Nevertheless, out of an abundance of caution and in the interest of disclosure, the Debtors submit that they will continue to maintain such Historical Policies and exercise their rights thereunder in the ordinary course of business.[6]

19.     Maintenance of insurance coverage under the various Insurance Policies on an uninterrupted basis is essential to the continued operation of the Debtors' businesses and is required under the United States Trustee's Operating Guidelines for Chapter 11 Cases (the "**Operating Guidelines**"), the federal laws and regulations applicable to the Debtors' businesses, the laws of the various states in which the Debtors operate, and the Debtors' various contractual commitments.  Thus, the Debtors submit that they should be authorized to continue to pay

---

[5]     As described in further detail in the Picard Declaration, certain of the Debtors have the right to seek proceeds from Historical Policies that provide coverage for liabilities arising out of the talc business of Cyprus Mines Corporation, a former owner of ITV.

[6]     The Debtors reserve the right to seek additional relief from the Court with respect to these historical policies and any rights or obligations thereunder.

US-DOCS\105945243.1

premiums, taxes, charges, fees, and other obligations owed under or with respect to the Insurance Policies as such obligations come due in the ordinary course of the Debtors' businesses.

20.    The Debtors request authorization to pay any Prepetition Insurance Obligations to the Insurance Carriers and Brokers and to pay to, or set off amounts owed by, Imerys USA, Imerys Clays or the other Debtors, to the extent that the Debtors determine, in their sole discretion, that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment to the coverage, benefits, or proceeds provided under the Insurance Policies, and to maintain good relationships with the various Insurance Carriers and the Brokers.  The Debtors' maintenance of their relationships with the Insurance Carriers and the Brokers is critical to ensuring the continued availability of insurance coverage and reasonable pricing of such coverage for future policy periods.  The Debtors additionally request, out of an abundance of caution, authority to renew or replace the Insurance Policies as necessary in the ordinary course.

21.    The Debtors will need to continue their insurance coverage throughout the duration of the Chapter 11 Cases.  The Debtors respectfully submit that the maintenance of their existing Insurance Policies falls squarely within their ordinary course of business and have only sought relief within this Motion out of an abundance of caution.  To reduce both the administrative burden on the Chapter 11 Cases and the expense of operating as debtors in possession, the Debtors request authorization to maintain, amend, extend, terminate, renew, and/or replace the Insurance Policies, as necessary, in the ordinary course of business.

22.    The total amount paid in annual premiums and payments associated with all of the Insurance Policies is approximately $515,000, approximately $320,000 of which is paid by the Debtors directly to the Insurance Carriers or Brokers and approximately $195,000 of

which is paid by Imerys USA to the Insurance Carriers or Brokers on behalf of the Debtors. The Debtors' Insurance Policies renew at various times throughout each year. The Debtors pay all of the annual premiums due for each of the policies at the beginning of each particular policy period. The Debtors believe that approximately $600,000 may be currently due on account of Prepetition Insurance Obligations, of which approximately $25,000 may be due in connection with Broker's Fees. The Debtors believe that it is in the best interests of their creditors and estates to continue their business relationship with the Insurance Carriers and the Brokers. Accordingly, the Debtors seek authority under this Motion to make payments or setoffs on account of Prepetition Insurance Obligations, in their sole discretion, in an amount not to exceed $600,000 in the aggregate.

**B.      The Debtors' Bonding Program**

23.      In the ordinary course of business, the Debtors are required by certain applicable statutes, rules, and regulations to participate in the Bonding Program, pursuant to which Imerys USA issues surety bonds to certain third parties to secure the Debtors' payment or performance of certain obligations, often to governmental units or other public agencies. The Bonding Program generally covers reclamation, performance, license/permit, customs and border protection and appeal obligations (collectively, the "**Covered Obligations**"). A detailed list of the surety bonds that are currently maintained for the benefit of the Debtors is attached hereto as Exhibit D.[7] The Bonding Program provides coverage that is typical in scope and amount for businesses within the Debtors' industry.

---

[7]      The Debtors request authority to honor obligations and renew all surety bonds, as applicable, notwithstanding any failure of the Debtors to include a particular surety bond on Exhibit D.

24.     The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment of their obligations covered by the surety bond from the beneficiary of the surety to the surety.  If the Debtors fail to pay Covered Obligations, the applicable surety will pay the Debtors' obligations, up to a specified amount.  Unlike an insurance policy, if a surety incurs a loss on a surety bond, the surety is entitled to recover the full amount of that loss from the Debtors.

25.     The success of the Debtors' efforts to operate effectively and efficiently will depend on the maintenance of the Bonding Program on an uninterrupted basis.  No feasible alternative to maintaining the Bonding Program exists.

26.     The Debtors' outstanding surety bonds were issued by Westchester Fire Insurance Company and International Sureties, Ltd. as sureties (together, the "**Sureties**").  As of the Petition Date, (a) four of the outstanding surety bonds were reclamation bonds, with a total approximate bond amount of $8,215,000, (b) two of the outstanding surety bonds were performance bonds, with a total approximate bond amount of $2,960,000, (c) two of the outstanding surety bonds were license/permit bonds, with a total approximate bond amount of $510,000, (d) one of the outstanding surety bonds was a customs and border protection bond in the amount of $50,000, and (e) one of the outstanding surety bonds was a litigation appeal bond in the amount of $39,200,000, for a total bond amount of approximately $50,935,000.

27.     The Debtors' Surety and Bonding Program payments are summarized in further detail below:

US-DOCS\105945243.1

| Nature of Bond | Principal | Surety | Approximate Bond Amount ($) | Maturity Date |
|---|---|---|---|---|
| Reclamation Bond | ITA | Westchester Fire Insurance Company | 7,800,000 | 8/1/2019 |
| Reclamation Bond | ITA | Westchester Fire Insurance Company | 210,000 | 8/1/2019 |
| Reclamation Bond | ITA | Westchester Fire Insurance Company | 120,000 | 8/1/2019 |
| Reclamation Bond | ITV | Westchester Fire Insurance Company | 85,000 | 8/1/2019 |
| Performance Bond | ITC | Westchester Fire Insurance Company | 2,500,000 | 8/1/2019 |
| Performance Bond | ITC | Westchester Fire Insurance Company | 460,000 | 8/1/2019 |
| License / Permit Bond | ITA | Westchester Fire Insurance Company | 500,000 | 8/1/2019 |
| License / Permit Bond | ITA | Westchester Fire Insurance Company | 10,000 | 8/1/2019 |
| Customs Bond | ITA | Westchester Fire Insurance Company | 50,000 | 8/24/2019 |
| Appeal Bond | ITA | International Sureties, Ltd. | 39,200,000 | 5/22/2019 |

28.     ITC pays the applicable Surety directly on account of all of its Bonding Obligations.  ITA pays the applicable Surety directly on account of the appeal bond.  With respect to the other bonds, Imerys USA pays the Bonding Obligations on behalf of Debtors ITA and ITV and certain of their non-debtor affiliates.  Imerys USA then allocates the appropriate portion of the Bonding Obligations to the Debtors, who then reimburse Imerys USA (either directly or indirectly through Imerys Clays).  As discussed above, ITA historically reimbursed Imerys USA for payments made on account of ITA and ITV by setting off those amounts against intercompany loan amounts owed by Imerys USA to ITA.  Such intercompany transactions were then recorded in ITA's and Imerys USA's books and records.  Following the Petition Date, however, ITA intends to pay any amounts owed to Imerys USA on account of the Bonding Obligations directly via wire or ACH rather than by setting off such amounts against intercompany loans.  Nevertheless, out of an abundance of caution, ITA retains the option to apply such setoffs.

14

29.    To account for Bonding Obligations paid by ITA on behalf of ITV, ITA records ITV's portion of the payment as an intercompany receivable on ITA's books and ITV records such amount as an intercompany payable on its books.  Following the Petition Date, ITV and ITA intend to continue this practice.

30.    The premiums for the surety bonds are generally determined on an annual basis and are paid when the bonds are issued and annually upon renewal.  The total amount paid in annual premiums and payments associated with all of the surety bonds is approximately $500,000.  As of the Petition Date, the Debtors estimate that all premium payments due and owing under the Bonding Program have been paid in full and the Debtors are not aware of any pending requests for payment by the Sureties.  However, in the event that a request for payment of amounts attributable to the period prior to the Petition Date is outstanding or is received by the Debtors in accordance with the surety bonds, the Debtors request authority to pay such prepetition amounts to the Sureties or, to the extent Imerys USA pays the Sureties on account of such prepetition amounts, to reimburse Imerys USA, Imerys Clays, and the other Debtors through payment to, or set off against amounts of owed from, Imerys USA, Imerys Clays, or the other Debtors, as applicable.

31.    To continue their business operations, the Debtors must be able to provide financial assurances to federal and state governments, regulatory agencies, and other third parties.  This, in turn, requires the Debtors to maintain access to the existing Bonding Program maintained by Imerys USA, including by paying the Bonding Obligations as they come due, as well as renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of their businesses, requesting releases from obsolete bonding obligations, and executing other agreements in connection with the Bonding Program.

32.     The Debtors, therefore, request that they be authorized to participate in the Bonding Program in the same manner as they did prepetition and to: (a) pay any Prepetition Bonding Obligations directly to the Sureties or to pay to, or set off against amounts owed by, Imerys USA, Imerys Clays, or the other Debtors on account of any Prepetition Bonding Obligations in an amount not to exceed $100,000 in the aggregate, unless further authorization is obtained from this Court; (b) continue to make all payments for Postpetition Bonding Obligations, either directly to the Sureties or through payment to, or set off against, amounts owed by Imerys USA, Imerys Clays, or the other Debtors; and (c) revise, extend, supplement, or change the Bonding Program as needed, including through the issuance of new surety bonds.

## APPLICABLE AUTHORITY

**A.      Payment of the Insurance Obligations and Renewal of the Insurance Policies is Necessary to Comply with United States Trustee Requirements**

33.     Maintenance of insurance coverage under the various Insurance Policies is essential to the continued operation of the Debtors' businesses and is required under the Operating Guidelines, the federal laws and regulations applicable to the Debtors' business, the laws of the various states in which the Debtors operate, and the Debtors' various contractual commitments. *See* Operating Guidelines Sec. 6 (requiring maintenance of appropriate insurance coverage).

34.     The Debtors believe that the ordinary course maintenance of their necessary insurance coverage, including paying all Insurance Obligations, satisfying all postpetition commitments to the Insurance Carriers, renewing the Insurance Policies, or entering into new insurance arrangements, without further order of the Court, is necessary and essential to the Debtors' achievement of their chapter 11 objectives, especially where, as here, the Debtors'

16

failure to take all actions necessary to honor their obligations to and preserve their relationships with the Insurance Carriers could have disastrous consequences for the Debtors' estates.

35.     The employment of the Brokers is necessary for the ordinary course maintenance of the Insurance Policies in the most efficient, cost-effective manner (and has the additional benefit of positioning the Debtors to obtain the most competitive rates and high quality service from the Brokers in connection with any renewals of the Insurance Policies). Accordingly, the Debtors believe that they should be authorized to continue to pay, as they come due, any amounts accrued on account of Brokers' Fees or other amounts owed to the Brokers.

**B.      Section 363 of the Bankruptcy Code Supports Payment of the Insurance Obligations and the Bonding Obligations**

36.     To the extent that payment of any of the Insurance Obligations and the Bonding Obligations sought to be paid under this Motion would be deemed to constitute a use of property outside the ordinary course of business, a basis for authorizing payment of the amounts associated with such obligations is found under section 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under this section, a court may authorize a debtor to pay certain prepetition claims so long as a sound business purpose exists for the transaction.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b) [of the bankruptcy code], courts consider a variety of factors, which essentially represent a 'business judgment test.'" *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).  Once the debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-*

*Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

37.      The Debtors have routinely paid premiums, taxes, charges, fees, and other obligations in connection with their Insurance Policies and the Bonding Program, and, thus, view the payments of such obligations as ordinary course payments.  To the extent the Court (or any party in interest) believes that this Court's express authorization under section 363(b) of the Bankruptcy Code is necessary to honor the Insurance Obligations or Bonding Obligations, however, the Debtors' assert that sound business judgment supports the relief requested herein because the failure to pay such obligations could result in the cancellation of Insurance Policies or its surety bonds, the Debtors' inability to obtain renewal of the Insurance Policies or its surety bonds on terms that are as competitive, and the violation of the Operating Guidelines, the various applicable federal and state laws and regulations, various contractual commitments, and the fiduciary duties of the debtors in possession.  Each of these outcomes would be detrimental to the Debtors, their creditors, and their estates.  Accordingly, the Debtors submit that they have satisfied the requisite standard applied to requests under section 363(b) of the Bankruptcy Code and, to the extent necessary, this Court should authorize the payment of all Insurance Obligations and the Bonding Obligations on such basis.

**C.      Section 105 of the Bankruptcy Code and the Doctrine of Necessity Support Payment of the Insurance Obligations and the Bonding Obligations**

38.      The proposed payments of the Insurance Obligations and the Bonding Obligations should be authorized pursuant to section 105 of the Bankruptcy Code and under the

"doctrine of necessity."  Section 105 of the Bankruptcy Code authorizes this Court "to issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105.  The doctrine of necessity is a well-settled doctrine in this jurisdiction that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment);[8] *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E. D. Va. 1992) ("[T]he court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a prepetition unsecured creditor, a debtor must show the payment is necessary to avert a serious threat to the Chapter 11 process.").

39.    For the reasons stated herein, and in light of the risks applicable to the Debtors' operations and the critical need for the Debtors to protect their assets and recoverable value from such risks through, among other things, maintenance of legally-mandated insurance coverage, good relationships with the Insurance Carriers and the Brokers, as well as maintenance of the Bonding Program, payment of the Insurance Obligations and the Bonding Obligations is

---

[8]    The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Loqansport, C. & Sw. Ry. Co.*, 106 U.S. 286 (1882)[, in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309-14.] The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger*.  *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

proper and in accordance with section 105 of the Bankruptcy Code.  Payment of the Insurance

Obligations and the Bonding Obligations is necessary to the Debtors' achievement of their

chapter 11 objectives.

**D.      Certain of the Insurance and Bonding Obligations Are Entitled to Payment Prior to Prepetition, Non-Priority Unsecured Claims**

40.      As discussed above and in the Cash Management Motion, Imerys USA

makes payments on behalf of the Debtors on account of certain of the Insurance and Bonding

Obligations.  Imerys USA then allocates the appropriate portion of the amounts paid on account

of the Insurance and Bonding Obligations to the Debtors and ITA reimburses Imerys USA

(either directly or indirectly through Imerys Clays) for payments made on account of ITA, ITV,

and, with respect to some Insurance Policies, ITC, either via wire or ACH or by setting off those

amounts against intercompany loan amounts owed by Imerys USA to ITA.  To account for

Insurance and Bonding Obligations paid by ITA on behalf of ITV and ITC, ITA records ITV's

and ITC's portions of the payment as an intercompany receivable on ITA's books and ITV and

ITC record such amounts as an intercompany payable on their books.

41.      Imerys USA's right to set off amounts owed to them by the Debtors, and

the Debtors' rights to set off amounts owed to each other, in each case on account of the

Insurance and Bonding Obligations, are expressly preserved under section 553(a) of the

Bankruptcy Code, which provides, in pertinent part, that the Bankruptcy Code "does not affect

any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose

before the commencement of the case . . . against a claim of such creditor that arose before the

commencement of the case."  11 U.S.C. § 553(a).  Moreover, any claims by Imerys USA or the

Debtors for amounts that are subject to setoff are secured under section 506(a) of the Bankruptcy

Code, which provides, in pertinent part, that "[a]n allowed claim of a creditor . . . that is subject

20

to setoff under Section 553 of this title, is a secured claim . . . to the extent of the amount subject to setoff." 11 U.S.C. § 506(a)(1). Thus, because the Insurance and Bonding Obligations owed to Imerys USA and the Debtors constitute secured claims under section 506(a) of the Bankruptcy Code, the Debtors' payment of the Insurance and Bonding Obligations now, in all likelihood, will affect only the timing of the payments and not the amounts to be paid. Other creditors and parties in interest will not be prejudiced if the relief sought herein is granted by this Court.

**E.** **Section 363 of the Bankruptcy Code Supports the Debtors' Request to Maintain Postpetition Insurance Coverage and the Bonding Program, and Enter into New Coverage as Needed**

42.      The Debtors submit that section 363(c) of the Bankruptcy Code provides statutory authority for the Debtors' request for authorization to satisfy all of the Debtors' postpetition commitments with respect to the Insurance Carriers and the Sureties, renew the Insurance Policies and surety bonds, or enter into new insurance policies and surety bonds in the Debtors' reasonable and sole discretion. In pertinent part, section 363(c)(1) of the Bankruptcy Code provides that ". . . unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The maintenance of the Insurance Policies and the Bonding Program, and honoring of postpetition obligations arising thereunder, including undertaking renewals of the Insurance Policies and surety bonds as they expire or entering into new insurance arrangements or surety contracts, are each the type of ordinary course transactions contemplated by the foregoing provision. To the extent, however, that this Court believes that any such actions are not properly characterized as transactions in the ordinary course of the Debtors' business, the Debtors respectfully request that this Court authorize the Debtors to take

21

such actions pursuant to section 363(b) of the Bankruptcy Code as a reasonable exercise of their business judgment.

**F.      Precedent Cases Support the Granting of the Requested Relief**

43.      Relief similar to the relief requested herein has been granted in this district in numerous chapter 11 cases.  *See, e.g., In re J & M Sales Inc.*, Case No. 18-11801 (LLS); (Bankr. D. Del. Aug. 27, 2018); *In re Samuels Jewelers, Inc.*, Case No. 18-11818(KJC) (Aug. 8, 2018); *In re Enduro Resource Partners LLC*, Case No. 18-11174 (KG) (Bankr. D. Del. Jun. 8, 2018); *In re Claire's Stores, Inc.*, Case No. 18-10584 (MFW) (Bankr. D. Del. Apr. 17, 2018); *In re TK Holdings, Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Aug. 9, 2017); *In re Paragon Offshore plc, et al.*, No. 16-10386 (CSS) (Bankr. D. Del. March 9, 2016); *In re Swift Energy Co., et al.*, No. 15-12670 (MFW) (Bankr. D. Del. Jan. 5, 2016).

Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should be Waived

44.      The request for authorization to pay the Insurance Obligations and the Bonding Obligations is subject to Bankruptcy Rule 6003, which provides for authorization to be obtained within twenty-one days after the Petition Date if necessary to avoid immediate and irreparable harm.  The Debtors submit that standard is satisfied here.  The Debtors believe that if any Insurance Obligations or Bonding Obligations that come due are not authorized for payment as soon as possible and on an expedited basis, the Insurance Carriers or the Sureties may seek to terminate the Debtors' Insurance Policies or surety bonds.  Specifically, the effect of potential cancellation of the Insurance Policies or the surety bonds – or even litigation regarding the same – would be devastating to the Debtors' estates, particularly at these early stages of the Chapter 11 Cases.  Moreover, cancellation of the Insurance Policies or the surety bonds could render the Debtors in violation of the Operating Guidelines, the federal laws and regulations applicable to

22

the Debtors' businesses, the laws of the various states in which the Debtors operate, and the Debtors' various contractual commitments.   Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003.

45.     The Debtors also request a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors request in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## CONSENT TO JURISDICTION

46.     Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final judgment or order absent consent of the parties.

## NOTICE

47.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) the firms listed on the Debtors' consolidated list of the top thirty law firms with the most significant representations of parties asserting talc claims against the Debtors; (e) the creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims (excluding talc claims); (f) counsel to the prepetition representative for future talc claimants; (g) the Brokers; (h) the Insurance Carriers; (i) the Sureties; (j) any party

that has requested notice pursuant to Bankruptcy Rule 2002; and (k) all parties entitled to notice pursuant to Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

48.     A copy of this Motion is available on (a) the Court's website: www.deb.uscourts.gov, and (b) the website maintained by the Debtors' proposed Claims and Noticing Agent, Prime Clerk LLC, at https://cases.primeclerk.com/imerystalc.

**NO PRIOR REQUEST**

49.     No previous request for the relief sought herein has been made to this Court or any other court.

24

**WHEREFORE**, the Debtors respectfully request that the Court enter orders, substantially in the form attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: February 13, 2019  
      Wilmington, Delaware

*/s/ Mark D. Collins*  

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)  
Michael J. Merchant (No. 3854)  
Amanda R. Steele (No. 5530)  
One Rodney Square  
920 North King Street  
Wilmington, DE  19801  
Telephone:  (302) 651-7700  
Facsimile:  (302) 651-7701  
E-mail:  collins@rlf.com  
        merchant@rlf.com  
        steele@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (*pro hac vice* admission pending)  
Helena G. Tseregounis (*pro hac vice* admission pending)  
355 South Grand Avenue, Suite 100  
Los Angeles, California 90071-1560  
Telephone:  (213) 485-1234  
Facsimile:  (213) 891-8763  
E-mail:  jeff.bjork@lw.com  
        helena.tseregounis@lw.com

- and -

Richard A. Levy (*pro hac vice* admission pending)  
330 North Wabash Avenue, Suite 2800  
Chicago, Illinois 60611  
Telephone:  (312) 876-7700  
Facsimile:  (312) 993-9767  
E-mail:  richard.levy@lw.com

US-DOCS\105945243.1

- and -

George A. Davis (*pro hac vice* admission pending)
Keith A. Simon (*pro hac vice* admission pending)
Annemarie V. Reilly (*pro hac vice* admission pending)
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
E-mail:  george.davis@lw.com
        keith.simon@lw.com
        annemarie.reilly@lw.com


*Proposed Counsel for Debtors and Debtors-in-Possession*

US-DOCS\105945243.1

# **EXHIBIT A**

Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------- x
In re:                                      :   Chapter 11
                                            :
IMERYS TALC AMERICA, INC., et al.,[9]       :   Case No. 19_-_____ (_____)
                                            :
        Debtors.                            :   (Joint Administration Pending)
                                            :
-------------------------------------------------------- x
```

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 362(d), 363(b), AND 503(b),**
**AUTHORIZING DEBTORS TO (I) PAY THEIR PREPETITION INSURANCE**
**OBLIGATIONS, (II) PAY THEIR PREPETITION BONDING OBLIGATIONS, (III)**
**MAINTAIN THEIR POSTPETITION INSURANCE COVERAGE, AND**
**(IV) MAINTAIN THEIR BONDING PROGRAM**

Upon the motion (the "**Motion**")[10] of the Debtors for an Interim Order, authorizing the Debtors to (a) continue to (i) administer the Insurance Policies and pay and set off the Prepetition Insurance Obligations and (ii) pay and set off the Prepetition Bonding Obligations, to the extent the Debtors determine in their discretion that such payments are necessary or appropriate; (b) in the ordinary course of business, pay all postpetition premiums, administrative fees, deductibles, and other obligations relating to the (i) Postpetition Insurance Obligations or (ii) the Postpetition Bonding Obligations, as such payments become due; and (c) revise, extend, supplement, change, terminate, and/or replace the Debtors' insurance coverage or the Bonding Program as needed in the ordinary course of business; and the Court having reviewed the Motion and the Picard Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and

---

[9]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[10]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Interim Order and notice of the Final Hearing (as defined below); and upon the record herein; and after due deliberation thereon;  and the Court having determined that there is good and sufficient cause for the relief granted in this Interim  Order, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to continue their Insurance Policies and Bonding Program.

3.      The Debtors are authorized, but not directed, to (i) pay to the Insurance Carriers, Brokers, and the Sureties and (ii) pay to, or set off against amounts owed by, Imerys USA, Imerys Clays, or the other Debtors, any amounts owed on account of the Insurance Obligations and Bonding Obligations, whether incurred prepetition or postpetition; *provided that* payments and setoffs on account of prepetition Insurance and Bonding Obligations shall not exceed $700,000 in the aggregate pursuant to this Interim Order without further order of this Court.

4.      Notwithstanding the foregoing, nothing in this Interim Order authorizes the Debtors to reimburse Imerys USA, Imerys Clays, or the other Debtors for amounts paid by

2

such entities on behalf of the Debtors prior to the Petition Date.  The rights of Imerys USA, Imerys Clays and the other Debtors to set off any amounts owed by the Debtors are hereby preserved.

5.     The Debtors are authorized, but not directed, to revise, extend, supplement, change, terminate, and/or replace insurance coverage and their Bonding Program as needed and to enter into new insurance policies and surety bonds through renewal or purchase of new insurance policies and surety bonds, in each case without further notice to, hearing before, or order from this Court.

6.     The Debtors are authorized to pay any prepetition or postpetition fees, costs, and commissions of the Brokers in connection with the Insurance Policies in the ordinary course of business.

7.     The Debtors' banks and financial institutions shall be, and hereby are, authorized, when requested by the Debtors in their sole discretion, to process, honor, pay, and, if necessary, reissue any and all checks, including prepetition checks that the Debtors reissue postpetition, and electronic fund transfers drawn on the Debtors' bank accounts relating to the Insurance Obligations and the Bonding Obligations, whether such checks were presented or funds transfer requests were submitted prior to or subsequent to the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

8.     The Debtors' banks and financial institutions may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Interim Order.

3

9.     The Debtors are hereby authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests with respect to Prepetition Insurance Obligations and Prepetition Bonding Obligations dishonored or denied as a consequence of the commencement of the Chapter 11 Cases, and to reimburse any expenses that holders of claims in connection with the Prepetition Insurance Obligations and Prepetition Bonding Obligations may incur as a result of any bank's failure to honor a prepetition check.

10.     Nothing in this Interim Order or the Chapter 11 Cases alters, limits, or impairs the Historical Policies or the respective rights, benefits, and obligations of the Debtors or the Historical Policy Counterparties thereunder, and the Historical Policies shall remain in full force and effect, in each case except as may be otherwise provided by further order of the Court. For the avoidance of doubt, all obligations of the Historical Policy Counterparties, including the obligation for The American Insurance Company, Truck Insurance Exchange, National Union Fire Insurance Company of Pittsburgh, PA, Zurich American Insurance Company, Zurich Insurance Company, and XL Insurance America, Inc. to pay the Debtors' defense costs to the Debtors, their defense counsel, experts, their affiliates, and/or any third parties (including the Debtors' and their affiliates' other professionals), shall continue in full force and effect (in each case except as may be otherwise provided by further order of the Court) and nothing in this Interim Order or the Chapter 11 Cases shall be construed as a waiver of any of the rights of the Debtors, their affiliates, and/or any third parties (including the Debtors' and their affiliates' professionals) under or in connection with the Historical Policies.  Notwithstanding the foregoing sentence, the Historical Policy Counterparties shall not pay or reimburse any

4

postpetition separate, non-Debtor defense or indemnification costs to, or on behalf of, Cyprus Mines Corporation or its affiliates, except as provided by further order of the Court.

11.     The American Insurance Company, Truck Insurance Exchange, National Union Fire Insurance Company of Pittsburgh, PA, Zurich American Insurance Company, Zurich Insurance Company, and XL Insurance America, Inc., shall be, and hereby are, authorized to promptly pay and otherwise honor their obligation to pay defense costs for the Debtors as set forth in their Historical Policies.

12.     Notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Interim Order shall create any rights in favor of, or enhance the status of any claim held by, any person to whom any of the Insurance Obligations or Bonding Obligations may be owed.

13.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Interim Order, shall be deemed an assumption of any executory contract, or otherwise shall constitute a waiver of the Debtors' rights under section 365 of the Bankruptcy Code or an admission by the Debtors that any of the Insurance Policies or the Bonding Program, or any related agreements or contracts constitutes an executory contract within the meaning of section 365 of the Bankruptcy Code.

14.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Interim Order, shall be deemed an admission as to the validity of any underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

15.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

US-DOCS\105945243.1

16.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

17.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

18.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Interim Order.

19.     The final hearing (the "**Final Hearing**") on the Motion shall be held on [_____, 2019, at____:_____ _.m], prevailing Eastern Time.   On or before [__:__ _.m.], prevailing Eastern Time, on [_____, 2019], any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served on: (a) Imerys Talc America, Inc., 100 Mansell Court East, Suite 300, Roswell, Georgia 30076 (Attn: Ryan J. Van Meter, Esq. (email: ryan.vanmeter@imerys.com)); (b) Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, California 90071-1560 (Attn: Jeffrey E. Bjork, Esq. and Helena G. Tseregounis, Esq. emails: jeff.bjork@lw.com and helena.tseregounis@lw.com)); (c) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. (email: collins@rlf.com)); (d) counsel to the prepetition representative for future talc claimants, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edwin Harron, Esq. and Robert Brady, Esq. (emails: eharron@ycst.com and rbrady@ycst.com)); (e) counsel to any statutory committee appointed in these cases, if any; and (f) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: Juliet M. Sarkessian, Esq. and Linda Richenderfer, Esq. (emails: juliet.m.sarkessian@usdoj.gov and linda.richenderfer@usdoj.gov)).   In the event no objections to entry of the Final Order on the

6

Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

20.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2019
          Wilmington, Delaware

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

7

# **EXHIBIT B**

Proposed Final Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                    :    Chapter 11
                                          :
IMERYS TALC AMERICA, INC., et al.,1       :    Case No. 19_-_____ (_____)
                                          :
            Debtors.                      :    (Joint Administration Pending)
                                          :
-------------------------------------------------------- x
```

**FINAL ORDER UNDER 11 U.S.C. §§ 105(a), 362(d), 363(b), AND 503(b),
AUTHORIZING DEBTORS TO (I) PAY THEIR PREPETITION INSURANCE
OBLIGATIONS, (II) PAY THEIR PREPETITION BONDING OBLIGATIONS, (III)
MAINTAIN THEIR POSTPETITION INSURANCE COVERAGE, AND
(IV) MAINTAIN THEIR BONDING PROGRAM**

Upon the motion (the "**Motion**")[2] of the Debtors for a Final Order, authorizing the

Debtors to (a) continue to (i) administer the Insurance Policies and pay and set off the Prepetition

Insurance Obligations and (ii) pay and set off the Prepetition Bonding Obligations, to the extent

the Debtors determine in their discretion that such payments are necessary or appropriate; (b) in

the ordinary course of business, pay all postpetition premiums, administrative fees, deductibles,

and other obligations relating to the (i) Postpetition Insurance Obligations or (ii) the Postpetition

Bonding Obligations, as such payments become due; and (c) revise, extend, supplement, change,

terminate, and/or replace the Debtors' insurance coverage or the Bonding Program as needed in

the ordinary course of business; and the Court having reviewed the Motion and the Picard

Declaration; and the Court having jurisdiction to consider the Motion and the relief requested

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

US-DOCS\105945243.1

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon;  and the Court having determined that there is good and sufficient cause for the relief granted in this Final Order, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to continue their Insurance Policies and Bonding Program.

3.      All objections to entry of this Final Order, to the extent not withdrawn or settled, are overruled.

4.      The Debtors are authorized, but not directed, to (i) pay to the Insurance Carriers, Brokers, and the Sureties and (ii) pay to, or set off against amounts owed by, Imerys USA, Imerys Clays, or the other Debtors, any amounts owed on account of the Insurance Obligations and Bonding Obligations, whether incurred prepetition or postpetition.

5.      All payments and setoffs on account of Prepetition Insurance Obligations and Prepetition Bonding Obligations, collectively, shall not exceed $700,000 in the aggregate without further order of this Court.

6.      Notwithstanding the foregoing, nothing in this Final Order authorizes the Debtors to reimburse Imerys USA, Imerys Clays, or the other Debtors for amounts paid by such entities on behalf of the Debtors prior to the Petition Date.  The rights of Imerys USA, Imerys Clays and the other Debtors to set off any amounts owed by the Debtors are hereby preserved.

7.      The Debtors are authorized, but not directed, to revise, extend, supplement, change, terminate, and/or replace insurance coverage and their Bonding Program as needed and to enter into new insurance policies and surety bonds through renewal or purchase of new insurance policies and surety bonds, in each case without further notice to, hearing before, or order from this Court.

8.      The Debtors are authorized to pay any prepetition or postpetition fees, costs, and commissions of the Brokers in connection with the Insurance Policies in the ordinary course of business.

9.      The Debtors' banks and financial institutions shall be, and hereby are, authorized, when requested by the Debtors in their sole discretion, to process, honor, pay, and, if necessary, reissue any and all checks, including prepetition checks that the Debtors reissue postpetition, and electronic fund transfers drawn on the Debtors' bank accounts relating to the Insurance Obligations and the Bonding Obligations, whether such checks were presented or funds transfer requests were submitted prior to or subsequent to the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

10.     The Debtors' banks and financial institutions may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order,

and any such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Final Order.

11.    The Debtors are hereby authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests with respect to Prepetition Insurance Obligations and Prepetition Bonding Obligations dishonored or denied as a consequence of the commencement of the Chapter 11 Cases, and to reimburse any expenses that holders of claims in connection with the Prepetition Insurance Obligations and Prepetition Bonding Obligations may incur as a result of any bank's failure to honor a prepetition check.

12.    Nothing in this Final Order or the Chapter 11 Cases alters, limits, or impairs the Historical Policies or the respective rights, benefits, and obligations of the Debtors or the Historical Policy Counterparties thereunder, and the Historical Policies shall remain in full force and effect, in each case except as may be otherwise provided by further order of the Court. For the avoidance of doubt, all obligations of the Historical Policy Counterparties, including the obligation for The American Insurance Company, Truck Insurance Exchange, National Union Fire Insurance Company of Pittsburgh, PA, Zurich American Insurance Company, Zurich Insurance Company, and XL Insurance America, Inc. to pay the Debtors' defense costs to the Debtors, their defense counsel, experts, their affiliates, and/or any third parties (including the Debtors' and their affiliates' other professionals), shall continue in full force and effect (in each case except as may be otherwise provided by further order of the Court) and nothing in this Final Order or the Chapter 11 Cases shall be construed as a waiver of any of the rights of the Debtors, their affiliates, and/or any third parties (including the Debtors' and their affiliates' professionals) under or in connection with the Historical Policies.  Notwithstanding the foregoing sentence, the

4

Historical Policy Counterparties shall not pay or reimburse any postpetition separate, non-Debtor defense or indemnification costs to, or on behalf of, Cyprus Mines Corporation or its affiliates, except as provided by further order of the Court.

13.     The American Insurance Company, Truck Insurance Exchange, National Union Fire Insurance Company of Pittsburgh, PA, Zurich American Insurance Company, Zurich Insurance Company, and XL Insurance America, Inc., shall be, and hereby are, authorized to promptly pay and otherwise honor their obligation to pay defense costs for the Debtors as set forth in their Historical Policies.

14.     Notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Final Order shall create any rights in favor of, or enhance the status of any claim held by, any person to whom any of the Insurance Obligations or Bonding Obligations may be owed.

15.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Final Order, shall be deemed an assumption of any executory contract, or otherwise shall constitute a waiver of the Debtors' rights under section 365 of the Bankruptcy Code or an admission by the Debtors that any of the Insurance Policies or the Bonding Program, or any related agreements or contracts constitutes an executory contract within the meaning of section 365 of the Bankruptcy Code.

16.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Final Order, shall be deemed an admission as to the validity of any underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

17.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

18.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Final Order.

19.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2019
         Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

US-DOCS\105945243.1

## EXHIBIT C

Policy Schedule

| PROGRAM TYPE | DEBTOR INCLUDED AS NAMED INSURED | POLICY OWNER | PAYEE | PAYMENT DETAIL | POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM ALLOCATED TO DEBTORS[1] |
|---|---|---|---|---|---|---|---|---|---|
| Imerys Global | ITA; ITV | Imerys SA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | Master GCL | 01/01/2019 - 01/01/2020 | FRL00162315 | 1st Layer: AGCS 2nd Layer: Swiss Ré & XL 3rd Layer: Munich Ré | $19,636 |
| Imerys Global | ITA; ITV | Imerys SA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | EPL | 07/01/2018 - 06/30/2019 | AIG/7990031 | AIG Europe Limited | $49,807[2] |
| Imerys Global | ITA; ITV | Imerys SA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | Crime | 07/01/2018 - 06/30/2019 | CHUB/FRFINA21318 | Chubb Insurance Company | $49,807 |

---

[1] Certain premiums are paid in CAD or EUR.  USD equivalents have been calculated using a trialing 60 day average exchange rate one month following the start date of the applicable Insurance Policy.

[2] This amount represents the premium paid for the EPL, Crime, and all D&O policies in aggregate.

1

| PROGRAM TYPE | DEBTOR INCLUDED AS NAMED INSURED | POLICY OWNER | PAYEE | PAYMENT DETAIL | POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM ALLOCATED TO DEBTORS[1] |
|---|---|---|---|---|---|---|---|---|---|
| Imerys Global | ITA; ITV | Imerys SA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | D&O | 07/01/2018 - 06/30/2019 | AIG/7901839 | AIG Europe Limited | $49,807 |
| Imerys Global | ITA; ITV | Imerys SA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | D&O | 07/01/2018 - 06/30/2019 | CNA FNO595 A &XL FR00005149 DO | CNA & XL | $49,807 |
| Imerys Global | ITA; ITV | Imerys SA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | D&O | 07/01/2018 - 06/30/2019 | AIG/7919665 | AIG Europe Limited | $49,807 |
| Imerys Global | ITC | Imerys Graphite & Carbon Canada Inc. | ITC | Paid directly by ITC | Commercial General Liability | 01/01/2019 - 01/01/2020 | CAL000456170 | 1st Layer: AGCS 2nd Layer: Swiss Ré & XL 3rd Layer: Munich Ré | $15,707 |
| U.S. Group | ITA; ITV | Imerys USA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | Commercial General Liability | 01/01/2019- 01/01/2020 | CGL 2011179 | Allianz Global Risks US Ins Co | $54,182 |
| U.S. Group | ITA; ITV | Imerys USA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | Umbrella Liability | 01/01/2019 - 01/01/2020 | ULA 20111180 | Allianz Global Risks US Insurance Co. | $63,973 |

| PROGRAM TYPE | DEBTOR INCLUDED AS NAMED INSURED | POLICY OWNER | PAYEE | PAYMENT DETAIL | POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM ALLOCATED TO DEBTORS[1] |
|---|---|---|---|---|---|---|---|---|---|
| U.S. Group | ITA; ITV | Imerys USA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | ERISA Bond (includes UCM) | 01/01/2019 – 01/01/2020 | 8208-4128 | Federal Insurance Co. (Chubb) | $861 |
| U.S. Group | ITA; ITV | Imerys USA | Imerys USA | Paid by Imerys USA; reimbursed by ITA | Fiduciary Liability / Excess Fiduciary Liability | 01/01/2019 - 01/01/2020 | G25078263 006 MPL 5543234-05 | Westchester Fire (ACE) / Zurich American | $3,333 |
| Debtor Standalone | ITA; ITV; ITC | ITA | ITA | Paid by ITA on behalf of ITA, ITV and ITC | Cargo | 02/01/2019 – 02/01/2020 | M20964 | Lloyd's London | $7,226 |
| Debtor Standalone | ITA; ITV; ITC | ITA | ITA | Paid by ITA on behalf of ITA, ITV and ITC | Property | 02/07/2019 – 02/07/2020 | ARL3000095 1100 | Sompo International | $235,000 |
| Debtor Standalone | ITA; ITV | ITA | ITA | Paid by ITA on behalf of ITA and ITV | Automobile | 02/01/2019 - 02/01/2020 | 10006359281 91 | Starr Indemnity & Liability Company | $33,486 |
| Debtor Standalone | ITC | ITC | ITC | Paid directly by ITC | Automobile | 02/01/2019 – 02/01/2020 | 10001995461 9 | Starr Indemnity & Reinsurance Limited | $11,500 |

3

## EXHIBIT D

Bonding Obligations

| Obligee | Principal | Surety | Nature of Bond | Surety Bond Number |
|---|---|---|---|---|
| State of Montana | Imerys Talc America, Inc. | Westchester Fire Insurance Company | Reclamation | K08587498 |
| State of Montana | Imerys Talc America, Inc. | Westchester Fire Insurance Company | Reclamation | K08587504 |
| State of Montana | Imerys Talc America, Inc. | Westchester Fire Insurance Company | Reclamation | K08587516 |
| State of Vermont | Imerys Talc Vermont, Inc. | Westchester Fire Insurance Company | Reclamation | K08587528 |
| U.S. Customs and Border Protection | Imerys Talc America, Inc. | Westchester Fire Insurance Company | Customs | 110802003 |
| Minister of Northern Development Mines | Imerys Talc Canada Inc. | Westchester Fire Insurance Company | Performance | MNR217443 |
| Minister of Northern Development Mines | Imerys Talc Canada Inc. | Westchester Fire Insurance Company | Performance | MNR217444 |
| Town of Windham | Imerys Talc Delaware Inc.[1] | Westchester Fire Insurance Company | License / Permit | K08587565 |
| State of Vermont | Imerys Talc America, Inc. | Westchester Fire Insurance Company | License / Permit | K08587553 |
| Stephen Lanzo, III and Kendra Lanzo | Imerys Talc America, Inc | International Sureties, Ltd. | Appeal | SU58906 |

---

[1]    Imerys Talc Delaware Inc. merged into Debtor Imerys Talc America, Inc. on December 31, 2015.