## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

In re:                                                : Chapter 11
                                                      :
IMERYS TALC AMERICA, INC., *et al.*,[1]               : Case No. 19-10289 (LSS)
                                                      :
            Debtors.                                  : (Jointly Administered)
                                                      :
                                                      : **Hearing Date: March 20, 2019 at 2:00 p.m. (ET)**
                                                      :
                                                      : **Objection Deadline: March 13, 2019 at 4:00 p.m. (ET)**

------------------------------------------------------------- x

### DEBTORS' MOTION FOR ORDER APPOINTING JAMES L. PATTON, JR., AS LEGAL REPRESENTATIVE FOR FUTURE TALC PERSONAL INJURY CLAIMANTS, *NUNC PRO TUNC* TO THE PETITION DATE

Imerys Talc America, Inc. ("**ITA**") and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (these "**Chapter 11 Cases**") submit this motion (this "**Motion**") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), appointing James L. Patton, Jr., as the legal representative for future talc personal injury claimants of the Debtors (the "**Future Claimants' Representative**"), *nunc pro tunc* to the Petition Date, pursuant to sections 105(a), 524(g)(4)(B)(i), and 1109(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").  In support of this Motion, the Debtors submit the Declaration of James L. Patton, Jr., (the "**Patton Declaration**"), attached hereto as Exhibit B, and respectfully state as follows:

### JURISDICTION AND VENUE

1.    The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

1

Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 524(g)(4)(B)(i), and 1109(b) of the Bankruptcy Code.

## BACKGROUND

2.      On February 13, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The factual background regarding the Debtors, including their business operations and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 10], which was filed on the Petition Date and is fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

4.      The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

5.      The Debtors filed the Chapter 11 Cases in an attempt to manage the mounting potential liabilities arising from the thousands of plaintiffs' claims alleging personal injury caused by exposure to talc mined, processed, and/or distributed by one or more of the Debtors (the "**Talc Claims**").  The Talc Claims generally fall into one of two categories: personal injury claims alleging (i) ovarian cancer or other gynecological diseases arising from talc exposure and (ii) respiratory cancers or other asbestos-related diseases arising from talc exposure.  The Debtors maintain that their talc is safe and believe that the Talc Claims are entirely without merit.

2

However, the Debtors commenced the Chapter 11 Cases in response to certain recent developments—including the increased unwillingness of the Debtors' insurers and third party contractual indemnitors to provide coverage for defense costs and liability exposure—that made it evident that the Debtors lack the financial wherewithal to continue to litigate in the tort system against the increasing numbers Talc Claims.

6.      The Debtors' primary goal in filing these Chapter 11 Cases is to confirm a consensual plan of reorganization pursuant to sections 105(a), 524(g), and 1129 of the Bankruptcy Code that (i) channels all of the present and future Talc Claims to a trust vested with substantial assets to liquidate and resolve such Talc Claims and (ii) provides for a channeling injunction prohibiting claimants from asserting against any Debtor or non-Debtor affiliate any claims arising from talc mined, produced, sold, or distributed by any of the Debtors prior to their emergence from these Chapter 11 Cases.  While the Debtors dispute all liability as to the Talc Claims, the Debtors believe this approach will provide fair and equitable treatment of all stakeholders.

### A. Selection and Engagement of Proposed FCR

7.      The Debtors retained Latham & Watkins LLP ("**Latham**") in June 2018 to assist the Debtors in evaluating a number of strategic options related to their talc liabilities.  The Debtors and Latham worked with the Debtors' litigation defense counsel, Alston & Bird LLP and Gordon, Rees, Scully, Mansukhani, LLP, and insurance coverage counsel, Neal, Gerber & Eisenberg LLP, to identify and assess alternatives to resolve the Talc Claims, including the costs and benefits associated with continued litigation of the Talc Claims in the tort system.

8.      At the same time, the Debtors explored the viability of using chapter 11 to address the Talc Claims by channeling them to a trust pursuant to sections 105 and 524(g) of the Bankruptcy Code that would be structured to ensure fair and equitable treatment of present and future talc claimants.  The Debtors determined that engaging on a prepetition basis with a future

US-DOCS\106173215

claimants' representative to represent the interests of individuals who may in the future assert talc-related demands against the Debtors would aid in their exploratory efforts and facilitate the implementation of a potential chapter 11 strategy.  Accordingly, the Debtors endeavored to identify and engage a future claimants' representative prepetition.  In considering possible candidates to serve in the prepetition future claimants' representative role, the Debtors were acutely focused on identifying a candidate who had significant experience in the field, a stellar reputation and did not present any conflicts of interest in taking on the role.

9.      The Debtors ultimately selected James L. Patton, Jr., of Young, Conaway, Stargatt & Taylor, LLP ("**Young Conaway**") to serve as a proposed future claims representative (the "**Proposed FCR**") in September 2018.  The Debtors selected Mr. Patton due to his significant experience in complex mass tort cases in chapter 11 as well as his reputation for integrity in serving as a fiduciary in relation to the creation of asbestos and other mass tort trusts in chapter 11.  In addition, as further described in the Patton Declaration, the Debtors believe that Mr. Patton is disinterested and has no conflict of interest with respect to taking on this role in these Chapter 11 Cases.

10.     On September 25, 2018, ITA engaged Mr. Patton to serve as the Proposed FCR, pending a formal appointment in any subsequent bankruptcy proceeding, pursuant to an engagement letter, a true and correct copy of which is attached hereto as Exhibit C (the "**Proposed FCR Agreement**").  Mr. Patton subsequently retained Young Conaway as legal counsel and Ankura Consulting Group, LLC ("**Ankura**") as claims analyst to provide advice in connection with the representation.

11.     The Proposed FCR Agreement explicitly indicates that Mr. Patton's "sole responsibility and loyalty is to the future asbestos personal injury claimants" for whom he serves as future claimants' representative, and further provides that ITA has no right to control or influence

4

how Mr. Patton or his professionals carry out such duties. *See* <u>Exhibit C</u> ¶ 3. Except as disclosed in the Patton Declaration, neither Mr. Patton nor Young Conaway had any association or relationship with, or other connection to, the Debtors prior to assuming the role of Proposed FCR.

12.    Pursuant to the Proposed FCR Agreement, ITA agreed to compensate Mr. Patton and his advisors at their standard hourly rates for all reasonable fees and expenses incurred prepetition. ITA also agreed to pay a retainer of $250,000 for the payment of fees of the Proposed FCR and his counsel and a retainer of $150,000 for the payment of fees of Ankura (the "**Retainers**"), while due diligence concerning the Debtors and their talc-related personal injury claims was conducted.

13.    Under the terms of the Proposed FCR Agreement and the engagement letter between Ankura and the Proposed FCR dated as of October 4, 2018, the Retainers were to be used as security for the unpaid fees and expenses of the Proposed FCR, Young Conaway and Ankura. Accordingly, the Debtors have paid, in the ordinary course, fees and expenses reflected in invoices from Young Conaway, and Ankura as set forth in the attached <u>Exhibit D</u>.

14.    After reconciling, as of the Petition Date, the Retainer balance held by Young Conaway was approximately $233,970.19 and the Retainer balance held by Ankura was approximately $150,000. The Debtors anticipate that the Retainer balances will be applied against post-petition fees and expenses awarded to Mr. Patton and/or his professionals, as applicable.

**B.    Prepetition Negotiations**

15.    Following his engagement in September 2018, the Proposed FCR, together with his advisors, initiated a months-long, extensive diligence process into the Debtors' businesses and the pending talc litigation, subject to a confidentiality agreement. This diligence process included, among other things, an analysis of the historical talc operations of the Debtors and their predecessors, the nature and extent of past and pending talc litigation against the Debtors,

5

including the types of claims asserted, the legal issues raised, and any resolution of such claims, the projected value of present and future Talc Claims as well as the availability of insurance and third-party indemnification assets to manage such liabilities, and a valuation of the Debtors' assets. The Proposed FCR, personally and/or through his various representatives, also considered the Debtors' corporate and transactional history and whether there was any potential for recovery from current or former affiliates of the Debtors based upon a variety of derivative liability theories, including alter ego, successor liability, and/or fraudulent conveyance.

16.     The Debtors have worked constructively with the Proposed FCR and his advisors throughout this extensive diligence process by responding to numerous information requests, including by providing access to a fulsome data room containing thousands of pages in documents. The Debtors also attended multiple in-person diligence meetings with the Proposed FCR and his advisors.  The Debtors had initially hoped to engage with plaintiffs' firms, and potentially an *ad hoc* committee, prior to the commencement of the Chapter 11 Cases to determine if a pre-arranged chapter 11 plan could be achieved.  The Debtors did not have sufficient time, however, to conduct the diligence process that would be necessary for the parties to engage in meaningful discussions given the pending trial calendar (and risk of incurring a judgment for which the Debtors could not post an appeal bond) and the ever-increasing costs of settlement and defense.  As a result, the Debtors expect to enter into negotiations and an attendant diligence process during the Chapter 11 Cases with a tort committee appointed by the United States Trustee.

17.     The extensive diligence process with the Proposed FCR as well as the Debtors' significant discussions with their own advisors confirmed, from the Debtors' perspective, the viability of using chapter 11 to resolve the Talc Claims in a manner that will maximize the distributable value for all stakeholders and will provide fair and equitable treatment of the Talc Claims.  The Debtors ultimately determined that, due to the increasing number of Talc Claims

US-DOCS\106173215

asserted and the prospect of diminishing, readily accessible insurance/third party indemnitor coverage, continued litigation in the tort system was not a viable option and that the commencement of the Chapter 11 Cases was in the best interests of the Debtors, their estates and their stakeholders. Accordingly, on February 13, 2019, the Debtors' boards of directors authorized the filing of the Chapter 11 Cases.

18.     During the Chapter 11 Cases, the Debtors intend to negotiate the terms of a consensual plan of reorganization with the Future Claimants' Representative appointed by the Court, representatives of the holders of current alleged Talc Claims, and the non-debtor Parent on behalf of the rest of the Imerys Group in order to resolve the Talc Claims and develop a go-forward strategy for the affected talc businesses. Mr. Patton has gained significant institutional knowledge regarding the Debtors' businesses and the underlying talc litigation over a period of approximately five months during the prepetition diligence process. Accordingly, the Debtors believe that Mr. Patton's participation in this process as the Future Claimants' Representative is critical to ensuring an efficient chapter 11 process and will serve to benefit creditors and the estates as a whole.

## RELIEF REQUESTED

19.     By this Motion, the Debtors respectfully request entry of the Proposed Order appointing James L. Patton, Jr., as the Future Claimants' Representative, *nunc pro tunc* to the Petition Date.

## BASIS FOR RELIEF REQUESTED

### A.  A Future Claimants' Representative Is Necessary In These Chapter 11 Cases

20.     The Debtors' goal in the Chapter 11 Cases is to confirm a consensual plan of reorganization that resolves the Debtors' historic talc-related liabilities pursuant to sections 524(g) and 105(a) of the Bankruptcy Code. A key element of such a plan is a "channeling injunction," under which all current and future talc claims arising from the Debtors' operations are channeled to

7

a funded trust for processing and resolution. *See* 11 U.S.C. § 524(g)(1)(A) (providing for a channeling injunction for asbestos-related claims); *In re TK Holdings Inc.,* Case No. 17-11375 (BLS) [Docket No. 2120] (Bankr. D. Del. Feb. 21, 2018) (confirming chapter 11 plan of reorganization with an injunction that channeled current and future airbag inflator personal injury claims to a trust pursuant to section 105(a) of the Bankruptcy Code). The effectiveness of such a channeling injunction rests in part on whether "as part of the proceedings leading to issuance of such injunction, the court appoints a legal representative for the purpose of protecting the rights of persons that might subsequently assert [future] demands of such kind." 11 U.S.C. § 524(g)(4)(B)(i).

21.    Future talc claimants are unknown individuals who do not currently hold talc-related claims against the Debtors but are expected to assert claims or "demands" against the Debtors in the future (the "**Future Claimants**"). *See* 11 U.S.C. § 524(g)(5). To protect the interests of such Future Claimants it is necessary and appropriate for the Court to appoint a legal representative to act as their fiduciary. *See* 11 U.S.C. § 524(g)(4)(B)(i); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Sept. 6, 2017) [Docket No. 703] (granting the debtors' motion to appoint a future claimants' representative to represent holders of future airbag inflator-related personal injury claims under section 105(a)); *In re Motors Liquidation Co.*, Case No. 09-50026 (Bankr. S.D.N.Y. Apr. 9, 2010) [Docket. No. 5509] (granting, pursuant to sections 105(a) and 1109, the debtors' motion to appoint a future claimants' representative to resolve future asbestos claims outside of the section 524(g) framework); *In re Met-Coil Sys. Corp.*, Case No. 03-12676, (Bankr. D. Del. Oct. 20, 2003) [Docket No. 205] (appointing future claimants' representative to represent holders of future trichloroethylene-related personal injury claims).

22.    The appointment of a future claimants' representative is necessary to represent the interests of Future Claimants and ensure that the relief sought through a plan of

8

reorganization in this case comports with due process and fairness. Additionally, a potential for conflict exists between the interests of the Future Claimants and those claimants who have already asserted Talc Claims against the Debtors, which necessitates the appointment of an independent representative to advocate on behalf of the Future Claimants.

### B. Mr. Patton Satisfies the Standard for Appointment of a Future Claimants' Representative

23.      Section 524(g) does not specify the standard for appointment of a future claimants' representative.  However, courts have uniformly held that the applicable standard for assessing the proposed appointment of a future claimants' representative is that of "disinterestedness" under section 101(14) of the Bankruptcy Code.  *See Fed. Ins. Co. v. W.R. Grace* (*In re W.R. Grace*), No. 04-844, 2004 WL 5517843, at *7 (D. Del. Nov. 22, 2004) ("The term 'disinterested' is defined in the Bankruptcy Code at § 101(14).  As the *UNR* court employed this disqualification standard, this Court believes that courts appointing future claimants' representative should do so as well in order to maintain the 'high standards' of *UNR*, which were referenced by Congress."); *In re Duro Dyne Nat'l Corp.*, Case No. 18-27963-MBK (Bankr. D. N.J. Oct. 16, 2018), Transcript at 9:15-9:23 ("[T]his Court acknowledged that Section 524(g) does not explicitly state the standards that the FCR must  satisfy to be eligible for appointment. The Court followed the approach taken nearly universally by other courts in applying the disinterested person standard set forth in 11 U.S.C. Section 101(14) as the correct disqualification standard for assessing the appointment of  a legal representative under Section 524(g), and the Court referred to the decisions of *W.R. Grace* and *In re Leslie Control[s]* and *In re Thorpe Insulation*."); *In re Thorpe Insulation Co.*, Case No. 2:07-19271-BB (Bankr. C.D. Cal. Dec.  12, 2007), Transcript at 44:17-45:4 ("THE COURT: [W]henever I look at professionals in bankruptcy, I'm asked to appoint somebody only if they're disinterested.  And that's a pretty high standard.  As we all know, it's different from what would be a conflict of interest out in the real world.  And to be disinterested, it seems to me that disinterested

US-DOCS\106173215

in the standard is sufficient here, and that the kinds of connections that you're talking about, the kinds of past experiences, the kind of—you know, having done this work before, having worked in cases where the other—the other parties have played similar roles is not enough to disqualify you or to keep you from being disinterested.").

24.     Chief Judge Sontchi, in applying the disinterestedness standard to the appointment of a future claimants' representative under section 101(14), described it as being the highest standard in the Bankruptcy Code for the appointment of professionals: "I am going to apply the disinterestedness test. And I would note that the disinterested test is the highest level of duty or standard in the Bankruptcy Code for the appointment of anybody. . . . And I also think it's the appropriate standard to apply in this case since none is specifically identified."  *In re Leslie Controls, Inc.*, Case No. 10-12199 (CSS) (Bankr. D. Del. Aug. 9, 2010), Transcript at 70:15-71:4.

25.     As set forth more fully in the Patton Declaration, Mr. Patton is not a creditor of the Debtors, nor does he have an interest materially adverse to the Future Claimants.  Accordingly, Mr. Patton is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

26.     The Debtors have agreed to compensate Mr. Patton for his services in these cases at his current standard hourly rate of $1,325, as such may be adjusted from time to time, plus reimbursement of expenses and fees.  Mr. Patton may retain professionals, such as counsel and a claims evaluation advisor, to assist him in the performance of his duties as allowed by this Court, and the Debtors have agreed to compensate such professionals.  Consistent with the Proposed FCR Agreement, Mr. Patton's sole responsibility and loyalty is to future talc personal injury claimants, and the Debtors have no right to control or influence how Mr. Patton or his professionals carry out such duties.

27.     Mr. Patton is seeking orders authorizing him to retain and employ Young Conaway as his counsel and Ankura as an advisor, subject to his appointment.  The experience of Mr. Patton

and Young Conaway in this matter pre-petition and in other mass tort bankruptcy cases will enable them to represent the Future Claimants in an efficient and effective manner.

### C. Mr. Patton Is Highly Qualified to Be the Future Claimants' Representative

28.    As set forth in the Patton Declaration, Mr. Patton is an independent and well-qualified candidate with more than 30 years of experience in mass tort litigation (including asbestos litigation), bankruptcies, and settlement trusts.  He is chairman emeritus of Young Conaway and a partner in its Bankruptcy and Corporate Restructuring section.  He specializes in corporate restructurings, mass tort insolvencies, complex mass tort bankruptcies, and post-confirmation mass tort settlement trusts.

29.    Mr. Patton has previously been found to possess the experience and qualifications necessary to serve as a future claimants' representative.  Since May 8, 2006, he has served as the future claimants' representative for the Celotex Asbestos Settlement Trust.  Prior to that appointment, Mr. Patton and Young Conaway served as counsel to David S. Shrager, who served as the future claimants' representative for the Celotex Asbestos Settlement Trust until his death in November 2005.

30.    Mr. Patton also served as the future claimants' representative in the bankruptcy cases of *In re Leslie Controls, Inc.*, Case No. 10-12199 (CSS) (Bankr. D. Del.), following his appointment on July 12, 2010; *In re United Gilsonite Labs.*, Case No. 11-02032 (RNO) (Bankr. M.D. Pa.), following his appointment on June 30, 2011; and *In re Yarway Corp.*, Case No. 13-11025 (BLS) (Bankr. D. Del.), following his appointment on April 22, 2013.  He continues to serve as the future claimants' representative for the asbestos personal injury settlement trusts established from those cases.  In addition, motions are pending for his appointment as the future claimants' representative in *In re Maremont Corp.*, Case No. 19-10118 (KJC) [Docket No. 44] (Bankr. D. Del. Jan. 31, 2019) and *In re The Fairbanks Co.*, No. 18-41768 (PWB) [Docket No. 117] (Bankr.

US-DOCS\106173215

N.D. Ga. Nov. 20, 2018).   Mr. Patton and Young Conaway also have represented other future claimants' representatives in connection with numerous asbestos and other mass tort related bankruptcy cases, as detailed in the Patton Declaration.

31.    Appointing a future claimants' representative with experience in these types of representations is in the best interests of the Future Claimants.  *See In re Leslie Controls*, No. 11-0013 (JBS), 2011 U.S. Dist. LEXIS 31947, at *17 (D. Del. Mar. 25, 2011) ("Both Mr. Patton and his counsel made clear the unique value of experience with these types of trusts; the successful establishment and operation of such trusts turns on difficult predictions that are easier to make in the light of the experience of similar trusts."); *In re Thorpe Insulation Co.*, Case No. 2:07-19271-BB (Bankr. C.D. Cal. Dec.  12, 2007), Transcript at 19:12-18 ("[T]he fact that [the proposed future claimants' representative] has served as a futures representative in other cases.  I think that's a good thing.  He's got experience.  He knows how this process works.").

32.    Indeed, the courts that have appointed Mr. Patton have found him to be highly qualified as a future claimants' representative.  *In re Leslie Controls, Inc.*, No. 10-12199 (CSS) (Bankr. D. Del. Aug. 9, 2010), Transcript at 72:18-73:5 ("Mr. Patton is well-known to the asbestos bar.   He's well-known to the bankruptcy bar nationally.   He's well-known to the Delaware bar.  And I have no doubt in my mind that he will work diligently on behalf of the future claimants. . . . [I]f the debtor were simply to come to me and say look, Judge, you need to find us a future claims representative, quite frankly I would have called Mr. Patton because I know of  his experience in the area and I know of  his reputation."); *In re the Celotex Corp.*, Case No. 90-10016-8G1 (Bankr. M.D. Fla. May 8, 2006), Order Approving the Appointment of James L. Patton, Jr. as the Successor Legal Representative for Unknown Asbestos Bodily Injury Claims at ¶ 6 ("This Court has carefully reviewed Mr. Patton's qualifications and background.  It has determined that he will ably carry out the duties and responsibilities of the Legal Representative under the Trust Agreement and fully

US-DOCS\106173215

represent the interests of future holders of asbestos-related personal injury demands as to matters concerning the Trust.").

33.    In addition, Mr. Patton's skill and qualifications in representing future claimants has been recognized after the fact, in the context of the approval of a plan of reorganization.  *See In re Leslie Controls, Inc.*, 2011 U.S. Dist. LEXIS 31947, at *17 (D. Del. Mar. 25, 2011) ("Mr. Patton . . . was clearly a qualified choice for the position, who exercised his responsibilities in good faith. He spoke with knowledge and evident wisdom with respect to the challenges of representing the future claimants, revealing a reassuring level of sophistication in his analysis of the issues.").  Mr. Patton will therefore be a significant benefit to Future Claimants in this case as a result of his meaningful experience.  *See* Eric D. Green, et. al., Prepackaged Asbestos Bankruptcies: Down But Not Out, 63 NYU Ann. Surv. Am. L. 727, 741-42 (2008) ("The benefits of retaining an experienced FCR in an asbestos bankruptcy case cannot be overstated. . . . Because of the complex statutory requirements of [section] 524(g), much of the negotiations between the parties focuses on structuring a plan that is agreeable to the parties yet still satisfies the statutory requirements. Because of the technical nature of these discussions, prior experience becomes paramount to an FCR's ability to successfully represent the future claimants.").

### D.    Appointment of the Pre-Petition Future Claimants' Representative is in the Best Interests of the Debtors' Estates

34.    The appointment of Mr. Patton as the Future Claimants' Representative will best serve the interests of the Debtors' estates, their creditors and Future Claimants for these cases.  Mr. Patton has spent months becoming familiar with the Debtors, their corporate history, financial posture, and talc liabilities in his role as the Proposed FCR and as a result of the extensive diligence performed by Mr. Patton and his advisors.  If a different legal representative is appointed in these Chapter 11 Cases, he or she would require significant time to obtain the level of knowledge and information that Mr. Patton presently has regarding the Future Claimants and the nature of these

13

Chapter 11 Cases.  This would not only create inefficiencies as a result of the requisite duplicative work that would need to be performed by the new legal representative to learn about the Debtors, their talc liabilities and assets of the estates, but it would require the Debtors' estates to incur costs they otherwise would not have to incur.

35.    The time and costs that the Debtors' estates would expend if a new Future Claimants' Representative was appointed (as well as the loss of the institutional knowledge obtained by Mr. Patton and his professionals during the months-long prepetition diligence process) would unnecessarily deplete estate assets, delay the ability of the Debtors to enter into meaningful negotiations with representatives of present and future talc claimants and ultimately reduce the amount of estate funds available to fund a trust that would pay out claims to present and future talc claimants.  As such, it makes practical economic and good business sense to retain Mr. Patton to continue as the Future Claimants' Representative and to benefit from and utilize the knowledge and experience gained from his prepetition service.

36.    In addition, the court appointment of a legal representative for future claimants nominated by a debtor is the commonly-accepted process that has been routinely followed in mass tort bankruptcy cases.  *See e.g.*, *In re Duro Dyne Nat'l Corp.*, Case No. 18-27963-MBK [Docket No. 191] (Bankr. D. N.J. Oct. 16, 2018), Order Appointing a Legal Representative for Future Asbestos Person Injury Claimants Effective as of the Petition Date; *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) [Docket No. 703] (Bankr. D. Del. August 30, 2017), Order Appointing Roger Frankel as Legal Representative for Future Personal Injury Claimants *Nunc Pro Tunc* to July 20, 2017; *In re Metex Mfg. Corp.*, Case No. 12-14554 (BRL), [Docket No. 93] (Bankr. S.D.N.Y. Jan. 16, 2013), Order Appointing Lawrence Fitzpatrick, Esq., as Legal Representative for Future Claimants; *In re Yarway Corp.*, Case No. 13-11025 (BLS), [Docket No. 88] (Bankr. D. Del. May

28, 2013), Order Appointing James L. Patton, Jr., Esq., as Legal Representative for Future Asbestos Personal Injury Claimants *Nunc Pro Tunc* to the Petition Date.

37.     In particular, courts within (and outside of) the Third Circuit have appointed as the post-petition future claimants' representative the person who served in that role pre-petition. *See In re Duro Dyne Nat'l Corp.*, Case No. 18-27963-MBK [Docket No. 191] (Bankr. D.N.J. Oct. 16, 2018); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) [Docket No. 703] (Bankr. D. Del. August 30, 2017); *In re Leslie Controls, Inc.*, Case No. 10-12199 (CSS) (Bankr. D. Del. Aug. 11, 2010) [Docket No. 130]; *In re Thorpe Insulation Co.*, Case No. 2:07-19271-BB (Bankr. C.D. Cal. Dec. 12, 2007); *In re ABB Lummus Glob. Inc.*, Case No. 06-10401 (JKF) (Bankr. D. Del. May 16, 2006); *see generally In re Mid-Valley, Inc.*, 305 B.R. 425 (Bankr. W.D. Pa. 2004).

38.     A debtor's ability to nominate a future claimants' representative to aid in pre-petition negotiations (who is then subject to later court approval), permits the debtor to pursue negotiations in mass tort cases prior to filing for bankruptcy.  *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 245 (3d Cir. 2004) (holding that future claimants must be "adequately represented throughout the [reorganization] process"); *In re Leslie Controls, Inc.*, 2011 U.S. Dist. LEXIS 31947, at *7-8 (D. Del. Mar. 25, 2011) ("In a pre-negotiated asbestos-related bankruptcy case, as a practical matter, the debtor considering a Chapter 11 filing is the only entity in a position to retain and pay an individual to represent the interests of future claimants.  Future claimants would otherwise be unrepresented in the process, and counsel for current claimants would have a conflict if asked to simultaneously represent future claimants in negotiations over limited funding resources.").  This selection process is critical to the prepetition negotiation process, as the delay involved with appointing a new post-petition future claimants' representative, as well as the lack of knowledge of the future claimants' representative, would wipe out the benefits to debtors and future claimants of having pursued diligence, discussions and negotiations pre-filing.  *See In re*

15

*Thorpe Insulation Co.*, Case No. 2:07-19271-BB (Bankr. C.D. Cal. Dec. 12, 2007), Transcript at 45:13-20 ("[W]ere we to disqualify [the pre-petition FCR] at this point and have to start afresh, you'd be making new phone calls, you'd be trying to get somebody around the holidays to get involved in this case, to learn something about this case, and I think you'd get nowhere on this case for a couple of months down the road until you had somebody new at the table. And I'd like to see us move forward more quickly than that.").

## THE ROLE OF THE FUTURE CLAIMANTS' REPRESENTATIVE

39.    The Debtors submit that an order appointing Mr. Patton as the Future Claimants' Representative should confer upon him, in that capacity, the following rights in the Chapter 11 Cases:

a.    <u>Standing</u>: The Future Claimants' Representative shall have standing under section 1109(b) of the Bankruptcy Code to be heard as a party-in-interest in all matters relating to the Chapter 11 Cases and shall have such powers and duties of a committee, as set forth in section 1103 of the Bankruptcy Code, as are appropriate for a Future Claimants' Representative;[2]

b.    <u>Engagement of Professionals</u>: The Future Claimants' Representative may, with prior approval from the Court pursuant to sections 105(a), 327 and 1103 of the Bankruptcy Code and consistent with the treatment afforded other professionals in these Chapter 11 Cases, retain attorneys and other professionals;

c.    <u>Compensation</u>: The Future Claimants' Representative and his professionals shall apply for compensation in accordance with the Bankruptcy Code, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), and any order entered by the Court establishing procedures for interim compensation and reimbursement of expenses of professionals. Subject to Court approval, Mr. Patton shall be compensated at his hourly rate of $1,325, subject to periodic adjustment, plus reimbursement of reasonable expenses;

d.    <u>Indemnification</u>: The Debtors shall indemnify, defend and hold harmless the Future Claimants' Representative from and against any losses, claims,

---

[2]    See *In re Johns-Manville Corp.*, 52 B.R. 940, 942 (S.D.N.Y. 1985) (legal representative for future claimants was authorized to exercise powers and perform duties of a committee under section 1103 of the Bankruptcy Code); *In re UNR Indus., Inc.*, 71 B.R. 467, 478 (Bankr. N.D. Ill. 1987) (stating that the future claimants' representative was granted the powers and responsibilities of a committee).

damages, or liabilities (or action in respect thereof) to which the Future Claimants' Representative may become subject as a result of or in connection with his rendering services hereunder, unless and until it is finally judicially determined that such losses, claims, damages or liabilities were caused by fraud or willful misconduct on the part of the Future Claimants' Representative in performing his obligations. The foregoing entitlement of the Future Claimants' Representative shall include, without limitation, (i) the right to be indemnified against any liability related to or resulting from any information provided by the Future Claimants' Representative that is inaccurate in any respect as a result of misrepresentation, omission, failure to update, or otherwise, unless the Future Claimants' Representative actually knew of such inaccuracy at the time of the misrepresentation, omission, failure to update, or other occurrence in such action or proceeding, (ii) the right to bring an action against the Debtors to compel them to perform their obligations under this indemnification provision if such obligations have not been performed in full within twenty (20) days after a written claim by the Future Claimants' Representative for indemnification and/or defense of an action or proceeding covered by this indemnification provision and/or payment of any defense expenses, including attorneys' fees, incurred by the Future Claimants' Representative in such action or proceeding, whether such action is concluded, ongoing, or threatened; and (iii) the right to be indemnified for any expenses, including reasonable attorney's fees, that the Future Claimants' Representative may incur in enforcing this indemnification provision. In the event that full indemnification is not available to the Future Claimants' Representative as a matter of law, then, to the extent permitted by applicable law, his aggregate liability shall be limited to the total fees collected for the services rendered and, in any event, shall be limited by a final adjudication of his relative degree of fault and benefit received; and

e. <u>Right to Receive Notices</u>: Mr. Patton and any professionals retained by Mr. Patton and approved by the Court shall have the right to receive all notices and pleadings that are required to be served upon any statutory committee and its counsel pursuant to applicable law or an order of the Court.

40.     In reliance on the Patton Declaration, the Debtors believe that Mr. Patton is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

41.     For all of the foregoing reasons, the Debtors submit that the appointment of Mr. Patton as the Future Claimants' Representative is in the best interests of the Debtors, their estates, all creditors and Future Claimants, and parties in interest.

17

**NOTICE**

Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) the firms listed on the Debtors' consolidated list of the thirty law firms with the most significant representations of parties asserting talc claims against the Debtors; (e) the creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims (excluding talc claims); (f) counsel to the prepetition representative for future talc claimants; and (g) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order

and grant such other and further relief as may be just and proper.

Dated: February 27, 2019             /s/ Amanda R. Steele
       Wilmington, Delaware

                    **RICHARDS, LAYTON & FINGER, P.A.**

                    Mark D. Collins (No. 2981)
                    Michael J. Merchant (No. 3854)
                    Amanda R. Steele (No. 5530)
                    One Rodney Square
                    920 North King Street
                    Wilmington, DE  19801
                    Telephone:  (302) 651-7700
                    Facsimile:  (302) 651-7701
                    E-mail:  collins@rlf.com
                           merchant@rlf.com
                           steele@rlf.com

                    - and -

                    **LATHAM & WATKINS LLP**

                    Jeffrey E. Bjork (admitted *pro hac vice*)
                    Helena G. Tseregounis (admitted *pro hac vice*)
                    355 South Grand Avenue, Suite 100
                    Los Angeles, California 90071-1560
                    Telephone:  (213) 485-1234
                    Facsimile:  (213) 891-8763
                    E-mail:  jeff.bjork@lw.com
                         helena.tseregounis@lw.com

                    - and -

                    Richard A. Levy (admitted *pro hac vice*)
                    330 North Wabash Avenue, Suite 2800
                    Chicago, Illinois 60611
                    Telephone:  (312) 876-7700
                    Facsimile:  (312) 993-9767
                    E-mail:  richard.levy@lw.com

                    - and -

George A. Davis (admitted *pro hac vice*)
Keith A. Simon (admitted *pro hac vice*)
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
E-mail:  george.davis@lw.com
         keith.simon@lw.com


*Proposed Counsel for Debtors and Debtors-in-Possession*