## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| IMERYS TALC AMERICA, INC., *et al.*, | Case No. 19-10289 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: May 7, 2019 at 2:00 p.m. (ET) Objection Deadline: April 29, 2019 at 4:00 p.m. (ET)** |

---------------------------------------------------

## CERTAIN EXCESS INSURERS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT THE CALIFORNIA COVERAGE ACTION TO PROCEED AND ORDER OF ABSTENTION

STAMOULIS & WEINBLATT LLC

800 N. West Street, Third Floor
Wilmington, Delaware  19801

- and -

O'MELVENY & MYERS LLP

Times Square Tower
7 Times Square
New York, New York  10036-6537

*Counsel for Certain Excess Insurers*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

JURISDICTIONAL STATEMENT ........................................................... 5

BACKGROUND ........................................................................................ 5

    A.    Commencement of the California Coverage Litigation ............................... 5

    B.    The Claims Asserted in the California Coverage Action ........................... 6

    C.    The Progress Made in the California Coverage Action ............................. 7

    D.    Discovery Served and Motions Filed in the California Coverage Action. ................................................................. 9

    E.    The April 26 Case Management Conference In The California Coverage Action. ...................................................... 10

    F.    This Court's Order Lifting The Stay With Regard to the Cyprus Historical Policies. ......................................................... 10

ARGUMENT ........................................................................................... 11

I.    THE AUTOMATIC STAY DOES NOT APPLY TO THE CLAIMS BY AND BETWEEN NON-DEBTORS IN THE CALIFORNIA COVERAGE ACTION ................................................................................. 11

II.    EVEN IF THE STAY APPLIES TO SOME ASPECT OF THE CALIFORNIA COVERAGE ACTION, THERE IS AMPLE CAUSE FOR RELIEF UNDER SECTION 362(D)(1) OF THE CODE .................................. 13

    A.    If Applicable, the Stay Should be Lifted Because 28 U.S.C. § 1334 Prohibits this Court from Hearing the California Coverage Action. ......... 13

        1.    28 U.S.C. § 1334(c)(2) Requires That This Court Abstain from Hearing the Coverage Action ................................. 14

        2.    Discretionary Abstention from the California Coverage Action is Also Appropriate Pursuant to 28 U.S.C. § 1334(c)(1) ................................................... 21

    B.    Granting Relief From the Automatic Stay Will Not Prejudice the Debtors, but Rather Will Benefit All Parties ............................. 24

# TABLE OF CONTENTS
### (continued)

**Page**

C.    Cause Otherwise Exists for Relief From the Automatic Stay ................... 26

    1.    There Will be No Significant Prejudice if the California Coverage Action is Allowed to Proceed ........................................ 28

        a.    The Debtors Will Not Be Harmed ....................................... 28

        b.    The State Court is Highly Competent to Decide the Non-Core, State Law Coverage Issues at Stake Therein ..... 31

        c.    All of the Necessary Parties are Parties to the California Coverage Action ................................................. 32

        d.    The California Coverage Action is at an Advanced Stage and All Indications Are That it Will be Promptly Decided ................................................................................ 33

    2.    Great Hardship Will Inure to the Non-Debtors if Relief is not Granted ......................................................................................... 35

III.    THE COURT SHOULD ORDER ABSTENTION ............................................. 36

    A.    The Adversary Proceeding Seeks Declaratory Relief Only With Regard to the Cyprus/Imerys Agreements, Not the Separate Insurance Policies; No Insurer is a Party of the Adversary Proceeding. ................................................................................... 37

    B.    The Court Should Abstain from Making Declarations or Granting Relief In the Adversary Proceeding Regarding Contracts and Parties Not Before the Court ................................................................. 38

IV.    CONCLUSION .................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acquisition Group, Inc. v. Utica Mutual Ins. Co.* (*In re Baldwin-United Corp.*),52 B.R. 541 (Bankr. S.D. Ohio 1985) ............................................................ 18

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc*.,
96 F.3d 1390 (Fed. Cir. 1996).................................................................. 45

*Alemite Mfg. Corp. v. Staff*,
42 F.2d 832 (2d Cir. 1930)...................................................................... 45

*Amatex Corp. v. Aetna Cas. & Surety Co*.,
107 B.R. 856 (E.D. Pa. 1989), *aff'd* 908 F.2d 961 (3d Cir. 1990)............................. 19

*Beard v. Braunstein*,
914 F.2d 434 (3d Cir. 1990)............................................................. 26, 27

*B-U Gulf USA Corp. v. Federal Ins. Co.* (*In re Gulf USA Corp.*),
1995 WL 653383 (Bankr. D. Idaho Oct. 25, 1995) ......................................... 18

*Bualcor/Morristown Ltd. P'ship v. Vector Whippany Associates*,
181 B.R. 781 (D.N.J. 1995) .................................................................. 27

*C.F. Braun & Co., v. Ins. Co. of N. America.*,
2004 WL 5134919 (Cal. Super. Ct., 2004) .............................................. 36

*Chase Nat. Bank v. City of Norwalk, Ohio*,
291 U.S. 431, 54 S. Ct. 475, 78 L. Ed. 894 (1934).................................... 45

*Commercial Union Ins. Co. v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*),
31 B.R. 965 (S.D.N.Y. 1983)............................................................... 37

*Crown Heights Jewish Cmty. Council, Inc. v. Fischer* (*In re Fischer*),
202 B.R. 341 (E.D.N.Y. 1996) ............................................................ 40

*Dayton Title Agency, Inc. v. Philadelphia Indemnity Ins. Co.* (*In re Dayton Title Agency, Inc.*),
264 B.R. 880 (Bankr. S.D. Ohio 2000)................................................... 18

*Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Serv*.,
426 B.R. 520 (E.D. Pa. 2010) ............................................................. 13

*G-I Holdings, Inc. v. Hartford Accident and Indem. Co.* (*In re G-I Holdings, Inc.*),
278 B.R. 376 (Bankr. D.N.J. 2002) ...................................................... 17

*In re AC&S*,
297 B.R. 395 (Bankr. D. Del. 2003) .................................................... 35

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Allen*,
No. 13-14348 GMB, 2013 WL 1952338 (Bankr. D.N.J. May 10, 2013) ............. 44, 45

*In re Amatex Corp.*,
107 B.R. 856 (E.D. Pa. 1989)*, aff'd*, 908 F.2d 961 (3d Cir. 1990) ............................ 17

*In re Brown*,
311 B.R. 409 (E.D. Pa. 2004) ................................................................................. 30

*In re Burger Boys, Inc.*,
183 B.R. 682 (S.D.N.Y. 1994) ........................................................................... 17, 37

*In re Castlerock Properties*,
781 F.2d 159 (9th Cir. 1986) ................................................................................... 31

*In re Conference of African Union First Colored Methodist Protestant
Church*, 184 B.R. 207 (Bankr. D. Del. 1995) ........................................................ 12

*In re DESA Holdings Corp.*,
353 B.R. 419 (Bankr. D. Del. 2006) ....................................................................... 12

*In Re Franklin*,
179 B.R. 913 (Bankr. E.D. Cal. 1995) .................................................................... 25

*In re Glen Ivy Resorts, Inc.*,
171 B.R. 98 (Bankr. C.D. Cal. 1994) ...................................................................... 37

*In re John A. Rocco Co., Inc.*,
No. 10-18799, 2015 WL 1727474 (Bankr. D.N.J. Apr. 13, 2015) .................. 3, 13, 20

*In re Kamine/Besicorp Allegany, L.P.*,
214 B.R. 953 (Bankr. D.N.J. 1997) ......................................................................... 21

*In re Kissinger*,
72 F.3d 107 (9th Cir. 1995) ..................................................................................... 39

*In re Levanthol & Hovarth*,
139 B.R. 109 (S.D.N.Y. 1992) ................................................................................ 39

*In re Levitz Furniture Inc.*,
267 B.R. 516 (Bankr. D. Del. 2000) ....................................................................... 29

*In re Marvin Johnson's Auto Serv.*,
192 B.R. 1008 (Bankr. N.D. Ala. 1996) ................................................................. 29

*In re Mid-Atl. Handling Sys., LLC*,
304 B.R. 111 (Bankr. D.N.J. 2003) ......................................................................... 46

- iv -

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Molten Metal Technology, Inc.*,
  271 B.R. 711 (Bankr. D. Mass. 2002) ....................................................... 18

*In re Montgomery Ward Holding Corp.*,
  No. 97-1409 (PJW), 2000 WL 33712307 (Bankr. D. Del. Sept. 1, 2000)................. 41

*In re Mullarkey*,
  536 F.2d 215 (3rd Cir. 2008) ............................................................... 3, 13

*In re Muralo Co.*,
  Case No. 03-26723 (Bankr. D.N.J. Aug. 20, 2003)............................................ 15, 33

*In re OMNA Med. Partners, Inc.*,
  2000 WL 33712302 (Bankr. D. Del. June 12, 2000)...................................... 37, 39, 46

*In re Owen-Johnson*,
  115 B.R. 254 (Bankr. S.D. Cal. 1990) .......................................................... 25

*In re Ozai*,
  34 B.R. 764 (9th Cir. B.A.P. 1983).............................................................. 31

*In re Pharmakinetics Labs., Inc.*,
  139 B.R. 350 (D. Md. 1992) ..................................................................... 18

*In re Pied Piper Casuals, Inc.*,
  65 B.R. 780 (S.D.N.Y. 1986)..................................................................... 18

*In re Porter-Hayden Co.*,
  304 B.R. 725 (Bankr. D. Md. 2004) ........................................................ 24, 46

*In re Purina Mills, Inc.*,
  No. 99-3938-SLR, 2002 WL 125677 (Bankr. D. Del. Jan. 28, 2002)....................... 41

*In re Quigley Co.*,
  361 B.R. 723 (Bankr. S.D.N.Y. 2007) .......................................................... 32

*In re R.I. Lithograph Corp.*,
  60 B.R. 199 (Bankr. D.R.I. 1986)............................................................... 18

*In re Ramex Int'l, Inc.*,
  91 B.R. 313 (E.D. Pa. 1988) .................................................................... 17

*In re Rexene Prods. Co.*,
  141 B.R. 574 (Bankr. D. Del. 1992) ........................................................... 29

*In re Saunders*,
  103 B.R. 298 (Bankr. N.D. Fla. 1989).......................................................... 40

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Scarborough-St. James Corp.*,
    535 B.R. 60 (Bankr. D. Del. 2015) ............................................................. 32

*In re SCO Grp., Inc.*,
    395 B.R. 852 (Bankr. D. Del. 2007) ........................................................... 31

*In re Siragusa*,
    27 F.3d 406 (9th Cir. 1994) ....................................................................... 25

*In re Skipworth,*
    69 B.R. 526 (Bankr. E.D. Pa. 1987) .......................................................... 13

*In re Stone & Webster, Inc.*,
    367 B.R. 523 (Bankr. Del. 2007) ............................................................... 19

*In re Tarkio College*,
    137 B.R. 34 (W.D. Mo. 1992) .................................................................... 34

*In re Titan Energy, Inc.*,
    837 F.2d 325 (8th Cir. 1988) ..................................................................... 17

*In re Todd Shipyards Corp.*,
    92 B.R. 600 (Bankr. D.N.J. 1998) ............................................................ 39

*In re Trans World Airlines, Inc.*,
    278 B.R. 42 (Bankr. D. Del. 2002) ................................................ 20, 21, 25

*In re Tribune Co.*,
    418 B.R. 116 (Bankr. D. Del. 2009) .......................................................... 33

*In re TriCare Rehabilitation*,
    181 B.R. 569 (Bankr. N.D. Ala. 1994) ...................................................... 39

*In re Tucson Estates, Inc.*,
    912 F.2d 1162 (9th Cir. 1990) .............................................................. 31, 40

*In re U.S. Brass Corp.*,
    198 B.R. 940 (N.D. Ill. 1996), *aff'd in relevant part, vacated in part*,
    110 F.3d 1261 (7th Cir. 1997) ................................................................... 18

*In re Wheeler Group, Inc.*,
    75 B.R. 200 (S.D. Ohio 1987) ............................................................. 39, 40

*In re Wilson*,
    116 F.3d 87 (3d Cir. 1997) ........................................................................ 30

*Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*,
    405 B.R. 113 (Bankr. D. Del. 2009) .......................................................... 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Marine Terminals Corp. v. St. Paul Fire & Marine Ins. Co.*,
  1990 WL 174478 (N.D. Cal. 1990) ........................................................ 37

*Marks v. Outboard Marine Corp.*,
  974 F. Supp. 406 (D.N.J. 1997) ............................................................ 28

*Maryland Casualty Co. v. Aselco, Inc.*,
  223 B.R. 217 (D. Kan. 1998) ................................................................ 17

*Matter of Cont'l Airlines, Inc.*,
  156 B.R. 441 (Bankr. D. Del. 1993) ................................................ 26, 27

*Matter of Pursuit Athletic Footwear*,
  193 B.R. 713 (Bankr. D. Del. 1996) ..................................................... 40

*Miller v. Western States Life Ins. Co.* (*In re Investment and Tax Services,
  Inc.*), 1989 WL 62098 (D. Minn. June 9, 1989) ..................................... 18

*Montague Pipeline Techs. Corp. v. Grace/Lansing* (*In re Montague
  Pipeline Techs. Corp.*), 209 B.R. 295 (Bankr. E.D.N.Y. 1997) .............. 29

*Mt. McKinley Ins. Co. v. Corning Inc.*,
  399 F.3d 436 (2d Cir. 2005) ........................................................... 16, 17

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982) ............................................................................. 19

*Phar–Mor, Inc. v. Coopers & Lybrand*,
  22 F.3d 1228 (3d Cir.1994) ................................................................. 20

*Rosen-Novak Auto Co. v. Honz*,
  783 F.2d 739 (8th Cir. 1986) ............................................................... 17

*Sonnax Indus. Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus.
  Inc.*), 907 F.2d 1280 (2d Cir. 1990) ..................................................... 33

*St. Paul Fire and Marine Ins. Co. v. A.P.I. Inc.*,
  Civil No. 05-139, 2005 U.S. Dist. LEXIS 4793 (D. Minn. Mar. 23,
  2005) ................................................................................................. 15

*Stoe v. Flaherty*,
  436 F.3d 209 (3d Cir. 2006), *as amended* (Mar. 17, 2006) ............... 15, 16

*Toner v. Allstate Ins. Co.*,
  821 F. Supp. 276 (D. Del. 1993) .......................................................... 44

*Travelers Indem., Co. v. The Babcock and Wilcox Co.* (*In re The Babcock
  and Wilcox Co.*),
  2002 WL 100625 (E.D. La. Jan. 23, 2002) ............................................ 37

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

28 U.S.C. § 1334(c)(1) ................................................................. 24

28 U.S.C. § 1334(c)(2) ........................................................ 14, 15, 44

28 U.S.C. § 157(e) ...................................................................... 26

28 U.S.C.  § 362(g)(2) ................................................................. 13

**OTHER AUTHORITIES**

3 Collier on Bankruptcy P 362.07[3][a] (16th ed. 2019) ................................................... 31

**RULES**

Cal. Rules of Court, Standards of Judicial Administration, Section 3.10(a).................... 22

Cal. Rules of Court, Standards of Judicial Administration, Section 3.10(c).................... 23

Cal. Rules of Court, Standards of Judicial Administration, Section 3.10(d) .................. 23

Cal. Rules of Court, Standards of Judicial Administration, Section 3.10(f) ................... 23

Cal. Rules of Court, Civil Rules, Rule 3.400(a) ................................................ 22

Cal. Rules of Court, Civil Rules, Rule 3.400(b)(1) ........................................... 22

Cal. Rules of Court, Civil Rules, Rule 3.400(c)(7) ........................................... 22

Certain Excess Insurers (collectively, the "Moving Insurers")[1] respectfully submit this Motion for Relief From The Automatic Stay to permit the California Coverage Action[2] to Proceed And Order Abstention.

## PRELIMINARY STATEMENT

Following this Court's denial of the motion by Cyprus Mines Company ("Cyprus") for a temporary injunction of claims against it, litigation against Cyprus is proceeding aggressively in state and federal courts around the country with around 600 personal injury claimants asserting claims against Cyprus. Certain of the Moving Insurers are defending and settling claims against Cyprus under a reservation of rights, but the ongoing tort litigation mandates that the parties address the coverage issues raised by the claims asserted by Cyprus.

In the California Coverage Action, the Moving Insurers seek a declaration of their rights under the policies that they issued to Cyprus prior to the spin-off of Cyprus's talc operations in 1992 to the company that became Imerys (the "Cyprus Historical Policies").[3] The other insurers in the California Coverage Action have asserted certain

---

[1]    "Certain Excess Insurers" are Columbia Casualty Company, Continental Casualty Company, the Continental Insurance Company, as successor to CNA Casualty of California and as successor in interest to certain insurance policies issued by Harbor Insurance Company, Lamorak Insurance Company (formerly known as OneBeacon America Insurance Company), as successor to Employers' Surplus Lines Insurance Company, and Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company) to the extent that they issued policies to Cyprus Mines Corporation prior to 1989.

[2]    The "California Coverage Action" is *Columbia Cas. Co., et al. v. Cyprus Mines Corp., et al.,* No. 17-560919 (Cal. Super. Ct., filed Aug. 24, 2017).

[3]    Cyprus provided a schedule listing the Cyprus Historical Policies at issue in the California Coverage Action, attached here as Ex. 1 to Schweon Decl., Exhibit A to the Declaration of Matthew O. Talmo in Support of Emergency Motion for (I) Interim and Final Orders Granting Relief from the Automatic Stay Under Bankruptcy Code § 362(d) to Use Insurance

counterclaims for declaratory relief interpreting their policies and other equitable remedies, but none of the insurers seek affirmative monetary relief against the Debtors. Imerys, for its part, seeks declarations that it is entitled to coverage under the Cyprus Historical Policies. Thus, while the state court's resolution of the Moving Insurers' claims for relief may impact the scope of the insurance under which both Cyprus and Imerys are seeking coverage, one thing is clear:  the California Coverage Action is in the first instance a state court action by and about what coverage is available under the Cyprus Historical Policies.

The automatic stay does not apply to the Moving Insurers' requests for declaratory relief against Cyprus in the California Coverage Action, which is using the policies right now, or for the relief sought among the insurers with respect to Cyprus, since Section 362(a)(1) of the Bankruptcy Code only applies to actions *against* the debtor, not actions by or against a non-debtor and the Third Circuit disaggregates claims within a judicial action and examines each claim independently.  Nor does the automatic stay apply to the Moving Insurers' defense of claims brought against them by Imerys since: (a) Section 362(a)(1) of the Bankruptcy Code only applies to actions *against* the debtors, not actions (including counterclaims) *by* the debtors (b) the Moving Insurers are in a defensive posture with respect to the claims tendered against them by Imerys and Cyprus; and (d) non-debtor parties retain the ability to defend themselves against claims by a debtor.

---

Coverage Under Cyprus Historical Policies or, in the Alternative, (II) Adequate Protection Under Bankruptcy Code §§ 361 and 363(e), Dkt. 105 (Feb. 28, 2019).

Nonetheless, even if the automatic stay were applicable against Imerys (but not Cyprus, which is using the policies right now), ample cause exists for the stay to be lifted for the insurers claims for declaratory relief against Imerys with respect to the interpretation of the Cyprus Historical Policies, particularly given the cross-complaint Imerys filed against the insurers.  Section 362(d) of the Bankruptcy Code provides that "the court shall grant relief from the stay . . . for cause."  Cause exists to lift the stay where, as here, statutory constraints on jurisdiction require that the case be heard in state court.  Here, such statutory jurisdictional constraints exist because the federal courts must abstain from hearing the California Coverage Action pursuant to 28 U.S.C. § 1334(c)(2) – or, in the alternative, should exercise their discretion to abstain under § 1334(c)(1).

In addition, cause exists to lift the stay when circumstances warrant.  Here, the totality of the circumstances demonstrate that cause exists to lift the automatic stay. Among other circumstances, the following factors demonstrate why stay relief would be appropriate to the extent the stay applied:

- The California Coverage Action involves complex non-federal contract and insurance law issues and has been pending in the California Superior Court for 19 months.

- The California state court is in a position to completely resolve the insurance coverage issues.

- Continuation of the California Coverage Action would facilitate, rather than interfere with, because resolution of the coverage litigation will determine the interpretation to be given to the Cyprus Historical Policies which is important to all of the parties.

- Relief from the automatic stay would strongly advance judicial economy, since the California Coverage Action has the ability to timely adjudicate the action and the state court has devoted significant resources to developing

the issues to do so.

- The balance of harms necessarily favors relief, because an adjudication of the interpretation of the policies issued to Cyprus (and not Imerys) is necessary to the ongoing administrative of claims against Cyprus in the tort system and will not prejudice the Debtors.

- The Moving Insurers will be harmed by a refusal to grant stay relief because they will be unable to obtain prompt resolution of Cyprus's claims against them.

These factors and others amply demonstrate that cause exists to lift the automatic stay, if it applies. Therefore, the Court should grant relief.

Regardless of whether the automatic stay applies to the California Coverage Action, the Court should enter an order abstaining from interpreting the Cyprus Historical Policies in the Adversary Proceeding.

The Adversary Proceeding is focused exclusively on the interpretation of the Cyprus/Imerys Agreement of Transfer and Assumption and the Cyprus/Imerys Stock Purchase Agreement (collectively, the Cyprus/Imerys Agreements"). Neither the Debtors nor Cyprus seek a declaration in the Adversary Proceeding with respect to the interpretation of Cyprus Historical Policies. Nor could they since none of the Cyprus Historical Policies are before this Court in the Adversary Proceeding and none of the insurers that issued these policies are parties to the Adversary Proceeding. It is the California Coverage Action that alone addresses the interpretation of the Cyprus Historical Policies. An order of abstention is essential to make clear that the Adversary Proceeding is not tasked with interpreting the Cyprus Historical Policies.

Finally, to the extent that the Debtors interpret the California Coverage Action as

seeking declaratory relief with regard to the interpretation of the Cyprus/Imerys Agreements, which are the subject of the Adversary Proceeding, the Moving Insurers stipulate not to proceed with any such claims.  By this motion, the Moving Insurers seek confirmation merely to proceed with the claims interpreting the Cyprus Historical Policies none of which name the Debtors as an insured or additional insured.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction Over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

The statutory predicates for the relief sought herein are §§ 102(1) and 105(a) of the Bankruptcy Code, as supplemented by Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9006-1(e).

## BACKGROUND

### A.    Commencement of the California Coverage Litigation

On August 24, 2017, more than a year before the Petition Date, the California Coverage Action was initiated with the filing of a complaint in San Francisco Superior Court by Certain Excess Insurers who issued insurance policies to Cyprus.[4]  The insurers in the California Coverage Action seek declarations of the rights and obligations of all parties claiming rights under the Cyprus Historical Policies, including Cyprus and

---

[4]    *See* Declaration of Matthew C. Lovell In Support of Motion for Relief from the Automatic Stay And Order Of Abstention ("Lovell Decl."), Ex. 1, which gives a detailed history of the case and coordination proceedings.

Imerys.[5]

The case was designated as complex and assigned to the San Francisco Superior Court's Complex Civil Litigation Division.[6]

### B.    The Claims Asserted in the California Coverage Action

The operative Second Amended Complaint in the California Coverage Action seeks declaratory relief and a determination of equitable rights among insurers and putative insureds that are essential to the day-to-day administration of the claims in the tort system against Cyprus under the Cyprus Historical Policies.

Specifically, the Certain Excess Insurers seek judicial declarations as to allocation and defense treatment (Sixth, Seventh, and Ninth Causes of Action); the effect of self-insured periods on Certain Excess Insurers' coverage obligations under the Cyprus Historical Policies (Eighth Cause of Action); and equitable contribution/subrogation among different Insurers (Tenth Cause of Action).[7]  The Certain Excess Insurers also seek determinations of whether there is coverage for claims under the Cyprus Historical Policies (1) for exposure to consumer products that contained talc that was mined,

---

[5]    *Id.*, Ex. 1.

[6]    *See* Ex. 2 to Lovell Decl., Order Granting Application for Complex Designation; Assigning Case; Resetting Hearing Dates; and Setting Case Management Conference, filed Oct. 2, 2017.

[7]    The Second Amended Complaint was served on all defendants.  All the Insurer Defendants filed answers or general denials.  The responses of the "Corporate Defendants" (including Cyprus and Imerys) were stayed while counsel for Plaintiffs and the Corporate Defendants met and conferred and exchanged written proposals regarding a possible resolution of certain causes of action in Plaintiffs' SAC and other entities' participation in the defense and indemnity of Asbestos Claims.  Most of the Parties participated in a mediation on October 23 and October 24, 2018, to address various issues in dispute.  The Parties' mediated discussions are ongoing.

manufactured, sold, or distributed by companies other than Cyprus Mines Corporation and subsidiaries of Cyprus Mines Corporation (Third Cause of Action) and (2) for corporate entities which were not insureds under Cyprus Historical Policies (Fifth Cause of Action).

In addition, the Certain Excess Insurers seek a declaration that the Cyprus Historical Policies may not be expanded beyond the terms and the subject matter of those insurance contracts, such that insurers that issued the Cyprus Historical Policies may be held liable to multiple, inconsistent obligations to multiple putative insureds beyond what they contracted.  (First and Second Causes of Action).

The focus of the California Coverage Action is the interpretation of the insurance policies.  The litigation is not an attempt by the Moving Insurers to recoup monies erroneously paid to the Debtors.[8]

C.     **The Progress Made in the California Coverage Action**

Fourteen insurers are joined in the California Coverage Action along with five corporate entities that claim coverage:  Cyprus, Cyprus Amax, Imerys, Rio Tinto, and Freeport-McMoRan.  Each party has engaged the insurance coverage counsel.

Over the course of litigation in California, the Complex Division of the Superior Court has held five case management conferences, in which the court addressed the following issues:

---

[8]     The Insurers may have affirmative claims against Debtors for money damages, but they are not the subject of the actions at issue in this Motion.

- impairment of the Truck Insurance Exchange policies[9];

- resolution of the terms of certain "lost" Central National policies[10];

- issues raised by the filing of the plaintiffs' Second Amended Complaint[11];

- conferred with Central National Insurance Company of Omaha and Unigard over possible resolution of certain issues[12];

- issues raised by the filing of Unigard's cross-complaint[13];

- selection of a JAMS mediator, Larry Pollack, and the scheduling of the mediation sessions[14];

- heard oral argument on plaintiffs' motion for summary adjudication regarding the scope of Central National's alleged duty to indemnify with respect to asbestos claims once underlying policies properly exhaust[15]; and

- filing of Imerys' cross-complaint on Nov. 8, 2018.[16]

As is typical in such proceedings in California, the Complex Division of the San Francisco Superior Court has devoted significant effort to identifying the primary issues to be resolved and how those issues should be staged for efficient resolution.[17]

The parties also exchanged written proposals on how to address the primary litigation issues, including the details of the Certain Excess Insurers' participation in the

---

[9]   *See* Ex. 5, to Lovell Decl., Minutes of Apr. 16, 2018 Case Management Conference.

[10]  *See Id.*

[11]  *See* Ex. 6, to Lovell Decl., Transcript of July 16, 2018 Case Management Conference.

[12]  *See* Ex. 5, to Lovell Decl., Minutes of Apr. 16, 2018 Case Management Conference.

[13]  *See* Ex. 10, to Lovell Decl., Joint Case Management Conference Statement dated Sept. 10, 2018.

[14]  *See* Ex. 6, to Lovell Decl., Transcript of July 16, 2018 Case Management Conference; Ex. 11, to Lovell Decl., Joint Case Management Conference Statement dated Nov. 29, 2018.

[15]  *See* Ex. 7, to Lovell Decl., Minutes of Dec. 4, 2018 Case Management Conference.

[16]  *See* Ex. 11, to Lovell Decl., Joint Case Management Conference Statement dated Nov. 29, 2018.

[17]  *See* Ex. 6, to Lovell Decl., Transcript of July 16, 2018 Case Management Conference.

defense and indemnity of claims, and the effect of other insurer settlements.[18]  With the

blessing of the California Superior Court, the parties also agreed on the selection of a

mediator.  Most parties participated in a mediation on October 23-24, 2018, which was

followed by additional discussions pursuant to the mediation.[19]

### D. Discovery Served and Motions Filed in the California Coverage Action.

National Union and Central National served requests for production in September

of 2017 and February of 2018, respectively, and the Superior Court permitted further

discovery on certain parties related to certain causes of action.[20]

On June 18, 2018, the Certain Excess Insurers filed motions for summary

adjudication as to Central National and Unigard, seeking declarations that, upon

exhaustion of the underlying primary policies, Central National and Unigard were

obligated to defend and indemnify Cyprus Mines or its successors.  The Superior Court

denied this motion as to Central National on December 5, 2018, holding that the motion

was premature in light of the fact that plaintiffs sought a determination on a potential

duty to indemnify on satisfaction of certain conditions (exhaustion of primary), but

invited plaintiffs to renew the motion on a showing that those conditions had been

satisfied (*i.e.*, that the underlying policies had been exhausted).[21]  The hearing on

---

[18]  *See* Ex. 11, to Lovell Decl., Joint Case Management Conference Statement dated Nov. 29, 2018.

[19]  *See Id.*

[20]  *See* Ex. 8, to Lovell Decl., Joint Case Management Conference Statement dated Apr. 11, 2018; Ex. 9, to Lovell Decl., Joint Case Management Conference Statement dated July 11, 2018.

[21]  *See* Ex. 3, to Lovell Decl., Order Denying Plaintiffs' Motion for Summary Adjudication Without Prejudice, No. 17-560919 (Cal. Super. Ct., Dec. 5, 2018).

Plaintiffs' motion against Unigard has been continued per court-approved stipulation.[22]

> **E.**      **The April 26 Case Management Conference In The California Coverage Action.**

When the Debtors filed their Chapter 11 petition, they notified coverage counsel for the insurers in the California Coverage Action that "[l]itigation against non-debtor entities, including Cyprus, will not be subject to the automatic stay."[23] Thereafter, the California State Court "suspended all deadlines" in the California Coverage Action on February 19, 2019, to evaluate the effect of the bankruptcy on the coverage action. A case management conference was scheduled for April 26, 2019, before Judge Anne-Christine Massullo, but has been continued at Debtors' request because of the omnibus hearing that day in this Chapter 11 case.

> **F.**      **This Court's Order Lifting The Stay With Regard to the Cyprus Historical Policies.**

Having previously advised all counsel that "[l]itigation against non-debtor entities, including Cyprus, will not be subject to the automatic stay," *supra* fn. 25, on March 25, 2019, the Debtors announced that they had agreed to a form of order clarifying that the automatic stay, to the extent applicable, should be lifted to allow all parties to perform under the Cyprus Historical Policies.

In entering the order that the Debtors handed up, the Court made clear that in lifting the stay, with respect to the Cyprus Historical Policies, all those involved "could

---

[22]   Lovell Decl., ¶ 14.

[23]   Ex. 12, to Lovell Decl., Email Correspondence from A. Elbert of Neal, Gerber, and Eisenberg for Imerys to all counsel, dated Feb. 13, 2019.

be jeopardizing their coverage if they don't perform the way they ought to perform. You'll have whatever rights you ought to have."[24]  The Bankruptcy Court also ordered that "no payment by an Insurer under a Cyprus Historical Policy to or for the benefit of any Cyprus Entity shall be deemed void … outside the scope of such Insurer's policy or policies, by reason of the actual or potential applicability of the automatic stay to such payment."  *Id.*

In line with the Bankruptcy Court's response and the Debtors' correspondence on the day they filed their petition, no party suggested that the stay proscribed the Moving Insurers' rights to litigate coverage issues in the California Coverage Action.[25]

## ARGUMENT

## I.    THE AUTOMATIC STAY DOES NOT APPLY TO THE CLAIMS BY AND BETWEEN NON-DEBTORS IN THE CALIFORNIA COVERAGE ACTION

The automatic stay does not apply to the Moving Insurers' requests for declaratory relief against Cyprus in the California Coverage Action, which is using the policies right now, or for the relief sought among the insurers with respect to Cyprus, since Section 362(a)(1) of the Bankruptcy Code only applies to actions *against* the debtor, not actions by or against a non-debtor and the Third Circuit[26] disaggregates claims within a

---

[24]  Ex. 2, to Schweon Decl., Mar. 25, 2019 Transcript of Hearing before Judge Silverstein.

[25]  *See* Ex. 3, to Schweon Decl., Final Order Granting Cyprus Mines Corporation and Cyprus Amax Minerals Company (I) Relief from the Automatic Stay Under Bankruptcy Code § 362(d) to Use Insurance Coverage Under Cyprus Historical Policies and (II) Related Relief, Dkt. 309 (Mar. 26, 2019).

[26]  Determining whether the instant adversary proceeding is core requires the Court to analyze each count of the Complaint individually.  *See In re Mullarkey*, 536 F.2d 215, 223 (3rd Cir. 2008) (noting that the extent of a bankruptcy court's jurisdiction must be evaluated on a claim-by-claim basis); *In re John A. Rocco Co., Inc.*, No. 10-18799, 2015 WL 1727474, at *4

judicial action and examines each claim independently.

Nor does the automatic stay apply to the Certain Excess Insurers' request for declaratory relief or a determination of the equitable rights among insurers with respect to the claims against Cyprus under the Cyprus Historical Policies.  The automatic stay applies only to Debtors and does not prevent litigation from proceeding against non-debtors.  *See In re DESA Holdings Corp*., 353 B.R. 419, 425 (Bankr. D. Del. 2006) ("It is a tenet of bankruptcy law that the automatic stay provisions of § 362 of the Bankruptcy Code apply only to debtors and do not prevent litigation from proceeding against non-debtors."); *In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207 (Bankr. D. Del. 1995) ("the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor.").

The automatic stay also does not apply to the Moving Insurers defense of claims brought against them by Imerys since: (a) Section 362(a)(1) of the Bankruptcy Code only applies to actions *against* the debtors, not actions (including counterclaims) *by* the debtors (b) the Moving Insurers are in a defensive posture with respect to the claims tendered against them by Imerys and Cyprus; and (d) non-debtor parties retain the ability to defend themselves against claims by a debtor.

The presence of overlapping legal issues is insufficient to extend the stay to non-debtors.  *Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 405 B.R. 113, 126-28

_____

(Bankr. D.N.J. Apr. 13, 2015).

(Bankr. D. Del. 2009) (refusing to extend automatic stay to claims against debtor's president, despite debtor's obligation to indemnify president); *Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Serv.*, 426 B.R. 520, 523-26 (E.D. Pa. 2010) (same).

Should this Court determine that certain claims raised in the California Coverage Action are stayed as to Debtors, under the Third Circuit's disaggregation doctrine, "the Bankruptcy Court's jurisdiction must be evaluated on a claim-by-claim basis," and claims against non-Debtors would proceed, as would the claims by Debtors against other parties. *In re Mullarkey*, 536 F.3d at 223; *In re John A. Rocco Co.,* 2015 WL 1727474 at *4.

## II. EVEN IF THE STAY APPLIES TO SOME ASPECT OF THE CALIFORNIA COVERAGE ACTION, THERE IS AMPLE CAUSE FOR RELIEF UNDER SECTION 362(d)(1) OF THE CODE

Even if § 362(a) of the Bankruptcy Code is applicable to the California Coverage Action, the automatic stay should be lifted or modified to permit the California Coverage Action to proceed.  Pursuant to § 362(g)(2) of the Bankruptcy Code, the Debtors bear the burden of proof to show the absence of cause for relief under subsection 362(d)(1).  *See In re Skipworth*, 69 B.R. 526, 528 (Bankr. E.D. Pa. 1987) (debtor carries the "ultimate burden of proof" to show absence of cause for relief from stay under § 362(d)(1)).  The Debtors cannot show the absence of cause for relief from the stay.

### A. If Applicable, the Stay Should be Lifted Because 28 U.S.C. § 1334 Prohibits this Court from Hearing the California Coverage Action.

Cause exists to lift the stay because this Court cannot hear any aspect of the California Coverage Action.  Section 1334(c)(2) of the Judicial Code requires that the

Court abstain from hearing the California Coverage Action.  Alternatively, discretionary

abstention is appropriate under Section 1334(c)(1) of the Judicial Code.

### 1.    28 U.S.C. § 1334(c)(2) Requires That This Court Abstain from Hearing the Coverage Action

Section 1334(c)(2) of the Judicial Code requires that the Court abstain from

hearing the California Coverage Action.  It:

> Upon timely motion of a party in a proceeding based upon a
> State law claim or State law cause of action, related to a case
> under title 11 but not arising under title 11 or arising in a case
> under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent
> jurisdiction under this section, the district court shall abstain
> from hearing such proceeding if an action is commenced, and
> can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

Pursuant to 28 U.S.C. § 1334(c)(2), this Court "*shall* abstain" if the following five

criteria are met:  (1) the proceeding is based on a state law claim or cause of action; (2)

the claim or cause of action is "related to" a case under title 11, but does not "arise

under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not

have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is

commenced" in a state forum of appropriate jurisdiction; and (5) the action can be

"timely adjudicated" in a state forum of appropriate jurisdiction.  *Stoe v. Flaherty*, 436

F.3d 209, 213 (3d Cir. 2006), *as amended* (Mar. 17, 2006) (emphasis in original).

All five criteria are met here.  Where such criteria are met, bankruptcy courts must

abstain from exercising jurisdiction.  *See In re Muralo Co.*, No. 03-26723 (Bankr. D.N.J.

July 28, 2003), Transcript for July 28, 2003 Hearing, at 111-13 (hereinafter "Muralo

Transcript") (holding that 28 U.S.C. § 1334(c)(2) required mandatory abstention from state court insurance coverage action).[27]  Moreover, bankruptcy courts in mass tort bankruptcies have routinely abstained when faced with pre-petition coverage actions.[28]

There is no dispute that the California Coverage Action is based on state law contract and declaratory relief claims and does not assert a federal cause of action. Because complete diversity among the parties is lacking, and because the California Coverage Action involves no federal question, the action could not have been commenced in a federal court.  Plaintiffs commenced the California Coverage Action in the Superior Court of San Francisco, a court of appropriate jurisdiction.

The California Coverage Action also does not "arise under" title 11, a question equivalent to whether the California Coverage Action "is a core proceeding" under 28 U.S.C. § 157(b)(2).  *Stoe v. Flaherty*, 436 F.3d at 217, as amended (Mar. 17, 2006).  Non-core, "related to" proceedings are subject to mandatory abstention if, as here, the proceeding could only arise under state law and "could conceivably have any effect on the estate being administered in bankruptcy."  *Id.* at 216; *Mt. McKinley Ins. Co. v.*

---

[27] *See* Ex. 4 to Schweon Decl., Transcript of the July 28, 2003 Hearing before Judge Stern in *In re Muralo Co.*, No. 03-26723, Dkt. 233 (Bankr. D.N.J. Aug. 20, 2003).

[28] *See, e.g., St. Paul Fire and Marine Ins. Co. v. A.P.I. Inc.*, No. 05-139, 2005 U.S. Dist. LEXIS 4793, at *12 (D. Minn. Mar. 23, 2005) (holding that under § 1334(c)(2) the court must abstain from adjudicating the underlying asbestos-related insurance coverage action); *In re Muralo Co.*, No. 03-26723 (Bankr. D.N.J. Aug. 20, 2003); July 28, 2003 *Muralo* Hearing Transcript, at 111-13 [hereinafter "Muralo Transcript"] (holding that § 1334(c)(2) required mandatory abstention from state court insurance coverage action involving asbestos claims); *In re Congoleum*, No. 03-51524 (Bankr. D.N.J. Mar. 22, 2004); Feb. 2, 2004 *Congoleum* Hearing Transcript, at 41 [hereinafter, "*Congoleum* Transcript"] (order granting mandatory abstention pursuant to § 1334(c)(2) and stay relief in state insurance coverage action in asbestos bankruptcy).

*Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) ("[n]on-core, 'related-to' proceedings are

subject to mandatory abstention if 'an action is commenced, and can be timely

adjudicated, in a State forum of appropriate jurisdiction.').  Insurance coverage disputes

are not statutorily-enumerated core proceedings.[29]  *E.g., In re Stone & Webster, Inc.*, 367

---

[29]  *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 450 (2d Cir. 2005) (vacating stay of asbestos-related coverage litigation, finding that claims raised in declaratory judgment action were not core to the bankruptcy proceeding); *In re Burger Boys, Inc.*, 183 B.R. 682 (S.D.N.Y. 1994) (holding that declaratory judgment action to resolve coverage disputes was a non-core proceeding); *In re Amatex Corp.*, 107 B.R. 856, 863 (E.D. Pa. 1989) (holding that a Chapter 11 debtor's declaratory judgment action seeking determination of the extent of insurers' liability for asbestos-related claims against debtor was a non-core proceeding), *aff'd*, 908 F.2d 961 (3d Cir. 1990) ; *In re Ramex Int'l, Inc.*, 91 B.R. 313, 315 (E.D. Pa. 1988) ("It is clear and this Court finds that trustee's cause of action for a declaratory judgment under a policy of insurance issued pre-petition to the debtor is not a core proceeding … Indeed, the proceeding does not involve a substantive right created by the federal bankruptcy law and could have been brought independent of the bankruptcy proceeding and determined according to state law."); *G-I Holdings, Inc. v. Hartford Accident and Indem. Co.* (*In re G-I Holdings, Inc.*), 278 B.R. 376, 381 (Bankr. D.N.J. 2002) (holding that insurance coverage action was non-core and stating that an environmental coverage action under pre-petition insurance policies "does not invoke a substantive right provided by title 11," and that such a "proceeding also need not have arisen in a Chapter 11 case, and in fact, the litigation was commenced, and has been proceeding in state court for a number of years prior to the filing of the bankruptcy petition").  *See also In re Titan Energy, Inc.*, 837 F.2d 325, 329-30 (8th Cir. 1988) (holding that bankruptcy court should have abstained from hearing insurer's "non-core" action which sought rescission of insurance policies and declaratory judgment as to scope of coverage); *Rosen-Novak Auto Co. v. Honz*, 783 F.2d 739, 742 (8th Cir. 1986) (insurance coverage dispute and Insurer's right to cancel policy for non-payment was non-core proceeding); *Maryland Casualty Co. v. Aselco, Inc.*, 223 B.R. 217, 220 (D. Kan. 1998) (insurer's state court declaratory judgment action seeking non-coverage was non-core because it "could exist outside of a bankruptcy case"); *In re U.S. Brass Corp.*, 198 B.R. 940, 945-46 (N.D. Ill. 1996) (holding that a declaratory judgment action filed in state court concerning the scope of insurance policies was non-core), *aff'd* in relevant part, vacated in part, 110 F.3d 1261 (7th Cir. 1997) (holding that proceedings brought for determination of coverage provided by debtor's insurance policies were non-core proceedings); *In re Pharmakinetics Labs., Inc.*, 139 B.R. 350, 353 (D. Md. 1992) (remanding action to state court because the claim hinged on non-core insurance coverage disputes); *Miller v. Western States Life Ins. Co.* (*In re Investment and Tax Services, Inc.*), 1989 WL 62098, *7 (D. Minn. June 9, 1989) (trustee sought to recover as beneficiary on life insurance policy, and court found its dispute against insurance company to be non-core); *In re Pied Piper Casuals, Inc.*, 65 B.R. 780, 781 (S.D.N.Y. 1986) (holding that trustee's adversary proceeding concerning insurance coverage was non-core where "a duty to pay — indeed coverage — under the

B.R. 523, 523 (Bankr. D. Del. 2007) (finding insurance coverage dispute non-core

because the coverage claims were asserted and litigated pre-petition).

The California Coverage Action was commenced pre-petition outside the

bankruptcy context on the basis of rights arising under state contract and insurance law.

The United States Supreme Court has held that an action for breach of a pre-petition

contract—an action "involv[ing] a right created by state law, a right independent of and

antecedent to the reorganization petition"—is a non-core proceeding.  *N. Pipeline Constr.*

*Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84, 87 (1982) (plurality opinion).  The Third

Circuit has affirmed that a declaratory judgment action regarding coverage under a pre-

petition insurance policy is a non-core proceeding under 28 U.S.C. § 157(b)(2).  *Amatex*

*Corp. v. Aetna Cas. & Surety Co.*, 107 B.R. 856, 863 (E.D. Pa. 1989), *aff'd* 908 F.2d 961

(3d Cir. 1990); *see also In re John A. Rocco Co.*, 2015 WL 1727474 at *4 (holding that

---

instant policy is sharply contested, the contrary of a recognition of any duty to pay . . . and
far from a mature obligation payable on demand.") (citation omitted); *In re Molten Metal
Technology, Inc.*, 271 B.R. 711, 714-15 (Bankr. D. Mass. 2002) (trustee's action seeking
declaration of rights under pre-petition insurance policy did not arise under the Bankruptcy
Code and was not a core proceeding); *Dayton Title Agency, Inc. v. Philadelphia Indemnity
Ins. Co.* (*In re Dayton Title Agency, Inc.*), 264 B.R. 880, 884 43 (Bankr. S.D. Ohio 2000)
(debtors' adversary proceeding to recover from insurer for alleged breach of contract, breach
of fiduciary duty, and tortious bad faith in denying coverage under the policy was non-core);
*B-U Gulf USA Corp. v. Federal Ins. Co.* (*In re Gulf USA Corp.*), 1995 WL 653383, *1
(Bankr. D. Idaho Oct. 25, 1995) (debtor's adversary proceeding seeking declaratory
judgment as to coverage was non-core because "the claim does not depend upon bankruptcy
law for its existence"); *In re R.I. Lithograph Corp.*, 60 B.R. 199, 203-04 (Bankr. D.R.I. 1986)
("we are unable to agree that [the insured's] action against [the insurer] seeking
reimbursement and/or indemnification for losses allegedly covered under a contract of
insurance is a core proceeding."); *Acquisition Group, Inc. v. Utica Mutual Ins. Co.* (*In re
Baldwin-United Corp.*), 52 B.R. 541, 547-48 (Bankr. S.D. Ohio 1985) (debtor's adversary
proceeding for declaration of coverage was non-core, because it did not fall into any of the
core matters enumerated by § 157(b)).

each individual claim asserted in insurance coverage action was a non-core proceeding, "[b]ecause the issue of coverage under an insurance policy is a question of state law that routinely arises outside the context of a bankruptcy case, claims for insurance coverage are typically considered non-core.").  And even if the coverage claims could bring assets into the bankruptcy estate, this is not relevant in the Third Circuit to whether the claims constitute a core proceeding.  *Phar–Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1239 n. 19 (3d Cir. 1994) (finding that a pre-petition breach of contract claim that could bring property into the estate was "precisely the type of proceeding that is non-core and outside the power of the bankruptcy court to adjudicate").

Lastly, the facts in this case satisfy the timely adjudication requirement.  *In re Trans World Airlines, Inc.* illustrates the approach adopted by courts in this circuit to address the timely adjudication requirement.  278 B.R. 42, 52 (Bankr. D. Del. 2002). There, the Bankruptcy Court held that the state court action could be timely adjudicated in state court because (i) the state court was more familiar with claims that were "dependent solely on a determination of state law and in no way implicate[d] the provisions and/or principles of the Bankruptcy Code," and (ii) the state court action and bankruptcy proceeding were "commenced on the same date . . . indicat[ing] that the [state action] should be at least as far along." *Id.*  In *Trans World Airlines* and other cases in this Circuit, heavy weight is given to a state court's experience with state court issues in assessing whether a matter may be timely adjudicated.  *See, e.g., In re Kamine/Besicorp Allegany, L.P.*, 214 B.R. 953, 975 (Bankr. D.N.J. 1997) (where a state court action had been actively litigated for over one year prior to the debtor's bankruptcy filing, another

- 18 -

Bankruptcy Court in the Third Circuit held that the state court action could timely

adjudicate the matter); *see also Muralo* Transcript, at 112-13 (holding that non-core

insurance coverage action pending in state court for nine months can be timely

adjudicated by that state court).[30]

The California Coverage Action was pending for more than a year before the

Petition Date and is far more advanced than the state court case was in *Trans World

Airlines* and in *Kamine*.  All the relevant parties have been served and joined in one

action, extensive meet and confers have taken place, a mediator engaged, discovery

served, motions filed and addressed, and the issues narrowed.

Furthermore, California has a special framework for resolving complex coverage

matters that ensures no "backlog" occurs with respect to such matters.  The California

Coverage Action is designated as "complex" under the California Rules of Court and

assigned to San Francisco Superior Court's Complex Civil Department Program.  Under

the Complex Civil program, a "complex case" is "an action that requires exceptional

judicial management to avoid placing unnecessary burdens on the court or the litigants

and to expedite the case, keep costs reasonable, and promote effective decision making

by the court, the parties, and counsel."[31]  One factor in determining whether an action is

complex is whether the court must consider "numerous pretrial motions raising difficult

---

[30]  Ex. 4, to Schweon Decl.; *see also Congoleum* Transcript, at 39 (Ex. 5, to Schweon Decl.)
(order holding that coverage action could be timely adjudicated by state court despite the fact
that no trial date is scheduled).

[31]  *See* Cal. Rules of Court, Civil Rules, Rule 3.400(a).

or novel legal issues."[32]  According to the California Rules of Court, "an action is provisionally a complex case if it involves . . . [i]nsurance coverage claims" arising out of "environmental or toxic tort claims involving many parties."[33]

These special procedures for complex actions such as mass tort coverage disputes help resolve such claims in a timely manner for purposes of 28 U.S.C. § 1334(c)(2). Indeed, the Complex Civil Department Program was created and organized for the very purpose of handling complex claims such as the California Coverage Action.

Further, Complex Department judges manage the case by "continuously and actively" applying judicial management.  2019 Cal. Rules of Court, Standards of Judicial Administration, Section 3.10(a) Complex Civil Litigation.[34]  Such judges are selected for their ability, interest, training, and experience in the particular kind of case.  *Id.* at Sections 3.10(c) and (f).  Time limits are regularly used to expedite major phases of complex litigation.  *Id.* at 3.10(d).  Such limits are established early, and firmly maintained.  *Id.*  Moreover, Complex Department matters are assigned to a judge who is ready and able to take on the case and resolve it quickly.  California's approach is designed to give each court the time and resources needed to focus on complex cases while attempting to resolve these cases as efficiently as possible.  Judges in the complex courts typically have reduced caseloads compared to judges in non-complex courts, and do not have criminal calendars that could take precedence over civil matters.

---

[32]  *See Id.* at Rule 3.400(b)(1).

[33]  *See Id.* at Rule 3.400(c)(7).

[34]  *See* Cal. Rules of Court, Standards of Judicial Administration, Section 3.10.

Thus, the facts here easily satisfy the timely adjudication standard for mandatory abstention.

### 2.    Discretionary Abstention from the California Coverage Action is Also Appropriate Pursuant to 28 U.S.C. § 1334(c)(1)

Even if this Court determines that mandatory abstention does not apply, then discretionary abstention would nevertheless be appropriate.  The Judicial Code provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  28 U.S.C. § 1334(c)(1); *see also In re Porter-Hayden Co.*, 304 B.R. 725 (Bankr. D. Md. 2004) (granting insurer's motion to abstain pursuant to § 1334(c)(1) where state issues predominated over bankruptcy issues regarding plaintiff's pre-petition insurance contracts covering asbestos-related liabilities).  Courts in the Third Circuit have considered numerous factors in determining whether to permissively abstain from hearing a proceeding pursuant to § 1334(c)(1).  The relevant factors include the following:

(1)    the effect or lack thereof on the efficient administration of the estate if a court recommends abstention,

(2)    the extent to which state law issues predominate over bankruptcy issues,

(3)    the difficulty or unsettled nature of the applicable law,

(4)    the presence of a related proceeding commenced in state court or other non-bankruptcy court,

(5)    the jurisdictional basis, if any, other than 28 U.S.C. § 1334,

(6)    the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

- 21 -

(7)     the substance rather than form of an asserted 'core' proceeding,

(8)     the feasibility of severing state law claims from core bankruptcy matters,

(9)     the burden of [the bankruptcy court's] docket,

(10)    the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

(11)    the existence of a right to a jury trial, and

(12)    the presence in the proceeding of non-debtor parties.

*See Trans World Airlines, Inc.*, 278 B.R. at 52.

Here, each of these factors is readily satisfied or does not apply.  The state court action indisputably involves only state law issues.  Moreover, the case was found to involve complex issues of law when it was assigned to the Complex Division on October 2, 2017.  Respect for the state court and the time and effort that it has already devoted to the case warrant abstaining in favor of the state court.[35]

Furthermore, the parties have jury trial rights in the state court, which cannot be honored in the bankruptcy court without the consent of all parties.  *See Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990) ("The Seventh Amendment limitations on the review of jury findings are not compatible with section 157(c)(1), which requires that any contested finding by the bankruptcy court must be reviewed de novo.  By the Seventh

---

[35]  *See In re Siragusa*, 27 F.3d 406, 408-09 (9th Cir. 1994) (affirming abstention under § 1334(c)(1) where bankruptcy court deferred to state court determination in the interest of comity); *In re Owen-Johnson*, 115 B.R. 254, 258 (Bankr. S.D. Cal. 1990) (exercising discretion to abstain under § 1334(c)(1) where there was a "pending state court action… set for trial" and the state court had "already had a number of hearings on the merits of the underlying litigation" and "had an opportunity to become familiar with the factual and legal background of the suit."); *In Re Franklin*, 179 B.R. 913, 929 (Bankr. E.D. Cal. 1995) (noting that "much of federal bankruptcy jurisdiction is concurrent with state courts and should be construed in light of principles of comity and optimal judicial administration.").

Amendment, any fact found by a jury cannot be reviewed de novo.  Accordingly, a

bankruptcy court cannot conduct a jury trial in a non-core proceeding."); *Matter of Cont'l*

*Airlines, Inc.*, 156 B.R. 441, 444 (Bankr. D. Del. 1993) (bankruptcy court granted motion

for permissive abstention partly because defendants had requested a jury trial); 28 U.S.C.

§ 157(e).

The bankruptcy court can only conduct a jury trial with the express consent of all

the parties which is not the case here.[36]  Even if this Court had "related to" jurisdiction

over the coverage issues, it could only issue proposed findings of fact and conclusions of

law, creating an additional layer of judicial review on top of the delay attendant to

beginning anew before another court.

Because all of the Moving Insurers have requested a jury trial in the California

Coverage Action on all issues for which trial by jury is permitted by law,[37] this factor

also weighs in favor of abstention.  *Beard*, 914 F.2d at 443; *Matter of Cont'l Airlines*, 156

B.R. at 444.

Considerations of efficient administration also weigh in favor of the Court

abstaining in favor of the California Coverage Action, given the California courts'

familiarity with insurance coverage actions generally and the fact that all the relevant

entities are parties to that action.  *See Bualcor/Morristown Ltd. P'ship v. Vector*

---

[36] Section 157(e) of the Judicial Code provides:  "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."

[37] *See* Ex. 4 to Lovell Decl., Plaintiffs' Second Amended Complaint, p. 29.

*Whippany Assocs.*, 181 B.R. 781, 793 (D.N.J. 1995) ("resolving the various claims will be quicker in the forum where the process of adjudication is already well underway. Any task left over for the bankruptcy court will be made the simpler thereby"). Respect for the state court and the time and effort it has devoted to adjudicating the case further warrants abstaining in favor of the state court. *Id.* ("Comity with [the New Jersey state court] requires that this Court respect [the state judge's] efforts to manage the case by declining to exercise jurisdiction over it [pursuant to 28 U.S.C. § 1334(c)(1)]."); *see also Marks v. Outboard Marine Corp.*, 974 F. Supp. 406, 410-11 (D.N.J. 1997).

On top of these factors, the timing of the commencement of the proceeding in bankruptcy court when motions and discovery were pending in the California Coverage Action are sufficient to support a finding that there is at least a likelihood that the case involves forum shopping by the Debtors. Therefore, this Court should abstain from deciding state law insurance questions at issue in the state court action.

**B.      Granting Relief From the Automatic Stay Will Not Prejudice the Debtors, but Rather Will Benefit All Parties**

The Debtors will not suffer prejudice if the stay is lifted since the California Coverage Action merely seeks a declaration regarding the liability of the Moving Insurers. Any Plan that may be offered is virtually certain to contemplate that the coverage issues at stake in the California Coverage Action will be litigated or otherwise resolved either before or after confirmation. As such, the only impact on the Debtors of allowing the California Coverage Action to proceed will be that a decision in the California Coverage Action will be rendered sooner rather than later. Such a decision

will benefit all parties involved, including the Debtors, because it has the potential to resolve important issues in the first instance before the parties expend considerable time and energy (and judicial resources) arguing, during the confirmation process, over insurance coverage issues in the abstract.[38]

Where, as here, there is a prospect that important issues raised in a state court action can be decided *before* the confirmation of a Plan, courts in this Circuit and elsewhere have readily modified, lifted, or annulled the automatic stay to permit such actions to proceed to resolution before confirmation. *See, e.g., In re Levitz Furniture Inc.*, 267 B.R. 516, 523 (Bankr. D. Del. 2000) (holding that, even if stay did apply, it should be annulled where the issues raised in a state court action "must be decided before the confirmation of the Debtors' plan of reorganization, whose feasibility is premised on the effectiveness of [certain agreements]"); *Matter of Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992) (granting relief from stay to allow prosecution of class-action lawsuit against debtor where the claim against the debtors would have to be resolved prior to confirmation).[39]

---

[38] Because Imerys has separate coverage and bankruptcy counsel, continuation of the coverage action will not unduly burden Imerys' reorganization counsel or management personnel.

[39] *See also Montague Pipeline Techs. Corp. v. Grace/Lansing (In re Montague Pipeline Techs. Corp.)*, 209 B.R. 295, 304-07 (Bankr. E.D.N.Y. 1997) (lifting stay to allow a state court action confirming an arbitration award to proceed to judgment, in part because "the Debtor would be precluded from proposing a realistic plan of reorganization without having the confirmation award finalized"); *In re Marvin Johnson's Auto Serv.*, 192 B.R. 1008, 1018-19 (Bankr. N.D. Ala. 1996) (lifting stay to allow a claim against the estate to be reduced to sum certain because otherwise "the case may be in limbo" and resolution of the state court action, estimated by the parties to conclude within six months, would not cause an "undue" delay in the administration of the case).

Unless the California Coverage Action is allowed to proceed, this Court will be placed in the position of being asked to confirm a plan that potentially releases the Debtors forever from their asbestos liability, but without knowing whether the alleged benefits of potential insurance are entirely illusory. The Future Claimants Representative and asbestos claimants will also benefit from knowing whether there is coverage. As in *Levitz* and *Rexene*, all will benefit by the immediate lifting of the automatic stay to allow the California Coverage Action to proceed.

### C.    Cause Otherwise Exists for Relief From the Automatic Stay

Should this Court decide that the automatic stay is applicable, this Court should grant relief for "cause" under § 362(d)(1) of the Bankruptcy Code. Under § 362(d)(1), relief from the stay to proceed with a state court action *shall* be granted for cause. "Cause" is an intentionally broad and flexible concept which must be determined on a case-by-case basis. *In re Brown*, 311 B.R. 409, 412 (E.D. Pa. 2004). The Third Circuit discussed and applied the "for cause" standard in *In re Wilson*, 116 F.3d 87 (3d Cir. 1997). In that case, the Third Circuit observed that it must assess "cause based on the totality of the circumstances in each particular case." *Id*. at 90. As set forth in *Wilson*, cause exists to lift the stay where the federal courts are prevented from hearing a state court action due to abstention or other doctrines. In addition, cause exists to lift the stay when circumstances warrant.

The California Coverage Action involves traditional non-federal contractual and insurance law issues. Where, as here, the coverage action is governed exclusively by

state law, there is no question that cause exists to lift the stay.[40]  Relief from a stay is

particularly appropriate "if the non-bankruptcy suit involves multiple parties," as here,

where 14 insurers and various non-debtor corporate entities have been joined in the

California Coverage Action.  *In re SCO Grp., Inc.*, 395 B.R. 852, 857 (Bankr. D. Del.

2007); 3 Collier on Bankruptcy P 362.07[3][a] (16th ed. 2019).  Cause unequivocally

exists in this case to grant relief from the automatic stay pursuant to § 362(d)(1).

Similarly, bankruptcy courts in this Circuit consider other factors that may be

determinative of cause—any one of which alone would likely be sufficient to warrant

lifting the automatic stay.  Although by no means exhaustive, such additional factors

include:  (i) Whether any great prejudice to either the bankruptcy estate or the debtor will

result from continuation of the civil suit; (ii) Whether the hardship to the non-bankruptcy

party by maintenance of the stay considerably outweighs the hardship to the debtor; and

(iii) Whether the creditor has a probability of prevailing on the merits.  *In re*

*Scarborough-St. James Corp.*, 535 B.R. 60, 68 (Bankr. D. Del. 2015).

On similar showings, bankruptcy courts in other mass tort bankruptcies have

readily lifted the automatic stay, if applicable, to allow insurance coverage litigation to

proceed.  For example, the court in *In re Congoleum Corp.* lifted the automatic stay, if

---

[40]    *See In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986) (district court did not
abuse its discretion in terminating automatic stay to give state law claimants a right to have
claims heard in state court); *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990)
("Where a bankruptcy court may abstain from deciding issues in favor of an imminent state
court trial involving the same issues, cause may exist for lifting the stay as to the state court
trial."); *In re Ozai*, 34 B.R. 764, 767 (9th Cir. B.A.P. 1983) (holding that the lifting of the
stay was "essential to allow the case to proceed in the state court.").

applicable, to allow insurers to proceed with a pre-petition state court insurance declaratory judgment coverage action. *Congoleum Transcript*, at 41-42. In *In re Quigley Co.*, 361 B.R. 723, 743-45 (Bankr. S.D.N.Y. 2007), the bankruptcy court granted certain insurers relief from the automatic stay to pursue arbitration of asbestos-related coverage issues, concluding that "stay relief will have a greater chance of encouraging a complete resolution of the issues. . . and will promote 'the interests of judicial economy and the expeditious and economical resolution of litigation.'" (*quoting Sonnax Indus. Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus. Inc.*), 907 F.2d 1280 (2d Cir. 1990)). *See also In re Muralo Co.*, No. 03-26723 (Bankr. D.N.J. Aug. 20, 2003).

### 1. There Will be No Significant Prejudice if the California Coverage Action is Allowed to Proceed

All parties will benefit if the coverage issues are resolved by the State Court. The state court in California is, after all, the forum in which all the relevant parties are joined in one action to litigate, and in which the Moving Insurers have consented to litigate the coverage dispute in the first instance, the most competent and experienced forum to render a determination of the California state law coverage issues, and the jurisdiction where the issues are already advanced.

### a. The Debtors Will Not Be Harmed

The Debtors will suffer no prejudice if the stay is lifted since the California Coverage Action only seeks a declaration as to the interpretation of the policies and does not seek any monetary relief against the Debtors. *See In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (debtor will not suffer prejudice if district court declaratory

- 28 -

action proceeds where same issues are raised as in bankruptcy).  It is in the Debtors'
interest to have the matters at issue in the California Coverage Action resolved as soon as
possible so that their reorganization may progress in a meaningful way.  As such, the
policy concerns underlying the imposition of the automatic stay simply do not apply
here.[41]

Coverage litigation has continued successfully post-petition in various other mass
tort bankruptcies in separate state court proceedings without disturbing the administration
of the bankruptcy estate.  For example,

- *In re Specialty Prods. Holding Corp., et al.*, No. 10-11780 (Bankr. D. Del., Aug. 16, 2010) (bankruptcy court lifted stay to allow state court coverage trial to proceed);[42]

- *In re Fed. Mogul-Global, Inc.*, No. 01-10578 (Bankr. D. Del., Apr. 25, 2007) (coverage litigation proceeded in district court originally and then in the state courts after the bankruptcy court lifted the stay and abstained);[43]

- *In re Congoleum Corp. et al*, No. 03-51524 (Bankr. D.N.J., Mar. 22, 2004) (debtors participated in coverage litigation, proceeded through discovery, and later to the completion of trial);[44]

- *In re AC&S*, No. 02-12687 (Bankr. D. Del., Dec. 8, 2003) (debtors participated in coverage arbitration, district court proceeding and appeal

---

[41]  *See In re Tarkio Coll.*, 137 B.R. 34, 36-37 (W.D. Mo. 1992) (adopting  recommendation of bankruptcy court that discretionary abstention was warranted where, *inter alia*, debtor college was no longer in operation and had filed a plan of liquidation that could proceed irrespective of the outcome of the state court action).

[42]  *See* Ex. 6 to Schween Decl., Agreed Order Modifying Automatic Stay (Aug. 16, 2010).

[43]  *See* Ex. 7 to Schween Decl., Excerpted Docket of *In re Fed. Mogul-Global, Inc.*, No. 01-10578, at Dkt. 12151, Order Granting Certain Insurers' Joint Motion for Relief from the Automatic Stay to Commence a State Court Insurance Coverage Action Against Debtor (Apr. 25, 2007).

[44]  *See* Ex. 8 to Schween Decl., Order Concerning Motion for Declaration that Section 362(a) of the Bankruptcy Code is Not Applicable or, in the Alternative, for Relief from the Automatic Stay, Dkt. 497 (Mar. 22, 2004).

that continued throughout the bankruptcy case);[45]

- *In re Duro Dyne Nat'l Corp. et al.*, No. 18-27963 (Bankr. N.J., Dec. 19, 2018) (bankruptcy court lifted stay to permit claims in a pre-petition coverage action to proceed);[46]

- *In re Mid-Valley, Inc.*, No. 03-35592 (Bankr. W.D. Pa., Feb. 10, 2004) (debtor formally acceded to a request that the bankruptcy court grant relief from the automatic stay to allow a related state court insurance coverage litigation to proceed during the pendency of the reorganization);[47]

- *In re Owens Corning*, No. 00-03837 (Bankr. D. Del., May 21, 2001) (debtors participated in coverage litigation in state court and in multiple separate arbitrations that continued throughout the bankruptcy case);[48]

- *In re Kaiser Gypsum Co., et al.*, No. 16-31602 (Bankr. W.D.N.C., Oct. 12, 2017) (bankruptcy court lifted stay to permit appeals and cross-appeals in a coverage case against the debtor to proceed);[49]

- *In re Lakeland Dev. Co.*, No. 2:12-bk-25842 (Bankr. C.D. Cal., Dec. 9, 2015) (bankruptcy court lifted stay to permit claims and cross-claims in a coverage action to proceed);[50]

- *In re Lloyd E. Mitchell, Inc.*, No. 06-13250 (Bankr. D. Md., Dec. 12,

---

[45] *See* Ex. 9 to Schweon Decl., Excerpted Docket of *In re AC&S*, No. 02-12687, at Dkt. 922, Order Granting Motion for Relief from Automatic Stay (Dec. 8, 2003).

[46] *See* Ex. 10 to Schweon Decl., Order Granting Certain Insurers' Motion for Relief From Stay, Dkt. 350 (Dec. 19, 2018).

[47] *See* Ex. 11 to Schweon Decl., Order Granting the Ace Companies' Relief From the Automatic Stay, Dkt. 541 (Feb. 10, 2004).

[48] *See* Ex. 16 to Schweon Decl., Excerpted Docket of *In re Owens Corning*, No. 00-03837, at Dkt. 1899 Order (i) Approving Compromise of Claims & (ii) Lifting the Automatic Stay Between the Debtors, Continental Casualty Co. & William Dean Thompson & Oletha Pearl Thompson (May 21, 2001).

[49] *See* Ex. 12 to Schweon Decl., Order Granting Motion for Relief from Stay to Pursue Appeal of State Court Action, Dkt. 669 (Oct. 12, 2017).

[50] *See* Ex. 13-A to Schweon Decl., Order Granting Ace's Motion to Lift the Automatic Stay, to the Extent the Stay Applies, Dkt. 679 (Dec. 9, 2015); Ex. 13-B to Schweon Decl., Stipulation to Order Resolving Motion for Relief from the Automatic Stay (Action in Non-Bankruptcy Forum), Dkt. 811 (Apr. 4, 2019), and Ex. 13-C to Schweon Decl., Stipulated Order Resolving Motion for Relief from the Automatic Stay (Action in Non-Bankruptcy Forum), Dkt. 811-1 (Apr. 4, 2019).

2008) (bankruptcy court lifted stay to allow state court coverage trial to proceed);[51]

- *In re Plant Insulation Co.*, Case No. 09-31347 (Bankr. N.D. Cal., May 21, 2009) (bankruptcy court lifted stay to allow state court coverage trial to proceed).[52]

### b.    The State Court is Highly Competent to Decide the Non-Core, State Law Coverage Issues at Stake Therein

The California Superior Court judges assigned to the Complex Division are among the most experienced in the Superior Court.  The Complex Division has overseen some of the most complex insurance coverage cases in the nation, including *C.F. Braun & Co., v. Ins. Co. of N. Am.*, 2004 WL 5134919 (Cal. Super. Ct., 2004), which addressed novel issues associated with horizontal exhaustion.  The Court has already held five case management conferences which have developed the facts, legal issues, and brought to the surface the subtleties at stake in the California Coverage Action.  The Complex Division is well-suited to decide the coverage issues.

Moreover, the questions of insurance coverage in the California Coverage Action involve novel matters of state law and are non-core under the California Rules of Court.[53] In such cases, bankruptcy courts have routinely lifted the automatic stay.  *See Marine Terminals Corp. v. St. Paul Fire & Marine Ins. Co.*, 1990 WL 174478, *2 (N.D. Cal. 1990) (noting, with approval, the bankruptcy's court lift of the automatic stay to allow the

---

[51]    *See* Ex. 14-A to Schweon Decl., Order Granting Travelers Motion for Relief from Stay to Fully Participate in Insurance Coverage Litigation Pending in the Circuit Court of Maryland for Harford County, Dkt. 816 (Dec. 12, 2008); Ex. 14-B to Schweon Decl., Order Granting Joint Motion of Onebeacon America Insurance Company and Lloyd E. Mitchell, Inc. for Modification of Automatic Stay by Consent, Dkt. 834 (Jan. 8, 2009).

[52]    *See* Ex. 15 to Schweon Decl., Order Modifying Automatic Stay, Dkt. 35 (May 21, 2009).

[53]    *See supra*, nn. 31-33.

creditors to proceed with their suit for breach of contract based on denial of insurance coverage); *In re Glen Ivy Resorts, Inc.*, 171 B.R. 98, 100 (Bankr. C.D. Cal. 1994) (discussing an earlier grant of relief from stay to allow an insurer to commence a "non-core" declaratory relief action in state court to determine insurance coverage); *see also Commercial Union Ins. Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 31 B.R. 965, 972 (S.D.N.Y. 1983) (concluding that all issues regarding the debtor's asbestos insurance coverage should be decided in the pending California state court action, which could determine all issues involving all insurers).[54]

### c.   All of the Necessary Parties are Parties to the California Coverage Action

The State Court forum is the one that all the parties, including the Debtors, have chosen to resolve the coverage dispute.  Since the California Coverage Action began more than a year before the Petition Date, all the parties with an interest in the coverage dispute have made appearances in State Court and have consented to the State Court's jurisdiction.[55]  Fourteen insurers are joined as parties in the California Coverage Action.[56]

---

[54] *See Travelers Indem., Co. v. The Babcock and Wilcox Co. (In re The Babcock and Wilcox Co.)*, 2002 WL 100625, *3-4 (E.D. La. Jan. 23, 2002) (withdrawing non-core coverage dispute from bankruptcy court because the "contract action is a creature of state law and does not involve rights created by bankruptcy law" and "[r]esolution of the insurance issues in one proceeding before this [District] Court will obviate any need to appeal the bankruptcy court's ruling and will bring the matter to a more expeditious resolution."); *In re Burger Boys, Inc.*, 183 B.R. 682, 688-89 (S.D.N.Y. 1994) (affirming grant of relief from stay which allowed a state-court action to proceed where state-law claims at issue were non-core); *In re OMNA Med. Partners, Inc.*, 2000 WL 33712302, at *3 (Bankr. D. Del. June 12, 2000) (modifying automatic stay to allow parties to proceed with state-court litigation because "the issues [raised] are simply contract interpretation issues and are, by the terms of the contract, governed by Texas law.").

[55] *See* Lovell Decl. ¶ 15.

[56] *See* Lovell Decl. Ex 4. Insurer entities named as parties on the Second Amended Complaint

- 32 -

In addition, the entities listed in the Second Amended Complaint that seek benefits under some or all of the Cyprus Historical Policies are Cyprus Mines Corporation, Cyprus Amax Minerals Company, Imerys Talc America, Inc. (on its own and as successor to Luzenac America, Inc. and Cyprus Talc Corporation), Freeport-McMoRan, Inc., and Rio Tinto America, Inc. (formerly known as RTZ America Inc.).  It is highly doubtful that any other Court would have jurisdiction over all these parties.  In this context, it is vital that the California Coverage Action be permitted to conclude these matters not only to avoid duplicative litigation in multiple jurisdictions, but also to ensure that all interested parties' rights are protected.  *See In re OMNA Med. Partners, Inc.*, 2000 WL 33712302 at *4 (Bankr. D. Del. June 12, 2000) (modifying stay because the non-bankruptcy court "can determine the rights of all parties" as the court "has jurisdiction over all parties to the litigation, debtor and non-debtor."  Since the [non-bankruptcy] court can determine the rights of all parties under the allegedly terminated [contract], we believe it is appropriate to allow it to do so.").

> **d.   The California Coverage Action is at an Advanced Stage and All Indications Are That it Will be Promptly Decided**

Bankruptcy courts have consistently held that good cause exists for lifting the

---

are the Columbia Casualty Company, Continental Casualty Company, Certain Underwriters at Lloyd's London, Certain London Market Insurance Companies, The Continental Insurance Company, Employers Mutual Casualty Company, Lamorak Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Providence Washington Insurance Company, as successor to Unigard Insurance Company, Stonewall Insurance Company (N/K/A Berkshire Hathaway Specialty Insurance Company), ACE Property and Casualty Company, as successor in interest to policies issued by Central National Insurance Company of Omaha, American Insurance Company, and Truck Insurance Exchange.

automatic stay where litigation in another forum will advance its resolution.  *See, e.g., In re Kissinger*, 72 F.3d 107, 109 (9th Cir. 1995) (affirming bankruptcy court's grant of retroactive annulment of automatic stay because, *inter alia*, Chapter 11 petition was filed just before state court action was to go to jury).[57]  As discussed above and extensively in the Declaration of Matthew Lovell, the case has been actively litigation and dispositive motions and/or phased trials of discrete issues of state contract law could be filed and heard within the upcoming months.  The State Court has already issued administrative orders and is presumably poised to set a schedule for moving forward.[58]  A determination of the parties' rights under various insurance policies will be accomplished most expeditiously in the State Court.

The interests of judicial economy and the expeditious and economical resolution of litigation overwhelmingly support modifying the stay to allow the California Coverage Action to proceed in the California Superior Court.  When analyzing this particular factor, courts consider the status and nature of litigation in the stayed proceeding.  Where a stayed proceeding was poised to move to the disposition of issues, the stay is almost always modified to allow the proceeding to continue in the interests of judicial economy.  *See, e.g., In re Tucson Estates, Inc.*, 912 F.2d at 1169 (listing as one of the factors supporting abstention "the existence of prior litigation of those issues which had already

---

[57]    *See also In re Levanthol & Horwath*, 139 B.R. 109 (S.D.N.Y. 1992); *In re Wheeler Grp., Inc.*, 75 B.R. 200 (S.D. Ohio 1987); *In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr. D.N.J. 1998); *In re TriCare Rehab. Sys., Inc.*, 181 B.R. 569 (Bankr. N.D. Ala. 1994).

[58]    *See* Lovell Decl. ¶ 18.

begun in state court").[59]

Here, the Complex Division of the Superior Court has devoted resources to this matter over the course of 19 months, discovery has been served and motions filed, and the State Court is now poised to resolve key insurance coverage issues.[60]  *See In re Montgomery Ward Holding Corp.*, No. 97-1409, 2000 WL 33712307, at *7 (Bankr. D. Del. Sept. 1, 2000) (analyzing abstention factors under § 1334(c)(1) and deferring to pending state court action in the interest of comity); *In re Purina Mills, Inc.*, No. 99-3938, 2002 WL 125677, at *2 (Bankr. D. Del. Jan. 28, 2002) (same).  In the interests of judicial economy and comity, therefore, the California Coverage Action should be allowed to proceed.

### 2.    Great Hardship Will Inure to the Non-Debtors if Relief is not Granted

An additional basis for relief under § 362(d)(1) is whether non-debtor parties are

---

[59]    *See also Crown Heights Jewish Cmty. Council, Inc. v. Fischer* (*In re Fischer*), 202 B.R. 341, 355 (E.D.N.Y. 1996) (modifying the stay to allow another proceeding to continue where such proceeding had been pending for four years, discovery was nearing completion, and the non-bankruptcy court had already devoted substantial resources to that proceeding); *In re Wheeler Grp., Inc.*, 75 B.R. 200 (S.D. Ohio 1987) (lifting the stay where the case had already proceeded through "very substantial adjudicatory steps."); *Matter of Pursuit Athletic Footwear*, 193 B.R. 713, 719 (Bankr. D. Del. 1996) (modifying stay to allow another proceeding to continue where that court has heard testimony on merits of allegations and a pre-trial schedule has been set, indicative that a timely adjudication could be effected); *In re Saunders*, 103 B.R. 298, 299 (Bankr. N.D. Fla. 1989) (modifying the stay to allow state court litigation that had been pending for two years prior to debtor's bankruptcy filing to proceed, and noting that it could "perceive no rationale for curtailing" the efforts of two years in court only for a bankruptcy court to "retrace the same path").

[60]    Resources have been devoted by the State Court to resolving this case.  Among other things, multiple conferences have been held where the issues in dispute have been vetted and a structure and procedure reaching resolution set including on December 4, 2017, April 16, 2018, July 16, 2018, September 12, 2018, and December 4, 2018.  (Lovell decl. ¶ 16).

prejudiced by continuing the stay in effect.  Here, the Moving Insurers will suffer great hardship if the automatic stay is not lifted.  So, too, will bodily injury claimants, other creditors, and the Debtors themselves.

The parties to the California Coverage Action specifically chose and consented to that forum, and they have spent months meeting and conferring and honing the legal arguments regarding coverage issues.[61]  Throughout this time, pleadings have been filed, including complaints, answers, and cross-complaints.[62]  The Superior Court's Complex Department assigned to the case is familiar with the law and issues at stake, and a mediator has been involved.[63]

The parties have devoted significant resources to California Coverage Action.[64] As a practical matter, this kind of matter cannot be stopped and restarted without an enormous loss of resources.

## III.    THE COURT SHOULD ORDER ABSTENTION

For the reasons set out in Section I.A (1) and (2) above, the Court is required to abstain pursuant to 28 U.S.C. § 1334(c)(2) or, alternatively, discretionary abstention is appropriate under Section 1334(c)(1) with regard to the adjudication of the claims at issue in the California Coverage Action.  Separately, abstention is appropriate because the Bankruptcy Court is not being asked in the Adversary Proceeding to interpret the

---

[61]  *See generally* Lovell Decl.
[62]  *Id.*
[63]  *Id.*
[64]  *Id.*

- 36 -

insurance policies, but rather only the meaning of the Cyprus/Imerys Agreements.[65]

A. **The Adversary Proceeding Seeks Declaratory Relief Only With Regard to the Cyprus/Imerys Agreements, Not the Separate Insurance Policies; No Insurer is a Party of the Adversary Proceeding**

The Debtors filed their complaint initiating the Adversary Proceeding on March 7, 2019, asserting two causes of action, one for declaratory relief and the other for injunctive relief. The cause of action for declaratory relief seeks declarations as to the interpretation of the Cyprus/Imerys Agreements, which are contracts between the Debtors and Cyprus, and an injunction against Cyprus with respect to these agreements.[66] On March 29, 2019, Cyprus filed its Amended Counterclaim seeking counter-declarations concerning the interpretation of these same two agreements as against the Debtors.[67]

Neither the Debtors nor Cyprus seek a declaration with respect to the interpretation of the entirely separate contracts of insurance or the Moving Insurers' rights under the contracts of insurance.[68] The Debtors are not parties to any of the

---

[65]  The Moving Insurers do not seek to lift the Bankruptcy Court's stay on any claims for relief related to the Cyprus/Imerys Agreements.

[66]  *See* Debtors' Complaint at ¶29, Adv. Pro. No. 19-50115-LSS, Dkt. 1 (Mar. 7, 2019) ("***Pursuant to the ATA…***").

[67]  *See* Amended Answer and Counterclaim of Cyprus Mines Corp. and Cyprus AMAX Minerals Co. to the Debtors' Compl. for Injunctive and Declaratory Relief, Dkt. 26 (Mar. 29, 2019).

[68]  The Debtors make clear in their Answer that it is the Cyprus/Imerys Asset Transfer Agreement and Stock Purchase Agreement that are at issue in the Adversary Proceeding:

Under the ATA, Cyprus Talc Corporation (and, thus, ultimately, Imerys) broadly assumed the pre-transfer talc liabilities of Cyprus Mines and its subsidiaries. More specifically, the ATA (at ¶ 4) provides that Cyprus Talc Corporation:

shall assume and shall perform, pay, and discharge all of the liabilities or obligations, whether known or unknown, contingent or otherwise primarily relating to the Transferred Assets, including, without limitations, liabilities and obligations, whether known or unknown, contingent or otherwise arising out of

- 37 -

Cyprus Historical Policies and are not named as insureds or additional insureds in those policies.  Indeed, in answering the Cyprus Counterclaim on March 25, 2019, the Debtors, "admit[ted] that the Cyprus Historical Policies were not issued to any of the Debtors."[69] Hence, the contracts of insurance are not exhibits to the parties' pleadings in the Adversary Action, identified with specificity in the count for declaratory judgment, or cited in the parties' prayers for relief.

The contracts of insurance that the Moving Insurers entered into with Cyprus are separate and entirely independent contracts from the Cyprus/Imerys Agreements.

Because the Debtors and Cyprus only seek declaratory relief in the Adversary Proceeding as to the meaning of the Cyprus/Imerys Agreements, only the parties to those two agreements — the Debtors and Cyprus — are named as parties to the Adversary Proceeding.  None of the Moving Insurers were named as defendants in the Adversary Proceeding.  Nor is any relief sought against them or with respect to their separate contracts of insurance.

**B.**  **The Court Should Abstain from Making Declarations or Granting Relief In the Adversary Proceeding Regarding Contracts and Parties Not Before the Court**

It is black letter law that a court may not grant relief with respect to a contract that is not before the court.  *See Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 280–81 (D. Del.

---

the transactions or events occurring on or prior to the Closing and relating primarily to the Transferred Assets.

Imerys' Answer to Counterclaim, Dkt. 19, Adv. Pro. No. 19-50115 (Filed Mar. 25, 2019).

[69]  *See Imerys Talc America, Inc. et al. v. Cyprus AMAX Minerals Co. and Cyprus Mines Corp.*, No. 19-50115, Debtors' Answer to ¶5 of Cyprus Counterclaim, Dkt. 1 (Mar. 7, 2019).

1993) (denying requested relief where "defendant is asking the Court to interpret a

contract which is not before the Court.").  Basic notions of due process also preclude the

court from binding an insurer to an interpretation of a contract in an adversary proceeding

to which the insurer was not a party.  *In re Allen*, No. 13-14348, 2013 WL 1952338, at *4

(Bankr. D.N.J. May 10, 2013) (bankruptcy court's interpretation of contract did not apply

to nonparty to adversary proceeding); *see Chase Nat. Bank v. City of Norwalk, Ohio*, 291

U.S. 431, 441 (1934) ("Unless duly summoned to appear in a legal proceeding, a person

not a privy may rest assured that a judgment recovered therein will not affect his legal

rights."); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390,

1394 (Fed. Cir. 1996) ("courts of equity have long observed the general rule that a court

may not enter an injunction against a person who has not been made a party to the case

before it."); *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) ("On the other

hand no court can make a decree which will bind any one but a party") (Learned Hand,

J.).

 As the Bankruptcy Court clearly articulated in *In re Allen*, an adversary

proceeding directed at only two named defendants could not bind a nonparty as to the

bankruptcy court's interpretation of a stock purchase agreement.  *See In re Allen*, 2013

WL 1952338 at *4.  Had the court determined that the nonparty was bound, the court's

interpretation of the agreement would have otherwise impacted the nonparty's rights.  *Id.*

The Bankruptcy Court reasoned that "[i]t is a general principle of general application in

Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a

litigation in which he is not designated as a party or to which he has not been made a

party by service of process." Similarly, without being joined in the Adversary Proceeding, it is black letter law that should this Court interpret the Cyprus Historical Policies, such an order cannot bind nonparties to the adversary proceeding.

Because this Court has not been tasked in the Adversary Proceeding with interpreting the insurance policies, and the claims in the Adversary Proceeding only involve the meaning of the Cyprus/Imerys Agreements, this Court should abstain from making declarations or granting any relief on the meaning of the insurance policies in the Adversary Proceeding. *In re Porter-Hayden Co.*, 304 B.R. 725, 736 (Bankr. D. Md. 2004); *In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111, 126 (Bankr. D.N.J. 2003); *In re OMNA Med. Partners, Inc.*, 2000 WL 33712302, at *3-5 (Bankr. D. Del. June 12, 2000).

The state law issues raised by the interpretation of the policies properly arise under California law, not Delaware law. There are no bankruptcy or federal issues for this Court to address. These issues do not require the specialized bankruptcy expertise of the Court and are best left in the hands of the California state court, which is well familiar with complex insurance coverage issues.

## IV.    CONCLUSION

The Moving Insurers respectfully request that the Court enter an order that the automatic stay does not apply to their requests for declaratory relief with respect to the interpretation of the Cyprus Historical Policies or a determination of the equitable rights among insurers with respect to the claims against Cyprus under the Cyprus Historical Policies. If the Court concludes that the automatic stay applies to some aspect of the California Coverage Action, this Court should enter an order directing that the automatic

stay be modified pursuant to Section 362(d)(1) to allow the California Coverage Action

to proceed.  The Moving Insurers also respectfully request that this Court enter an order

abstaining from issuing any rulings in the Adversary Action on the interpretation of the

policies of insurance not before the Court in that proceeding pursuant to 28 U.S.C. §

1334(c)(2) or, alternatively, that discretionary abstention is appropriate under Section

1334(c)(1).

Dated:  April 19, 2019                    Respectfully Submitted,


                                          By:  */s/ Stamatios Stamoulis*
                                               Stamatios Stamoulis (#4606)

                                          STAMOULIS & WEINBLATT LLC
                                          800 N. West Street, Third Floor
                                          Wilmington, Delaware  19801
                                          Telephone:  +1 302 999 1540
                                          Facsimile:   +1 302 762 1688
                                          -- and --
                                          O'MELVENY & MYERS LLP
                                          Times Square Tower
                                          7 Times Square
                                          New York, New York  10036-6537
                                          Telephone:  +1 212 326 2000
                                          Facsimile:   +1 212 326 2061

                                          Tancred Schiavoni (*pro hac vice*)
                                          tschiavoni@omm.com
                                          Janine Panchok-Berry (*pro hac vice*)
                                          jpanchok-berry@omm.com

                                          *Counsel for Columbia Casualty Company,*
                                          *Continental Casualty Company, the*
                                          *Continental Insurance Company, as*
                                          *successor to CNA Casualty of California*
                                          *and as successor in interest to certain*
                                          *insurance policies issued by Harbor*
                                          *Insurance Company, Lamorak Insurance*
                                          *Company (formerly known as OneBeacon*
                                          *America Insurance Company), as successor*
                                          *to Employers' Surplus Lines Insurance*
                                          *Company, and Stonewall Insurance*
                                          *Company (now known as Berkshire*
                                          *Hathaway Specialty Insurance Company)*
                                          *to the extent that they issued policies to*
                                          *Cyprus Mines Corporation prior to 1989*

## CERTIFICATE OF SERVICE

I, Stamatios Stamoulis, certify that I am not less than 18 years of age, and that service of the foregoing **Memorandum of Points and Authorities in Support of Certain Excess Insurers' Motion for Relief from the Automatic Stay to Permit the California Coverage Action to Proceed and Order of Abstention** was caused to be made on April 19, 2019, in the manner indicated upon the entities identified on the attached service list and the parties identified below.

Dated:  April 19, 2019                          Respectfully Submitted,


                                                By:  */s/ Stamatios Stamoulis*
**Via Hand-Delivery**                                  Stamatios Stamoulis (#4606)

Sullivan Hazeltine Allinson LLC
William D. Sullivan
901 North Market Street, Suite 1300
Wilmington, DE 19801

**Via First Class Mail**

Allianz Life
Attn: Legal Department
780 9th Ave.
New York, NY 10019

Travelers
Attn: Legal Department
One Tower Square
Hartford, CT 06183

AIG Direct
Attn: Legal Department
9640 Granite Ridge Drive,
Suite 200
San Diego, CA 92123

AIU Insurance Co.
Attn: Legal Department
175 Water Street
24th Floor
New York, NY 10038

Central National Insurance Company of
Omaha
Attn: Legal Department
11128 John Galt Blvd # 450
Omaha, NE 68137

Kazan, McClain, Satterley & Greenwood
Steven Kazan
Denyse Clancy
55 Harrison Street, Suite 400
Oakland, CA 94607

Levy Konigsberg LLP
Moshe Maimon
Brendan Little
800 Third Avenue, 11th Floor
New York, NY 10022

Robert Dehney
Gregory Wekheiser
Matthew Talmo
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Paul Heath
Matthew Moran
Jordan Leu
Katherine Grissel
Vinson & Elkins LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201-2975

**<u>Via First Class Mail and Email</u>**

Squire Patton Boggs
Paul Kalish
2550 M Street NW
Washington, DC 20037
Paul.kalish@squirepb.com

Sara Thorpe
Matthew Lovell
Nicolaides Fink Thorpe Michaelides
Sullivan LLP
101 Montgomery
Suite 2300
San Francisco, CA 94104
sthorpe@nicolaidesllp.com
mlovell@nicolaisesllp.com

**<u>Via Email</u>**

John.conway@mclolaw.com

OMM_US:76771446.21