IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| IMERYS TALC AMERICA, INC., *et al.*, | Case No. 19-10289 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 26, 2019 at 2:00p.m. (ET) Objection Deadline: April 25, 2019 at 4:00 p.m. (ET)** |

**MOTION TO COMPEL DEBTORS' RESPONSES TO DISCOVERY IN AID OF THE OBJECTIONS TO THE DEBTORS' MOTION TO APPOINT A FUTURE CLAIMANTS REPRESENTATIVE, AND IN THE ALTERNATIVE, TO ADJOURN THE HEARING ON THE DEBTORS' MOTION TO APPOINT JAMES L. PATTON AS FUTURE CLAIMS REPRESENTATIVE**

The Certain Excess Insurers[1] respectfully file this Motion to Compel and, in the alternative, seek an Adjournment of the Hearing on the Debtors' Motion For Order Appointing James L. Patton, Jr., As Legal Representative For Future Talc Personal Injury Claimants, *Nunc Pro Tunc* To The Petition Date (DKT. 100), until Debtors provide the disclosures requested.

**ARGUMENT**

The Office of the United States Trustee and Certain Excess Insurers separately objected to Debtors' Motion to appoint James Patton as the Future Claimant's

---

[1] The "Certain Excess Insurers" are Columbia Casualty Company, Continental Casualty Company, the Continental Insurance Company, as successor to CNA Casualty of California and as successor in interest to certain insurance policies issued by Harbor Insurance Company, Lamorak Insurance Company (formerly known as OneBeacon America Insurance Company), as successor to Employers' Surplus Lines Insurance Company, and Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company) to the extent that they issued policies to Cyprus Mines Corporation prior to 1989.

1

Representative.[2]  In support of its objections, Certain Excess Insurers served fifteen narrowly tailored document requests and seven even more narrowly targeted Requests For Admission on the Debtors on March 22, 2019.  The Debtors refused to respond to the document requests other than to object and did not provide responsive answers to any of the requests for admission save one.

On March 25, 2019, Ms. Ramsey, counsel for the Official Committee of Tort Claimants, touted in open court that she is collaborating with Mr. Patton's counsel and Debtors and has been provided information on the tort claimants that she obtained from the Debtors.[3]  Mr. Patton also disclosed in his application that the Debtors gave Mr. Patton and his counsel access to a data room full of documents about the tort claims

---

[2] Dkt. 184, Certain Excess Insurers Limited Objection To Debtors' Motion For Order Appointing James Patton, As Legal Representative For Future Talc Personal Injury Claimants (March 13, 2019); Dkt. 347, United States Trustee's Objection To Debtors' Motion For Entry Of An Order Appointing James L. Patton, Jr., As Legal Representative For Future Talc Personal Injury Claimants, Nunc Pro Tunc To The Petition Date (Apr. 10, 2019); Dkt. 100, Debtors' Motion For Order Appointing James L. Patton, Jr., As Legal Representative For Future Talc Personal Injury Claimants, *Nunc Pro Tunc* To The Petition Date (Feb. 27, 2019).

[3] *See* Transcript of March 25, 2019 Hearing, Dkt. 310 at 20:10-19 ("Ms. Ramsey: As part of formulating a plan, the committee is going to be conducting a thorough investigation of the debtors' assets including potential litigation claims. And we have started moving forward with that investigation already. The debtor has begun to make documents and information available on an informal basis, and we are expecting to continue over the next few weeks, negotiation over further production. We intend to go through that information as quickly as possible.") and 21:13-17 ("Ms. Ramsey: …until that hearing is set, we are going to continue to work with Mr. Patton's office who has already, as the court knows, been engaged in prepetition due diligence with the debtor. And has been extremely helpful in bringing the committee up to speed."); *see also*, Transcript of April 12, 2019 Status Conference, Dkt. 369 at 18:7-10 ("Mr. Moran: . . . there's been discussion about the debtors making prior disclosures to the proposed future claims representative. Those disclosures may have -- I don't know -- included common interest information.").

generated into the defense of these claims.[4] The extent to which Debtors disclosed work product generated in the underlying defense of the tort claims to Mr. Patton goes directly to evaluating Mr. Patton's potential conflicts of interest under Bankruptcy Rule 2014 and Bankruptcy Code §§ 327(a) and 328(c).[5]

Certain Excess Insurers are facing demands in the tort system and need to know forthwith and with specificity what documents Mr. Patton has and has shared with the tort plaintiffs' counsel that may implicate the ongoing defense of these tort claims. Certain Excess Insurers requested Debtors' cooperation pursuant to provisions in the Cyprus Historical Policies that obligate policyholders to cooperate with insurers in the joint defense of tort claims. Cyprus made a similar request.[6] Only when Debtors' cooperation was not forthcoming did we serve discovery requests.

The discovery requests at issue are straightforward and few in number.[7] The document requests seek a copy of the claims database that Debtors provided to Mr. Patton and his counsel together with all fields in the database and the indices and other

---

[4] See Application for Future Claimants' Representative, Dkt. 101, at ¶ 16 (February 27, 2019).

[5] Certain Excess Insurers do not seek drafts of the Plan of Reorganization where there may be privileged documents between Debtors and the Future Claimants' Representative.

[6] See Transcript of April 12, 2019 Status Conference, Dkt. 369 at 18:11-17 ("Mr. Moran: . . . we've asked the question, but have not gotten an answer as to whether or not there has been common interest information disclosed to the proposed FCR. We have been told by the debtors that they do not believe that they, in any way, breached the common interest agreement, but they have not said whether common interest information has been disclosed.").

[7] See Declaration of D. Schweon ("Schweon Decl.") at Ex. 1, Certain Excess Insurers First Set of Requests for Production to Debtors; Schweon Decl. at Ex. 2, Certain Excess Insurers First Set of Requests for Admission to Debtors; Schweon Decl. at Ex. 3, Debtors' Responses to Insurers Requests for Production; Schweon Decl. at Ex. 4, Debtors Responses to Insurers Requests for Admission;

documents that describe the categories of documents that the Debtors made available to Mr. Patton and his counsel.[8]  They also seek correspondence between Debtors and Mr. Patton—or their counsel—and Scott Gilbert, who has been the subject of particular scrutiny and directives by the Third Circuit[9] arising from his extensive conflicts in asbestos bankruptcies.[10]  Debtors obfuscated rather than respond to these requests.  Efforts to get an answer from Mr. Bjork as to whether Mr. Gilbert is playing an undisclosed role in this case behind the scenes have gotten no answer other than that the Debtor has not hired Mr. Gilbert.[11]

Whether Mr. Gilbert is collaborating with Debtors and Mr. Patton should be disclosed; indeed, they have an affirmative fiduciary obligation to disclose such conflicts to the Court.  *See* 1 Collier on Bankruptcy (15th ed.) ¶ 8.01[1]; *In re Congoleum Corp.*, 426 F.3d 675, 687 (3d Cir. 2005) ("Bankruptcy professionals are required to examine their relationship not only based on the two-party litigation model, but also one guided by

---

[8]   *See* Schweon Decl. at Ex. 1, Certain Excess Insurers First Set of Requests for Production to Debtors, at Nos. 1 and 6.

[9]   *In re Congoleum Corp.*, 426 F.3d 675, 679, n. 12 (3d Cir. 2005) (discussing Scott Gilbert's several conflicts and holding that "Gilbert would have been acting under a concurrent conflict under either version of the [New Jersey Rules of Professional Conduct]" and precluding Gilbert's retention under the Rules of Professional Conduct and the Bankruptcy Code); *In re Pittsburgh Corning*, 308 B.R. 716 (Bankr. W.D. Pa. 2004) (the bankruptcy court refused to allow a fee of $30 million to be received by Gilbert in representing the asbestos claimants' committee. The judge found Scott Gilbert had a conflict of interest in that pre-package asbestos proceeding.).

[10]  Schweon Decl. at Ex. 1, Certain Excess Insurers First Set of Requests for Production to Debtors, at Nos. 9-10; *see* Schweon Decl. at Ex. 5, Letter from T. Schiavoni for Certain Excess Insurers to J. Bjork, Counsel for Debtors, Dated April 16, 2019; Schweon Decl. at Ex. 6, Letter from K. Posin, Counsel for Debtors, to T. Schiavoni, Dated April 18, 2019.

[11]  Schweon Decl. at Ex. 6, Email from K. Posin, Counsel for Debtors, to T. Schiavoni, Dated April 18, 2019 ("Your April 16 letter also questions the involvement of Scott Gilbert. Scott Gilbert has not been retained by the Debtors.").

"a stricter, fiduciary standard.").

The Requests For Admission are similarly highly targeted. Six of the seven requests ask simply that the Debtor admit or deny that a particular category of document generated in connection with the underlying defense was provided to Mr. Patton and his counsel. For example, the Requests ask Debtors to admit whether, before commencement of Imerys' bankruptcy, "Imerys and/or its counsel provided Mr. Patton and/or his counsel with":

- Doc. Request No. 1: "documents generated by defense counsel charged with defending [talc-related or asbestos-related] claims asserted against Cyprus";[12]

- Doc. Request No. 2: "documents that refer to statements, opinions and/or finding by defense counsel charged with defending [talc-related or asbestos-related] claims asserted against Cyprus";[13]

- Doc. Request No. 3: "documents that relate to the defense of claims asserted against Cyprus";[14]

- Doc. Request No. 4: "documents that relate to Cyprus";[15]

- Doc. Request No. 5: "claims databases concerning bodily injury claims asserted against Cyprus."[16]

The Debtors failed to provide the required admission or denial to these requests. It speaks volumes that Debtors cannot deny these requests, which were designed to flush

---

[12] Schweon Decl. at Ex. 2, Certain Excess Insurers First Set of Requests for Admission to Debtors, at No. 1.

[13] *Id.* at No. 2.

[14] *Id.* at No. 3.

[15] *Id.* at No. 4.

[16] *Id.* at No. 5.

out what Debtors revealed to the tort claimants about the claims for which they seek insurance coverage. Despite attempting to resolve these discovery disputes with Debtors outside of Court on April 16 and April 18, 2019, Debtors refuse to produce documents or respond in any meaningful way to the Requests.[17]

A mass of information on the claims against Cyprus was conveyed through the data room to Mr. Patton. In addition, it is apparent that the Debtors provided Mr. Patton with a database of the work generated by defense counsel to the Debtors or Cyprus. The almost $1 million in fees that Mr. Patton and his counsel have run up reviewing these documents and the database speaks to the breath of the scope and contents of the database and dataroom.[18] Debtors' counsel has also been upfront in acknowledging that Mr. Patton is working with the tort plaintiffs' counsel and sharing information with them.[19]

It is a fundamental requirement of the Bankruptcy Code and Bankruptcy Rules that a professional seeking employment must disclose all of its connections with creditors and reveal any interests adverse to the estate. *See* 11 U.S.C. §§ 101(14), 327(a) and Bankruptcy Rule 2014. Disclosure "goes to the heart of the integrity of the bankruptcy system." *In re Universal Bldg. Prod.*, 486 B.R. 650, 663 (Bankr. D. Del. 2010) (failure of

---

[17] *See* Schweon Decl. at Ex. 5, Email from T. Schiavoni for Certain Excess Insurers to J. Bjork, Counsel for Debtors, Dated April 16, 2019; Schweon Decl. at Ex. 6, Email from K. Posin, Counsel for Debtors, to T. Schiavoni, Dated April 18, 2019.

[18] *See* Dkt. 347, Objection of U.S. Trustee to Future Claimants' Representative at ¶ 6.

[19] Schweon Decl. at Ex. 6, Email from K. Posin, Counsel for Debtors, to T. Schiavoni, Dated April 18, 2019 ("to the extent the Debtors are working to get both the Tort Committee and the proposed FCR up to speed on issues central to the Debtors' bankruptcy proceedings, we believe this is precisely what the Court would expect (if not demand) from the parties at this early stage of the case.").

prospective counsel for unsecured creditors committee to provide complete and accurate disclosure at the outset of their connections with creditors warranted denial of committee's applications); *In re eToys, Inc.*, 331 B.R. 176, 187 (Bankr. D. Del. 2005); *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236–38 (Bankr.E.D.Cal.1988) (disqualifying special counsel who failed to disclose that it represented co-defendants in litigation it was handling for debtor).

The duty to disclose conflicts of interests under Bankruptcy Rule 2014 is "sacrosanct." *See, e.g., In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994); *see generally* 9 Collier on Bankruptcy ¶ 2014.03 (15th ed. 2004). Timely and complete disclosure supports the Bankruptcy Court's obligation " 'to root out impermissible conflicts of interest' under Bankruptcy Code §§ 327(a) and 328(c)." *In re eToys, Inc.*, 331 B.R. 176, 189–90 (Bankr. D. Del. 2005) (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)). Thus, Mr. Patton's potential conflicts of interest must be disclosed.

The information sought is directly relevant to the motion to retain Mr. Patton and his counsel. The U.S. Trustee's Objection explains in depth the conflicts that Mr. Patton and his counsel may have. To the extent Debtors turned over to Mr. Patton work product generated in the defense of claims and information that reveals strategies and defense assessment of the claims, disclosure needs to made of this before consideration of Mr. Patton's retention.[20] Among other things, the Debtors production of work product or otherwise confidential information to Mr. Patton and the tort claimants may prejudice

---

[20] Certain Excess Insurers do not seek drafts of the Plan of Reorganization where there may be privileged documents between Debtors and the Future Claimants' Representative.

7

Certain Excess Insurers' defense of these tort claims. To the extent Debtors refuse to respond to document requests and RFAs on this subject, Debtors cannot meet their burden of showing Mr. Patton's disinterest.

The two objections that the Debtors asserted as an excuse for not providing any discovery are frivolous.[21]

Privilege does not excuse the Debtors non-compliance. The discovery requests seek documents that the Debtors disclosed to third-party tort claimants about the tort claims against them. The Debtors have adverse interests to the future claimants. *See, e.g., In re Amatex Corp.*, 755 F.2d 1034, 1042-43 (3d Cir. 1985) ("None of the parties currently involved in the reorganization proceedings have interests similar to those of future claimants."). Indeed, Debtors' privilege objection highlights precisely why Debtors must disclose the information they turned over to Mr. Patton to disclose to third-party tort claimants. In any event, any alleged claims of privilege was waived by the Debtors' failure to provide a privilege log of any kind.

Nor is Debtors' standing objection well founded. The bankruptcy court decision in *Mid-Valley* on which the Debtors rely was superseded by the Third Circuit's

---

[21] Debtors and Mr. Patton have an affirmative duty to disclose conflicts of interests under Bankruptcy Rule 2014. *See, e.g., In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994); *see generally* 9 Collier on Bankruptcy ¶ 2014.03 (15th ed. 2004). The bankruptcy court must be given timely and complete disclosure to "exercise its own ongoing affirmative responsibility 'to root out impermissible conflicts of interest' under Bankruptcy Code §§ 327(a) and 328(c)." *In re eToys, Inc.*, 331 B.R. 176, 189–90 (Bankr. D. Del. 2005) (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)). Thus, the existence and extent of Mr. Patton's potential conflicts of interest with the estate are required to be disclosed.

subsequent ruling in *Congoleum*. In *Century Indem. Co. v. Congoleum Corp. (In re Congoleum Corp.)*, 426 F.3d 675 (3d Cir. 2005), the Third Circuit held that insurers had standing to challenge the retention of professionals. Courts apply *Congoleum* broadly, finding that even parties with no stake in the bankruptcy have standing to challenge ethical concerns. *See Fischetti v. Scarpone*, No. CIV.A. 06-4838(SRC), 2008 WL 877853, at *2 (D.N.J. Mar. 28, 2008) (defendant in adversary proceeding had no "actual stake" in the bankruptcy proceeding, but nonetheless had standing to be heard regarding a potential conflict of interest involving the U.S. Trustee).

Even more than the appointment of special insurance counsel in *Congoleum*, the retention of a Future Claimants Representative will affect the resolution of issues that may directly affect the rights of insurers and fairness to the asbestos claimants. *See In re Global Indus. Techs., Inc.*, 645 F.3d 201, 214 (3d Cir. 2011) (en banc) (Insurers had standing to object to plan where their non-frivolous allegations of collusion between debtor's counsel and asbestos claimants' counsel called into question the integrity of the bankruptcy process, and no one else involved in the case was likely to raise that issue). As the retention raises of a future claimants representative raises procedural due process concerns that implicate the integrity of the bankruptcy court proceeding as a whole, the insurers indisputably have standing based on Third Circuit's ruling.

## CONCLUSION

Certain Excess Insurers respectfully request that the Court order the Debtors to comply with the document requests and requests for admission attached as Exhibits 1 and 2 to the Schweon Declaration. In the alternative, Certain Excess Insurers seek an

adjournment of the hearing on Debtors' Motion to Appoint James Patton as the Future Claimant's Representative until Debtors respond to the discovery requests.

Dated:  April 19, 2019                              Respectfully Submitted,


By: */s/ Stamatios Stamoulis*
    Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, Delaware  19801
Telephone:  +1 302 999 1540
Facsimile:   +1 302 762 1688

and

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:  +1 212 326 2000
Facsimile:   +1 212 326 2061

Tancred Schiavoni (*pro hac vice*)
tschiavoni@omm.com
Janine Panchok-Berry (*pro hac vice*)
jpanchok-berry@omm.com

*Counsel for Columbia Casualty Company, Continental Casualty Company, the Continental Insurance Company, as successor to CNA Casualty of California and as successor in interest to certain insurance policies issued by Harbor Insurance Company, Lamorak Insurance Company (formerly known as OneBeacon America Insurance Company), as successor to Employers' Surplus Lines Insurance Company, and Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company) to the extent that they issued policies to Cyprus Mines Corporation prior to 1989*