# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | Case No. 19-10289 (LSS) |
| Debtors. | Jointly Administered |
| | **Re: D.I. 100, 347, 348** |

**COMPENDIUM OF TRANSCRIPTS CITED IN THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' OMNIBUS (I) REPLY IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER APPOINTING JAMES L. PATTON, JR. AS LEGAL REPRESENTATIVE FOR FUTURE TALC PERSONAL INJURY CLAIMANTS AND (II) RESPONSE IN OPPOSITION TO THE MOTION OF THE UNITED STATES TRUSTEE TO APPOINT A LEGAL REPRESENTATIVE FOR FUTURE TALC PERSONAL INJURY CLAIMANTS**

| **Transcript** | **Exhibit** |
|---|---|
| *In re Maremont Corp.*, Case No. 19-10118 (KJC) (Bankr. D. Del.) Hr'g Tr. 76-78 & 100-103, Mar. 8, 2019 | 1 |
| *In re Leslie Controls Inc.*, No. 10-12199 (CSS) (Bankr. D. Del.) Hr'g Tr. p. 70–72, Aug. 9, 2010 | 2 |
| *In re Thorpe Insulation Co.*, No. 2:07-19271-BB (Bankr. C.D. Cal.) Hr'g Tr. 43–46, Dec. 12, 2007 | 3 |

---

[1] The above-captioned debtors in these cases (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. ("ITA") (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

# EXHIBIT 1

1                  UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF DELAWARE

2

                       .    Chapter 11
3  IN RE:                    .
                       .    Case No. 19-10118 (KJC)
4  MAREMONT CORPORATION, *et al.*,   .

5                       .    Courtroom No. 5
                       .    824 North Market Street
6                       .    Wilmington, Delaware 19801
                       .
7               Debtors.   .  March 8, 2019
. . . . . . . . . . . . . . . . .  10:00 A.M.

8

                  TRANSCRIPT OF HEARING
9          BEFORE THE HONORABLE KEVIN J. CAREY
            UNITED STATES BANKRUPTCY JUDGE
10

11  APPEARANCES:

12  For the Debtors:         James Conlan, Esquire
                     Andrew O'Neill, Esquire
13                   Allison Ross Stromberg, Esquire
                   Blair Warner, Esquire
14                   John Skakun, III, Esquire
                   SIDLEY AUSTIN LLP
15                   One South Dearborn Street
                   Chicago, Illinois 60603
16

17

18  Audio Operator:         Electronically Recorded
19                   by Al Lugano, ECRO

20  Transcription Company:  Reliable
                   1007 N. Orange Street
21                   Wilmington, Delaware 19801
                   (302)654-8080
22                   Email:  gmatthews@reliable-co.com

23  Proceedings recorded by electronic sound recording,
  transcript produced by transcription service.
24

25

1 now, Mr. Schepacarter?

2          MR. SCHEPACARTER:  Yes, Your Honor.  Thank you for

3 that break.  It was needed, let's say.

4          For the record, it's good afternoon now, Richard

5 Schepacarter for the United States Trustee.

6          Let me sort of address some of the arguments that

7 have been made in opposition.  But I first want to state

8 that, you know, the appointment of a future claims rep or an

9 FCR it's an important and appropriate form of relief in a

10 chapter 11 case involving significant asbestos liabilities.

11 And it's the Court and no one else who has the statutory

12 authority to make that appointment.

13          THE COURT:  That's what the Code says.

14          MR. SCHEPACARTER:  Yes.  Right.  The absence of

15 any statutory role for the debtor or the present asbestos

16 claimants represented by the committee here in the selection

17 of the futures claims rep confirms that it is a highly

18 sensitive role that requires complete independence.

19          Our office does not object to the appointment of

20 the future claims rep, but we do object to the process that

21 was used here to appoint an FCR basically by the debtors or

22 the parties in interest which disregards the Court's and the

23 statutory authority that's set forth in the Code.

24          THE COURT:  Well, interestingly enough as I sit

25 and hear the things I've heard today, and in preparation for

1  this hearing, the Code says, 524 says the Court shall

2  appoint, but it doesn't say who should propose.

3          So frankly, I'm not sure that it's inappropriate

4  for the U.S. Trustee to also propose an FCR.  If for some

5  reason the U.S. Trustee thinks that the debtor has proposed

6  someone who doesn't meet the standard, whatever I say it will

7  be in a few minutes.

8          And unfortunately this is an issue because of,

9  I'll confess, in getting ready for it what I had to look at

10  in terms of decisions by other courts were largely bench

11  rulings.  And as you know, I think not just me but I think my

12  colleagues as well, are loathe to rely on opinions that

13  aren't reported.  But that's pretty much, pretty much, what

14  I'm left with here.  And that's why I would like to write on

15  it, but unfortunately given the time constraints and the fact

16  that I don't plan to be in the office next week and with

17  confirmation coming up, combined disclosure and confirmation

18  coming up, I think I'll have to make a bench ruling.

19          MR. SCHEPACARTER:  Understood, Your Honor.  And I

20  think I'm going to, I want to try to address some of those,

21  the standard "the standard" that's applied, issue, not the

22  standard issue, but try to delve into that a little bit for

23  Your Honor, then maybe that will be helpful.

24          And as Your Honor sort of just touched upon, we

25  have sort of opened up the pool of candidates here.  We've

1  proposed two candidates, one who is here present and I

2  understand that the parties object to Mr. Connolly's

3  declaration.  Although we don't offer it into evidence, I

4  think Your Honor can take judicial notice of it and I'll get

5  to that point in a second, is that we offered the candidates,

6  not unlike you would do with a fee examiner, we offered names

7  and the Court has the opportunity to either reach out to

8  those parties or interview those parties.  Just because Mr.

9  Connolly isn't here, doesn't mean he's not available for

10  interview at some point of time.

11          THE COURT:  Although from Judge Bonapfel's

12  comments that I saw in the transcript, he didn't seem too

13  inclined to want to be the interviewer of a number of

14  different candidates.  And, frankly, I would tend to agree

15  with him.

16          MR. SCHEPACARTER:  Okay.  I mean, since it's Your

17  Honor's appointment, Your Honor, the Judges can do what they

18  feel is necessary and not just fully understand it.

19          THE COURT:  Okay, so to that point exactly.  And

20  again, I mentioned it the first day, Judge Bluebond mentioned

21  it in the case she had and that is the Code has moved, both

22  in the acumen of the Code and thereafter, has moved away from

23  having Judges choose professionals.  So when you say the

24  Judge can do whatever he can, I think what Congress tried to

25  do in the Code and has done since the enactment of Code was

1  independent.

2        The Trustee notes the debtor motions for the

3  appointment of an FCR have rarely, if ever, been denied and

4  contends that this results in an incentive for the debtors to

5  appoint an FCR that will be unlikely to vigorously litigate

6  against them often resulting in a decrease in payment

7  percentages to asbestos trusts.

8        Trustee also encourages the Court to limit the

9  amount of deference given to the debtors' nomination.

10  Trustee contends that because section 524(g) directs the

11  Court to appoint the FCR, the Court's role is an active one,

12  different from the appointment of other estate professionals.

13  The Trustee likens the debtors' appointment of an FCR to the

14  target of an investigation being allowed to choose the

15  section 1104 examiner who will conduct that investigation

16  where the debtor in possession being allowed to appoint the

17  members of a creditors committee.  Oh, wouldn't that be fun.

18        The Trustee requests additional oversight by the

19  Court and increased scrutiny into not only the

20  disinterestedness of a candidate but also the effectiveness.

21  Rendering this decision I give neither more nor less

22  deference to the debtors' nomination.

23        The ad hoc committee has filed a response to the

24  U.S. Trustee's motion and contends that Mr. Patton's

25  appointment as FCR is fair and reasonable, and indicates that

1  Mr. Patton's prepetition dealings were result of arms length

2  negotiations that resulted in the form of the plan and trust

3  distribution procedures.

4          The ad hoc committee shows concern for efficiency

5  and necessity in appointing a new FCR saying that if a new

6  FCR is engaged, that individual may well seek to retain a

7  separate cadre of professionals including asbestos estimation

8  legal counsel and financial advisors.

9          Each of these parties would then complete the same

10 analysis that was performed already by each of the

11 professionals already engaged while adding significant delay

12 and costs to these cases.

13         The ad hoc committee goes on to say that accepting

14 the position of the U.S. Trustee under these facts would

15 effectively destroy the ability to effectuate a prepackaged

16 bankruptcy case in its best and driven cases.  I'm not sure

17 it would destroy it, but I think it certainly at least under

18 these circumstances would impair it.

19         So for these reasons the Court will grant the

20 debtors' motion to allow Mr. Patton to serve as the FCR.  And

21 in this case I apply the disinterestedness standard in

22 determining whether he should be appointed and whether the

23 debtors' application to appoint him should be granted under

24 Section 101(14).

25         If it is correct that investigation into the

1  process of FCR appointments is necessary or to the extent the

2  system is flawed, that seems to be an exercise to be

3  undertaken by authorities other than the judiciary.

4      Mr. Patton has been involved in this case for over

5  a year, successfully assisting the stakeholders in getting to

6  a prepackaged plan.  Much money and time has already been

7  spent by Mr. Patton as his role, in his role as prepetition

8  FCR and it seems under these circumstances counterintuitive

9  to want to pay someone new to spend time and money getting

10  caught up.

11      Specifically, Mr. Patton is chairman of Young

12  Conaway, he has more than 30 years of experience with

13  asbestos litigation, bankruptcies and settlement trust.  He

14  serves as the FCR in Leslie Controls, UGL, Yarway, two of

15  which anyway are handled by my colleagues or were handled by

16  my colleagues.

17      Mr. Patton and his firm have represented other

18  future claimants in a number of asbestos related cases.  He's

19  not a creditor of the debtors and does not have an interest

20  materially adverse to any of the claimants.

21      The Trustee has not made a showing that Mr. Patton

22  would be anything but someone with undivided loyalties and

23  effective and independent.

24      So with that I will enter an order approving the

25  appointment of Mr. Patton and denying the U.S. Trustee's

1   motion.  I'll ask that parties confer and submit an order

2   under certification providing for that.

3           Are there any questions about what should go in

4   the order?  I hear none.  Shall we address remaining items on

5   the agenda?

6           MR. HARRON:  Thank you, Your Honor.  Again, for

7   the record, Ed Harron, counsel for the now approved futures

8   rep.

9           I believe the only two remaining agenda items are

10  the motions of the futures rep to retain Young Conaway and to

11  retain Ankura Consulting.

12          We had some questions from the Office of the

13  United States Trustee to which we responded.  And then we had

14  an informal agreement not to press those applications until

15  Your Honor ruled on the FCR motion.

16          If it pleases the Court, we simply can file

17  certificates of no objection at this time and handle it that

18  way.

19          THE COURT:  Is the U.S. Trustee okay with that?

20          MR. SCHEPACARTER:  That's fine, Your Honor.

21          THE COURT:  All right.  Is there anything else

22  that we need to talk about today?

23          MR. HARRON:  Thank you, Your Honor.

24          MR. O'NEILL:  As Your Honor noted, we do have the

25  confirmation hearing scheduled for March 18th.  Just for

1          I also see no reason why given the fact that the

2    Code does not specify who has the right to ask for a future

3    claims rep, the U.S. Trustee can't participate by making its

4    own suggestions.  I found in this case it was not appropriate

5    for the reasons I expressed.  Maybe in a different case it

6    would be different.  But I certainly do not fault the U.S.

7    Trustee for exercising what it views as its role in

8    protecting the integrity of the process.

9          MR. O'NEILL:  Thank you, Your Honor.

10         THE COURT:  With that done, we will adjourn.

11   Thank you all very much.

12         MR. O'NEILL:  Thank you, Your Honor.

13       (Proceedings adjourned 1:02 p.m.

14

15                   CERTIFICATE

16

17   We certify that the foregoing is a correct transcript from

18   the electronic sound recording of the proceedings in the

19   above-entitled matter.

20

21
     /s/Mary Zajaczkowski                    March 10, 2019
22   Mary Zajaczkowski, CET**D-531

23
     /s/Theresa Pullan                       March 10, 2019
24   Theresa Pullan, CET**D-972

25

# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                        )   Case No. 10-12199 (CSS)
                              )   (Jointly Administered)
                              )
LESLIE CONTROLS, INC.,        )   Chapter 11

                              )   Courtroom 6
                              )   824 Market Street
            Debtors.          )   Wilmington, Delaware
                              )
                              )   August 9, 2010
                              )   3:06 p.m.


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDGE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:            Cole Schotz Meisel Forman &
                        Leonard, PA
                        BY:  NORMAN PERNICK, ESQ.
                        BY:  MARIAN QUIRK, ESQ.
                        500 Delaware Avenue, Ste. 1410
                        Wilmington, DE  19801
                        302-652-2012


ECRO:                   LESLIE MURIN

Transcription Service:  DIAZ DATA SERVICES
                        331 Schuylkill Street
                        Harrisburg, Pennsylvania 17110
                        (717) 233-6664
                        www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service

1              THE COURT:  All right, thank you.  Well I'm going

2    to grant the motions and overrule the objections subject to

3    a couple comments or in addition I'll provide some comments.

4              One, in connection with the narrow issues in

5    front of the Court today which are -- is in effect the

6    retention -- well the appointment and -- of the FCR and the

7    retention of its counsel.  I think it's a very weak argument

8    that the insurers have standing on that issue.  I think that

9    in all likelihood were I to rule on it as opposed to

10   assuming it, I would rule there was no standing.  But given

11   where I am on the merits, I need not reach the standing

12   issue.  So assuming arguendo that the -- excuse me, that the

13   insurers have standing, I will nonetheless overrule the

14   objection based on the merits of their objection.

15             Specifically in connection with what standard

16   applies, I am going to apply the disinterestedness test.

17   And I would note that the disinterested test is the highest

18   level of duty or standard in the Bankruptcy Code for the

19   appointment of anybody.  It -- the legislative history of

20   the disinterestedness test goes back 70 years and came out

21   of the equity receivership issues that were identified in

22   the 1930's as being abusive.  And were designed specifically

23   to get pre-petition committees like they existed in those

24   days, as well as, lawyers who were appointing themselves all

25   the time out of the system and it's very strict.  So I don't

 1  think the disinterestedness test is some sort of layup, it's

 2  quite stringent.  And I also think it's the appropriate

 3  standard to apply in this case since none is specifically

 4  identified.

 5          There are issues about appearance, you know,

 6  actual conflict of interest versus implied conflict of

 7  interest, et cetera that could be applied.  But in any

 8  event, I don't believe and I find that there are no such

 9  allegations or concerns in this case.  I think the

10  appointment of a future claims representative to assist in

11  connection with negotiating the prepackaged plan is

12  appropriate and in many ways I would say preferable.  I

13  don't believe there's anything in the statute that -- well

14  first of all, the Bankruptcy Code doesn't say pre-negotiated

15  plan anywhere in it.  It talks about plans and it talks

16  about pre-packed plans. There is no such thing in the

17  Bankruptcy Code as a pre-negotiated plan.  It is something

18  that is developed over time and is a very efficient way to

19  get in and out of bankruptcy usually.  Designed to get a

20  case through, usually a case that really only involves a

21  financial restructuring, a fixing of the balance sheet, not

22  substantive business like issues.  And that's what we have

23  here.  This company is not in bankruptcy to fix itself from

24  an operational standpoint.  It's in bankruptcy to deal with

25  in effect a financial restructuring.

1          So to say somehow that 524(g), you know, doesn't

2   contemplate or a prepackaged plan of -- excuse me, a pre-

3   negotiated plan of reorganization I think misses the point.

4   The point is whether having Mr. Patton operating as an FCR

5   pre-petition and post petition somehow is so improper or

6   makes him not disinterested in such a way as to prevent him

7   being hired on a post-petition basis.  And it -- clearly in

8   my mind it does not.

9          I do not believe and do not find as -- I find

10  that Mr. Patton was not an employee of the debtor within the

11  previous two years.  I believe that the analogy of an ad hoc

12  committee, if you will, where the debtor is marrying the

13  burden of paying the cost of its adversaries is not uncommon

14  and, you know, the debtor should get used to it because once

15  they file bankruptcy it gets even worse.  So that doesn't --

16  that -- in this situation, that does not violate the

17  disinterestedness test.

18          Obviously, Mr. Patton is well-known to the

19  asbestos bar.  He's well-known to the bankruptcy bar

20  nationally.  He's well-known to the Delaware bar.  And I

21  have no doubt in my mind that he will work diligently on

22  behalf of the future claimants.  And I think it's an

23  interesting comment to say well the Court should appoint him

24  and not the debtor.  Well I am -- the act that I'm being

25  asked to do is to appoint him.  He's been brought forward by

# EXHIBIT 3

1                  UNITED STATES BANKRUPTCY COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3                            --oOo--

4    In Re:                      )  Case No. LA07-19271-BB
                                 )
5    THORPE INSULATION COMPANY,  )  Los Angeles, California
                                 )  Wednesday, December 12, 2007
6              Debtor.           )  10:00 a.m.
     _____)
7
                                 APPLICATION TO EMPLOY MORGAN,
8                                LEWIS & BOCKIUS, LLP AS
                                 SPECIAL INSURANCE COUNSEL AND
9                                ASSUMPTION OF PRE-PETITION
                                 RETENTION AGREEMENT
10
                                 APPLICATION TO EMPLOY CAPLIN &
11                               DRYSDALE AS CHARTERED NATIONAL
                                 BANKRUPTCY COUNSEL FOR THE
12                               OFFICIAL COMMITTEE OF
                                 UNSECURED CREDITORS OF THORPE
13                               INSULATION COMPANY

14                               APPLICATION TO EMPLOY HELLER,
                                 EHRMAN, LLP AS BANKRUPTCY CO-
15                               COUNSEL FOR THE OFFICIAL
                                 COMMITTEE OF UNSECURED
16                               CREDITORS OF THORPE INSULATION
                                 COMPANY
17
                                 APPLICATION FOR APPOINTMENT OF
18                               THE HONORABLE CHARLES B.
                                 RENFREW (RET.) AS FUTURES
19                               REPRESENTATIVE

20                               APPLICATION TO EMPLOY GARY
                                 SCOTT FERGUS AS ATTORNEY FOR
21                               FUTURES REPRESENTATIVE

22                               APPLICATION TO EMPLOY
                                 HONORABLE CHARLES B. RENFREW
23                               AS FUTURES REPRESENTATIVE

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

*Echo Reporting, Inc.*

43

1          THE COURT:  And are there any cases that you can

2  cite me to where a judge has refused to appoint a futures

3  representative based on any of the kinds of arguments that

4  you're making, mainly the fact that there's been employment

5  by that future representative in other cases?

6          MR. PLEVIN:  No, I can't, your Honor.  I've made

7  the argument.  The court in <u>Congoleum</u> disagreed with us, the

8  court in <u>W.R. Grace</u> disagreed with us, and the court in <u>Mid</u>

9  <u>Valley</u> found we didn't have standing, so it didn't reach the

10  merits.

11          THE COURT:  Uh-huh.

12          MR. PLEVIN:  Those are, I think, the only three

13  cases in which insurers have raised this issue.

14          THE COURT:  Okay.

15          MR. PLEVIN:  So I'm asking you to make new law,

16  and I'm doing it on the basis of asking you to look at the

17  purpose of 524(g), the history of 524(g) and the reason why

18  that's there.

19          As I said, the way this ought to work is that they

20  ought to come to the Court and say, your Honor, appoint a

21  future claimants representative.  You should then find

22  someone through whatever process you choose to use who does

23  not have prior connections with the Debtor or with the

24  current claimants and appoint that person.

25          And that person can then go forward and do all the

1 things that Mr. Renfrew would be doing in this case if he's

2 actually appointed, but they would be doing so without the

3 taint or potential taint of any questions about prior

4 connections that they've had with any of the parties in this

5 case.

6            THE COURT:  Okay.

7            MR. PLEVIN:  And I don't think that -- whatever

8 Mr. Renfrew's personal qualifications are or might be, I

9 don't think he's unique.  Certainly there are other future

10 claimants representatives throughout the country who have

11 been appointed, some multiple times.  There are others, I'm

12 sure, who could do a fine job, even though they've never

13 been appointed.

14            THE COURT:  Okay.  Well, thank you.  I don't agree

15 that there's a problem with Mr. Renfrew.  I think that --

16 you've made the argument about how it's different when you

17 have a client who can monitor the process, but whenever I

18 look at professionals in bankruptcy, I'm asked to appoint

19 somebody only if they're disinterested.  And that's a pretty

20 high standard.  As we all know, it's different from what

21 would be a conflict of interest out in the real world.

22            And to be disinterested, it seems to me that

23 disinterested in the standard is sufficient here, and that

24 the kinds of connections that you're talking about, the

25 kinds of past experiences, the kind of -- you know, having

1  done this work before, having worked in cases where the

2  other -- the other parties have played similar roles is not

3  enough to disqualify you or to keep you from being

4  disinterested.

5        And again, as far as the prepetition

6  representation goes, I don't think that's problematic either

7  in that it is an aligned representation.  It's aligned with

8  the representations he's doing now.  It's not that he

9  represented something different before.

10        I understand your point.  I just don't agree with

11 it.  And I think that this is a situation where even -- I

12 don't believe that it's appropriate for the judge to pick

13 the person in the sense that -- the policies that drove

14 getting me out of the business of appointing trustees, I

15 think, are comparable here.  So I don't think it's

16 appropriate for me to appoint my brother-in-law or whoever I

17 want it to be.

18        However, were I do solicit nominees and parties

19 were to come forward to me, and if Judge Renfrew or Mr.

20 Renfrew were one of them, I would not be concerned about the

21 prior experience that you're describing.  In fact, I think

22 it's -- I think here it's a good thing.  He's done this kind

23 of thing before.  He knows how to do this kind of thing.

24 He's already hit the ground running because he's already

25 been involved.  He already knows the specific facts of this

1  case.

2       I think there's some cost savings to be achieved,

3  some time savings to be achieved.  We're all eager to see

4  this case get to confirmation sooner -- a confirmation

5  hearing sooner rather than later.  The Debtor is asking in

6  the case management conference to set a plan of filing a

7  deadline of the initial exclusivity date.  That means we've

8  got to get -- we've got to get moving quickly.  And I think

9  somebody who was already at the table prepetition is a good

10  party to pick for that reason because that person, as I say,

11  is already doing the work, is already in it, doesn't have to

12  start fresh.

13       And were we to disqualify him at this point and

14  have to start afresh, you'd be making new phone calls, you'd

15  be trying to get somebody around the holidays to get

16  involved in this case, to learn something about this case,

17  and I think you'd get nowhere on this case for a couple of

18  months down the road until you had somebody new at the

19  table.  And I'd like to see us move forward more quickly

20  than that.

21       So as I said, I hear your arguments, I understand

22  them, but I don't agree with them.

23       MR. PLEVIN:  Your Honor, not to belabor the

24  argument, but I just wanted to see if I can confirm that

25  you're using the 101-14 disinterestedness standard in

75

1          I certify that the foregoing is a correct

2   transcript from the electronic sound recording of the

3   proceedings in the above-entitled matter.

4

5   _____          _____

    Transcriber                               Date

6

    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

7

8

    L.L. Francisco, President
9   Echo Reporting, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25