## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re:                                            :    Chapter 11
                                                  :
IMERYS TALC AMERICA, INC., *et al.*,[1]           :    Case No. 19-10289 (LSS)
                                                  :
        Debtors.                                :    (Jointly Administered)
                                                  :
                                                  :    **Hearing Date: May 22, 2019 at 10:30 p.m. (ET)**
                                                  :    **Objection Deadline: May 8, 2019 at 4:00 p.m. (ET)**

---------------------------------------------------------- x

### DEBTORS' OBJECTION TO CERTAIN EXCESS INSURERS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT THE CALIFORNIA COVERAGE ACTION TO PROCEED AND ORDER OF ABSTENTION

Imerys Talc America, Inc. ("**ITA**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby submit this Objection (the "**Objection**") to the *Certain Excess Insurers' Motion For Relief From the Automatic Stay to Permit the California Coverage Action to Proceed and Order of Abstention* [Docket No. 390] (the "**Motion**") filed by certain excess insurers (collectively, the "**Moving Insurers**").[2]  In support of the Objection, by and through their undersigned counsel, the Debtors respectfully state as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2]     The Moving Insurers are Columbia Casualty Company, Continental Casualty Company, The Continental Insurance Company, as successor to CNA Casualty of California and as successor in interest to certain insurance policies issued by Harbor Insurance Company, Lamorak Insurance Company (formerly known as OneBeacon America Insurance Company), as successor to Employers' Surplus Lines Insurance Company ("**Lamorak**"), and Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company) ("**Stonewall**") to the extent that they issued policies to Cyprus Mines Corporation prior to 1989.  [Docket No. 390, n.1.]  A joinder in the Motion was filed by Central National Insurance Company of Omaha (for policies issued through Cravens Dargan & Co., Pacific Coast, as managing agent). [Docket No. 411.]

## PRELIMINARY STATEMENT

1.      The relief sought by the Moving Insurers is not appropriate generally, and certainly is not appropriate at this time.  The Debtors thus request that the Court deny the Motion or, at a minimum, defer consideration of the relief requested therein until the matters at issue in the Adversary Proceeding (as defined below) have been fully and finally adjudicated.

2.      As the Court is aware, the Debtors currently are litigating the Adversary Proceeding against Cyprus Mines Corporation ("**Cyprus Mines**") and Cyprus Amax Minerals Company ("**CAMC**," and together with Cyprus Mines, "**Cyprus**") to determine whether Cyprus retained any rights to the proceeds of, or claims under, certain historical insurance policies that provide coverage for liabilities arising out of Cyprus Mines' pre-1992 talc operations (the "**Historical Policies**").  The Adversary Proceeding is being litigated on an expedited schedule with trial set to commence on August 5, 2019.  The Debtors have argued in the Adversary Proceeding, pursuant to the Agreement of Transfer and Assumption, dated June 5, 1992 (the "**ATA**"), that Cyprus Mines sold, assigned, and transferred to Cyprus Talc Corporation ("**CTC**")[3] all of its rights, title, and interest in and/or to the proceeds of, as well as all claims under, the Historical Policies for lawsuits that seek damages for alleged injuries resulting from exposure to talc or products containing talc mined, distributed, sold and/or supplied by Cyprus Mines prior to June 5, 1992 ("**Talc Lawsuits**").  Thus, the Debtors seek a declaration that Cyprus no longer has any right in the proceeds of, or pursue claims under, the Historical Policies with respect to Talc Lawsuits.  [*See* Adv. Docket No. 1.]

3.      Despite the fact that the Debtors' and Cyprus's respective rights to the proceeds of the Historical Policies are directly at issue and will be adjudicated in the Adversary Proceeding,

---

[3]      CTC is now known as Imerys Talc America, Inc.  [Docket No. 10, ¶ 12.]

the Moving Insurers seek immediate relief from the automatic stay to litigate in the California

Coverage Action which parties have coverage rights under the Historical Policies as well as other

coverage issues with respect to those very same policies.   As a preliminary matter, until the

Adversary Proceeding is fully and finally decided, it is unknown whether Cyprus has *any* rights to

the proceeds of, or *any* ability to pursue claims under, the Historical Policies for Talc Lawsuits.

Without resolution of that threshold issue – which is currently before this Court – it is unclear

whether Cyprus even has standing to participate in the California Coverage Action, and it makes

little sense to permit the Moving Insurers to litigate coverage issues with an entity that may

ultimately be determined to have no right to such coverage.

    4.  The Debtors will face significant prejudice if the California Coverage Action is

permitted to proceed.  In addition to the unnecessary waste of judicial and estate resources and the

risk of inconsistent judgments that would flow from the concurrent litigation of both the Adversary

Proceeding and the California Coverage Action, the Moving Insurers certainly will contend that

any favorable rulings in the California Coverage Action will have a preclusive effect on the

Debtors.  Because any such determination regarding the scope of coverage under the Historical

Policies would necessarily impact the value of the Debtors' insurance assets, the Debtors would

be forced to participate in the California Coverage Action if it is permitted to proceed, and would

therefore be deprived of the benefit of the automatic stay.  Furthermore, both insurance coverage

counsel and bankruptcy counsel for the Debtors are dedicating significant resources litigating

issues related to the Historical Policies in the Adversary Proceeding in anticipation of the August

2019 trial.  In contrast, there is no trial date set in the California Coverage Action, neither Cyprus

nor ITA has responded to the Moving Insurers' operative complaint or engaged in formal

discovery, and a new judge was recently assigned to the matter.  In light of the relative status of

the two proceedings, the prejudice to the Debtors in permitting the California Coverage Action to proceed simultaneously with the Adversary Proceeding plainly outweighs any purported prejudice to the Moving Insurers.

5.    In any event, the Moving Insurers fail to explain any claimed prejudice they could face if the Court denies their requested relief.  While the Moving Insurers contend they will be harmed if they are "unable to obtain prompt resolution," they previously agreed to stay the California Coverage Action for over a year prepetition, the majority of the time it has been pending. During this stay, which lasted from *December 6, 2017 through February 11, 2019*,  neither Cyprus nor ITA was required to respond to the Moving Insurers' complaint or to engage in formal discovery.   Indeed, the Moving Insurers did not move forward with their claims during the prepetition stay even though some of the Plaintiffs in the California Coverage Action continued to defend and settle Talc Lawsuits on behalf of ITA under a reservation of rights—just as they are doing now on behalf of Cyprus.  If the Moving Insurers suffered no prejudice prior to the Debtors' bankruptcy filing, there is no basis to contend that they will suffer prejudice now by deferring any litigation in the California Coverage Action at least until the conclusion of the Adversary Proceeding.

6.    At bottom, the Moving Insurers have not made out a *prima facie* case that they are entitled to relief from the automatic stay.  The balance of hardships tips dramatically in favor of maintenance of the stay, at least during the pendency of the Adversary Proceeding.  In any event, the Moving Insurers' abstention argument is not a proper basis for relief from the automatic stay. Accordingly, the Court should deny the Moving Insurers' requested stay relief at this time.  In addition, because the coverage disputes are not currently before this Court, the abstention doctrines

cited by the Moving Insurers are inapplicable and their additional request for an abstention order should also be denied.

## FACTUAL BACKGROUND

### A.    The California Coverage Action

7.    On August 24, 2017, the Moving Insurers, together with National Union Fire Insurance Company of Pittsburgh, PA ("**National Union**") and Lexington Insurance Company ("**Lexington**") (collectively, "**Plaintiffs**"), filed a complaint ("**Complaint**") to initiate the lawsuit styled as *Columbia Cas. Co. et al. v. Cyprus Mines Corp., et al.,* No. CGC-17-560919, in the California Superior Court, County of San Francisco (the "**California Coverage Action**").[4]

8.    Plaintiffs named several defendants in their Complaint:  BP Corporation North America; Cyprus Mines; CAMC; ITA; Freeport-McMoRan Inc. ("**FMI**"); Rio Tinto America, Inc. ("**RTA**"); Rio Tinto Services Inc. ("**RTS**," and together with RTA, "**Rio Tinto**"); Ace Property and Casualty Company ("**Central National**"); American Insurance Company; Truck Insurance Exchange ("**Truck**"); Unigard Insurance Company ("**Unigard**"); and Does 1-30.  (Lovell Decl., Exh. 1.)  On September 11, 2017, Plaintiffs filed their First Amended Complaint.[5]  On July 27, 2018, Plaintiffs filed their Second Amended Complaint (the "**Second Amended Complaint**").[6] (Lovell Decl., Exh. 4.)

---

[4]     *See Declaration of Matthew C. Lovell in Support of Motion for Relief From the Automatic Stay and Order of Abstention* [Docket No. 393] ("**Lovell Decl.**"), Exh. 1.

[5]     *See Declaration of Robert I. Westerfield in Support of Debtors' Objection to Certain Excess Insurers' Motion for Relief From the Automatic Stay to Permit the California Coverage Action to Proceed and Order of Abstention* ("**Westerfield Decl**."), Exh. 1.  The Westerfield Decl. has been filed concurrently herewith.

[6]     Cyprus, FMI, ITA, and Rio Tinto are referred to collectively herein and in the Second Amended Complaint as the "**Corporate Entities**."

5

9.      The Second Amended Complaint seeks a "determination as to which of many competing corporate entities has rights under Plaintiffs' insurance policies with respect to bodily injury suits filed against Cyprus Mines and other entities" as well as "determinations regarding whether all primary insurance has been exhausted; the existence and extent of Plaintiffs' contribution rights against certain insurers; various discrete coverage issues under certain of Plaintiffs' insurance policies; and that there is no coverage obligation with respect to talc bodily injury claims." (*Id.* at 3.)

10.     More specifically, in the Second Amended Complaint , Plaintiffs assert ten causes of action:

- **<u>First Cause of Action</u>** – Declaratory Relief on behalf of all Plaintiffs against the Corporate Entities to determine whether FMI (on behalf of Cyprus) or ITA has the right to seek coverage under the Historical Policies for asbestos claims.  Pursuant to this cause of action, Plaintiffs seek "a judicial determination regarding their rights and obligations under their policies and law with regard to which Corporate Entities have a right to coverage under the policies issued to Cyprus Mines Corporation, and that only one Corporate Entity has a right to coverage under the policies issued to Cyprus Mines Corporation." (Lovell Decl., Exh. 4 at ¶ 97).  In addition, Plaintiffs concede that an "actual controversy exists between Plaintiffs on the one hand and ITA and [FMI] on the other hand regarding which entity or entities have the right to seek coverage on behalf of Cyprus Mines Corporation." (*Id.* at ¶ 96.)

- **<u>Second Cause of Action</u>** – Declaratory Relief on behalf of Lamorak and Stonewall against the Corporate Entities to determine whether FMI (on behalf of Cyprus), Rio Tinto or ITA has the right to seek coverage under the Historical Policies issued by Stonewall and Lamorak for ovarian cancer claims.  Pursuant to this cause of action, Plaintiffs Lamorak and Stonewall seek "judicial determinations regarding their rights and obligations under their policies and at law with regard to which entity or entities have a right to coverage for Talc Claims under policies issued to Cyprus Mines Corporation and that only one Corporate Entity has a right to coverage under the policies issue to Cyprus Mines Corporation." (Lovell Decl., Exh. 4 at ¶ 105.)  In addition, Plaintiffs concede that an "actual controversy exists between Lamorak and Stonewall on the one hand and ITA and Rio Tinto on the other hand regarding which Corporate Entities have the right to seek coverage for Talc Claims on behalf of Cyprus Mines Corporation." (*Id.* at ¶ 104.)

6

- **Third Cause of Action** – Declaratory Relief on behalf of Lamorak and Stonewall against the Corporate Entities to determine that Stonewall and Lamorak have no obligation to provide coverage under their policies for ovarian cancer claims.  In this cause of action, Plaintiffs again concede that "an actual controversy exists between Lamorak and Stonewall on the one hand and ITA and Rio Tinto on the other regarding whether the Lamorak, and Stonewall Policies provide coverage for Talc Claims filed against Cyprus Mines Corporation."  (Lovell Decl., Exh. 4 at ¶ 113.)  Here, Lamorak and Stonewall seek a judicial determination that there is no coverage for *any* "Talc Claims" under the policies issued to Cyprus Mines.  (*Id*. at ¶ 114.)

- **Fourth Cause of Action** – Declaratory Relief against Truck regarding exhaustion of its primary policies.  This cause of action seeks a judicial determination regarding the limits of the policy issued by Truck and whether Truck has any obligation to further defend and indemnify "Asbestos Claims." (Lovell Decl., Exh. 4 at ¶ 122.)

- **Fifth Cause of Action** – Declaratory Relief against Corporate Entities to limit the scope of coverage to asbestos liabilities arising out of Cyprus Mines' operations.  In this cause of action, Plaintiffs allege that "there is no coverage under their policies, and they have no obligation to pay defense costs or indemnity, for the following Corporate Entities, which were not insureds under any policy issued by Plaintiffs at issue in this lawsuit: (a) ITA; (b) [FMI]; (c) Rio Tinto America, Inc.; and (d) Luzenac America, Inc."  (Lovell Decl., Exh. 4 at ¶ 129.)  Plaintiffs concede that an "actual controversy has arisen between Plaintiffs and the Corporate Entities regarding whether the Corporate Entities are entitled to coverage under Plaintiffs' policies for Asbestos Claims or for Talc Claims" and seek judicial determinations "regarding their rights and obligations under their policies and at law with respect to" "Asbestos Claims" and "Talc Claims" asserted against the Corporate Entities.  (*Id*. at ¶¶ 132-134.)

- **Sixth Cause of Action** – Declaratory Relief on behalf of National Union against Corporate Entities to limit the scope of coverage to only pro-rata coverage.[7]  In this cause of action, Plaintiffs claim that "[a]n actual controversy has arisen between National Union and the Corporate Entities as to whether National Union is responsible for only a pro-rata share of the defense and indemnity, to the extent coverage exists."  (Lovell Decl., Exh. 4 at ¶ 138.)

- **Seventh Cause of Action** – Declaratory Relief on behalf of Lamorak, Harbor, Continental Casualty, Stonewall and Columbia against Corporate Entities to limit the scope of defense coverage available.  This cause of action recognizes that "[a]n actual controversy has arisen between Plaintiffs Lamorak, Harbor, Continental Casualty, and Stonewall, on the one hand, and the Corporate

---

[7]    National Union is not among the Moving Insurers seeking relief from the automatic stay.  As such, the Debtors understand that the Motion does not seek relief as to this cause of action.

Entities on the other hand, as to whether these insurers must pay defense fees and costs associated with the defense of Asbestos Claims that are resolved or dismissed without payment of indemnity as a result of adjudication or compromise," and that "[a]n actual controversy has arisen between Columbia and the Corporate Entities as to whether the Columbia Policies pay defense costs with respect to any Asbestos Claims." (Lovell Decl., Exh. 4 at ¶¶ 144-145.)  Plaintiffs seek judicial declarations that they owe "no duty to pay or reimburse defense costs" on behalf of any Corporate Entity with respect to "Asbestos Claims."  (*Id.* at ¶¶ 146-147.)

- **Eighth Cause of Action** – Declaratory Relief against Corporate Entities to limit scope of coverage for self-insured periods.  In this cause of action, Plaintiffs "request a judicial determination that any obligation to defend and indemnify Cyprus Mines Corporation (or any Corporate Entity) with respect to covered Asbestos Claims is reduced by the proportion of the total years of the continuous bodily injury represented by the five-year period in which Cyprus Mines Corporation chose to be its own insurer." (Lovell Decl., Exh. 4 at ¶ 153.)  Plaintiffs also note that they disagree with the asserted contention made by the Corporate Entities that "Plaintiffs are required to defend and indemnify Asbestos Claims, without allocating to Cyprus Mines Corporation (or its legitimate successor) responsibility for the period of time in which Cyprus Mines Corporation elected to be responsible as its own insurer." (*Id.* at ¶ 152.)[8]

- **Ninth Cause of Action** – Declaratory Relief on behalf of Lexington against Corporate Entities to limit scope of coverage for claims involving occupational disease.[9]  Pursuant to this cause of action, Plaintiffs assert that "[a]n actual controversy exists between Lexington on the one hand and the Corporate Entities on the other regarding whether the Occupational Disease Exclusion bars coverage for all or some of the Asbestos Claims." (Lovell Decl., Exh 4 at ¶ 160.)

- **Tenth Cause of Action** – Equitable Contribution and/or Subrogation against Unigard and Central National.

(Lovell Decl., Exh. 4, ¶¶ 91-165.)

11.    Overall, ITA (as a "Corporate Entity") is a named defendant in all but two of the causes of action asserted in the Second Amended Complaint.  Three of these causes of action specifically address which entity or entities have coverage rights under the Historical Policies and

---

[8]    Presumably, "legitimate successor" refers to ITA as the current owner of Cyprus Mines' former talc business.

[9]    Lexington is not among the Moving Insurers seeking relief from the automatic stay.  As such, the Debtors understand that the Motion does not seek relief as to this cause of action.

the other causes of action concern the amount of coverage available under the Historical Policies, which the Debtors contend are an asset of their estates.

### B. The Moving Insurers Repeatedly Agreed to a Partial Stay of Proceedings

12. The Moving Insurers previously agreed to extend the time for the Corporate Entities to respond to the First Amended Complaint to December 1, 2017. (Westerfield Decl., Exh. 2.) On December 1, 2017, the Moving Insurers agreed to a partial stay of the California Coverage Action for 90 days, during which time the California Coverage Action was stayed as between the Moving Insurers and the Corporate Entities, and the Corporate Entities were not required to provide formal responses to any discovery nor respond to the First Amended Complaint (the "**Partial Stay**"). (*Id.*) During the Partial Stay, none of the Corporate Entities were permitted to propound discovery requests on any of the Moving Insurers. (*Id.*) The Partial Stay also applied to preclude the Moving Insurers from seeking discovery from the insurer-defendants relating to the underlying lawsuits, Cyprus Mines' talc supply history, and Cyprus Mines' corporate transaction history. (*Id.*)

13. On February 28, 2018, the Moving Insurers and the Corporate Entities agreed to extend the Partial Stay through April 16, 2018. (Westerfield Decl., Exh. 3.) Then, on April 18, 2018, the Moving Insurers and the Corporate Entities agreed to extend the Partial Stay through May 16, 2018. (*Id.* at Exh. 4.) On May 16, 2018, the Moving Insurers and the Corporate Entities agreed to further extend the Partial Stay through June 15, 2018. (*Id.* at Exh. 5.) And, on June 14, 2018, the Moving Insurers and the Corporate Entities again agreed to extend the Partial Stay through July 20, 2018. (*Id.* at Exh. 6.)

14. On June 18, 2018, the Moving Insurers filed a motion for summary adjudication against Central National and Unigard seeking a ruling that each insurer was obligated to participate in defense and indemnity upon exhaustion of primary policies. (Westerfield Decl., ¶ 8.)

15.     On July 27, 2018, the Moving Insurers filed their Second Amended Complaint. (Lovell Decl., Exh. 4.)  The Second Amended Complaint contained the same causes of action asserted in the original Complaint and the First Amended Complaint, but omitted the original Fifth Cause of Action relating to the purportedly lost Central National policies because Central National had since provided copies of its policies.

16.     On August 16, 2018, the Moving Insurers again agreed to extend the Partial Stay through September 5, 2018.  (Westerfield Decl., Exh. 7.)  On September 11, 2018, the Moving Insurers agreed to extend the Partial Stay through October 29, 2018.  (*Id.* at Exh. 8.)  On November 2, 2018, the Moving Insurers agreed to extend the Partial Stay through December 7, 2018.  (*Id.* at Exh. 9.)  On November 15, 2018, the Moving Insurers and the Corporate Entities agreed to extend the Partial Stay through January 11, 2019.  (*Id.* at Exh. 10.)  And, on January 16, 2019, the Moving Insurers agreed to extend the Partial Stay through February 11, 2019.  (*Id.* at Exh. 11.)  The Debtors filed these Chapter 11 Cases on February 13, 2019.

17.     During the Partial Stay (and during any minor gaps during the Partial Stay), ITA did not respond to the Second Amended Complaint, did not participate in formal discovery, and did not engage in motion practice.  (Westerfield Decl.,  ¶ 14.)  Since October 2018, and despite the Partial Stay, one or more of the Plaintiffs continued to defend and settle Talc Lawsuits on behalf of ITA subject to a reservation of rights.  (*Id.* at ¶ 15.)[10]  One or more of the Plaintiffs defended and settled Talc Lawsuits on behalf of ITA notwithstanding the fact that the Moving Insurers agreed not to pursue the claims asserted in the California Coverage Action.  (*Id.*)

---

[10]     Indeed, one of the Moving Insurers—Lamorak Insurance Company—provided indemnity coverage to ITA in or around July 2017.

18.     During the Partial Stay, the parties to the California Coverage Action did address certain issues, including the exhaustion of Truck's policies, selection of a mediator, issues raised by Unigard's cross-complaint, and certain issues raised in the Second Amended Complaint. (Motion at 8.)  However, the parties addressed these issues primarily through negotiation without court involvement.  (Westerfield Decl., ¶ 16.)  And while the court did hear argument on the Moving Insurers' motion for summary adjudication against Central National, the court summarily denied the motion as premature.  (*Id.* at ¶ 17.)  There is no current date for the hearing on the Moving Insurers' motion for summary adjudication against Unigard.  (*Id.*)

19.     Although ITA did file a cross-complaint (the "**Cross-Complaint**") on or about November 8, 2018 against Certain London Market Insurance Companies, Certain Underwriters at Lloyd's, London, and Employers Mutual Casualty Company, ITA sought no relief from any of the Moving Insurers.  (Westerfield Decl., Exh. 12.)[11]

20.     On April 8, 2019, the judge presiding over the California Coverage Action recused herself from all further proceedings.  (Westerfield Decl., Exh. 13.)  On April 10, 2019, less than one month ago, the California Coverage Action was reassigned to Judge Anne-Christine Massullo. (*Id*. at Exh. 14.)  An initial case management conference before Judge Massullo currently is set for May 22, 2019.  (*Id.* at Exh. 15.)  As of the date of this filing, the parties have not yet appeared before Judge Massullo.

---

[11]     Unigard also filed a cross-complaint against Cyprus and ITA, but agreed to extend the time for ITA to respond through February 19, 2019.  (Westerfield Decl., ¶ 22.)  In light of its bankruptcy filing, ITA has not responded to Unigard's cross-complaint.  The Unigard cross-complaint seeks, among other things, damages from ITA for an alleged breach of a settlement agreement.  (*Id.*)

11

C.    **The Debtors and Cyprus Agreed to Limited Stay Relief During the Pendency of the Adversary Proceeding**

21.    On February 28, 2019, Cyprus filed an *Emergency Motion for (i) Interim and Final Orders Granting Relief from the Automatic Stay under Bankruptcy Code § 362(d) to Use Insurance Coverage Under Cyprus Historical Policies or, in the Alternative, (ii) Adequate Protection Under Bankruptcy Code §§ 361 and 363(e)* (the "**Emergency Motion**") [Docket No. 104].

22.    Following hearings on Cyprus's Emergency Motion, Cyprus and the Debtors agreed to limited stay relief during the pendency of the Adversary Proceeding.  On March 26, 2019, the Court entered a final order granting Cyprus relief from the automatic stay and permitting Cyprus to use the Historical Policies pending entry of a final judgment in the Adversary Proceeding.  [Docket No. 309.]  The Debtors, in turn, reserved all of their rights to assert claims against Cyprus, and any Cyprus-related entity that obtained the benefit of the Historical Policies, to recover any and all amounts paid that erode the available limits of the Historical Policies during the pendency of the Adversary Proceeding.  Nothing in the March 26, 2019 order affected or modified the terms or conditions of the Historical Policies, and all parties reserved their rights with respect to the Historical Policies.

D.    **The Adversary Proceeding**

23.    On March 7, 2019, the Debtors initiated an adversary proceeding against Cyprus, captioned *Imerys Talc America, Inc., et al. v. Cyprus Amax Minerals Company and Cyprus Mines Corporation*, Adv. Pro. No. 19-50115 (the "**Adversary Proceeding**").  The sole issue to be

12

decided in the Adversary Proceeding is whether Cyprus retained any right to the proceeds of, or any right to assert claims under, the Historical Policies for Talc Lawsuits.[12]

24.    On or about March 28, 2019, the Debtors and Cyprus agreed to an expedited scheduling order with a trial date beginning on June 4, 2019, with both written and oral discovery and summary judgment briefing to occur prior to trial.  [Adv. Docket No. 24.]  The parties subsequently stipulated to a modified schedule to provide for, among other things, trial beginning on August 5, 2019.  [*See* Adv. Docket No. 55.]  The Debtors' insurance counsel and bankruptcy counsel both are deeply involved in the Adversary Proceeding and have devoted substantial resources towards document production, depositions, witness preparation, and trial preparation. (Westerfield Decl., ¶ 23.)

25.    While the Moving Insurers purport to offer to stipulate "not to proceed with" claims in the California Coverage Action that are at issue in the Adversary Proceeding (Motion at 5), the remaining claims in the California Coverage Action necessarily "impact the scope of the insurance under which both Cyprus and [ITA]" seek coverage.  (*Id.* at 2.)

## <u>ARGUMENT</u>

## I.    CONSIDERATION OF THE MOTION SHOULD BE DEFERRED UNTIL FINAL RESOLUTION OF THE ADVERSARY PROCEEDING

26.    At least three of the causes of action asserted in the California Coverage Action directly conflict with the relief sought in the Adversary Proceeding.  In addition, nearly all remaining causes of action seek coverage limitations related to the Historical Policies, and thus implicate the Debtors' rights to the extent this Court ultimately determines that the Debtors do, in

---

[12]    As noted above, pursuant to the ATA, Cyprus Mines sold, assigned, and transferred to CTC all of Cyprus Mines' rights to the proceeds of, and all claims and causes of action under, the Historical Policies for Talc Lawsuits.  Following this assignment, Cyprus Mines no longer can claim any right or interest in these proceeds or claims for Talc Lawsuits.

fact, have exclusive rights in the proceeds of the Historical Policies.  Given that the California

Coverage Action has been inactive for the majority of the time it has been pending and a new judge

has just recently been assigned, it would be appropriate to defer ruling on the relief sought by the

Moving Insurers at least until this Court has ruled in the Adversary Proceeding.  Deferring

consideration of the Motion will ensure that the Debtors' rights are not compromised by actions

taken by another court during the pendency of the Adversary Proceeding, and certainly will cause

no harm or prejudice to the Moving Insurers or any other parties to the California Coverage Action.

Accordingly, the Debtor respectfully request that the Court adjourn the hearing on the Motion, and

continue consideration of the relief requested by the Moving Insurers until a date following final

adjudication of the claims in the Adversary Proceeding.

## II.    THE AUTOMATIC STAY APPLIES TO THE CALIFORNIA COVERAGE ACTION

27.    Contrary to the Moving Insurers' contention, the automatic stay applies to the

California Coverage Action because the action is a proceeding against one of the Debtors.  *See*

*ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 259 (3rd Cir. 2006) ("The scope of the

automatic stay is broad and covers all proceedings against a debtor.").  Indeed, eight of the ten

causes of action in the Second Amended Complaint assert claims against ITA as a direct defendant,

and do not distinguish between assertions against ITA and assertions against the other (non-debtor)

Corporate Entities.[13]  Moreover, the Moving Insurers admit in the Motion that their "claims for

relief may impact the scope of the insurance under which both Cyprus and [ITA] are seeking

coverage" (Motion at 2, 11-12), and it is well-settled that the automatic stay "applies to actions

---

[13]    The fourth cause of action in the Second Amended Complaint is asserted against Truck but affects
the Debtors' rights in that it seeks a determination as to whether Truck has an ongoing obligation to defend
and indemnify Talc Lawsuits against Cyprus Mines and its alleged successors, subsidiaries or assignees.

related to the scope of insurance coverage." *Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)*, 303 B.R. 299, 303 (D. Del. 2003).

28.     As drafted, the Second Amended Complaint asserts the existence of actual disputes between the Moving Insurers and ITA, as one of the Corporate Entities.  The Moving Insurers cannot credibly claim that none of their claims has been asserted against the Debtors.  As direct claims against ITA, the adjudication of these disputes is fundamentally subject to the automatic stay.

29.     The Moving Insurers argue that the stay does not apply to declaratory relief sought solely against Cyprus in the California Coverage Action or for relief sought among the insurers with respect to Cyprus.  (Motion at 11.)  However, the first two causes of action in the Second Amended Complaint expressly seek a determination as to "the Parties' respective rights and obligations under the policies and law with regard to what entity (or entities) has a right to coverage under the policies issued to Cyprus Mines Corporation" and the fifth cause of action seeks similar relief.  (Lovell Decl., Exh. 4 at p. 27.)  These causes of action clearly and unequivocally seek to adjudicate ITA's right to coverage under the Historical Policies and, thus, directly affect an estate asset.  Indeed, it is not possible to adjudicate whether Cyprus maintains the sole rights to the proceeds of the Historical Policies in the California Coverage Action without also adjudicating ITA's rights to the same proceeds.

30.     Each of the remaining causes of action seek to obtain declarations as to the scope of coverage provided by the Historical Policies, and therefore such relief also directly impacts an

asset of the Debtors' estates.[14]  *See ACandS, Inc.*, 435 F.3d at 260 ("It has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate."). Thus, even if the Moving Insurers proceed in the California Coverage Action against non-debtors only, any judgment therein will nevertheless directly affect the Debtors' interest in the Historical Policies.[15]  *Cf. Harbison-Walker Refractories Co. v. ACE Prop. & Cas. Ins. Co. (In re Global Indus. Techs.)*, 303 B.R. 753, 760 (Bank. W.D. Pa 2004) ("A declaratory judgment action against a debtor is an 'act to . . . exercise control over property of the estate,' 11 U.S.C. §362(a)(3), insofar as it seeks to affect the insurance policies which are estate property.  The fact that the action does not name Debtor is not dispositive."); *see also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (a debtor's insurance policy may well be the most important asset of the estate, and "any action in which the judgment may diminish this 'important asset' is unquestionably subject to a stay under [11 U.S.C. 362(a)(3)]") (quoting *In re Johns Manville Corp.*, 40 B.R. 219, 229 (S.D.N.Y. 1984)); *ACandS, Inc.*, 435 F.3d at 261 (section 362(a)(3) "has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies"). Thus, all of the claims in the California Coverage Action implicate the automatic stay as they cannot be separated into claims that may affect the Debtors and their assets and those that will not.

31.    And, while it may be true that the automatic stay does not apply to claims asserted by the Debtors, *e.g. Safety Nat'l Cas. Corp.*, 303 B.R. at 303, the Debtors have asserted no claims

---

[14]    The tenth cause of action seeks equitable contribution, subrogation, allocation, and/or credit from Central National, Unigard and Does 21-30 in an amount to be proven at trial.  (Lovell Decl., Exh. 4 at ¶¶ 162-165.)  However, the tenth cause of action also asserts that the Corporate Entities (which includes ITA) may have obligations to Plaintiffs for contribution, subrogation, allocation and/or credit for amounts owed by the insurers for defense and/or indemnity of the Talc Lawsuits pursuant to a settlement agreement with Unigard.  (*Id.* at ¶ 164.)

[15]    The fact that Cyprus may be using the policies during the pendency of the Adversary Proceeding should not change this result.  Any determination as to the scope of coverage under the Historical Policies will still affect an asset of the Debtors' estates.

against the Moving Insurers or Central National in the California Coverage Action.  (*See* Westerfield Decl., Exh. 12.)  Instead, the Debtors sought a declaration only against Certain London Market Insurance Companies, Certain Underwriters at Lloyd's, London, and Employers Mutual Casualty Company.

32.    Accordingly, there is no basis to support the Moving Insurers' contention that the automatic stay does not apply to their requests for declaratory relief in the California Coverage Action.

## III.    CAUSE DOES NOT PRESENTLY EXIST TO GRANT RELIEF FROM THE AUTOMATIC STAY

33.    Because the automatic stay applies to the California Coverage Action, the Moving Insurers must demonstrate a *prima facie* case that they are entitled to the relief they seek, and also show that the balance of hardships from not obtaining relief tips significantly in their favor.  *See In re DBSI, Inc.*, 432 B.R. 126, 132-35 (Bankr. D. Del. 2010) (denying relief from stay where movant failed to meet the applicable standard).  The Moving Insurers do not and cannot meet this standard, and they are not entitled to relief from the automatic stay at this time.

34.    "The term 'cause' as used in § 362(d)(1) is undefined; courts have ruled that whether there is cause to lift the automatic stay must be determined on a case-by-case basis."  *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009).  "This Court has developed a three-part balancing test to evaluate whether cause exists in a specific case:  'Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; [w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and [t]he probability of the creditor prevailing on the merits.'"  *Id.* (quoting *In re SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007)).  "Courts also place emphasis on whether lifting the automatic stay will impede[] the orderly administration of the debtor's estate."

17

*Id.* at 167; *see also Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3rd Cir. 1991) ("The automatic stay was designed 'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'") (quoting *St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)).

**A.    The Moving Insurers Will Suffer No Prejudice if Their Motion is Denied at this Time**

35.    The Moving Insurers have not attempted to explain any purported prejudice they face if this Court denies their requested relief at this time. The Moving Insurers acknowledge that they are "defending and settling claims against Cyprus under a reservation of rights." (Motion at 1.) And while the Moving Insurers now contend that they will be harmed if they are "unable to obtain prompt resolution," the Moving Insurers repeatedly agreed prior to the Debtors' bankruptcy filing not to move forward with their claims in the California Coverage Action. Instead, the Moving Insurers agreed that the Partial Stay would be in effect essentially from ***December 6, 2017 through February 11, 2019***. During the Partial Stay, neither Cyprus nor ITA was required to respond to the Second Amended Complaint or engage in formal discovery, and the Moving Insurers did not move forward with their claims against Cyprus and ITA—even though certain Plaintiffs continued to defend and settle Talc Lawsuits on behalf of ITA under a reservation of rights.[16] The Moving Insurers themselves recognized that they suffered no prejudice by forbearing from adjudicating their claims prior to the Debtors' bankruptcy filing. Their relief from stay

---

[16]    While the Moving Insurers did move forward with its claims against Central National and Unigard, the court denied the Moving Insurers' motion against Central National as premature. (Westerfield Decl., ¶ 17.) The Moving Insurers' motion against Unigard has not yet been set for a hearing. (*Id.*)

RLF1 21238594v.1

motion fails to explain how, or provide any basis for the argument that, they will suffer any prejudice by virtue of the automatic stay.

36.     Moreover, the California Coverage Action was recently reassigned to a new judge who has no familiarity with the issues raised by the Moving Insurers.  The Moving Insurers' contention that the court in the California Coverage Action "is now poised to resolve key insurance coverage issues," (Motion at 35), is belied by the fact that none of the parties to the California Coverage Action has appeared before the new judge, none of the Corporate Entities have responded to the Second Amended Complaint or engaged in formal discovery, and no deadlines or trial date have been set.

37.     The Plaintiffs have continued to defend and settle claims subject to a reservation of rights, just as they have done since the filing of the California Coverage Action, and continue to retain all of their rights under their respective policies.  While the Moving Insurers contend (without support) that "this kind of matter cannot be stopped and restarted without an enormous loss of resources," (Motion at 36), that is exactly what has occurred in the California Coverage Action since December 2017, when the Moving Insurers repeatedly agreed to extend the Partial Stay.[17]  By waiting at least until the Adversary Proceeding is resolved, the Moving Insurers also will have clarity as to whether Cyprus or ITA have rights to the coverage at issue in the California Coverage Action.

38.     Where, as here, movants offer no evidence that maintenance of the stay will cause them to suffer prejudice, they are not entitled to relief from the automatic stay.  *See Del. Trust Co. v. Energy Future Intermediate Holding Co. LLC (In re Energy Future Holdings Corp.)*, 533 B.R.

---

[17]     The Moving Insurers claim they will suffer prejudice only by not proceeding with the California Coverage Action in the state court generally, but raise no viable arguments as to how they will be prejudiced if the California Coverage Action does not proceed immediately.

106, 117 (Bankr. D. Del. 2015) (denying relief from the automatic stay where harm to movant was not shown to "considerably outweigh" harm to the debtors because "[f]ailure to prove a prima facie case requires denial of the requested relief.").

> **B.**    **The Debtors Will Suffer Prejudice if Forced to Simultaneously Litigate Both Against Cyprus in the Adversary Proceeding and Against the Moving Insurers in the California Coverage Action**

39.    The Debtors, in contrast, face substantial prejudice if the Moving Insurers are permitted to proceed with the California Coverage Action at this time.  If the automatic stay is lifted to permit the Moving Insurers to proceed with the determination of coverage issues, the Debtors would be forced to participate because such a determination could reduce the value of the Debtors' insurance assets.[18]

40.    In addition, certain causes of action in the California Coverage Action directly implicate the issues to be resolved in the Adversary Proceeding[19] – a determination as to whether Cyprus retained any right to the proceeds of, or any right to assert claims under, the Historical Policies for Talc Lawsuits.  As such, there is a very real risk of inconsistent judgments, not to mention a waste of judicial and estate resources, if the Adversary Proceeding and the California Coverage Action proceed concurrently.

41.    The Debtors currently are involved in an expedited trial schedule in the Adversary Proceeding.  Insurance coverage counsel and bankruptcy counsel for the Debtors both are involved in the Adversary Proceeding and expect to devote significant resources to written and oral

---

[18]    This is especially true when considering the Moving Insurers' statement that the benefits of potential insurance could be "entirely illusory."  (Motion at 26.)  And, given that one or more of the Plaintiffs provided coverage to ITA for Talc Lawsuits prior to the bankruptcy filing despite the Partial Stay of the California Coverage Action, this statement raises serious issues as to the Moving Insurers' true motives.

[19]    As such, the Moving Insurers' assertion that the "California Coverage Action merely seeks a declaration regarding the liability of the Moving Insurers" is disingenuous.   (Motion at 24.)

discovery, witness preparation, and trial preparation.  In contrast, there is no trial date set in the California Coverage Action, and neither Cyprus nor ITA has responded to the Second Amended Complaint.  In light of the expedited Adversary Proceeding, the prejudice to the Debtors of having the California Coverage Action proceed simultaneously outweighs any claimed prejudice to the Moving Insurers at this time.  *See In re DBSI, Inc.*, 407 B.R. at 167 ("Courts also place emphasis on whether lifting the automatic stay will impede[] the orderly administration of the debtor's estate."); *see also St. Croix Condominium Owners*, 682 F.2d at 448 (the automatic stay was designed "'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'")

42.    Moreover, as set forth in the Adversary Proceeding, the Debtors contend that Cyprus does not have any rights to the proceeds of, or claims for coverage under, the Historical Policies for Talc Lawsuits.  Thus, if the Debtors prevail in the Adversary Proceeding, Cyprus would have no standing to litigate the coverage issues in the California Coverage Action.  *See e.g., JFE Steel Corp. v. ICI Ams., Inc.*, 797 F. Supp. 2d 452, 465 (D. Del. 2011) (assignor lacked standing to assert assigned claims) (citing *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106,112-13 (3d Cir. 1993)); *see also Zurich Am. Ins. Co. v. Wausau Bus. Ins. Co.*, 2018 U.S. Dist. LEXIS 168207, *13 (S.D.N.Y. Sept. 28, 2018) ("[A]ssignment of the rights to a claim deprives the assignor of standing to bring such claim").  Until the Adversary Proceeding is fully and finally adjudicated, the Moving Insurers would be litigating coverage issues against an entity that may not have any rights to the coverage at all.  Maintaining the automatic stay, therefore, reduces any potential prejudice and

inefficiencies all parties may face by litigating coverage issues against the wrong entity on a piecemeal basis.

### C.    The Moving Insurers Do Not Demonstrate That They Likely Will Prevail on the Merits

43.    The Moving Insurers make no attempt to establish the probability of prevailing on the merits of their claims in the California Coverage Action.  Indeed, the Moving Insurers readily acknowledge that they previously did not prevail on some of their claims against other insurers. (Motion at 9.)  Absent any evidence of this factor, the Moving Insurers fail to meet their *prima facie* burden.  And "[f]ailure to prove a *prima facie* case requires denial of the requested relief." *In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006) (citing *Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("Section 362(d)(1) requires an initial showing of cause by the movant. . . . If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.")).

### D.    Abstention is Not a Basis For Stay Relief

44.    The Moving Insures also contend that cause exists to "lift the stay because this Court cannot hear any aspect of the California Coverage Action."  (Motion at 13.)  The Moving Insurers' contention, however, is contrary to express terms of the statute.  Section 1334(d) states that "[s]ubsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy."  28 U.S.C. § 1334(d).  Thus, courts routinely reject the Moving Insurers' argument that a finding of abstention equates to "cause" for relief from the automatic stay.  *See Benedor Corp. v. Conejo Enters.*, 96 F.3d 346, 352 (9th Cir. 1996) ("[A] finding that mandatory abstention applies to the underlying state action does not preclude denial

22

of relief from § 362's automatic stay."); *see also Pursifull v. Eakin*, 814 F.2d 1501, 1505 (10th Cir. 1987); *In re Jefferson County*, 484 B.R. 427, 439 (Bankr. N.D. Ala. 2012); *In re Micro Design, Inc.*, 120 B.R. 363, 369 (Bankr. E.D. Pa. 1990). Contrary to the Moving Insurers' assertions, denying relief from stay at this time does not automatically equate to all issues asserted in the California Coverage Action being brought before this Court for resolution.

45.    Moreover, the Moving Insurers have provided no reason to conclude that relief from the automatic stay would be appropriate even if there was a basis for this Court to abstain from hearing the claims in the California Coverage Action. Abstention under section 1334(c) was enacted to prevent claims related to a debtor's property from being litigated in separate jurisdictions. *See Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). A court's decision to abstain from deciding a claim pursuant to section 1334(c) has no bearing on whether relief from the automatic stay is warranted. As the Ninth Circuit has stated, "if Congress had intended pending state actions that are determined to be non-core proceedings to be exempt from the automatic stay, it would have explicitly so provided . . . . In fact, Congress has made it clear that it intended just the opposite." *Conejo*, 96 F.3d at 352.

46.    The Moving Insurers have not made out a *prima facie* case that they likely will prevail on the merits of their claims, and the balance of hardships tips dramatically in favor of maintenance of the stay. And because purported abstention is not a basis for "cause," the Court should deny the Moving Insurers' requested stay relief at this time.

## IV.    THERE IS NO BASIS TO SEEK ABSTENTION

47.    In addition to stay relief, the Moving Insurers also seek an "order abstaining from issuing any rulings in the Adversary [Proceeding] on the interpretation of the policies . . . pursuant to 28 U.S.C. § 1334(c)(2) or, alternatively, that discretionary abstention is appropriate under

23

Section 1334(c)(1)."  (Motion at 41.)  The Moving Insurers fundamentally misconstrue and misapply section 1334(c), and this Court should deny the requested relief.

48.    Abstention under 28 U.S.C. § 1334(c) "is an extraordinary exception to the existence of jurisdiction and should be applied sparingly and cautiously."  *In re Jefferson County*, 484 B.R. 427, 440 (Bankr. N.D. Ala. 2012) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).  The Moving Insurers have the burden to prove that the Court should abstain.  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("the burden [of establishing that abstention is appropriate] rests on the federal plaintiff.").

### A.    Mandatory Abstention is Inapplicable in the Absence of a Proceeding

49.    The Moving Insurers contend that section 1334(c)(2) "requires that the Court abstain from hearing the California Coverage Action."  (Motion at 13-14.)  But no party has requested the Court to hear the California Coverage Action.  Thus, there is no current "proceeding" for purposes of abstention.

50.    Abstention under section 1334(c)(2) applies to a "proceeding" before the bankruptcy court and further requires that a motion for abstention be brought by a "party in a proceeding."  A "proceeding" for purposes of section 1334 is "anything that occurs within a bankruptcy case," including contested matters, adversary proceedings, and disputes related to administrative matters in the bankruptcy case.  *In re Jefferson County*, 474 B.R. 228, 280 (Bankr. N.D. Ala. 2012).  A request for "mandatory" abstention under section 1334(c)(2) must be made "upon timely motion of a party in a proceeding."  28 U.S.C. § 1334(c)(2).  In other words, only a party to a proceeding can seek mandatory abstention.  And without a proper motion, the Court cannot abstain under section 1334(c)(2).  *See Robinson v. Mich. Consol. Gas Co. Inc.*, 918 F.2d 579, 584 (6th Cir. 1990) ("Mandatory abstention under section 1334(c)(2) is not jurisdictional and must be raised in a timely motion."); *Gordon v. Entergy New Orleans, Inc.*, 2008 U.S. Dist. LEXIS

13691, at *12 (E.D. La. 2008) ("[T]his Court cannot abstain under the mandatory abstention subsection by *sua sponte* motion").

51.     Here, the Moving Insurers request that the Court abstain from a non-existent proceeding.  The Moving Insurers are not parties to the Adversary Proceeding, and there is no "proceeding" currently before the Court that implicates any policy interpretation.  The Moving Insurers do not identify what current proceeding involves the interpretation of the Historical Policies, but do acknowledge that the Court "is not being asked in the Adversary Proceeding to interpret the insurance policies, but rather only the meaning of the Cyprus/[ITA] Agreements." (Motion at 36-37.)  Thus, the plain language of section 1334(c)(2) precludes the Moving Insurers from obtaining their requested relief, and the Court's jurisdiction does not extend to hypothetical and abstract claims.

### B.     Permissive Abstention Also is Inapplicable in the Absence of a Proceeding

52.     The Moving Insurers' request for permissive abstention equally falls flat.  Section 1334(c)(1) gives this Court the discretion to abstain from hearing a "particular proceeding" when doing so would be "in the interests of justice, or the interests of comity with State courts or respect for State law."  28 U.S.C. § 1334(c)(1).  The statute reflects a policy in favor of a federal court "'defer[ring] to a State court for determination of a particularly unusual question' of State law." *In re Pan Am. Corp.*, 950 F.2d 839, 846 (2d Cir. 1991) (quoting H.R.Rep. No. 595, 95th Cong, 1st Sess. 51 (1977)).

53.     But no party has requested that the Court interpret the Historical Policies, and the Adversary Proceeding involves one issue:  whether Cyprus retained any rights to the proceeds of, or claims for coverage under, the Historical Policies for Talc Lawsuits under the terms of the ATA. The Moving Insurers, in fact, have stipulated that they do not seek relief with respect to the issues

raised in the Adversary Proceeding.  (Motion at 5.)  Thus, the only "proceeding" raising policy interpretation issues is the Motion.

54.     Without a current "proceeding," the Moving Insurers have no basis to seek permissive abstention.  The Moving Insurers request that this Court abstain from making any rulings on policy interpretation without knowing if it may be called upon to make any such rulings, what language it might rule on, which parties may seek a ruling, or any other factual context.  But Federal courts cannot issue advisory opinions or "decide abstract, hypothetical or contingent questions."  *Const. Party v. Cortez*, 712 F. Supp. 2d 387, 397-98 (E.D. Pa. 2010); *see also Akzona, Inc. v. E.I. DuPont de Nemours Co.*, 662 F. Supp. 603, 609 (D. Del. 1987) ("[F]ederal courts must confine their adjudicative capacities to concrete legal issues which are presented in the context of actual cases").  At this stage, the Court should decline to abstain based on the mere possibility that it could be asked to interpret policy language at some point in the future.  *See In re First Assured Warranty Corp.*, 383 B.R. 502, 529 (Bankr. D. Colo. 2007) (abstention is inappropriate where there is no "proceeding" in the bankruptcy case that could affect the issues in the state court proceeding); *see also In re Jefferson County*, 474 B.R. at 275 (declining to abstain because no one had "asked the court to take any action to either interfere with the Receiver or the Receiver Order").

55.     Accordingly, there is no basis for the Court to abstain from any issue at this time. If the Court is ever asked to do so, the Moving Insurers may make a "timely motion" if they are a party to that proceeding.  Until then, however, these is simply no proceeding from which this Court could determine that abstention is appropriate.

## CONCLUSION

56.     For the foregoing reasons, this Court should deny the Motion in its entirety at this time.

Dated: May 8, 2019
    Wilmington, Delaware

Respectfully submitted,
*/s/ Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
      merchant@rlf.com
      ramos@rlf.com
      steele@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Amy C. Quartarolo (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
      kim.posin@lw.com
      amy.quartarolo@lw.com

- and -

Richard A. Levy (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  richard.levy@lw.com

- and –

27

**NEAL GERBER & EISENBERG LLP**

Angela R. Elbert (admitted *pro hac vice*)
Jason A. Frye (admitted *pro hac vice*)
Two North LaSalle Street
Chicago, Illinois  60602-3801
Telephone:  (312) 269-5995
Facsimile:  (312) 578-8396
E-mail:  aelbert@nge.com
          jfrye@nge.com

*Counsel for Debtors and Debtors-in-Possession*