**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | : | Case No. 19-10289 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | Hearing Date: March 31, 2020 at 10:00 a.m. (ET) |
| | : | Objection Deadline: March 20, 2020 at 4:00 p.m. (ET) |

---

**DEBTORS' MOTION FOR AN ORDER FURTHER EXTENDING THE
EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11
PLAN AND SOLICIT ACCEPTANCES THEREOF**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**") hereby file this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit A, under section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), extending the Debtors' exclusive periods to (i) file a chapter 11 plan (the "**Exclusive Filing Period**") by eighty-eight (88) days (through and including June 5, 2020) and (ii) solicit votes thereon by eighty-eight (88) days (through and including August 7, 2020) (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**"). In support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

**JURISDICTION**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

*District of Delaware*, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## BACKGROUND

**A.**  *General Background*

2.  On February 13, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 10] (the "**First Day Declaration**"), which was filed on the Petition Date and is fully incorporated herein by reference.

3.  The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On March 5, 2019, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of tort claimants (the "**TCC**") in the Chapter 11 Cases. On June 3, 2019, the Court entered an order [Docket No. 647] appointing James L. Patton Jr. as the representative for future talc personal injury claimants pursuant to sections 105(a), 524(g)(4)(B)(i), and 1109(b) of the Bankruptcy Code (the "**FCR**"). As of this date, no trustee or examiner has been requested or appointed in the Chapter 11 Cases.

4.  The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2

B.   *Prior Exclusivity Extension Requests*

5. On June 12, 2019, the Debtors filed their first request to extend the Exclusive Periods [Docket No. 691] (the "**First Exclusivity Motion**"). On June 25, 2019, the Court approved the First Exclusivity Motion and entered an order [Docket No. 744] extending the Exclusive Filing Period through and including September 11, 2019, and the Exclusive Solicitation Period through and including November 12, 2019 (the "**First Exclusivity Order**"). On September 4, 2019, the Debtors filed their second request to extend the Exclusive Periods [Docket No. 997] (the "**Second Exclusivity Motion**"). On September 18, 2019, the Court approved the Second Exclusivity Motion and entered an order [Docket No. 1051] extending the Exclusive Filing Period through and including December 10, 2019, and the Exclusive Solicitation Period through and including February 10, 2020 (the "**Second Exclusivity Order**"). On December 6, 2019, the Debtors filed their third request to extend the Exclusive Periods [Docket No. 1292] (the "**Third Exclusivity Motion**" and together with the First Exclusivity Motion and the Second Exclusivity Motion, the "**Exclusivity Motions**"). On December 26, 2019 the Court approved the Third Exclusivity Motion and entered an order [Docket No. 1371] extending the Exclusive Filing Period through and including March 9, 2020, and the Exclusive Solicitation Period through and including May 11, 2020 (the "**Third Exclusivity Order**" and together with the First Exclusivity Order and the Second Exclusivity Order, the "**Exclusivity Orders**"). Pursuant to the Exclusivity Orders the granting of the extensions of the Exclusive Periods was without prejudice to the rights of the Debtors and their estates to seek further extensions of the Exclusive Periods.

6. The First Exclusivity Motion identifies and describes a number of the matters the Debtors addressed in the Chapter 11 Cases through the date of the First Exclusivity Motion, including, without limitation: (i) the appointment of the FCR following an evidentiary hearing and

extensive litigation involving the U.S. Trustee and certain insurers; (ii) initiating and litigating an adversary proceeding with a former predecessor, Cyprus Mines Corporation and Cyprus Amax Minerals Company (together "**Cyprus**") relating to rights to proceeds under certain historical insurance policies (the "**Adversary Proceeding**"); (iii) preliminary negotiations with the FCR and TCC regarding the formulation of a consensual chapter 11 plan and 524(g) trust; and (iv) working diligently to get the TCC up to speed on the Chapter 11 Cases.  The Second Exclusivity Motion identifies and describes a number of the matters the Debtors addressed through the date of the Second Exclusivity Motion.  These include, without limitation: (i) continued negotiations with the FCR and TCC regarding the formulation of a consensual chapter 11 plan and 524(g) trust; (ii) engaging with certain predecessor entities regarding the Debtors' entitlement to insurance proceeds based on certain historical insurance policies; (iii) the successful opposition of a motion for relief from the automatic stay filed by certain excess insurers; (iv) the establishment of a general and governmental bar date for all potential unsecured claims against the Debtors (other than talc personal injury claims); and (v) the assumption of certain non-residential real property leases.

7. Similarly, the Third Exclusivity Motion identifies and describes a number of the matters the Debtors addressed through the date of the Third Exclusivity Motion, which include: (i) continued negotiations with the FCR and TCC, as well as representatives of the Debtors' non-debtor affiliates, regarding the formulation of a consensual chapter 11 plan and 524(g) trust; (ii) managing a variety of litigation and negotiations with interested third parties; (iii) entering into a protective order regarding the disclosure of confidential information in the Chapter 11 Cases and the Adversary Proceeding; (iv) entering into settlements with certain insurers regarding the payment of pre-petition defense fees and costs; (v) Court approval of a key employee retention plan; and (vi) the establishment of a bar date for all indirect talc personal injury claims.

**RELIEF REQUESTED**

8.   By this Motion, the Debtors seek entry of an order, substantially in the form of Exhibit A, pursuant to section 1121(d) the Bankruptcy Code, (i) extending the Debtors' Exclusive Filing Period by eighty-eight (88) days through and including June 5, 2020 and (ii) extending the Exclusive Solicitation Period by eighty-eight (88) days through and including August 7, 2020 without prejudice to the Debtors' right to seek other appropriate relief.[2]

**BASIS FOR RELIEF**

9.   Section 1121(b) of the Bankruptcy Code provides debtors with the exclusive right to file a chapter 11 plan during the first 120 days after the commencement of a chapter 11 case. *See* 11 U.S.C. § 1121(b).  If a debtor files a plan during this period, section 1121(c)(3) of the Bankruptcy Code provides the debtor with an initial period of 180 days as of the commencement of the chapter 11 case to solicit acceptance of such plan.  *See* 11 U.S.C. § 1121(c)(3).  Section 1121(d) of the Bankruptcy Code permits a bankruptcy court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof upon demonstration of "cause."  *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").  For the reasons described in this Motion, the Debtors respectfully submit that "cause" exists to further extend the Exclusive Periods.

---

[2]   The current Exclusive Filing Period and Exclusive Solicitation Period are set to expire on March 9, 2020 and May 11, 2020, respectively.  Pursuant to Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the filing of this Motion prior to the current deadlines serves to automatically extend such deadlines until the Court rules on this Motion.  *See* Del. Bankr. L.R. 9006-2.

5

## APPLICABLE AUTHORITY

10. It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances of the particular case.[3] *See, e.g., First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Although the Bankruptcy Code does not define "cause," a number of courts have construed the term in consideration of the Bankruptcy Code's underlying legislative history. *See, e.g.*, *In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (noting that the exclusive periods under section 1121 of the Bankruptcy Code are intended "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated" (quoting H.R. Rep. No. 103-835, at 36 (1994), as reprinted in 1994 U.S.C.C.A.N. 3340, 3344)). This time of exclusivity affords a debtor an opportunity to propose a chapter 11 plan and solicit acceptances thereof without the potential value deterioration and disruption to business operations that would ensue from the filing and solicitation of competing plans by non-debtor parties. Further, the legislative history indicates that "cause" should be interpreted in such a way "to allow the debtor to reach an agreement." H.R. Rep. No. 95-595 at 231-32 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191. The opportunity for a debtor to negotiate a plan unimpaired by competition is intended to allow a debtor time to satisfy its creditors, win support for its plan, and ultimately survive as a business. *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D. N.J. 1995).

---

[3] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") amended section 1121(d) by prohibiting extensions of exclusive filing and solicitation periods beyond 18 and 20 months of the petition date, respectively, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of these Chapter 11 Cases.

11. In determining whether cause exists to extend a debtor's exclusive periods, courts consider a variety of factors, including:

    (a) the size and complexity of the case;

    (b) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

    (c) the existence of good faith progress toward reorganization;

    (d) whether the debtor is paying its debts as they come due;

    (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    (f) whether the debtor has made progress in its negotiations with creditors;

    (g) the amount of time that has elapsed in the case;

    (h) whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

    (i) the existence of an unresolved contingency.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same); *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended). The application of these factors to the facts and circumstances of these cases demonstrates that the requested extension of the Exclusive Periods is both appropriate and necessary.

12. Not all of the above factors are relevant to every case and courts may consider the relevant subset of factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986)

(finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in holding that cause existed to extend exclusivity).

### A.  Cause Exists for an Extension of the Exclusive Periods

13.  As described in the First Day Declaration and the Exclusivity Motions, the Debtors' goal in the Chapter 11 Cases is to negotiate a plan of reorganization that will resolve their talc-related personal injury claims through the establishment of a funded trust and channeling injunction pursuant to sections 524(g) and 105(a) of the Bankruptcy Code.  First Day Declaration, ¶ 11; First Exclusivity Motion, ¶ 10; Second Exclusivity Motion, ¶ 12; Third Exclusivity Motion, ¶ 12.  The Chapter 11 Cases present complex issues of bankruptcy law, particularly in the context of mass tort trusts, and require the participation of certain key parties, including the TCC and the FCR.

14.  Since the Third Exclusivity Motion, the Debtors have continued to advance productive discussions and negotiations with the TCC, the FCR, and other key parties in these Chapter 11 Cases.  These efforts have entailed various meetings and correspondence regarding the formulation of a consensual chapter 11 plan and the implementation of a global settlement to resolve the Debtors' talc liabilities with the FCR, the TCC, and representatives of the Debtors' non-debtor affiliates.  The parties continue to advance plan negotiations and intend to work with key parties to formalize an ultimate settlement into a consensual plan of reorganization that can be filed and proposed before this Court.  The Debtors have also continued to manage a variety of litigation and negotiations with other third parties.  The Debtors have attended and scheduled certain mediation sessions with third parties, including Cyprus related to the ongoing Adversary Proceeding.  The Debtors intend to continue pursuing a resolution, via mediation or otherwise, with such third parties as is appropriate in the coming months.

15. The Debtors have also taken steps to protect and increase the value of their estates and to ensure the smooth progression of these Chapter 11 Cases. For example, among other things, the Debtors have: (i) attempted to resolve certain disputes with third parties by pursuing mediation and other negotiations, as appropriate; (ii) received Court approval of settlements with certain insurers regarding the payment of pre-petition defense fees and costs; (iii) received Court approval to extend the period by which the Debtors may remove certain civil actions; (iv) received Court approval to employ PJT Partners LP as the Debtors' investment banker; (v) filed an objection to certain amended and duplicate claims filed in the Chapter 11 Cases; and (vi) continued to respond to various creditor inquiries and demands.

16. Despite the complicated legal issues and various parties involved in the Chapter 11 Cases, the Debtors continue to make significant headway towards their ultimate goal of filing a consensual proposed plan of reorganization. The Debtors' representatives and professionals have been fully occupied by the Chapter 11 Cases, and the Debtors plan to continue working diligently toward a consensual resolution of the Chapter 11 Cases. In light of the above, the Debtors believe that each of the factors relevant to these Chapter 11 Cases weighs in favor of the relief requested herein.

**B.    The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information**

17. Given the advanced status of negotiations and the progress that the Debtors continue to make in these Chapter 11 Cases, the Debtors believe that it is reasonable to request further extensions of the Exclusive Periods. Granting the requested extensions will give the Debtors a full and fair opportunity to continue negotiating a consensual plan without the distraction, cost and delay of a competing plan process. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat

of a competing plan.  It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.") (citation and internal quotation marks omitted).  The submission of a competing plan could also interfere and distract from the substantial progress the Debtors have already made towards a global and consensual resolution of their talc related liabilities.  Accordingly, the Debtors submit that this factor supports the relief requested.

### C.     Good-Faith Progress Made in this Case

18.     The Debtors have made progress in these Chapter 11 Cases and do not seek the extension of the Exclusive Periods as a means to exert pressure on the relevant parties in interest.  As discussed above, the Debtors have been and are continuing to actively discuss the structure of a chapter 11 plan with the TCC, the FCR, and other parties in interest.  Thus, the Debtors seek the requested extension of the Exclusive Periods to allow the time necessary to finalize these discussions and implement a consensual chapter 11 plan.

### D.     The Debtors are Paying Their Debts as They Come Due

19.     The Debtors continue to make timely payments on their undisputed postpetition obligations.  As such, this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

### E.     The Extension Sought Will Advance the Chapter 11 Cases and Will Not Pressure the Debtors' Creditors

20.     Granting the requested extensions to the Exclusive Periods will not pressure the Debtors' creditor constituencies or grant the Debtors any unfair bargaining leverage.  The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods.  The Debtors have worked diligently since the Petition Date in support of negotiations of a consensual plan while simultaneously managing ongoing negotiations and litigation, including in the Adversary

Proceeding. Accordingly, the Debtors submit that the extensions are warranted and appropriate under the circumstances.

**F.    Termination of the Debtors' Exclusive Periods Would Adversely Impact the Chapter 11 Cases**

21.    Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize the value of their estates and the progress of the Chapter 11 Cases. Such termination may disincentivize creditors from negotiating with the Debtors, and would certainly undermine the Debtors' efforts to successfully put forth a consensual chapter 11 plan. Moreover, the proposal and solicitation of any competing plan could greatly complicate and increase the cost of administering the Chapter 11 Cases. Accordingly, the Debtors respectfully submit that cause exists to extend the Exclusive Periods pursuant to Section 1121(d) of the Bankruptcy Code.

## CONSENT TO JURISDICTION

22.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

23.    Notice of this Motion will be given to: (a) the U.S. Trustee; (b) the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) counsel to the TCC; (e) counsel to the FCR; and (f) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

24.    No previous request for the relief sought herein has been made to this Court or any other court.

*[The remainder of this page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: March 6, 2020<br>Wilmington, Delaware | */s/ Brett M. Haywood* |

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brett M. Haywood (No. 6166)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
             merchant@rlf.com
             steele@rlf.com
             haywood@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
             kim.posin@lw.com
             helena.tseregounis@lw.com

- and -

Richard A. Levy (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  richard.levy@lw.com

*Counsel for Debtors and Debtors-in-Possession*

RLF1 23047905v.1