# EXHIBIT 5

**Weil, Gotshal & Manges LLP**

BY E-MAIL AND U.S. MAIL

767 Fifth Avenue
New York, NY 10153
+1 212 310 8000 tel
+1 212 310 8007 fax

May 15, 2019

Marcia L. Goldstein, Esq.
+1 212 310 8214
marcia.goldstein@weil.com

Richard A. Levy, Esq.
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

Re: Johnson & Johnson's Venue Motion

SUBJECT TO JOINT DEFENSE / COMMON INTEREST PRIVILEGE[1]

Dear Rick:

We write to follow-up on conversations in which you informed us of the refusal of Imerys Talc America, Inc. and its affiliated debtors (collectively, the "*Debtors*") to support *Johnson & Johnson's and Johnson & Johnson Consumer Inc.'s Motion to Fix Venue for Claims Related to Imerys's Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b)*, Case No. 1:19-mc-00103-MN (D. Del. April 18, 2019*)* [Docket No. 1] (the "*Venue Motion*").[2]

We remain perplexed by your strategic decision not to support the Venue Motion. As co-defendants in the overwhelming majority of the Talc Claims, J&J and the Debtors share the common goal of minimizing, if not eliminating, the liability alleged by such claims. Moreover, as you have acknowledged, successfully transferring the Talc Claims to the United States District Court for the District of Delaware (the "*Delaware District Court*") could significantly minimize both J&J's and the Debtors' potential exposure on such claims.[3]

---

[1] Accordingly, sharing this communication with third-parties with adverse interests, such as plaintiffs, the Tort Claimants' Committee, or the FCR, would violate the joint defense and common interest privilege, the Debtors' good faith obligations under their supply and purchase agreements with J&J, and the Debtors' duty to minimize claims.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the *Memorandum of Law in Support of Johnson & Johnson's and Johnson & Johnson Consumer Inc.'s Motion to Fix Venue for Claims Related to Imerys's Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b)*, Case No. 1:19-mc-00103-MN (D. Del. April 18, 2019) [Docket No. 2].

[3] In addition, although we believe that the Venue Motion should be granted regardless of whether the Debtors support it, it may be that the Delaware District Court is more likely to approve the Venue Motion if it is supported by the Debtors. *See In re Imerys Talc America, Inc.*, Case No. 1:19-mc-00103-MN (D. Del. May 9, 2019) [Docket No. 34] ("Notably the Debtors themselves have not moved for transfer of venue or sought expedited relief.").

Richard A. Levy, Esq.  **Weil, Gotshal & Manges LLP**
May 15, 2019
Page 2

Consistent with our prior discussions, approval of the Venue Motion by the Delaware District Court would reduce J&J's and the Debtors' potential liability in several ways, including: (i) potentially consolidating additional ovarian cancer actions into the MDL prior to the *Daubert* hearings on threshold causation issues scheduled to begin on July 22, 2019; (ii) centralizing the mesothelioma actions for potential determinations on threshold causation issues; (iii) increasing negotiating leverage vis-à-vis the plaintiffs asserting the Talc Claims; and (iv) reducing J&J's indemnification claims against the Debtors. It would similarly seem that the Debtors should consider the myriad tools available to them in chapter 11 to minimize the plaintiffs' claims against them.

As you are aware, the core fiduciary duty of a company operating in chapter 11 is to maximize the value of the estate for the benefit of all stakeholders. To maximize the value of its estate, a debtor must necessarily minimize the value of its liabilities. This is particularly true for liabilities, like those arising from the Talc Claims, for which a debtor does not believe it owes any liability. *See* First Day Decl. ¶¶ 11, 56 ("the Debtors vigorously dispute all liability as to the Talc Claims").[4]

Further, the shared objective of minimizing liability on account of the Talc Claims is reinforced by the duties to defend and indemnify flowing between the Debtors and J&J in the various supply and purchase agreements more fully described in the Venue Motion. We believe that the Debtors' decision to hurriedly settle the Talc Claims, ostensibly to pass a potentially inflated number on to J&J, rather than seek to significantly reduce their potential liability through supporting the Venue Motion constitutes bad faith under such agreements, thereby absolving J&J of any indemnification obligations thereunder. Similarly, it would not be surprising if insurance companies took the view that, by not supporting the Venue Motion, the Debtors are likely impairing their ability to access certain insurance proceeds.

Given their duties to minimize liability and the significant and incontrovertible reduction in potential Talc Claim liability that would result from the Delaware District Court approving the Venue Motion, the Debtors' continued reluctance to support the Venue Motion may be characterized as irrational at best and a breach of fiduciary duties at worst. Indeed, if the Debtors do not support the Venue Motion or otherwise continue to take actions contrary to the parties' shared interest in minimizing their liability to plaintiffs, J&J will take all actions necessary to bring to light for the Bankruptcy Court and the general public the clandestine settlement dealings among the Debtors, their corporate parents (including Imerys S.A.), the plaintiffs, and the FCR, including by commencing thorough discovery and an examination

---

[4] Indeed, it is a basic duty of a trustee and debtor in possession "to object to the allowance of any claim that is improper." 11 U.S.C. §§ 704(a)(5), 1107(a).

Richard A. Levy, Esq.  **Weil, Gotshal & Manges LLP**
May 15, 2019
Page 3

into the actions of and communications between these parties, in light of their respective fiduciary duties, including that of the Debtors to maximize value for all stakeholders.[5]

Finally, the Debtors should recognize the critical juncture at which they find themselves. Although the current path of a hurried settlement with the plaintiffs and FCR may appear to be the most expeditious, in reality, this path would be long, arduous, and uncertain for the Debtors and their corporate parents (including Imerys S.A.). In addition to prosecuting and publicizing the actions and arguments previously described, J&J will vehemently contest confirmation of any chapter 11 plan that seeks to offload or create a path to offload onto J&J liability for the Talc Claims. This uphill path should be compared with the alternative, which is consistent with the Debtors' duties and likely leads to consolidated and expedited general causation determinations for both ovarian cancer and mesothelioma claims.[6]

We continue to be available to discuss our shared interest in minimizing liability on account of the Talc Claims, including the significance of the Venue Motion in achieving this objective.

Sincerely,

*[signature]*

Marcia L. Goldstein, Esq.

cc: Diane Sullivan, Esq.
    Ronit J. Berkovich, Esq.
    Christopher K. Kiplok, Esq.

---

[5] Accordingly, please ensure that all communication by and involving the Debtors – as well as their corporate parents (including Imerys S.A.) – is retained for discovery purposes.

[6] Plaintiffs' core testing expert Dr. Longo's recent perjury in the *Schmitz* case and his clear prior testimony that there *is not* asbestos in cosmetic talc is the latest indication that the defendants are in a strong position at upcoming *Daubert* hearings.