# EXHIBIT 6

**LATHAM&WATKINS**LLP

330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

**BY EMAIL AND U.S. MAIL**

*SUBJECT TO FRE 408 AND STATE LAW ANALOGUES*

December 12, 2019

Marcia L. Goldstein, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Re: Response to December 3, 2019 Letter Regarding Johnson & Johnson and Johnson & Johnson Consumer, Inc.'s (together, "J&J") Indemnification Obligations

Dear Marcia:

We are writing in response to your December 3, 2019 letter and the enclosed proposal purporting to address J&J's contractual indemnification obligations to Imerys Talc America, Inc., Imerys Talc Vermont, Inc. and Imerys Talc Canada Inc. (collectively, the "Debtors").

As an initial matter, your letter excludes relevant facts and contains numerous misstatements that we feel compelled to correct. First, while the Debtors appreciate that J&J is now acknowledging the significant indemnification obligations it owes to the Debtors, your letter does not accurately portray J&J's prior conduct related to such obligations. Instead, your letter ignores that prior to the filing of the Debtors' chapter 11 cases, J&J refused to engage in any meaningful dialogue regarding its obligation to indemnify the Debtors. Indeed, J&J's failure to perform its defense and indemnification obligations led to the Debtors' decision to file for chapter 11 protection.[1] Going back to 2015, the Debtors sent J&J several separate demands that J&J comply with its obligations under the relevant agreements, many of which went unanswered and none of which moved J&J to honor its indemnification obligations or to make a realistic proposal to address the significant costs and liability exposure faced by the Debtors. Nor did

---

[1] *See, e.g.*, Declaration of Alexandra Picard, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings, Case No. 19-10289 (LSS) (Doc. No. 10) at ¶¶ 10, 38, 44-45 ("As of the Petition Date, J&J has refused to acknowledge or accept its indemnification obligations and has disputed the scope of coverage available to the Debtors under [certain] agreements (or denied indemnification altogether).").

LATHAM&WATKINS LLP

J&J make any meaningful proposal following several in-person meetings and mediation sessions. At any time during the past several years, J&J could have chosen to honor its indemnity obligations – no further negotiations were needed.  It has never done so.  Only now that the Debtors have sought chapter 11 protection (and incurred tens of millions of dollars in fees and costs as a result) has J&J conceded that it owes indemnification obligations to the Debtors and made any effort to address those obligations.

  Second, your suggestion that the Debtors have "refus[ed] to engage with J&J on the terms of an indemnification proposal" is simply incorrect.  As you know, since filing their chapter 11 cases, the Debtors have consistently made themselves available for discussions with J&J and requested that J&J offer a concrete written proposal for consideration by all interested parties.  J&J's initial written proposal was not received until a few weeks ago (and nearly nine months after the Debtors filed the chapter 11 cases) – on November 1, 2019.  Upon receipt of the proposal, we advised that the Debtors would need time to digest its terms and determine next steps.  Far from "complete and baffling silence," the Debtors have been actively working to determine whether some form of J&J's proposal may present a path forward, and have maintained an open line of communication with J&J.  The adversarial and threatening tone of your December 3 letter is not productive, and certainly does not clear a path toward a potential resolution.[2]  If anything, the tone and substance of your letter raises a question as to whether your proposal was made in good faith, or instead was lodged as a litigation tactic.

  Third, the Debtors take issue with your suggestion that J&J has the right to decide whether to settle talc-related claims against the Debtors.  J&J's steadfast refusal to defend any of the pending cases stayed today, or to participate in the settlement of past cases, makes it clear that it did not take that right or obligation seriously until now, but we think that issue is best reserved for a later discussion, perhaps even post-emergence.  Lastly, your rhetorical charge that the Debtors' settlement negotiations are being driven by a desire to obtain a release for the Debtors' affiliates at the expense of J&J and other interested parties is both unsupported and inaccurate.

  As we represented on numerous occasions, the Debtors filed their chapter 11 cases with the intent to negotiate and consummate a consensual plan of reorganization that comprehensively resolves all of the Debtors' talc liabilities and treats those liabilities and the claims and interests of all other stakeholders in a fair and equitable manner.  Negotiations with the Official Committee of Tort Claimants (the "<u>Committee</u>") and the Future Claimants' Representative

---

[2] For example, the threat of a renewed Rule 2004 motion is not constructive when the Court plainly indicated that plan-related discovery is not appropriate until a plan is proposed. Your letter offers no justification for why J&J requires production of plan-related discovery now other than to harass the Debtors and distract them from ongoing plan negotiations with other parties. The Debtors are happy to engage in a productive discussion related to plan-related discovery at the appropriate time, but it is improper for J&J to attempt to use the threat of Rule 2004 discovery in an effort to force the Debtors to engage in settlement discussions with J&J immediately and without regard to the status of the Debtors' chapter 11 cases and other plan-related negotiations.

LATHAM&WATKINS LLP

("FCR") are now at an advanced stage, and we look forward to involving other interested parties, including J&J, in those plan-related discussions in the near term.

Over the course of our discussions with you and your client, we have advised that the Debtors desire to have a consensual plan that resolves *all* talc claims, as that is the only way the Debtors can successfully emerge from bankruptcy.  As we pointed out in response to J&J's recent proposal, J&J purports to offer only a partial solution, as its proposal addresses just a portion of the Debtors' talc-related exposure: pre-4/15/01 claims involving J&J products.  The proposal does not even attempt to resolve litigation exposure beyond that date and ignores J&J's later indemnification obligations under the parties' 2011 agreement.  As a result, unless J&J is prepared to present a proposal that comprehensively resolves all talc liabilities of the Debtors, the Debtors believe the best path forward for all stakeholders is to first conclude the global settlement negotiations with the Committee and the FCR – which, if successful would resolve all of the Debtors' existing and future talc exposure -- and then engage with J&J, with the full participation of the Committee and the FCR, in order to explore whether a mutually acceptable resolution of J&J's indemnification obligations may be incorporated into a consensual plan.

To facilitate our future discussions over your indemnity proposal, we shared the proposal with the Committee and FCR promptly after we received it.  We understand that the Committee and FCR are interested in participating in discussions related to J&J's indemnity obligations, but would prefer to first conclude their global settlement negotiations with the Debtors and their parent.

The Debtors remain sincere in their desire to achieve a consensual and comprehensive resolution of their historic talc liabilities in a manner that maximizes the value of their estates and treats all stakeholders in a fair and equitable manner.  The Debtors appreciate that J&J has taken the initiative to craft a proposal for consideration by the estate representatives.  The Debtors remain open to further discussions with J&J regarding how its indemnification obligations can best be addressed in the context of a consensual plan, whether through some version of J&J's current proposal or otherwise.  Toward that end, we would encourage J&J to consider revising its proposal in a manner that addresses all of its indemnification obligations and all of the Debtors' talc liabilities rather than purporting to provide a piecemeal solution that, standing alone, will not enable the Debtors to emerge from bankruptcy.  .

While the Debtors remain committed to seeing the ongoing discussions with the Committee and the FCR through, they also remain open to exploring further discussions with J&J, including with the involvement of the Committee and FCR.  We look forward to engaging with J&J in productive global settlement discussions, and remain open to J&J's thoughts as to how the entirety of its indemnification obligations may be addressed.

LATHAM&WATKINS LLP

                        Very truly yours,

                                /s/

                        Richard A. Levy

cc:  Diane Sullivan, Esq. (by email and U.S. mail)
      Ronit J. Berkovich, Esq. (by email and U.S. mail)
      Jeffery E. Bjork, Esq. (by email)

LATHAM&WATKINS LLP