**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | : | Case No. 19-10289 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Hearing Date: June 30, 2020 at 10:00 a.m. (ET)** |
| | : | **Objection Deadline: June 19, 2020 at 4:00 p.m. (ET)** |

------------------------------------------------------------- x

**MOTION OF THE DEBTORS FOR AN ORDER CONFIRMING CLASSIFICATION OF
CERTAIN CLAIMS FILED IN THE CHAPTER 11 CASES AS TALC PERSONAL
INJURY CLAIMS AND EXPUNGING SUCH CLAIMS
FROM THE CLAIMS REGISTER**

> **THIS MOTION SEEKS TO CONFIRM THE CLASSIFICATION OF AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM UPON THE EFFECTIVE DATE ON THE PLAN. CLAIMANTS SHOULD CAREFULLY REVIEW THIS MOTION AND THE SCHEDULE ATTACHED TO THIS MOTION TO DETERMINE WHETHER THIS MOTION AFFECTS THEIR CLAIMS. CLAIMANTS RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON SCHEDULE 1 TO EXHIBIT A ATTACHED HERETO.**

The debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") hereby file this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), under section 105 of title 11 of the United States Code (the "**Bankruptcy Code**") (i) confirming the classification of certain claims filed in the Chapter 11 Cases identified on Schedule 1 attached to the Proposed Order (the "**Filed Talc Claims**") as Talc Personal Injury Claims (as defined below) and (ii) authorizing the Debtors to expunge such Talc Claims from the Claims Register (as defined below) contingent on the Plan (as defined below) going effective.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050) and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is section 105 of the Bankruptcy Code.

## BACKGROUND

### A.      General Background

2.      On February 13, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 10], which was filed on the Petition Date and is fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On March 5, 2019, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of tort claimants (the "**TCC**") in the Chapter 11 Cases.  On June 3, 2019, the Court entered an order [Docket No. 647] appointing James L. Patton Jr. as the representative for future talc personal injury claimants (the "**FCR**") pursuant to sections 105(a), 524(g)(4)(B)(i) and 1109(b) of the Bankruptcy Code.  As of this date, no trustee or examiner has been requested or appointed in the Chapter 11 Cases.

US-DOCS\115299794.4

4.      The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**B.      Bar Dates**

5.      On March 19, 2019, the Court entered an order [Docket No. 253] extending the deadline by which the Debtors must file their schedules of assets, liabilities and executory contracts and unexpired leases, and statements of financial affairs (collectively, the "**Schedules**").  In accordance with that order and pursuant to Bankruptcy Rule 1007 and Rule 1007-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors filed their Schedules on April 12, 2019 [Docket Nos. 362, 363, 365, 366, 367 and 368] and certain amendments to the Schedules on May 20, 2019 [Docket Nos. 577, 578 and 579].

6.      On July 25, 2019, the Court entered the *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim Other Than with Respect to Talc Personal Injury Claims and (II) Approving Form and Manner of Notice Thereof* [Docket No. 881] (the "**General Bar Date Order**"), which, among other things, (i) established October 15, 2019 as the general bar date by which all entities, except for entities asserting Talc Claims (as defined in the General Bar Date Order), were required to file proofs of claim in the Chapter 11 Cases; (ii) approved procedures for filing proofs of claim in the Chapter 11 Cases; and (iii) approved the general form and manner of notice of the Bar Dates (as defined in the General Bar Date Order).

7.      On November 22, 2019, the Court entered the *Order (I) Establishing a Bar Date for Indirect Talc Claims and Related Procedures for Filing Proofs of Claim for Indirect Talc Claims and (II) Approving Form and Manner of Notice Thereof* [Docket No. 1260] ("**Indirect Talc Claim Bar Date Order**").  Pursuant to the Indirect Talc Claim Bar Date Order, January 9,

3

2020 was established as the Indirect Talc Claim Bar Date (as defined in the Indirect Talc Claim Bar Date Order) by which all entities asserting Indirect Talc Claims (as defined in the Indirect Talc Claim Bar Date Order), were required to file proofs of claim in the Chapter 11 Cases.[2]

**C.    Plan and Disclosure Statement**

8.    On May 15, 2020, the Debtors filed the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 1715] (the "**Disclosure Statement**")[3] and the *Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 1714] (the "**Plan**").[4]  As more fully described in the Disclosure Statement, the Plan contemplates the resolution of Talc Personal Injury Claims[5] by

---

[2]    The Indirect Talc Claim Bar Date equally applies to Indirect Talc Personal Injury Claims, as that term is defined in the Plan and below.

[3]    The Plan contemplates that a non-Debtor affiliate, Imerys Talc Italy S.p.A., may subsequently initiate a chapter 11 filing and become a chapter 11 debtor.  In that case, Imerys Talc Italy S.p.A. will seek to have its chapter 11 case jointly administered with the Debtors' Chapter 11 Cases for procedural purposes only.

[4]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

[5]    As defined in the Plan, "**Talc Personal Injury Claims**" means any Claim and any Talc Personal Injury Demand against one or more of the Debtors or any other Protected Party whether known or unknown, including with respect to any manner of alleged bodily injury, death, sickness, disease or alleged disease process, emotional distress, fear of cancer, medical monitoring, or any other alleged personal injuries (whether physical, emotional or otherwise), directly or indirectly arising out of or relating to the presence of or exposure to talc or talc-containing products based on the alleged pre-Effective Date acts or omissions of the Debtors or any other entity for whose conduct the Debtors have or are alleged to have liability (but only to the extent such Claim or Talc Personal Injury Demand directly or indirectly arises out of or relates to the alleged pre-Effective Date acts or omissions of the Debtors), including, without limitation any claims directly or indirectly arising out of or relating to: (a) any products previously mined, processed, manufactured, sold (including, without limitation, any Sale pursuant to the Sale Order) and/or distributed by the Debtors or any other entity for whose conduct the Debtors have or are alleged to have liability, but in all cases only to the extent of the Debtors' liability; (b) any materials present at any premises owned, leased, occupied or operated by any entity for whose products, acts, omissions, business or operations the Debtors have, or are alleged to have, liability; or (c) any talc in any way connected to the Debtors alleged to contain asbestos or other contaminates.  Talc Personal Injury Claims include all such claims, whether: (1) in tort, contract, warranty, restitution, conspiracy, contribution, indemnity, guarantee, subrogation, or any other theory of law, equity or admiralty, whether brought, threatened or pursued in any United States

4

establishing a funded trust and implementing a channeling injunction pursuant to sections 524(g) and 105(a) of the Bankruptcy Code.  If approved by the holders of Talc Personal Injury Claims and confirmed by the Court, all Talc Personal Injury Claims will be channeled to the Talc Personal Injury Trust, where such claims will be resolved pursuant to the Trust Distribution Procedures.

9.    The Plan incorporates a comprehensive settlement between the Debtors and the other Plan Proponents, pursuant to which Imerys S.A. and its Affiliates (excluding the Debtors) agreed to make a contribution of cash and non-cash assets to the Debtors and the Talc Personal Injury Trust in exchange for releases and an injunction benefitting the Imerys Protected Parties. The Imerys Settlement Funds, which will be transferred to the Talc Personal Injury Trust on the Effective Date, are the centerpiece of Imerys' contribution and will be used to resolve Talc Personal Injury Claims in accordance with the Trust Distribution Procedures.  The Plan also contemplates that the Debtors and other Protected Parties will receive the benefit of the Channeling Injunction, which will permanently and forever stay, bar, and enjoin holders of Talc Personal Injury Claims from taking any action for the purpose of, directly, indirectly, or derivatively

---

court or court anywhere in the world; (2) seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative or any other costs, fees, injunctive or similar relief or any other measure of damages; (3) seeking any legal, equitable or other relief of any kind whatsoever, including, for the avoidance of doubt, any claims arising out of or relating to the presence of or exposure to talc or talc-containing products assertable against one or more Debtors or any other Protected Party by Cyprus in the Chapter 11 Cases; or (4) held by claimants residing within the United States or in a foreign jurisdiction. Talc Personal Injury Claims also include any such claims that have been resolved or are subject to resolution pursuant to any agreement, or any such claims that are based on a judgment or verdict.  Talc Personal Injury Claims do not include any claim by any present or former employee of a predecessor or Affiliate of the Debtors for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer.  For the avoidance of doubt, the term "Talc Personal Injury Claim" includes, without limitation (i) all claims, debts, obligations, or liabilities for compensatory damages (such as, without limitation, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages; and (ii) Indirect Talc Personal Injury Claims.

US-DOCS\115299794.4

collecting, recovering, or receiving payment of, on, or with respect to any Talc Personal Injury Claim other than from the Talc Personal Injury Trust.

**D.        Talc Personal Injury Claims**

10.        The Debtors have not established, and do not currently intend to seek to establish, a bar date for Direct Talc Personal Injury Claims.[6]  However, due to the various talc-related lawsuits that have been filed against the Debtors, the Debtors' records include information regarding a substantial amount, if not all, of the Direct Talc Personal Injury Claims, including the names and addresses of holders of such claims, and, in many instances, information regarding the law firm representing such holder.

11.        On the other hand, the Debtors determined that it was appropriate to establish a bar date for holders of Indirect Talc Personal Injury Claims to be in a position to "solicit the appropriate parties for purposes of voting on any plan of reorganization in the Chapter 11 Cases and appropriately manage certain of their talc related liabilities." *See Motion of the Debtors for an Order (I) Establishing a Bar Date for Indirect Talc Claims and Related Procedures for Filing Proofs of Claim for Indirect Talc Claims and (II) Approving Form and Manner of Notice Thereof* [Docket. No. 1220], ¶ 7.  To this end, the Indirect Talc Claim Bar Date has helped the Debtors understand the nature, validity, and amount of the Indirect Talc Personal Injury Claims.

12.        Currently, the Debtors register of claims (the "**Claims Register**"), prepared and provided by Prime Clerk LLC, indicates that 941 proofs of claims have been filed in the Chapter 11 Cases alleging claims against the Debtors.  The Debtors have identified 538 claims that they believe are Talc Personal Injury Claims.  Of these, 245 represent Direct Talc Personal Injury

---

[6]        As used herein, "**Direct Talc Personal Injury Claims**" is a reference to Talc Personal Injury Claims other than Indirect Talc Personal Injury Claims.

Claims (even though no bar date has been set with respect to such claims), and 293 represent

Indirect Talc Personal Injury Claims.[7]  These claims – the Filed Talc Claims – are listed on

Schedule 1 attached to the Proposed Order.

## RELIEF REQUESTED

13.     The primary purpose of the Chapter 11 Cases is to confirm a consensual plan of

reorganization pursuant to sections 105(a), 524(g) and 1129 of the Bankruptcy Code.  To this end,

the Plan, if approved by the requisite number of holders of Talc Personal Injury Claims, will

(i) channel all Talc Personal Injury Claims against the Debtors and the Protected Parties to a trust

vested with substantial assets and (ii) provide for a channeling injunction prohibiting holders of

Talc Personal Injury Claims from asserting such claims against any Debtor or Protected Party.  On

the other hand, holders of Non-Talc Claims will be paid in full and otherwise left unimpaired by

the Plan.  In an effort to put the Debtors in the best position to implement the terms of the Plan, if

---

[7]     An "**Indirect Talc Personal Injury Claim**" is any Talc Personal Injury Claim of any corporation
(as defined in section 101(9) of the Bankruptcy Code), co-defendant of a Debtor, or predecessor of a Debtor
for contribution, reimbursement, subrogation, or indemnity, whether contractual or implied by law (as those
terms are defined by applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative
Talc Personal Injury Claim of any corporation (as defined in section 101(9) of the Bankruptcy Code), co-
defendant of a Debtor, or predecessor of a Debtor, whether in the nature of or sounding in contract, tort,
warranty, or other theory of law.  For the avoidance of doubt, an Indirect Talc Personal Injury Claim shall
not include any claim for or otherwise relating to death, injury, or damages caused by talc or a product or
material containing talc that is asserted by or on behalf of any injured individual, the estate, legal counsel,
relative, assignee, or other representative of any injured individual, or an individual who claims injury or
damages as a result of the injury or death of another individual regardless of whether such claim is seeking
compensatory, special, economic, non-economic, punitive, exemplary, administrative, or any other costs or
damages, or any legal, equitable or other relief whatsoever, including pursuant to a settlement, judgment,
or verdict.  By way of illustration and not limitation, an Indirect Talc Personal Injury Claim shall not include
any claim for loss of consortium, loss of companionship, services and society, or wrongful death.  Indirect
Talc Personal Injury Claims shall be resolved by the Talc Personal Injury Trust in accordance with the Talc
Personal Injury Trust Documents.

Moreover, a "**Talc Personal Injury Demand**" is a Demand against the Debtors or any one of them, that
(i) was not a Claim prior to the Effective Date; (ii) arises out of the same or similar conduct or events that
gave rise to a Talc Personal Injury Claim; and (iii) pursuant to the Plan, is to be resolved by the Talc
Personal Injury Trust in accordance with the Trust Distribution Procedures.

US-DOCS\115299794.4

approved, as expeditiously as possible, the Debtors filed this Motion seeking a determination that the claims listed on <u>Schedule 1</u> attached to the Proposed Order are appropriately classified as Talc Personal Injury Claims and authorization to expunge such Claims from the Claims Register upon the Effective Date of the Plan as such claimants will be required to file separate claims with the Talc Personal Injury Trust pursuant to the terms of the Trust Distribution Procedures.

**A.    Implementation of the Plan Requires Classification of the Talc Personal Injury Claims**

14.    As further described in the Plan, the holders of Allowed Non-Talc Claims against one of the Debtors will be paid with cash set aside in one of four Reserves – (i) the Administrative Claim Reserve; (ii) the Fee Claim Reserve; (iii) the Reorganized North American Debtor Cash Reserve; and (iv) the Disputed Claims Reserve. The Reserves will be funded with cash on hand and/or portions of the Imerys Contribution (as applicable) in amounts adequate to satisfy and/or account for all Non-Talc Claims that have not already been disallowed prior to the Effective Date of the Plan. All cash not used to fund the Reserves and all excess cash in the Reserves after the Allowed Non-Talc Claims have been paid in full and all other items to be funded by such Reserves have been satisfied, except with respect to the Contingent Contribution, will be transferred to the Talc Personal Injury Trust.

15.    The Debtors contemplate access to sufficient cash to fund the Reserves, establish the Talc Personal Injury Trust, and exit bankruptcy, however it is imperative that the Debtors are able to accurately estimate the amounts necessary to fund the Reserves. This is especially the case given increased liquidity constraints resulting from the overall duration of the Chapter 11 Cases.

16.    To this end, the Debtors require certainty as to whether certain claims filed in the Chapter 11 Cases are Non-Talc Claims (which will be paid with Reserve funds if allowed) or Talc Personal Injury Claims (which will be paid with funds held by the Talc Personal Injury Trust if

US-DOCS\115299794.4

allowed).  Given that all Allowed Unsecured Claims will be paid in full from funds contained in the Reorganized North American Debtor Cash Reserve or the Disputed Claims Reserve (as applicable), the characterization of a claim as a Non-Talc Claim instead of a Talc Personal Injury Claim, or vice versa, impacts the amounts necessary to fund the Reserves.

17.    Based on a thorough analysis of the claims listed on <u>Schedule 1</u> attached to the Proposed Order, the Debtors believe that all such claims qualify as Talc Personal Injury Claims that, on the Effective Date of the Plan, if approved, will be channeled to the Talc Personal Injury Trust and do not need to be accounted for in the Reserves.

18.    The relief sought herein is meant to enable the Debtors to adequately account for Talc Personal Injury Claims so as to properly implement the Plan.  Finality as to the whether certain of the claims filed against the Debtors are properly classified as Talc Personal Injury Claims or Non-Talc Claims will enable the Debtors to promptly effectuate the Plan.  Moreover, the relief sought herein does not deny a holder of a Filed Talc Claim from disputing the classification of his or her claim as a Talc Personal Injury Claim.  As discussed below, holders of the Filed Talc Claims will have the opportunity to object to the proposed treatment of their claim as a Talc Personal Injury Claim and the removal of their claim from the Claims Register upon the Effective Date of the Plan.

**B.    Removal of the Talc Personal Injury Claims from the Claims Register**

19.    If the Plan is approved, all Talc Personal Injury Claims will be channeled to the Talc Personal Injury Trust and resolved pursuant to the Trust Distribution Procedures.  Holders of Talc Personal Injury Claims will be required to file a claim with the Talc Personal Injury Trust and directly pursue their claims against the Talc Personal Injury Trust in accordance with the Trust Distribution Procedures.  These individuals will no longer be able to pursue such claims against

the Debtors, and because such claims will ultimately be unenforceable against the Debtors, they should be expunged from the Claims Register upon the Effective Date of the Plan.

20.     Expunging all Talc Personal Injury Claims from the Claims Register, contingent on the Effective Date of the Plan, will assist the Debtors administratively and quell any uncertainty surrounding the proper classification of such claims.  At bottom, removal of the Talc Personal Injury Claims from the Claims Register is in the bests interests of the Debtors' estates and will not impact the rights of such claimants given that this treatment is consistent with the Plan and will not affect their rights to assert claims against the Talc Personal Injury Trust in accordance with the Trust Distribution Procedures.

**BASIS FOR RELIEF**

21.     The Court has the power to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code, which provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  *See, e.g.*, *Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."); *In re Cont'l Airlines*, 203 F.3d 203, 211 (3d Cir. 2003) ("Section 105(a) supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *In re Oxford Mgmt.*, 4 F.3d 1329, 1333 (5th Cir. 1993) ("Section 105(a) authorizes a bankruptcy court to fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code."); *see also In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.").

22.     The relief requested in this Motion is necessary to enable the Debtors to implement a feasible plan of reorganization.  As noted above, the Plan contemplates that Allowed Non-Talc Claims will be paid with funds included in one of the four Reserves proposed in the Plan.  If a supposed Talc Personal Injury Claim is later characterized as a Non-Talc Claim, the Debtors will need to account for such claim in the Reserves.  Accordingly, in order to appropriately fund the Reserves the Debtors are seeking confirmation that the claims listed on Schedule 1 attached to the Proposed Order are appropriately classified as Talc Personal Injury Claims.

23.     Additionally, the relief sought in the Proposed Order will enable to the Debtors to remove the Talc Personal Injury Claims from the Claims Register upon the Effective Date of the Plan to ease administration of their estates and implementation of the Plan.  Removal of the Talc Personal Injury Claims from the Claims Register also reflects the reality that such claims will be liquidated and paid by the Talc Personal Injury Trust, and not the Debtors, if the Plan is approved.

## RESPONSES TO THE MOTION

24.     By this Motion, the Debtors request that any holder of a Filed Talc Claim who disputes the Debtors' determination that its claim is a Talc Personal Injury Claim and the contingent removal of its claim from the Claims Register file and serve a written response (the "**Response**") so that it is actually received by the Clerk of the Court and the parties in the following paragraph no later than 4:00 p.m. (ET) on June 19, 2020 (the "**Response Deadline**").  Claimants should locate their names and claims on Schedule 1 to the Proposed Order, and carefully review the Motion.  A hearing to consider the Motion will be held on June 30, 2020 at 10:00 a.m. (ET), before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801 (the "**Hearing**").

US-DOCS\115299794.4

25.     Each Response must be filed and served upon the following entities at the following addresses: (a) Office of the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801; (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq. (e-mails: collins@rlf.com and merchant@rlf.com); and (c) Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, California 90071, Attn: Kimberly A. Posin, Esq. (e-mail: kim.posin@lw.com).

26.     Every Response must contain, at a minimum, the following information:

    a.    a caption setting forth the name of the Court, the above-referenced case number and the title of the Motion to which the Response is directed;

    b.    the name of the holder of the Filed Talc Claim and a concise statement setting forth the reasons why a particular Filed Talc Claim should not be classified as a Talc Personal Injury Claim and expunged from the Claims Register, including, but not limited to, the specific factual and legal bases upon which the claimant will rely in opposing the Motion at the hearing;

    c.    all documentation or other evidence of the claim in question, to the extent not already included with the claimant's proof of claim, upon which the claimant will rely in opposing the Motion at the Hearing;

    d.    the name, address, telephone number, and e-mail address of the person(s) (who may be the claimant or a legal representative thereof) possessing ultimate authority to reconcile, settle, or otherwise resolve the classification of the claim on behalf of the claimant; and

    e.    the name, address, telephone number, and e-mail address of the person(s) (who may be the claimant or a legal representative thereof) to whom the Debtors should serve any reply to the Response.

27.     If a Response is properly and timely filed and served in accordance with the above procedures, the Debtors will endeavor to reach a consensual resolution with the claimant.  If no consensual resolution is reached, the Court will conduct a hearing with respect to the Motion and the Response on June 30, 2020, at 10:00 a.m. (ET), or such other date and time as parties filing

Responses may be notified.  Only those Responses made in writing and timely filed and received will be considered by the Court at any such hearing.

28.    The Debtors reserve the right to adjourn the Hearing on any Filed Talc Claim included in the Motion.  In the event that the Debtors so adjourn the Hearing, they will state that the Hearing on that particular Claim has been adjourned on the agenda for the Hearing on the Motion, which agenda will be served on the person designated by the claimant in its Response pursuant to paragraph 26 above.

29.    If a claimant whose Filed Talc Claim is subject to the Motion, and who is served with the Motion, fails to file and serve a timely Response in compliance with the foregoing procedures, the Debtors will present to the Court an appropriate order classifying the Filed Talc Claim as a Talc Personal Injury Claim without further notice to the claimant.

30.    Each of the Filed Talc Claims and the Debtors' objections thereto as asserted in this Motion constitutes a separate contested matter as contemplated by Bankruptcy Rule 9014.  The Debtors request that any order entered by the Court with respect to an objection asserted herein will be deemed a separate order with respect to each such Filed Talc Claim.

## DEBTORS' RESERVATION OF RIGHTS

31.    Nothing contained herein or in the Proposed Order is intended or should be deemed or construed: (a) as an admission as to the validity of any claim against the Debtors; (b) as a waiver of the Debtors' rights to dispute or otherwise object to any claim on any grounds or basis; (c) to waive or release any right, claim, defense, or counterclaim of the Debtors, or to estop the Debtors from asserting any right, claim, defense, or counterclaim; (d) as an approval or assumption of any agreement, contract, or lease, pursuant to section 365 of the Bankruptcy Code; or (e) as an admission that any obligation is entitled to administrative expense priority or any such contract or

agreement is executory or unexpired for purposes of section 365 of the Bankruptcy Code or otherwise.

## CONSENT TO JURISDICTION

32.    Pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

33.    Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney for the District of Delaware; (c) holders of Filed Talc Claims; (d) the Internal Revenue Service; (e) counsel to the TCC; (f) counsel to the FCR; and (g) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

34.    A copy of this Motion is available on (a) the Court's website: www.deb.uscourts.gov, and (b) the website maintained by Prime Clerk at https://cases.primeclerk.com/imerystalc.

## NO PRIOR NOTICE

35.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[The remainder of this page intentionally left blank]*

US-DOCS\115299794.4

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an order, substantially in the form attached hereto as <u>Exhibit A</u>; and (ii) grant such other and further relief as the Court may deem proper.

Dated: May 29, 2020
      Wilmington, Delaware

*/s/ Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brett M. Haywood (No. 6166)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
        merchant@rlf.com
        steele@rlf.com
        haywood@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
Shawn P. Hansen (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
        kim.posin@lw.com
        helena.tseregounis@lw.com
        shawn.hansen@lw.com

- and -

Richard A. Levy (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  richard.levy@lw.com

*Counsel for Debtors and Debtors-in-Possession*