UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| | Case No. 19-10289(LSS) |
| IMERYS TALC AMERICA, INC. et al, | 824 Market Street |
| | Wilmington, Delaware 19801 |
| Debtors. | Monday, August 24, 2020 |

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA TELEPHONE:

| | |
|---|---|
| For the Debtors: | Michael J. Merchant, Esq.<br>Amanda R. Steele, Esq.<br>Marcos Ramos, Esq.<br>RICHARDS, LAYTON & FINGER, PA |
| | Jeffrey E. Bjork, Esq.<br>Kimberly A. Posin, Esq.<br>Amy C. Quartarolo, Esq.<br>LATHAM & WATKINS, LLP |
| For the U.S. Trustee: | Linda Richenderfer, Esq.<br>OFFICE OF THE U.S. TRUSTEE |
| For Cyprus Amax Minerals Company: | Emil Kleinhaus, Esq.<br>Nicholas C.E. Walter, Esq.<br>WACHTEL, LIPTON, ROSEN & KATZ |

(Appearances Continued)

| | |
|---|---|
| Audio Operator: | Electronically Recorded<br>by CourtCall and<br>Ginger Mace, ECRO |
| Transcription Company: | Reliable<br>1007 N. Orange Street<br>Wilmington, Delaware 19801<br>(302)654-8080<br>Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES VIA TELEPHONE: (Continued)

| | |
|---|---|
| For the Legal Representative for Future Claimants: | Robert S. Brady, Esq.<br>Edwin Harron, Esq.<br>YOUNG, CONAWAY, STARGATT & TAYLOR, LLP |
| For the Cyprus Entities: | Robert J. Dehney, Esq.<br>Matthew O. Talmo, Esq.<br>MORRIS, NICHOLS, ARSHT & TUNNELL, LLP |
| | Paul E. Heath, Esq.<br>Matthew W. Moran, Esq.<br>VINSON & ELKINS, LLP |
| For the Rio Tinto Entities: | Maria A. Sawczuk, Esq.<br>GOLDSTEIN & MCCLINTOCK, LLP |
| | Craig Goldblatt, Esq.<br>Danielle Spinelli, Esq.<br>WILMER, CUTLER, PICKERING, HALE & DORR, LLP |
| For Johnson & Johnson: | Patrick A. Jackson, Esq.<br>FAEGRE, DRINKER, BIDDLE & REATH, LLP |
| | Diane Sullivan, Esq.<br>Theodore Tsekerides, Esq.<br>Ronit Berkovich, Esq.<br>Jason George, Esq.<br>WEIL, GOTSHAL & MANGES, LLP |
| For Imerys S.A.: | Christopher Kiplok, Esq.<br>Dustin Smith, Esq.<br>HUGHES, HUBBARD & REED, LLP |
| For the Tort Claimant Committee: | Michael Enright, Esq.<br>Mark A. Fink, Esq.<br>Natalie D. Ramsey, Esq.<br>ROBINSON & COLE, LLP |
| | Stuart Lombardi, Esq.<br>Rachel Strickland, Esq.<br>WILLKIE, FARR & GALLAGHER, LLP |

(Appearances Continued)

APPEARANCES VIA TELEPHONE: (Continued)

| | |
|---|---|
| For Columbia Casualty Co.: | Matthew C. Lovell, Esq.<br>NICOLAIDES FINK THROPE<br>MICHEALIDES SULLIVAN, LLP |
| For Defendants TCC: | Kami E. Quinn, Esq.<br>GILBERT, LLP |
| For Providence Washington Insurance: | Eric M. Sutty, Esq.<br>ELLIOT GREENLEAF, PC<br><br>Lawrence A. Tabb, Esq.<br>MUSICK, PEELER & GARRETT, LLP |
| For Cyprus Historical Excess Insurers: | Tancred V. Schiavoni, Esq.<br>O'MELVENY & MYERS, LLP |
| Also Appearing: | Stamatious Stamoulis<br>STAMOULIS |

INDEX


| | Page |
|---|---|
| STATUS BY MS. POSIN | 6 |
| COMMENTS BY MS. SULLIVAN | 8 |
| COMMENTS BY MS. STRICKLAND | 11 |
| COMMENTS BY MR. HARRON | 13 |
| COMMENTS BY MR. SCHIAVONI | 13 |
| RESPONSE BY MS. POSIN | 15 |
| COMMENTS BY MS. RICHENDERFER | 16 |
| FURTHER RESPONSE BY MS. POSIN | 17 |
| COMMENTS BY MR. KLEINHAUS | 20 |
| COMMENTS BY THE COURT/SCHEDULING | 21 |

(Proceedings commence at 10:01 a.m.)

THE COURT: Good afternoon, Counsel. This is Judge Silverstein. We're here for a status teleconference in Imerys Talc America, Case Number 19-10289.

I scheduled this after receiving a letter from counsel for J&J regarding the Wednesday hearing. And after -- and in connection with that, I had pulled the agenda. I thought it was appropriate to have a call so that we can -- so that I can figure out, and other parties who aren't as involved know what kind of schedule we're on here and what the issues are going to be and the time line that parties currently anticipate for deciding various issues.

So let me hear from the debtors with respect to the big matters that you anticipate have to be decided before or in conjunction with a disclosure statement hearing, and then I'll hear from others, as well.

MR. MERCHANT: Hi, Your Honor. This is Mike Merchant of Richards, Layton & Finger. I believe Ms. Posin from Latham & Watkins --

MS. POSIN: Sorry.

MR. MERCHANT: -- is on --

MS. POSIN: Sorry.

MR. MERCHANT: -- and was going to address --

MS. POSIN: I --

MR. MERCHANT: -- the Court.

MS. POSIN: I -- apologies. I was on mute, and I was talking to myself. Good afternoon. Let me try that again. Good afternoon, Your Honor. Kim Posin of Latham & Watkins, counsel for the debtors.

First of all, thank you, Your Honor, for hearing us today on such short notice. We greatly appreciate the Court finding the time, and we're certainly cognizant that you have a very busy docket.

There are a number of disputes that kind of exist between and among the parties on this call today, including certain issues with respect to the amended plan and disclosure statement. So we originally filed our plan -- our original plan and disclosure statement on May 15th, with the support of the TCC -- the talc claimants' committee -- the FCR, and the debtors' nondebtor affiliates, including its parent, ultimate parent, Imerys S.A. We received a number of objections to that original disclosure statement and the solicitation procedures from a variety of parties, including a number of insurers, a few plaintiffs groups, the United States Trustee, and others.

Since then, we have worked diligently with the other plan proponents and other parties-in-interest, including Rio Tinto and Zurich -- who we've now reached a settlement with -- to further refine that original plan and disclosure statement, and that amended plan and disclosure

statement were filed on August 12th.

As we stated in our status conference report that we filed on Friday evening -- and not -- the Court may not have yet had a chance to look at it, and I apologize for getting it in late in the day on Friday. But essentially, we have received a variety of additional objections from most of the same parties to our amended document. And some of them are similar to objections that we received with respect to the original plan and disclosure statement; including, for example, the lack of a -- trust distribution procedures. That has not yet been filed. We do anticipate filing that shortly, and certainly substantially in advance of the October 8th hearing date, which is the current disclosure statement hearing date.

As we said in the status report, we really -- the debtor -- from the debtors' perspective, there are really two kind of threshold issues that remain -- we believe remain. I know there's a lot of other issues that other folks have raised in their objections. But the two key threshold issues are the filing of the TDPs -- we understand that people want to see that, we understand that -- we understand why they want to see it. We are working with the other plan proponents to get the TDPs finalized, so that we can get something meaningful on the docket.

The second issue is the treatment of J&J

indemnification obligation. So J&J filed their original -- originally filed their stay motion on -- I think it was March 20, so it's been pending for five months or so now. And in the interim, you know, the parties have been working toward negotiating toward a potential resolution. We haven't gotten there yet, but we are still on that course. However, we do believe -- and it's very clear from the various objections that have been filed -- that we do need to have a resolution of that treatment in the disclosure statement before we can proceed with solicitation.

So our hope is that we can reach a resolution on that, either through the Court entering an order on J&J's stay motion, or reaching a resolution with stay -- with J&J on our own, or potentially through mediation, as J&J suggested in a letter from this morning, so that we can be in a position to further amend the plan and disclosure statement sufficiently in advance of the October 8th hearing, to allow parties to review it, comment on it, object to it if they like, and we can proceed with that hearing on the 8th.

THE COURT: Okay. Let me hear from J&J.

MS. SULLIVAN: Good afternoon, Your Honor. Diane Sullivan at Weil Gotshal for J&J. Thanks for hearing us this afternoon.

I think there's agreement, Your Honor, that -- so just to -- in terms of the lift stay background. J&J did

file a motion in March of this year to modify the automatic stay and take the tort claims relating to J&J products outside the bankruptcy and into the tort system and defend them one by one, and indemnify if there's judgments. That represents almost 90 percent of the talc claims in the bankruptcy.

We were surprised when the debtor and the TCC objected to that offer. There has been negotiations at length over the past five months, to try to reach a consensus on that. Things may have reached an impasse because, as we were waiting for a termsheet, we got a new disclosure statement premised on a J&J indemnity that has not been agreed to or subject to a lift-stay order.

There was also a change in the landscape, Your Honor, since we filed our motion to lift the stay. For the first time, we learned, about a week or ten days ago, that the major carrier, Zurich -- who's got 630 million or so in coverage, according to their disclosure statement -- has settled with the debtor and the TCC. J&J is an additional insured on some of those policies. And we -- when we made the motion to lift the stay and indemnify the debtor for talc claims, we were counting on that money as an additional insured, and also in stepping in the shoes of the debtors here, if we were going to be subject to an indemnification.

The offer we made that -- was very, very generous,

in terms of our lift-stay motion. We -- and we made it, Your Honor, as we had laid out in our papers, because of the moral hazard that this case presents.

The debtor and its parent want a channeling injunction; the TCC wants to, of course, maximize the value of the claims. There's no incentive for anyone there to set reasonable values. The debtor has ceded all control to the tort claims committee to set the valuation, there is no veto right. And so J&J was legitimately concerned that, to the extent, in the future, they were -- be -- they would be subject to indemnification obligations, they would be stuck with enormously inflated values; thus, our motion.

We would like to get information about the Zurich insurance policy settlement because it's the largest majority of coverage that the debtor has, and also J&J has rights to those policies as an additional insured. We've asked for that information over telephone calls with the debtor over the last week or so. They've promised that they would provide some information; we haven't gotten it yet. We were serving some discovery on that.

And so, as we analyzed that issue, Your Honor, we had pushed the lift-stay motion hearing until September 23rd. Once we get that information about the Zurich policies, we'll be prepared to either go forward with the motion, subject to Your Honor's okay, or withdraw the motion because the Zurich

settlement has materially changed the landscape, in terms of our indemnity proposal.

THE COURT: Okay. Thank you.

Let me hear if the tort claims committee has anything to add.

MS. STRICKLAND: Good afternoon, Your Honor. It's Rachel Strickland from Willkie, Farr & Gallagher, on behalf of the TCC.

J&J filed its motion on March 20th. Its relief was not premised on the plan, and in fact, it contemplated that the stay would be lifted by the relief it sought immediately upon entry of their order, and was not conditioned on the effectiveness of the plan. Since then, they've pushed it off a number of times.

And so, since we were trying to keep on schedule, the plan proponents filed an amended plan and amended disclosure statement that largely accepted the relief that J&J sought in the motion. But those filings made clear that whatever the proposed plan would be would incorporate whatever form of lift-stay order is entered. So, in other words, the plan proponents agreed to J&J's motion in large part, and then, you know, built it in on a -- something that was to follow because we kept thinking it was going to precede it, since J&J had made this standalone request.

We don't have a problem continuing to try and work

things out. A lot of the delays on the plan and disclosure statement front, as Ms. Posin noted, are because we've been doing just that just sort, of one at a time, trying to whack away at issues and making good progress. And if we can make progress and resolve J&J's motion consensually, we'd love to do that. But one way or the other, I think the TCC, and I believe others, are ready and able to go forward on that. And whatever the lift-stay is -- you know, decided to be -- which, again, was file standalone and can be heard standalone -- it would then be incorporated into something.

So we have no intention of making up a contract and trying to impose it on Johnson & Johnson. We modeled our placeholder, if you will, after what they requested. And I think that there are very few issues in the difference between what, at least with respect to the TCC, we see as an appropriate order on the lift-stay, versus Johnson & Johnson. So we'll -- again, we're happy to try and work it out and/or happy to have the hearing before Your Honor and have those issues decided. The plan is separate and will obviously encompass whatever facts are, as they rest on that motion.

THE COURT: Okay.

MS. SULLIVAN: So we're ready to go now, we're ready to go in September, as the Court wishes.

THE COURT: Okay. Thank you.

Does the FCR have anything to add?

MR. HARRON: Hello, Your Honor. This is Ed Harron for the FCR.

And we share the committee's view. We think the lift-stay motion needs to be resolved, you know, sooner, rather than later. But we're prepared to take a few weeks to see if we can address and resolve some of the issues raised by J&J in the interim.

THE COURT: Thank you.

MR. SCHIAVONI: Your Honor, this is Tanc Schiavoni for the Cyprus Insurers, excess insurers.

We have a pleading in with respect to the lift-stay motion and -- that explains why we're directly implicated. If I may be heard? And we did submit a letter for this call. I -- you know, it was -- we didn't have much -- we only had about 20 minutes advance notice, but we have a letter into Your Honor on it, also.

THE COURT: Well, I haven't read it, but I'm happy to hear from you.

MR. SCHIAVONI: Your Honor, this is what I would tell you. First of all, in large measure, I agree with everything that you've heard from Mr. Sullivan for J&J. But the big picture here is that it's a mass tort case, you know, versus a -- sort of a regular commercial case.

THE COURT: Mr. Schiavoni, I'm sorry. I didn't have any problems hearing you in the beginning, but now

you're breaking up a little. Can you start over.

MR. SCHIAVONI: Yeah. I'm sorry. I said, in large measure, Your Honor, we agree with everything that Ms. Sullivan had to say for J&J. The big picture issue for us is that, in a mass tort bankruptcy, versus your run-of-the-mill commercial case, the TDPs are the guts of the whole plan. It's the critical element of the plan. It's the provisions that deal with the allowance and the procedures for valuing claims, which is what the whole bankruptcy is about.

And as a practical matter, I do not see how J&J can negotiate a -- its lift stay and put it in place, without us having all drafts of the trust distribution procedures that have been distributed, that J&J, in their written submission, makes clear they haven't been shared, copies of what those TDPs, nor have the insurers who are subrogees to the J&J indemnity, who are also, like J&J, indirect asbestos talc claimants here, having those procedures that have been exchanged is critical to really move forward a productive discussion. Without those, we can't really respond to the disclosure statement because we really don't have an ability to talk about the full extent to which we're impaired. J&J, to the extent it's going to -- it's offering to defend, it obviously needs to know what the state of play is on the terms that have been talked about to allow claims.

And let's be clear, what's happening here -- I'll

be a little more blunt maybe than Ms. Sullivan. But the drafting of the procedures to allow tort claims and to value them, we're not included in that, nor is J&J. Those would be the parties (indiscernible) looking to fund it. The parties drafting the procedures to allow claims and value them are the plaintiffs' lawyers, whose claims are being submitted. That's really putting, you know, the fox in the henhouse, and it's not a process that's likely to sort of generate a consensual plan.

So we have written for months that we would like to participate. We've been rebuffed on all those efforts. We haven't been shared any copies of the plan, disclosure statement, or TDPs, or included in any discussions about lifting the stay. We'd ask that, Your Honor, the way to jumpstart these discussions are to direct the tort claimants to share the draft TDPs with us and J&J, and let us sit down and talk them out with them over the next 25 days. We're more than willing to do it. There are other cases where we've been very productive in bringing about resolution. We need it. Ms. Sullivan obviously can speak for herself, but I think it would be productive to have it, also. That's the way to get discussions going, Your Honor.

THE COURT: Thank you.

MR. SCHIAVONI: Thank you very much.

MS. SULLIVAN: And Your Honor, if I may, for J&J?

Diane Sullivan.

This is -- the key, in addition to TDPs, Your Honor, for J&J, in terms of whether to go forward on September 23rd on the lift-stay motion, or to withdraw, if the discovery on the Zurich settlement that's the majority of the coverage in the case, and where J&J is an additional insured. And so, if we could -- if they could produce that within the week and we can analyze that, we certainly would be prepared to go forward on the 23rd.

MS. POSIN: Your Honor, this is Kim Posin for the debtors.

THE COURT: Let me hear --

MS. POSIN: If I may be heard?

THE COURT: Wait a second, Ms. Posin.

Let me hear from anyone else who would like to address me first, before we go back to the debtors.

MS. RICHENDERFER: Your Honor, this is Linda Richenderfer from the Office of the United States Trustee.

I'm not taking a particular side in this, just a couple of observations. In the meantime, while all of this is dragging on, the fees and expenses that have been charged to the estate, right now, are far in excess of $40 million. I haven't gotten all the way through the numbers that are represented in the fifth interim applications, and so that doesn't even include the most recent months.

Something, just at this point in time, needs to give because, every time there is another hearing date that gets pushed out on the disclosure statement because there aren't TDPs or on the J&J motion because it's not going forward when it should be, when it was listed, we see millions and millions more of professional fees and expenses being charged to this estate. And I just wanted to throw that out there because, while this is going on, it is the unsecured creditors who are bearing the brunt of it, and the unsecured creditors here are the current and future claimants.

I know that the J&J motion was filed before the plan was filed. And as I read the disclosure statement, it's sort of -- it's a -- you know, you make this choice, you go this way; if you make this other choice, you go the other way. I think the lift-stay motion needs to be decided first because it takes out one of the choices. But again, Your Honor, not taking a side on what should be done, just, again, reminding everyone on this call and notifying the Court as to the extreme cost of this estate, as this drags on and on and on.

(Pause in proceedings)

MS. POSIN: Your Honor, if I may? Kim Posin of Latham, counsel for the debtors.

I don't disagree with anything Ms. Richenderfer

just said. We have been in bankruptcy for over 18 months, and that does -- the disruption and delays and costs associated with being in bankruptcy for that long certainly have taken their toll on this company. So we don't disagree with trying to move things forward as expeditiously as possible. We believe we have tried to do that from the debtors' side throughout the course of these cases. We've had, you know, a number of difficult negotiations and discussions. We feel like we've made significant progress in that time, but there are still -- you know, there is still work to be done here.

So what the debtors would suggest -- and I understand there are a variety of issues on the plan and disclosure statement that folks have raised. I think, with respect to Mr. Schiavoni's concerns, I think, you know, we've got a number of parties who have objected. We have made it clear to all parties that we intend to file the TDPs in advance of the disclosure statement hearing, and all parties, of course, at that time, will have an opportunity to review them.

Plan confirmation objections will not be until -- for, you know, many weeks, and parties will have an opportunity to object to anything in the TDP, the plan, or the disclosure statement that they don't like, if there's a confirmation issue at that time. So there's plenty of time

for that to happen, still, in the course of these cases.

What the debtors would suggest -- because I do agree with -- I think maybe everybody on this call is on -- is in agreement, that resolving or getting to the bottom of J&J's indemnification obligations or the treatment of those obligations in the course of these cases is imperative to proceeding. And so what the debtors would suggest is what J&J suggested in their motion, and that is that we proceed with mediation, and we do that as soon as possible. The debtors are happy to be available next week or sooner, frankly, to try to reach a resolution with J&J.

If we're unable to do so, then we would like to have a hearing set -- obviously, subject to the Court's availability on the J&J stay motion -- as quickly thereafter as possible, so that we can be in a position to amend our documents as appropriate, based on the outcome of that mediation and the outcome of if we need to go forward to the hearing on that stay motion, we can amend our documents sufficiently in advance of the October 8th hearing, so that parties have the opportunity to review those documents in advance and comments on them, you know, as they -- as they deem appropriate to do so. So that is what the debtors suggest.

I think that we have spent many months trying to negotiate with J&J. I think everyone has made good faith

efforts in that regard. I'm not casting aspersions on anybody, but it has been difficult and there are a lot of parties involved. And the debtors would agree with J&J that proceeding with mediation may be the appropriate thing to do at this point to push these cases forward.

MR. KLEINHAUS: Your Honor, if I may. This is Emil Kleinhaus from Wachtell, Lipton, Rosen & Katz, I represent Cyprus Amax Minerals Company, in connection with J&J matters and other matters. It's my first time appearing in this case. I'm glad to be here.

Like the Cyprus Insurers who spoke earlier, we've largely been out of the tent, so to speak. We also have not seen drafts of the TDPs and related documents. Our clients, the Coypus Companies, have a number of interests here. They're major creditors of the Debtor Imerys Talc America, based on assumptions of product liabilities from Cyprus prior to the petition date. We've also objected to the J&J lift-stay motion on grounds that are set forth fully in our objection.

And Cyprus Amax and Cyprus Mines have also filed an adversary proceeding against both J&J and the debtors seeking declarations and other relief that Cyprus has direct indemnity rights against J&J. There's a pending motion to dismiss that complaint. We plan to respond on September 1st. No need to bog down the Court today in that, you'll hear from

us shortly there.

On the matters on the calendar today, we don't object to the adjournment. But I do think it's important to say that, in the event the debtors or the TCC and J&J were to reach a resolution here, I don't know whether Cyprus will be amenable to that resolution or not. The proposed order that was ordered by the TCC and the debtors continued to have issues from Cyprus' point of view. And we would just ask that any such resolution be presented on appropriate notice, under Rule 4001, so that parties can be -- and object, if appropriate. And likewise, we would welcome the opportunity to participate in discussions, including mediation, if appropriate, prior to any such resolution getting reached, so that we can try to avoid unnecessary controversy. Thank you, Your Honor.

THE COURT: Thank you.

Well, it's clear we're not ready to go forward with the J&J motion on Wednesday. And I will tell you candidly that I have not read the disclosure statement or the J&J motion because, if I read documents every time they were filed, I would be preparing for a hearing 10 and 12 times. So I haven't read any of it.

The -- so here's what I would like to happen. We are scheduled to have a hearing on Wednesday at ten o'clock. I would like the parties to discuss the possibility of

mediation, including agreement upon a mediator and the scope of the mediation and who's going to be involved. And I'd like to hear the result of those discussions on Wednesday. And if it's just the debtor and J&J, that may be appropriate. I'm not suggesting anything, one way or the other. But we certainly heard that other parties have an interest in what is happening here.

I would also like, on Wednesday, a realistic assessment of when the trust distribution procedures will be filed, and so that we can, again, make a realistic assessment of when we can go forward with the disclosure statement hearing.

I have the disclosure statement hearing scheduled for October 8th, beginning at 11:30. I will tell you have a sale hearing prior to that. But in terms of September 23rd, that was an omnibus day, not a day that was scheduled -- as I understand it from Ms. Johnson -- for an extended hearing. So I have five matters -- five cases scheduled for that day.

I will try to get a sense between now and Wednesday about whether any of these other matters are significant or can be moved. But I'd like some reasonable assessments from parties, realistic assessments of what can go forward in an orderly fashion, providing parties with an opportunity to object or update their objections, based on changed circumstances, on the J&J motion and on the disclosure

statement. So I'd like to have a further discussion on Wednesday, and then we'll look at the scheduling.

But it's not my intent that, after months and months and months of negotiations, to jam other people to get -- for the sole purpose of getting to a particular date that's already scheduled. And absolutely, cost is a factor. But everything you all have been doing is outside of the courtroom on these issues. I'm not familiar with them in detail, although certainly, I understand the big picture of this case and the issues that parties are raising somewhat generically.

But I also need to have an opportunity to know that, yes, it's time to prepare for these hearings, and I really need to read everything. So I'd like some realistic assessment of where we are on Wednesday. And then I understand we have several matters on the agenda that are not adjourned that we'll take a look at. And if there's anything that I can knock off ahead of time, I will do that. But I think it's only some claim objections, and then the -- I see the status conference on the adversary proceeding that Cyprus Mines filed. So that's --

MS. POSIN: That's right. Your Honor, just with respect to the claims objections, we have filed (indiscernible) you know, so hopefully the Court can take a look at those and get those resolved in advance of the

hearing on Wednesday.

THE COURT: Yes. And my understanding is the claims binders were sent over, but we can't find them. So I believe Mrs. Johnson has asked that those be sent over again, so we can take a look at that.

MR. MERCHANT: That's correct, Your Honor. We did receive that request and we're working to get additional binders over to chambers as soon as possible.

THE COURT: Yes. Sorry about that.

MR. MERCHANT: No problem.

THE COURT: Okay.

MR. KLEINHAUS: Your Honor, this is Emil Kleinhaus. On the Cyprus adversary proceeding, I think we'll be in touch with the debtors and J&J as to what makes sense to go forward on Wednesday on that status conference, but we might be able to refine it or adjourn it.

THE COURT: Okay. Just, again, recognize that, while I may glance at the complaint to see what the issues are, I'm not going to be steeped in the details. And if we've got briefing on a motion to dismiss that's not yet complete, then I certainly want to understand when the briefing -- what the briefing schedule is and what may be necessary for me to decide and what timing is necessary.

MR. KLEINHAUS: Understood, Your Honor.

THE COURT: Okay. Anything else we can accomplish

today?

(No verbal response)

THE COURT: Okay. Well, thank you. I appreciate everybody jumping on the phone and, actually, I think this was helpful in terms of knowing what's going forward on Wednesday and what the parties' collective charge is between now and Wednesday, to see if we can -- if you all can arrive at any agreement on any issues and give us a further status of where the significant issues in the case lie.

So thank you very much, Counsel. And I will see you -- where are we -- ten o'clock on Wednesday.

COUNSEL: Thank you, Your Honor. Thank you, Your Honor.

(Proceedings concluded at 3:11 p.m.)

*****

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

________________________________ August 25, 2020

Coleen Rand, AAERT Cert. No. 341
Certified Court Transcriptionist
For Reliable