UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| IMERYS TALC AMERICA, INC., et al, Debtors. | Case No. 19-10289(LSS) |
| | 824 Market Street Wilmington, Delaware 19801 |
| | Wednesday, August 26, 2020 |
| CYPRUS MINES CORPORATION, et al vs. IMERYS TALC AMERICA, INC., et al. | Adv. Proc. No. 20-50626(LSS) |

TRANSCRIPT OF TELEPHONIC HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA TELEPHONE:

For the Debtors: Michael J. Merchant, Esq.
Amanda R. Steele, Esq.
Marcos Ramos, Esq.
RICHARDS, LAYTON & FINGER, PA

Jeffrey E. Bjork, Esq.
Shawn P. Hansen, Esq.
Kimberly A. Posin, Esq.
Amy C. Quartarolo, Esq.
LATHAM & WATKINS, LLP

(Appearances Continued)

Audio Operator: Electronically Recorded by CourtCall and Ginger Mace, ECRO

Transcription Company: Reliable
1007 N. Orange Street
Wilmington, Delaware 19801
(302)654-8080
Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

| | |
|---|---|
| APPEARANCES VIA TELEPHONE: | (Continued) |
| For the U.S. Trustee: | Linda Richenderfer, Esq.<br>OFFICE OF THE U.S. TRUSTEE |
| For Certain Underwriters: | Matthew B. Anderson, Esq.<br>Rodrigo Tordecilla, Esq.<br>MENDES & MOUNT |
| | Michael Shiner, Esq.<br>TUCKER ARENSBERG |
| For Johnson & Johnson: | Patrick A. Jackson, Esq.<br>FAEGRE, DRINKER, BIDDLE & REATH, LLP |
| | Ronit Berkovich, Esq.<br>Konrad L. Cailteux, Esq.<br>Diane Sullivan, Esq.<br>WEIL, GOTSHAL & MANGES, LLP |
| For Cyprus Mines Corporation: | Karen C. Bifferato, Esq.<br>CONNOLLY GALLAGHER, LLP |
| For the Legal Representative for Future Claimants: | Robert S. Brady, Esq.<br>Edwin Harron, Esq.<br>Sharon Zieg, Esq.<br>YOUNG, CONAWAY, STARGATT & TAYLOR, LLP |
| For Arnold & Itkin, LLP: | Laura Davis Jones, Esq.<br>PACHULSKI, STANG, ZIEHL & JONES, LLP |
| For the Cyprus Entities: | Robert J. Dehney, Esq.<br>MORRIS, NICHOLS, ARSHT & TUNNELL, LLP |
| | Paul E. Heath, Esq.<br>Matthew W. Moran, Esq.<br>VINSON & ELKINS, LLP |
| For Columbia Casualty Co.: | Matthew C. Lovell, Esq.<br>NICOLAIDES FINK THROPE MICHEALIDES SULLIVAN, LLP |

(Appearances Continued)

APPEARANCES VIA TELEPHONE: (Continued)

| | |
|---|---|
| For American International Industries: | Mark Minuti, Esq.<br>SAUL, EWING, ARNSTEIN & LEHR, LLP |
| | Ray Urbanik, Esq.<br>LATHROP GPM, LLC |
| For the Williams Hart Personal Injury Claimants: | Lisa M. Norman, Esq.<br>ANDREWS MYERS, PC |
| For Zurich Insurance Company, et al: | Mark D. Plevin, Esq.<br>CROWELL & MORING, LLP |
| For J&J Retailers: | David M. Powlen, Esq.<br>BARNES & THORNBURG, LLP |
| For Defendants TCC: | Kami E. Quinn, Esq.<br>GILBERT, LLP |
| For the Tort Claimant Committee: | Natalie D. Ramsey, Esq.<br>ROBINSON & COLE, LLP |
| | Rachel Strickland, Esq.<br>WILLKIE, FARR & GALLAGHER, LLP |
| For the Rio Tinto Entities: | Maria A. Sawczuk, Esq.<br>GOLDSTEIN & MCCLINTOCK, LLP |
| | Danielle Spinelli, Esq.<br>WILMER, CUTLER, PICKERING, HALE & DORR, LLP |
| For Imerys S.A.: | Dustin Smith, Esq.<br>HUGHES, HUBBARD & REED, LLP |
| For Hartford: | Miranda H. Turner, Esq.<br>Joshua D. Weinberg, Esq.<br>SHIPMAN & GOODWIN, LLP |
| For Cyprus Amax Minerals Company: | Nicholas C.E. Walter, Esq.<br>Joseph C. Celentino, Esq.<br>WACHTEL, LIPTON, ROSEN & KATZ |

(Appearances Continued)

APPEARANCES VIA TELEPHONE: (Continued)

| | |
|---|---|
| For the Ad Hoc Committee of Imerys Talc Litigation Plaintiffs: | Jeffrey Waxman, Esq.<br>MORRIS JAMES, LLP |
| For Employers Mutual: | Martin Weis, Esq.<br>DILWORTH PAXSON, LLP |
| For Cyprus Historical Excess Insurers: | Janine Panchok-Berry, Esq.<br>Tancred V. Schiavoni, Esq.<br>O'MELVENY & MYERS, LLP |
| For Allianz Reinsurance America, Inc.: | Ellen Farrell, Esq.<br>MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, PC |

INDEX

| | Page |
|---|---|
| OMNIBUS CLAIMS OBJECTIONS | 6 |
| STATUS CONFERENCE RE: J&J LIFT-STAY MOTION | 7 |
| STATUS CONFERENCE: DISCLOSURE STATEMENT HEARING | 12 |
| STATUS CONFERENCE RE: ADVERSARY PROCEEDING | 15 |

(Proceedings commence at 10:24 a.m.)

THE OPERATOR: The recording has begun, and we are now live.

THE COURT: Good morning, Counsel. This is Judge Silverstein. We're here in the Imerys Talc America case, Case Number 19-10289. My apologies for the delay.

Ginger, can you please remind us of the protocol for the hearing.

THE ECRO: It is extremely important that you put your phones on mute when you are not speaking. When speaking, please do not have your phone on speaker as it creates feedback and background noise, and it makes it very difficult to hear you clearly. Also, it is very important that you state your name each and every time you speak for an accurate record. Your cooperation in this matter is greatly appreciated. Thank you.

THE COURT: Thank you.

Let me turn it over to debtors' counsel, please.

MS. POSIN: Good morning, Your Honor. Kim Posin of Latham & Watkins, counsel for the debtors.

Your Honor, before we get to the status conference portion of the hearing, we thought it might be appropriate to deal with the two omnibus claims objections first, answer any questions if the Court may have. If you're ready to proceed on those matters, we do have both declarants on the call

today to answer specific questions the Court may have on specific objections.

THE COURT: Okay. Well, I'm embarrassed to say we forgot about that. I think we've looked at it. I have to speak with my clerk. So I'm not prepared to address that, I'm sorry. And -- but we will take a look afterwards. And if I have no questions, I'll enter the order. If I do, I will let you know, and we'll arrange for a hearing on that.

MS. POSIN: Thank you, Your Honor. No problem.

Well, first off, we wanted to thank the Court for pushing the parties to address the issues that we raised by the Court at our telephonic conference on Monday. I am pleased to report that I think we've made some very good progress in the interim.

Taking them in order, the order of the agenda, the hearing agenda this morning. First, as to the stay motion that was filed by J&J in March, the plan proponents and J&J have reached an agreement to proceed with mediation with respect to the relief that's sought in that stay motion.

The parties have also agreed to use Larry Pollack as the mediator for that dispute. Mr. Pollack has been involved in, you know, prior mediations regarding Imerys, including several mediations in these Chapter 11 cases with Rio Tinto and Zurich and also Cyprus, so we believe he has significant familiarity with these cases and with the issues

that will be set forth in this particular mediation; and, therefore, he can proceed very quickly.

We are working through schedules that are hopeful that we will be able to complete that mediation within the next two and a half weeks.

The parties have also agreed that, in the event that the mediation is unsuccessful and the J&J stay motion proceeds and J&J does not withdraw that motion, that that motion may proceed on September 23rd, which is the date that it's currently scheduled for, or another date in that vicinity in the event the Court does not have sufficient time on the 23rd to address some of the disputes -- which I think the Court noted might be the case on Monday.

So I will -- before I will address, you know, the Court's request and questions with respect to the disclosure statement process, let me pause there to answer any questions the Court may have, or to let any of the other parties, you know, respond as appropriate.

THE COURT: I don't have any questions.

Does anyone wish to comment?

Mr. KLEINHAUS: Your Honor, this is Emil Kleinhaus from Wachtell Lipton. Hopefully, you can hear and see me. I represent Cyprus Amax Minerals Company, in connection with issues relating to Johnson & Johnson and other matters. Matthew Moran of Vinson & Elkins, who represents Cyprus

Mines, I believe is also on the line.

The Cyprus Companies, as Your Honor knows, have a number of significant interests in this case. They're major creditors of Imerys Talc America because, back in 1992, as part of a sale transaction, ITA agreed to assume Cyprus Mines' liabilities relating to talc, and subsequently entered into agreements to defend both CAMC and Cyprus Mines from talc-related claims.

In addition to being creditors, and more specifically to the point here, Cyprus Mines and CAMC -- Cyprus Amax -- have also objected to the lift-stay motion filed by J&J on a number of grounds. One of the grounds is that J&J, in offering to defend cases against the debtors that relate to J&J products, has not agreed to cover the debtors' indemnity obligations to Cyprus, which we believe are within the scope of indemnity obligations, if any, that J&J has to the debtors, so that objection is pending.

And then we're also party to two adversary proceedings with the debtors. One of them, there's a status conference on the agenda today, which we'll get to, but it's an adversary proceeding against both the debtors and J&J, seeking a ruling that Cyprus Mines and CAMC have direct indemnity rights against J&J under the nineteen -- under agreements entered in 1989, and that those rights were not transferred to Imerys Talc America in 1992, as the debtors

and J&J have claimed.

I would note, and I think it's important to note that, under an order entered by this Court on February 25th, 2020, Cyprus Amax and Cyprus Mines have been actively engaged in a mediation with the TCC, the FCR, and the debtors, with Lawrence Pollack as mediator, the same mediator who was just mentioned. And while mediation confidentiality prevents disclosure of the substance of the mediation, I will just say that the debtors, the TCC, and the FCR have all participated extensively and in good faith in that process, as have our clients. And we're hopeful that that process will ultimately facilitate a resolution of various disputes between the Cyprus Companies and the debtors. We do hope to be part of a global resolution in these cases, if it's possible. We'll see. But we do appreciate the efforts of the TCC, the FCR, and the debtors in working constructively in a mediation.

With that said, we have not been involved in any mediation with J&J. And what I just heard from the debtors is that there's now a mediation planned with Mr. Pollack between the plan proponents -- and at this point, Cyprus is not a plan proponent -- and J&J. We believe it makes sense to -- for Cyprus to be in the room or in a virtual side room for any mediation with J&J; so that, to the extent there is progress or resolution of disputes between the debtors and J&J, there's also the possibility of Cyprus' separate issues

with J&J to be folded into that.

And obviously, we can't force parties to mediate with Cyprus. But since it now appears that the mediation with Mr. Pollack is going to be expanded to include J&J issues, I just wanted to note and explain that Cyprus, aside from the mediation already in progress, is available and willing to be involved in any discussions with J&J, as well. Thank you.

THE COURT: Thank you.

MS. SULLIVAN: Your Honor --

THE COURT: Anyone else?

MS. SULLIVAN: -- if I may? Yes, Your Honor. This is Diane Sullivan for J&J.

On the Cyprus issues, we have filed a motion to dismiss the Cyprus adversary proceeding; or, in the alternative, to transfer. We believe it's clear under the contracts that J&J doesn't owe an indemnity obligation to Cyprus. And perhaps the issue of whether J&J or the debtors or anyone should mediate with Cyprus should await decision on that motion, Your Honor.

And one other issue, Your Honor. On the timing of the lift-stay motion, we've served some expedited discovery requests on the debtor and the TCC, related to the Zurich -- the settlement with Zurich, the debtors' major carrier at 630 million -- or 650 million in coverage, we believe. To the

extent that that settlement cuts off J&J's rights, it may materially change the landscape of our (indiscernible) it's interesting (indiscernible) percent of the remaining claim, they've (indiscernible) all of the insurance, apparently, and left J&J with no -- apparently, no rights to that coverage. And so (indiscernible) that new development.

And therefore -- and it may not be an issue, Your Honor, Your Honor, because of your hectic and busy schedule, given what's going in the world. But to the extent that September 23rd is not good for the Court, we'd just ask that it's not materially sooner, so that we can get the appropriate information on that Zurich settlement.

THE COURT: I can guarantee you, it will not be sooner, materially or not.

MS. SULLIVAN: Thank you, Your Honor.

THE COURT: Thank you.

Okay. As for that date, I will consult with Mrs. Johnson, and we will take a look at what else is on and whether anything can be moved or not. And if not, then I'll look for another date. It will be, I'm certain, after that and -- but we'll get it in as soon as we can.

MS. POSIN: Thank you, Your Honor. If there's no more comments or questions relating to the J&J stay motion, I'd like to move forward on the disclosure statement progress or process.

The debtors continue to believe -- I think it was at the hearing on Monday, the Court had asked the parties to consider what is a realistic date to go forward on the disclosure statement hearing. The debtors believe that October 8th is a realistic date to go forward. We recognize we've continued the disclosure statement hearing several times now. But we do believe that October 8th is a realistic date.

We are hopeful that we'll have a resolution with J&J significantly in advance of that date. And to the extent we ultimately need to proceed with a hearing on the stay motion, either on or around September 23rd, we will promptly address any revisions to the plan or disclosure statement that are -- that may be required by the -- at the end of that hearing.

As we noted on Monday, you know, we remain committed to working through the issues that still need to be worked through in advance of the October 8th disclosure statement hearing. We believe that we can do that, and we believe that we can give all parties-in-interest sufficient time to look at the documents in advance of that hearing.

The Court had also requested on Monday an update on the expected time line for the filing of the TDP. I understand that the TCC is continuing to work through comments that have been received by the debtors and SA, as

well as the FCR. And I will defer to Ms. Ramsey regarding the expected time line for the filing of that document.

MS. RAMSEY: Thank you, Your Honor. Natalie Ramsey for the tort claimants committee.

Your Honor, we are also hopeful that we will be in a position to file a trust distribution procedure by September the 10th, which would be 28 days before the October 8th hearing date. There are some significant issues that still need to be resolved, and to some extent, we're only one party in those discussions, so we don't have complete control. But we are now down to a very small number of outstanding issues, subject to, of course, further developments in connection with the Cyprus or J&J mediations. And it is our hope that we will be able to and expectation that we'll be able to make that time frame.

THE COURT: Okay. Thank you.

Okay. Well, I will keep the disclosure statement hearing on for October 8th, at this point, obviously subject to change, depending on circumstances as they unfold, the negotiations of the parties, the mediations, the -- being able to meet the hope and expectation that the T-D -- the trust distribution procedures will be filed by September 10. But for now, I will keep it on.

MS. POSIN: Thank you, Your Honor.

That's all that we had, unless the Court had any

additional questions on the disclosure statement process or any other questions from the hearing or the conference on Monday. Otherwise, I think we can move forward with the status conference on the Cyprus adversary proceeding.

MS. POSIN: Thank you, Your Honor.

THE COURT: Yes. Thank you. I have no further questions. Let's go to the status conference.

Mr. KLEINHAUS: Your Honor, this is Emil Kleinhaus from Wachtell Lipton again for -- on behalf of Cyprus Amax Minerals Company. I believe Karen Bifferato, our client's Delaware counsel, is also on the line, along with Matt Moran from Vinson & Elkins, who's counsel for Cyprus Mines.

Your Honor, this is just a scheduling conference today, and we intend to use it that way. We're not asking the Court (indiscernible) process. So what I propose to do is just take a very few minutes to explain what we're doing here, and hopefully set a date to be heard again (indiscernible)

THE COURT: Mr. Kleinhaus, you're going in and out, and I don't know if it's just me. So, if you can direct more at the microphone, that would be great.

Mr. KLEINHAUS: Is that better, Your Honor?

THE COURT: Yes. Thank you.

Mr. KLEINHAUS: All right. I -- apologies, Your Honor.

So, as Your Honor knows and I just went through a few minutes ago, Cyprus Mines and CAMC have a number of different interests in this case and a number of outstanding disputes.

Aside from the adversary proceeding that we're talking about today, there's also an adversary proceeding pending in this Court relating to Cyprus' legacy insurance policies, which Your Honor has heard about, and in particular, there's -- the dispute focuses on -- as between the -- Cyprus and the debtors, who has rights or exclusive rights to proceeds under those policies. That's not in front of the Court today. That has been stayed pending the mediation that I described earlier.

This suit, Your Honor, is a separate suit against both J&J and the debtors, relating to contractual indemnity rights under obligations -- under agreements that go back to 1989. In 1989, Cyprus Mines entered into a stock purchase agreement to buy Johnson & Johnson's Vermont talc mining subsidiary, which became known as "Cyprus Windsor." Cyprus Windsor -- which is now the debtor Imerys Talc Vermont, Inc. -- simultaneously entered into a supply agreement, under which it would continue providing talc for use in J&J's cosmetic products.

Now both of those agreements contain broad indemnity rights in favor of Cyprus. I heard Ms. Sullivan

say before that there's a dispute as to whether the indemnities apply. Of course, we think they do and have pleaded as such. That's not before the Court today.

In the stock purchase agreement, as we've pleaded, J&J agreed to indemnify Cyprus Mines and its affiliates for product liability claims relating to the supply of talc to J&J prior to closing. In the supply agreement, J&J agreed to indemnify Cyprus Windsor and its affiliates, including Cyprus Mines and Cyprus Minerals, for product liability claims resulting from supply to J&J, starting in 1989, under the supply agreement. So that's 1989.

Let's fast-forward to 1992. In 1992, Cyprus Mines sold its talc business to a subsidiary of Rio Tinto. As part of that transaction, a new company -- which is now the debtor Imerys Talc America -- assumed Cyprus Mines' product liabilities as part of an agreement of transfer and assumption. Cyprus Mines also transferred certain talc-related assets to that company -- now ITA -- although it did not assign contract rights that were unassignable.

At the same time, in 1992, the stock of Cyprus Windsor, the subsidiary of Cyprus Mines that supplied talc to J&J, was transferred over to Rio, and Cyprus transferred its rights -- excuse me -- Cyprus Windsor transferred its rights under the supply agreement to a Rio subsidiary. But we do not believe -- and this goes to the dispute that's going to

be in front of the Court in the adversary proceeding -- we do not believe that Cyprus Mines transferred its own independent indemnity rights, and we don't believe that Cyprus Amax -- now CAMC -- as the parent company, transferred anything over to Imerys Talc America.

So let's fast-forward to today. Until the debtors filed this bankruptcy case, they defended Cyprus in the tort system against product liability claims, consistent with the 1992 agreement and subsequent agreements. But once this bankruptcy case was filed, it abruptly -- the debtors abruptly stopped defending Cyprus, which gave rise to the issues that Your Honor has previously heard about, including insurance issues.

So, after these cases were filed, back in a position where Imerys Talc America was not meeting its assumption of liability obligations, Cyprus Mines and CAMC reasserted their indemnity rights against J&J under the 1989 agreements. And what J&J said in response is that those rights were all transferred to the debtors, in particular Imerys Talc America, back in 1992. And the debtors have separately taken a very similar position. So that crystalized the dispute post-bankruptcy.

And while we completely disagree, CAMC and Cyprus Mines, that those rights were transferred back in 1992, CAMC and Cyprus Mines brought a lawsuit in this Court, seeking a

declaration that J&J still have indemnity obligations to Cyprus, and that those rights were not transferred to the debtors. There is also a cause of action for relief from the automatic stay in the alternative, which seeks relief from the stay to tender claims to the debtors, to the extent it's determined that the debtors can't -- that the debtors can just put those claims to J&J and does not have to pay them -- meet them themselves. That was all on June 15th, when the complaint was filed.

We reached agreement with the other parties on a schedule. On July 29th, J&J filed the motion to dismiss that Ms. Sullivan mentioned, arguing this Court lacks jurisdiction over the claims against J&J, and should otherwise abstain from deciding those claims. On the same date, the debtors answered and filed a counterclaim, seeking a ruling that Cyprus Mines, in fact, did transfer indemnity rights to the debtors, which is the same position J&J has taken. So there's a disagreement between Cyprus on the one hand, and J&J and the debtors on the other, about the scope of the debtors' rights, and in particular, whether Cyprus transferred indemnity rights to the debtors.

Our response to the motion to dismiss is due on September 1st. We will argue in that response the Court has jurisdiction and that abstention is not appropriate. That will all be in our brief. Of course, it's not in front of

the Court today.

Cyprus Mines will answer the counterclaims that the debtors filed on September 1st, and J&J's reply brief on the motion to dismiss is then due on September 16th.

Now, with this motion to dismiss pending, Your Honor, not much else has happened in this proceeding. We tried to get both J&J and the debtors to negotiate and agree on a discovery schedule. J&J's position is that it shouldn't have to do that when there's a jurisdictional motion pending for a decision. The debtors' position is that, even though they answered, they didn't move to dismiss. Any discovery schedule, even as to the debtors, should be keyed off of this Court's decision on J&J's motion to dismiss. So we haven't moved forward on a discovery schedule in light of those positions.

Now, Your Honor, we're not asking the Court to do anything today. What we think makes sense, given J&J's motion to dismiss on a threshold basis and the fact that Cyprus will be responding in just a few days to that motion to dismiss, is to set a date in September. And I heard Your Honor's comments about Your Honor's schedule, which we, of course, respect. And it will be a date in September, I think, after J&J's reply brief is filed on September 16th. And on that date, the Court can either hear argument on the motion to dismiss, if the Court finds that useful, or

otherwise, can at least address issues, such as whether discovery should go forward, in light of the disagreement between the parties on that. And the parties could send short letters or submissions in advance of the hearing, so the Court has adequate context.

We do think it would help to have a date in September because, otherwise, given the defendants' positions on discovery and the pending motion to dismiss, this case will not move forward in the meantime. And we're at the threshold stage where we have dueling positions on the motion to dismiss and disagreement as to whether discovery should happen in the meantime. Thank you, Your Honor.

THE COURT: Thank you.

Ms. Sullivan.

(No verbal response)

THE COURT: Ms. Sullivan, you're still on mute.

MS. SULLIVAN: I'm sorry, Your Honor. Can you hear me now?

THE COURT: Yes.

MS. SULLIVAN: Okay. Your Honor, I don't want to take this Court's valuable time debating the merits of an issue that's not before the Court today. We filed a motion; opposition brief has not been filed yet, our reply brief has not been filed. And our (indiscernible) Your Honor should (indiscernible) time to review those papers and decide that

motion to dismiss or transfer for lack of jurisdiction before having a discovery conference on these issues.

THE COURT: Okay. Thank you.

Ms. Posin --

MS. QUARTAROLO: Your Honor

THE COURT: -- or someone for the debtors?

MS. QUARTAROLO: Your Honor, it's Amy Quartarolo of Latham & Watkins on behalf of the debtors. I'll respond.

Again, I agree with Ms. Sullivan that we don't need to debate and it is not before the Court, the substance and merits of the claims. But we do -- we have been -- have had multiple conversations with counsel to the other parties about an appropriate schedule. There may be a disagreement as to how the case should proceed. But it certainly is our position that it does make good sense and may proceed most efficiently if we resolve some of the threshold issues before we jump into an overall schedule.

We -- the debtors are committed to continuing to work with the other parties in the interim to see if we can resolve any disputes and hopefully narrow the issues that are put before the Court.

THE COURT: Okay. Well, there's nothing for me to decide today and I don't have the briefing on the motion to dismiss, which, unless resolved, will come right in the middle of an 1113/1114 trial that I have, so it's not going

to be looked at immediately. And September is not looking good. But I'm going to look at my schedule again with Mrs. Johnson and see what I can do.

I'm hearing that this is issue is part of an ongoing mediation, correct? At least with the debtors.

Mr. KLEINHAUS: Your Honor, I think it's that -- as to the debtors, that may be correct. I don't want to get into the substance of the mediation. But we are, as I said, part of a broader mediation process with the debtors and the TCC.

You heard the exchange as to J&J. I mean, J&J seems to --

THE COURT: Uh-huh.

Mr. KLEINHAUS: -- not want to mediate right now. And I do think that what -- given whatever your schedule -- Your Honor's schedule allows, which is probably extremely busy, it -- we're not disagreeing that we need to finish the briefing on the motion to dismiss.

But the next step will be -- as to the debtors, we don't agree that the debtors can just hold back on discovery, even though they answered. So, at some point, we're going to have to come back before Your Honor, if we can't resolve that issue, and ask for Your Honor to resolve it.

And as to J&J, there's this gating item of jurisdiction, which we look to resolve when Your Honor can.

And we also don't agree that discovery can't happen with J&J in the interim. I mean, for one thing, if this Court -- we fully believe this Court has jurisdiction. This dispute is going to go forward either here or elsewhere; we fully believe here. So we do want to push this action, when possible. You know, we defer to Your Honor on the schedule.

And the mediation, as I noted, at most would cover issues with the debtors and not with J&J, absent developments or as to being included in the J&J mediation.

THE COURT: Okay. Okay. Well, I'm just going to have to work on my calendar with Mrs. Johnson and see what I can do to either get you in here end of September or beginning of October, and then we're running right into October 8th, so I'll have to get back to you.

Certainly, getting -- hearing whether discovery should go forward, that's something I can probably fit in somewhere. Hearing a motion to dismiss on jurisdictional issues is a little more complicated, in terms of preparation and prompt ruling, but we'll look for it, we'll look for a date and inform parties.

Mr. KLEINHAUS: Understood. And thank you, Your Honor.

Your Honor, one last comment for me. There was discussion earlier about J&J and the debtors mediating and potentially -- either going forward on -- on September 23rd

or not. If the debtors and J&J were to reach agreement, and Cyprus is not part of that agreement, we would at least like the opportunity to see that agreement before it goes forward. And I think -- I don't think anybody contemplated otherwise, but we may need an opportunity to object to whatever that amended order is before it's entered. Thank you.

THE COURT: Yeah, I'm not sure anybody contemplates that parties will not have an opportunity to review and comment on whatever agreement might be reached, whether it's in the context of the J&J motion for relief from stay or in the context of a revised plan that incorporates whatever that agreement is, so all parties will have an opportunity to review.

Okay. Is there anything further that we need to discuss this morning?

MS. QUARTAROLO: Nothing from the debtors, Your Honor.

THE COURT: Okay. Well, I certainly appreciate the parties' communication and work from Monday through today, to address the dispute with J&J and issues surrounding the disclosure statement, so I appreciate the efforts of all involved. Thank you very much. We're adjourned.

COUNSEL: Thank you, Your Honor. Thank you, Your Honor.

(Proceedings concluded at 10:55 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

______________________________ August 26, 2020

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable