## **Exhibit 1**

**Plan Blackline**

RLF1 24095145v.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                     :   Chapter 11
                                           :
IMERYS TALC AMERICA, INC., et al.,[1]      :   Case No. 19-10289 (LSS)
                                           :
          Debtors.                         :   (Jointly Administered)
                                           :
------------------------------------------------------- :
In re:                                     :   Chapter 11
                                           :
IMERYS TALC ITALY S.P.A.,[2]               :   Case No. [Not yet filed]
                                           :
          Potential Debtor.                :   [Joint Administration To Be Requested]
                                           :
------------------------------------------------------- x
```

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF IMERYS TALC AMERICA, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

THIS SOLICITATION IS BEING CONDUCTED NOT ONLY FOR THE DEBTORS IN THESE CHAPTER 11 CASES, BUT ALSO FOR IMERYS TALC ITALY S.P.A. NO CHAPTER 11 CASE HAS BEEN COMMENCED AT THIS TIME FOR IMERYS TALC ITALY S.P.A. THE DISCLOSURE STATEMENT AND SOLICITATION MATERIALS ACCOMPANYING THIS JOINT CHAPTER 11 PLAN HAVE NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR IMERYS TALC ITALY S.P.A. IF THE REQUISITE NUMBER OF ACCEPTANCES BY HOLDERS OF CLAIMS IN CLASS 4 ARE RECEIVED, IMERYS TALC ITALY S.P.A. WILL COMMENCE A CHAPTER 11 CASE. FOLLOWING THE COMMENCEMENT OF SUCH A CASE AND ENTRY OF AN ORDER FOR JOINT ADMINISTRATION, IMERYS TALC ITALY S.P.A. WILL SEEK TO HAVE THE DISCLOSURE STATEMENT ORDER MADE APPLICABLE TO IT AND THE CONFIRMATION HEARING ON THIS JOINT CHAPTER 11 PLAN WILL APPLY TO IMERYS TALC ITALY S.P.A.

EVEN THOUGH A CHAPTER 11 CASE HAS NOT BEEN COMMENCED FOR IMERYS TALC ITALY S.P.A., THIS JOINT CHAPTER 11 PLAN IS DRAFTED TO ACCOUNT FOR SUCH A FILING FOR EASE OF READING. TO THE EXTENT THAT THE REQUISITE ACCEPTANCES ARE NOT RECEIVED OR IT IS OTHERWISE DETERMINED THAT A CHAPTER 11 FILING IS NOT NECESSARY, ANY REFERENCE TO

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050) and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2]    This solicitation is also being conducted by Imerys Talc Italy S.p.A. pursuant to sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018. **If the Plan is accepted by the requisite number of claimants in Class 4, Imerys Talc Italy S.p.A. will commence a bankruptcy case that will be, pending entry of an order by the Bankruptcy Court, jointly administered under Case No. 19-10289 (LSS).** Imerys Talc Italy S.p.A.'s address is Via Nazionale 121 Porte, 10060 Turin, Italy.

THE CHAPTER 11 CASE OF IMERYS TALC ITALY S.P.A. WILL BE STRICKEN.  THE PLAN PROPONENTS RESERVE THE RIGHT TO AMEND, SUPPLEMENT OR OTHERWISE MODIFY THIS JOINT CHAPTER 11 PLAN PRIOR TO OR DURING THE CONFIRMATION HEARING TO THE EXTENT ALLOWED BY THE BANKRUPTCY CODE AND THE BANKRUPTCY RULES AND IN ACCORDANCE WITH THE TERMS OF THE PLAN.

THE PLAN PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF AN INJUNCTION PURSUANT TO SECTIONS 105(a) AND 524(g) OF THE BANKRUPTCY CODE THAT CHANNELS ALL CLASS 4 TALC PERSONAL INJURY CLAIMS AGAINST THE DEBTORS AND THE PROTECTED PARTIES (AS DEFINED HEREIN) TO A TRUST, AS WELL AS OTHER INJUNCTIONS DESCRIBED IN ARTICLE XII OF THE PLAN.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

## CONTENTS

**Page**

ARTICLE I DEFINITIONS AND RULES OF INTERPRETATION ...........................................1

    1.1    Capitalized Terms ............................................................................................1
    1.2    Interpretation; Application of Definitions; Rules of Construction; and
            Computation of Time .................................................................................2728
    1.3    Exhibits ...........................................................................................................28
    1.4    Ancillary Documents ......................................................................................28

ARTICLE II TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS, AND
               PRIORITY TAX CLAIMS...........................................................................28

    2.1    Administrative Claims ....................................................................................28
    2.2    Allowed Priority Tax Claims .....................................................................2930
    2.3    Fee Claims ..................................................................................................2930

ARTICLE III TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS...........30

    3.1    Grouping of the Debtors for Convenience ....................................................30
    3.2    Claims and Equity Interests Classified .....................................................3031
    3.3    Treatment and Classification of Claims and Equity Interests.......................31
    3.4    Debtors' Rights with Respect to Unimpaired Claims.................................3435

ARTICLE IV THE TALC PERSONAL INJURY TRUST........................................................35

    4.1    Establishment of the Talc Personal Injury Trust...........................................35
    4.2    Purpose and Trust Distribution Procedures ...................................................35
    4.3    Selection of the Initial Talc Trustees .............................................................35
    4.4    Advising the Talc Personal Injury Trust....................................................3536
    4.5    Transfer of Claims and Demands to the Talc Personal Injury Trust ...................36
    4.6    Transfer of Talc Personal Injury Trust Assets to the Talc Personal Injury
            Trust .........................................................................................................3637
    4.7    Talc Personal Injury Trust Expenses .............................................................37
    4.8    Excess Talc Personal Injury Trust Assets .....................................................37
    4.9    Dissolution of the Talc Personal Injury Trust................................................37
    4.10   Funds and Investment Guidelines.............................................................3738
    4.11   Cooperation Agreement .............................................................................3738
    4.12   Talc Personal Injury Trust Indemnification of the Protected Parties....................38
    4.13   Post-Effective Date Liabilities .......................................................................38

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
              LEASES ........................................................................................................38

    5.1    General Treatment ..........................................................................................38
    5.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases........3940

i

| 5.3 | Cure of Defaults for Executory Contracts and Unexpired Leases | 40 |
| 5.4 | Modifications, Amendments, Supplements, Restatements or Other Agreement | 4142 |
| 5.5 | Reservation of Rights | 42 |
| 5.6 | Talc Insurance Policies and Talc Insurance CIP Agreements | 42 |
| 5.7 | Non-Talc Insurance Policies | 42 |

**ARTICLE VI DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS** ........... 43

| 6.1 | Distributions | 43 |
| 6.2 | Timing and Calculation of Amounts to be Distributed | 43 |
| 6.3 | Disbursing Agent | 43 |
| 6.4 | Rights and Powers of Disbursing Agent | 4344 |
| 6.5 | Distributions on Account of Claims Allowed After the Effective Date | 44 |
| 6.6 | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 44 |
| 6.7 | Time Bar to Cash Payments | 45 |
| 6.8 | Disbursing Agent's Obligation to Provide Periodic Reporting | 45 |
| 6.9 | Record Date for Holders of Claims | 4546 |
| 6.10 | Compliance with Tax Requirements and Allocations | 4546 |
| 6.11 | Transfers of Claims | 46 |
| 6.12 | Interest on Impaired and Disputed Claims | 46 |
| 6.13 | Setoffs | 4647 |

**ARTICLE VII RESOLUTION OF DISPUTED CLAIMS OTHER THAN  TALC PERSONAL INJURY CLAIMS** ........... 4647

| 7.1 | Disputed Claims | 4647 |
| 7.2 | Prosecution of Claims Generally | 47 |
| 7.3 | Prosecution of Disputed North American Debtor Claims and Claims Objection Deadline | 4748 |
| 7.4 | ITI Claims | 48 |
| 7.5 | Distributions on Account of Disputed Claims | 4849 |
| 7.6 | No Distributions Pending Allowance | 4849 |
| 7.7 | Estimation of Claims | 4849 |
| 7.8 | Disputed Claims Reserve for the North American Debtors | 49 |
| 7.9 | Disputed ITI Claims | 4950 |
| 7.10 | Distribution of Excess Amounts in the Disputed Claims Reserve for the North American Debtors | 4950 |

**ARTICLE VIII ACCEPTANCE OR REJECTION OF PLAN** ........... 50

| 8.1 | Classes Entitled to Vote | 50 |
| 8.2 | Acceptance of Holders of Talc Personal Injury Claims | 50 |
| 8.3 | Acceptance by Unimpaired Class | 50 |
| 8.4 | Acceptance by Impaired Class | 50 |

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION  AND
CONSUMMATION OF THE PLAN ................................................................ 5051

9.1    Conditions Precedent to the Confirmation of the Plan ..................... 5051
9.2    Conditions Precedent to the Effective Date of the Plan..................... 5354
9.3    Waiver of Conditions Precedent ......................................................... 5455
9.4    Notice of Effective Date ..................................................................... 5455

ARTICLE X MEANS FOR IMPLEMENTATION OF THE PLAN ............................................ 55

10.1    General ............................................................................................... 55
10.2    Operations of the Debtors Between Confirmation and the Effective Date ............ 55
10.3    Charter and Bylaws ........................................................................... 55
10.4    Corporate Action ............................................................................... 55
10.5    Surrender of Existing Equity Interests ............................................. 5556
10.6    Post-Effective Date Governance, Continued Existence of the Reorganized
North American Debtors, and the Reorganized North American Debtor
Stock ................................................................................................ 5556
10.7    Post-Effective Date Governance and Continued Existence of Reorganized
ITI. ................................................................................................... 5657
10.8    Imerys Settlement ............................................................................. 57
10.9    Rio Tinto/Zurich Settlement ............................................................. 59
10.10   Good Faith Compromise and Settlement .......................................... 62
10.11   Resolution of Talc Personal Injury Claims ...................................... 62
10.12   Sources of Consideration for Plan Distributions ............................. 6263
10.13   Transfer of Remaining North American Debtors' Assets to the Talc
Personal Injury Trust ........................................................................ 63
10.14   Modification of the Plan ................................................................... 64
10.15   Revocation or Withdrawal of the Plan.............................................. 64
10.16   Certain Technical Modifications....................................................... 64

ARTICLE XI EFFECT OF CONFIRMATION ......................................................................... 6465

11.1    Preservation of Certain Estate Causes of Action ............................. 6465
11.2    Preservation of Talc Personal Injury Trust Causes of Action........... 65
11.3    Talc Insurance Actions ..................................................................... 6566
11.4    Insurance Provisions ......................................................................... 66
11.5    J&J Indemnification Rights and Obligations.................................... 67
11.6    Institution and Maintenance of Legal and Other Proceedings.......... 6768
11.7    Terms of Injunctions and Automatic Stay ........................................ 68
11.8    The FCR and the Tort Claimants' Committee ................................... 6869
11.9    Expungement of Talc Personal Injury Claims from the Claims Register.......... 69

ARTICLE XII RELEASES, INJUNCTION AND EXCULPATION ............................................ 69

12.1    Discharge and Injunctions................................................................. 69
12.2    Releases............................................................................................. 6970

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

12.3     The Channeling Injunction and the Insurance Entity Injunction ...................7273

12.4     Supplemental Settlement Injunction Order............................................7677

12.5     Reservation of Rights.............................................................................7778

12.6     Disallowed Claims and Disallowed Equity Interests..........................7778

12.7     Exculpation ...........................................................................................78

12.8     No Successor Liability ..........................................................................7879

12.9     Corporate Indemnities..........................................................................7879

12.10   ERISA Pension Plans............................................................................7980

**ARTICLE XIII JURISDICTION OF BANKRUPTCY COURT**.................................................80

13.1     Jurisdiction............................................................................................80

13.2     General Retention .................................................................................8081

13.3     Specific Purposes .................................................................................8081

13.4     District Court Jurisdiction ....................................................................83

13.5     Reservation of Rights............................................................................83

13.6     Compromises of Controversies ...........................................................83

**ARTICLE XIV MISCELLANEOUS PROVISIONS**...................................................8384

14.1     Closing of Chapter 11 Cases ...............................................................8384

14.2     Timing of Distributions or Actions ......................................................8384

14.3     Governing Law .....................................................................................8384

14.4     Entire Agreement .................................................................................8384

14.5     Headings ...............................................................................................84

14.6     Severability ...........................................................................................84

14.7     Notices ..................................................................................................8485

14.8     Notice to Other Entities .......................................................................86

14.9     Plan Supplement ..................................................................................86

14.10   Inconsistencies .....................................................................................8687

14.11   Withholding of Taxes ...........................................................................8687

14.12   Transfer Taxes .....................................................................................8687

14.13   Binding Effect ......................................................................................87

14.14   Payment of Statutory Fees ...................................................................87

14.15   Duty to Cooperate ...............................................................................87

14.16   Effective Date Actions Simultaneous ..................................................87

14.17   Consent to Jurisdiction.........................................................................8788

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

## EXHIBITS AND SCHEDULES TO PLAN

Exhibit A        Trust Distribution Procedures

Exhibit B        Talc Personal Injury Trust Agreement

Schedule I       Imerys Corporate Parties

Schedule II      Imerys Plan Proponents

Schedule III     Rio Tinto Captive Insurer Policies

Schedule IV     Rio Tinto Corporate Parties

Schedule V      Zurich Corporate Parties

Schedule VI     Zurich Policies

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

# INTRODUCTION

Imerys Talc America, Inc. and its affiliated debtors and debtors-in-possession in the above captioned Chapter 11 Cases respectfully propose the following joint chapter 11 plan of reorganization. Imerys Talc Italy S.p.A. proposes this joint chapter 11 plan as a prepackaged plan and if the requisite acceptances from holders of Claims in Class 4 are received, then Imerys Talc Italy S.p.A. will commence a chapter 11 case to implement the Plan. Unless otherwise indicated, capitalized terms shall have the meanings ascribed to them in Section 1.1 of the Plan.

Nothing in the Plan Documents constitutes an admission by the Debtors as to the existence, merits, or amount of the Debtors' actual present or future liability on account of any Claim or demand (including, but not limited to, any Talc Personal Injury Demand) except to the extent that such liability is specifically provided for in the Plan or the other Plan Documents in accordance with the Confirmation Order effective as of the Effective Date.

The Plan Proponents hereby jointly propose the following Plan pursuant to the provisions of chapter 11 of Title 11 of the United States Code for the Debtors in the Chapter 11 Cases and any laws applicable to the solicitation of votes on the Plan by Imerys Talc Italy S.p.A. Reference is made to the Disclosure Statement distributed contemporaneously herewith for, among other things, a discussion of the history, businesses, properties, and results of operations of the Debtors, and projections for future operations, and risks associated with the Plan. The Disclosure Statement also provides a summary of the Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN WITH CARE IN EVALUATING HOW THE PLAN WILL AFFECT YOUR CLAIM(S) BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

# ARTICLE I
## DEFINITIONS AND RULES OF INTERPRETATION

1.1    Capitalized Terms. The capitalized terms used herein have the respective meanings set forth below. Any term that is not otherwise defined in this Section 1.1 of the Plan, but that is defined elsewhere in the Plan or in the Bankruptcy Code or Bankruptcy Rules, shall have the meaning given to that term in the Plan, the Bankruptcy Code, or Bankruptcy Rules, as applicable.

1.1.1    "**Additional Contribution**" is defined in accordance with Section 10.8.2.4 of the Plan.

1.1.2    "**Administrative Claim**" means any Claim for any cost or expense of administration of the Chapter 11 Cases under section 503(b) of the Bankruptcy Code, including, but not limited to, (1) any actual and necessary post-petition cost or expense of preserving the Estates or operating the businesses of the Debtors, (2) any payment to be made under the Plan to cure a default on an assumed Executory Contract or Unexpired Lease, (3) post-petition costs, indebtedness or contractual obligations duly and validly incurred or assumed by the Debtors in the ordinary course of business, (4) any Fee Claim, including any Claim for compensation or reimbursement of expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 327, 328, 330(a), 331, or 503(b) of the Bankruptcy Code or the provision of the Plan, (5) any fee or charge assessed against the Estates under 28 U.S.C. § 1930(6), (6) any Claim of the Information Officer and/or

counsel for the Information Officer, and (7) any Claim that has been granted superpriority administrative expense status in accordance with the Final Cash Management Order.  For the avoidance of doubt, KEIP/KERP Payments are Administrative Claims.

1.1.3    "**Administrative Claims Bar Date**" means the applicable deadline for filing requests for payment of Administrative Claims (other than Fee Claims) and shall be the Business Day that is sixty (60) days after the Effective Date.

1.1.4    "**Administrative Claim Reserve**" means an amount, as of the Effective Date, equal to (i) the Allowed Amount of Administrative Claims (excluding Fee Claims) and (ii) an estimate by the Debtors (subject to input from and consent by each of the Plan Proponents) of additional Administrative Claims (excluding Fee Claims) that may become Allowed after the Effective Date, certain amounts attributable to the transfer of the Talc Personal Injury Trust Assets to the Talc Personal Injury Trust, and costs incurred by the Reorganized North American Debtors related to post-Effective Date Administrative Claim resolution.  The sole purpose of the Administrative Claim Reserve is to pay all Allowed Administrative Claims against the Debtors in full.

1.1.5"**Affiliate**" shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.1.5    "**Affiliate**" shall mean, with respect to any specified entity: (a) an "affiliate," as defined in section 101(2) of the Bankruptcy Code, of such specified entity; or (b) any other Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by or is under common control with the specified entity. As used in clause (b) of the prior sentence, "control" shall include the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the specified entity (whether through the ownership of equity, by contract or otherwise).

1.1.6    "**Affirmation Order**" means an order of the District Court affirming Confirmation of the Plan and issuing or affirming the issuance of the Channeling Injunction in favor of the Protected Parties.

1.1.7    "**Allowed**" means (a) with respect to Non-Talc Claims, and including applicable premiums and penalties to the extent allowable: (i) any Claim proof of which is timely filed by the applicable Claims Bar Date; (ii) any Claim that is listed in the Schedules as neither contingent, unliquidated, nor disputed, and for which no Proof of Claim has been timely filed; or (iii) any Claim that is allowed pursuant to the Plan; *provided*, *however*, that with respect to any Claim described in clauses (i) and (ii) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance of such Claim has been filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or such an objection is filed and the Claim shall have been allowed by a Final Order, and (b) with respect to Equity Interests: (i) any Equity Interest registered in the stock register (or its equivalent) maintained by or on behalf of the relevant Debtors as of the Confirmation Date; (ii) any Equity Interest that is allowed pursuant to the Plan; or (iii) any other Equity Interest that has been allowed by a Final Order of the Bankruptcy Court.

2

1.1.8    "**Allowed Amount**" means, with respect to any Non-Talc Claim, the amount for which that Claim is Allowed, denominated in U.S. dollars, Canadian dollars, or Euros, as applicable.

1.1.9    "**Amended Bylaws**" means, the amended and restated bylaws of each of the Reorganized North American Debtors, in substantially the form contained in the Plan Supplement.

1.1.10    "**Amended Certificate of Incorporation**" means, as to each of the Reorganized North American Debtors, the amended and restated certificate of incorporation of such Debtor, in substantially the form contained in the Plan Supplement.

1.1.11    "**Amended Charter Documents**" means, collectively, the Amended Bylaws and the Amended Certificates of Incorporation.

1.1.12    "**Asset Purchase Agreement**" means one or more asset purchase agreements pursuant to which the Sale or Sales are consummated, as contemplated by the Sale Motion, which motion includes, among other things, the right of the Tort Claimants' Committee and the FCR to consent to the form of such agreement(s).

1.1.13    "**Assignment**" means the transfer of (i) the Talc Insurance Actions, (ii) the Talc Insurance Action Recoveries, (iii) the Talc Insurance CIP Agreements, (iv) the Talc Insurance Settlement Agreements, (v) the Talc In-Place Insurance Coverage, and (vi) all other rights or obligations under or with respect to the Talc Insurance Policies, to the Talc Personal Injury Trust under the Plan or the other Plan Documents.

1.1.14    "**Bankruptcy Code**" means ~~Title~~ title 11 of the United States Code, ~~11 U.S.C. 101 *et seq*.,~~ as in effect on ~~the Petition Date~~February 13, ~~together with all amendments, modifications, and replacements of the foregoing as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases~~2019.

1.1.15    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

1.1.16    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code and any local rules of the Bankruptcy Court, as in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases.

1.1.17    "**Bid Procedures Order**" means that certain *Order (I) (A) Establishing Bidding Procedures, Assumption and Assignment Procedures, and Stalking Horse Procedures for Sale of Substantially All Assets, (B) Scheduling Auction and Sale Hearing, and (C) Approving Form and Manner of Notice Thereof, and (II) Granting Related Relief* [Docket No. 1950], as modified by the *Notice of Modified Deadlines Contained in the Bidding Procedures and the Bidding Procedures Order* [Docket No. 2039] and the *Second Notice of Modified Deadlines Contained in the Bidding Procedures and the Bidding Procedures Order* [Docket No. 2189].

3

1.1.18    "**Business Day**" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, NY are authorized or required by law or executive order to close.

1.1.19    "**Buyer**" means the purchaser under any Asset Purchase Agreement approved by the Bankruptcy Court as contemplated by the Sale Motion, together with its successors and permitted assigns (including any and all of its Affiliates to which it assigns any of its rights or obligations under the Asset Purchase Agreement).

1.1.20    "**Canadian Claims**" shall mean Talc Personal Injury Claims of individuals exposed in Canada or who were resident in Canada at the time such claims are filed.

1.1.21    ~~1.1.20~~"**Canadian Court**" means the Ontario Superior Court of Justice (Commercial List).

1.1.22    ~~1.1.21~~"**Canadian Proceeding**" means the proceeding commenced by ITC before the Canadian Court pursuant to the Companies Creditors Arrangement Act (Canada) R.S.C. 1985, c. C-36, as amended.

1.1.23    ~~1.1.22~~"**Cash**" means lawful currency of the United States of America and its equivalents.

1.1.24    ~~1.1.23~~"**Channeling Injunction**" means the permanent injunction provided for in Section 12.3 of the Plan with respect to Talc Personal Injury Claims against the Protected Parties to be issued pursuant to the Confirmation Order.

1.1.25    ~~1.1.24~~"**Chapter 11 Cases**" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under Case No. 19-10289 (LSS), and, if applicable, the case to be commenced in the Bankruptcy Court under chapter 11 of the Bankruptcy Code for ITI.

1.1.26    ~~1.1.25~~"**Claim**" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code as it pertains to "claims" against any or all of the Debtors.

1.1.27    ~~1.1.26~~"**Claims Agent**" means Prime Clerk LLC.

1.1.28    ~~1.1.27~~"**Claims Bar Date**" means (i) October 15, 2019, for North American Debtor Claims (subject to the exceptions contained in the General Bar Date Order), (ii) January 9, 2020, for Indirect Talc Personal Injury Claims against the North American Debtors, or (iii) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to certain Claims.

1.1.29    ~~1.1.28~~"**Claims Objection Bar Date**" means the deadline for objecting to North American Debtor Claims set forth in Section 7.3.2 which shall be one hundred and

4

twenty (120) days after the Effective Date, unless extended by operation of the Bankruptcy Rules or order of the Bankruptcy Court prior to the expiration of such period.

1.1.30    1.1.29"**Claims Register**" means the register of Claims filed against the Debtors in the Chapter 11 Cases maintained by the Claims Agent as such register is updated from time to time to reflect, among other things, Claims that have been Allowed or Disallowed.

1.1.31    1.1.30"**Class**" means a category of holders of Claims or Equity Interests described in Article III of the Plan.

1.1.32    1.1.31"**Clerk**" means the clerk of the Bankruptcy Court.

1.1.33    1.1.32"**Compensation Procedures Order**" means that certain *Order Under 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016(a), and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of Professionals* [Docket No. 301].

1.1.34    1.1.33"**Confirmation**" means the entry of the Confirmation Order on the Docket of the Chapter 11 Cases.

1.1.35    1.1.34"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket in the Chapter 11 Cases.

1.1.36    1.1.35"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.1.37    1.1.36"**Confirmation Order**" means the order, in form and substance acceptable to the Plan Proponents, entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.38    1.1.37"**Contingent Contribution**" is defined in accordance with Section 10.8.2.2 of the Plan.

1.1.39    1.1.38"**Contributed Indemnity and Insurance Interests**" is defined in accordance with Section 10.8.2.3 of the Plan.

1.1.40    1.1.39"**Contribution Claim**" is defined in accordance with Section 12.3.1(g) of the Plan.

1.1.41    1.1.40"**Cooperation Agreement**" means that certain Cooperation Agreement among the Debtors, Imerys S.A., and the Talc Personal Injury Trust, in substantially the form contained in the Plan Supplement.

1.1.42    1.1.41"**Credits**" is defined in accordance with Section 10.9.2.1 of the Plan.

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

1.1.43   ~~1.1.42~~"**Cure Amount**" means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary to (i) cure a monetary default of one or more of the Debtors in accordance with the terms of an Executory Contract or Unexpired Lease of such Debtor(s) and (ii) permit such Debtor(s) to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

1.1.44   ~~1.1.43~~"**Cyprus**" means Cyprus Mines Corporation, Cyprus Amax Minerals Company, and each of their past and present parents, subsidiaries and Affiliates, direct and indirect equity holders, and the successors and assigns of each, excluding the Debtors and the Imerys Non-Debtors.

1.1.45   "**Debtor Exposure**" shall mean credible evidence (a) of exposure to talc or a product containing talc mined, processed, manufactured, sold and/or distributed by the Debtors, or for which the Debtors otherwise have legal responsibility, or (b) of conduct for which the Debtors have legal responsibility that exposed the claimant to such product.

1.1.46   ~~1.1.44~~"**Debtor Intercompany Claim**" means any Claim held by a Debtor against another Debtor.

1.1.47   ~~1.1.45~~"**Debtors**" means Imerys Talc America, Inc., Imerys Talc Vermont, Inc., Imerys Talc Canada Inc., and, in the event it files a voluntary petition for relief under chapter 11 of the Bankruptcy Code before the Confirmation Date, Imerys Talc Italy S.p.A.

1.1.48   ~~1.1.46~~"**Direct Talc Personal Injury Claim**" means a Talc Personal Injury Claim that is not an Indirect Talc Personal Injury Claim.

1.1.49   ~~1.1.47~~"**Disallowed**" means any Non-Talc Claim or Equity Interest that (a) is denied, dismissed, expunged, overruled, or disallowed in whole or in part (but solely to the extent of the disallowance) by Final Order or under the Plan, or (b) has been withdrawn, in whole or in part (but solely to the extent of such withdrawal).

1.1.50   ~~1.1.48~~"**Disbursing Agent**" means each Reorganized Debtor, or such other Entity or Entities chosen by the Reorganized Debtor or Reorganized Debtors to make or facilitate Distributions pursuant to the Plan.

1.1.51   ~~1.1.49~~"**Discharge Injunction**" means the injunction issued in accordance with sections 524 and 1141 of the Bankruptcy Code and contained in Section 12.1 of the Plan.

1.1.52   ~~1.1.50~~"**Disclosure Statement**" means the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated ~~August 12~~October 5, 2020, including all exhibits and schedules thereto and references therein that relate to the Plan, approved by order of the Bankruptcy Court as containing adequate information, and distributed in accordance with such order of approval, as such disclosure

6

statement and supplemental disclosure documents may be amended, modified, or supplemented from time to time with the consent of each of the Plan Proponents.

1.1.53    ~~1.1.51~~"**Disputed**" means any Non-Talc Claim or Equity Interest, or any portion thereof, that has not been Allowed or Disallowed pursuant to the Plan or a Final Order of the Bankruptcy Court, or that is contingent or unliquidated.

1.1.54    ~~1.1.52~~"**Disputed Claims Reserve**" means the reserve maintained by the Reorganized North American Debtors for any distributable amounts required to be set aside on account of Disputed North American Debtor Claims (other than Disputed Administrative Claims), the amount of which will be distributed (net of any expenses, including any taxes relating thereto), as provided in the Plan, as such Disputed North American Debtor Claims (other than Disputed Administrative Claims) are resolved by Final Order, and such amounts shall be distributable in respect of such Disputed North American Debtor Claims (other than Disputed Administrative Claims) as such amounts would have been distributable had the Disputed North American Debtor Claims (other than Disputed Administrative Claims) been Allowed Claims as of the Effective Date.  For the avoidance of doubt, (i) no assets of ITI will be used to fund the Disputed Claims Reserve and no amounts from the Disputed Claims Reserve will be distributed on account of Allowed ITI Claims, and (ii) available funds in the Disputed Claims Reserve will not be used to pay any Claims that are subject to payment from funds placed in the Reorganized North American Debtor Cash Reserve.

1.1.55    ~~1.1.53~~"**Distribution(s)**" mean(s) Cash, property, or interest in property to be paid or delivered hereunder to holders of Allowed Non-Talc Claims under the terms of the Plan.

1.1.56    ~~1.1.54~~"**Distribution Date**" means the date which is as soon as reasonably practicable after the later of (i) the Effective Date, or (ii) in the case of a Non-Talc Claim that is not yet Allowed as of the Effective Date, the date that such Claim becomes Allowed.

1.1.57    ~~1.1.55~~"**Distribution Record Date**" means the record date for determining an entitlement to receive Distributions under the Plan on account of Allowed Non-Talc Claims, which shall be the Confirmation Date.

1.1.58    ~~1.1.56~~"**District Court**" means the United States District Court for the District of Delaware.

1.1.59    ~~1.1.57~~"**Docket**" means the docket in the jointly administered Chapter 11 Cases maintained by the Clerk.

1.1.60    ~~1.1.58~~"**Effective Date**" means the Business Day upon which all of the conditions precedent to the occurrence of the Effective Date contained in <u>Section 9.2</u> of the Plan have been satisfied or waived pursuant to <u>Section 9.3</u>.

1.1.61    ~~1.1.59~~"**Encumbrance**" means with respect to any property (whether real or personal, tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment or encumbrance of any kind or nature in respect of such property (including

~~US-DOCS\116913121~~US-DOCS\117851055RLF1 ~~23862447v.1~~24099286v.1

any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

1.1.62 ~~1.1.60~~"**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.1.63 ~~1.1.61~~"**Equity Interest**" means (i) the ITA Stock, (ii) the ITV Stock, (iii) the ITC Stock, and/or (iv) the ITI Stock, as applicable.

1.1.64 ~~1.1.62~~"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and the regulations promulgated and rulings issued thereunder, as amended, supplemented or substituted therefor from time to time.

1.1.65 ~~1.1.63~~"**ERISA Affiliate**" means, with respect to any Person, any other Person (whether or not incorporated) that, together with such Person, would be treated as a single employer under section 414 of the Internal Revenue Code or section 4001 of ERISA.

1.1.66 ~~1.1.64~~"**ERISA Pension Plan Sponsors**" is defined in accordance with Section 12.10 of the Plan.

1.1.67 ~~1.1.65~~"**ERISA Pension Plans**" is defined in accordance with Section 12.10 of the Plan.

1.1.68 ~~1.1.66~~"**Estate**" means, as to each Debtor, the estate created in its Chapter 11 Case under section 541 of the Bankruptcy Code.

1.1.69 ~~1.1.67~~"**Estate Causes of Action**" means any and all of the actions, claims, rights, remedies, defenses, counterclaims, suits, and causes of action owned or held, or assertable by or on behalf of any Debtor or its Estate (including, without limitation, claims assertable by the Tort Claimants' Committee or FCR on behalf of any Debtor or its Estate), whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including without limitation actions that (i) arise out of or are based on breach of contract, receipt of illegal dividends, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtors or their respective Estates, including actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estates, including pursuant to section 323 of the Bankruptcy Code, and actions that may be commenced by a representative of the Estates under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise, or (ii) seek to impose any liability upon, or injunctive relief on, any Imerys Protected Party, any Rio Tinto Protected Party, or any Settling Talc Insurance Company, or to satisfy, in whole or in part, any Talc Personal Injury Claim. The term "Estate Causes of Action" includes any such actions, claims, rights,

~~US-DOCS\116913121~~US-DOCS\117851055RLF1 ~~23862447v.1~~24099286v.1

remedies, defenses, counterclaims, suits, and causes of action, regardless of the alleged legal theory, including without limitation: (a) inadequate capitalization, (b) fraudulent transfer or fraudulent conveyance claims, or claims seeking to avoid and/or recover any transfers of property, under applicable state or federal law, (c) claims based on the doctrines of veil piercing, alter ego, or vicarious liability; (d) single business enterprise or common enterprise claims; (e) claims that any Debtor was the mere instrumentality, agent, dominated or controlled party, or alter ego of any Imerys Protected Party or any Rio Tinto Protected Party, or that any Imerys Protected Party or any Rio Tinto Protected Party was the mere instrumentality, agent, dominated or controlled party, or alter ego of any Debtor; (f) claims that any Imerys Protected Party or any Rio Tinto Protected Party was the mere continuation of any Debtor; (g) negligent provision of services claims; and (h) claims that any Imerys Protected Party or any Rio Tinto Protected Party, on the one hand, and any Debtor, on the other hand, conspired with one another, aided and abetted one another, or acted in concert with one another.

1.1.70  ~~1.1.68~~"**Executory Contract**" means any executory contract as to which one of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.71  ~~1.1.69~~"**FCR**" means James L. Patton (or any Bankruptcy Court-appointed successor), in his capacity as the legal representative for any and all persons who may assert Talc Personal Injury Demands.

1.1.72  ~~1.1.70~~"**Fee Claim**" means any Claim of a (i) Professional for allowance of compensation and reimbursement of costs and expenses and (ii) member of the Tort Claimants' Committee for reimbursement of costs and expenses, in each case incurred in the Chapter 11 Cases on or before the Effective Date.

1.1.73  ~~1.1.71~~"**Fee Claim Reserve**" means an amount equal to the Allowed Amount of Fee Claims against the Debtors and a reasonable estimate by the Debtors (subject to input from and consent by each of the Plan Proponents) of additional Fee Claims against the Debtors that may become Allowed after the Effective Date. The sole purpose of the Fee Claim Reserve is to pay all Allowed and unpaid Fee Claims against the Debtors in full.

1.1.74  ~~1.1.72~~"**Fee Examiner**" means Jacob Renick (or any Bankruptcy Court-appointed successor), in his capacity as the fee examiner appointed pursuant to the Fee Examiner Order.

1.1.75  ~~1.1.73~~"**Fee Examiner Order**" means the *Order Appointing Fee Examiner and Establishing Related Procedures for the Review of Applications of Retained Professionals* [Docket No. 741].

1.1.76  ~~1.1.74~~"**Final Cash Management Order**" means the *Final Order Under 11 U.S.C. §105(a), 345, 363, 503(b), and 507(a), Fed. R. Bankr. P. 6003 and 6004, and Del. Bankr. L.R. 2015-2 (I) Authorizing Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, and Business Forms,*

*(II) Authorizing Continuation of Existing Deposit Practices, (III) Approving the Continuation of Intercompany Transactions, and (IV) Granting Superpriority Administrative Expense Status to Certain Postpetition Intercompany Claims* [Docket No. 428].

1.1.77    1.1.75"**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

1.1.78    "**Foreign Claim**" shall mean a Talc Personal Injury Claim with respect to which the Debtor Exposure occurred outside of the United States or Canada and their territories and possessions, and as to which the claimant cannot establish jurisdiction in any court in the United States or Canada.  For the avoidance of doubt, a Canadian Claim is not a Foreign Claim.

1.1.79    1.1.76"**Future Credits**" is defined in accordance with Section 10.9.2.1 of the Plan.

1.1.80    1.1.77"**General Bar Date Order**" means the *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim Other Than with Respect to Talc Personal Injury Claims and (II) Approving Form and Manner of Notice Thereof* [Docket No. 881].

1.1.81    1.1.78"**Imerys Affiliated Parties**" means, in each case during the times the Debtors were direct or indirect subsidiaries of Imerys S.A. and solely in their capacities as such: (i) direct or indirect shareholders of Imerys S.A.; (ii) current and former officers, directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, experts, and other professionals of the Imerys Corporate Parties and/or the Debtors; and (iii) with respect to each of the foregoing Persons in clauses (i) and (ii), each such Persons' respective heirs, executors, estates, and nominees, as applicable.  For the avoidance of doubt, the Imerys Affiliated Parties exclude J&J, the Rio Tinto Corporate Parties, and Cyprus.

1.1.82    1.1.79"**Imerys Cash Contribution**" is defined in accordance with Section 10.8.2.2 of the Plan.

1.1.83    1.1.80"**Imerys Contribution**" is defined in accordance with Section 10.8.2 of the Plan.

1.1.84    1.1.81"**Imerys Corporate Parties**" means Imerys S.A. and all Persons listed on Schedule I, each of which are or were Affiliates of Imerys S.A. during the time

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

that the Debtors were owned or controlled by Imerys S.A., hereto, and the successors and assigns of such Persons, solely in their capacity as such.  Schedule I is an exclusive list and does not include, among others, J&J, the Rio Tinto Corporate Parties, or Cyprus.

1.1.85    ~~1.1.82~~"**Imerys Non-Debtors**" means Imerys S.A. and its Affiliates, excluding the Debtors.

1.1.86    ~~1.1.83~~"**Imerys Plan Proponents**" means Imerys S.A., on behalf of itself and all Persons listed on Schedule II hereto, each of which Imerys S.A. has direct or indirect ownership or other control.

1.1.87    ~~1.1.84~~"**Imerys Protected Parties**" means the Imerys Corporate Parties and the Imerys Affiliated Parties.

1.1.88    ~~1.1.85~~"**Imerys Released Claims**" is defined in accordance with Section 12.2.1(b) of the Plan.

1.1.89    ~~1.1.86~~"**Imerys S.A.**" means Imerys S.A., the Debtors' parent entity.

1.1.90    ~~1.1.87~~"**Imerys Settlement**" means that certain comprehensive settlement by and among the Plan Proponents, the terms of which are set forth and implemented herein.

1.1.91    ~~1.1.88~~"**Imerys Settlement Funds**" means at least $177.5 million, made up of: (i) $75 million, consisting of Cash and the Talc PI Note, plus (ii) ~~100% of~~ the Sale Proceeds, plus (iii) a contingent purchase price enhancement of up to $102.5 million, subject to the Cash value of the Sale Proceeds.

1.1.92    ~~1.1.89~~"**Impaired**" means a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.1.93    ~~1.1.90~~"**Indirect Talc Personal Injury Claim**" means a Talc Personal Injury Claim of any corporation (as defined in section 101(9) of the Bankruptcy Code), co-defendant of a Debtor, or predecessor of a Debtor for contribution, reimbursement, subrogation, or indemnity, whether contractual or implied by law (as those terms are defined by applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Talc Personal Injury Claim of any corporation (as defined in section 101(9) of the Bankruptcy Code), co-defendant of a Debtor, or predecessor of a Debtor, whether in the nature of or sounding in contract, tort, warranty, or other theory of law.  For the avoidance of doubt, an Indirect Talc Personal Injury Claim shall not include any claim for or otherwise relating to death, injury, or damages caused by talc or a product or material containing talc that is asserted by or on behalf of any injured individual, the estate, legal counsel, relative, assignee, or other representative of any injured individual, or an individual who claims injury or damages as a result of the injury or death of another individual regardless of whether such claim is seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative, or any other costs or damages, or any legal, equitable or other relief whatsoever, including pursuant to a settlement, judgment, or verdict.  By way of illustration and not limitation, an Indirect Talc Personal Injury Claim

11

shall not include any claim for loss of consortium, loss of companionship, services and society, or wrongful death.  Indirect Talc Personal Injury Claims shall be resolved by the Talc Personal Injury Trust in accordance with the Talc Personal Injury Trust Documents.

1.1.94    1.1.91"**Information Officer**" means Richter Advisory Group Inc., in its capacity as the information officer appointed by the Canadian Court in the Canadian Proceeding.

1.1.95    1.1.92"**Injunctions**" means the Discharge Injunction, the Channeling Injunction, the Supplemental Settlement Injunction Order, the Insurance Entity Injunction, the Release Injunction, and any other injunctions entered by the Bankruptcy Court or the District Court in connection with Confirmation of the Plan.

1.1.96    1.1.93"**Insurance Entity Injunction**" means the injunction described in Section 12.3.2 of the Plan.

1.1.97    1.1.94"**Insured Non-Talc Claim**" means a Non-Talc Claim that is alleged to be covered by an insurance policy issued or allegedly issued by a Non-Talc Insurance Company.

1.1.98    1.1.95"**Intercompany Claim**" means (a) any Debtor Intercompany Claim or (b) any Non-Debtor Intercompany Claim.

1.1.99    1.1.96"**Intercompany Loan**" means that certain outstanding loan payable from the Imerys Non-Debtors to the North American Debtors in the amount of approximately $18,600,000 14,100,000 as of July August 31, 2020.

1.1.100    1.1.97"**Internal Revenue Code**" or "**Tax Code**" means title 26 of the United States Code, 26 U.S.C. §§ 1 *et seq.*, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

1.1.101    1.1.98"**ITA**" means Imerys Talc America, Inc., a Delaware corporation.

1.1.102    1.1.99"**ITA Stock**" means all of the outstanding shares of stock of ITA, 100% of which is held by Imerys Minerals Holding Limited.

1.1.103    1.1.100"**ITC**" means Imerys Talc Canada Inc., a Canadian corporation.

1.1.104    1.1.101"**ITC Stipulated Claim**" means any superpriority administrative expense claim held by ITC against ITA arising as a result of the ITC Stipulated Order.

1.1.105    1.1.102"**ITC Stipulated Order**" means that certain *Order Approving Stipulation and Agreement Permitting Imerys Talc Canada Inc. to Make Payments to Imerys Talc America, Inc. for Non-Debtor Professional Fees*, entered on March 26, 2020 [Docket No. 1578].

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

1.1.106    ~~1.1.103~~"**ITC Stock**" means all of the outstanding shares of stock of ITC, 100% of which is held by Mircal S.A., a Non-Debtor Affiliate.

1.1.107    ~~1.1.104~~"**ITI**" means Imerys Talc Italy S.p.A., an Italian corporation.

1.1.108    ~~1.1.105~~"**ITI Causes of Action**" means any and all Estate Causes of Action (other than Talc Personal Injury Trust Causes of Action and Talc Insurance Actions) owned or held, or assertable by or on behalf of ITI or its Estate that are not otherwise released pursuant to the Plan.

1.1.109    ~~1.1.106~~"**ITI Claim**" means any Non-Talc Claim against ITI.

1.1.110    ~~1.1.107~~"**ITI Stock**" means all of the outstanding shares of (i) stock of ITI or (ii) if on or after the Effective Date, Reorganized ITI, the majority of which is held by Mircal Italia.

1.1.111    ~~1.1.108~~"**ITV**" means Imerys Talc Vermont, Inc., a Vermont corporation.

1.1.112    ~~1.1.109~~"**ITV Stock**" means all of the outstanding shares of stock of ITV, 100% of which is held by ITA.

1.1.113    ~~1.1.110~~"**J&J**" means Johnson & Johnson, Johnson & Johnson Baby Products Company, Johnson & Johnson Consumer Companies, Inc., Johnson & Johnson Consumer <u>Inc., Johnson & Johnson Consumer Products,</u> Inc., and each of their past and present parents, subsidiaries and Affiliates, direct and indirect equity holders, and the successors and assigns of each, excluding the Debtors and the Imerys Non-Debtors.

1.1.114    ~~1.1.111~~"**J&J Indemnification Obligations**" means any and all indemnity rights of the Debtors, the Protected Parties, and the Imerys Non-Debtors against J&J for ~~J&J~~ Talc <u>Personal Injury</u> Claims, including, without limitation, pursuant to: (i) that certain Agreement, between Cyprus Mines Corporation and Johnson & Johnson, dated as of January 6, 1989; (ii) that certain Talc Supply Agreement, between Windsor Minerals Inc. and Johnson & Johnson Baby Products Company, a division of Johnson & Johnson Consumer Products, Inc., dated as of January 6, 1989; (iii) that certain Supply Agreement between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc., dated as of April 15, 2001; (iv) that certain Material Purchase Agreement, between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc., dated as of January 1, 2010; (v) that certain Material Purchase Agreement, between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc., dated as of January 1, 2011; <u>and/or</u> (vi) ~~the J&J Protocol Order; and/or (vii)~~ any other applicable agreement, order, or law.

<u>1.1.115</u>    ~~1.1.112~~"**J&J Indemnification Rights and Obligations**" means (i) the J&J Indemnification Obligations and (ii) any and all indemnification ~~obligations that the Debtors owe J&J for liability arising from talc supplied by the Debtors (or their predecessors) in any periods.  For the avoidance of doubt,~~ <u>rights of J&J against the Debtors and the other Protected Parties for Talc Personal Injury Claims, if any,</u> *provided, however,* <u>that</u> the J&J Indemnification Rights and Obligations do not include any claim by J&J to indemnification, defense, contribution, or any other right to recovery against any Rio Tinto

Protected Party or any Zurich Protected Party , or under any Rio Tinto Captive Insurer Policy or any Zurich Policy, arising out of or relating to any Talc Personal Injury Claim, including, without limitation, J&J's rights, if any, under any Zurich Policy and/or any Rio Tinto Captive Insurer Policy. .

1.1.113    "**J&J Protocol**" means the protocol by which J&J will assume the defense of and indemnify the Debtors for the J&J Talc Claims as more fully described in the J&J Protocol Order.

1.1.114    "**J&J Protocol Order**" means: (i) the *Order Pursuant to 11 U.S.C. §§ 105(a) and 362(d), Fed. R. Bankr. P. 4001, and Local Rule 4001-1 Modifying Automatic Stay to Permit J&J to Send Notice Assuming Defense of Certain Talc Claims and Implement Talc Litigation Protocol* [Docket No. [_____]]; (ii) the Confirmation Order; and/or (iii) such other order entered by the Bankruptcy Court establishing J&J's indemnification obligations for J&J Talc Claims and implementing the J&J Protocol.

1.1.115    "**J&J Talc Claims**" means all Direct Talc Personal Injury Claims against a Debtor where plaintiffs allege use of talcum powder products distributed by J&J, provided the claim has not reached a final resolution (*e.g.*, no settlement has been reached and no non-appealable final judgment has been entered against a Debtor in a court of competent jurisdiction).

1.1.116    "**KEIP/KERP Payments**" means those certain payments to participants in the Debtors' key employee incentive plan and/or key employee retention plan as authorized by the Bankruptcy Court pursuant to the *Order Approving Debtors' Key Employee Retention Program* [Docket No. 1259] and the *Order Approving Debtors' Revised Key Employee Incentive Program* [Docket No. 1787].

1.1.117    "**Lien**" has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code.

1.1.118    "**Mircal Italia**" means Mircal Italia S.p.A., a Non-Debtor Affiliate.

1.1.119    "**Non-Debtor Affiliate**" means an Affiliate of any Debtor other than Imerys S.A. or one of the other Debtors.

1.1.120    "**Non-Debtor Intercompany Claim**" means any Claim (including Claims related to setoff rights) held against a Debtor by Imerys S.A. or a Non-Debtor Affiliate that is a direct or indirect subsidiary of Imerys S.A. other than (i) Administrative Claims and (ii) claims related to Postpetition Intercompany Transactions (as such term is defined in the Final Cash Management Order) made pursuant to the Final Cash Management Order, *provided* that Imerys S.A. or a Non-Debtor Affiliate that is a direct or indirect subsidiary of Imerys S.A. shall have no Administrative Claim on account of the Contingent Contribution except where Imerys S.A. is entitled to reimbursement on account of any unused portions of the Contingent Contribution that Imerys S.A. contributed pursuant to Section 10.8.2.2 of the Plan.

14

1.1.121    "**Non-Talc Causes of Action**" means the North American Debtor Causes of Action and the ITI Causes of Action.

1.1.122    "**Non-Talc Claim**" means any Claim that is not a Talc Personal Injury Claim.

1.1.123    "**Non-Talc Insurance Assets**" means any Non-Talc Insurance Policies, or settlements thereof, that afford the Debtors indemnity or insurance coverage solely with respect to any Insured Non-Talc Claims.

1.1.124    "**Non-Talc Insurance Company**" means any insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association or any other Entity, other than a Talc Insurance Company, that may have liability under a Non-Talc Insurance Policy.

1.1.125    "**Non-Talc Insurance Policies**" means any insurance policy, other than a Talc Insurance Policy, issued to or that provides or may provide coverage at any time to the Debtors or under which the Debtors have sought or may seek coverage including, without limitation, any such policy for directors' and officers' liability, general liability, workers' compensation, and any excess or umbrella policy, and all agreements, documents, or instruments relating thereto.

1.1.126    "**North American Debtor Causes of Action**" means any and all Estate Causes of Action (other than Talc Personal Injury Trust Causes of Action and Talc Insurance Actions) owned or held, or assertable by or on behalf of any North American Debtor or their Estates that are not otherwise released pursuant to the Plan.

1.1.127    "**North American Debtor Claim**" means any Non-Talc Claim against any or all of the North American Debtors.

1.1.128    "**North American Debtor Stock**" means the ITA Stock, the ITV Stock, and the ITC Stock.

1.1.129    "**North American Debtors**" means ITA, ITV, and ITC.

1.1.130    "**PBGC**" means Pension Benefit Guaranty Corporation.

1.1.131    "**Pension Liabilities**" means the obligation to pay the pension benefits accrued by the employees of the North American Debtors with respect to their service with the Debtors (and any ERISA Affiliates of the Debtors) as of the Effective Date.

1.1.132    "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other Entity.

1.1.133    "**Petition Date**" means February 13, 2019, and, with respect to ITI, the date on which ITI files its petition for relief commencing its Chapter 11 Case.

1.1.134  "**Plan**" means this *Second Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* filed by the Plan Proponents, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code and consistent with the Imerys Settlement.  The Plan shall be in form and substance acceptable to each of the Plan Proponents.

1.1.135  "**Plan Cure and Assumption Notice**" is defined in accordance with Section 5.3.3 of the Plan.

1.1.136  "**Plan Documents**" means the Plan, the Disclosure Statement, the Plan Supplement, and all of the exhibits and schedules attached to any of the foregoing (including, without limitation and for the avoidance of doubt, the Talc Personal Injury Trust Documents and the Cooperation Agreement).

1.1.137  "**Plan Proponents**" means, collectively, the Debtors, the Tort Claimants' Committee, the FCR, and the Imerys Plan Proponents.

1.1.138  "**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed by the Debtors no later than twenty-one (21) days prior to the earlier of (i) the deadline for submission of ballots to vote to accept or reject the Plan, or (ii) the deadline to object to Confirmation of the Plan, unless otherwise ordered by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court before the Effective Date as amendments, modifications, or supplements to the Plan Supplement, including the following: (a) the list of Executory Contracts and Unexpired Leases to be assumed by the North American Debtors, together with the Cure Amount for each such contract or lease; (b) the list of Executory Contracts and Unexpired Leases to be assumed by ITI, together with the Cure Amount for each such contract or lease; (c) a list of the Executory Contracts and Unexpired Leases to be rejected by ITI; (d) a list of the Settling Talc Insurance Companies; (e) a list of the North American Debtor Causes of Action; (f) a list of the ITI Causes of Action; (g) a list of the Contributed Indemnity and Insurance Interests; (h) the Cooperation Agreement; (i) the Amended Charter Documents; (j) the list of officers and directors of the Reorganized North American Debtors; (k) the Talc PI Note; (l) the Talc PI Pledge Agreement; (m) the identity of the initial Talc Trustees; (n) a list of the initial members of the Talc Trust Advisory Committee; (o) a list of the Talc Insurance Policies; and (p) the Rio Tinto/Zurich Settlement Agreement; *provided* that the Plan Documents listed in subsections ~~d, g, h, i, j, k, l~~(d), (g), (h), (i), (j), (k), (l), and ~~o~~(o) shall be in form and substance acceptable to each of the Plan Proponents; *provided further* that the Plan Documents listed in subsections (a), (b), and (c) will be revised as needed, subject to Article V of the Plan, to take into account any additional Executory Contracts and Unexpired Leases to be assumed or rejected in advance of the Confirmation Hearing.

1.1.139  "**Post-Effective Date Liabilities**" is defined in accordance with Section 4.13 of the Plan.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

1.1.140    "**Priority Non-Tax Claim**" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim, a Priority Tax Claim, or a Fee Claim.

1.1.141    "**Priority Tax Claim**" means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.1.142    "**Professional**" means any person retained or to be compensated pursuant to sections 327, 328, 330, 524(g)(4)(B)(i), or 1103 of the Bankruptcy Code, including, without limitation, any professional retained by the Tort Claimants' Committee and/or the FCR.

1.1.143    "**Proof of Claim**" means any proof of claim filed with the Bankruptcy Court or the Claims Agent pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002 that asserts a Claim against any of the Debtors.

1.1.144    "**Protected Party**" means any of the following:

(a)    the Debtors and any Person who served as a director or officer of any Debtor at any time during the Chapter 11 Cases, but solely in such Person's capacity as such;

(b)    the Reorganized Debtors;

(c)    the Imerys Protected Parties;

(d)    any Person, except for the Talc Personal Injury Trust, that, pursuant to the Plan or otherwise, after the Effective Date, becomes a direct or indirect transferee of, or successor to, the Debtors, the Reorganized Debtors, or any of their respective assets (but only to the extent that liability is asserted to exist as a result of its becoming such a transferee or successor);

(e)    the Buyer (but only to the extent that liability is asserted to exist as a result of its becoming a transferee or successor to the Debtors);

(f)    the Settling Talc Insurance Companies; and

(g)    the Rio Tinto Protected Parties.

1.1.145    "**Release Injunction**" is defined in accordance with <u>Section 12.2.3</u> of the Plan.

1.1.146    "**Released Parties**" means each of: (a) the Imerys Protected Parties; (b) the Debtors; (c) the Reorganized Debtors; (d) the Tort Claimants' Committee and the individual members thereof (in their capacities as such); (e) the FCR; (f) the Information Officer; (g) the Rio Tinto Protected Parties; and (h) to the fullest extent permitted by applicable law, with respect to each of the foregoing Persons in clauses (b) through (f), each such Person's Representatives.

17

1.1.147    "**Releasing Claim Holder**" means, collectively, (a) all holders of Claims that vote to accept the Plan; (b) all holders of Claims that are presumed to accept the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases provided for in the Plan, (d) all holders of Claims entitled to vote for or against the Plan who do not vote for or against the Plan and do not opt out of the releases provided for in the Plan, except for those holders of Claims whose solicitation packages were returned to the Debtors or their agent(s) as undeliverable and those holders of Claims that were not sent a solicitation package because a prior mailing sent to them in the Chapter 11 Cases was returned as undeliverable, in each case, unless such holders have notice of the Chapter 11 Cases; and (e) with respect to each of the foregoing Persons in clauses (a) through (d), such Persons' respective predecessors, successors, and assigns, each in their capacity as such.

1.1.148    "**Reorganized Debtors**" means the Reorganized North American Debtors and Reorganized ITI.

1.1.149    "**Reorganized ITA**" means ITA, renamed Ivory America, Inc., on and after the Effective Date.

1.1.150    "**Reorganized ITA Stock**" means one hundred percent (100%) of the shares of common stock of Reorganized ITA.

1.1.151    "**Reorganized ITC**" means ITC, renamed Ivory Canada, Inc., on and after the Effective Date.

1.1.152    "**Reorganized ITC Stock**" means one hundred percent (100%) of the shares of common stock of Reorganized ITC.

1.1.153    "**Reorganized ITI**" means ITI, on and after the Effective Date.

1.1.154    "**Reorganized ITV**" means ITV, renamed Ivory Vermont, Inc., on and after the Effective Date.

1.1.155    "**Reorganized ITV Stock**" means one hundred percent (100%) of the shares of common stock of Reorganized ITV.

1.1.156    "**Reorganized North American Debtor Cash Reserve**" means an amount, funded from Cash on hand of the North American Debtors and/or the Imerys Cash Contribution (excluding the Contingent Contribution), as of the Effective Date, subject to input from and consent by each of the Plan Proponents, equal to: (i) the Allowed Amount of Priority Tax Claims against the North American Debtors; (ii) the Allowed Amount of Priority Non-Tax Claims against the North American Debtors; (iii) the Allowed Amount of all Secured Claims against the North American Debtors; (iv) the Allowed Amount of all Debtor Intercompany Claims against the North American Debtors; (v) the Allowed Amount of all Unsecured Claims against the North American Debtors; and (vi) an estimate by the North American Debtors of additional post-Effective Date obligations that the Reorganized North American Debtors may incur, including, but not limited to, (a) amounts necessary to compensate the Disbursing Agent and cover costs incurred by the Disbursing

Agent in implementing the Plan, (b) amounts necessary to enforce all rights to commence and pursue, as appropriate, any and all North American Debtor Causes of Action, and (c) amounts due in respect of the Canadian Proceeding related to the post-Effective Date period. For the avoidance of doubt, the Reorganized North American Debtor Cash Reserve shall not be funded by the Administrative Claim Reserve, the Fee Claim Reserve, the Imerys Settlement Funds, the assets of ITI, or the assets of Reorganized ITI, nor shall ITI Claims be satisfied from the Reorganized North American Debtor Cash Reserve.

1.1.157    "**Reorganized North American Debtor Stock**" means the Reorganized ITA Stock, the Reorganized ITV Stock, and the Reorganized ITC Stock, which shall be deemed authorized and issued on the Effective Date as described in Section 10.6 of the Plan.

1.1.158    "**Reorganized North American Debtors**" means Reorganized ITA, Reorganized ITV, and Reorganized ITC.

1.1.159    "**Representatives**" means with respect to any Person, such Person's (a) successors, permitted assigns, subsidiaries, and controlled affiliates, (b) present officers and directors, principals, members, employees, financial advisors, attorneys, accountants, investment bankers, consultants, experts, and other professionals, and (c) respective heirs, executors, estates, and nominees, in each case solely in their capacity as such.

1.1.160    "**Reserves**" means (a) the Administrative Claim Reserve; (b) Disputed Claims Reserve; (c) the Fee Claim Reserve; and (d) the Reorganized North American Debtor Cash Reserve.

1.1.161    "**Rio Tinto**" means Rio Tinto America Inc.

1.1.162    "**Rio Tinto Captive Insurer Policies**" means any and all Talc Insurance Policies issued by the Rio Tinto Captive Insurers, including, but not limited to the Talc Insurance Policies listed on Schedule III. For the avoidance of doubt, the Rio Tinto Captive Insurer Policies shall not include any policy to the extent such policy provides reinsurance to any Zurich Protected Party.

1.1.163    "**Rio Tinto Captive Insurers**" means Three Crowns Insurance Company Limited, Metals & Minerals Insurance Company Pte. Ltd., and Falcon Insurance Ltd., collectively or individually, as appropriate.

1.1.164    "**Rio Tinto Cash Contribution**" means $80 million, which Rio Tinto will contribute, or cause to be contributed, to the Talc Personal Injury Trust.

1.1.165    "**Rio Tinto Corporate Parties**" means Rio Tinto plc, Rio Tinto Limited, and the Persons listed on Schedule IV, each of which is directly or indirectly controlled by Rio Tinto plc and/or Rio Tinto Limited, and the future successors or assigns of Rio Tinto plc, Rio Tinto Limited, and/or the Persons listed on Schedule IV, solely in their capacity as such.

19

1.1.166    "**Rio Tinto Protected Parties**" means (a) the Rio Tinto Corporate Parties; (b) direct or indirect shareholders of the Rio Tinto Corporate Parties; (c) current and former officers, directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, insurers, investment bankers, consultants, representatives, experts, and other professionals of the Rio Tinto Corporate Parties; and (d) the respective heirs, executors, and estates, as applicable, of each Person listed in clauses (b) and (c), and, as to each Person listed in clauses (a), (b), (c) or (d), solely in their capacity as such.  For the avoidance of doubt, the Rio Tinto Protected Parties exclude the Debtors, the Imerys Protected Parties, Cyprus, and J&J.

1.1.167    "**Rio Tinto/Zurich Contribution**" means, collectively, (a) the Rio Tinto Cash Contribution, (b) the Zurich Cash Contribution, and (c) the Rio Tinto/Zurich Credit Contribution.

1.1.168    "**Rio Tinto/Zurich Credit Contribution**" is defined in accordance with Section 10.9.2.1 of the Plan.

1.1.169    "**Rio Tinto/Zurich Released Claims**" is defined in accordance with Section 12.2.1(c) of the Plan.

1.1.170    "**Rio Tinto/Zurich Settlement**" means that certain comprehensive settlement set forth in the Plan and the Rio Tinto/Zurich Settlement Agreement and implemented by the Plan by and among: (i) Rio Tinto, on behalf of itself and the Rio Tinto Captive Insurers, and for the benefit of the Rio Tinto Protected Parties, and Zurich, on behalf of itself and for the benefit of the Zurich Protected Parties, on the one hand, and (ii) the Debtors, on the other hand, and consented to by the Tort Claimants' Committee and the FCR, pursuant to which, in exchange for the Rio Tinto/Zurich Contribution, the Rio Tinto Protected Parties, the Rio Tinto Captive Insurers, and the Zurich Protected Parties receive the benefit of the Channeling Injunction and other protections set forth herein and in the Rio Tinto/Zurich Settlement Agreement.

1.1.171    "**Rio Tinto/Zurich Settlement Agreement**" means the Settlement Agreement and Release among Rio Tinto, the Rio Tinto Captive Insurers, and Zurich, on the one hand, and the Debtors, on the other hand, providing for, *inter alia*, the free and clear sale, pursuant to section 363 of the Bankruptcy Code, of any and all rights and interests of the Debtors in the Rio Tinto Captive Insurer Policies and the Zurich Policies, in substantially the form contained in the Plan Supplement.

1.1.172    "**Rio Tinto/Zurich Trigger Date**" means the date that the Tort Claimants' Committee or the Talc Personal Injury Trust provides Rio Tinto and/or Zurich (as applicable) with notice of the occurrence of the later of (a) the Effective Date, or (b) the date the Affirmation Order becomes a Final Order.

1.1.173    "**Sale**" means one or more sales consisting of substantially all of the assets of the North American Debtors to the Buyer pursuant to an Asset Purchase Agreement, in each case with the consent or consultation rights of the Tort Claimants'

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

Committee and the FCR set forth in the Sale Motion, which sale is authorized by order of the Bankruptcy Court.

1.1.174    "**Sale Cure Notice**" is defined in accordance with Section 5.3.2 of the Plan.

1.1.175    "**Sale Motion**" means the *Debtors' Motion for Entry of Orders (I) (A) Establishing Bidding Procedures, Assumption and Assignment Procedures, and Stalking Horse Procedures for Sale of Substantially All Assets, (B) Scheduling Auction and Sale Hearing, and (C) Approving Form and Manner of Notice Thereof, (II) Approving Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*, filed on May 15, 2020.

1.1.176    "**Sale Order**" means the order approving the Sale or Sales in form and substance acceptable to the Debtors, the Tort Claimants' Committee, and the FCR, or a Final Order of the Bankruptcy Court approving the Sale or Sales.

1.1.177    "**Sale Proceeds**" means the net proceeds from the Sale.

1.1.178    "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs of the North American Debtors as filed on the Docket in accordance with section 521 of the Bankruptcy Code, as such schedules and statements may be amended or supplemented from time to time.

1.1.179    "**Secured Claim**" means a Claim or any portion thereof: (a) secured by a Lien on property in which a particular Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order, to the extent of the value of the creditor's interest in such Estate's interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code, (b) subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff as determined pursuant to section 506(a) of the Bankruptcy Code, or (c) Allowed as secured pursuant to the Plan or any Final Order as a secured Claim.

1.1.180    "**Settled Talc Insurance Policy**" means any Talc Insurance Policy that is released pursuant to a Talc Insurance Settlement Agreement.

1.1.181    "**Settling Talc Insurance Company**" means, solely with respect to Settled Talc Insurance Policies:

(a)    the Zurich Protected Parties;

(b)    the Rio Tinto Captive Insurers;

(c)    prior to the Effective Date, any other Talc Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Talc Personal Injury Trust and is designated, with the consent of the Debtors, the Tort

21

Claimants' Committee, and the FCR, in the Confirmation Order and/or the Affirmation Order, to be a Settling Talc Insurance Company; and

(d)    following the Effective Date, each Talc Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Talc Personal Injury Trust and is designated as a Settling Talc Insurance Company by the Talc Personal Injury Trust, the Talc Trust Advisory Committee, and the FCR; *provided*, *however*, that any post-Effective Date addition to the list of Protected Parties does not become effective until entry of a Final Order approving the addition.

1.1.182   "**Shared Talc Insurance Policy**" means the Talc Insurance Policy issued by XL Insurance Company Ltd. to the Imerys Non-Debtors and the Debtors, Policy No. FR00003071LI13A, for the policy period of January 1, 2013 to December 31, 2014, and the Talc Insurance Policies issued by XL Insurance America, Inc. to Imerys USA, Inc. for the policy periods of January 1, 2011 through January 1, 2015, and any other insurance policy currently or previously in effect at any time on or before the Effective Date naming the Debtors (or any predecessor, subsidiary, or past or present Affiliate of the Debtors) as an insured (whether as the primary or additional insured, or by virtue of being a subsidiary to the named insured), or otherwise alleged to afford the Imerys Non-Debtors' insurance coverage, upon which any claim could have been, has been or may be made with respect to any Talc Personal Injury Claim, except that such insurance policies will not include any insurance policy that contains an exclusion expressly applicable to bodily injury arising in whole or in part out of exposure to talc, or talc-containing dust that has caused or allegedly caused ovarian cancer.

1.1.183   "**Supplemental Settlement Injunction Order**" means the injunction described in Section 12.4 of the Plan.

1.1.184   "**Talc In-Place Insurance Coverage**" means all of the rights, benefits or insurance coverage under any Talc Insurance Policy or any Talc Insurance CIP Agreement that is not a Settled Talc Insurance Policy, including the right to payment or reimbursement of liability, indemnity, or defense costs arising from or related to Talc Personal Injury Claims or Talc Personal Injury Trust Expenses.

1.1.185   "**Talc Insurance Action**" means any claim, cause of action, or right of the Debtors, or any one of them, under the laws of any jurisdiction, against any Talc Insurance Company with respect to any Talc Personal Injury Claim, arising from or related to: (a) any such Talc Insurance Company's failure to provide coverage or otherwise pay under Talc In-Place Insurance Coverage, (b) the refusal of any Talc Insurance Company to compromise and settle any Talc Personal Injury Claim under or pursuant to any Talc Insurance Policy, or Talc Insurance CIP Agreement, (c) the interpretation or enforcement of the terms of any Talc Insurance Policy or Talc Insurance CIP Agreement with respect to any Talc Personal Injury Claim, (d) any conduct by a Talc Insurance Company constituting "bad faith," conduct that could give rise to extra-contractual damages, or other wrongful conduct under applicable law, or (e) any other claims under, arising out of or relating to a Talc Insurance Policy, a Talc Insurance CIP Agreement, or Talc In-Place

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

Insurance Coverage, including, but not limited, to the lawsuit styled as *Columbia Casualty Company, et al. v. Cyprus Mines Corporation, et al.*, Case No. CGC-17-560919, Superior Court of the State of California, County of San Francisco, and the lawsuit styled as *Imerys Talc America, Inc. et al. v. Cyprus Amax Minerals Company et al.*, Adv. Pro. No. 19-50115 (LSS), U.S. Bankruptcy Court for the District of Delaware.

1.1.186   "**Talc Insurance Action Recoveries**" means (a) Cash derived from and paid pursuant to a Talc Insurance Settlement Agreement, (b) Cash derived from and paid pursuant to a Talc Insurance CIP Agreement entered into after February 13, 2019, attributable to any Talc Personal Injury Claim other than reimbursement for payments made on account of Talc Personal Injury Claims prior to February 13, 2019, (c) the right to receive proceeds of Talc In-Place Insurance Coverage (including any receivables), and (d) the right to receive the proceeds or benefits of any Talc Insurance Action.

1.1.187   "**Talc Insurance CIP Agreement**" means (a) any settlement agreement existing by and among any Talc Insurance Company and one or more of the Debtors, that amends, modifies, replaces, or governs the rights and obligations of, and the coverage afforded to, any or all of the Debtors under any Talc Insurance Policy, other than a Talc Insurance Settlement Agreement, or (b) any settlement agreement with a Talc Insurance Company relating to any Talc Personal Injury Claim entered into by the Debtors prior to the Petition Date.

1.1.188   "**Talc Insurance Company**" means any insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that may have liability under a Talc Insurance Policy.

1.1.189   "**Talc Insurance Policy**" means any insurance policy currently or previously in effect at any time on or before the Effective Date naming the Debtors (or any predecessor, subsidiary, or past or present Affiliate of the Debtors) as an insured (whether as the primary or additional insured, or by virtue of being a subsidiary to the named insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been or may be made with respect to any Talc Personal Injury Claim, including, but not limited to, the policies included in the Plan Supplement, Schedule III, and Schedule VI.   Notwithstanding the foregoing, Talc Insurance Policies shall not include any policy providing reinsurance to any Settling Talc Insurance Company.

1.1.190   "**Talc Insurance Settlement Agreement**" means (a) the Rio Tinto/Zurich Settlement Agreement and (b) any other settlement agreement entered into after the Petition Date by and among any Talc Insurance Company and one or more of the Debtors, and consented to by the Tort Claimants' Committee and the FCR, in which a Talc Insurance Policy and/or the Debtors' rights thereunder with respect to Talc Personal Injury Claims are released.

1.1.191   "**Talc Insurer Coverage Defense**" means all rights and defenses that any Talc Insurance Company may have under any Talc Insurance Policy and applicable law with respect to a claim seeking insurance coverage or to a Talc Insurance Action, but Talc Insurer Coverage Defenses do not include any defense that the Plan or any of the other

Plan Documents do not comply with the Bankruptcy Code. Upon entry of the Confirmation Order in the Chapter 11 Cases determining that the Bankruptcy Code authorizes the Assignment by preempting any terms or provisions of the Talc Insurance Policies that any Talc Insurance Company asserts or may assert otherwise prohibits the Assignment, a Talc Insurer Coverage Defense shall not include any defense that the Assignment is prohibited by the Talc Insurance Policies or applicable non-bankruptcy law.

    1.1.192    "**Talc Personal Injury Claim**" means any Claim and any Talc Personal Injury Demand against one or more of the Debtors or any other Protected Party whether known or unknown, including with respect to any manner of alleged bodily injury, death, sickness, disease or alleged disease process, emotional distress, fear of cancer, medical monitoring, or any other alleged personal injuries (whether physical, emotional or otherwise), directly or indirectly arising out of or relating to the presence of or exposure to talc or talc-containing products based on the alleged pre-Effective Date acts or omissions of the Debtors or any other ~~entity~~ Entity for whose conduct the Debtors have or are alleged to have liability (but only to the extent such Claim or Talc Personal Injury Demand directly or indirectly arises out of or relates to the alleged pre-Effective Date acts or omissions of the Debtors), including, without limitation any claims directly or indirectly arising out of or relating to: (a) any products previously mined, processed, manufactured, sold (including, without limitation, any Sale pursuant to the Sale Order) and/or distributed by the Debtors or any other ~~entity~~ Entity for whose conduct the Debtors have or are alleged to have liability, but in all cases only to the extent of the Debtors' liability; (b) any materials present at any premises owned, leased, occupied or operated by any ~~entity~~ Entity for whose products, acts, omissions, business or operations the Debtors have, or are alleged to have, liability; or (c) any talc in any way connected to the Debtors alleged to contain asbestos or other ~~contaminates~~constituent. Talc Personal Injury Claims include all such claims, whether: (1) in tort, contract, warranty, restitution, conspiracy, contribution, indemnity, guarantee, subrogation, or any other theory of law, equity or admiralty, whether brought, threatened or pursued in any United States court or court anywhere in the world; (2) seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative or any other costs, fees, injunctive or similar relief or any other measure of damages; (3) seeking any legal, equitable or other relief of any kind whatsoever, including, for the avoidance of doubt, any claims arising out of or relating to the presence of or exposure to talc or talc-containing products assertable against one or more Debtors or any other Protected Party ~~by Cyprus in the Chapter 11 Cases~~; or (4) held by claimants residing within the United States or in a foreign jurisdiction. Talc Personal Injury Claims also include any such claims that have been resolved or are subject to resolution pursuant to any agreement, or any such claims that are based on a judgment or verdict. Talc Personal Injury Claims do not include any claim by any present or former employee of a predecessor or Affiliate of the Debtors for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer. For the avoidance of doubt, the term "~~"~~Talc Personal Injury Claim~~"~~ includes, without limitation (i) all claims, debts, obligations, or liabilities for compensatory damages (such as, without limitation, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages; and (ii) Indirect Talc Personal Injury Claims. Notwithstanding the foregoing, Talc Personal Injury Claims do not

24

include any claim that a Settling Talc Insurance Company may have against its reinsurers and/or retrocessionaires in their capacities as such, and nothing in the Plan, the Plan Documents, or the Confirmation Order shall impair or otherwise affect the ability of a Settling Talc Insurance Company to assert any such claim against its reinsurers and/or retrocessionaires in their capacities as such.

1.1.193   "**Talc Personal Injury Demand**" means a ~~present or future~~ demand for payment ~~,~~, present or future, against one or more of the Debtors or any ~~one of them~~other Protected Party that (A) falls within the meaning of "demand" in section 524(g) of the Bankruptcy Code; (B) (i) manifests after the Effective Date, ~~that~~ (ii) arises out of the same or similar conduct or events that gave rise to a Claim that is a Talc Personal Injury Claim, and (iii) is caused or allegedly caused by any constituent other than asbestos; and/or (C) (i) was not a Claim prior to the Effective Date ~~;~~, (ii) arises out of the same or similar conduct or events that gave rise to a Claim that is a Talc Personal Injury Claim ~~;~~, and (iii) ~~pursuant to the Plan,~~ is to be resolved ~~by~~ pursuant to the terms of the Talc Personal Injury Trust ~~in accordance with the Trust Distribution Procedures~~.

1.1.194   "**Talc Personal Injury Trust**" means the Ivory America Personal Injury Trust established pursuant to the Talc Personal Injury Trust Agreement, which is a "qualified settlement fund" within the meaning of Treasury Regulations issued under Section 468B of the Internal Revenue Code.

1.1.195   "**Talc Personal Injury Trust Agreement**" means that certain trust agreement, substantially in the form ~~to be~~ attached hereto as Exhibit B.

1.1.196   "**Talc Personal Injury Trust Assets**" means the following assets and any income, profits, and proceeds derived from such assets subsequent to the transfer of such assets to the Talc Personal Injury Trust: (a) the Imerys Settlement Funds; (b) the right to receive the Rio Tinto/Zurich Contribution pursuant to the Rio Tinto/Zurich Settlement; (c) all Cash held by the North American Debtors as of the Effective Date, not including the Cash used to fund the Reserves; (d) all non-Cash assets included in the Imerys Contribution, including the Contributed Indemnity and Insurance Interests; (e) the Talc Personal Injury Trust Causes of Action and any and all proceeds thereof; (f) the Talc Insurance Actions; (g) the Talc Insurance Action Recoveries; (h) the rights of the Debtors with respect to Talc Insurance Policies, Talc Insurance CIP Agreements, Talc Insurance Settlement Agreements, and Claims thereunder; (i) the Reorganized North American Debtor Stock; (j) all Cash remaining in the Reserves, if any, to be distributed to the Talc Personal Injury Trust in accordance with ~~Section 10.13 of~~ the Plan, *provided that* any Cash remaining in the Fee Claim Reserve or the Administrative Claim Reserve after all Fee Claims and Administrative Claims have been satisfied pursuant to ~~Sections 2.1 and 2.3 of~~ the Plan that is attributable to the Contingent Contribution, shall be disbursed with fifty percent (50%) distributed to the Talc Personal Injury Trust and fifty percent (50%) distributed to Imerys S.A.; ~~and~~ (k) any and all other funds, proceeds, or other consideration otherwise contributed to the Talc Personal Injury Trust pursuant to the Plan and/or the Confirmation Order or other order of the Bankruptcy Court; (l) the rights of the Debtors with respect to the J&J Indemnification Obligations; and (m) the income or earnings realized or received in respect to items (a) to (l) above.

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

1.1.197  "**Talc Personal Injury Trust Causes of Action**" means, any Estate Cause of Action, not otherwise expressly released pursuant to the Plan, attributable to: (a) all defenses to any Talc Personal Injury Claim, including, but not limited to, all defenses under section 502 of the Bankruptcy Code, (b) with respect to any Talc Personal Injury Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted, (c) any other claims or rights with respect to Talc Personal Injury Claims that the Debtors would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Talc Personal Injury Claim had asserted it by initiating civil litigation against any such Debtor, and (d) any claim, cause of action, or right of the Debtors or any one of them, under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to any payments made by the Debtors on account of Talc Personal Injury Claims prior to the Petition Date.

1.1.198  "**Talc Personal Injury Trust Documents**" means the Talc Personal Injury Trust Agreement, the Trust Distribution Procedures, the Cooperation Agreement, and all other agreements, instruments, and documents governing the establishment, administration, and operation of the Talc Personal Injury Trust, which shall be substantially in the form set forth as exhibits hereto or in the Plan Supplement, as they may be amended or modified from time to time in accordance with their terms and the Plan.  The Plan Proponents shall have consent rights over the Cooperation Agreement.  With respect to the Talc Personal Injury Trust Agreement and the Trust Distribution Procedures, (i) prior to the Effective Date, the Debtors and Imerys S.A. shall have consultation rights as to the form and substance of such documents and (ii) after the Effective Date, the Plan Proponents shall have consent rights over modifications to such documents to the extent such modifications will materially impact the scope and the terms of the releases and injunctions included in Article XII of the Plan.

1.1.199  "**Talc Personal Injury Trust Expenses**" means any liabilities, costs, or expenses of, or imposed upon, or in respect of, the Talc Personal Injury Trust once established (except for payments to holders of Talc Personal Injury Claims on account of such Claims).  Talc Personal Injury Trust Expenses shall also expressly include (a) any and all liabilities, costs, and expenses incurred subsequent to the Effective Date in connection with the Talc Personal Injury Trust Assets (including, without limitation, the prosecution of any Talc Personal Injury Trust Causes of Action and Talc Insurance Actions), in each case whether or not any such action results in a recovery for the Talc Personal Injury Trust and (b) the reasonable documented costs and expenses incurred by the Reorganized Debtors in taking any action on behalf of or at the direction of the Talc Personal Injury Trust, if any, including, without limitation, any costs and expenses incurred by the Reorganized Debtors in being named as a defendant in any Talc Insurance Action.

1.1.200  "**Talc PI Note**" means that certain note to be issued by Imerys S.A. and guaranteed by ITI in favor of the Talc Personal Injury Trust in the amount of $500,000.00.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

1.1.201    "**Talc PI Pledge Agreement**" means the Pledge Agreement to be issued by Mircal Italia pursuant to which the Talc Personal Injury Trust will be granted an Encumbrance entitling the Talc Personal Injury Trust to fifty-one percent (51%) of the common stock of ITI in the event of default under the Talc PI Note.

1.1.202    "**Talc Trust Advisory Committee**" means the committee appointed and serving in accordance with <u>Section 4.4</u> of the Plan, and having the powers, duties and obligations set forth in the Talc Personal Injury Trust Agreement.

1.1.203    "**Talc Trust Advisory Committee Member**" means any member of the Talc Trust Advisory Committee.

1.1.204    "**Talc Trust Contribution**" is defined in accordance with <u>Section 10.8.2.3</u> of the Plan.

1.1.205    "**Talc Trustee**" means an individual appointed by the Bankruptcy Court to serve as a trustee of the Talc Personal Injury Trust pursuant to the terms of the Plan and the Talc Personal Injury Trust Agreement or who subsequently may be appointed pursuant to the terms of the Talc Personal Injury Trust Agreement.

1.1.206    "**Tort Claimants' Committee**" means the official committee of tort claimants in the Debtors' Chapter 11 Cases appointed by the United States Trustee, as such committee is reconstituted from time to time.

1.1.207    "**Trust Distribution Procedures**" means the Talc Personal Injury Trust Distribution Procedures, substantially in the form ~~to be~~ attached hereto as <u>Exhibit A</u>.

1.1.208    "**Unexpired Lease**" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.209    "**Unimpaired**" means a Claim or Equity Interest, or a Class of Claims or Equity Interests, that is not Impaired under the Plan.

1.1.210    "**United States Trustee**" means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in the District of Delaware.

1.1.211    "**Unsecured Claim**" means a Claim against one or more of the Debtors that is not an Administrative Claim, a Priority Non-Tax Claim, a Priority Tax Claim, a Secured Claim, a Talc Personal Injury Claim, or an Intercompany Claim.

1.1.212    "**Unsecured Claim Contribution**" is defined in accordance with <u>Section 10.8.2.2</u> of the Plan.

1.1.213    "**Voting Procedures**" means those certain procedures and supplemental procedures approved by the Bankruptcy Court for soliciting and tabulating the votes to accept or reject the Plan cast by holders of Claims against and Equity Interests in the Debtors entitled to vote on the Plan.

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

1.1.214    "**Voting Procedures Order**" means, the order entered by the Bankruptcy Court, which, among other things, (i) fixes Talc Personal Injury Claims in the amounts designated in the Trust Distribution Procedures, solely for voting purposes and not for allowance or distribution purposes, and (ii) approves the Voting Procedures.

1.1.215    "**Zurich**" means Zurich American Insurance Company, in its own capacity and as successor-in-interest to Zurich Insurance Company, U.S. Branch.

1.1.216    "**Zurich Cash Contribution**" means $260 million, which Zurich will contribute, or cause to be contributed, to the Talc Personal Injury Trust.

1.1.217    "**Zurich Corporate Parties**" means Zurich and all Persons listed on Schedule V hereto, and the future successors and assigns of such Persons, solely in their capacity as such.  Schedule V is an exclusive list and does not include, among others, the Debtors, the Imerys Protected Parties, Cyprus, and J&J.

1.1.218    "**Zurich Policies**" means any and all Talc Insurance Policies issued by the Zurich Corporate Parties, including but not limited to the Talc Insurance Policies listed on Schedule VI.  For the avoidance of doubt, the Zurich Policies shall not include any policy to the extent such policy provides reinsurance to any Rio Tinto Captive Insurer.

1.1.219    "**Zurich Protected Parties**" means (a) the Zurich Corporate Parties; (b) direct or indirect shareholders of Zurich; (c) current and former officers, directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, insurers, consultants, representatives, experts, and other professionals of the Zurich Corporate Parties; and (d) with respect to each of the foregoing Persons in clauses (b) and (c), each such Persons' respective heirs, executors, estates, and nominees, as applicable and, as to each Person listed in clauses (a), (b), (c), and (d), solely in their capacity as such.  For the avoidance of doubt, the Zurich Protected Parties exclude the Debtors, the Imerys Protected Parties, Cyprus, and J&J.

1.2    Interpretation; Application of Definitions; Rules of Construction; and Computation of Time.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender will include the masculine, feminine, and neuter.  Unless otherwise specified, all Article, Section, Schedule, or Exhibit references in the Plan are to the respective article or section of, or schedule or exhibit to, the Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code will apply to the construction of the Plan.  Unless otherwise stated herein, all references to dollars mean United States dollars.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) will apply.  The words "including" or "includes" shall be without limitation.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

1.3     Exhibits.  All exhibits and schedules to the Plan, to the extent not annexed hereto and any agreements referred to herein and therein will be available for review following their filing with the Bankruptcy Court on (a) the Court's website: www.deb.uscourts.gov, and (b) the website maintained by the Debtors' Claims Agent at https://primeclerk.com/imerystalc.

1.4     Ancillary Documents.  Each of the schedules and exhibits to the Plan (whether annexed hereto or included in the Plan Supplement), the Disclosure Statement and supplements thereto, and the schedules and exhibits to the Disclosure Statement and the supplements thereto are an integral part of the Plan, and are hereby incorporated by reference and made a part of the Plan, including, without limitation, the Talc Personal Injury Trust Agreement, the Trust Distribution Procedures, the Cooperation Agreement, the Amended Charter Documents, and the other Plan Documents.

# ARTICLE II
## TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS, AND PRIORITY TAX CLAIMS

2.1     Administrative Claims.

2.1.1     Allowed Administrative Claims.  Holders of Allowed Administrative Claims (other than Fee Claims, which are governed by Section 2.3 of the Plan) shall receive Cash equal to the unpaid portion of such Allowed Administrative Claims on the Distribution Date, in full satisfaction, settlement, release, and discharge of and in exchange for such Claims, or such amounts and on such other terms as may be agreed to by the holders of such Claims and the Debtors or the Reorganized Debtors, as the case may be; *provided*, *however*, that Allowed Administrative Claims representing liabilities incurred on or after the Petition Date in the ordinary course of business by any of the Debtors shall be paid by the Debtors or the Reorganized Debtors, as the case may be, in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto.  All Allowed Administrative Claims (other than Fee Claims) shall be paid from funds held in the Administrative Claim Reserve, which shall be funded from Cash on hand, and/or the Imerys Cash Contribution (excluding the Unsecured Claim Contribution).  The Reorganized Debtors will be entitled to transfer excess funds from the Fee Claim Reserve (after all Allowed Fee Claims have been satisfied in full) and the Reorganized North American Debtor Cash Reserve (excluding all funds attributable to the Unsecured Claim Contribution) to the Administrative Claim Reserve as they deem necessary or appropriate, on notice to the FCR and the Tort Claimants' Committee, to enable them to satisfy their obligations herein.

2.1.2     Administrative Claims Bar Date.  Except as otherwise provided in this Article II, requests for payment of Administrative Claims (other than Fee Claims and Claims against the North American Debtors arising under section 503(b)(9) of the Bankruptcy Code), must be filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than sixty (60) days after the Effective Date.  Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred,

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

estopped, and enjoined from asserting such Administrative Claims against, as applicable, the Debtors or the Reorganized Debtors, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be filed and served on the Reorganized Debtors and the requesting party, as applicable, no later than ninety (90) days after the Effective Date, unless otherwise authorized by the Bankruptcy Rules or Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order, including all Administrative Claims expressly Allowed under the Plan. For the avoidance of doubt and in accordance with, and furtherance of, the terms of the ITC Stipulated Order, any ITC Stipulated Claim shall be (i) automatically disallowed upon entry of the Confirmation Order and (ii) deemed discharged upon the Effective Date, without any further action required.

2.1.3    Disputed Administrative Claims. If a Disputed Administrative Claim is thereafter Allowed in whole or in part, the Disbursing Agent shall (at such time as determined to be practicable by the Reorganized Debtors) distribute from the Administrative Claim Reserve, to the holder of such Administrative Claim, the Cash that such holder would have received on account of such Claim if such Administrative Claim had been an Allowed Administrative Claim on the Effective Date. When (i) all Disputed Administrative Claims against the Reorganized Debtors have been resolved and (ii) Distributions required to be made by the Reorganized Debtors pursuant to this Section 2.1 and Section 2.3 have been made, all Cash remaining in the Administrative Claim Reserve shall be disbursed to the Talc Personal Injury Trust, *except* that any Cash remaining in the Administrative Claim Reserve after all Allowed Administrative Claims have been satisfied pursuant to this Section 2.1 and all Allowed Fee Claims have been satisfied pursuant to Section 2.3 that is attributable to the Contingent Contribution, shall be disbursed with fifty percent (50%) distributed to the Talc Personal Injury Trust and fifty percent (50%) distributed to Imerys S.A.

2.2    Allowed Priority Tax Claims. On the Distribution Date, holders of Allowed Priority Tax Claims shall receive Cash equal to the amount of such Allowed Priority Tax Claims, in full satisfaction, settlement, release, and discharge of and in exchange for such Claims unless the holder of such claim agrees to an alternative treatment.

2.3    Fee Claims.

2.3.1    All final fee requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered to the Debtors, the Tort Claimants' Committee, or the FCR, all Fee Claims of members of the Tort Claimants' Committee for reimbursement of expenses, and all requests or Claims under section 503(b)(4) of the Bankruptcy Code, must be filed and served on the Reorganized Debtors and other parties required to be served by the Compensation Procedures Order by no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Any objections to a final Fee Claim or any requests or claims under section 503(b)(4) of the Bankruptcy Code must be filed by no later than twenty (20) days after the filing of such Claim. The terms of the Compensation Procedures Order shall govern the allowance and payment of any final Fee

Claims submitted in accordance with this <u>Section 2.3</u> of the Plan.  The Fee Examiner appointed under the Fee Examiner Order shall continue to act in this appointed capacity unless and until all final Fee Claims have been approved by order of the Bankruptcy Court, and the Reorganized Debtors shall be responsible to pay the fees and expenses incurred by the Fee Examiner in rendering services after the Effective Date.

2.3.2    The amount of the Fee Claims owing to the Professionals on and after the Effective Date shall be paid in Cash to such Professionals from funds held in the Fee Claim Reserve, which shall be funded from Cash on hand and/or the Imerys Cash Contribution (excluding the Unsecured Claim Contribution), as soon as reasonably practicable after such Claims are Allowed by a Bankruptcy Court order.  The Reorganized Debtors will be entitled to transfer excess funds from the Administrative Claim Reserve (after all Allowed Administrative Claims have been satisfied in full) and the Reorganized North American Debtor Cash Reserve (excluding all funds attributable to the Unsecured Claim Contribution) to the Fee Claim Reserve as they deem necessary or appropriate, on notice to the FCR and the Tort Claimants' Committee, to enable them to satisfy their obligations herein.  When all Allowed Fee Claims and Allowed Administrative Claims have been paid in full, amounts remaining in the Fee Claim Reserve, if any, shall revert to the Talc Personal Injury Trust, *except* that any Cash remaining in the Fee Claim Reserve after all Allowed Fee Claims have been satisfied pursuant to this <u>Section 2.3</u> and all Allowed Administrative Claims have been satisfied pursuant to <u>Section 2.1</u> that is attributable to the Contingent Contribution, shall be disbursed with fifty percent (50%) distributed to the Talc Personal Injury Trust and fifty percent (50%) distributed to Imerys S.A.

## ARTICLE III
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

3.1    <u>Grouping of the Debtors for Convenience</u>.  The Plan groups the Debtors together solely for the purposes of describing treatment under the Plan, Confirmation of the Plan, and making Distributions.  Unless set forth in the Plan, this grouping shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets.  The Plan is not premised upon and shall not cause the substantive consolidation of the Debtors, and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

3.2    <u>Claims and Equity Interests Classified</u>.  For purposes of organization, voting, and all Plan confirmation matters, and except as otherwise provided herein, all Claims (other than Administrative Claims, Fee Claims, and Priority Tax Claims) against and Equity Interests in the Debtors are classified as set forth in this Article III of the Plan.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Fee Claims described in Article II of the Plan, have not been classified and are excluded from the following Classes.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest falls within the description of such Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Equity Interest falls within the description of such other Class or Classes.  Notwithstanding anything to the contrary contained

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

in the Plan, no Distribution shall be made on account of any Claim that is not an Allowed Claim for distribution purposes.

3.3    Treatment and Classification of Claims and Equity Interests.  For purposes of all Plan confirmation matters, including, without limitation, voting on, Confirmation of, and Distributions under, the Plan, and except as otherwise provided herein, all Claims against (other than Administrative Claims, Fee Claims, and Priority Tax Claims, which are not classified) and Equity Interests in the Debtors shall be classified and treated in the manner set forth below.

| Class | Designation | Treatment | Entitlement to Vote | Estimated Recovery |
|-------|-------------|-----------|---------------------|--------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |
| 3a | Unsecured Claims against the North American Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |
| 3b | Unsecured Claims against ITI | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |
| 4 | Talc Personal Injury Claims | Impaired | Entitled to Vote | Unknown |
| 5a | Non-Debtor Intercompany Claims | Impaired | Not Entitled to Vote (Presumed to Accept) | 0% |
| 5b | Debtor Intercompany Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |
| 6 | Equity Interests in the North American Debtors | Impaired | Not Entitled to Vote (Presumed to Accept) | Cancelled |
| 7 | Equity Interests in ITI | Unimpaired | Not Entitled to Vote (Presumed to Accept) | Reinstated |

### 3.3.1    Class 1 – Priority Non-Tax Claims

(a)    Classification: Class 1 consists of all Priority Non-Tax Claims against the Debtors.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

(b)     Treatment: On the Distribution Date, each holder of an Allowed Class 1 Priority Non-Tax Claim shall receive Cash equal to the Allowed Amount of such Priority Non-Tax Claim.

(c)     Voting: Class 1 is Unimpaired and each holder of an Allowed Claim in Class 1 is presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Each holder of an Allowed Claim in Class 1 is not entitled to vote to accept or reject the Plan.

### 3.3.2     Class 2 – Secured Claims

(a)     Classification: Class 2 consists of all Secured Claims against the Debtors.

(b)     Treatment: All Allowed Secured Claims in Class 2 will be treated pursuant to one of the following alternatives on the Distribution Date: (i) payment in full in Cash in accordance with section 506(a) of the Bankruptcy Code; (ii) reinstatement pursuant to section 1124 of the Bankruptcy Code; (iii) such other treatment as the Debtor and the holder shall agree; or (iv) such other treatment as may be necessary to render such Claim Unimpaired.

(c)     Voting: Class 2 is Unimpaired and each holder of an Allowed Claim in Class 2 is presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Each holder of an Allowed Claim in Class 2 is not entitled to vote to accept or reject the Plan.

### 3.3.3     Class 3a – Unsecured Claims against the North American Debtors

(a)     Classification: Class 3a consists of all Unsecured Claims against the North American Debtors.

(b)     Treatment: Each holder of an Allowed Unsecured Claim against the North American Debtors shall be paid the Allowed Amount of its Unsecured Claim on the Distribution Date.  Such payment shall be (i) in full, in Cash, plus post-petition interest at the federal judgment rate in effect on the Petition Date, or (ii) upon such other less favorable terms as may be mutually agreed upon between the holder of such Unsecured Claim and the applicable North American Debtor or Reorganized North American Debtor.

(c)     Voting: Class 3a is Unimpaired and each holder of an Allowed Claim in Class 3a is presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Each holder of an Allowed Claim in Class 3a is not entitled to vote to accept or reject the Plan.

### 3.3.4     Class 3b – Unsecured Claims against ITI

(a)     Classification: Class 3b consists of all Unsecured Claims against ITI.

(b)    Treatment: The legal, equitable, and contractual rights of the holders of Unsecured Claims against ITI are unaltered by the Plan. Except to the extent that a holder of an Unsecured Claim against ITI agrees to a different treatment, on and after the Effective Date, Reorganized ITI will continue to pay or dispute each Unsecured Claim in the ordinary course of business in accordance with applicable law.

(c)    Voting: Class 3b is Unimpaired and each holder of an Allowed Claim in Class 3b is presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Each holder of an Allowed Claim in Class 3b is not entitled to vote to accept or reject the Plan.

3.3.5    **Class 4 – Talc Personal Injury Claims**

(a)    Classification: Class 4 consists of all Talc Personal Injury Claims. For the avoidance of doubt, Class 4 consists of Direct Talc Personal Injury Claims and Indirect Talc Personal Injury Claims.

(b)    Treatment: On the Effective Date, liability for all Talc Personal Injury Claims shall be channeled to and assumed by the Talc Personal Injury Trust without further act or deed and shall be resolved in accordance with the Trust Distribution Procedures. Pursuant to the Plan and Trust Distribution Procedures, each holder of a Talc Personal Injury Claim shall have its Claim permanently channeled to the Talc Personal Injury Trust, and such Claim shall thereafter be ~~asserted exclusively against the Talc Personal Injury Trust and~~ resolved in accordance with the Trust Distribution Procedures. On the Effective Date, all Talc Personal Injury Claims that were filed in the Chapter 11 Cases shall be expunged from the Claims Register as provided in <u>Section 11.9</u>.

(c)    Voting: Class 4 is Impaired and each holder of an Allowed Claim in Class 4 is entitled to vote to accept or reject the Plan.

3.3.6    **Class 5a – Non-Debtor Intercompany Claims**

(a)    Classification: Class 5a consists of all Non-Debtor Intercompany Claims.

(b)    Treatment: On or after the Effective Date, all Non-Debtor Intercompany Claims shall be canceled, discharged, or eliminated.

(c)    Voting: Class 5a is Impaired. Each holder of an Allowed Claim in Class 5a has consented to its treatment under the Plan as a Plan Proponent and is therefore presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Each holder of an Allowed Claim in Class 5a is not entitled to accept or reject the Plan.

3.3.7    **Class 5b – Debtor Intercompany Claims**

(a)    Classification: Class 5b consists of all Debtor Intercompany Claims.

34

(b)      Treatment: At the election of the applicable Debtor, each Debtor Intercompany Claim shall (i) be reinstated, (ii) remain in place, and/or (iii) with respect to certain Debtor Intercompany Claims in respect of goods, services, interest, and other amounts that would have been satisfied in Cash directly or indirectly in the ordinary course of business had they not been outstanding as of the Petition Date, be settled in Cash.

(c)      Voting: Class 5b is Unimpaired and each holder of an Allowed Claim in Class 5b is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Each holder of a Claim in Class 5b is not entitled to accept or reject the Plan.

### 3.3.8      Class 6 – Equity Interests in the North American Debtors

(a)      Classification: Class 6 consists of all Equity Interests in the North American Debtors.

(b)      Treatment: On the Effective Date, all Equity Interests in the North American Debtors shall be canceled, annulled, and extinguished.

(c)      Voting: Class 6 is Impaired.  Each holder of an Allowed Class 6 Equity Interest has consented to its treatment under the Plan as a Plan Proponent and is therefore presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Each holder of an Allowed Equity Interest in Class 6 is not entitled to vote to accept or reject the Plan.

### 3.3.9      Class 7 – Equity Interests in ITI

(a)      Classification: Class 7 consists of all Equity Interests in ITI.

(b)      Treatment: On the Effective Date, all Equity Interests in ITI shall be reinstated and the legal, equitable, and contractual rights to which holders of Equity Interests in ITI are entitled shall remain unaltered to the extent necessary to implement the Plan.

(c)      Voting: Class 7 is Unimpaired and each holder of an Allowed Class 7 Equity Interest is presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Each holder of an Allowed Equity Interest in Class 7 is not entitled to vote to accept or reject the Plan.

3.4      Debtors' Rights with Respect to Unimpaired Claims.  Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Reorganized Debtors with respect to any Unimpaired Claims, including all rights with respect to legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

## ARTICLE IV
## THE TALC PERSONAL INJURY TRUST

4.1    <u>Establishment of the Talc Personal Injury Trust</u>.  On the Effective Date, the Talc Personal Injury Trust shall be created in accordance with the Plan Documents.  The Talc Personal Injury Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Tax Code.

4.2    <u>Purpose and Trust Distribution Procedures</u>.

4.2.1    The purposes of the Talc Personal Injury Trust shall be to assume all Talc Personal Injury Claims and to use the Talc Personal Injury Trust Assets and, among other things: (a) to preserve, hold, manage, and maximize the assets of the Talc Personal Injury Trust; and (b) to direct the processing, liquidation, and payment of all compensable Talc Personal Injury Claims in accordance with the Talc Personal Injury Trust Documents.  The Talc Personal Injury Trust will resolve Talc Personal Injury Claims in accordance with the Talc Personal Injury Trust Documents in such a way that holders of Talc Personal Injury Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims, and otherwise comply in all respects with the requirements of section 524(g)(2)(B)(i) of the Bankruptcy Code.

4.2.2    In the event of a conflict between the terms or provisions of the Plan and the Talc Personal Injury Trust Documents, the terms of the Plan shall control.

4.3    <u>Selection of the Initial Talc Trustees</u>.  There shall be [ – ] initial Talc Trustees.  The initial Talc Trustees of the Talc Personal Injury Trust shall be the persons identified in the Plan Supplement.  All successor Talc Trustees shall be appointed in accordance with the terms of the Talc Personal Injury Trust Agreement.  For purposes of performing their duties and fulfilling their obligations under the Talc Personal Injury Trust Agreement and the Plan, each Talc Trustee shall be deemed to be (and the Confirmation Order shall provide that it is) a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code.  The Tort Claimants' Committee and the FCR shall jointly select the initial Talc Trustees.

4.4    <u>Advising the Talc Personal Injury Trust</u>.

4.4.1    <u>The Talc Trust Advisory Committee</u>.  The Talc Trust Advisory Committee shall be established pursuant to the Talc Personal Injury Trust Agreement.  The initial Talc Trust Advisory Committee shall have [ ___ ] members and shall have the functions, duties, and rights provided in the Talc Personal Injury Trust Agreement.  Each member of the Talc Trust Advisory Committee shall serve in accordance with the terms and conditions contained in the Talc Personal Injury Trust Agreement.  The Tort Claimants' Committee alone shall select the [ ___ ] initial members of the Talc Trust Advisory Committee, who will be identified in the Plan Supplement.

4.4.2    <u>Successor Talc Trust Advisory Committee Members</u>.  Successor Talc Trust Advisory Committee Members shall be appointed pursuant to the terms of the Talc Personal Injury Trust Agreement.

36

4.4.3    FCR.  From and after the Effective Date, the FCR shall continue to serve in that capacity as an advisor to the Talc Personal Injury Trust and shall have the functions, duties and rights provided in the Talc Personal Injury Trust Agreement.  Any expenses incurred by the FCR in this capacity shall constitute Talc Personal Injury Trust Expenses.

4.5    Transfer of Claims and Demands to the Talc Personal Injury Trust.

4.5.1    On the Effective Date, the Talc Personal Injury Trust shall assume the liabilities, obligations, and responsibilities of the Debtors for all Talc Personal Injury Claims, financial or otherwise, including, but not limited to, Indirect Talc Personal Injury Claims without further action of any Entity.  This assumption shall not affect (i) the application of the Discharge Injunction and the Channeling Injunction to the Debtors or; (ii) J&J's obligations under the J&J Protocol Order or any Talc Insurance Company's obligation under any Talc Insurance Policy; or (iii) the J&J Indemnification Obligations.

4.5.2    Except as otherwise expressly provided in the Plan, the Talc Personal Injury Trust Agreement, or the Trust Distribution Procedures, the Talc Personal Injury Trust shall have control over the Talc Personal Injury Trust Causes of Action and the Talc Insurance Actions, and the Talc Personal Injury Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with the exclusive right to enforce each of the Talc Personal Injury Trust Causes of Action and Talc Insurance Actions, and the proceeds of the recoveries on any of the Talc Personal Injury Trust Causes of Action or the Talc Insurance Actions shall be deposited in and become the property of the Talc Personal Injury Trust and the Talc Personal Injury Trust shall have the right to enforce the Plan and any of the other Plan Documents (including, but not limited to, the Cooperation Agreement) according to their respective terms, including the right to receive the Talc Personal Injury Trust Assets as provided in the Plan; *provided*, *however*, (a) the Talc Personal Injury Trust shall have no other rights against the Reorganized Debtors or the Protected Parties except to enforce the Plan and any of the other Plan Documents; (b) the Talc Personal Injury Trust Causes of Action and the Talc Insurance Actions shall not include any of the Talc Insurer Coverage Defenses; (c) the Talc Personal Injury Trust Causes of Action and the Talc Insurance Actions shall not include any claims fully and finally released, compromised, or settled pursuant to the Plan; and (d) for the avoidance of doubt, the Talc Personal Injury Trust Causes of Action and the Talc Insurance Actions do not include any rights of the Debtors, the Reorganized Debtors, or the other Protected Parties arising under the Channeling Injunction or any of the other injunctions, releases, or the discharge granted under the Plan and the Confirmation Order.

4.6    Transfer of Talc Personal Injury Trust Assets to the Talc Personal Injury Trust.

4.6.1    Transfers on the Effective Date.  On the Effective Date, subject to Section 4.6.2, all right, title, and interest in and to the Talc Personal Injury Trust Assets (including the Sale Proceeds) and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Talc Personal Injury Trust free and clear of all Claims, Equity Interests, Encumbrances, and other interests of any Entity, subject to the Channeling Injunction and other provisions of the Plan.  On the Effective Date, (i) Imerys S.A. and ITI shall issue and deliver the Talc PI Note to the Talc

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

Personal Injury Trust and (ii) Mircal Italia shall execute the Talc PI Pledge Agreement, such that the Talc Personal Injury Trust shall be the sole holder of the Talc PI Note.

4.6.2    Transfers After the Effective Date.  To the extent any of the Talc Personal Injury Trust Assets are not transferred to the Talc Personal Injury Trust by operation of law on the Effective Date pursuant to the Plan, then when such assets accrue or become transferable subsequent to the Effective Date, they shall automatically and immediately transfer to the Talc Personal Injury Trust.  To the extent that action of the Reorganized Debtors is required to effectuate such transfer, the Reorganized Debtors shall promptly transfer, assign, and contribute, such remaining Talc Personal Injury Trust Assets to the Talc Personal Injury Trust.  In the event the Reorganized Debtors breach any obligation contained in this section, the Talc Personal Injury Trust will have no adequate remedy at law and shall be entitled to preliminary and permanent declaratory and injunctive relief.

4.7    Talc Personal Injury Trust Expenses.  The Talc Personal Injury Trust shall pay all Talc Personal Injury Trust Expenses from the Talc Personal Injury Trust Assets, including proceeds of applicable Talc Insurance Policies.  The Talc Personal Injury Trust shall bear sole responsibility with respect to the payment of the Talc Personal Injury Trust Expenses. Additionally, the Talc Personal Injury Trust shall promptly pay all reasonable and documented Talc Personal Injury Trust Expenses incurred by the Reorganized Debtors for any and all liabilities, costs or expenses as a result of taking action on behalf of or at the direction of the Talc Personal Injury Trust.

4.8    Excess Talc Personal Injury Trust Assets.  To the extent there are any Talc Personal Injury Trust Assets remaining at such time as the Talc Personal Injury Trust is dissolved, such excess Talc Personal Injury Trust Assets shall be transferred to a charity or charities for such charitable purposes as the Talc Trustees, in their reasonable discretion, shall determine.

4.9    Dissolution of the Talc Personal Injury Trust.  The Talc Personal Injury Trust shall be dissolved upon satisfaction of the purposes of the Talc Personal Injury Trust pursuant to the Talc Personal Injury Trust Documents.  Upon dissolution of the Talc Personal Injury Trust: (a) the Talc Trustees and the Talc Trust Advisory Committee Members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Cases, and (b) the Talc Trust Advisory Committee shall be dissolved.

4.10    Funds and Investment Guidelines.  All monies held in the Talc Personal Injury Trust shall be invested, subject to the investment limitations and provisions enumerated in the Talc Personal Injury Trust Agreement.

4.11    Cooperation Agreement.  The Debtors, the Imerys Non-Debtors, and the Talc Personal Injury Trust shall enter into the Cooperation Agreement on the Effective Date in substantially the form contained in the Plan Supplement that provides for the transfer and assignment of certain documents of the Debtors to the Talc Personal Injury Trust.  The parties to the Cooperation Agreement shall be bound by the terms thereof.

38

4.12    <u>Talc Personal Injury Trust Indemnification of the Protected Parties</u>.  From and after the Effective Date, the Talc Personal Injury Trust shall indemnify, to the fullest extent permitted by applicable law, each of the Debtors, the Reorganized Debtors, and the other Protected Parties for reasonable documented out-of-pocket expenses (including, without limitation, attorney's fees and expenses) that occur after the Effective Date attributable to the defense of any Talc Personal Injury Claim asserted against the Debtors, Reorganized Debtors, or the other Protected Parties; *provided, however*, that the limit of the indemnification with respect to each of the Imerys Protected Parties, the Rio Tinto Protected Parties, and any Settling Insurance Company will be the amount contributed by such party to the Talc Personal Injury Trust~~,~~ and further provided *further*, that the Talc Personal Injury Trust shall ~~have no responsibilities for any liabilities, fees, or expenses whatsoever that are J&J Indemnification Obligations~~not indemnify any party for any alleged Foreign Claim.

4.13    <u>Post-Effective Date Liabilities</u>.    Notwithstanding anything to the contrary in the Plan Documents or the Confirmation Order, neither any claim against nor the liability of any Entity arising out of or relating to the alleged post-Effective Date acts or omissions of such Entity (each, a "**Post-Effective Date Liability**") shall be a Talc Personal Injury Claim.  No Post-Effective Date Liabilities are affected by the filing of the Chapter 11 Cases, confirmation or effectiveness of the Plan, or any of the transactions effectuated in connection therewith. To the extent an individual has both a Talc Personal Injury Claim and a claim based on any Post-Effective Date Liability, that individual may seek recovery from the Talc Personal Injury Trust in accordance with the Talc Personal Injury Trust Documents and will retain any and all rights under applicable law with respect to such Post-Effective Date Liabilities.

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5.1    <u>General Treatment</u>.

5.1.1    Subject to <u>Section 5.7</u> hereof, except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts or Unexpired Leases of the North American Debtors, shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease (i) was assumed or rejected previously by the North American Debtor counterparty thereto, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume filed on or before the Effective Date, (iv) is identified as an Executory Contract or Unexpired Lease to be assumed by the North American Debtors pursuant to the Sale Order; or (v) is identified as an Executory Contract or Unexpired Lease to be assumed by the North American Debtors in the Plan Supplement.

5.1.2    Notwithstanding the foregoing, in the event that ITI becomes a Debtor before the Effective Date, all Executory Contracts and Unexpired Leases of ITI will be assumed by ITI, except for those Executory Contracts and Unexpired Leases that (i) have been rejected by ITI by order of the Bankruptcy Court, (ii) are the subject of a motion to reject filed by ITI that is pending as of the Effective Date, (iii) are identified as Executory Contracts and Unexpired Leases to be rejected by ITI in the Plan Supplement, or (iv) are

~~US-DOCS\116913121~~US-DOCS\117851055RLF1 ~~23862447v.1~~24099286v.1

rejected or terminated by ITI pursuant to the terms of the Plan.  All Executory Contracts or Unexpired Leases to be assumed by ITI will be identified in the Plan Supplement.

5.1.3    Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumption or rejection of Executory Contracts and Unexpired Leases, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated herein or as provided for in the Sale Order, all assumptions or rejections of Executory Contracts and Unexpired Leases are effective as of the Effective Date.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party on or before the Effective Date shall (i) in the case of an Executory Contract or Unexpired Lease that is a Talc Personal Injury Trust Asset, be assigned to the Talc Personal Injury Trust on the date such trust is established or as soon as reasonably practicable thereafter, and shall vest in, and be fully enforceable by the Talc Personal Injury Trust in accordance with its terms, except as such terms may have been modified by such order, or (ii) revest in and be fully enforceable by the Reorganized Debtors, as applicable, in accordance with its terms, except as such terms may have been modified by such order.

5.1.4    Notwithstanding anything to the contrary in the Plan, but subject to the limitations provided in <u>Section 5.3</u> of the Plan, (i) the North American Debtors reserve the right to alter, amend, modify, or supplement the list of Executory Contracts and Unexpired Leases to be assumed by the North American Debtors identified in the Plan Supplement at any time before the date that is ~~fourteen (14~~sixteen (16) days prior to the Confirmation Hearing, and (ii) ITI reserves the right to alter, amend, modify, or supplement the list of Executory Contracts and Unexpired Leases to be rejected by ITI identified in the Plan Supplement and the list of Executory Contracts and Unexpired Leases to be assumed by ITI identified in the Plan Supplement at any time before the date that is ~~fourteen (14~~sixteen (16) days prior to the Confirmation Hearing, in each case, in order to take into account Executory Contracts and Unexpired Leases to be assumed or rejected in advance of the Confirmation Hearing.  After the Effective Date, the Reorganized Debtors, or any assignee, as applicable, shall have the right to terminate, amend, or modify any intercompany contracts, leases or other agreements to which they are a party without approval of the Bankruptcy Court.

5.2    <u>Claims Based on Rejection of Executory Contracts or Unexpired Leases</u>.

5.2.1    If the rejection or deemed rejection of an Executory Contract or Unexpired Lease by any Debtor (for the avoidance of doubt, including ITI) results in damages to the other party or parties to such Executory Contract or Unexpired Lease, a Claim for such damages shall be forever barred and shall not be enforceable against any of the Debtors, the Reorganized Debtors, any assignee, or their properties, whether by way of setoff, recoupment, or otherwise unless a Proof of Claim is filed with the Claims Agent and served upon counsel for the Debtors by the *earlier* of (i) thirty (30) days after service of notice of the Effective Date, and (ii) thirty (30) days after service of notice of entry of a Final Order rejecting such Executory Contract or Unexpired Lease pursuant to a motion filed by any Debtor, which notice, in each case, will set forth such deadline.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

5.2.2    Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time period provided in <u>Section 5.2.1</u> will be automatically disallowed, forever barred from assertion and shall not be enforceable, without the need for any objection, or further notice to, or action, order or approval of the Bankruptcy Court.  All Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as a Class 3a or Class 3b Unsecured Claim against the applicable North American Debtor or ITI, and shall be treated in accordance with Article III of the Plan.

5.3    <u>Cure of Defaults for Executory Contracts and Unexpired Leases</u>.

5.3.1    Notwithstanding anything to the contrary contained herein, any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Distribution Date (i) from the Administrative Claim Reserve (if assumed by one of the North American Debtors pursuant to the Plan and Plan Supplement, but for the avoidance of doubt, not if assumed by the North American Debtors pursuant to the Sale Order), or (ii) by Reorganized ITI (if assumed by ITI), subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments necessary to cure such a default, (2) the ability of the Debtors or any assignee to provide any "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

5.3.2    ~~On or prior to~~ On July ~~28, 2020 and August~~ 28, 2020, in connection with the Bid Procedures Order, the North American Debtors served on applicable contract counterparties a notice of the potential assumption and assignment of such party's Executory Contract or Unexpired Lease to a potential buyer of the Debtors' assets, the proposed Cure Amount associated with such potential assumption and assignment, and the deadline to object to the proposed Cure Amount or to the assumption and assignment of the Executory Contract or Unexpired Lease (~~as may be modified or supplemented from time to time~~each, ~~the~~ and any such supplemental notice, a "**Sale Cure Notice**").  Applicable counterparties had until that date that was fourteen (14) days after service of the Sale Cure Notice <u>identifying such counterparty</u> to object to the proposed Cure Amount.   Any counterparty to an Executory Contract or Unexpired Lease that failed to timely object to any Cure Amount in the <u>applicable</u> Sale Cure Notice is deemed to have consented to such Cure Amount.   <u>Pursuant to the Bid Procedures Order, the foregoing deadlines and requirements apply to any counterparty that is identified in any supplemental Sale Cure Notice.</u>

5.3.3    On or prior to ~~August 29~~October 13, 2020, the North American Debtors shall distribute, or cause to be distributed, (i) notices of proposed assumption to the applicable counterparty or counterparties to each Executory Contract or Unexpired Lease that may be assumed by a North American Debtor, which notices shall include procedures

41

for objecting to the proposed assumption of such Executory Contract or Unexpired Lease and the anticipated procedure for resolution of disputes by the Bankruptcy Court and (ii) notices of proposed assumption and proposed Cure Amounts to the applicable counterparty or counterparties to each Executory Contract or Unexpired Lease that may be assumed by ITI, which notices shall include procedures for objecting to the proposed assumption of such Executory Contract or Unexpired Lease and any Cure Amounts to be paid in connection therewith and the anticipated procedure for resolution of disputes by the Bankruptcy Court (the "**Plan Cure and Assumption Notice**").  Any objection to a proposed assumption by any of the North American Debtors or ITI pursuant to the Plan (including any objection as to adequate assurance of future performance) or related Cure Amount (as to ITI Executory Contracts and Unexpired Leases only) by a counterparty to an Executory Contract or Unexpired Lease must be filed, served and actually received by counsel to the Debtors and the other parties specified in the Plan Cure and Assumption Notice by ~~September 22~~November 5, 2020.  Any unresolved objection shall be heard at the Confirmation Hearing, unless otherwise agreed by the parties or at such other date and time as may be fixed by the Bankruptcy Court.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to any proposed assumption and/or Cure Amount will be deemed to have assented to such assumption and/or Cure Amount.  To the extent an Executory Contract or Unexpired Lease with ITI is not identified as an Executory Contract or Unexpired Lease to be assumed or rejected by ITI, then the Cure Amount for such Executory Contract or Unexpired Lease is $0 and such Executory Contract or Unexpired Lease will be assumed by ITI pursuant to the Plan.

5.3.4    On or before ~~September 14~~October 30, 2020, the Debtors shall serve copies of the lists of Executory Contracts and Unexpired Leases provided for in the Plan Supplement on the applicable counterparties.  In addition, the Debtors will serve any revised Executory Contract and Unexpired Lease list on affected counterparties within two (2) days of filing such lists.  ~~Each~~ *, provided that* each counterparty to an Executory Contract or Unexpired Lease that (i) is later added to the list and/or (ii) has its Cure Amount modified by the Debtors shall have until the date that is ~~ten (10~~fourteen (14) days after the Debtors serve such counterparty with notice thereof to object to the assumption of its Executory Contract or Unexpired Lease pursuant to the Plan and, if the proposed Cure Amount has been modified, exclusively to the proposed Cure Amount.

5.3.5    Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

5.4    Modifications, Amendments, Supplements, Restatements or Other Agreement.

5.4.1    Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related

thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated under the Plan.

5.4.2    Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

5.5    Reservation of Rights.    Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on (i) the list of the Executory Contracts and Unexpired Leases to be assumed by the North American Debtors, (ii) the lists of the Executory Contracts and Unexpired Leases to be assumed or rejected by ITI, as applicable, or (iii) anything contained in the Plan or Plan Supplement, shall constitute an admission by any of the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors, or any assignee has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, the Reorganized Debtors, or any assignee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

5.6    Talc Insurance Policies and Talc Insurance CIP Agreements.    Notwithstanding Section 5.1 above, all Talc Insurance Policies and Talc Insurance CIP Agreements entered into prior to the Petition Date shall be considered non-executory contracts and shall neither be assumed nor rejected by the Debtors.  Other than the permissibility of the Assignment, which is to be determined by or in connection with Confirmation of the Plan, the rights and obligations of the parties under such Talc Insurance Policies and Talc Insurance CIP Agreements, including the question of whether any breach has occurred, shall be determined under applicable law.

5.7    Non-Talc Insurance Policies.    The Debtors do not believe that the Non-Talc Insurance Policies (or settlements related thereto) constitute executory contracts.  However, to the extent such Non-Talc Insurance Policies are considered to be executory contracts, then, notwithstanding anything contained in Article V to the contrary, the Plan will constitute a motion to assume such Non-Talc Insurance Policies, and authorize the Reorganized Debtors, as applicable, to pay all future obligations, if any, in respect thereof.  Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, their respective Estates and all parties in interest. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to each such Non-Talc Insurance Policy. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the Non-Talc Insurance Assets, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

## ARTICLE VI
## DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS

6.1     Distributions.  Distributions on account of Allowed Non-Talc Claims shall be made on or after the Distribution Date as provided in the Plan.  All Talc Personal Injury Claims shall be liquidated and, as appropriate, paid, or resolved by the Talc Personal Injury Trust pursuant to and in accordance with the Talc Personal Injury Trust Agreement and the Trust Distribution Procedures.

6.2     Timing and Calculation of Amounts to be Distributed.

6.2.1     Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each holder of an Allowed Non-Talc Claim shall receive the full amount of the Distribution that the Plan provides for such Allowed Claim in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.2.2     If and to the extent that there are Disputed Non-Talc Claims, Distributions on account of any such Disputed Non-Talc Claims shall be made pursuant to the provisions set forth in this Article VI of the Plan.

6.3     Disbursing Agent.  Except as otherwise provided herein, all Distributions under the Plan shall be made by the Disbursing Agent.  The Reorganized Debtors, or any such other Entity or Entities designated by the Reorganized Debtors, shall serve as Disbursing Agent for all Non-Talc Claims.

6.4     Rights and Powers of Disbursing Agent.

6.4.1     The Disbursing Agent shall be empowered to: (i) affect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all Distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions thereof.

6.4.2     Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors from the Reorganized North American Debtor Cash Reserve.

44

6.5    Distributions on Account of Claims Allowed After the Effective Date. Notwithstanding any other provision of the Plan, no Distributions shall be made under the Plan on account of any Disputed Non-Talc Claim, unless and until such Disputed Non-Talc Claim becomes an Allowed Non-Talc Claim.  Distributions made after the Effective Date to holders of Disputed Non-Talc Claims that are not Allowed Non-Talc Claims as of the Effective Date but which later become Allowed Non-Talc Claims shall be made as if such Claim had been an Allowed Claim on the Effective Date.  Except as otherwise may be agreed to by the Debtors or the Reorganized Debtors, on the one hand, and the holder of a Disputed Non-Talc Claim, on the other hand, and notwithstanding any provision otherwise in the Plan, no partial payments and no partial Distributions shall be made with respect to any Disputed Non-Talc Claim until all Disputed Non-Talc Claims held by the holder of such Disputed Non-Talc Claim have become Allowed Non-Talc Claims or have otherwise been resolved by settlement or Final Order.

6.6    Delivery of Distributions and Undeliverable or Unclaimed Distributions.

6.6.1    Delivery of Distributions to Holders of North American Debtor Claims. Except as otherwise provided in the Plan, Distributions to holders of Allowed North American Debtor Claims shall be made to holders of record as of the Distribution Record Date by the Disbursing Agent: (a) to the signatory set forth on any of the Proof of Claim filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is filed or if the North American Debtors have been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address.

6.6.2    Delivery of Distributions to Holders of ITI Claims.  The legal, equitable, and contractual rights of the holders of ITI Claims are unaltered by the Plan.  Except to the extent that a holder of an ITI Claim agrees to a different treatment, on and after the Effective Date, Reorganized ITI will continue to pay or dispute each ITI Claim in the ordinary course of business in accordance with applicable law.

6.6.3    Full Benefit of Distributions.  Distributions under the Plan on account of Non-Talc Claims shall not be subject to levy, garnishment, attachment or similar legal process, so that each holder of an Allowed Non-Talc Claim shall have and receive the benefit of the Distributions in the manner set forth in the Plan.  None of the Debtors, the Reorganized Debtors, or the applicable Disbursing Agent shall incur any liability whatsoever on account of any Distributions under the Plan except where such Distributions are found by Final Order to have been made with gross negligence, willful misconduct or fraud.

6.6.4    Undeliverable Distributions and Unclaimed Property.  In the event that any Distribution to any holder of an Allowed Non-Talc Claim is returned as undeliverable, no further Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such Distribution shall be made as soon as practicable after such Distribution has become deliverable to such

45

holder without interest; *provided*, *however*, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of three (3) months from the applicable Distribution Date.  After such date, (i) all "unclaimed property" or interests in property in respect of the Reorganized North American Debtors shall revert to the applicable Reserve used to fund the Allowed Non-Talc Claim to be held and/or disbursed in accordance with the Plan, or, to the Reorganized North American Debtors to be used and/or disbursed in accordance with the Plan if the applicable Reserve is no longer in effect, and (ii) all "unclaimed property" or interests in property in respect of ITI shall revert to ITI (in each case, (i) and (ii), notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary).  The claim of any holder to such property or interest in property shall be discharged and forever barred.

6.7     Time Bar to Cash Payments.  Checks issued by the Disbursing Agent in respect of Allowed Non-Talc Claims shall be null and void if not cashed within one hundred and eighty (180) days of the date of issuance thereof.  The holder of the Allowed Non-Talc Claim with respect to which such check originally was issued may make a request for re-issuance of any check directly to the Disbursing Agent; *provided*, *however*, that any such request for re-issuance of a check shall be made on or before the twelve (12) month anniversary of the Distribution Date.  After such date, all Non-Talc Claims in respect of void checks shall be discharged and forever barred.

6.8     Disbursing Agent's Obligation to Provide Periodic Reporting.  The Disbursing Agent will provide quarterly reporting on the status of the claims process of the Reorganized North American Debtors including funds remaining in each of the Reserves to the Talc Personal Injury Trust, the Talc Trust Advisory Committee, the FCR, and Imerys S.A.  The first quarterly report will encompass the first three full months following the Effective Date (plus any partial month during which the Effective Date occurs).  Each report will be delivered within thirty (30) days of the conclusion of the preceding quarterly period.  These reports will not be filed with the Bankruptcy Court.

6.9     Record Date for Holders of Claims.   Except as otherwise provided in an order of the Bankruptcy Court that is not subject to any stay, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001, on or prior to the Distribution Record Date, shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.  If there is any dispute regarding the identity of the Person entitled to receive a Distribution in respect of a Claim under the Plan, no Distribution need be made in respect of such Claim until such dispute has been resolved.

6.10    Compliance with Tax Requirements and Allocations.

6.10.1   In connection with the Plan and all Distributions hereunder, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state or local taxing authority, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions including tax certification forms, or establishing any other mechanisms it believes are reasonable and appropriate.

6.10.2    For tax purposes, Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

6.11    <u>Transfers of Claims</u>.  In the event that the holder of any Claim shall transfer such Claim after the Distribution Record Date, it shall immediately advise the applicable Reorganized Debtor(s) or the Talc Personal Injury Trust (to the extent it pertains to a Talc Personal Injury Claim), in writing of such transfer and file a notice of the transfer with the Bankruptcy Court.  The Reorganized Debtors or the Talc Personal Injury Trust, as the case may be, shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until written notice of a transfer has been actually received by the applicable Reorganized Debtor(s) or the Talc Personal Injury Trust, as applicable.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan, and, except as provided in a notice of transfer, the Reorganized Debtors or the Talc Personal Injury Trust, as the case may be, shall be entitled to assume conclusively that the transferee named in any notice of transfer shall thereafter be vested with all rights and powers of the transferor of such Claim.

6.12    <u>Interest on Impaired and Disputed Claims</u>.  Except as specifically provided for herein or in the Talc Personal Injury Trust Documents (as related to Talc Personal Injury Claims), interest shall not accrue on Impaired Claims, and no holder of an Impaired Claim shall be entitled to interest accruing on or after the Petition Date on any such Impaired Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

6.13    <u>Setoffs</u>.  The Debtors and the Reorganized Debtors (or the Talc Personal Injury Trust to the extent it pertains to a Talc Personal Injury Claim) may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim (before any Distribution is made on account of such Claim) any and all claims, rights, causes of action, debts or liabilities of any nature that the Debtors or the Reorganized Debtors (or the Talc Personal Injury Trust (in its own right or as assignee of the Debtors) to the extent it pertains to a Talc Personal Injury Claim) may hold against the holder of such Allowed Claim; *provided*, *however*, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, causes of action, debts or liabilities.

## ARTICLE VII
## RESOLUTION OF DISPUTED CLAIMS OTHER THAN
## TALC PERSONAL INJURY CLAIMS

7.1    <u>Disputed Claims</u>.  All Disputed Claims against the Debtors, other than Talc Personal Injury Claims, Administrative Claims, and Fee Claims, shall be subject to the provisions of this Article VII.  All Talc Personal Injury Claims shall be resolved by the Talc Personal Injury

Trust in accordance with the Talc Personal Injury Trust Documents. All Administrative Claims and Fee Claims shall be determined and, if Allowed, paid in accordance with Article II of the Plan.

7.2     Prosecution of Claims Generally.

7.2.1    Subject to the provisions contained herein, including as set forth in Section 11.8.2 of the Plan, after the Effective Date, only the Reorganized Debtors may object to the allowance of any Non-Talc Claim, except that the United States Trustee, the FCR, the other Notice Parties (as that term is defined in the Compensation Procedures Order), and the Imerys Non-Debtors, as applicable, shall also have standing and capacity to object to the Fee Claims of the Professionals. After the Effective Date, the Reorganized Debtors shall be accorded the power and authority to allow or settle and compromise any Non-Talc Claim, except for Fee Claims, without notice to any other party or approval of or notice to the Bankruptcy Court. For the avoidance of doubt, no fees resulting from objections to the Fee Claims, other than objections by the Reorganized Debtors and/or the Fee Examiner will be funded by the Reorganized Debtors.

7.2.2    Notwithstanding anything to the contrary in this Article VII, (i) resolution of Talc Personal Injury Claims shall be handled exclusively by the Talc Personal Injury Trust in accordance with the Talc Personal Injury Trust Documents, (ii) objections to Fee Claims shall be handled in accordance with the Compensation Procedures Order, subject to Section 2.3, and (iii) objections to Administrative Claims (excluding Fee Claims) shall be handled in accordance with Section 2.1 of the Plan.

7.2.3    Notwithstanding anything to the contrary in this Article VII, objections to Non-Talc Claims against ITC shall be subject to review by the Information Officer.

7.3     Prosecution of Disputed North American Debtor Claims and Claims Objection Deadline.

7.3.1    Each Reorganized North American Debtor shall have the right, after the Effective Date, to file objections to the North American Debtor Claims that have not already been Allowed by Final Order, agreement, or the Plan, and litigate to judgment, settle, or withdraw such objections to Disputed North American Debtor Claims; *provided* that objections to and the prosecution of Non-Talc Claims against ITC shall be subject to review by the Information Officer. Without limiting the foregoing, each Reorganized North American Debtor, as applicable, shall have the right to litigate any Disputed North American Debtor Claim either in the Bankruptcy Court or in any court of competent jurisdiction.

7.3.2    Unless otherwise ordered by the Bankruptcy Court, objections to North American Debtor Claims (other than Administrative Claims, Fee Claims, or late-filed Claims) shall be filed with the Bankruptcy Court and served upon the holders of each such North American Debtor Claim to which objections are made on or before the Claims Objection Bar Date, unless extended by order of the Bankruptcy Court prior to the expiration of such period. Objections to late-filed Claims against the North American Debtors shall be filed before the later of (i) six (6) months following the Effective Date, or

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

(ii) ninety (90) days after the Reorganized North American Debtors receive actual notice of the filing of such Claim.

7.4      ITI Claims.

7.4.1      Except as otherwise provided in the Plan, holders of ITI Claims or Equity Interests in ITI shall not be required to file a Proof of Claim or proof of interest, and no such parties should file a Proof of Claim or proof of interest.  The legal equitable, and contractual rights of holders of ITI Claims are unaltered by the Plan.  Except to the extent that a holder of an ITI Claim agrees to a different treatment, on and after the Effective Date, Reorganized ITI will continue to pay or dispute each ITI Claim in the ordinary course of business in accordance with applicable law.  ITI may, in its discretion, file with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to the allowance of any ITI Claim or any other appropriate motion or adversary proceeding with respect thereto.  All such objections will be litigated to Final Order; *provided*, *however*, that ITI or Reorganized ITI, as applicable, may compromise, settle, withdraw, or resolve by any other method approved by the Bankruptcy Court any objections to ITI Claims.

7.4.2      ITI or Reorganized ITI, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to ITI Claims or Equity Interests in ITI as permitted under the Plan.  From and after the Effective Date, Reorganized ITI may settle or compromise any Disputed ITI Claim or Disputed Equity Interest in ITI without approval of the Bankruptcy Court.  ITI also reserves the right to resolve any Disputed ITI Claim or Disputed Equity Interest in ITI outside the jurisdiction of the Bankruptcy Court under applicable governing law.

7.5      Distributions on Account of Disputed Claims.  At such time as determined to be practicable by the Reorganized Debtors, the Disbursing Agent will make Distributions on account of any Disputed Claim that has become Allowed.  Such Distributions will be made pursuant to the applicable provisions of Article VI of the Plan.

7.6      No Distributions Pending Allowance.  No Distributions or other consideration shall be paid with respect to any Claim that is a Disputed Claim unless and until all objections to such Disputed Claim are resolved by agreement or Final Order and such Disputed Claim becomes an Allowed Claim.

7.7      Estimation of Claims.  The Debtors (before the Effective Date) or the Reorganized Debtors (on or after the Effective Date) may, at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim against any party or Entity, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors (before the Effective Date) or the

Reorganized Debtors (on or after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

      7.8     <u>Disputed Claims Reserve for the North American Debtors</u>.

      7.8.1     On the Effective Date, the North American Debtors shall deposit in the Disputed Claims Reserve the Cash that would have been distributed to the holders of Disputed North American Debtor Claims if such Disputed North American Debtor Claims had been Allowed Claims as of the Effective Date.  The Disputed Claims Reserve shall be funded from Cash on hand of the North American Debtors on the Effective Date and/or the Imerys Cash Contribution (excluding the Contingent Contribution).  The amount to be deposited shall be determined based on the lesser of (1) the asserted amount of the Disputed North American Debtor Claims in the applicable Proofs of Claim; (2) the amount, if any, estimated by the Bankruptcy Court pursuant to (i) section 502(c) of the Bankruptcy Code or (ii) <u>Section 7.7</u> of the Plan if, after the Effective Date, a motion is filed by any Reorganized North American Debtor to estimate such Claim; (3) the amount otherwise agreed to by the Debtors (or the Reorganized North American Debtors, if after the Effective Date) and the holders of such Disputed North American Debtor Claims; or (4) any amount otherwise approved by the Bankruptcy Court.

      7.8.2     If a North American Debtor Claim that remains a Disputed Claim as of the Effective Date is thereafter Allowed in whole or in part, the Disbursing Agent shall (at such time as determined to be practicable by the Reorganized North American Debtors) distribute from the Disputed Claims Reserve, to the holder of such North American Debtor Claim, the Cash that such holder would have received on account of such Claim if such Claim had been an Allowed Claim on the Effective Date.

      7.8.3     The Reorganized North American Debtors shall determine, on each six (6) month anniversary of the Effective Date, whether the amounts available in the Reorganized North American Debtor Cash Reserve are in excess of the amount necessary to satisfy the purpose for which such reserve was established.  If the Reorganized North American Debtors determine a surplus exists in the Reorganized North American Debtor Cash Reserve as of the date of such determination, such surplus Cash shall be allocated to the Disputed Claims Reserve to the extent such reserve is insufficiently funded to satisfy the purpose for which such reserve was established.

      7.9     <u>Disputed ITI Claims</u>.  If a Claim against ITI that remains a Disputed Claim as of the Effective Date is thereafter Allowed in whole or in part, the Disbursing Agent (at such time as determined to be practicable by Reorganized ITI) will distribute from the monies available at Reorganized ITI, to the holder of such Claim, the monies that such holder would have received on account of such Claim if such Claim had been an Allowed Claim on the Effective Date.

      7.10     <u>Distribution of Excess Amounts in the Disputed Claims Reserve for the North American Debtors</u>.  When all Disputed North American Debtor Claims are resolved and either

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

become Allowed or Disallowed, to the extent Cash remains in the Disputed Claims Reserve after all holders of such Claims have been paid the full amount they are entitled to pursuant to the treatment set forth for under the Plan, then such excess amounts will be transferred to the Talc Personal Injury Trust and become Talc Personal Injury Trust Assets, whereby such excess amounts will be made available to satisfy Talc Personal Injury Trust Expenses and for disbursement to holders of Claims in Class 4 pursuant to the Trust Distribution Procedures.

## ARTICLE VIII
## ACCEPTANCE OR REJECTION OF PLAN

8.1    <u>Classes Entitled to Vote</u>.  Holders of Talc Personal Injury Claims shall be entitled to vote to the extent and in the manner provided in the Voting Procedures Order and the Plan.

8.2    <u>Acceptance of Holders of Talc Personal Injury Claims</u>.  Pursuant to sections 1126(c) and 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code, Class 4 (Talc Personal Injury Claims) shall have accepted the Plan only if at least two-thirds (2/3) in amount and seventy-five percent (75%) of the members in Class 4 actually voting on the Plan have voted to accept the Plan.

8.3    <u>Acceptance by Unimpaired Class</u>.  Classes 1, 2, 3a, 3b, 5b, and 7 are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

8.4    <u>Acceptance by Impaired Class</u>.  Classes 5a and 6 will not receive or retain any property or distribution under the Plan and are Impaired under the Plan.  Notwithstanding, Classes 5a and 6 are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code because all holders of Claims or Equity Interests (as applicable) in Classes 5a and 6 are Plan Proponents and have consented to their treatment under the Plan.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

9.1    <u>Conditions Precedent to the Confirmation of the Plan</u>.  Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or waived pursuant to <u>Section 9.3</u> of the Plan:

9.1.1    The Bankruptcy Court shall have entered an order, acceptable in form and substance to each of the Plan Proponents approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

9.1.2    Class 4 shall have voted in requisite numbers and amounts in favor of the Plan as required by sections 524(g), 1126, and 1129 of the Bankruptcy Code.

9.1.3    The Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto, shall be consistent with (i) section 524(g) of the Bankruptcy Code, as applicable, and (ii) the other provisions of the Plan.

51

9.1.4    The Reorganized North American Debtors shall have sufficient funds from Cash on hand and/or the Unsecured Claim Contribution to resolve all Allowed Class 3a Claims and to adequately fund the Disputed Claims Reserve as determined by each of the Plan Proponents.

9.1.5    The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order and any other order in conjunction therewith, in form and substance acceptable to each of the Plan Proponents. These findings and determinations, are designed, among other things, to ensure that the Injunctions, releases and discharges set forth in Article XII shall be effective, binding and enforceable, and shall among other things, conclude:

(i)    Good Faith Compliance.  The Plan complies with all applicable provisions of the Bankruptcy Code including, without limitation, that the Plan be proposed in good faith and that the Confirmation Order not be procured by fraud.

(ii)    Voting.  Class 4 has voted in requisite numbers and amounts in favor of the Plan as required by each of sections 524(g), 1126, and 1129 of the Bankruptcy Code.

(iii)    Injunctions.    The Channeling Injunction, the Insurance Entity Injunction, and the Supplemental Settlement Injunction Order are to be implemented in connection with the Talc Personal Injury Trust.

(iv)    Named Defendants.  As of the Petition Date, one or more of the Debtors had been named as a defendant in personal injury, wrongful death or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, talc or talc-containing products.

(v)    Assumption of Certain Liabilities.  Upon the Effective Date, the Talc Personal Injury Trust shall assume the liabilities of the Protected Parties with respect to Talc Personal Injury Claims and, except as set forth in the J&J Protocol Order, have exclusive authority as of the Effective Date to satisfy or defend such Talc Personal Injury Claims.

(vi)    Funding of Talc Personal Injury Trust.  The Talc Personal Injury Trust will be funded with the Talc Personal Injury Trust Assets, including the Talc PI Note, which will be secured by a majority of the common stock of Reorganized ITI, pursuant to the Talc PI Pledge Agreement, and include the right to receive distributions on account of the Talc PI Note pursuant to the terms set forth in the Talc PI Note.

(vii)    Stock Ownership.  The Talc Personal Injury Trust, on the Effective Date, by the exercise of rights granted under the Plan, (i) will receive the Reorganized North American Debtor Stock and shall maintain the rights to receive dividends or other distributions on account of such stock, and (ii) will be entitled to own the majority of the common stock of Reorganized ITI if specific contingencies occur.

52

(viii)    Use of Talc Personal Injury Trust Assets.  The Talc Personal Injury Trust will use its assets and income to resolve Talc Personal Injury Claims.

(ix)    Likelihood of Talc Personal Injury Demands.  The Debtors are likely to be subject to substantial future Talc Personal Injury Demands for payment arising out of the same or similar conduct or events that gave rise to the Talc Personal Injury Claims that are addressed by the Channeling Injunction and the Insurance Entity Injunction.

(x)    Talc Personal Injury Demands Indeterminate.  The actual amounts, numbers, and timing of future Talc Personal Injury Demands cannot be determined.

(xi)    Likelihood of Threat to Plan's Purpose.  Pursuit of Talc Personal Injury Claims, including Talc Personal Injury Demands, outside of the procedures prescribed by the Plan and the Plan Documents, including the Trust Distribution Procedures, is likely to threaten the Plan's purpose to treat the Talc Personal Injury Claims and Talc Personal Injury Demands equitably.

(xii)    Injunctions Conspicuous.  The terms of the Discharge Injunction, the Channeling Injunction, the Supplemental Settlement Injunction Order, the Release Injunction, and the Insurance Entity Injunction, including any provisions barring actions against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement.

(xiii)    Appropriate Trust Mechanisms.  Pursuant to court orders or otherwise, the Talc Personal Injury Trust shall operate through mechanisms such as structured, periodic or supplemental payments, pro rata distributions, matrices or periodic review of estimates of the numbers and values of Talc Personal Injury Claims or other comparable mechanisms, that provide reasonable assurance that the Talc Personal Injury Trust will value, and be in a financial position to pay, Talc Personal Injury Claims that involve similar Claims in substantially the same manner regardless of the timing of the assertion of such Talc Personal Injury Claims.

(xiv)    Future Claimants' Representative.  The FCR was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Channeling Injunction, the Insurance Entity Injunction, and the Supplemental Settlement Injunction Order, for the purpose of, among other things, protecting the rights of persons that might subsequently assert Talc Personal Injury Demands of the kind that are addressed in the Channeling Injunction, the Insurance Entity Injunction, and the Supplemental Settlement Injunction Order, and transferred to and assumed by the Talc Personal Injury Trust.

(xv)    Fair and Equitable Inclusion.  The inclusion of each Debtor or other Protected Party within the protection afforded by the Channeling Injunction and the Insurance Entity Injunction, as applicable, is fair and equitable with respect to the Persons that might subsequently assert Talc Personal Injury Demands against each

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

such Debtor or other Protected Party in light of the benefits provided, or to be provided, to the Talc Personal Injury Trust by or on behalf of each such Debtor or other Protected Party.

(xvi)   Sections 105(a) and 524(g) Compliance.   The Plan complies with sections 105(a) and 524(g) of the Bankruptcy Code to the extent applicable.

(xvii)   Injunctions Essential.   The Discharge Injunction, the Channeling Injunction, the Supplemental Settlement Injunction Order, the Release Injunction, and the Insurance Entity Injunction are essential to the Plan and the Debtors' reorganization efforts.

(xviii)   Assignment Authorized.   The Bankruptcy Code authorizes the Assignment by preempting any terms of the Talc Insurance Policies, Talc Insurance CIP Agreements, Talc Insurance Settlement Agreements, or provisions of applicable non-bankruptcy law that any Talc Insurance Company may otherwise argue prohibits the Assignment.

(xix)   The Supplemental Settlement Injunction Order.   The Supplemental Settlement Injunction Order is to be implemented in connection with the Imerys Settlement and the Rio Tinto/Zurich Settlement.

(xx)   The Rio Tinto/Zurich Settlement.   The Rio Tinto/Zurich Settlement (i) represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interest of the Debtors' Estates, and otherwise complies with section 363 of the Bankruptcy Code, (ii) meets the requirements for a sale of property free and clear of any interests of third parties in such property pursuant to section 363(f) of the Bankruptcy Code, and (iii) constitutes a purchase in good faith by Zurich and the Rio Tinto Captive Insurers pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable.   The Rio Tinto/Zurich Settlement is accordingly approved pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

9.2   Conditions Precedent to the Effective Date of the Plan.   Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall occur on the first Business Day on which each of the following conditions has been satisfied or waived pursuant to Section 9.3:

9.2.1   Confirmation Order and Affirmation Order.   The Confirmation Order shall have been submitted to the District Court for affirmation on or before ~~November 30~~January 8, ~~2020~~ 2021, and the Affirmation Order in form and substance acceptable to each of the Plan Proponents shall have been entered by the District Court, and the Confirmation Order and the Affirmation Order shall have become Final Orders; *provided*, *however*, that the Effective Date may occur at a point in time when the Confirmation Order and/or the Affirmation Order are not Final Orders at the sole option of the Plan Proponents unless the effectiveness of the Confirmation Order or the Affirmation Order, as applicable,

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

has been stayed or vacated, in which case the Effective Date may be the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order or the Affirmation Order.

9.2.2    <u>Sale Order</u>.  The Sale Order shall have (i) been entered on or before the date the Confirmation Order is entered, and (ii) recognized by the Canadian Court in the Canadian Proceeding on or before a date that is no later than fourteen (14) Business Days after entry of the Sale Order by the Bankruptcy Court.

9.2.3    <u>Talc Personal Injury Trust</u>.  The Talc Personal Injury Trust Assets shall, simultaneously with the occurrence of the Effective Date, be transferred to, vested in, and assumed by the Talc Personal Injury Trust in accordance with Article IV of the Plan.

9.2.4    <u>Plan Documents</u>.  The Talc Personal Injury Trust Agreement (and related documents), and the other applicable Plan Documents necessary or appropriate to implement the Plan shall have been executed, delivered and, where applicable, filed with the appropriate governmental authorities.

9.2.5    <u>Allowed Non-Talc Claims</u>.  The Reserves shall be adequately funded as determined by each of the Plan Proponents so as to permit the Debtors to make Distributions relating to Allowed Non-Talc Claims in accordance with the Plan.

9.2.6    <u>Imerys Contribution</u>.  Imerys S.A. shall have disbursed, or satisfied all conditions of, the Imerys Contribution to the Debtors, the Reorganized North American Debtors, or the Talc Personal Injury Trust, as applicable, in accordance with Article X hereof.

9.2.7    <u>United States Trustee's Fees</u>.  The fees of the United States Trustee then owing by the Debtors shall have been paid in full.

9.2.8    <u>Ancillary Proceeding in Canada</u>.  The Canadian Court shall have entered an order in the Canadian Proceeding recognizing the Confirmation Order in its entirety and ordering the Confirmation Order and the Plan to be implemented and effective in Canada in accordance with their terms.

9.3    <u>Waiver of Conditions Precedent</u>.  To the greatest extent permitted by law, each of the conditions precedent in this Article IX may be waived or modified, in whole or in part, but only with the unanimous written consent of each of the Plan Proponents.  Any waiver or modification of a condition precedent under this <u>Section 9.3</u> may be effected at any time, without notice, without leave or order of the Bankruptcy Court or District Court, and without any other formal action.

9.4    <u>Notice of Effective Date</u>.  The Debtors shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within five (5) Business Days thereafter, which notice shall confirm that the foregoing conditions have been satisfied or waived.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

## ARTICLE X
## MEANS FOR IMPLEMENTATION OF THE PLAN

10.1    General.  On or after the Confirmation Date, each of the Plan Proponents shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement the provisions of the Plan on the Effective Date, including, without limitation, the creation of the Talc Personal Injury Trust and the preparations for the transfer of the Talc Personal Injury Trust Assets to the Talc Personal Injury Trust.

10.2    Operations of the Debtors Between Confirmation and the Effective Date.  The Debtors shall continue to operate as debtors and debtors-in-possession during the period from the Confirmation Date through and until the Effective Date.

10.3    Charter and Bylaws.

10.3.1    From and after the Effective Date, each of the Reorganized North American Debtors shall be governed pursuant to their respective Amended Charter Documents.  The Amended Bylaws and the Amended Certificates of Incorporation shall contain such provisions as are necessary to satisfy the provisions of the Plan and, to the extent necessary to prohibit the issuance of non-voting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of the Amended Charter Documents after the Effective Date, as permitted by applicable law.  On the Effective Date, ITA will change its name to Ivory America, Inc., ITV will change its name to Ivory Vermont, Inc., and ITC will change its name to Ivory Canada, Inc.

10.3.2    From and after the Effective Date, Reorganized ITI shall continue to be governed pursuant to its existing bylaws and certificate of incorporation.

10.4    Corporate Action.  On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtors, including, but not limited to, actions requiring a vote of the boards of directors or shareholders and execution of all documentation incident to the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers or directors of the Debtors.

10.5    Surrender of Existing Equity Interests.  The Plan provides that holders of Equity Interests in Class 6 shall be deemed to have surrendered such Equity Interests and other documentation underlying such Equity Interests and all such surrendered Equity Interests and other documentation shall be deemed to be canceled in accordance with Article III of the Plan.

10.6    Post-Effective Date Governance, Continued Existence of the Reorganized North American Debtors, and the Reorganized North American Debtor Stock.

10.6.1    On the Effective Date, after the Reserves have been funded and all Talc Personal Injury Trust Assets have been transferred to the Talc Personal Injury Trust (as applicable): (a) all North American Debtor Stock will be canceled, and (b) simultaneously with the cancellation of such shares, the North American Debtors will issue the Reorganized North American Debtor Stock to the Talc Personal Injury Trust.

56

10.6.2    Except as otherwise provided herein or as may be provided in the Plan Supplement or the Confirmation Order, each of the Reorganized North American Debtors shall continue their existence as separate entities after the Effective Date, with all the powers thereof, pursuant to the applicable law in the jurisdiction in which each Reorganized North American Debtor is incorporated and pursuant to the Amended Charter Documents and any other formation documents in effect following the Effective Date, and such documents are deemed to be adopted pursuant to the Plan and require no further action or approval.

10.6.3    On the Effective Date, the officers and directors of the Reorganized North American Debtors shall consist of the individuals that will be identified in the Plan Supplement.

10.6.4    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in the Reorganized North American Debtors' Estates other than property constituting Talc Personal Injury Trust Assets, including , but not limited to, all North American Debtor Causes of Action and any property acquired by the North American Debtors pursuant to the Plan, shall vest in the Reorganized North American Debtors, free and clear of all Claims, interests, Liens, other Encumbrances, and liabilities of any kind. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized North American Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, interests, or North American Debtor Causes of Action without supervision or approval by the Bankruptcy Court, or notice to any other Entity, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

10.6.5    On the Effective Date, and if applicable, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all assets of the North American Debtors that constitute Talc Personal Injury Trust Assets shall vest in the Talc Personal Injury Trust pursuant to the terms of the Plan.  The Talc Personal Injury Trust shall own such assets, as of the Effective Date, free and clear of all Claims, interests, Liens, other Encumbrances, and liabilities of any kind.

10.7    Post-Effective Date Governance and Continued Existence of Reorganized ITI.

10.7.1    On the Effective Date, Reorganized ITI shall remain a direct subsidiary of Mircal Italia and all Equity Interests in ITI shall be reinstated.  On the Effective Date, (i) Imerys S.A. and ITI shall also issue the Talc PI Note to the Talc Personal Injury Trust, and (ii) Mircal Italia shall execute the Talc PI Pledge Agreement.

10.7.2    Except as otherwise provided herein or as may be provided in the Plan Supplement or the Confirmation Order, Reorganized ITI shall continue to exist after the Effective Date as a separate corporate entity from each of the Reorganized North American Debtors, with all the powers thereof, pursuant to the applicable law in the jurisdiction in which Reorganized ITI is incorporated and pursuant to its existing bylaws and certificate of incorporation and any other formation documents in effect prior to the Petition Date,

and such documents are deemed to be adopted pursuant to the Plan and require no further action or approval.

10.7.3    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in ITI's Estate, all ITI Causes of Action, and any property acquired by ITI pursuant to the Plan, shall vest in Reorganized ITI, free and clear of all Claims, interests, Liens, other Encumbrances, and liabilities of any kind.  On and after the Effective Date, except as otherwise provided in the Plan, Reorganized ITI may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, interests, or ITI Causes of Action without supervision or approval by the Bankruptcy Court, or notice to any other Entity, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

10.8    Imerys Settlement.

10.8.1    Compromise and Settlement of Claims.

10.8.1.1    Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan effect a compromise and settlement of all Imerys Released Claims against the Imerys Protected Parties, and the Plan constitutes a request for the Bankruptcy Court to authorize and approve the Imerys Settlement, to release all of the Imerys Released Claims, including, without limitation, the Estate Causes of Action, against each of the Imerys Protected Parties.

10.8.1.2    As further described in the Disclosure Statement, the provisions of the Plan (including the release and injunctive provisions contained in Article XII of the Plan) and the other documents entered into in connection with the Plan constitute a good faith compromise and settlement among the Plan Proponents of Claims and controversies among such parties.  The Plan, including the explanation set forth in the Disclosure Statement, shall be deemed a motion to approve the Imerys Settlement and the good faith compromise and settlement of all of the Claims and controversies described in the Plan pursuant to Bankruptcy Rule 9019, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Imerys Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Imerys Settlement is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Entry of the Confirmation Order shall confirm the Bankruptcy Court's approval, as of the Effective Date of the Plan, of all components of the Imerys Settlement and the Bankruptcy Court's finding that the Imerys Settlement is in the best interests of the Debtors, their respective Estates, and is fair, equitable and reasonable.

10.8.1.3    Upon (i) satisfaction of all conditions of the Imerys Contribution in accordance with the terms of the Plan, (ii) the funding of the

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

Reserves from Cash on hand and/or the Imerys Cash Contribution, and (iii) the transfer of the Talc Personal Injury Trust Assets to the Talc Personal Injury Trust, the Plan shall be deemed to be substantially consummated, notwithstanding any contingent obligations arising from the foregoing.  For the avoidance of doubt, Imerys S.A.'s satisfaction of the Imerys Contribution is on behalf of itself and the other Imerys Protected Parties.

10.8.2    Imerys Contribution.

10.8.2.1    Imerys Settlement Funds.  On, prior to, or as soon as reasonably practicable after the Effective Date, the Imerys Non-Debtors will contribute, or cause to be contributed, the Imerys Settlement Funds to the Debtors or the Reorganized Debtors, as applicable, which the Debtors or the Reorganized Debtors, as applicable, will contribute to the Talc Personal Injury Trust upon ~~the Effective Date~~receipt.  For the avoidance of doubt, ~~all~~ the proceeds from the Sale(s) will be paid by the Buyer to the North American Debtors or the Reorganized North American Debtors, as applicable, upon the close of the Sale(s).

10.8.2.2    Imerys Cash Contribution.  On or prior to the Effective Date, the Imerys Non-Debtors will contribute, or cause to be contributed, the following to the Debtors or the Reorganized Debtors, as applicable (the "**Imerys Cash Contribution**"):

a.    the balance of the Intercompany Loan to fund administrative expenses during the pendency of the Chapter 11 Cases, as well as certain of the Reserves (with any remaining balance of the Intercompany Loan not otherwise used to fund the Reserves or pay administrative expenses to be contributed to the Talc Personal Injury Trust on or as soon as reasonably practicable after the Effective Date);

b.    $5 million (less any amounts already paid and noted in an accounting to the Tort Claimants' Committee and the FCR) for payment of Allowed Claims in Class 3a through inclusion in the Reorganized North American Debtor Cash Reserve or the Disputed Claims Reserve, as applicable (with any remaining balance of the $5 million not otherwise used to fund the Reorganized North American Debtor Cash Reserve or the Disputed Claims Reserve, as applicable, to be contributed to the Talc Personal Injury Trust on or as soon as reasonably practicable after the Effective Date) (the "**Unsecured Claim Contribution**"); and

c.    up to $15 million, to the extent the Debtors do not have available Cash after exhaustion of the Intercompany Loan to pay all Administrative Claims in full on the Effective Date and would otherwise be administratively insolvent; *provided* that Imerys S.A. shall fund the Debtors' administrative expenses as follows: Imerys S.A. shall pay fifty percent (50%) of such expenses in Cash (in an amount not to exceed $15 million) and fifty percent (50%) shall be funded by a dollar-for-dollar

59

reduction of the Imerys Settlement Funds (in an amount not to exceed $15 million) (the "**Contingent Contribution**").

10.8.2.3    Talc Trust Contribution.  On or prior to the Effective Date, the Imerys Non-Debtors have agreed to contribute, or cause to be contributed, the following to the Talc Personal Injury Trust (the "**Talc Trust Contribution**"):

a.    rights and interests to the proceeds of the Shared Talc Insurance Policies and all rights against third parties held by the Imerys Non-Debtors relating to Talc Personal Injury Claims, ~~including~~ any related indemnification rights, including, but not limited to, the J&J Indemnification Obligations, each of which is to be identified in the Plan Supplement (the "**Contributed Indemnity and Insurance Interests**"); and

b.    the Talc PI Pledge Agreement.

10.8.2.4    Additional Contribution.  On or prior to the Effective Date, the Imerys Non-Debtors have agreed to take the following actions (the "**Additional Contribution**, and together with the Imerys Settlement Funds, the Imerys Cash Contribution, and the Talc Trust Contribution, the "**Imerys Contribution**"):

a.    waive all Non-Debtor Intercompany Claims against the Debtors; and

b.    unless otherwise assumed by the Buyer, assume any Pension Liabilities of the North American Debtors through and after the Effective Date of the Plan.

10.8.3    Cooperation Agreement.  The Debtors, the Imerys Non-Debtors, and the Talc Personal Injury Trust shall enter into the Cooperation Agreement, which shall be included in the Plan Supplement.

10.9    Rio Tinto/Zurich Settlement.

10.9.1    Compromise and Settlement of Claims.

10.9.1.1    Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration of the Rio Tinto/Zurich Contribution and other benefits provided pursuant to the Rio Tinto/Zurich Settlement, the provisions of the Plan effect a compromise and settlement of all Rio Tinto/Zurich Released Claims against the Rio Tinto Protected Parties and the Zurich Protected Parties as provided in Section 12.2.1(c) of the Plan, and the Plan constitutes a request for the Bankruptcy Court to authorize and approve the Rio Tinto/Zurich Settlement and to release all of the Rio Tinto/Zurich Released Claims as provided in Section 12.2.1(c) of the Plan.

10.9.1.2    The provisions of the Plan (including the release and injunctive provisions contained in Article XII of the Plan) and the other documents

60

entered into in connection with the Plan constitute a good faith compromise and settlement among: (i) Rio Tinto, on behalf of itself and the Rio Tinto Captive Insurers, and for the benefit of the Rio Tinto Protected Parties, and Zurich, on behalf of itself and for the benefit of the Zurich Protected Parties, on the one hand, and (ii) the Debtors, on the other hand, and consented to by the Tort Claimants' Committee and the FCR, of claims and controversies among such parties. The Plan, including the explanation set forth in the Disclosure Statement, shall be deemed a motion to approve the Rio Tinto/Zurich Settlement, including the Rio Tinto/Zurich Settlement Agreement, and the good faith compromise and settlement of all of the claims and controversies described in the Plan pursuant to Bankruptcy Rule 9019, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Rio Tinto/Zurich Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Rio Tinto/Zurich Settlement is (i) fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and (ii) fair and equitable with respect to the persons who might subsequently assert Talc Personal Injury Demands, in light of the benefits provided, or to be provided, to the Talc Personal Injury Trust by and on behalf of the Rio Tinto Protected Parties and the Zurich Protected Parties.

10.9.2    Rio Tinto/Zurich Settlement Contributions.

10.9.2.1    Rio Tinto/Zurich Contribution. Rio Tinto and Zurich will make the following contributions, on behalf of themselves and (in the case of Rio Tinto) on behalf of the Rio Tinto Captive Insurers and for the benefit of the Rio Tinto Protected Parties and (in the case of Zurich) for the benefit of the Zurich Protected Parties, to the Talc Personal Injury Trust, to be used for the payment of Talc Personal Injury Claims in accordance with the Trust Distribution Procedures and the Talc Personal Injury Trust Agreement:

a.    *Zurich Cash Contribution*.  On or prior to the date that is thirty (30) days after the Rio Tinto/Zurich Trigger Date, Zurich will contribute, or cause to be contributed, $260 million in Cash to the Talc Personal Injury Trust.

b.    *Rio Tinto Cash Contribution*.  On or prior to the date that is fourteen (14) days after the Rio Tinto/Zurich Trigger Date, Rio Tinto will contribute, or cause to be contributed, $80 million in Cash to the Talc Personal Injury Trust.

c.    *Rio Tinto/Zurich Credit Contribution*.  On the Rio Tinto/Zurich Trigger Date, or as soon as reasonably practicable thereafter (not to exceed three (3) Business Days), the appropriate Rio Tinto Corporate Parties and the appropriate Zurich Corporate Parties shall each execute and deliver to the Talc Personal Injury Trust, in a form reasonably acceptable to the Talc Personal Injury Trust, an assignment to the Talc Personal Injury Trust of (i) all of their rights to or claims for indemnification, contribution (whether via any "other insurance" clauses or otherwise), or subrogation

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

against any Person relating to the payment or defense of any Talc Personal Injury Claim or any past talc-related claim against the Debtors prior to the Effective Date (the "**Credits**"), and (ii) all of their other rights to or claims for indemnification, contribution (whether via any "other insurance" clauses or otherwise), or subrogation against any Person relating to any Talc Personal Injury Claim (the "**Future Credits**") (together, (i) and (ii), the "**Rio Tinto/Zurich Credit Contribution**"), *provided, however,* that any such claims for Credits or Future Credits against a Protected Party shall be subject to the Channeling Injunction, and nothing herein shall impact the injunctions and releases otherwise inuring to the benefit of the Protected Parties under the terms of the Plan. Notwithstanding anything else contained in this Section 10.9.2.1(c), the Rio Tinto Corporate Parties and the Zurich Corporate Parties shall retain, and shall not transfer to the Talc Personal Injury Trust, all rights of the Rio Tinto Corporate Parties and the Zurich Corporate Parties against their reinsurers and/or retrocessionaires, in their capacity as such.

10.9.2.2    Rio Tinto/Zurich Settlement Agreement.

a.    Pursuant to the Rio Tinto/Zurich Settlement Agreement, Zurich will acquire any and all rights of the Debtors in the Zurich Policies, free and clear of any right, title, or interest of any other Entity, pursuant to sections 363(b) and 363(f) of the Bankruptcy Code. Further, the Rio Tinto Captive Insurers will acquire any and all rights of the Debtors in the Rio Tinto Captive Insurer Policies, free and clear of any right, title, or interest of any other Entity, pursuant to sections 363(b) and 363(f) of the Bankruptcy Code.

b.    Confirmation of the Plan will constitute approval of the Rio Tinto/Zurich Settlement Agreement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and a finding that the Rio Tinto Captive Insurers and Zurich are good-faith purchasers entitled to the protections of section 363(m) of the Bankruptcy Code.

c.    For the avoidance of doubt, the Plan Proponents, on the one hand, and Rio Tinto and Zurich, on the other hand, acknowledge that the Zurich Policies in effect from May 2001 through May 2008 are exhausted.

10.9.2.3    Withdrawal of Claims. On the Rio Tinto/Zurich Trigger Date, any and all Claims that the Rio Tinto Corporate Parties or the Zurich Corporate Parties have asserted or that have been asserted on their behalf in the Chapter 11 Cases shall be deemed withdrawn with prejudice. Further, the Rio Tinto Protected Parties and the Zurich Protected Parties shall not file or assert any additional Claims against any of the Debtors arising from any Debtor's conduct prior to the Confirmation Date.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

10.9.2.4    <u>Cooperation</u>.  Rio Tinto and Zurich shall use reasonable efforts to assist and cooperate with the Talc Personal Injury Trust, Talc Trustees, Talc Trust Advisory Committee, and FCR to pursue the Credits, as set forth in the Rio Tinto/Zurich Settlement Agreement.

10.9.2.5    <u>Releases and Injunctions</u>.  Notwithstanding anything to the contrary set forth in the Plan or elsewhere, the Injunctions and the releases contained in Article XII of the Plan shall not be effective as to the Rio Tinto Protected Parties, the Rio Tinto Captive Insurers, and the Zurich Protected Parties (as applicable) until the Rio Tinto/Zurich Contribution has been made to the Talc Personal Injury Trust in accordance with <u>Section 10.9.2.1</u> of the Plan.

10.10    <u>Good Faith Compromise and Settlement</u>.  The Plan (including its incorporation of the Imerys Settlement and the Rio Tinto/Zurich Settlement), the Plan Documents, and the Confirmation Order constitute a good faith compromise and settlement of Claims and controversies based upon the unique circumstances of these Chapter 11 Cases, and none of the foregoing documents, the Disclosure Statement, or any other papers filed in furtherance of Plan Confirmation, nor any drafts of such documents, may be offered into evidence or deemed as an admission in any context whatsoever beyond the purposes of the Plan, in any other litigation or proceeding, except as necessary, and as admissible in such context, to enforce their terms before the Bankruptcy Court or any other court of competent jurisdiction.  The Plan, the Imerys Settlement, the Plan Documents, and the Confirmation Order will be binding as to the matters and issues described therein, but will not be binding with respect to similar matters or issues that might arise in any other litigation or proceeding in which none of the Debtors, the Reorganized Debtors, the Imerys Protected Parties, or the Talc Personal Injury Trust is a party.  The Plan, the Rio Tinto/Zurich Settlement, the Plan Documents, and the Confirmation Order will be binding as to the matters and issues described therein, but will not be binding with respect to similar matters or issues that might arise in any other litigation or proceeding in which none of the Debtors, the Reorganized Debtors, the Rio Tinto Protected Parties, the Zurich Protected Parties, or the Talc Personal Injury Trust is a party.

10.11    <u>Resolution of Talc Personal Injury Claims</u>.  Talc Personal Injury Claims shall be channeled to and resolved by the Talc Personal Injury Trust in accordance with the Trust Distribution Procedures, as applicable, subject to the right of any Talc Insurance Company to raise any valid Talc Insurer Coverage Defense in response to a demand by the Talc Personal Injury Trust that such insurer handle, defend, or pay any such claim.

10.11.1    Talc Personal Injury Trust.  Talc Personal Injury Claims, including J&J Talc Claims, shall be channeled to and resolved by the Talc Personal Injury Trust in accordance with the Trust Distribution Procedures and/or the J&J Protocol, as applicable, subject to (i) the right of any Talc Insurance Company to raise any Talc Insurer Coverage Defense in response to a demand by the Talc Personal Injury Trust that such insurer handle, defend, or pay any such claim, and (ii) J&J's rights and obligations pursuant to the J&J Protocol Order with respect to J&J Talc Claims.

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

10.12    Sources of Consideration for Plan Distributions.

10.12.1    North American Debtor Claims.    All Cash consideration necessary for payments or distributions on account of the North American Debtor Claims shall be obtained from (i) the Cash on hand of the North American Debtors on the Effective Date, including Cash derived from business operations and (ii) the Imerys Cash Contribution.

10.12.2    Talc Personal Injury Claims.    All Cash consideration necessary for payments or distributions on account of Talc Personal Injury Claims shall be obtained from (i) the Cash on hand of the North American Debtors on the Effective Date, including Cash derived from business operations, other than the Cash placed in the Reserves, if any, (ii) the Imerys Settlement Funds, (iii) the amount of the Imerys Cash Contribution, after such funds have been disbursed in accordance with Section 10.8.2; (iv) all Cash remaining in the Reserves, if applicable, as set forth in Section 10.13 of the Plan; (v) all proceeds from the Talc Personal Injury Trust Assets; and (vi) the Rio Tinto/Zurich Contribution; and (vii) with respect to the J&J Talc Claims, J&J, as described in the J&J Protocol Order.

10.12.3    ITI Claims.    All Cash consideration necessary for payments or distributions under the Plan on account of ITI Claims, for the avoidance of doubt, other than Talc Personal Injury Claims, shall be obtained from the Cash on hand at Reorganized ITI.

10.12.4    Transfer of Funds Between the North American Debtors.    The North American Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable them to satisfy their obligations under the Plan; *provided* that any transfer of funds from ITC to another North American Debtor shall be subject to review by the Information Officer.  Except as set forth therein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate or otherwise be affected by the terms of the Plan.

10.12.5    Funding by the Talc Personal Injury Trust.    The Talc Personal Injury Trust shall have no obligation to fund costs and expenses other than those set forth in the Plan and/or the Talc Personal Injury Trust Documents, as applicable.

10.13    Transfer of Remaining North American Debtors' Assets to the Talc Personal Injury Trust.

10.13.1    After (i) all Disputed Claims against the North American Debtors have been resolved, and (ii) all Distributions required to be made by the Reorganized North American Debtors under the Plan have been made, all Cash remaining in the Disputed Claims Reserve shall be disbursed to the Talc Personal Injury Trust, in accordance with Section 7.10 of the Plan.

10.13.2    Upon the close of the Chapter 11 Cases, all Cash remaining in the Reorganized North American Debtor Cash Reserve shall be disbursed to the Talc Personal Injury Trust.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

10.13.3    Any remaining balance in the Fee Claim Reserve and the Administrative Claim Reserve shall be disbursed to the Talc Personal Injury Trust subject to and in accordance with Sections 2.1 and 2.3 of the Plan, *provided that* any Cash remaining in the Fee Claim Reserve and the Administrative Claim Reserve that is attributable to the Contingent Contribution shall be disbursed with fifty percent (50%) distributed to the Talc Personal Injury Trust and fifty percent (50%) distributed to Imerys S.A.

10.14    Modification of the Plan.  To the extent permissible under section 1127 of the Bankruptcy Code, any proposed amendments to or modifications of the Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by law will be submitted jointly by the Plan Proponents, without additional disclosure pursuant to section 1125 of the Bankruptcy Code at any time prior to substantial consummation of the Plan, unless section 1127 of the Bankruptcy Code requires additional disclosure.  To the extent permissible under section 1127(b) of the Bankruptcy Code, following substantial consummation of the Plan, the Reorganized Debtors may remedy any defects or omissions or reconcile any inconsistencies in the Plan Documents for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as (a) the interests of the holders of Allowed Claims are not adversely affected thereby; (b) any such modifications are non-material; (c) the Tort Claimants' Committee and the FCR or, following the Effective Date, the Talc Trust Advisory Committee and the FCR consent; (d) Imerys S.A. consents; and (e) the United States Trustee does not object, unless such objection is overruled by the Bankruptcy Court.  Post-Effective Date, any holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified or supplemented pursuant to this Section 10.14, unless the Bankruptcy Court rules otherwise.

10.15    Revocation or Withdrawal of the Plan.  The Debtors, with the consent of each of the other Plan Proponents, reserve the right to revoke and withdraw the Plan prior to entry of the Confirmation Order.  If the Debtors, with the consent of each of the other Plan Proponents, revoke or withdraw the Plan, or if Confirmation of the Plan as to any Debtor does not occur, then, with respect to such Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against such Debtor, or any other Entity (including the Plan Proponents), or to prejudice in any manner the rights of such Debtor, or such Entity (including the Plan Proponents) in any further proceedings involving such Debtor.

10.16    Certain Technical Modifications.  Prior to the Effective Date, the Plan Proponents collectively may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, to the extent permissible under section 1127 of the Bankruptcy Code; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests under the Plan.

## ARTICLE XI
## EFFECT OF CONFIRMATION

11.1    Preservation of Certain Estate Causes of Action.

11.1.1    In accordance with section 1123(b) of the Bankruptcy Code, and except where such Estate Causes of Action have been expressly released, the Reorganized Debtors

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Non-Talc Causes of Action, whether arising before or after the Petition Date.  Each Reorganized Debtor's right to commence, prosecute or settle such Non-Talc Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue the Non-Talc Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.

11.1.2    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Non-Talc Cause of Action against them as any indication that the Reorganized Debtors will not pursue the Non-Talc Causes of Action.  The Reorganized Debtors expressly reserve all rights to prosecute any and all Non-Talc Causes of Action, except as otherwise expressly provided in the Plan.  Unless any of the Non-Talc Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all such Non-Talc Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Non-Talc Causes of Action as a consequence of the Confirmation of the Plan.

11.1.3    Upon the Effective Date, the Reorganized Debtors shall retain and enforce all defenses and counterclaims to all Claims that were or could have been asserted against the Debtors, respectively, or their respective Estates, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.  On or after the Effective Date, the Reorganized Debtors may pursue, settle or withdraw, without Bankruptcy Court approval, such claims, rights, or causes of action (other than the Talc Personal Injury Trust Causes of Action) as they determine in accordance with their best interests.

11.2    Preservation of Talc Personal Injury Trust Causes of Action.  On the Effective Date, all Talc Personal Injury Trust Causes of Action shall be transferred to and vested in the Talc Personal Injury Trust.  Except as otherwise provided in the Plan or the Confirmation Order, the Talc Personal Injury Trust shall retain and enforce, as the appointed estate representative in accordance with section 1123(b) of the Bankruptcy Code, all Talc Personal Injury Trust Causes of Action, including, but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.  The transfer of the Talc Personal Injury Trust Causes of Action to the Talc Personal Injury Trust, insofar as they relate to the ability to defend against or reduce the amount of Talc Personal Injury Claims, shall be considered the transfer of a non-exclusive right enabling the Talc Personal Injury Trust to defend itself against asserted Talc Personal Injury Claims, which transfer shall not impair, affect, alter, or modify the right of any Person, including without limitation, the Imerys Protected Parties, the Rio Tinto Protected Parties, the Zurich Protected Parties, an insurer or alleged insurer, or co-obligor or alleged co-obligor, sued on account of a Talc Personal Injury Claim, to assert each and every defense or basis for claim reduction such Person could have asserted had the Talc Personal Injury Trust Causes of Action not been assigned to the Talc Personal Injury Trust.

11.3    <u>Talc Insurance Actions</u>.  Any Talc Insurance Action, or the claims and causes of action asserted or to be asserted therein, shall be preserved for the benefit of the Talc Personal Injury Trust, for prosecution by the applicable Debtor(s) until the Effective Date subject to the consent of the FCR and the Tort Claimants' Committee, which shall not be unreasonably withheld. As of the Effective Date, such Talc Insurance Actions along with the rights and obligations of the Debtors and the Reorganized Debtors, as applicable, and the Non-Debtor Affiliates with respect to the Talc Insurance Policies and claims thereunder shall exclusively vest in the Talc Personal Injury Trust in accordance with section 1123(a)(5)(B) of the Bankruptcy Code, and the Talc Personal Injury Trust shall retain and enforce as the appointed estate representative in accordance with section 1123(b)(3)(B)of the Bankruptcy Code all such Talc Insurance Actions.  Such Talc Insurance Actions shall be free and clear of all Liens, security interests, and other Claims or causes of action, except for Talc Insurer Coverage Defenses.  Upon vesting in the Talc Personal Injury Trust, the prosecution of the Talc Insurance Actions shall be governed by the Talc Personal Injury Trust Documents.

11.4    <u>Insurance Provisions</u>.

11.4.1    The provisions of this <u>Section 11.4</u> shall apply to all Entities (including, without limitation, all Talc Insurance Companies).

11.4.1.1    Except as provided in the Rio Tinto/Zurich Settlement and any Talc Insurance Settlement Agreement, nothing contained in the Plan, the Plan Documents, or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (a) the rights or obligations of any Talc Insurance Company, or (b) any rights or obligations of the Debtors arising out of or under any Talc Insurance Policy.  For all issues relating to insurance coverage allegedly provided by the Zurich Corporate Parties or the Rio Tinto Captive Insurers, the provisions, terms, conditions, and limitations of the Rio Tinto/Zurich Settlement shall control.  For all other issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Talc Insurance Policies or applicable Talc Insurance CIP Agreements or Talc Insurance Settlement Agreements shall control.  For the avoidance of doubt, nothing contained in the Plan, the Plan Documents, or the Confirmation Order shall operate to require any Talc Insurance Company to indemnify or pay the liability of any Protected Party that it would not have been required to pay in the absence of the Plan.

11.4.1.2    The Plan, the Plan Documents, and the Confirmation Order shall be binding on the Debtors, the Reorganized Debtors, and the Talc Personal Injury Trust.  The obligations, if any, of the Talc Personal Injury Trust to pay holders of Talc Personal Injury Claims shall be determined pursuant to the Plan and the Plan Documents.  Except as provided in <u>Section 11.4.1.4</u>, none of (a) the Bankruptcy Court's approval of the Plan or the Plan Documents, (b) the Confirmation Order or any findings and conclusions entered with respect to Confirmation, nor (c) any estimation or valuation of Talc Personal Injury Claims, either individually or in the aggregate (including, without limitation, any agreement

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

as to the valuation of Talc Personal Injury Claims) in the Chapter 11 Cases shall, with respect to any Talc Insurance Company, constitute a trial or hearing on the merits or an adjudication or judgment, or accelerate the obligations, if any, of any Talc Insurance Company under its Talc Insurance Policies.

11.4.1.3    No provision of the Plan, other than those provisions contained in the applicable Injunctions set forth in Article XII of the Plan, shall be interpreted to affect or limit the protections afforded to any Settling Talc Insurance Company by the Channeling Injunction or the Insurance Entity Injunction.

11.4.1.4    Nothing in this Section 11.4.1 is intended or shall be construed to preclude otherwise applicable principles of *res judicata* or collateral estoppel from being applied against any Talc Insurance Company with respect to any issue that is actually litigated by such Talc Insurance Company as part of its objections, if any, to Confirmation of the Plan or as part of any contested matter or adversary proceeding filed by such Talc Insurance Company in conjunction with or related to Confirmation of the Plan.  Plan objections that are withdrawn prior to the conclusion of the Confirmation Hearing shall be deemed not to have been actually litigated.

11.5    J&J Indemnification Rights and Obligations.

11.5.1    Subject to Section 11.5.5, nothing contained in the Plan, the Plan Documents, or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying the J&J Indemnification Rights and Obligations.  For all issues relating to J&J Indemnification Rights and Obligations, the provisions, terms, conditions, and limitations of any agreements underlying the J&J Indemnification Rights and Obligations (as may have been modified and supplemented by the J&J Protocol Order and/or the J&J Protocol) and the J&J Protocol Order and J&J Protocol shall control; *provided, however,* that with respect to all issues relating to any claim by J&J to indemnification, defense, contribution, or any other right to recovery against any Rio Tinto Protected Party or any Zurich Protected Party arising out of or relating to any Talc Personal Injury Claim, in the event of any conflict between the J&J Protocol Order and/or the J&J Protocol, on the one hand, and the Rio Tinto/Zurich Settlement, on the other, the Rio Tinto/Zurich Settlement shall control. shall control.

11.5.2    For the avoidance of doubt, nothing contained in the Plan, the Plan Documents, or the Confirmation Order shall operate to require J&J to indemnify or pay the liability of any Debtor or the Reorganized Debtors that it would not have been required to pay in the absence of the Plan.  This Section 11.5.2 in no way modifies, alters or limits the rights and/or obligations set forth in Section 11.5.1 above.

11.5.3    11.5.2None Subject to Section 11.5.5, none of (i) the Bankruptcy Court's confirmation of the Plan or approval of the Plan Documents, (ii) the Confirmation Order or any findings and conclusions entered with respect to Confirmation, nor (iii) any

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

estimation or valuation of any Claims, either individually or in the aggregate in the Chapter 11 Cases shall, with respect to J&J, constitute a trial or hearing on the merits or an adjudication or judgment with respect to any J&J Direct Talc ClaimPersonal Injury Claim against J&J or any J&J Indemnification Rights and Obligations.

11.5.4    Nothing in this Section 11.5 is intended or shall be construed to preclude otherwise applicable principles of *res judicata* or collateral estoppel from being applied against J&J with respect to any issue that is actually litigated by J&J as part of its objections, if any, to Confirmation of the Plan or as part of any contested matter or adversary proceeding filed by J&J in conjunction with or related to Confirmation of the Plan.  Plan objections that are withdrawn prior to the conclusion of the Confirmation Hearing shall be deemed not to have been actually litigated.

11.5.5    For the avoidance of doubt, the provisions of Sections 11.5.1 and 11.5.3 shall not apply to any claim by J&J to indemnification, defense, contribution, or any other right to recovery against any Rio Tinto Protected Party or any Zurich Protected Party, or under any Rio Tinto Captive Insurer Policy or any Zurich Policy, arising out of or relating to any Talc Personal Injury Claim.

11.6    Institution and Maintenance of Legal and Other Proceedings.  As of the Effective Date, the Talc Personal Injury Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability or responsibility of the Talc Personal Injury Trust, including without limitation the Talc Insurance Actions, Talc Personal Injury Claims (except with respect to the J&J Talc Claims channeled to the Talc Personal Injury Trust, which shall be resolved in accordance with the J&J Protocol Order), Indirect Talc Personal Injury Claims, and the Talc Personal Injury Trust Causes of Action, and the J&J Indemnification Obligations.  Without limiting the foregoing, on and after the Effective Date, the Talc Personal Injury Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue and resolve all such actions, other than actions with respect to J&J Talc Claims (which shall be resolved in accordance with the J&J Protocol Order), in the name of either of the Debtors or the Reorganized Debtors, if deemed necessary or appropriate by the Talc Personal Injury Trust.  The Talc Personal Injury Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges incurred subsequent to the Effective Date arising from or associated with any legal action or other proceeding which is the subject of Article IV of the Plan and shall pay or reimburse all deductibles, self-insured retentions, retrospective premium adjustments, or other charges (not constituting Indirect Talc Personal Injury Claims) which may arise from the receipt of any insurance proceeds by the Talc Personal Injury Trust.  Furthermore, without limiting the foregoing, the Talc Personal Injury Trust shall be empowered to maintain, administer, preserve, or pursue the Talc-In-Place Insurance Coverage and the Talc Insurance Action Recoveries.

11.7    Terms of Injunctions and Automatic Stay.

11.7.1    All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases, whether pursuant to sections 105, 362, or any other provision of the Bankruptcy Code, Bankruptcy Rules, or other applicable law in existence immediately prior to the Confirmation Date, shall remain in full force and effect until the

injunctions become effective pursuant to a Final Order, and shall continue to remain in full force and effect thereafter as and to the extent provided by the Plan, the Confirmation Order, or by their own terms. In addition, on and after Confirmation, the Debtors, with the consent of each of the Plan Proponents, may collectively seek such further orders as they deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

11.7.2    Each of the Injunctions contained in the Plan or the Confirmation Order shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by the Plan or the Confirmation Order.

11.8    The FCR and the Tort Claimants' Committee.

11.8.1    The FCR and the Tort Claimants' Committee shall continue in their official capacities until the Effective Date. The Debtors shall pay the reasonable fees and expenses incurred by the FCR and the Tort Claimants' Committee through the Effective Date, in accordance with the Compensation Procedures Order, the Fee Examiner Order, and the terms of the Plan, including Section 2.3 of the Plan.

11.8.2    After the Effective Date, the official capacities of the FCR and the Tort Claimants' Committee in the Chapter 11 Cases shall be limited to having standing and capacity to (i) prosecute their pre-Effective Date intervention in any adversary proceedings; (ii) object to any proposed modification of the Plan; (iii) object to or defend the Fee Claims of professionals employed by or on behalf of the Estate, or by or on behalf of members of the Tort Claimants' Committee; and (iv) participate in any pending appeals or appeals of the Confirmation Order. Except for the foregoing, the FCR and the members of the Tort Claimants' Committee shall be released and discharged from all further authority, duties, responsibilities, liabilities, and obligations involving the Chapter 11 Cases. Upon the closing of the Chapter 11 Cases, the Tort Claimants' Committee shall be dissolved. The fees and expenses incurred by the FCR and the Tort Claimants' Committee relating to any post-Effective Date activities authorized hereunder shall be payable from the Administrative Claim Reserve.

11.8.3    Nothing in this Section 11.8 of the Plan shall limit or otherwise affect the rights of the United States Trustee under section 502 of the Bankruptcy Code or otherwise to object to Claims or requests for allowance of Fee Claims or other Administrative Claims.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

11.9    Expungement of Talc Personal Injury Claims from the Claims Register.  On the Effective Date, all Talc Personal Injury Claims filed against the Debtors in the Chapter 11 Cases shall be expunged from the Claims Register, and resolved in accordance with the Trust Distribution Procedures.

**ARTICLE XII**
**RELEASES, INJUNCTION AND EXCULPATION**

12.1    Discharge and Injunctions.

12.1.1    Discharge of Claims Against and Termination of Equity Interests in the Debtors.  Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, Confirmation of the Plan shall afford each Debtor a discharge to the fullest extent permitted by Bankruptcy Code sections 524 and 1141(d)(1).

12.1.2    **Discharge Injunction.  Except as specifically provided in the Plan or the Confirmation Order, from and after the Effective Date, to the maximum extent permitted under applicable law, all Persons that hold, have held, or may hold a Claim, demand or other debt or liability that is discharged, or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims, debts or liabilities, or terminated Equity Interests or rights: (i) commencing or continuing any action or other proceeding of any kind against the Debtors, the Reorganized Debtors, the Talc Personal Injury Trust, or their respective property; (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, the Talc Personal Injury Trust, or their respective property; (iii) creating, perfecting, or enforcing any Lien or Encumbrance of any kind against the Debtors, the Reorganized Debtors, the Talc Personal Injury Trust, or their respective property; and (iv) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order (the "Discharge Injunction").  The foregoing injunction shall extend to the successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property.  The discharge provided in this provision shall void any judgment obtained against any Debtor at any time, to the extent that such judgment relates to a discharged Claim or demand.**

12.2    **Releases.**

12.2.1    **Releases by Debtors and Estates.**

(a)    **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the implementation of the Talc Personal Injury Trust, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be**

deemed conclusively, absolutely, unconditionally, irrevocably and forever released, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, by the Debtors and the Estates from any and all Claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, causes of action, Liens, remedies, losses, contributions, indemnities, costs, liabilities, attorneys' fees and expenses whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors or their Estates (including any Estate Causes of Action), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (including the exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission; provided, however, that the Debtors do not release, and the Reorganized Debtors shall retain, the Non-Talc Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or constitutes fraud, gross negligence, or willful misconduct.  The Debtors, and any other newly-formed entities that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the releases set forth in this <u>Section 12.2.1</u> of the Plan.  For the avoidance of doubt, Claims or causes of action arising out of, or related to, any act or omission of a Released Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence, or willful misconduct, including findings after the Effective Date, are not released pursuant to this <u>Section 12.2.1</u> of the Plan.

(b)    In furtherance of the Imerys Settlement, on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors ~~and the Reorganized Debtors~~, on their own behalf and as representatives of their respective Estates, <u>the Reorganized Debtors,</u> and the Tort Claimants' Committee and FCR, solely on their own behalf, are deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge each and all of the Imerys Protected Parties of and from (a) all Estate Causes of Action and (b) any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts,

72

controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which the Debtors, ~~the~~ their Estates, the Reorganized Debtors, the Tort Claimants' Committee, or the FCR have, had, may have, or may claim to have against any of the Imerys Protected Parties including without limitation with respect to any Talc Personal Injury Claim (clauses (a) and (b) collectively, the "**Imerys Released Claims**").

        (c)      In furtherance of the Rio Tinto/Zurich Settlement, ~~on the Effective Date~~effective upon the Talc Personal Injury Trust's receipt of the Rio Tinto/Zurich Contribution, for good and valuable consideration, the adequacy of which is hereby confirmed, the ~~Debtors and the Reorganized~~ Talc Personal Injury Trust, the Debtors, on their own behalf and as representatives of their respective Estates, the Reorganized Debtors, and the Tort Claimants' Committee and FCR, solely on their own behalf, are deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge each and all of the Rio Tinto Protected Parties and the Zurich Protected Parties and from (a) all Estate Causes of Action and (b) any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which the Talc Personal Injury Trust, the Debtors, ~~the~~ their Estates, the Reorganized Debtors, the Tort Claimants' Committee, or the FCR have, had, may have, or may claim to have against any of the Rio Tinto Protected Parties and/or the Zurich Protected Parties, directly or indirectly arising out of, with respect to, or in any way relating to any Talc Personal Injury Claim (collectively, the "**Rio Tinto/Zurich Released Claims**").

        12.2.2    **Releases by Holders of Claims.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the implementation of the Talc Personal Injury Trust, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever released, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, except as otherwise explicitly provided herein, by the Releasing Claim Holders from any and all Claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, causes of action, Liens, remedies, losses, contributions, indemnities, costs, liabilities, attorneys' fees and expenses whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors or their Estates (including any Estate Causes of Action), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory

or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons or parties claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such entities existed prior to or after the Petition Date), their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party (including the exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, other than Claims or causes of action arising out of, or related to, any act or omission of a Released Party that constitutes fraud, gross negligence or willful misconduct.  For the avoidance of doubt, Claims or causes of action arising out of, or related to, any act or omission of a Released Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence, or willful misconduct, including findings after the Effective Date, are not released pursuant to this <u>Section 12.2.2</u> of the Plan.

12.2.3    <u>Injunction Related to Releases</u>.  Except as otherwise provided in the Plan, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities released pursuant to the Plan (the "<u>Release Injunction</u>").

12.3    <u>The Channeling Injunction and the Insurance Entity Injunction</u>.  In order to supplement the injunctive effect of the Discharge Injunction, and pursuant to sections 524(g) and 105(a) of the Bankruptcy Code, the Confirmation Order shall provide for the following permanent injunctions to take effect as of the Effective Date.

12.3.1    <u>Channeling Injunction</u>.

(a)    **Terms.**  To preserve and promote the settlements contemplated by and provided for in the Plan, including the Imerys Settlement and the Rio Tinto/Zurich Settlement, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under sections 105(a) and 524(g) of the Bankruptcy Code, the sole recourse of any holder of a Talc Personal Injury Claim against a Protected Party (on account of such Talc Personal Injury Claim) shall be the Talc Personal Injury Trust pursuant to the Talc Personal Injury Trust Documents, and such holder shall have no right whatsoever at any time to assert

74

its Talc Personal Injury Claim against any Protected Party or any property or interest in property of any Protected Party. On and after the Effective Date, all holders of Talc Personal Injury Claims shall be permanently and forever stayed, restrained, barred, and enjoined from taking any action for the purpose of, directly or indirectly or derivatively collecting, recovering, or receiving payment of, on, or with respect to any Talc Personal Injury Claim against a Protected Party other than from the Talc Personal Injury Trust pursuant to the Talc Personal Injury Trust Documents, including, but not limited to:

(i)    commencing, conducting, or continuing in any manner, directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or any property or interests in property of any Protected Party;

(ii)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property or interests in property of any Protected Party;

(iii)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien of any kind against any Protected Party or any property or interests in property of any Protected Party;

(iv)    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, contribution, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or against any property or interests in property of any Protected Party; and

(v)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Documents, or the Talc Personal Injury Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Talc Personal Injury Trust, except in conformity and compliance with the Talc Personal Injury Trust Documents.

(b)    Reservations. Notwithstanding anything to the contrary in Section 12.3.1(a) of the Plan, this Channeling Injunction shall not impair:

(i)    the rights of holders of Talc Personal Injury Claims to assert such Talc Personal Injury Claims solely against the Talc

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

Personal Injury Trust or otherwise in accordance with the Trust Distribution Procedures;

(ii)      the rights of holders of Talc Personal Injury Claims to assert such claims against anyone other than a Protected Party;

(iii)      the rights of Persons to assert any Claim, debt, obligation or liability for payment of Talc Personal Injury Trust Expenses solely against the Talc Personal Injury Trust or otherwise in accordance with the Trust Distribution Procedures; or

(iv)      the Talc Personal Injury Trust from enforcing its rights explicitly provided to it under the Plan and the Talc Personal Injury Trust Documents.

(c)      Modifications.  There shall be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

(d)      Non-Limitation of Channeling Injunction.  Nothing in the Plan or the Talc Personal Injury Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction issued in connection with the Plan, the releases provided in the Imerys Settlement and the Rio Tinto/Zurich Settlement, or the Talc Personal Injury Trust's assumption of all liability with respect to Talc Personal Injury Claims.

(e)      Bankruptcy Rule 3016 Compliance.  The Plan Proponents' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

(f)      Any Protected Party may enforce the Channeling Injunction as a defense to any Claim brought against such Protected Party that is enjoined under the Plan as to such Protected Party and may seek to enforce such injunction in a court of competent jurisdiction.

(g)      If a non-Settling Talc Insurance Company asserts that it has rights of contribution, indemnity, reimbursement, subrogation or other similar claims (collectively, "Contribution Claims") against a Settling Talc Insurance Company, (i) such Contribution Claims may be asserted as a defense or counterclaim against the Talc Personal Injury Trust in any Talc Insurance Action involving such non-Settling Talc Insurance Company, and the Talc Personal Injury Trust may assert the legal or equitable rights (if any) of the Settling Talc Insurance Company, and (ii) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such non-Settling Talc Insurance Company to the Talc Personal Injury Trust shall be reduced by the amount of such Contribution Claims.

12.3.2    **Insurance Entity Injunction**.

(a)    **Purpose. In order to protect the Talc Personal Injury Trust and to preserve the Talc Personal Injury Trust Assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court, the Bankruptcy Court shall issue the Insurance Entity Injunction;** *provided*, *however*, **that the Insurance Entity Injunction is not issued for the benefit of any Talc Insurance Company, and no Talc Insurance Company is a third-party beneficiary of the Insurance Entity Injunction, except as otherwise specifically provided in any Talc Insurance CIP Agreement or Talc Insurance Settlement Agreement.**

(b)    **Terms Regarding Claims Against Talc Insurance Companies. Subject to the provisions of <u>Sections 12.3.1</u> and <u>12.3.2</u> of the Plan, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any claim, demand or cause of action (including any Talc Personal Injury Claim or any claim or demand for or respecting any Talc Personal Injury Trust Expense) against any Talc Insurance Company based upon, attributable to, arising out of, or in any way connected with any such Talc Personal Injury Claim, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim, demand, or cause of action including, without limitation:**

(i)    **commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such claim, demand, or cause of action against any Talc Insurance Company, or against the property of any Talc Insurance Company, with respect to any such claim, demand, or cause of action;**

(ii)    **enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Talc Insurance Company, or against the property of any Talc Insurance Company, with respect to any such claim, demand, or cause of action;**

(iii)    **creating, perfecting, or enforcing in any manner, directly or indirectly, any Encumbrance against any Talc Insurance Company, or the property of any Talc Insurance Company, with respect to any such claim, demand, or cause of action; and**

(iv)    **except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity,**

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Talc Insurance Company, or against the property of any Talc Insurance Company, with respect to any such claim, demand or cause of action;

*provided*, *however*, that (a) the injunction set forth in this __Section 12.3.2(b)__ shall not impair in any way any (i) actions brought by the Talc Personal Injury Trust against any Talc Insurance Company and (ii) the rights of any co-insured of the Debtors (x) with respect to any Talc Insurance Policy or Talc Insurance CIP Agreement or against any Talc Insurance Company and (y) as specified under any Final Order of the Bankruptcy Court approving a Talc Insurance CIP Agreement; and (b) the Talc Personal Injury Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction set forth in this __Section 12.3.2(b)__ with respect to any Talc Insurance Company upon express written notice to such Talc Insurance Company, except that the Talc Personal Injury Trust shall not have any authority to terminate, reduce or limit the scope of the injunction herein with respect to any Settling Talc Insurance Company so long as, but only to the extent that, such Settling Talc Insurance Company complies fully with its obligations under any applicable Talc Insurance Settlement Agreement.

(c)    Reservations.  Notwithstanding anything to the contrary above, this Insurance Entity Injunction shall not enjoin:

(i)    the rights of Entities to the treatment accorded them under the Plan, as applicable, including the rights of holders of Talc Personal Injury Claims to assert such Claims, as applicable, in accordance with the Trust Distribution Procedures;

(ii)    the rights of Entities to assert any claim, debt, obligation, cause of action or liability for payment of Talc Personal Injury Trust Expenses against the Talc Personal Injury Trust;

(iii)    the rights of the Talc Personal Injury Trust to prosecute any action based on or arising from the Talc Insurance Policies;

(iv)    the rights of the Talc Personal Injury Trust to assert any claim, debt, obligation, cause of action or liability for payment against a Talc Insurance Company based on or arising from the Talc Insurance Policies or Talc Insurance CIP Agreements; and

(v)    the rights of any Talc Insurance Company to assert any claim, debt, obligation, cause of action or liability for payment against any other Talc Insurance Company that is not a Settling Talc Insurance Company, or as otherwise specifically provided in any Talc Insurance CIP Agreement.

12.4    __Supplemental Settlement Injunction Order__.  In order to preserve and promote the Imerys Settlement and the Rio Tinto/Zurich Settlement, each of which is incorporated

herein, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date.

        (a)    **Terms.**

        (i)    **All Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Imerys Released Claims directly or indirectly against the Imerys Protected Parties (or any of them) shall be permanently stayed, restrained, and enjoined from pursuing now, or at any time in the future, any Imerys Released Claims.**

        (ii)    **All Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Rio Tinto/Zurich Released Claims directly or indirectly against the Rio Tinto Protected Parties (or any of them) and/or the Zurich Protected Parties (or any of them) shall be permanently stayed, restrained, and enjoined from pursuing now, or at any time in the future, any Rio Tinto/Zurich Released Claims.**

        (b)    **Any Imerys Protected Party, Rio Tinto Protected Party, or Zurich Protected Party may enforce the Supplemental Settlement Injunction Order as a defense to any Claim brought against such Imerys Protected Party, Rio Tinto Protected Party, or Zurich Protected Party that is enjoined under the Plan as to such Imerys Protected Party, Rio Tinto Protected Party, or Zurich Protected Party and may seek to enforce such injunction in a court of competent jurisdiction.**

    12.5   <u>Reservation of Rights</u>.  Notwithstanding any other provision of the Plan to the contrary, the satisfaction, release and discharge and the Injunctions set forth in this Article XII shall not be deemed or construed to satisfy, discharge, release or enjoin claims by the Talc Personal Injury Trust, the Reorganized Debtors, or any other Entity, as the case may be, against (a) the Talc Personal Injury Trust for payment of Talc Personal Injury Claims in accordance with the Trust Distribution Procedures, (b) the Talc Personal Injury Trust for the payment of Talc Personal Injury Trust Expenses, or (c) any Talc Insurance Company that has not performed under a Talc Insurance Policy, a Talc Insurance Settlement Agreement, or a Talc Insurance CIP Agreement.  Nothing in this <u>Section 12.5</u> is intended or shall be construed to limit the assertion, applicability, or effect of any Talc Insurer Coverage Defense.

    12.6   <u>Disallowed Claims and Disallowed Equity Interests</u>.  On and after the Effective Date, the Debtors and the Reorganized Debtors shall have no liability or obligation on a Disallowed Claim or a Disallowed Equity Interest, and any order disallowing a Claim or an Equity Interest which is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such Final Order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall, nevertheless, become and be deemed to be a Final Order on the Effective Date. The Confirmation Order, except as otherwise provided herein, shall constitute a Final Order: (a) in relation to each Debtor disallowing all Claims (other than Talc Personal Injury Claims) and Equity

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

Interests to the extent such Claims and Equity Interests are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Equity Interests, and Claims for unmatured interest, and (b) in relation to each Debtor disallowing or subordinating to all other Claims, as the case may be, any Claims for penalties, punitive damages or any other damages not constituting compensatory damages.

12.7    **Exculpation.  None of the Debtors, the Reorganized Debtors, the Imerys Protected Parties, the Tort Claimants' Committee, the members of the Tort Claimants' Committee in their capacities as such, the FCR, the Information Officer nor any of their respective officers, directors and employees, members, agents, attorneys, accountants, financial advisors or restructuring professionals, nor any other professional Person employed by any one of them, shall have or incur any liability to any Person or Entity for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation of the Plan, the Disclosure Statement, the releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Person's or Entity's gross negligence, bad faith or willful misconduct); *provided, however,* that this exculpation shall not apply to Talc Insurer Coverage Defenses; *provided further* that this __Section 12.7__ shall also apply to any former officer or director of the Debtors that was an officer or director at any time during the Chapter 11 Cases but is no longer an officer or director.  In all respects, each and all of such Persons, firms and Entities shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and the administration of each of them.**

12.8    No Successor Liability.  Except as otherwise expressly provided in the Plan, the Reorganized Debtors do not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify any Entity or Person, or otherwise have any responsibility for any liabilities or obligations of the Debtors relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on or after the Effective Date.  Neither the Plan Proponents, the Reorganized Debtors, nor the Talc Personal Injury Trust is, or shall be deemed to be, a successor to any of the Debtors by reason of any theory of law or equity (except as otherwise provided in Article IV of the Plan), and none shall have any successor or transferee liability of any kind or character; *provided*, *however*, the Reorganized Debtors and the Talc Personal Injury Trust shall assume and remain liable for their respective obligations specified in the Plan and the Confirmation Order.

12.9    Corporate Indemnities.

12.9.1    Prepetition Indemnification and Reimbursement Obligations.  The respective obligations of the Debtors to indemnify and reimburse Persons who are or were directors, officers or employees of the Debtors on the Petition Date or at any time thereafter through the Effective Date, against and for any obligations pursuant to the articles of incorporation, codes of regulation, bylaws, applicable state or non-bankruptcy law, or specific agreement or any combination of the foregoing, (i) shall survive Confirmation of the Plan and remain unaffected thereby, (ii) are assumed by the Imerys Non-Debtors, and (iii) shall not be discharged under section 1141 of the Bankruptcy Code, irrespective of

whether indemnification or reimbursement is owed in connection with any event occurring before, on or after the Petition Date. In furtherance of, and to implement the foregoing, as of the Effective Date the Imerys Non-Debtors shall obtain and maintain in full force insurance for the benefit of each and all of the above-indemnified directors, officers and employees, at levels no less favorable than those existing as of the date of entry of the Confirmation Order, and for a period of no less than three (3) years following the Effective Date.

12.9.2    Plan Indemnity. In addition to the matters set forth above and not by way of limitation thereof, the Imerys Non-Debtors shall indemnify and hold harmless all Persons who are or were officers or directors of the Debtors on the Petition Date or at any time thereafter through the Effective Date on account of and with respect to any claim, cause of action, liability, judgment, settlement, cost or expense (including attorney's fees) on account of claims or causes of action threatened or asserted by any third party against such officers or directors that seek contribution, indemnity, equitable indemnity, or any similar claim, based upon or as the result of the assertion of primary claims against such third party by any representative of the Debtors' Estates.

12.9.3    Limitation on Indemnification. Notwithstanding anything to the contrary set forth in the Plan or elsewhere, the Debtors, the Reorganized Debtors, and the Imerys Non-Debtors, as applicable, shall not be obligated to indemnify and hold harmless any Entity for any claim, cause of action, liability, judgment, settlement, cost or expense that results primarily from (i) such Entity's bad faith, gross negligence or willful misconduct or (ii) a Talc Personal Injury Claim.

12.10    ERISA Pension Plans.

12.10.1    The Debtors are Affiliates of Imerys USA, Inc., C-E Minerals Inc., Kernos Inc., and IMERYS Fused Minerals Niagara Falls, Inc. (collectively "**ERISA Pension Plan Sponsors**"), and members of each of the ERISA Pension Plan Sponsors' controlled group. Specifically, (i) Imerys USA, Inc. is the contributing sponsor of the IMERYS USA Pension Plan, and the IMERYS USA, Inc. Retirement Growth Account Plan, (ii) C-E Minerals, Inc. is the contributing sponsor of the C-E Minerals Inc. Retiree Health Capital Accumulation Plan, (iii) Kernos, Inc. is the contributing sponsor of the Kerneos Inc. Pension Plan for Hourly Employees, and (iv) IMERYS Fused Minerals Niagara Falls, Inc. is the contributing sponsor of the IMERYS Fused Minerals Niagara Falls, Inc. USW Local 4-277 Pension Plan, and the Treibacher Schleifmittel North America, Inc. Pension Plan For Iam Local 1420. These six pension plans ("**ERISA Pension Plans**") are covered by ERISA and are not modified or affected by any provision of the Plan.

12.10.2    Notwithstanding any provision to the contrary, no provision contained in the Plan, Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document filed in the Chapter 11 Cases shall be construed to exculpate, discharge, release or relieve the Debtors, or any other party (other than the Buyer, unless otherwise provided for in the Asset Purchase Agreement), in any capacity, from any liability or responsibility to PBGC with respect to the ERISA Pension Plans under

US-DOCS\116913121US-DOCS\117851055RLFI 23862447v.124099286v.1

any law, governmental policy, or regulatory provision.  PBGC and the ERISA Pension Plans shall not be enjoined or precluded from enforcing such liability or responsibility, as a result of any of the provisions of the Plan (including those provisions providing for exculpation, satisfaction, release and discharge of Claims), the Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document filed in the Chapter 11 Cases.  Notwithstanding anything to the contrary herein, the Reorganized Debtors and the Talc Personal Injury Trust shall have no liability on account of the ERISA Pension Plans including but not limited to: (i)  any liability as a member of a "Controlled Group" as defined in 29 U.S.C. §1301(a)(14)(A); (ii) pursuant to the federal successor doctrine; or (iii) otherwise.

**ARTICLE XIII**
**JURISDICTION OF BANKRUPTCY COURT**

13.1    <u>Jurisdiction</u>.  Until the Chapter 11 Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out.  Except as otherwise provided in the Plan or the Talc Personal Injury Trust Agreement, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Equity Interests in the Debtors, and to adjudicate and enforce the Talc Insurance Actions, the Talc Personal Injury Trust Causes of Action, and all other causes of action which may exist on behalf of the Debtors.  Nothing contained herein shall prevent the Reorganized Debtors or the Talc Personal Injury Trust, as applicable, from taking such action as may be necessary in the enforcement of any Estate Cause of Action, Talc Insurance Action, Talc Personal Injury Trust Cause of Action, or other cause of action which the Debtors have or may have and which may not have been enforced or prosecuted by the Debtors, which actions or other causes of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein.  Nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (i) the Bankruptcy Court in fact has jurisdiction with respect to any Talc Insurance Action, (ii) any such jurisdiction is exclusive with respect to any Talc Insurance Action, or (iii) abstention or dismissal of any Talc Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Talc Insurance Action(s).  Any court other than the Bankruptcy Court that has jurisdiction over a Talc Insurance Action shall have the right to exercise such jurisdiction.

13.2    <u>General Retention</u>.  Following Confirmation of the Plan, the administration of the Chapter 11 Cases will continue until the Chapter 11 Cases are closed by a Final Order of the Bankruptcy Court.  The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims.  The failure by the Plan Proponents to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtors, the Reorganized Debtors, or the Talc Personal Injury Trust, as the case may be, to object to or re-examine such Claim in whole or part.

13.3    <u>Specific Purposes</u>.  In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction for each of the following specific purposes after Confirmation of the Plan:

82

(a)     to modify the Plan after Confirmation, pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

(b)     to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, the Talc Personal Injury Trust Agreement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c)     to assure the performance by the Talc Personal Injury Trust and the Disbursing Agent of their respective obligations to make Distributions under the Plan;

(d)     to enforce and interpret the terms and conditions of the Plan, the Plan Documents and the Talc Personal Injury Trust Agreement; to enter such orders or judgments, including, but not limited to, injunctions (i) as are necessary to enforce the title, rights and powers of the Reorganized Debtors and the Talc Personal Injury Trust, and (ii) as are necessary to enable holders of Claims to pursue their rights against any Entity that may be liable therefor pursuant to applicable law or otherwise;

(e)     to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters, including without limitation contested matters arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Chapter 11 Cases;

(f)     to hear and determine all applications for compensation of Professionals and reimbursement of expenses under sections 330, 331, or 503(b) of the Bankruptcy Code;

(g)     to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtors, the Reorganized Debtors, the other Plan Proponents, or the Talc Personal Injury Trust, and their respective current and former officers, directors, stockholders, employees, members, attorneys, accountants, financial advisors, representatives and agents;

(h)     to determine any and all motions for the rejection, assumption or assignment of Executory Contracts or Unexpired Leases and the allowance of any Claims resulting therefrom;

(i)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(j)     to determine the allowance and/or disallowance of any Claims, including Administrative Claims, against or Equity Interests in the Debtors or their Estates, including, without limitation, any objections to any such Claims and/or Equity Interests, and the compromise and settlement of any Claim, including Administrative Claims, against or Equity Interest in the Debtors or their Estates;

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

(k)      to hear and resolve disputes concerning any reserves under the Plan or the administration thereof;

(l)      to determine all questions and disputes regarding title to the assets of the Debtors or their Estates, or the Talc Personal Injury Trust;

(m)      to determine all questions and disputes regarding, and to enforce, the Imerys Settlement;

(n)      to hear and determine the Talc Insurance Actions, any Talc Personal Injury Trust Cause of Action and any similar claims, causes of action or rights of the Talc Personal Injury Trust to construe and take any action to enforce any Talc Insurance Policy or Talc Insurance CIP Agreement, and to issue such orders as may be necessary for the execution, consummation and implementation of any Talc Insurance Policy or Talc Insurance CIP Agreement, and to determine all questions and issues arising thereunder;

(o)      to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Cases;

(p)      to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Equity Interest is discharged hereunder or for any other purpose;

(q)      to enter in aid of implementation of the Plan such orders as are necessary, including, but not limited to, the implementation and enforcement of the Releases and the Injunctions described herein; and

(r)      to enter and implement such orders as may be necessary or appropriate if any aspect of the Plan, the Talc Personal Injury Trust, or the Confirmation Order is, for any reason or in any respect, determined by a court to be inconsistent with, violative of, or insufficient to satisfy any of the terms, conditions, or other duties associated with any Talc Insurance Policies, *provided however*, (i) such orders shall not impair the Talc Insurer Coverage Defenses or the rights, claims, or defenses, if any, of any Talc Insurance Company that are set forth or provided for in the Plan, the Plan Documents, the Confirmation Order, or any other Final Orders entered in the Debtors' Chapter 11 Cases, (ii) this provision does not, in and of itself, grant this Court jurisdiction to hear and decide disputes arising out of or relating to the Talc Insurance Policies, and (iii) all interested parties, including any Talc Insurance Company, reserve the right to oppose or object to any such motion or order seeking such relief.

Notwithstanding anything herein to the contrary, however, such retention of jurisdiction by the Bankruptcy Court in this Section 13.3 shall not be deemed to be a retention of exclusive jurisdiction with respect to any matter described in this Section 13.3; rather, any court other than the Bankruptcy Court which has jurisdiction over any matter described in this Section 13.3 shall

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

have the right to exercise such jurisdiction. To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the ~~forging~~ foregoing matters, the reference to the "Bankruptcy Court" in this Article shall be deemed to be replaced by the "District Court." Nothing contained in this Section shall expand the exclusive jurisdiction of the Bankruptcy Court beyond that provided by applicable law.

13.4    <u>District Court Jurisdiction</u>.  The District Court shall, without regard to the amount in controversy, retain exclusive jurisdiction after entry of the Affirmation Order to hear and determine any motion to extend the Channeling Injunction to a Talc Insurance Company, and shall be deemed to have withdrawn the reference to the Bankruptcy Court for such purpose.

13.5    <u>Reservation of Rights</u>.  Nothing contained in the Plan will (i) constitute a waiver of any claim, right or cause of action that a Debtor, the Reorganized Debtors, or the Talc Personal Injury Trust, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement, except to the extent the insurer is a Settling Insurance Company; or (ii) limit the assertion, applicability or effect of any Talc Insurer Coverage Defense.

13.6    <u>Compromises of Controversies</u>.  From and after the Effective Date, the Reorganized Debtors and/or the Talc Personal Injury Trust, as appropriate based on assets and liabilities retained or owed by each respectively, shall be authorized to compromise controversies on such terms as they may determine, in their sole discretion, to be appropriate, without notice to any other party or approval of or notice to the Bankruptcy Court.

# ARTICLE XIV
## MISCELLANEOUS PROVISIONS

14.1    <u>Closing of Chapter 11 Cases</u>.  The Reorganized Debtors shall, promptly after the full administration of each Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Chapter 11 Case.

14.2    <u>Timing of Distributions or Actions</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

14.3    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or an instrument, agreement or other document executed under the Plan provides otherwise, the rights, duties and obligations arising under the Plan, and the instruments, agreements and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Delaware without giving effect to the principles of conflicts of law thereof.

14.4    <u>Entire Agreement</u>.  The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents.  No Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

14.5    <u>Headings</u>.  Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

14.6    <u>Severability</u>.  If, prior to entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the consent of Imerys S.A., the Tort Claimants' Committee, and the FCR, which consent shall not be unreasonably withheld), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable pursuant to its terms.

14.7    <u>Notices</u>.  All notices, requests and demands required or permitted to be provided to the Debtors, the Reorganized Debtors, or the Plan Proponents under the Plan, in order to be effective, shall be in writing, and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, to the addresses set forth below:

**THE DEBTORS:**

IMERYS TALC AMERICA, INC.,
Attention: Ryan Van Meter, Esq.
100 Mansell Court East, Suite 300
Roswell, Georgia 3007
Telephone:  (770) 645-3739
Facsimile:  (770) 645-3475
Email:  ryan.vanmeter@imerys.com

**COUNSEL FOR THE DEBTORS:**

RICHARDS, LAYTON & FINGER, P.A.   LATHAM & WATKINS LLP
Mark D. Collins, Esq.             Jeffrey E. Bjork, Esq.
Michael J. Merchant, Esq.         Kimberly A. Posin, Esq.
Amanda R. Steele, Esq.            Helena G. Tseregounis, Esq.
Brett M. Haywood, Esq.            Shawn P. Hansen, Esq.
One Rodney Square                 355 South Grand Avenue, Suite 100
920 North King Street             Los Angeles, California 90071-1560
Wilmington, DE  19801             Telephone:  (213) 485-1234
Telephone:  (302) 651-7700        Facsimile:  (213) 891-8763

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
        merchant@rlf.com
        steele@rlf.com
        haywood@rlf.com

E-mail:  jeff.bjork@lw.com
        kim.posin@lw.com
        helena.tseregounis@lw.com
        shawn.hansen@lw.com

- and -

Richard A. Levy, Esq.
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  richard.levy@lw.com

**COUNSEL FOR THE TORT
CLAIMANTS' COMMITTEE:**

**COUNSEL FOR THE FCR:**

ROBINSON & COLE LLP
Natalie D. Ramsey, Esq.
Mark A. Fink, Esq.
1201 North Market Street, Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Facsimile: (302) 516-1699
E-mail:  nramsey@rc.com
         mfink@rc.com

YOUNG CONAWAY STARGATT &
TAYLOR LLP
Robert S. Brady, Esq.
Edwin J. Harron, Esq.
Sharon M. Zieg, Esq.
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

E-mail:  rbrady@ycst.com
        eharron@ycst.com
        szieg@ycst.com

- and -

Michael R. Enright, Esq.
280 Trumbull Street
Hartford, Connecticut 06103
Telephone: (860) 275-8290
Facsimile: (860) 275-8299
E-mail:  menright@rc.com

**COUNSEL FOR THE IMERYS PLAN PROPONENTS:**

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

HUGHES HUBBARD & REED LLP
Christopher Kiplok, Esq.
Dustin P. Smith, Esq.
Erin Diers, Esq.
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

E-mail:  christopher.kiplok@hugheshubbard.com
         dustin.smith@hugheshubbard.com
         erin.diers@hugheshubbard.com

14.8    Notice to Other Entities.    After the occurrence of the Effective Date, the Reorganized Debtors have authority to send a notice to entities providing that to continue to receive documents pursuant to Bankruptcy Rule 2002, such entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; provided, that neither of: (i) the U.S. Trustee and (ii) counsel of record to Imerys S.A., need not file such a renewed request and shall continue to receive documents without any further action being necessary.  After the occurrence of the Effective Date, the Reorganized Debtors are authorized to limit the list of entities receiving documents pursuant to Bankruptcy Rule 2002 to: (i) the U.S. Trustee; (ii) counsel of record to Imerys S.A.; and (iii) those entities that have filed such renewed requests.

14.9    Plan Supplement.  Any and all exhibits, lists, or schedules referred to herein but not filed with the Plan shall be contained in the Plan Supplement to be filed with the Clerk of the Bankruptcy Court prior to the Confirmation Hearing on the Plan, and such Plan Supplement is incorporated into and is part of the Plan as if set forth in full herein.  The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours, at the website maintained by the Claims Agent (https://case.primeclerk.com/imerystalc), and at the Bankruptcy Court's website (ecf.deb.uscourts.gov).

14.10    Inconsistencies.    To the extent the Plan is inconsistent with the Disclosure Statement or other Plan Documents, the provisions of the Plan shall be controlling.  To the extent the Plan is inconsistent with the Confirmation Order on the Plan, the provisions of such Confirmation Order shall be controlling.

14.11    Withholding of Taxes.  The Disbursing Agent, the Talc Personal Injury Trust or any other applicable withholding agent, as applicable, shall withhold from any assets or property distributed under the Plan any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

14.12    Transfer Taxes.  Pursuant to section 1146 of the Bankruptcy Code, and to the fullest extent permitted by law, no stamp tax, transfer tax, filing fee, sales or use tax or other similar tax shall be imposed or assessed by any taxing authority on account of (i) the transfer of any assets or property pursuant to the Plan; (ii) the making or delivery of an instrument of transfer under the Plan; or (iii) the termination or extinguishment of any Equity Interests.  The appropriate state or

local government officials or agents shall be directed to forego the collection of any such tax and to accept for filing or recordation of any of the foregoing instruments or other documents without the payment of any such tax.

14.13  <u>Binding Effect</u>.  The rights, duties and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

14.14  <u>Payment of Statutory Fees</u>.  All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.  The Reorganized Debtors shall pay all such fees that arise after the Effective Date, but before the closing of the Chapter 11 Cases, and shall comply with all applicable statutory reporting requirements.

14.15  <u>Duty to Cooperate</u>.  Nothing in the Plan, the other Plan Documents or the Confirmation Order shall relieve (by way of injunction or otherwise) any Entity that is or claims to be entitled to indemnity under a Talc Insurance Policy from any duty to cooperate that may be required by any such insurance policy or under applicable law with respect to the defense and/or settlement of any Claim for which coverage is sought under such Talc Insurance Policy.  To the extent that any ~~entity~~ Entity incurs costs in satisfying such duty to cooperate with respect to Talc Personal Injury Claims, the Talc Personal Injury Trust shall reimburse such ~~entity~~ Entity for all such reasonable out-of-pocket expenses.

14.16  <u>Effective Date Actions Simultaneous</u>.  Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

14.17  <u>Consent to Jurisdiction</u>.  Upon default under the Plan, the Reorganized Debtors, the Talc Personal Injury Trust, the Talc Trustees, the Tort Claimants' Committee, the FCR, and the Imerys Protected Parties, respectively, consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

US-DOCS\116913121US-DOCS\117851055RLF1 23862447v.124099286v.1

Dated: ~~August 12~~September [ ___ ], 2020

       Wilmington, Delaware

**IMERYS TALC AMERICA, INC.**
(On behalf of itself and each of the Debtors)
*/s/*_____
[ ● ]


**TORT CLAIMANTS' COMMITTEE**
*/s/*_____
[ ● ]


**FUTURE CLAIMANTS' REPRESENTATIVE**
*/s/*_____
[ ● ]


**IMERYS S.A.**
(On behalf of itself and each of the Imerys Plan Proponents)
*/s/*_____
[ ● ]

**COUNSEL FOR THE PLAN PROPONENTS**

**COUNSEL FOR THE DEBTORS:**

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins, Esq.
Michael J. Merchant, Esq.
Amanda R. Steele, Esq.
Brett M. Haywood, Esq.
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
              merchant@rlf.com
              steele@rlf.com
              haywood@rlf.com

LATHAM & WATKINS LLP
Jeffrey E. Bjork, Esq.
Kimberly A. Posin, Esq.
Helena G. Tseregounis, Esq.
Shawn P. Hansen, Esq.
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
              kim.posin@lw.com
              helena.tseregounis@lw.com
              shawn.hansen@lw.com

- and -

Richard A. Levy, Esq.
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  richard.levy@lw.com

**COUNSEL FOR THE TORT
CLAIMANTS' COMMITTEE:**

ROBINSON & COLE LLP
Natalie D. Ramsey, Esq.
Mark A. Fink, Esq.
1201 North Market Street, Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Facsimile: (302) 516-1699
E-mail:  nramsey@rc.com
              mfink@rc.com

- and -

Michael R. Enright, Esq.
280 Trumbull Street
Hartford, Connecticut 06103

**COUNSEL FOR THE FCR:**

YOUNG CONAWAY STARGATT &
TAYLOR LLP
Robert S. Brady, Esq.
Edwin J. Harron, Esq.
Sharon M. Zieg, Esq.
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
E-mail:  rbrady@ycst.com
              eharron@ycst.com
              szieg@ycst.com

Telephone: (860) 275-8290
Facsimile: (860) 275-8299
E-mail:  menright@rc.com


**COUNSEL FOR THE IMERYS PLAN PROPONENTS:**

HUGHES HUBBARD & REED LLP
Christopher Kiplok, Esq.
Dustin P. Smith, Esq.
Erin Diers, Esq.
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
E-mail:  christopher.kiplok@hugheshubbard.com
            dustin.smith@hugheshubbard.com
            erin.diers@hugheshubbard.com

**<u>EXHIBIT A</u>**

**Trust Distribution Procedures**

~~(To Come)~~

# **EXHIBIT B**

## **Talc Personal Injury Trust Agreement**

### (To Come)

---

**SCHEDULE I**

**Imerys Corporate Parties**

**CURRENT AFFILIATES**

- 000 CALDERYS
- AFRICA REFRACTORY CONSULTANTS (PTY) LTD
- AKROTIRIO THAHILAS DYO S.A.
- ALMATECH MINERAL INTERNATIONAL LTD
- ALMERIA, SA DE CV
- ALUMICA CANADA INC.
- AMERICARB, INC.
- AMMIN HOLDINGS, INC.
- ANGANG STOLLBERG & SAMIL CO., LTD
- ARDOISIERES D'ANGERS
- AUSTRALIAN VERMICULITE INDUSTRIES (PTY) LTD
- B & B REFRACTORY SERVICES PTY LTD
- CALDERYS ALGERIE SERVICES SPA
- CALDERYS ALGERIE SPA
- CALDERYS AUSTRALIA PTY LTD
- CALDERYS BELGIUM
- CALDERYS CHINA CO., LTD
- CALDERYS DANMARK A/S
- CALDERYS DEUTSCHLAND GMBH
- CALDERYS FINLAND OY
- CALDERYS FRANCE
- CALDERYS IBERICA REFRACTARIOS, SA
- CALDERYS INDIA REFRACTORIES LIMITED
- CALDERYS ITALIA SRL
- CALDERYS JAPAN CO., LTD
- CALDERYS KOREA CO. LTD
- CALDERYS MAGYARORSZAG K.F.T. (HUNGARY)
- CALDERYS NGJ LIMITED
- CALDERYS NORDIC AB
- CALDERYS POLSKA SP. Z.O.O.
- CALDERYS REFRACTARIOS VENEZOLANOS SA
- CALDERYS REFRAKTER
- CALDERYS SOUTH AFRICA (PTY) LTD
- CALDERYS TAÏWAN CO LTD
- CALDERYS THE NETHERLANDS B.V.
- CALDERYS UK LTD
- CALDERYS UKRAINE LTD
- CALDERYS USA, INC.

- CEBO HOLLAND B.V.
- CEBO INTERNATIONAL B.V.
- CEBO MARINE  B.V.
- CEBO UK LIMITED
- CHANGBAI CELITE DIATOMITE CO., LTD
- DONBASSKERAMIKA
- DONKAOLIN
- ECCA HOLDINGS (PTY) LTD
- ECCA MINERALS (PTY) LTD
- ECO-BOS DEVELOPMENT LIMITED
- ELMIN BAUXITES SA
- FAGERSTA ELDFASTA AB
- FIBERLEAN TECHNOLOGIE LIMITED
- FIBERLEAN TECHNOLOGIE NA INC.
- FIBERLEAN TECNOLOGIA E SOLUCOES EIRELI
- FOKIS MINING PARK
- GIMPEX-IMERYS INDIA PRIVATE LTD
- GUIYANG JIANAI SPECIAL ALUMINATES
- HARBORLITE AEGEAN ENDUSTRI MINERALLERI SANAYI A.S.
- IMERTECH
- IMERTECH USA, INC.
- IMERYS  KILN FURNITURE HUNGARY KFT.
- IMERYS (SHANGHAI) INVESTMENT MANAGEMENT CO., LTD
- IMERYS ADMINISTRATIVE GERMANY GMBH
- IMERYS AL ZAYANI FUSED MINERALS CO. W.L.L.
- IMERYS ALÜMINÄT DIS TICARET
- IMERYS ALUMINATES ASIA PACIFIC PTE LTD
- IMERYS ALUMINATES GMBH
- IMERYS ALUMINATES ITALIA S.R.L.
- IMERYS ALUMINATES LIMITED
- IMERYS ALUMINATES NORDIC AB
- IMERYS ALUMINATES SA
- IMERYS ARGENTINA SRL
- IMERYS ASIA PACIFIC PTE LTD
- IMERYS BELGIUM SA
- IMERYS BENTONITE GEORGIA LTD
- IMERYS BENTONITE HUNGARY KFT
- IMERYS BENTONITE ITALY S.P.A.
- IMERYS CANADA INC.
- IMERYS CARBONATES (THAILAND), LTD
- IMERYS CARBONATES AUSTRIA GMBH
- IMERYS CARBONATES INDIA LIMITED
- IMERYS CARBONATES USA, INC.
- IMERYS CERAMICS (INDIA) PRIVATE LIMITED

- IMERYS CERAMICS (THAILAND) LTD
- IMERYS CERAMICS BRASIL MINERAIS PARA CERAMICAS LTDA
- IMERYS CERAMICS EGYPT
- IMERYS CERAMICS FRANCE
- IMERYS CERAMICS ITALY S.R.L.
- IMERYS CERAMICS MEXICO SA DE CV
- IMERYS CERAMICS NEW ZEALAND
- IMERYS CERAMICS PORTUGAL, SA
- IMERYS CLAYS, INC.
- IMERYS CSI SWITZERLAND SAGL
- IMERYS DIATOMITA ALICANTE, S.A.
- IMERYS DIATOMITA MEXICO, SA DE CV
- IMERYS DO BRASIL COMERCIO
- IMERYS FILTRATION FRANCE
- IMERYS FILTRATION MINERALS, INC.
- IMERYS FUSED MINERALS (YINGKOU) CO., LTD
- IMERYS FUSED MINERALS BEYREDE SAS
- IMERYS FUSED MINERALS DOMODOSSOLA S.P.A.
- IMERYS FUSED MINERALS FRANCE SARL
- IMERYS FUSED MINERALS GREENEVILLE, INC.
- IMERYS FUSED MINERALS GUIZHOU CO. LTD
- IMERYS FUSED MINERALS LAUFENBURG GMBH
- IMERYS FUSED MINERALS MURG GMBH
- IMERYS FUSED MINERALS NIAGARA FALLS, INC.
- IMERYS FUSED MINERALS RUSE D.O.O.
- IMERYS FUSED MINERALS SALTO LTDA
- IMERYS FUSED MINERALS TEUTSCHENTHAL GMBH
- IMERYS FUSED MINERALS VILLACH GMBH
- IMERYS FUSED MINERALS ZSCHORNEWITZ GMBH
- IMERYS GECKO GRAPHITE (NAMIBIA) (PTY) LTD
- IMERYS GECKO HOLDING (NAMIBIA) (PTY) LTD
- IMERYS GECKO OKANJANDE MINING (PTY) LTD
- IMERYS GRAPHITE & CARBON BELGIUM SA
- IMERYS GRAPHITE & CARBON CANADA INC.
- IMERYS GRAPHITE & CARBON JAPAN KK
- IMERYS GRAPHITE & CARBON KOREA
- IMERYS GRAPHITE & CARBON SWITZERLAND SA
- IMERYS HIGH RESISTANCE MINERALS JAPAN KK
- IMERYS INDUSTRIAL MINERALS DENMARK A/S
- IMERYS INDUSTRIAL MINERALS GREECE S.A.
- IMERYS ITATEX SOLUCOES MINERAIS LTDA
- IMERYS KAOLIN, INC.
- IMERYS KILN FURNITURE (THAILAND) CO. LTD
- IMERYS KILN FURNITURE ESPAÑA, SA

- IMERYS METALCASTING FRANCE SARL
- IMERYS METALCASTING GERMANY GMBH
- IMERYS MICA KINGS MOUTAIN, INC.
- IMERYS MIDDLE EAST HOLDING COMPANY W.L.L.
- IMERYS MINERAL AB
- IMERYS MINERAL ARABIA LLC
- IMERYS MINERALES ARGENTINA S.A.
- IMERYS MINERALES CHILE SPA
- IMERYS MINERALES PERU SAC
- IMERYS MINERALI CORSICO SRL
- IMERYS MINERALI SPA
- IMERYS MINERALS (INDIA) PRIVATE LIMITED
- IMERYS MINERALS (TAIWAN) LTD
- IMERYS MINERALS (THAILAND) LTD
- IMERYS MINERALS AUSTRALIA PTY LTD
- IMERYS MINERALS BULGARIA AD
- IMERYS MINERALS CHINA, INC.
- IMERYS MINERALS GMBH
- IMERYS MINERALS HOLDING LIMITED
- IMERYS MINERALS INTERNATIONAL SALES
- IMERYS MINERALS JAPAN KK
- IMERYS MINERALS KOREA LTD
- IMERYS MINERALS LTD
- IMERYS MINERALS MALAYSIA SDN. BHD.
- IMERYS MINERALS NETHERLANDS B.V.
- IMERYS MINERALS OY
- IMERYS MINERALS USA, INC.
- IMERYS MINERALS VIETNAM LIMITED
- IMERYS MINERAUX BELGIQUE SA
- IMERYS MINÉRAUX FRANCE
- IMERYS NEWQUEST (INDIA) PRIVATE LIMITED
- IMERYS OILFIELD MINERALS, INC.
- IMERYS PACIFIC LTD
- IMERYS PARTICIPACOES LTDA
- IMERYS PCC FRANCE
- IMERYS PCC UK
- IMERYS PERFORMANCE AND FILTRATION MINERALS PRIVATE LIMITED
- IMERYS PERLITA BARCELONA, S.A.
- IMERYS PERLITE SARDINIA S.R.L.
- IMERYS PERLITE USA, INC.
- IMERYS PIGMENTS (QINGYANG) CO., LTD
- IMERYS PIGMENTS (WUHU) CO., LTD
- IMERYS RE
- IMERYS REFRACTORY MINERALS CLERAC

- IMERYS REFRACTORY MINERALS GLOMEL
- IMERYS REFRACTORY MINERALS INTERNATIONAL SALES
- IMERYS REFRACTORY MINERALS SOUTH AFRICA (PTY) LTD
- IMERYS REFRACTORY MINERALS USA, INC.
- IMERYS RIO CAPIM CAULIM SA
- IMERYS SERAMIK HAMMADDELERI SANAYI VE TICARET LIMITED SIRKETI
- IMERYS SERVICES
- IMERYS SERVICES GERMANY GMBH & CO. KG
- IMERYS SERVICES GREECE
- IMERYS SOUTH AFRICA (PTY) LTD
- IMERYS SOUTH EUROPE, S.L.
- IMERYS SPECIALITIES JAPAN CO., LTD
- IMERYS STEELCASTING DO BRASIL LTDA
- IMERYS STEELCASTING INDIA PRIVATE LIMITED
- IMERYS STEELCASTING USA, INC.
- IMERYS TABLEWARE CR S.R.O.
- IMERYS TABLEWARE DEUTSCHLAND GMBH
- IMERYS TABLEWARE FRANCE
- IMERYS TALC AUSTRALIA PTY LTD
- IMERYS TALC AUSTRIA GMBH
- IMERYS TALC BELGIUM
- IMERYS TALC EUROPE
- IMERYS TALC FINLAND OY
- IMERYS TALC GERMANY GMBH
- IMERYS TALC ITALY S.P.A. [3]
- IMERYS TALC LUZENAC FRANCE
- IMERYS TALC MEXICO, SA DE CV
- IMERYS TALC SPAIN, S.A.
- IMERYS TALC UK HOLDING LTD
- IMERYS TCSI SWITZERLAND SAGL
- IMERYS TRADING MINERALS EGYPT
- IMERYS TRUSTEES LTD
- IMERYS UK FINANCE LIMITED
- IMERYS UK LTD
- IMERYS UK PENSION FUND TRUSTEES LTD
- IMERYS USA, INC.
- IMERYS WOLLASTONITE USA, LLC
- IMERYS ZHEJIANG ZIRCONIA CO., LTD
- INDUSTRIA MACINAZIONE MINERALI PER L'INDUSTRIA CERAMICA S.P.A
- INDUSTRIAL MINERALS OF GREECE
- ISOCON S.A.

---

[3].    Imerys Talc Italy S.p.A. is only an Imerys Corporate Party to the extent it does not commence a
bankruptcy case.

- KAOLIN AUSTRALIA PTY LTD
- KENTUCKY-TENNESSEE CLAY COMPANY
- KERNEOS (CHINA) ALUMINATE TECHNOLOGIES CO., LTD
- KERNEOS AUSTRALIA PTY LTD
- KERNEOS CORPORATE SAS
- KERNEOS DO BRASIL COMERCIAL LTDA
- KERNEOS GROUP SAS
- KERNEOS HOLDING NORTHERN EUROPE LIMITED
- KERNEOS INC.
- KERNEOS INDIA ALUMINATE PRIVATE LIMITED
- KERNEOS INDIA ALUMINATE TECHNOLOGIES PRIVATE LIMITED
- KERNEOS SOUTHERN AFRICA PTY LTD
- KINTA POWDERTEC SDN. BHD
- LATOMIA N. KORAKAS SA
- LAVIOSA CHIMICA MINERARIA SPA
- LAVIOSA PROMASA S.A.
- LINJIANG  IMERYS DIATOMITE CO., LTD
- LIQUID QUIMICA MEXICANA, SA DE CV
- LLC IMERYS ALUMINATES
- METALLEION METALLEYMATON
- MICRON-ITA INDUSTRIA E COMERCIO DE MINERAIS LTDA
- MICRON-ITA MINERACAO LTDA
- MIKRO MINERAL ENDUSTRIYEL MINERALLER SANAYI VE TICARET A.S.
- MILOS INITIATIVE
- MILOS MINING MUSEUM
- MINERA ROCA RODANDO  S.DE R.L. DE C.V.
- MINERAL RESOURCES DEVELOPMENT (M.R.D.) CO. LTD
- MINERALIEN SCHIFFAHRT SPEDITION UND TRANSPORT GMBH - MST
- MINVEN - (C-E MINERALES DE VENEZUELA)
- MIRCAL
- MIRCAL AUSTRALIA PTY LTD
- MIRCAL BRESIL
- MIRCAL DE MEXICO SA DE CV
- MIRCAL EUROPE
- MIRCAL ITALIA SPA
- MONREFCO GMBH
- MRD-ECC CO. LTD
- MSL MINERAIS S.A.
- NIIGATA GCC LTD
- NIPPON POWER GRAPHITE CO., LTD
- NORTH AFRICAN INDUSTRIAL MINERAL EXPLORATION SARL - NAIMEX
- NYCO MINERALS, LLC
- ORGANIK MADENCILIK AS
- PABALK MADEN SANAYI VE TICARET A.S.

- PARIMETAL
- PARNASSE TRENTE DEUX
- PERAMIN AB
- PERGEM MINERAL MADENCILIK SANAYI VE TICARET AS
- PGB SA
- PLIBRICO INSTALLACIONES REFRACTARIAS
- PPSA
- PPSA OVERSEAS LTD
- PT BINAH SURINDAH CEMERLANG
- PT ESENSINDO CIPTA CEMERLANG
- PT IMERYS CERAMICS INDONESIA
- PT INDOPORLEN
- PT INDOPORLEN SAKTI
- PT STOLLBERG - SAMIL INDONESIA
- PYRAMAX CERAMICS SOUTHEAST, LLC
- QA REFRACTORIES (PTY) LTD
- QINGDAO STOLLBERG & SAMIL CO., LTD
- QS ABRASIVI MARENGO SRL
- QUARTZ CORP (SHANGHAÏ) CO., LTD
- RECLAYM LIMITED
- REFRACTORY MINERALS (PTY) LTD
- RT 043 MINERACAO LTDA
- RUMICO FEUERFESTE BAUSTOFFE GMBH
- S&B BENTONITE CHAOYANG CO., LTD
- S&B ENDUSTRIYEL MINERALLER A.S.
- S&B HOLDING GMBH
- S&B INDUSTRIAL MINERALS (HENAN) CO., LTD
- S&B INDUSTRIAL MINERALS MOROCCO S.A.R.L.
- S&B INDUSTRIAL MINERALS SPAIN S.L.U.
- S&B MINERALS FINANCE SARL
- S&B MINERALS PARTICIPATIONS SARL
- S&B WINES S.A.
- SAMREC (PTY) LTD
- SERVICIOS PIEDRA TUMBANTE S.DE R.L. DE C.V.
- SHANDONG IMERYS MOUNT TAI CO., LTD
- SIBIMIN OVERSEAS LTD
- SPRINDEALS SIX PTY LTD
- STOLLBERG & SAMI CO., LTD
- TERMORAK (THAILAND) CO LTD
- THE QUARTZ CORP AS
- THE QUARTZ CORP SAS
- THE QUARTZ CORP USA
- TYGERKLOOF MINING (PTY) LTD
- US CERAMICS LLC

- VATUTINSKY KOMBINAT VOGNETRYVIV
- VERMICULITA Y DERIVADOS, SL
- VOUGIOUKLI QUARRIES AVEE
- XINYANG ATHENIAN MINING CO., LTD
- YBB CALCIUM PRODUCTS CO. LTD
- YUEYANG IMERYS ANTAI MINERALS CO., LTD
- ZHENGZHOU JIANAI SPECIAL ALUMINATES CO., LTD

**FORMER AFFILIATES**

- 11656490 CANADA INC.
- ADVANCED MINERALS CORPORATION
- AKROTIRIO TRAHILAS TRIA S.A.
- AMERICAN TRIPOLI, INC.
- ANADOLU PERLIT MEDENCILIK SANAYI
- ARC FUSED ALUMINA
- ARDOISE ET JARDIN
- AREFCON B.V.
- AREFCON HISMA B.V.
- ASSOS MERMER SANAYI VE TICARET LTD SIRKETI
- BAOTOU JINGYUAN GRAPHITE CO., LTD
- BLX TRADING SAS
- CALDERYS CHINA
- CALDERYS CZECH S.R.O
- CALDERYS DE MEXICO SA DE CV
- CALDERYS NORWAY AS
- CAPTELIA
- CARBONATOS ANDINOS SA
- C-E NEWELL, INC.
- CELITE MEXICANA, SA DE CV
- CHARGES MINERALES DU PERIGORD - CMP
- CHOICEWISE LIMITED
- CONDIMENTUM OY
- COVEO
- DALIAN JINSHENG FINE CHEMICAL INDUSTRY CO., LTD
- DAMOLIN ETRECHY
- DAMOLIN GMBH
- DAMOLIN INVESTMENT A/S
- DOLPHIN FELDSPAR PRIVATE  LIMITED
- DOYET TERRE CUITE
- ECC OVERSEAS INVESTMENTS LTD
- ECC PACIFIC (AUSTRALIA) PTY LTD
- ECCA CALCIUM PRODUCTS, INC.
- EDWIN H. BRADLEY HOLDINGS LTD

- ELMIN BAUXITES S.R.L.
- ENGLISH CHINA CLAYS LTD
- EUROARGILLE
- EUROPE COMMERCE REFRACTORY
- FEL-MAC COMPANY LLC
- GOONAMARRIS LIMITED
- GRAN BIANCO CARRARA SRL
- GUIZHOU S&B NEW-TYPE MATERIALS CO., LTD
- GUIZHOU STAR MINERALS CO., LTD
- GUNUNG IMBANGAN SDN. BHD
- HARBORLITE (UK) LTD
- HJM INDUSTRIES SDN. BHD
- IGM FOR FIBRE GLASS
- IMERPLAST UK LIMITED
- IMERYS (SHANGHAÏ) FILTRATION MINERALS TRADING CO., LTD
- IMERYS ADVANCED MATERIALS (YINGKOU) CO., LTD
- IMERYS BENTONITE USA, LLC
- IMERYS CALCIUM SOLUTIONS AUSTRIA GMBH
- IMERYS CANADA 2004, INC.
- IMERYS CANADA LP
- IMERYS CARBONATES LLC
- IMERYS CERAMICS ESPAÑA
- IMERYS CERAMICS ITALIA
- IMERYS FINE CHEMICAL (CHANGSHU) CO., LTD
- IMERYS FUSED MINERALS (TAICANG) CO., LTD
- IMERYS FUSED MINERALS (ZIBO) CO., LTD
- IMERYS FUSED MINERALS HULL LIMITED
- IMERYS GRAPHITE & CARBON (CHANGZHOU) CO., LTD
- IMERYS GRAPHITE & CARBON GERMANY GMBH
- IMERYS GRAPHITE & CARBON USA, INC.
- IMERYS KAOLIN BELGIUM
- IMERYS KILN FURNITURE FRANCE
- IMERYS MICA SUZORITE INC.
- IMERYS MINERALES ESPANA, S.L.
- IMERYS MINERALES PERU S.A.C.
- IMERYS MINERALES SANTIAGO LIMITADA
- IMERYS MINERALI GAMALERO SRL
- IMERYS MINERALS (HEZHOU) CO., LTD
- IMERYS MINERALS CALIFORNIA, INC.
- IMERYS MINERALS HONG KONG LIMITED
- IMERYS MINERAUX DE TUNISIE "IMT"
- IMERYS MINING DEVELOPMENT (QINGYANG) CO., LTD
- IMERYS PAPER CARBONATES LLC
- IMERYS PERLITA PAULINIA MINERAIS LTDA

- IMERYS PIGMENTS TRADING (SHANGHAI) CO., LTD
- IMERYS PIGMENTS, INC.
- IMERYS REFRACTARIOS PARTICIPACOES MONTE DOURADO LTDA
- IMERYS REFRACTORY MINERALS JAPAN KK
- IMERYS TABLEWARE BALKANS SRL
- IMERYS TABLEWARE GUANGZHOU CO., LTD
- IMERYS TABLEWARE NEW ZEALAND LTD
- IMERYS TALC CALIFORNIA, INC.
- IMERYS TALC DELAWARE, INC.
- IMERYS TALC OHIO, INC.
- IMERYS TC
- IMERYS TECHNOLOGY CENTER AUSTRIA GMBH
- IMERYS TOITURE BELGIE N.V.
- IMERYS VOSTOK
- IMERYS WINDFARM PROJECT LTD
- IMERYS YILONG ANDALUSITE (XINJIANG) CO, LTD
- IMPALA ADMINCO LTD
- INDUSTRIALMIN
- ITACA S.R.L.
- KAOLINS DE NOZAY (SOCIÉTÉ ANONYME DES)
- KAOPOLITE, INC.
- KERAPLAN GMBH
- KERN TECH 1
- KERN TECH 2
- KERN TECH 3
- KERNEOS DE MEXICO SA DE CV
- KERNEOS ESPANA SL
- KERNEOS HOLDING GROUP SAS
- KERNEOS HOLDING NORTH AMERICA, INC.
- KERNEOS POLSKA SP. Z.O.O.
- KERNEOS SERVICIOS SA DE CV
- KILITEAM V
- KORUND D.O.O.
- KPCL   K.V.S.
- LA FRANCAISE DES TUILES ET BRIQUES
- L-IMERYS INDUSTRIA E COMERCIO DE CAL LTDA
- LUXOL PHOTOVOLTAICS SN
- LUZENAC MICRO MILLING LIMITED
- MAGEMO SCI
- MASSA MINERALI SRL
- MATISCO DEVELOPPEMENT
- METRAMCO (PTY) LTD
- MINERAL HOLDINGS, INC.
- MINERALS MILLING TUNISIA

- MINERALS TRADING, INC.
- MIRCAL ARGENTINA SRL
- MIRCAL ASIA
- MIRCAL CHILI
- MIRCAL TALC HOLDING
- MSL OVERSEAS LTD
- MULLITE COMPANY OF AMERICA – MULCOA
- N.G. JOHNSON (NORTHERN) HOLDINGS LIMITED
- N.G. JOHNSON LIMITED
- NIZEROLLES
- NYCO MINERALS CANADA, INC.
- PANSHI HUANYU WOLLASTONITE CO., LTD
- PARNASSE TRENTE ET UN
- PARNASSE TRENTE TROIS
- PARNASSE VINGT DEUX
- PERU MINERALS CORPORATION
- PERUCO, INC.
- PLIBRICO LTD
- PLR REFRACTAIRES SAS U
- PROFIMO
- PROPERTY COMPANY ONE
- PROPERTY COMPANY TWO
- PYRAMAX CERAMICS ARKANSAS, LLC
- PYRAMAX CERAMICS, LLC
- QUARTZ DE MAURITANIE SA
- RECURSOS MINERALES DEL NORTE, SA DE CV
- S&B INDUSTRIAL MINERALS (SHANGHAI) CO., LTD
- S&B INDUSTRIAL MINERALS (TIANJIN) CO., LTD
- S&B MINERALS LIMITED
- S&B MINERALS PARTICIPATIONS 2 SARL
- S&B MINERALS PARTICIPATIONS LLC
- S&B MINERALS US HOLDING GMBH
- S&B MINERALS VERWALTUNG GMBH
- SAMREC VERMICULITE (ZIMBABWE) ( PRIVATE) LTD
- SCEA STE COLOMBE
- SCOVER PLUS
- SEG
- SET LININGS GMBH
- SIDEX MONOLITHIQUES SRL
- SILLA DE PAITA S.A.C.
- SLS BAUSTOFFE GESELLSCHAFT MBH
- SOCIEDAD MINERA CELITE DEL PERU SA
- SOCIETE DE VALORISATION DES MINERAUX INDUSTRIELS SAS
- SOTRIVAL

- TALIMMO
- TENNESSEE ELECTRO MINERALS, INC. – TECO
- TERMORAK AB
- TERMORAK OY
- TOKAI CERAMICS CO., LTD
- TREIBACHER SCHLEIFMITTEL ABRASIVES KAILI CO., LTD
- TREIBACHER SCHLEIFMITTEL ASIA LTD
- TREIBACHER SCHLEIFMITTEL INTERNATIONALE VERTRIEBS MBH
- TREIBACHER SCHLEIFMITTEL ITALIA P. MAROZZI & CO SAS
- UCM GROUP LTD
- UCM MAGNESIA, INC.
- UNITEC CERAMICS LIMITED
- VERMICULITE INTERNATIONAL SALES
- WORLD MINERALS AMERICA LATINA, SA
- WORLD MINERALS USD LLC
- WORLD MINERALS USD SARL
- ZHENGZHOU TREIBACHER SCHLEIFMITTEL TENGDA ABRASIVES CO., LTD

**SCHEDULE II**

**Imerys Plan Proponents**

1. ALMATECH MINERAL INTERNATIONAL LIMITED
2. IMERTECH
3. IMERYS (SHANGHAI) INVESTMENT MANAGEMENT CO., LTD.
4. IMERYS CANADA INC.
5. IMERYS CARBONATES USA
6. IMERYS CLAYS, INC.
7. IMERYS DIATOMITA MEXICO, SA DE CV
8. IMERYS DO BRASIL COMERCIO DE EXTRAÇAO DE MINÉRIOS
9. IMERYS FILTRATION MINERALS, INC.
10. IMERYS GRAPHITE & CARBON CANADA INC.
11. IMERYS HIGH RESISTANCE MINERALS JAPAN KK
12. IMERYS ITATEX SOLUCOES MINERAIS LTDA
13. IMERYS MICA KINGS MOUNTAIN INC.
14. IMERYS MINERALI SPA
15. IMERYS MINERALS AUSTRALIA PTY LTD
16. IMERYS MINERALS INTERNATIONAL SALES S.A.
17. IMERYS MINERALS KOREA LTD
18. IMERYS PERFORMANCE AND FILTRATION MINERALS PRIVATE LIMITED
19. IMERYS RIO CAPIM CAULIM S.A.
20. IMERYS SERVICES
21. IMERYS SPECIALITIES JAPAN CO. LIMITED
22. IMERYS TALC AUSTRALIA PTY LTD
23. IMERYS TALC AUSTRIA GMBH
24. IMERYS TALC BELGIUM
25. IMERYS TALC EUROPE
26. IMERYS TALC ITALY S.P.A.[1]
27. IMERYS TALC LUZENAC FRANCE
28. IMERYS USA, INC.
29. IMERYS WOLLASTONITE USA, LLC
30. KENTUCKY-TENNESSEE CLAY COMPANY
31. MINERA ROCA RODANDO S. DE. R.L. DE C.V.
32. NYCO MINERALS, LLC

---

[1]    Imerys Talc Italy S.p.A. is only an Imerys Plan Proponent to the extent it does not commence a bankruptcy case.

## SCHEDULE III

### Rio Tinto Captive Insurer Policies

| Issuing Insurer | Policy No. | Policy Period |
|---|---|---|
| Metals and Minerals Insurance Pte. Limited | M&M GL/97-98/001 | 5/31/1997 - 5/31/1998 |
| Three Crowns Insurance Company Limited | 98162 | 5/31/1998 - 5/31/1999 |
| Three Crowns Insurance Company Limited | 98162 | 5/31/1999 - 5/31/2000 |
| Three Crowns Insurance Company Limited | 98162 | 5/31/2000 - 5/31/2001 |
| Three Crowns Insurance Company Limited | 98162/01 | 5/31/2001 - 5/31/2002 |
| Three Crowns Insurance Company Limited | 98162/02 | 5/31/2002 - 5/31/2003 |
| Three Crowns Insurance Company Limited | 98162/02A | 5/31/2002 - 5/31/2003 |
| Three Crowns Insurance Company Limited | 98162/02B | 5/31/2002 - 5/31/2003 |
| Three Crowns Insurance Company Limited | 98162/03 | 5/31/2003 - 5/31/2004 |
| Three Crowns Insurance Company Limited | 98162/04 | 5/31/2004 - 5/31/2005 |

| Issuing Insurer | Policy No. | Policy Period |
|---|---|---|
| Three Crowns Insurance Company Limited | 98162/05 | 5/31/2005 - 5/31/2006 |
| Three Crowns Insurance Company Limited | 98162/06/A | 5/31/2006 - 5/31/2007 |
| ~~Metals and Minerals Insurance Pte. Limited~~ | ~~98162/06/B~~ | ~~5/31/2006 - 5/31/2007~~ |
| Falcon Insurance Ltd. | 98162/06/C | 5/31/2006 - 5/31/2007 |
| Metals and Minerals Insurance Pte. Limited | 98162/07/B | 5/31/2007 - 5/31/2008 |
| Falcon Insurance Ltd. | 98162/07/C | 5/31/2007 - 5/31/2008 |
| Metals and Minerals Insurance Pte. Limited | 98162/08/B | 5/31/2008 - 5/31/2009 |
| Falcon Insurance Ltd. | 98162/08/C | 5/31/2008 - 5/31/2009 |
| Metals and Minerals Insurance Pte. Limited | 98162/09/B | 5/31/2009 - 5/31/2010 |
| Falcon Insurance Ltd. | 98162/09/C | 5/31/2009 - 5/31/2010 |
| Metals and Minerals Insurance Pte. Limited | 98162/10/B | 5/31/2010 - 5/31/2011 |
| Falcon Insurance Ltd. | 98162/10/C | 5/31/2010 - 5/31/2011 |
| Metals and Minerals Insurance Pte. Limited | 98162/11/B | 5/31/2011 - 5/31/2012 |

| Issuing Insurer | Policy No. | Policy Period |
|---|---|---|
| Falcon Insurance Ltd. | 98162/11/C | 5/31/2011 - 5/31/2012 |

## SCHEDULE IV

### Rio Tinto Corporate Parties

- 10029734 Canada Inc.
- 1043802 Ontario Ltd
- 10676276 Canada Inc.
- 10676284 Canada Inc.
- 11091905 Canada Inc.
- 1109723 B.C. Ltd.
- 201 Logistics Center, LLC
- 46106 YUKON INC.
- 46117 YUKON INC.
- 535630 YUKON INC.
- 7600 West Center, LLC
- 7999674 CANADA INC.
- 9539549 CANADA INC.
- AGM Holding Company Pte. Ltd.
- Alcan Alumina Ltda.
- Alcan Asia Limited
- Alcan Betriebs- und Verwaltungsgesellschaft GmbH
- Alcan Chemicals Limited
- Alcan Composites Brasil Ltda
- Alcan Corporation
- Alcan Farms Limited
- Alcan Finances USA LLC
- Alcan Gove Development Pty Limited
- Alcan Holdings Australia Pty Limited
- Alcan Holdings Europe B.V.
- Alcan Holdings Nederland B.V.
- Alcan Holdings Switzerland AG (SA/Ltd.)
- Alcan International Network U.S.A. Inc.
- Alcan Lebensmittelverpackungen GmbH
- Alcan Management Services (Shanghai) Co., Ltd.
- Alcan Management Services Canada Limited / Societe de Services de Gestion Alcan Canada Limitee
- Alcan Northern Territory Alumina Pty Limited
- Alcan Packaging Mühltal Gmbh & Co. KG
- Alcan Primary Metal Australia Pty Ltd
- Alcan Primary Products Company LLC
- Alcan Primary Products Corporation
- Alcan Realty Limited / Societe Immobiliere Alcan Limitee

- Alcan South Pacific Pty Ltd
- Alcan Trading AG (SA/Ltd.)
- Alufluor AB
- Aluminerie Alouette Inc.
- Aluminerie De Bécancour, Inc.
- Aluminium & Chemie Rotterdam B.V.
- Aluminium Pechiney
- Aluminum Company of Canada Limited / Aluminium du Canada Limitee
- AML Properties Pty Ltd
- Anglesey Aluminium Metal Limited
- AP Service
- Argyle Diamond Mines Pty Limited
- Argyle Diamonds Limited
- Ashton Mining Pty Ltd
- Ashton Nominees Pty Limited
- Asia Gold Mongolia LLC
- Asia Naran Bulag LLC
- Asia Now Resources Corp
- Australian Coal Holdings Pty. Limited
- Australian Mining & Smelting Pty Ltd
- Balkhash Saryshagan LLP
- Bao-HI Ranges Joint Venture
- Beasley River Joint Venture
- Beasley River Management Pty Limited
- Beasley River Marketing Pty Ltd
- Beasley River Mining Pty Limited
- Beijing Iron Ore Trading Centre Corporation
- Bektau B.V.
- Boké Investment Company
- Boke Personnel Limited
- Boké Services Company SA
- Boké Services Management, Inc.
- Boké Trading Inc.
- Borax España, S.A.
- Borax Europe Limited
- Borax Francais
- Borax Malaysia Sdn Bhd
- Borax Rotterdam N.V.
- Boyne Smelters Limited
- British Alcan Aluminium Limited
- C.V.G. Bauxilum C.A.
- Canning Resources Pty Limited
- CanPacific Potash Inc.
- Cape Bougainville Joint Venture

- Capricorn Diamonds Investments Pty Limited
- Carol Lake Company Ltd.
- Cathjoh Holdings Pty Limited
- Champlain Reinsurance Company Ltd.
- Channar Management Services Pty Limited
- Channar Mining Joint Venture
- Channar Mining Pty Ltd
- Chinalco Rio Tinto Exploration Co. Ltd
- Chlor Alkali Unit Pte Ltd
- CIA. Inmobiliaria e Inversiones Cosmos S.A.C.
- Compagnie des Bauxites de Guinée
- Compania de Transmision Sierraoriente S.A.C.
- Consórcio de Alumínio do Maranhão
- CRA Investments Pty. Limited
- CRA Pty Ltd
- Dampier Salt Limited
- Daybreak Development LLC
- Daybreak Property Holdings LLC
- Daybreak Secondary Water Distribution Company
- Daybreak Water Holding LLC
- DB Medical I LLC
- DBVC1 LLC
- Diamond Producers Association Limited
- Diavik Diamond Mines (2012) Inc.
- Diavik Joint Venture
- Donkerpoort Iron Ltd
- East Kalimantan Coal Pte. Ltd
- Eastland Management Inc.
- Electric Power Generation Limited
- Elysis Limited Partnership / Elysis Societe en Commandite
- Empresa de Mineracao Finesa Ltda.
- Enarotali Gold Project Limited
- Endurvinnslan Ltd.
- Energy Resources of Australia Ltd
- Entrée Resources Ltd.
- Exeltium
- EXELTIUM 2
- Fabrica De Plasticos Mycsa, S.A.
- Falcon Insurance Ltd.
- Flambeau Mining Company
- Fondation Rio Tinto
- Foundation for Australia-Japan Studies
- France Aluminium Recyclage Sa
- Fundsprops Pty. Limited

- Gladstone Infrastructure Pty Ltd
- Gladstone Power Station Joint Venture
- Global Coal Limited
- Global Hubco BV
- Globalore Pte. Ltd.
- Gove Aluminium Ltd
- GPS Energy Pty Limited
- GPS Nominee Pty Limited
- GPS Power Pty. Limited
- Green Mountain Mining Venture
- Groupement pour la Gestion de Pensions Complementaires
- Gulf Power Company / La Compagnie Gulf Power
- Halco (Mining) Inc.
- Hamersley Exploration Pty Limited
- Hamersley HMS Pty Ltd
- Hamersley Holdings Limited
- Hamersley Iron - Yandi Pty Limited
- Hamersley Iron Pty. Limited
- Hamersley Resources Limited
- Hamersley WA Pty Ltd
- Henlopen Manufacturing Co., Inc.
- Heruga Exploration LLC
- High Purity Iron Inc.
- HIsmelt Corporation Pty Limited
- Hope Downs Joint Venture
- Hope Downs Marketing Company Pty Ltd
- Hunter Valley Resources Pty Ltd
- IAL Holdings Singapore Pte. Ltd.
- IEA Coal Research Limited
- IEA Environmental Projects Limited
- Industrias Metalicas Castello S.A.
- Integrity Land and Cattle LLC
- InterEmballage
- IOC Sales Limited
- Iron Ore Company of Canada
- Itallumina Srl
- Johcath Holdings Pty Limited
- Juna Station Pty Ltd
- Kalimantan Gold Pty Limited
- Kalteng Pty. Ltd
- Kelian Pty. Limited
- Kembla Coal & Coke Pty. Limited
- Kennecott Barneys Canyon Mining Company
- Kennecott Exploration Company

- Kennecott Exploration Mexico, S.A. de C.V.
- Kennecott Holdings Corporation
- Kennecott Land Company
- Kennecott Land Investment Company LLC
- Kennecott Molybdenum Company
- Kennecott Nevada Copper Company
- Kennecott Ridgeway Mining Company
- Kennecott Royalty Company
- Kennecott Services Company
- Kennecott Uranium Company
- Kennecott Utah Copper LLC
- Kennecott Water Distribution LLC
- Korgantas LLP
- Kutaibar Holdings Pty Ltd
- Lao Sanxai Minerals Company Limited
- Lawson Mardon Flexible Limited
- Lawson Mardon Smith Brothers Ltd.
- Magma Arizona Railroad Company
- Metallwerke Refonda AG
- Metals & Minerals Insurance Pte. Limited
- Minera Escondida Ltda
- Minera IRL Limited
- Minera Kennecott, S.A. de C.V.
- Mineração Rio do Norte S.A.
- Mineracao Tabuleiro Ltda
- Minmetals Rio Tinto Exploration Company Limited
- Mitchell Plateau Bauxite Co. Pty. Limited
- Mitchell Plateau Joint Venture
- Mount Bruce Mining Pty Limited
- Mount Pleasant Pty Ltd
- Movele
- Mutamba Mineral Sands S.A.
- NBH Pty Ltd
- New Zealand Aluminium Smelters Ltd
- Nhulunbuy Corporation Limited
- Norgold Pty Limited
- North Gold (W.A.) Pty Ltd
- North Insurances Pty. Ltd.
- North IOC (Bermuda) Holdings Limited
- North IOC (Bermuda) Limited
- North IOC Holdings Pty Ltd
- North Limited
- North Mining Limited
- Northern Land Company Ltd

- Nozalela Mineral Sands (Pty) Ltd
- NZAS Retirement Fund Trustee Limited
- Oyu Tolgoi LLC
- Oyu Tolgoi Netherlands BV
- Pacific Aluminium (New Zealand) Limited
- Pacific Aluminium Pty. Limited
- Pacific Coast Mines, Inc.
- Pechiney Aviatube Limited
- Pechiney Bâtiment
- Pechiney Bécancour, Inc.
- Pechiney Cast Plate, Inc.
- Pechiney Consolidated Australia Pty Limited
- Pechiney Holdings, Inc.
- Pechiney Metals LLC
- Pechiney Philippines Inc.
- Pechiney Plastic Packaging, Inc.
- Pechiney Reynolds Quebec, Inc.
- Pechiney Sales Corporation
- Peko Exploration Pty Ltd.
- Peko-Wallsend Pty Ltd
- Pilbara Iron Company (Services) Pty Ltd
- Pilbara Iron Pty Ltd
- Port d'Ehoala S.A.
- Procivis Savoie
- Project Generation Group Pty Ltd
- PSZ Pty Limited
- PT Hutan Lindung Kelian Lestari
- PT Kelian Equatorial Mining
- PT Rio Tinto Consultants
- QIT Madagascar Minerals Ltd
- QIT Madagascar Minerals SA
- Quebec North Shore and Labrador Railway Company / Compagnie de Chemin de Fer du Littoral Nord de Quebec et du Labrador Inc.
- Queensland Alumina Limited
- Queensland Coal Pty. Limited
- Química e Metalúrgica Mequital Ltda.
- Ranges Management Company Pty Ltd
- Ranges Mining Pty Ltd
- Resolution Copper Company
- Resolution Copper Mining LLC
- Rhodes Ridge Joint Venture
- Richards Bay Mining (Proprietary) Limited
- Richards Bay Mining Holdings (Proprietary) Limited
- Richards Bay Prefco (Pty) Ltd

- Richards Bay Titanium (Proprietary) Limited
- Richards Bay Titanium Holdings (Proprietary) Limited
- Rightship Pty Ltd
- Rio de Contas Desenvolvimentos Minerais Ltda
- Rio Santa Rita Empreenimentos e-Particiacoes Ltda
- Rio Sava Exploration DOO
- Rio Tinto (Commercial Paper) Limited
- Rio Tinto (Hong Kong) Ltd
- Rio Tinto Advisory Services Pty Limited
- Rio Tinto Alcan Fund Inc.
- Rio Tinto Alcan Inc.
- Rio Tinto Alcan International Ltd. / Rio Tinto Alcan International Ltee
- Rio Tinto Alcan Middle East DMCC
- Rio Tinto Alcan Technology Pty Ltd
- Rio Tinto Aluminium (Bell Bay) Limited
- Rio Tinto Aluminium (Holdings) Limited
- Rio Tinto Aluminium Bell Bay Sales Pty Limited
- Rio Tinto Aluminium Limited
- Rio Tinto Aluminium Pechiney
- Rio Tinto Aluminium Services Pty Limited
- Rio Tinto America Holdings Inc.
- Rio Tinto America Inc.
- Rio Tinto Asia Ltd
- Rio Tinto Asia Pty. Limited.
- Rio Tinto AuM Company
- Rio Tinto Australian Holdings Limited
- Rio Tinto Bahia Holdings Limited
- Rio Tinto Base Metals Pty. Limited
- Rio Tinto Brazilian Holdings Limited
- Rio Tinto Brazilian Investments Limited
- Rio Tinto Canada Diamond Operation Management Inc.
- Rio Tinto Canada Inc
- Rio Tinto Canada Management Inc./ Rio Tinto Gestion Canada Inc.
- Rio Tinto Canada Uranium Corporation
- Rio Tinto Chile S.A.S.
- Rio Tinto Coal (Clermont) Pty Ltd
- Rio Tinto Coal Australia Pty Limited
- Rio Tinto Coal Investments Pty Limited
- Rio Tinto Coal NSW Holdings Limited
- Rio Tinto Commercial Americas Inc.
- Rio Tinto Commercial GmbH
- Rio Tinto Commercial Pte. Ltd.
- Rio Tinto Desenvolvimentos Minerais LTDA.
- Rio Tinto Diamonds and Minerals Canada Holding Inc.

- Rio Tinto Diamonds Limited
- Rio Tinto Diamonds Netherlands B.V.
- Rio Tinto Diamonds NV
- Rio Tinto Eastern Investments B.V.
- Rio Tinto Energy America Inc.
- Rio Tinto Energy Limited
- Rio Tinto Escondida Limited
- Rio Tinto European Holdings Limited
- Rio Tinto Exploration (Asia) Holdings Pte. Ltd.
- Rio Tinto Exploration (PNG) Limited
- Rio Tinto Exploration and Mining (India) Private Limited
- Rio Tinto Exploration Canada Inc.
- Rio Tinto Exploration Dunav d.o.o. Beograd-Vracar
- Rio Tinto Exploration Finland OY
- Rio Tinto Exploration India Private Limited
- Rio Tinto Exploration Kazakhstan LLP
- Rio Tinto Exploration Pty Limited
- Rio Tinto Exploration Zambia Limited
- Rio Tinto FalCon Diamonds Inc.
- Rio Tinto Fer et Titane inc.
- Rio Tinto Finance (USA) Inc.
- Rio Tinto Finance (USA) Limited
- Rio Tinto Finance (USA) plc
- Rio Tinto Finance Limited
- Rio Tinto Finance plc
- Rio Tinto France S.A.S.
- Rio Tinto Global Employment Company Pte. Ltd.
- Rio Tinto Guinée S.A.
- Rio Tinto Holdings LLC
- Rio Tinto Hydrogen Energy LLC
- Rio Tinto Iceland Ltd.
- Rio Tinto India Private Limited
- Rio Tinto Indonesian Holdings Limited
- Rio Tinto International Holdings Limited
- Rio Tinto Investments One Pty Limited
- Rio Tinto Investments Two Pty Limited
- Rio Tinto Iron & Titanium (Suzhou) Co., Ltd
- Rio Tinto Iron & Titanium GmbH
- Rio Tinto Iron & Titanium Holdings GmbH
- Rio Tinto Iron & Titanium Limited
- Rio Tinto Iron and Titanium Canada Inc. / Rio Tinto Fer et Titane Canada Inc.
- Rio Tinto Iron Ore Atlantic Limited
- Rio Tinto Iron Ore Europe S.A.S.
- Rio Tinto Iron Ore Trading China Limited

- Rio Tinto Japan Ltd
- Rio Tinto Jersey Holdings 2010 Limited
- Rio Tinto Korea Ltd
- Rio Tinto Limited
- Rio Tinto London Limited
- Rio Tinto Management Services South Africa (Proprietary) Ltd
- Rio Tinto Marketing Pte. Ltd.
- Rio Tinto Marketing Services Limited
- Rio Tinto Medical Plan Trustees Limited
- Rio Tinto Metals Limited
- Rio Tinto Minera Peru Limitada SAC
- Rio Tinto Mineracao do Brasil Ltda
- Rio Tinto Minerals Asia Pte Ltd
- Rio Tinto Minerals Development Limited
- Rio Tinto Minerals Exploration (Beijing) Co., Ltd
- Rio Tinto Minerals Inc.
- Rio Tinto Mining and Exploration Inc.
- Rio Tinto Mining and Exploration Limited
- Rio Tinto Mining and Exploration S.A.C.
- Rio Tinto Mining Commercial (Shanghai) Co., Ltd.
- Rio Tinto Mongolia LLC
- Rio Tinto Nominees Limited
- Rio Tinto Orissa Mining Private Ltd
- Rio Tinto OT Management Limited
- Rio Tinto Overseas Holdings Limited
- Rio Tinto PACE Australia Pty Limited
- Rio Tinto PACE Canada Inc. / Gestion Rio Tinto PACE Canada Inc.
- Rio Tinto Pension 2009 Trustees Limited
- Rio Tinto Pension Fund Trustees Limited
- Rio Tinto Pension Investments Limited
- Rio Tinto Peru Limited
- Rio Tinto plc
- Rio Tinto Potash Management Inc. / Rio Tinto Potasse Management Inc.
- Rio Tinto Procurement (Singapore) Pte Ltd
- Rio Tinto Pte Ltd
- Rio Tinto Saskatchewan Management Inc.
- Rio Tinto Saskatchewan Potash Holdings General Partner Inc.
- Rio Tinto Saskatchewan Potash Holdings Limited Partnership
- Rio Tinto Secretariat Limited
- Rio Tinto Services Inc.
- Rio Tinto Services Limited
- Rio Tinto Shared Services Pty Limited
- Rio Tinto Shipping (Asia) Pte. Ltd.
- Rio Tinto Shipping Pty. Limited.

- Rio Tinto Simfer UK Limited
- Rio Tinto Singapore Holdings Pte Ltd
- Rio Tinto Sohar Logistics LLC
- Rio Tinto South East Asia Limited
- Rio Tinto Staff Fund (Retired) Pty Limited
- Rio Tinto Sulawesi Holdings Limited
- Rio Tinto Technological Resources Inc.
- Rio Tinto Technological Resources UK Limited
- Rio Tinto Trading (Shanghai) Co., Ltd.
- Rio Tinto Uranium Limited
- Rio Tinto Western Holdings Limited
- Rio Tinto Winu Pty Limited
- Riversdale Connections (Proprietary) Ltd
- Robe River Iron Associates Joint Venture
- Robe River Limited
- Robe River Mining Co. Pty. Ltd.
- Robe River Ore Sales Pty. Ltd.
- Rocklea Station Pty Ltd
- RTA AAL Australia Limited
- RTA Boyne Limited
- RTA Gove Pty Limited
- RTA Holdco 1 Limited
- RTA Holdco 4 Limited
- RTA Holdco 7 Limited
- RTA Holdco 8 Limited
- RTA Holdco Australia 1 Pty Ltd
- RTA Holdco Australia 3 Pty Ltd
- RTA Holdco Australia 5 Pty Ltd
- RTA Holdco Australia 6 Pty Ltd
- RTA HOLDCO FRANCE 1 S.A.S.
- RTA HOLDCO FRANCE 2 S.A.S.
- RTA Pacific Pty Limited
- RTA Sales Pty Ltd
- RTA Smelter Development Pty Limited
- RTA Weipa Pty Ltd
- RTA Yarwun Pty Ltd
- RTAlcan 1 LLC
- RTAlcan 2 LLC
- RTAlcan 3 LLC
- RTLDS Aus Pty. Ltd
- RTLDS UK Limited
- RTPDS Aus Pty Ltd
- Saryarka B.V.
- Scheuch Unterstuetzungskasse GmbH

- SGLS LLC
- Sharp Strategic Funding Pte. Ltd.
- Simfer Jersey Finance 1 Ltd
- Simfer Jersey Finance 2 Ltd
- Simfer Jersey Limited
- Simfer Jersey Nominee Limited
- SIMFER S.A.
- Singapore Metals Pte. Ltd.
- Skymont Corporation
- Société De Financement Des Risques Industriels
- Société Départementale De Développement 65
- Société Minière Et De Participations Guinée-Alusuisse
- Sohar Aluminium Co. L.L.C.
- Sohio Western Mining Company
- Solutions Strategiques Funding LLC
- Southern Copper Pty. Limited
- Swift Current Land & Cattle LLC
- Swiss Aluminium Australia Limited
- TBAC Limited
- Technological Resources Pty. Limited
- The Barrier Corporation (Vic.) Pty. Limited
- The Kelian Community and Forest Protection Trust
- The Pyrites Company, Inc.
- The Roberval and Saguenay Railway Company/ La Compagnie du Chemin de Fer Roberval Saguenay
- The Zinc Corporation Pty Ltd
- Thos. W. Ward Limited
- THR Aruba Holdings LLC A.V.V.
- THR Delaware Holdings, LLC
- THR Kharmagtai Pte. Ltd.
- THR MINES (BC) LTD.
- THR Mines Services Co. Ltd.
- THR OYU TOLGOI LTD.
- THR Ulaan Pte. Ltd.
- Three Crowns Insurance Company Limited
- Tinto Holdings Australia Pty. Limited
- Tisand (Proprietary) Limited
- Tomago Aluminium Company Pty Limited
- Tomago Aluminium Joint Venture
- Trans Territory Pipeline Pty Limited
- TRQ Australia Pty. Ltd.
- Turquoise Hill (Beijing) Services Company Ltd
- Turquoise Hill Netherlands Cooperatief U.A.
- Turquoise Hill Resources Ltd.

- Turquoise Hill Resources Philippines Inc.
- Turquoise Hill Resources Singapore Pte Ltd.
- Twin Falls Power Corporation Ltd
- U.S. Borax Inc.
- Victoria Technology Inc.
- Waste Solutions and Recycling LLC
- West Kutai Foundation Limited
- Wimmera Industrial Minerals Pty. Limited
- Winchester South Development Company Proprietary Limited
- Winter Road Joint Venture
- Wright Mgmt Services Pte. Ltd.
- Wyoming Coal Resources Company
- Yalleen Pastoral Co. Pty. Ltd.
- Yarraloola Pastoral Co
- Zululand Titanium (Pty) Ltd

## SCHEDULE V

### Zurich Corporate Parties

- Zurich American Insurance Company, in its own capacity and as successor-in-interest to Zurich Insurance Company, U.S. Branch
- American Guarantee and Liability Insurance Company
- American Zurich Insurance Company
- Colonial American Casualty & Surety Company
- Empire Fire and Marine Insurance Company
- Empire Indemnity Insurance Company
- Fidelity and Deposit Company of Maryland
- Hoplite Reinsurance Company of Vermont, Inc.
- Rural Community Insurance Company
- Steadfast Insurance Company
- Universal Underwriters Insurance Company
- Universal Underwriters of Texas Insurance Company
- Zurich American Insurance Company of Illinois
- Zurich Insurance Company Ltd (Canadian Branch)
- Zurich American Puerto Rico Insurance Company
- Zurich American Life Insurance Company
- Zurich American Insurance Company of New York
- Maryland Casualty Company
- Northern Insurance Company of New York
- Assurance Company of America

**<u>SCHEDULE VI</u>**

**Zurich Policies**

| Issuing Insurer | Policy No. | Policy Period |
|---|---|---|
| Zurich Insurance Company, US Branch | GLC 8209842-00/01 | 5/1/1996–5/31/1997 |
| Zurich Insurance Company, US Branch | GLO 8210069-00 | 5/31/1997–5/31/1998 |
| Zurich Insurance Company, US Branch | GLO 8210069-01 | 5/31/1998–5/31/1999 |
| Zurich American Insurance Company | GLO 8210069-02 | 5/31/1999–5/31/2000 |
| Zurich American Insurance Company | GLO 8210069-03 | 5/31/2000–5/31/2001 |
| Zurich American Insurance Company | GLO 8210196-04 | 5/31/2001–5/31/2002 |
| Zurich American Insurance Company | GLO 8210196-05 | 5/31/2002–5/31/2003 |
| Zurich American Insurance Company | GLO 8210196-06 | 5/31/2003–5/31/2004 |
| Zurich American Insurance Company | GLO 8210196-07 | 5/31/2004–5/31/2005 |
| Zurich American Insurance Company | GLO 8210196-08 | 5/31/2005–5/31/2006 |
| Zurich American Insurance Company | GLO 8210196-09 | 5/31/2006–5/31/2007 |
| Zurich American Insurance Company | GLO 8210196-10 | 5/31/2007–5/31/2008 |
| Zurich American Insurance Company | GLO 8210196-11 | 5/31/2008–5/31/2009 |

| Issuing Insurer | Policy No. | Policy Period |
|---|---|---|
| Zurich American Insurance Company | GLO ~~9249662-00~~8249662-00 | 5/31/2009–5/31/2010 |
| Zurich American Insurance Company | GLO ~~9249662-01~~8249662-01 | 5/31/2010–5/31/2011 |
| Zurich American Insurance Company | GLO ~~9249662-02~~8249662-02 | 5/31/2011–5/31/2012 |
| Zurich Insurance Company Ltd (Canadian Branch) | 8828308 | 5/31/1997-5/31/2007 |
| Zurich Insurance Company Ltd (Canadian Branch) | 8835547 | 5/31/2007-5/31/2009 |
| Zurich Insurance Company, ~~US~~ Ltd (Canadian Branch) | 8837911 | 5/31/2009-5/31/2011 |