UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | . Chapter 11 |
| IMERYS TALC AMERICA, INC., *et al.*, | . Case No. 19-10289 (LSS) |
| | . (Jointly Administered) |
| DEBTORS | Wednesday, October 7, 2020 |
| . . . . . . . . . . . . . . | 10:30 a.m. |

Courtroom No. 2
824 North Market Street
Wilmington, Delaware 19801

TRANSCRIPT OF TELEPHONIC CONFERENCE ON MOTION TO ADJOURN THE HEARING TO CONSIDER APPROVAL OF THE DISCLOSURE STATEMENT FOR SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF IMERYS TALC AMERICA, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTY CODE [DOCKET NO. 2290]
BEFORE THE HONORABLE LAURIE SELBERT SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

TELEPHONIC APPEARANCES:

For the Debtors: Mark Collins, Esquire
Michael Merchant, Esquire
Amanda Steele, Esquire
Brett Haywood, Esquire
Marcos Ramos, Esquire
RICHARDS, LAYTON & FINGER,P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Audio Operator: ELECTRONICALLY RECORDED
By Ginger Mace, ECRO

Transcription Company: Reliable
1007 N. Orange Street
Wilmington, Delaware 19801
(302) 654-8080
Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

TELEPHONIC APPEARANCES (Continued):

| | |
|---|---|
| For the Debtors: | Jeffrey Bjork, Esquire<br>Helena Tseregounis, Esquire<br>Amy Quartarolo, Esquire<br>Kimberly Posin, Esquire<br>LATHAM & WATKINS LLP<br>355 South Grand Avenue<br>Suite 100<br>Los Angeles, California 90071 |
| For Johnson & Johnson: | Theodore E. Tsekerides,Esquire<br>Diane P. Sullivan, Esquire<br>Ronit J. Berkovich, Esquire<br>Konrad L. Cailteux, Esquir<br>WEIL GOTSHAL & MANGES, LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>-and-<br>Patrick A. Jackson, Esquire<br>FAEGRE DRINKER BIDDLE & REATH, LLP<br>222 Delaware Avenue<br>Suite 1410<br>Wilmington, Delaware 19801 |
| For Future Claimants: | Robert Brady, Esquire<br>YOUNG, CONAWAY STARGATT & TAYLOR, LLP<br>1000 North King Street<br>Wilmington, Delaware 19801 |
| For the Committee of Tort Claimants: | Rachel Strickland, Esquire<br>WILKIE FARR & GALLAGHER, LLP<br>787 Seventh Avenue<br>New York, New York 10019 |
| For Cyprus Amax Minerals Company: | Emil A. Kleinhaus, Esquire<br>WACHTELL, LIPTON, ROSEN & KATZ<br>51 West 52nd Street<br>New York, New York 10019 |
| For Cyprus Historical Excess Insurers: | Tancred V. Schiavoni, Esquire<br>O'MELVENY & MYERS, LLP<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036 |

TELEPHONIC APPEARANCES (Continued):

| | |
|---|---|
| For Arnold & Itkin: | Laura Davis Jones, Esquire<br>PACHULSKI, STANG, ZIEHL & JONES<br>919 N. Market Street<br>Suite 1700<br>Wilmington, Delaware 19801 |
| For Creditor/ Official Committee of Tort Claimants: | Natalie D. Ramsey, Esquire<br>ROBINSON & COLE, LLP<br>1201 N. Market Street<br>Suite 1406<br>Wilmington, Delaware 19801 |
| For Creditor/ Plaintiff Ad-Hoc Committee: | Bennett S. Silverberg<br>BROWN RUDNICK, LLP<br>7 Times Square<br>New York, New York 10036 |
| For Creditor/ Cyprus Entities: | Paul E. Heath, Esquire<br>VINSON & ELKINS, LLP<br>2001 Ross Avenue<br>Suite 3900<br>Dallas, Texas 75201 |
| For the U.S. Trustee: | Linda Richenderfer<br>OFFICE OF THE U.S. TRUSTEE |

(Audio Recording Begins.)

THE COURT: Good morning, counsel. This is Judge Silverstein. We're here on the Imerys Talc America, Inc. case; Case number 19-10289 for a status conference and, I guess, also in response to a motion to adjourn the disclosure statement hearing.

Ginger, can you please remind everyone of the protocol for the hearing?

COURT CLERK: It is extremely important that you put your phones on mute when you are not speaking. When speaking, please do not have your phone on speaker as it creates feedback and background noise and it makes it very difficult to hear you clearly. Also, it is very important that you state your name each and every time you speak for an accurate record. Your cooperation in this matter is greatly appreciated. Thank you.

THE COURT: Okay. Thank you. Let me start by saying that even before I got the motion to adjourn the disclosure statement hearing, I was considering having a status conference to determine where we are and whether we're really prepared to go forward tomorrow given that at the time that we were looking for the disclosure statement hearing earlier this week, it had not been filed, the amended disclosure

statement, which I envisioned would have to come given that I had been working off of the previous disclosure statements and documents that were filed, I think around August 12th and as we all know, there were developments that happened since that time.

So, that is to say that I am somewhat amenable to moving the hearing. So, let me start with Ms. Posin, if you are going to be addressing this or whoever from the debtor's side is going to be addressing why we're in a position to go forward with the disclosure statement hearing given that the objections that I have are geared toward a disclosure statement that's no longer relevant.

MS. POSIN: Yes, Your Honor. Good morning. Kim Posin of Latham and Watkins, counsel for the debtors.

Your Honor, as you noted several times in this case and more recently in the last couple of months, the debtors continue to believe that it's in the best interest of their estate to move these cases forward. We have been in bankruptcy now for 20 months and therefore, we would request that the Court permit the debtors and the planned proponents to proceed with the disclosure statement hearing tomorrow and allow the debtors to send the second amended disclosure

statement and plan out for voting.

The hearing scheduled for tomorrow relates solely to the adequacy of the disclosures in the disclosure statement and of course any and all objections from any of the parties that have objected thus far to the content of the plan of the adequacy of the concepts that are laid set forth in the plan, of course are completely reserved and can be addressed at confirmation.

The debtors, as the Court just noted, did file our initial plan of disclosure statement back on May 15th, almost five months ago now. We did file a amended plan of disclosure statement on August 12th, almost two months ago, and of course we did file our original TDP and the trust agreement 27 days ago on September 10th.

As the Court is -- is going to hear this morning and saw in the papers that the movants filed, after working through revisions with each of the other planned proponents over the last 10 days or so since the Court entered the order denying J&J's stay motion, as well as with settling parties, Rio Tinto and Zurich, the debtors filed our amended plan of disclosure statement and an amended TDP that the Court noted on Monday.

However, I think the important note is if you look at the black lines that were filed with all three of those documents on Monday, which I'd certainly be happy to walk the Court through as appropriate, you will see very clearly there were very, very minimal changes made from the prior documents. With respect to the plan of disclosure statement, the only substantive revisions included the following: one is revising a handful of definitions simply to conform to the definitions that were used in the TDP that was filed on September 10th.

The second, as the Court has already noted, are revisions to reflect the denial of the J&J stay motion. That -- that hearing was held on September 23rd, the order was entered September 25th, not that long ago, and removing the J&J protocol order language from the plan of disclosure statement as a result of the denial of J&J's motion, and adding a preservation of rights with respect to J&J, which is substantially similar to the treatment of J&J that was set forth in the May 15th plan that has been outstanding for, again, almost five months.

The third substantive revision is the revision to the timeline. Of course, because our original disclosure statement was set to be heard back

in June and now our disclosure statement may not be heard, you know, until tomorrow or later, we course had to address the confirmation timeline accordingly and -- culminating in a currently planned confirmation hearing on December 17th and then finally, we disclosed that we are proceeding with mediation, which we are pleased to report to the Court with another insurance company, XL (phonetic) Insurance Company, later this month and we are in discussions with other insurers to also proceed with mediation with them as well.

That's it. That's the full -- that's the sum of all of the changes. I know the movants say that the changes are dramatic, but that's it and as far as the TDP's, it's exactly the same. The only substantive changes made to the TDP from the original version that was filed September 10th is to remove the J&J protocol language and to make it clear that J&J stay motion was denied by this Court.

As the movants noted in their motion and the Court has already noted today, it should be no surprise to anybody, certainly nobody on this call or any of the movants, or any of the joining parties, that the disclosure statement and plan had to be revised to reflect the denial of J&J's stay motion.

I think it's also worth noting, Your Honor,

that the movants here putting it by the joining parties, which I'll get to in a minute, are J&J, which is a co-defendant and indemnitor and several insurance companies and to be clear, none of the insurers, to my knowledge, have liquidated claims against these estates and likely want to be to vote on the plan and as to J&J, they did file a 20 million dollar indemnity claim, which we have objected to and we have asked the Court to disallow that claim in full.

As to the insurers specifically, they will all receive full neutrality under the terms of the plan. Those neutrality provisions are set forth very clearly in the plan and they are found in Section 11.4. They have not changed since the original plan was filed five months ago -- are identical. They are substantially identical to other similar neutrality provisions that have been approved multiple times in the Third Circuit and they ensure that the rights of each of the insurers are fully preserved.

In any event, if any of the insurers do not agree with the scope or substance of those neutrality provisions despite all of the things that I just noted, then they have a full and fair opportunity to raise those issues with the Court at confirmation.

Now, as to J&J, the operative plan documents

now provide that all J&J's rights and obligations to the debtors will simply be transferred to the trust, along with all of the rest of the debtors remaining Talc assets. This treatment is also substantially similar to the treatment that J&J received under the original May 15th plan and provides as follows, and I want to -- I want to quote because I think this is important. The plan provides, quote, "subject to section" -- currently -- Subject to Section 11.5.5 of the plan, which relates to the Rio Zurich settlement, nothing contained in the plan, the plan documents, which include the TDP or the confirmation order including any provision that proports to be (indiscernible) shall in any way operate or have the effect of impairing, altering, supplementing, changing, expanding, decreasing, or modifying the J&J indemnification rights and obligations and Section 7.7E of the plan further provides that for all issues relating to J&J's indemnification rights and obligations, the provisions, terms, conditions, and limitations of any agreements underlying the J&J indemnification rights and obligations shall control.

So, again, Your Honor, to the extent that J&J has any concerns with the substance of those preservation provisions, they will have a full and

fair opportunity to discuss that with Court at confirmation. It doesn't affect the adequacy of the disclosures, which is the sole purpose of the hearing tomorrow.

Now, you know, we had originally included very similar language as I noted, frankly less protective language than is in the plan now in our May 15th plan disclosure statement. The only reason why we ever changed those provisions in our August 12th plan of disclosure statement was because we had all of the parties that are on this call today or many of them, certainly the movants, demanding that we do so in order to reflect J&J's stay motion. Based on those objections, we did that. Now that the Court has denied that motion, we've reverted back to our original plan, which is to preserve those rights for determination at -- at a later date, and again, to the extent J&J has concerns, they can raise those at confirmation.

As to the joining parties, so, late last night and then five minutes before this hearing, I saw that there were two plaintiffs groups, ad hoc groups, that (indiscernible) joinders. As to the joinder that was filed late last night, the joining party, which appears to be a law firm represented by another law

firm, I don't know that law firm -- I presume that original law firm, the movants, or the joining party, has -- represents plaintiffs, but I don't understand how that law firm itself has standing, but in any event, nobody has reached out to us. We heard from these folks, both groups, back in June when they filed their original objection to our May disclosure statement and plan. I have not heard a word from them since. They have not filed anything in these cases until the documents were filed last night and this morning and as the Court asked me at the hearing two weeks ago, I think -- it must've been two weeks ago, whether we had engaged in other parties and I told the Court, call me, my number and my email address are on all of our papers, call me. Let's talk. I haven't heard a word. Nobody on this -- on this phone -- on this call today or at least that I can see on this Zoom have reached out and that includes the ad hoc groups. I haven't heard a word from them since June.

So, for all these reasons, Your Honor, because we don't believe that the plan of disclosure statement -- what we've heard today or what we've heard in the motion is that parties need additional time because we've made substantive changes to the documents. That's simply not true. All we did was

reflect the Court's September 23rd ruling and to revert back to preservation of J&J's indemnification rights to be dealt with at a later date with a trust. That's all we did and as such, because we believe that the plaintiff's groups are adequate -- let me take a step back. There is one voting class here. There is one impaired class of voting. That is the class of Talc personal injury claimants, which is the vast majority of which, if not all, is made up of direct Talc claimants. Those direct Talc claimants are ably represented by a committee of 11 members, of which selected by United States Trustee back in 2019 and it adequately represents the interest of both (indiscernible) ovarian cancer claims and (indiscernible). To the extent the draining parties believe that they know something better or different that those 11 members, they have a full and fair opportunity to ask the United States Trustee to put them onto the committee.

We have a committee in these cases, in Chapter 11 cases for a reason, and we believe that this committee adequately represents the rights of those parties. Certainly, parties have an ability to come in. We are not objecting to that ability and those folks certainly have done so, but we have spent

a significant amount of time negotiating the plan of disclosure statement with -- with the committee and with the FCR, which represents the future claimants in this case and all of them -- or the committee and the FCR and also the (indiscernible) in the non-debtor affiliates fully support this plan. They believe that it is appropriate under the circumstances and it is in the best interest of their constituents and it should go out to vote.

My understanding is they also do believe ultimately, despite what you may have seen in the joining parties that filed their documents last night and this morning, they do believe that the vote -- that the plan in the statement will be well received and that they will be able to achieve the vote that is required by Section -- by 24G of the plan -- oh, sorry, the bankruptcy code.

So, for all of those reasons, Your Honor, we don't see a reason why we should not, you know, proceed with the hearing tomorrow.

MS. RICHENDERFER: Your Honor, if I could? This is Linda Richenderfer from the Office of the United States Trustee. I wanted to make it clear that while we have not filed anything, we do join in the request also, that the hearing be adjourned, I -- Ms.

Sarcasion (phonetic) and I were discussing the situation we found ourselves in yesterday and we're going to reach out to the Court with an email copy to everyone and we were beaten to the punch, so to speak. So, no need to join in a request that it be adjourned since this hearing was going forward today.

So, I just want to make it clear that the U.S. Trustee also believes that this needs to be adjourned. We barely had time to look at the black lines and U.S. Trustee's objection was two-fold. It was based on the fact that the disclosure statement was inadequate in terms of its disclosure, but it was also that it was seeking to confirm what we believe is an unconfirmable plan and the basis of those two arguments has now shifted somewhat because TDPs have been changed. We don't think the plan -- we don't think the issues have been resolved, but we need time to analyze all of this and I will also state that I, myself, sent very detailed emails on the disclosure statement as it related to the TDPs and the trust agreement. I never got a response, other than I was told by Ms. Posin they were passed on to the committee and to the FCR for response. No responses were ever received and we know that there are still some outstanding issues that Ms. Sarcasion raised over the

summertime regarding solicitation procedures and we need time to review what has now occurred with this disclosure statement and with the TDPs in order to respond to ensure the due process is being met and to ensure that this disclosure is adequate.

It still only has a one-page statement regarding the TDPs, which are the most important issue to the claimant and now that the TDPs have been changed, and have a new process in them, I think that time needs to be allotted to allow people to make appropriate objections, as Your Honor noted. The objections are to a disclosure statement. That is no longer the one that the Court is being asked.

So, I -- I apologize for jumping in before Your Honor had a chance to ask for other parties who don't want the continuance, but I just wanted to be made very clear that the U.S. Trustee joins in the request that tomorrow's hearing be adjourned.

THE COURT: That's fine. The Offices was invoked there. So, I guess, I am not surprised to have you jump in. okay. I will hear from others who have something non-duplicative to say to what Ms. Posin said with respect to the need to go forward tomorrow in light of where we are.

Okay. Then, let me hear from whoever -- is

this Mr. Schiavoni? Did you file the motion?

MR. SCHIAVONI: Your Honor, I did file the motion, but I did coordinate with the other parties. It's my understanding that substantially all of the objectives join us. We -- J&J, Cypress, Tort claimant constituency represented by the Pachulski Stang firm and not a quote, "couple of insurers," but the -- a significant number, like, more than a dozen -- more than a dozen, perhaps two dozen insurers joined in the application, but just to get right to the core of really what I think you might want to consider here is that the TDP was -- the TDP that was filed on September 10th in order to get this deadline was at its core a placeholder. The only thing it said about the J&J indemnity was that -- was that there was a J&J protocol order, which is entirely now factitious. There was not. So, the briefing you have in front of you from all of us are about something that doesn't even exist.

With respect to the Class 4 claims, it was represented to you as if they're exclusively asbestos (indiscernible) injury claims, but they're not. The claims of all of the objectors are grouped into this same class, Class 4, as, quote, "Indirect" Talc claims. Some in substance of the TDP disclosure on

September 10th was that procedures will be developed in the future to address the liquidation of those claims. That's a placeholder by its very nature. So, what you have now is you have (indiscernible) in front of you that deal with those issues that aren't -- that are completely not before us now. I -- you know, I think good briefs end up with good decisions. We can try to go forward tomorrow, but, you know, what we're going to get is really a, sort of, very one-sided story with the Court not having the benefit of briefing explaining really what the issues are before it.

The summary statements of what the -- what even the objections are present the entire matter in such a bizarrely one-sided way. The list of objections that are listed as, quote, "objections to the TDPs" for instance, don't even list objections by our clients in them. In the -- in the -- in the list, the chart's main objections, there's a statement just that our objections on TDPs are premature. This is not useful briefing and it's not something that we've had an opportunity to respond to and we're not the only ones here. I think the Court -- it's going to be a very inefficient process for the Court to have to address this, sort of, on a rolling basis.

I'd also just like to suggest -- you know,

in conclusion, just to respond to one thing. This notion that somehow the debtor, nobody reached out to the debtor. I mean, if nothing else is clear, our clients have written the debtor, asked for drafts of the documents, asked to participate in negotiation of the plan and the TDPs. We've been completely and totally locked out. The notion that we haven't called is just completely wrong. We have written, we've written multiple times, we asked to participate.

So, this is a -- this is a plan that was filed yesterday that we never saw before. We didn't have any input on. We didn't get an opportunity to negotiate or participate in and the reason for that, not just for us, but many of the other objectives here, including, I think you'll hear from J&J is that it's been negotiated here are terms under which to liquidate in essence claims against us for which it's a completely one-sided discussion.

The TDP terms for how to liquidate a direct claim say you -- you must file basically one-sentence statement that you were exposed to Talc and have a one-sentence letter from a doctor, it's all it requires, saying that you -- you have some, sort of, disease, that's it, and you get paid under the matrix.

With respect to our claims under Class 4, it

says we will develop a process in the future. This is -- this is a system here that it puts moral hazard with capital M. So, Your Honor, we -- we just think that the much more efficient way to deal with this is to put this off, allow the briefing. There should be substantive input from us in a way to try to reach some, sort of, resolution, but if you just have a group of tort claimants designing a scheme to allow and value their claims, you're going to get a result that's just fundamentally wrong. Thank you, Your Honor.

THE COURT: Thank you. Let me hear from any other parties who wish to adjourn the disclosure statement again to the extent not duplicative of what Mr. Schiavoni has already argued.

MS. BERKOVICH: Yes, Your Honor. This is Ronit Berkovich from Weil Gotshal for Johnson and Johnson. Okay. So, the debtors filed overnight on Monday and into yesterday morning a new plan of reorganization, a new disclosure statement, new TDPs, and a new proposed (indiscernible) solicitation order and black lines of all of the -- of all of those documents total hundreds and hundreds of pages. Importantly, J&J never received drafts of any of those documents before they were filed.

With the limited time we've had to review, it appears at a minimum, and very contrary to what Ms. Posin said that there are drastic changes to the treatment of J&J's indemnity, which impacts both J&J and they impact all Class 4 claimants, this includes both the direct Talc claimants in the class and the indirect Talc claimants in the class, like, J&J and the plan otherwise modifies other issues that will impact J&J and other parties in the trust.

I will get to these, but I think some background is helpful for this status conference. So, the debtors are rushing to have the amended disclosure statement be approved tomorrow, but fundamentally J&J has not been provided enough time to review, analyze, object to, and be heard on these new documents. What's especially frustrating to us objectors is that each of these changes presumably could have and should have been made well before Tuesday and immediately after the Court denied J&J's lift stay motion two weeks ago. That would've given us at least a little time to review, ask questions, file objections, if appropriate, but that fact that these documents were not filed until after the objection deadline suggests that the debtors, we believe under the influence of the TCC and FCR, are intentionally seeking to

steamroll this plan over legitimate objections or at the very least they don't care that that's the effect of what they're doing, but process matters, erroneous matters and we believe that the process here is systematic of the larger issues we complained about from the very beginning, lack of fairness and lack of transparency.

One issue Your Honor heard at the stay hearing is that J&J went -- Mr. Schiavoni's clients, a major player in this case, has been left out of plan negotiations entirely and it seems the same for other objectors, the group represented by Ms. Davis-Jones. You know, as -- you know, we think the debtor's counsel should reach out to parties that raise their hands with issues on the disclosure statements, not wait for them to -- to call and Your Honor did ask the debtor's counsel at the stay hearing about our allegations that J&J's been left out of the negotiations and Ms. Posin's response was telling. She answered that, Yes, they've had negotiations with J&J over the stay order, but really, that's it. There's been zero negotiations with J&J over the plan itself or any of the associated plan documents and, again, very frustrating because since shortly after the case was filed, since Spring of 2019, we've been,

you know, sending them letters saying please talk to us, please negotiate with us and not focus solely on the TCC and FCR and we were told repeatedly that they would do that after they reached a deal with the TCC and the FCR. We just had to sit tight and wait. So, we did that and they did reach a deal sometime in the Spring of 2020 and they filed a plan, but even still, there's been no negotiations with J&J and that first plan was filed in May.

To the contrary, when we said please talk to us now, the -- the -- the debtor said that they agreed with the TCC and FCR, that they would be literally forbidden from having negotiations with J&J without the presence of the TCC and FCR. That is unprecedented, at least in the experience of those of us from Weil who worked on this case and that includes Marsha Goldstein (phonetic), who retired earlier this year after working as a restructuring attorney for over 44 years. It's really shocking.

The debtor should be fiduciary for all -- fiduciaries for all creditors, including indirect Talc claimants like J&J and they should never be prohibited from engaging in discussions with creditors and other parties. Instead, and we've said this from the beginning, the debtors have locked themselves in with

the TCC and FCR. Those are fiduciaries who represent only direct claimants and we believe strongly debtors have given them a blank check to write their own inflated claim amount in an attempt to confirm a claim quickly that gets their parents, the debtors parents, (indiscernible) off the hook for any liability. You know, that's the dirty deal that we speak about and then the point is to foist responsibility for those inflated values on third parties like J&J and the insured.

Their failure to engage with J&J has had consequences both large and small and here's just one example. Before the objection deadline on the first disclosure statement, so, we're talking June, you know, we've had issues with the disclosure statement. So, we've asked them for a word version of this disclosure statement and we sent them a markup. Here are some changes that we suggest you put input into the disclosure statement to resolve our disclosure-related objections. We never heard anything from them. Instead, they file with their reply a new disclosure statement, a black line, that did have some of our changes, but not all of them, and, so, -- oh, we in our objection had to file the black line ourselves, instead of negotiating with the

debtor. So -- and, you know, they have yet to negotiate with us and all of the comments that we have on the disclosure statement.

Now, as the Court may know, I represent many debtors and that's just not the way we typically deal with disclosure statement objections. We reach out to parties, we negotiate with them, especially when there are language objections to the disclosure statement. You know, we try to resolve and narrow as many of these disclosure issues as possible before we file a revised disclosure statement and that certainly eases the burden on the Court so the Court doesn't have to sit there in Court and have us to line and line over the words that we suggest be added to the disclosure statements that the debtor refuses to add and I really don't mean to disparage debtor's counsel here.

Both firms are excellent and I've had good experiences with them and one thing I will say for them is that they are generally available for calls to answer questions when we have questions, but they refuse to negotiate with us, even on simple issues, like language for disclosure statement and, you know, it seems like they just have their hands tied because of their agreement with the TCC and FCR and, again, they're (indiscernible) focused attention here on

getting channeling injunction for the parents and that seems to their --- their sole goal from the beginning of the case.

It really is baffling to us why they couldn’t send us a draft of a current version of the plan of disclosure statement immediately following the stay hearing or at least call us up to let us know big picture about the changes they were going to make to the plan structure, which again that I’ll get to in a minute. You know, we thought we heard the Court say loud and clear a few weeks ago that the debtors should negotiate the parties about this new plan that everyone knew they were going to file and we expected those documents to be filed within days of the stay hearing and we expected this disclosure statement hearing scheduled for October 8th to be moved in light of all of the changes needed, but, again, no such thing occurred and Mr. Schiavoni touched on this briefly, but I do think it’s worth noting that the -- that all of this and the lateness of the debtor’s filing makes existing briefing much less useful and creates huge inefficiencies for the Court.

For J&J alone, three different objections has been filed for disclosure statement and some issues in each of them are moot now and some are still

live and we definitely don't agree with the debtors chart, which gives the debtor's opinion as to what in our objections are moot and which issues are -- are not and, so, to prepare for this hearing tomorrow, the Court would have to review each of J&J's three objections and then even then the Court would not have a complete view of J&J's position because, of course, those three filed objections do not address J&J's very strong objections, which I will get to, to the new issues raised in a very different plan that was filed Monday night.

So, right now, the Court has something, like, three objections and joinders in front of it and many cases from -- a lot of them are from the same objectors and that's a lot. Thirty objections is a lot for a disclosure statement hearing. So, it -- that, kind of, briefing is not only inefficient for the Court, it's unfair to the parties. You know, the debtor's haven't complied for the new documents they filed with the 28 days-notice required by the bankruptcy rules. Like, we literally can't file an objection to the disclosure statement that was filed overnight Monday. You know, the debtor already filed their reply. Two days is hardly enough time to adequately assess how these filings will impact J&J's

interest.

To get the cases back on track, we suggest the following and we think the Court should order or at least strongly suggest that the debtor's whole negotiating sessions with each of the objectors regarding our issues to the disclosure statement of plan to try to narrow the issues as much as possible and I am not talking mediation here or something formal. I am just saying talk to us, negotiate with us, try to solve our issues. We may not end up agreeing on everything, we probably won't, but at least we'll narrow the issues before the Court.

Perhaps the Court can tell the debtor and the other state fiduciaries that the debtors can no longer be prohibited from having discussions with any partying interest in this case without the presence of the TCC and FCR. After that, the debtors can file a new plan of disclosure statement. Parties can have 28 days to object to the new plan of disclosure statement and we can use those 28 days to further engage in negotiations and something else we can try to work out during this period is a timeline for confirmation discovery and a briefing schedule. You know, we haven't really touched on those, but we think that the timeline that they're seeking and the new solicitation

order they filed is way too short and that, you know, and that, you know, why don't we try to -- they haven't -- again, agreed with us or negotiated with us or engaged with us over what a briefing schedule and discovery schedule looks like. So, we think they should do that and then we would come before the Court if we can't reach agreement.

All of that we think would set the case back on course at least a little bit. Through all of this, the debtors have made and will make two big points to pushback. First, they've said that the hundreds of pages they filed this week contained only minor tweaks to what was already on file. Simply not true and I will get to that. Second, they say that time is of the essence here, they can't afford to delay and on that issue, although I have some sympathy, they really have created this mess themselves and it's not a good enough reason to trample on party's rights or send this case careening towards confirmation when multiple parties, including the United States Trustee, have raised major concern regarding the conduct of plan negotiation, moral hazard, and the proposed TDPs and I am sure it may be that the Court hasn't reviewed the three or so objections yet, but I will highlight the one that the United States Trustee filed from last

week because it raises very significant issues about the TDPs that we believe the Court will be concerned about. Okay.

So, there are three different plans on file. The first plan when the debtors filed in May appeared to address the indemnity by letting it ride through and the trust would deal with it later. It's not entirely clear, but that appeared to be the gist of it.

The second plan, the one the debtors filed in August, incorporated that whole J&J protocol order structure where the debtors were essentially asking the Court to rewrite the J&J indemnity agreement to provide more favorable terms for the debtors and plaintiffs and force J&J to take those into the Tort system. I think the debtors realized that that structure was unenforceable, not confirmable, and they dropped it after the stay hearing.

The third plan, the one filed on Monday night, appears in its face to be close to the first version and that's what Ms. Posin said, "It's just what we had before," but it's really not. It's actually a bizarre hybrid of the two plans. Again, the plan itself seems to provide plain vanilla treatment to the Class 4 claims. They're rushing them

to the TDPs where presumably there would be some table with values and the indemnity in this case would be explicit -- was explicitly transferred to the trust, but all the actions in the TDPs, the debtors filed yesterday.

There -- and this is totally new, it appears that claimants who claims injuries from J&J products, they call these indemnified claims, are given an option, they call it an election, to either submit their claims to the trust or pursue claims against the debtors in the Tort system based on the, quote, "J&J indemnity" and, again, the TDPs are less than clear here, but they suggest that J&J will (indiscernible) the debtors with respect to claims where claimants elect to pursue their claims in the Tort system and that, you know -- more problematic for us that if the claimants obtain judgment against the debtors, that J&J will pay it, but the plan can't force an involuntary defense objection on J&J. The agreements themselves, the indemnity agreements, nowhere require J&J to (indiscernible) the defense themselves. Instead, they give the J&J the option to take over the defense, not a mandate and there's been no judgment or order requiring J&J to defend the debtors against such claims.

You know, the plan also can't force such a broad open-ended and unproven indemnification obligation on J&J. You know, J&J recognizes here that it may have some indemnity obligations for some years, but the scope of those indemnification obligations is sharply disputed and in addition, J&J has made it clear that it believes in a very strong defense as to the indemnity. So, we previously voluntarily offered terms under which J&J would agree to indemnify all of the Talc claims to avoid, you know, what we call the dirty deal inflated values that are agreed to by the parties as a result of the moral hazard and imposed the J&J, but the debtors rejected our offer and the Court denied our stay motion that contained the offer.

For J&J now to be responsible for indemnifying the debtors under the 1989 agreement for a judgment entered in Tort system in favor of a particular plaintiff, there would be need to be a determination of the specific judgment claim falls within the scope of that indemnity and the answer might be different for different claims and as we said over and over again, to the extent that any of these claims pursue serious based on asbestos, J&J believes it has a complete defense indemnity and it's also the case of course that J&J indemnity only covers certain

years, yet the TDP appears to have J&J fully indemnified immersed in the Tort system for all of the indemnified claims and we also believe in any of the disputes about the scope of the indemnity should be heard by Court in Vermont, which would determine whether J&J is responsible under the indemnity agreement.

So, back to the TDPs and the new ones that were filed, these indemnified Class 4 claimants, they get to make an election, they become either a trust election claimant or a Tort system election claimant because they have new concepts and new TDPs, never been in there before, and the ones that make election assume that the J&J takes over this defense, which again is a flawed assumption without any agreement from J&J or some court determination that J&J has (indiscernible).

So, even though there's great uncertainly by J&J's indemnity obligations under the -- you know, they're giving these claimants the rights under the TDP to make an election to go to the Tort system or go to the trust when they get a lower recovery, but the fact that they may not get anything from the Tort system because of J&J's defenses is a risk factor that's absent from the disclosure statement and beyond

providing an odd and uninformed choice for Tort claimants, this is highly prejudicial to J&J. It permits plaintiff's lawyers to pick their best claims for the Tort system and leave their weaker claims to recover from the already inflated claim numbers in the trust. It's the worst of all worlds and, again, this election is a totally new concept in the TDP filed early Thursday morning.

So, more importantly for today, it leaves open the question, how does this all work? Don't look at the disclosure statement for answers because this major change to the treatment of the only impaired class under the plan is not in there. It's probably the most important issue to creditors. It goes to the heart of their discovery, but the disclosure statement doesn't contain a single sentence explaining this election concept or what it means to be a trust election claimant versus a Tort system election claimant. If a disclosure statement should do anything, it should at the very least explain to creditors what they're getting under a plan and this disclosure statement does no such thing.

In fact, we think that the plan of disclosure statement as currently written actually conflicts with the TDPs as they're written. You know,

Section 2.1A of the disclosure statements states that following the effective date of the plan, Talc Personal Injury claimants may not continue to pursue the claims against the debtors. Again, totally contrary to the TDP within the elect to do so and the same thing with certain language in the plan that I -- that I can get to, but I know that I have been speaking for a long time.

So, the disclosure statement is misleading and lacks adequate information because it mischaracterizes the plan and the TDP. Now, maybe the debtors will say that I am misunderstanding the TDPs. It’s not the way it works, but if I misunderstand them, how are creditors supposed to understand them? You know, this all proves the point of needing more time to understand, to adjust, to negotiate of asking parties such as J&J the opportunity to pile objections to this fundamentally new plan structure and it will give the debtors time to craft disclosure that actually describes to creditors what they’re going to receive under the plan.

You know, Susan mentioned insurance neutrality. The way that insurance neutrality is written for J&J is totally new. We haven’t had time to adjust it. On first blush, it looks like it’s --

it’s -- it’s -- it’s not adequate and you hear the insurers telling you that its not adequate for them. I mean, if insurance neutrality was perfect, you wouldn’t hear us objecting, right, because we wouldn’t be worried about the effect of these inflated values on us. So, that’s not the way we feel.

So, the second issue that Ms. Posin raised is timing. Well, they knew to move quickly. There’s been no time to slow down and do things right, but as I noted, the timing is an issue of their own doing. You know, since the beginning of the case, not only has J&J sought to participate in negotiations, you know, we’ve also sought discovery relevant to the plan, but the debtors consistently gave us (indiscernible). Since Spring of 2019, our letters asked for information relevant to the most important issue in this case, which is the ultimate claim value and we were told that it was premature.

So, Your Honor may remember that J&J filed a 2004 motion, you know, back in June of 2019 and Your Honor heard it in July of 2019, which, again, more than a year ago. When the debtor’s opposed the motion at that time and made the argument that it was premature for us to seek this information, even though it was the same information that was being shared with

the TCC and the FCR and "Don't worry, once the plan is filed, you'll get all of the information that you need." Well, that plan was filed in May and we're still waiting on this information and, you know, we expressed concerns to the Court at that time, but the debtors have tried to jam us -- confirmation and not give us the information we need with sufficient time for our experts that we've hired to analyze the data and the debtors assured us that waiting for the plan filing would not lead to such a result. Well, we're here.

Unfortunately, J&J will have to bring these discovery issues before the Court in the near term because as hard as we're trying, it doesn't appear that we'll resolve these issues and Mr. Tsekerides may at the end of this want to address the Court how it wishes to hear the discovery issues, but this also impacts the timing.

We need this information. This is basic information that's required to analyze whether the values they put in the TDPs really are inflated, but the debtors are refusing to provide it and they're making up excuses, frankly, that don't make sense to us and further our suspicions about being controlled by the TCC and FCR instead of being fiduciaries for

all parties.

As to the overall timing recently in denying the stay motion, Your Honor stated that certainly discovery is going to be permitted with respect to plan-related issues and the Court would proceed along a pace that makes sense and perhaps, you know, there needs to be a pause. Well, even though the confirmation timing isn’t before the Court at this time, we think it’s worth raising now and perhaps getting some guidance from the Court before the debtors file in some, sort of, revised schedule.

So, to be clear, the deadlines that they put in the revised solicitation order are way shorter than the deadlines that they put in the same documents they filed in May. The confirmation objections are due 30 days less time and the confirmation hearing is, like, a month and a half sooner. So, the timing between the approval of the disclosure statement and those two dates and they may try to justify this and I think they do this a little bit in their reply by saying that, “Well, there’s been some discovery that’s taken place since the initial plan was filed. So, we can have a shorter deadline,” but we have not received the discovery that relates to the key issue in the case. The one that generally leads to a confirmation

schedule for a mass Tort hearing being longer than a standard Chapter 11 case, which is the settlement history and other related documents that underlie the claim values.

So -- so, just a couple of more points about timing. You know, one of the cases the debtors cite in their reply in the Court of their --

THE COURT: I haven't read the reply --

MS. BERKOVICH: Okay.

THE COURT: -- and I haven't thought about the timing yet.

MS. BERKOVICH: Okay.

THE COURT: So, I think I've heard enough on whether we need to go forward tomorrow. Is there any objector who possibly has anything to say that's not duplicate of what Ms. Berkovich said with respect to the timing issue?

MS. DAVIS-JONES: Your Honor, this is Laura Davis-Jones with Pachulski Stang Ziehl and Jones on behalf of Arnold and Itkin LLP. Your Honor, we did file a joinder last night and I appreciate the comments that have been made by counsel and I will not duplicate those. Your Honor, the only point I wanted to emphasis is, you know, obviously you hear the frustration, we share it. We do think we need more

time here.

Your Honor, we would ask that the TCC, the FCR, the debtor, or some set of them be encouraged or may be directed to meet with us and provide information and to negotiate with us as well. Thank you, Your Honor.

THE COURT: Ms. Jones, I did not see what was filed last night. Who was your client?

MS. DAVIS-JONES: Your Honor, Arnold and Itkin LLP. They represent thousands of the Talc ovarian cancer personal injury claimants. We only filed --

THE COURT: Thank you.

MS. DAVIS-JONES: Thank you, Your Honor. We just filed a two-page joinder and that's been covered. Thank you.

THE COURT: Thank you. Anyone else?

MR. HEATH: Your Honor, Paul Heath on behalf of Cyprus Amax Minerals Company and Cyprus Mines Corporation. We didn't file a formal joinder last night, but we do support the requests for an adjournment. Indeed in our -- I believe it was our third supplemental objection we filed yesterday -- or Monday, we did previous to the Court what we thought would be the need for an adjournment. So, at this

point, just wanted to go on the record and make the Court aware that we do formally join in the request for adjournment.

THE COURT: Thank you. Anyone else?

MR. SILVERBERG: Your Honor, it's Bennett Silverberg on behalf of the ad hoc plaintiff's group. To the extent that the -- that the debtors and TCC are going to be directed to negotiate with anybody, we would like to be included amongst the parties that they engage with.

THE COURT: Thank you. Anyone else?

MR. SILVERBERG: Thank you, Your Honor.

THE COURT: I want to come back to Ms. Posin. Ms. Posin, I keep hearing over and over that the debtors are not negotiating with parties because the FCC or the future claimants representatives have mandated it; is that true?

MS. POSIN: No. I will say. We have -- I am a little bit befuddled because we have had communications. I mean, we went to mediation with J&J, we went to mediation with Cyprus. We are involved in mediation with Cyprus. We went to mediation with Rio, Tinto and Zurich. We are engaged in mediation with Excel (phonetic). We are probably going to engage in mediation with a couple of other

insurers, including some of the movants here today. So, I am little befuddled by that.

Certainly, there were discussions at the outset. You know, this is a 524G plan. I know this Court is well aware in order to confirm a 524G plan, we have to have 75 percent acceptance rate, which is a high rate, and, so, typically in a 524G case, you will have to have negotiations with the committee that represents the direct Talc claimants and reach an agreement with them, so, that they can deliver, if you will, that vote.

So, we have -- we did spend a fair amount of time at the beginning of this case negotiating with the -- the TCC and the FCR as well as ultimately a parent and we reached an agreement that was filed that was included in the plan that was filed in May.

As part of that discussion, the parties reached an agreement that it made sense to -- while we -- we reached an agreement, I think it's public knowledge at this point, in early March. J&J filed their stay relief motion later in March and we had already reached the deal in principle and it took us six weeks to fully paper that deal and to file the amended plan disclosure statement on May 15th.

So, that took some time. We do not believe

that at that point in time that it made sense after we had already reached a deal in principle after negotiating for over a year to, kind of, rejigger that and bring in new parties and try to revise that while we were still negotiating the original terms that had, you know -- that had been agreed to in principle.

So, no, we certainly have had conversations with all of these various parties. There is a lot of discovery outstanding. I understand from Ms. Berkovich they haven't gotten everything they want. That's frankly not unusual. We have provided a fair amount of information that we believe we can provide. They have requested things that are very clearly covered by mediation privilege as we discussed. They can bring those issues into Court and we're happy to brief them as appropriate, but we are continuing that dialogue. We would love to have an agreement with everybody, as I said before. It has been a difficult process to get to where we are with the planned proponents.

I heard Ms. Berkovich and I think Mr. Schiavoni say, you know, "The Court entered that order on -- on September 25th, why didn't they have a disclosure statement the next day?" Your Honor, we're dealing with four planned proponents, including a

committee of 11 members, a future claimants representative and 300 and so non-debtor (indiscernible) entities and that 10 day period is over two weekends and the Jewish holidays. We filed that amended plan disclosure statement as soon as we possibly could on Monday. We are not playing games, we are not trying to jam people. We are trying to get this case moved forward, point blank.

As far as the neutrality provisions, we believe that the insurers -- the language in the (indiscernible) that I noted for the insurers are exactly what Mr. Schiavoni has gotten in other cases for his clients exactly what has been done in many other 524G cases in the Third Circuit. It's identical language and that's been in the -- in the -- in the planned disclosure statement since May. If they don't like it, fine, that's a confirmation issue, it's not a disclosure statement issue.

Ms. Berkovich just did a very eloquent argument, but she basically just argued the disclosure statement today. She told you she's not ready, she needs more time. I think I just heard her entire argument and she sounds like she was very well versed in the changes that have been made and has responses to all of them. So, it doesn't seem to me that

there's additional time needed for disclosure.

Yes, I am hearing everybody say we need more time for confirmation, we need time for more discovery, but the confirmation issue can be dealt with after the disclosure statement hearing.

THE COURT: Okay. Thank you. I am not sure I heard a direct answer to my first question, but I will accept the answer that was given. The -- so, here's where we are. I would agree that Ms. Berkovich is perfectly capable of arguing the disclosure statement, she just did, but I am not perfectly capable of hearing it and it is not a -- and it's not a comment on whether the debtor could have filed its amended plan sooner or not, given the logistics necessary to do it, the intervening holidays, etcetera. It's a question -- it's a matter -- it's just a fact that revised documents were filed apparently late Monday night and I have objections that do not go to that disclosure statement and in fact as Mr. Berkovich pointed out and as I noted as we were taking a look at the agenda, I probably have three objections from each objector that incorporate back their objections to other plans that are not in front of me and where I would have to try to figure out what is still relevant and what isn't relevant and

I am not in a position to do that in a day and to be prepared to -- to comment on the adequacy of this disclosure statement.

The -- and I think other parties are entitled to see the finished product and comment on it and some parties haven't been able to see it and didn't see it before yesterday and they should be entitled to comment on it now. Whether it's the same as the May plan, I don't know because I didn't read the May plan because it wasn't in front of me. So, I have no idea whether it's the same or not but I also don't think parties should have to be preparing off of three different disclosure statements and plans.

So, I am going to postpone the hearing (indiscernible) to timing and I would like in the meantime for the parties who are filing an objection, although this is more work for them, but I am hearing they want it, to in fact provide me one objection per objecting party that has all of their objections to the current plan and -- to the current disclosure statement in one document.

We have a hearing --

UNIDENTIFIED FEMALE: I think the next hearing is November 16th. That's the sale hearing.

THE COURT: Yes. We have a hearing on

November 16th. So, we're going to continue disclosure statement to November 16th. I would like objections filed -- well, let me work back from that. I would like the reply filed by the 9th. So, I would like objections filed on the 26th. That should give everyone time to read the new documents; synthesis your objections; target me on real disclosure statement objections, not confirmation objections please; and that should give -- then the two weeks in between should give the debtors time to see if there can be agreement on language for the disclosure statement and I recognize there -- you may have 300 non -- 300 affiliated people and others to check with, but they need to move quickly.

As for discussions, of course the parties should be talking. I don't see why I should have to order that. If there are any constraints that three people have to be in the room before the debtors can have discussions, then those three people better be in the room. I don't know why that's necessary, if it is, and Ms. Posin, you made an interesting comment about how the fact that you didn't think that the -- I think you said you didn't think that parties with indirect Talc payments were going to get to vote on the plan. I don't understand that comment. So, if

that's going to be part of procedures that are going to be put in front of me for approval on (indiscernible), then I am going to need to understand that.

MS. POSIN: And I apologize, Your Honor. The comment was just meant to be -- I don't think any of those claims are liquidated. Certainly those folks have an opportunity to file 30:18 (phonetic) motion and that's what's permissible under, you know, the (indiscernible) procedures for indirect Talc claimants. So, that -- that was the comment.

I don't otherwise see how that would work and I think a lot of the indirect Talc claimants that I've seen, the proofs of claims that have been filed are protected and there aren't -- there aren't existing claims against the estate, but not (indiscernible) anybody. I am sure a few folks on this call will tell me that that's not the case for their client and we're happy to take a look at that, but that's my general understanding.

THE COURT: So, if we're going to have to build in a 30:18 hearing into the confirmation process timeline, then that's something that is going to have to be considered with respect to the timeline.

MS. POSIN: Understood. Your Honor, I just

wanted to get -- I know the Court is very slammed. We do have -- we did set the objection to J&J's claim for November 16th. We also will probably be filing a DIP motion to be heard on November 16th. I just wanted to make sure the Court is going to have sufficient time for all of those things and -- and -- and the sale hearing, which -- which could be contested. Obviously, we don't know that yet. So, I wanted just to make sure we have sufficient time on that date.

THE COURT: Okay. So, I have you down for the 16th. I am going to cross out the 17th and keep that day open as well.

MS. POSIN: Thank you, Your Honor.

MS. RAMSEY: Your Honor, it's Natalie Ramsey for the Tort Claimant Committee. I don't want to speak out of order and I do not want to delay things and this really does not directly relate to the scheduling that Your Honor is in the process of doing, but I think the last question that you directed to Ms. Posin caused me some concern because I don't want the allegations that the Tort Claimant's Committee has been unresponsive or unwilling to talk with really any parties, but particularly the other represented Tort claimants that have appeared is accurate at all. We had a meeting on the 29th of September most recently

with the folks that are represented by Brown Rudnick. That meeting was a couple of weeks in the process of scheduling regarding the TDP. The claimants represented by the Chelsey (phonetic) firm were invited -- included on those communications. For whatever reason, they were -- they didn't end up participating in that call, but we have talked with them from time to time, in large part, you know, frankly, to say to them that the TDP would be coming and we would be happy to talk with the -- the deal -- deal has landed. For whatever reason, that didn't happen. So, the first time we knew that they were expressing concerns they were expressing was really yesterday, but I did want to assure the Court and the Court knows we are -- recently we were in mediation with J&J, we have tried to include Mr. Schiavoni and mediation. We had -- Mr. Pollack (phonetic) reached out to Mr. Schiavoni several times with respect to executing confidentiality and protective orders and that didn't happen, but we have been available, we remain available and it is our intention to continue to be available to talk with anyone that would like to talk with us about the TDP.

THE COURT: Thank you.

MS. DAVIS-JONES: Your Honor, this is Laura

Davis-Jones. If I may have just one moment just in response to Ms. Ramsey (indiscernible) silence the acquiescence.

Your Honor, I have a very different history of that. I am glad to hear Ms. Ramsey saying they now will be available and willing to talk to us because up until now it's been "Let's just see if the TDP gets filed, there's too many people under the tent. We can't involve you, we cannot include you, we cannot answer your questions," and then as recently as shortly before this hearing, I was told by her partner that our issues are all confirmation issues and we'll have to deal with them then.

SO, I am very glad to hear that they are willing to meet with us and -- other than just pick up a phone and say, "We'd like to talk with you and really understand your frustration, but we have nothing that we can give you." I am glad to hear now that maybe they can and we will take them up on that offer. Thank you, Your Honor.

THE COURT: Okay. Thank you. Let me say this since we are lengthening the period on the disclosure statement. There is not a need to wait necessarily until disclosure statement hearing approval for confirmation discovery certainly to be

offered by debtors and I say that because I am going to permit a sufficient period of time for discovery of confirmation issues and if the discovery doesn't start until the confirmation -- until disclosure statements been approved, then it's going to push it out, the confirmation hearing schedule. There's no question about that.

So, I understand there's outstanding discovery requests. If the debtor chooses to go ahead and respond and get a jumpstart on responding to the requests, don't stand on ceremony and say we have to wait until the disclosure statement is approved because eventually, I assume some disclosure statement is going to be approved, whether it's this one or some modified one and eventually something is going to go out, but from what I am understanding about the big issues, they go to the TDPs and if the TDPs aren't going to change, then there's really no basis to wait for that discovery.

If the debtor chooses to wait to respond, then we'll deal with that, but I see no reason why the debtor can't get a jumpstart if he chooses, in responding to discovery requests, certainly outstanding discovery requests if the debtor deemed were really confirmation issues.

MS. POSIN: And Your Honor, just on that point, just to be clear, my -- my litigation partner is on the line, but we have received a substantial amount of discovery requests, at least from four or more parties on this phone call today. We have responded to all of those requests, we have served a substantial amount of documents already. We are not waiting, I assure you. Yes, there are some issues, there will always been in discovery and we are working through those and we are (indiscernible) appropriate and we will bring those issues -- other movants, the parties seeking discovery will bring those issues before the Court as needed. Hopefully that will not happen, but we -- I wanted to assure you that we are very much interested in moving forward with discovery and we are pushing that along.

THE COURT: Okay.

MR. TSEKERIDES: Your Honor, Ted Tsekerides for J&J. Picking up on that last point, we are going to have some disputes that we know right now we are going to need to bring to your attention and from a process prospective, how -- how should do that that would be best for the Court? Should we try to set up a conference by telephone with chambers, should we send a letter, file a motion? What would be the best

way to do that?

THE COURT: You should send a letter -- well, you should file it on the docket and you should send it to chambers and after we receive the responses, which should be promptly, we'll set up a time, a telephone conference or a Zoom conference to hear it. No motion.

MR. TSEKERIDES: Thank you very much.

THE COURT: No motion.

MR. TSEKERIDES: Okay.

THE COURT: One question on about what was filed on Monday or Tuesday, whenever it was filed. I've got a TDP and then I have a notice of filing of a corrected revised TDP. I assume it's the correct revised TDP that I should be looking at?

MS. POSIN: That's right, Your Honor. The original document that was filed was cut off. It only gets to Page 11. It didn't change, it just got -- there was an error in the filing.

THE COURT: Okay. Okay. So, the black lines should still be good as well to the extent I go to that?

MS. POSIN: The black line is complete and correct. Yes.

THE COURT: Okay. Okay. I don't think I

have any other questions. Any other business we can do today? Okay. Thank you very much, counsel. We're adjourned.

UNIDENTIFIED FEMALE: Thank you, Your Honor.

UNIDENTIFIED MALE: Thank you, Your Honor.

(Audio Recording Concluded.)

**CERTIFICATION**

I, KRISTIN CORRADO, the assigned transcriber, do hereby certify the foregoing transcript of proceedings is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings, as recorded.

BY: *Kristin Corrado*

Kristin Corrado, Transcriber

Reliable | 10/8/2020

Agency Name | Date