**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Theodore E. Tsekerides**
+1 (212) 310-8218
theodore.tsekerides@weil.com

October 23, 2020

**BY EMAIL/ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court
For the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:    *In re: Imerys Talc America, Inc. et al.*, Case No. 19-10289 (LSS)[1]

Dear Judge Silverstein:

We write on behalf of Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "J&J") to raise certain plan discovery disputes that require the Court's intervention. We have held meet and confer conferences with counsel for the various parties but have been unable to reach a resolution with respect to the issues identified below. As Your Honor directed during the October 7 conference in this matter, we are filing this letter on the docket in addition to submitting it to chambers.

It cannot be overemphasized that transparency and disclosure are hallmarks of bankruptcy proceedings and that attempting to hide relevant data and information undermines the process and the Court's ability to render a fair and equitable confirmation order. To that end and for well over a year now, J&J has made no secret that it would be seeking discovery from the Debtors and other parties on issues relevant to the Debtors' bankruptcy proceeding. While the Court initially concluded that J&J's early efforts through Rule 2004 discovery were premature, it made clear then and has since reiterated that plan discovery will be permitted and that sufficient time will be allotted for its completion prior to any confirmation hearing. J&J initially served discovery requests relating to plan issues on the Debtors, the TCC, the FCR, and Imerys SA (the Debtors' parent company and a Plan Proponent) and most recently served discovery on another Plan Proponent, Imerys USA.

To date, the Debtors and Imerys SA have produced thousands of documents in this proceeding—a fact they are likely to often repeat as a supposed show of compliance with discovery obligations—but quantity is no substitute for quality. Indeed, it is clear that key relevant documents, including claims and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

**Weil, Gotshal & Manges LLP**

October 23, 2020
Page 2

settlement data, are being withheld on various grounds such as a specious claim of "unfair litigation advantage," broad claims of privilege, and a French statute that Imerys SA asserts precludes it from producing any documents located in France. The TCC and FCR, for their part, have produced no documents to date, with the FCR initially asserting that it would produce no documents in response to any request, save for one (*i.e.*, documents to be used at confirmation). Although the FCR has since stated that he will soften his stance, he has yet to indicate which documents, if any, he will produce. The TCC has also not committed to producing any documents to J&J. J&J will continue to work with the parties on those other issues, but the significant issues discussed below require Court intervention at this time.

## Settlement and Claims Data

As the Court is no doubt aware, in chapter 11 cases involving valuation issues relating to current and future tort claims, information relating to prior settlement and claims history is critical to determine whether the estimated or proposed values set forth in a plan or trust distribution procedures are reasonable. Indeed, this type of information is often the central data used by experts and parties to determine the values for those claims. Even if the settlement data alone may not provide the entire picture, it is always relevant to the analysis. Here, the Debtors have 11 spreadsheets they have identified that contain settlement and claims data relevant to the valuation of claims sought to be resolved by the Plan. They have informed J&J that those spreadsheets were provided to the FCR and TCC in connection with diligence conducted by those entities in these Chapter 11 Cases last year. Yet, notwithstanding the relevance of these materials and the fact that they were provided to the FCR and TCC *over a year ago*, the Debtors have refused to provide all but 2 of the spreadsheets to J&J.

The Debtors' asserted basis for withholding these documents is that the information is subject to confidentiality and they cannot produce the materials absent consent from the plaintiffs. The Debtors also claim that producing the materials to J&J would result in providing J&J with an unfair litigation advantage in underlying tort litigation. The Debtors invited J&J to raise this issue with the TCC, as apparently it is the TCC that is causing the Debtors to raise these baseless objections—furthering J&J's suspicions that the Debtors have simply handed the TCC *carte blache* to run these cases for its own benefit. During meet and confers with the TCC, however, it refused to allow any such production even though J&J agreed to keep the materials on a professional eyes only basis. According to the TCC, because certain attorneys at Weil (including Diane Sullivan who has a central role representing J&J in these Chapter 11 Cases) also represent J&J in underlying tort claims, production of the claims and settlement data would somehow provide an advantage in that litigation. But none of these objections pass scrutiny and there is nothing about the Debtors' settlement and claims data that will advantage J&J in underlying tort litigation if its lawyers see that information here.

First, the confidentiality objection is easily disposed of based on the protective order in this case, which expressly contemplates that confidential information will be produced and handled accordingly. J&J, like all other parties receiving discovery, is bound to follow the protective order and has already agreed to keep the information on a professional eyes only basis. Moreover, there is nothing sacrosanct about settlement data, a key data point in most mass tort chapter 11 cases, that would preclude disclosure

**Weil, Gotshal & Manges LLP**

October 23, 2020
Page 3

in this proceeding. *See*, generally, Larsen, Navigating the Federal Trial §§ 18:31, 18:32 (2020 ed.) (relevant settlement agreements and settlement amounts are discoverable under FRCP 26(b)(1)); *see also Oberthaler v. Ameristep Corp.*, No. 5:08–cv–1613, 2010 WL 1506908, at *1 (N.D. Ohio April 13, 2010) (ordering disclosure of amounts of settlements between Plaintiff and other co-Defendants, noting that the settlement agreements were not privileged nor protected from discovery simply because they were denominated "confidential" by the parties); *Blount v. Major*, No. 4:15 CV 322 DDN, 2016 WL 6441597, at *2-3 (E.D. Mo. Nov. 1, 2016) (ordering Plaintiff to produce amounts of settlements with Co-defendants, noting that confidentiality concerns could be addressed through an "attorneys' eyes only" designation). In addition, the fact that the information, which was prepared by the Debtors and reflects the Debtors' data, was already shared with the FCR, undermines any notion that the materials are only meant for the Debtors and the TCC.

Second, objections based on purported litigation advantage are contrived and nothing more than an excuse to hide this information from J&J. Having the Debtors' settlement data does not provide any insights into the merits of the claims against J&J or whether a particular plaintiff is entitled to recovery or in what amount should it prevail against J&J in the tort system. Even so, J&J offered to have the names of the plaintiffs redacted if that would help the process—but that was refused, as apparently the information in the spreadsheets is already anonymized, further begging the question of why the Plan Proponents will not produce it. Moreover, J&J could not use the materials in underlying tort cases given the protective order in this case and if it sought to obtain that information in those cases, as it has a right to, it will be for that other court to decide if and when J&J could utilize the information. For example, in a case against J&J involving a plaintiff who had settled with the Debtors, J&J would absolutely be entitled to know the amount of such settlement so that appropriate set-offs could be applied. *See Blount*, *supra* at *2 ("[W]hile set-off is a post-judgment defense, knowing the amount plaintiff has already received will surely impact the defendants' strategy as they prepare for trial and any potential judgment against them. Rule 26 does not distinguish between post-judgment and pre-judgment defenses in its delineation of the scope of discoverable information.") (citations omitted).

It is particularly ironic that under the current Plan and Trust Distribution Procedures, J&J is expected to defend and presumably resolve Talc Personal Injury Claims on behalf of the Debtors' liability, but at the same time is not being provided with information reflecting what the Debtors have settled for in the past. It is also telling that during meet and confer conferences, the TCC could not articulate how Ms. Sullivan or any other lawyer at Weil who works on this matter and on an underlying tort case, could possibly gain insights into the plaintiff's strategies against J&J. *See AbbVie Inc. v. Boehringer Ingelheim International GmbH*, Civil No. 17-cv-01065-MSG-RL, 2019 WL 1571666, at *4 (D. Del. April 11, 2019) ("AbbVie will produce the settlement agreements subject to the protective order entered in this case, and subject to review by outside counsel only. *I will not impose the added layer of protection requested by AbbVie, creating a special cadre of lawyers who alone are authorized to see the settlement agreements. Such a system promises to be unworkable.*") (emphasis added). After all, we understand that the spreadsheets reflect the Debtors' compiled information and could not possibly disclose the plaintiffs' litigation strategies in the underlying tort cases. And, knowing that a plaintiff settled and for what amount, has nothing to do with whether the plaintiff has been exposed to J&J's talc, whether that exposure caused

**Weil, Gotshal & Manges LLP**

October 23, 2020
Page 4

the alleged injuries, or the amount of damages a jury would award the plaintiff against J&J if liability is established.

Simply put, the spreadsheets are relevant to significant issues in the Plan and the Trust Distribution Procedures and the Debtors and TCC should be compelled to produce them.

**French Blocking Statute**

Even though it is a Plan Proponent and stands to benefit from a channeling injunction absolving it and its affiliates of liability for Talc Personal Injury Claims, Imerys SA (the Debtors' parent) has refused to produce any documents located in France. According to Imerys SA, it is precluded from making such a production based on what it claims is the broad application of a "French Blocking Statute." Thus, notwithstanding that responsive and relevant materials exist, Imerys SA purposefully is withholding those materials. But this objection fails for several reasons. As an initial matter, it is irrelevant that Imerys SA has produced other documents to J&J already. If distinct documents exist in France that are responsive to J&J's requests, they should be produced in addition to those that came from the U.S. Moreover, as a Plan Proponent who is voluntarily coming into a U.S. Bankruptcy Court and seeking to be released for potential liability, Imerys SA has an obligation to produce relevant documents so that interested parties and the Court can test whether the release it is obtaining is appropriate and not hide behind claims that it is immune from making a production due to foreign law.

In addition, Imerys SA's claims that the French Blocking Statute preclude it from making a production of documents located in France are overblown. In fact, the case authorities are to the contrary. Indeed, the United States Supreme Court has held that it is "well settled" that statutes such as "[t]he French 'blocking statute'…do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 544, n. 9 (1987). Following *Societe Nationale*, several courts have similarly ruled that the French Blocking Statute cannot be validly invoked to object to discovery requests. *See, e.g.*, *In re Air Cargo Shipping Services Antitrust Litigation*, 278 F.R.D. 51, 54-55 (E.D.N.Y. 2010) ("The court has little difficulty concluding that France's relatively weak national interest in prohibiting disclosure of the information sought by the plaintiffs is outweighed by the more substantial United States interests articulated above."); *In re Vivendi Universal S.A. Secs. Litig.*, No. 02CIV5571RJHHBP, 2006 WL 3378115, at *3 (S.D.N.Y. Nov. 16, 2006) (ordering French company to produce documents and noting that "[t]he majority of courts that have examined the issue have held that France has little interest in the enforcement of its Blocking statute").

Finally, Imerys SA has claimed that there may not be many documents relating to plan negotiations in France and any requests for materials beyond plan negotiations are not, in its view, relevant. First, regardless of the number of documents that may be in France, they should be produced if responsive to J&J's requests. *See Vitality Sys. V. Sogeval Labs, Inc.,* 2010 U.S. Dist. Lexis 149164, *9 (M.D. Fla. Feb. 3, 2010) ("the quantity of such documents does not control whether they are important to this litigation.").

**Weil, Gotshal & Manges LLP**

October 23, 2020
Page 5

Second, Imerys SA's attempts to limit discovery solely to negotiation of the plan are not appropriate.  In particular, J&J has sought documents from Imerys SA relating to its potential liability for Talc Personal Injury Claims, including based on theories of alter ego and veil piercing.  This topic is clearly relevant to whether it is appropriate to include Imerys SA in any proposed channeling injunction as well whether the amount Imerys SA is contributing to the Plan in exchange for exoneration of Talc Personal Injury Claim liability is reasonable.  This discovery is particularly appropriate since the Plan would purportedly impact J&J's rights to recover from Imerys SA with respect to underlying Talc Personal Injury Claims and because more amounts contributed by Imerys SA to any Trust would reduce amounts J&J may have to pay to the extent the Trust, or any other party, is ultimately able to establish liability against J&J.

Where, as here, Imerys SA is an integral part of these Chapter 11 proceedings as a Plan Proponent seeking the benefit of a channeling injunction, the Court should give short shrift to Imerys SA's excuse that it cannot be subject to discovery because of the "blocking statute."  Moreover, given that Imerys SA has admittedly already produced certain documents in these proceedings, to the extent any of those materials were from France, Imerys SA has waived any argument based on the "blocking statute" because it cannot selectively invoke the statute when it suits its purpose.  *See, e.g.*, *In re Activision Blizzard, Inc.*, 86 A.3d 531, 550 (Del. Ch. 2019) (recognizing that "…prior decisions to disregard the Blocking Statute when advantageous undercut its ability to invoke the Blocking Statute now…")

**Privilege Logs**

All Plan Proponents have asserted common interest and mediation privilege and are withholding documents based on those privileges. While J&J contends that itemized privileged logs should be provided in connection with those assertions of privilege, as an interim step and without waiving that contention, J&J had agreed to accept categorical logs to at least ascertain as a general matter the categories of documents being withheld.  To date, only the Debtors have agreed to provide a categorical log (see attached) but even that falls short.  For example, the Debtors claim mediation privilege for Category 6 described as one "regarding mediation and issues and discussions related thereto" with a date range of "at least as of June 1, 2019 – June 29, 2020" but identify no mediation order covering that period or detail about the topic.  In follow up meet and confer exchanges, the Debtors advised that the category related to participation by Rio Tinto and Zurich in the Debtors' plan of reorganization.  But that remains too broad a category and does nothing to tie the purported mediation to any order of this court establishing mediation.  While the mediation privilege is an important one, it cannot and should not be abused as a mechanism to hide information.

This is a significant issue, especially given that the Debtors have only produced 106 emails dated post the petition date.  It is thus apparent that the Debtors (and likely the other Plan Proponents) are withholding a substantial volume of emails as privileged but are not providing the information necessary to probe those claims of privilege.  J&J requests that all Plan Proponents be compelled to provide, as an initial matter, categorical privilege logs that identify the categories of privilege in sufficient detail, the number of documents being withheld on the basis of that category, the date range for the category and, if based on mediation, the mediation order they are relying on.  This will provide J&J and the Court with

**Weil, Gotshal & Manges LLP**

October 23, 2020
Page 6

information to determine if itemized logs should also be provided and whether the asserted privileges are appropriate.[2]

**Objections Based on Alleged Duplication**

In addition to failing to produce any documents to date, both the TCC and FCR have asserted objections that they should not have to produce documents because the Debtors and Imerys SA have already produced documents.  But this objection goes too far.  While J&J is not seeking to obtain duplicative documents, the problem with this objection is that J&J has no way of knowing whether the documents the TCC and FCR have are duplicative of others already provided.  Moreover, there are undoubtedly documents these parties have that would not be duplicative.  For example, if the TCC and FCR were having communications among themselves, which they likely did in negotiating the TDPs and which would not be privileged, only those parties would have those communications and there would be no duplication.  Yet, none of that has been produced to date.  Moreover, each Plan Proponent has its own discovery obligations and cannot rely on productions by others to discharge those obligations.  It should not be put to J&J to guess or simply take their word for it that anything the TCC and FCR would produce has been produced by others, especially when any such claim would obviously be false as relates to any communication between the TCC and FCR.

If the Plan Proponents hope to keep their confirmation schedule, and if this Court is to consider a Plan that resolves thousands of claims where the proponents seek to offload significant liability on to J&J, full and fair discovery on issues relevant to the Plan must be provided.  J&J is seeking no more than that to which it is entitled and which this Court has stated would be required of the Plan Proponents.   The Plan Proponents should not be permitted to stonewall discovery and then run the clock out to confirmation, which appears to be their current strategy. We ask that the Court set a schedule for the Plan Proponents to respond to this submission and for a conference with Your Honor to address these issues at the Court's convenience.

Respectfully Submitted,

*/s/ Theodore E. Tsekerides*
Theodore E. Tsekerides

Encl.
All counsel by ECF

---

[2] J&J reserves the right to challenge all designations of privilege, including as relates to common interest and mediation privilege, as neither of those privileges are absolute.

## The Debtors' Privilege Log

In re Imerys Talc America, Inc., et al, Case No. 19-10289 (LSS)

| Category No. | Date Range | Document Type | To | From | CC/BCC | Category Description | Privilege Type |
|---|---|---|---|---|---|---|---|
| 1 | March 5, 2020 - ongoing | Emails and attachments | lw.com<br>nge.com<br>hugheshubbard.com<br>rc.com<br>ycst.com<br>gilbertlegal.com<br>willkie.com<br>pjtpartners.com<br>ducerapartners.com<br>imerys.com | lw.com<br>nge.com<br>hugheshubbard.com<br>rc.com<br>ycst.com<br>gilbertlegal.com<br>willkie.com<br>pjtpartners.com<br>ducerapartners.com<br>imerys.com | lw.com<br>nge.com<br>hugheshubbard.com<br>rc.com<br>ycst.com<br>gilbertlegal.com<br>willkie.com<br>pjtpartners.com<br>ducerapartners.com<br>imerys.com | Communications and documents to/from/among Debtors, Imerys S.A., the Tort Claimants' Committee, the Future Claimants' Representative and their respective counsel and/or advisors reflecting legal advice and/or for the purpose of rendering legal advice regarding the proposed plan of reorganization and related documents and issues. | Attorney-Client Privilege; Common Interest Privilege; Attorney Work Product |
| 2 | At least as of September 25, 2018 - February 13, 2019 | Emails and attachments | lw.com<br>nge.com<br>imerys.com<br>ycst.com | lw.com<br>nge.com<br>imerys.com<br>ycst.com | lw.com<br>nge.com<br>imerys.com<br>ycst.com | Communications and documents to/from/among Debtors, James Patton, Jr. and their respective counsel and/or advisors reflecting legal advice and/or for the purpose of rendering legal advice regarding preserving and/or maximizing assets available or potentially available for recovery to creditors, including as related to insurance and/or estate claims, including claims for indemnification. | Attorney-Client Privilege; Common Interest Privilege; Attorney Work Product |
| 3 | At least as of February 13, 2019 - ongoing | Emails and attachments | lw.com<br>nge.com<br>willkie.com<br>rc.com<br>hugheshubbard.com<br>ycst.com<br>gilbertlegal.com | lw.com<br>nge.com<br>willkie.com<br>rc.com<br>hugheshubbard.com<br>ycst.com<br>gilbertlegal.com | lw.com<br>nge.com<br>willkie.com<br>rc.com<br>hugheshubbard.com<br>ycst.com<br>gilbertlegal.com | Communications and documents to/from/among Debtors, Imerys S.A., the Tort Claimants' Committee, the Future Claimants' Representative and their respective counsel and/or advisors reflecting legal advice and/or for the purpose of rendering legal advice regarding preserving and maximizing assets available or potentially available for recovery to creditors, including as related to Johnson & Johnson's indemnity obligations and insurance assets. | Attorney-Client Privilege; Common Interest Privilege; Attorney Work Product |
| 4 | At least as of February 13, 2019 - ongoing | Emails and attachments | lw.com<br>hugheshubbard.com<br>imerys.com<br>nge.com | lw.com<br>hugheshubbard.com<br>imerys.com<br>nge.com | lw.com<br>hugheshubbard.com<br>imerys.com<br>nge.com | Communications and documents to/from/among Debtors, Imerys S.A., and their respective counsel and/or advisors reflecting legal advice and/or for the purpose of rendering legal advice regarding the bankruptcy action and related proceedings. | Attorney-Client Privilege; Common Interest Privilege; Attorney Work Product |
| 5 | At least as of August 24, 2020 - ongoing | Emails and attachments | lw.com<br>nge.com<br>hugheshubbard.com<br>ycst.com<br>gilbertlegal.com<br>willkie.com<br>rc.com<br>weil.com | lw.com<br>nge.com<br>hugheshubbard.com<br>ycst.com<br>gilbertlegal.com<br>willkie.com<br>rc.com<br>weil.com | lw.com<br>nge.com<br>hugheshubbard.com<br>ycst.com<br>gilbertlegal.com<br>willkie.com<br>rc.com<br>weil.com | Communications and documents to/from/among Debtors, Imerys S.A., the Tort Claimants' Committee, the Future Claimants' Representative, Johnson & Johnson, Johnson & Johnson Consumer Inc., and their respective counsel and/or advisors regarding mediation and issues and discussions related thereto. | Mediation Privilege |

CONFIDENTIAL

Last Updated October 2, 2020

| Category No. | Date Range | Document Type | To | From | CC/BCC | Category Description | Privilege Type |
|---|---|---|---|---|---|---|---|
| 6 | At least as of June 1, 2019 – June 29, 2020 | Emails and attachments | lw.com nge.com fbm.com crowell.com rc.com ycst.com willkie.com wilmerhale.com gilbertlegal.com | lw.com nge.com fbm.com crowell.com rc.com ycst.com willkie.com wilmerhale.com gilbertlegal.com | lw.com nge.com fbm.com crowell.com rc.com ycst.com willkie.com wilmerhale.com gilbertlegal.com | Communications and documents to/from/among Debtors, the Tort Claimants' Committee, the Future Claimants' Representative, Rio Tinto, Zurich and their respective counsel and/or advisors regarding mediation and issues and discussions related thereto. | Mediation Privilege |
| 7 | At least as of June 29, 2020 – ongoing | Emails and attachments | lw.com nge.com fbm.com crowell.com rc.com ycst.com willkie.com wilmerhale.com gilbertlegal.com | lw.com nge.com fbm.com crowell.com rc.com ycst.com willkie.com wilmerhale.com gilbertlegal.com | lw.com nge.com fbm.com crowell.com rc.com ycst.com willkie.com wilmerhale.com gilbertlegal.com | Communications and documents to/from/among Debtors, the Tort Claimants' Committee, the Future Claimants' Representative, Rio Tinto, Zurich and their respective counsel and/or advisors reflecting legal advice and/or for the purpose of rendering legal advice regarding the proposed plan of reorganization and related documents and issues. | Attorney-Client Privilege; Common Interest Privilege; Attorney Work Product |

**NOTES**

Last updated: October 2, 2020

The Debtors in no way waive their ability to assert other applicable privileges or protections as to any materials identified on this privilege log, and the Debtors hereby reserve their rights to amend this privilege log as necessary.