## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | Case No. 19-10289 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Re: D.I. 1716, 2355, 2370** |

## OBJECTION OF CYPRUS MINES CORPORATION AND CYPRUS AMAX MINERALS COMPANY TO DEBTORS' THIRD AMENDED DISCLOSURE STATEMENT

Cyprus Mines Corporation ("Cyprus Mines") and its parent company, Cyprus Amax Minerals Company ("CAMC," and together with Cyprus Mines, "Cyprus"), respectfully submit this Objection to the Debtors' motion to approve the Third Amended Disclosure Statement.[2]

## PRELIMINARY STATEMENT

1.      Absent a consensual resolution with the Debtors and other stakeholders, Cyprus intends to object to the Third Amended Plan[3] on various grounds. Rather than previewing all those objections, this objection to the Third Amended Disclosure Statement focuses on issues of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, GA 30076.

[2] *Motion of Debtors for Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Attorneys and Certified Plan Solicitation Directive, (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief* [D.I. 1716]; *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 2355] ("Third Amended Disclosure Statement").

[3] *Third Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 2354] ("Third Amended Plan").  Capitalized terms not defined have the meanings ascribed to them in the Third Amended Plan and Third Amended Disclosure Statement.

disclosure. As explained below, despite multiple adjournments and amendments to the Disclosure Statement, the Third Amended Disclosure Statement remains unclear or incomplete in critical respects.

2.      The Debtors filed their first Disclosure Statement on May 15, 2020.[4] Over the next five months, they amended the Disclosure Statement three times[5] and also filed three sets of Trust Distribution Procedures ("TDPs"). The most recent set of trust distribution procedures (the "Second Amended TDPs") was filed on October 19.[6] Cyprus objected to each of the prior versions of the Disclosure Statement.[7] Consistent with the Court's direction at the hearing held on October 7, 2020, this objection supersedes the prior objections and addresses the Third Amended Disclosure Statement and the Second Amended TDPs.

3.      The Third Amended Disclosure Statement and the Second Amended TDPs have several deficiencies. *First*, the Second Amended TDPs do not provide sufficient clarity regarding the intended treatment of Cyprus' claims; indeed, as explained below, they do not even address certain categories of Cyprus' claims. *Second*, despite the significance of the Debtors' purported indemnity claims against Johnson & Johnson, the Second Amended TDPs are unclear and confusing in describing how claimants such as Cyprus can take advantage of that indemnity.

---

[4] *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 1714].

[5] *See Disclosure Statement for Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 2084]; *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 2290].

[6] *Exhibit 1 to Notice of Filing of Further Revised Trust Distribution Procedures* [D.I. 2370].

[7] *Objection of Cyprus Mines Corporation and Cyprus Amax Minerals Company to Debtors' Motion To Approve Disclosure Statement and Establish Solicitation Procedures* [D.I. 1869]; *Supplemental Objection of Cyprus Mines Corporation and Cyprus Amax Minerals Company to Debtors' Disclosure Statement and Confirmation Schedule, and Request To Adjourn Hearing* [D.I. 2110]; *Second Supplemental Objection of Cyprus Mines Corporation and Cyprus Amax Minerals Company to Debtors' Disclosure Statement and Confirmation Schedule* [D.I. 2282].

*Third*, taken at face value, the Third Amended Disclosure Statement appears to prohibit Cyprus from accessing its own insurance. The Debtors should amend the Third Amended Disclosure Statement and/or Third Amended Plan to confirm that this unlawful result is not intended.

## OBJECTION

**A.    The Third Amended Disclosure Statement and Second Amended TDPs do not provide sufficient information about the treatment of Class 4 claims.**

4.    The basic function of a disclosure statement is to provide claimants with information about the proposed treatment of their claims and the likely recoveries on those claims. *See, e.g.*, *In re Robert's Plumbing & Heating, LLC*, 2011 WL 2972092, at *2 (Bankr. D. Md. July 20, 2011); *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991). Here, however, the Third Amended Disclosure Statement and Second Amended TDPs do not provide necessary information about certain Class 4 claims and, in particular, claims asserted by Cyprus.

5.    Under the proposed Plan, all claims in Class 4, the "Talc Personal Injury Claims," are channeled to the Talc Personal Injury Trust, where they are to be paid in accordance with the Second Amended TDPs:

> The Channeling Injunction to be issued as part of the Plan will permanently and forever stay, bar, and enjoin holders of Talc Personal Injury Claims from taking any action for the purpose of directly or indirectly or derivatively collecting, recovering, or receiving payment of, on, or with respect to any Talc Personal Injury Claim other than from the Talc Personal Injury Trust pursuant to the Talc Personal Injury Trust Agreement and the Trust Distribution Procedures, or as otherwise set forth in the Trust Distribution Procedures.

3d Am. DS § 2.1(a); *see* 3d Am. Plan § 12.3.1. The Plan defines "Talc Personal Injury Claims" broadly, including any claims "*arising out of or relating to* the presence of or exposure to talc or talc-containing products." 3d Am. Plan § 1.1.199 (emphasis added). Unsecured claims that do not relate to talc are proposed to be classified separately. *See id.* § 3.3.

6.      Despite this broad definition, the TDPs only provide procedures for resolving *certain types* of Talc Personal Injury Claims.  Other claims, despite being "permanently" channeled to the Talc Personal Injury Trust, are not addressed in the TDPs.

7.      The TDPs outline procedures for evaluating and paying claims made by an individual who has mesothelioma or ovarian cancer and who was exposed to the Debtors' talc — *i.e.*, "Direct Talc Personal Injury Claims."  *See, e.g.*, 2d Am. TDPs § V ("Resolution of Talc Personal Injury Claims").  A person who completes a claim form and presents the required medical and exposure evidence can receive a "Scheduled Value" of between $21,000 and $400,000, or higher amounts if the claimant seeks individualized review.  *See id.* § 5.2.  There are also provisions for evaluating the claims of corporations or co-defendants of the Debtors asserting contribution, reimbursement, indemnity or similar claims to recover from the Talc Personal Injury Trust.  Holders of these "Indirect Talc Personal Injury Claims" must prove, among other things, that they "ha[ve] paid in full the liability and obligation of the Trust to the individual claimant to whom the Trust would otherwise have had a liability or obligation under these TDP[s]." *Id.* § 5.4.  Cyprus has various objections to those provisions, which will be put forward prior to any confirmation hearing, but at least the TDPs provide information as to how such claims will be treated.

8.      From a disclosure standpoint, however, the problem is that the universe of Talc Personal Injury Claims is *not* limited to (1) individuals asserting personal injury claims for mesothelioma or ovarian cancer and (2) corporations asserting contribution, reimbursement, or indemnity claims based on liabilities paid on the Debtors' behalf.  Other types of claims, which would otherwise be general unsecured claims, are swept into the definition of "Talc Personal Injury Claim" simply because they relate to talc.

9.       To use one of Cyprus' claims as an example:  Cyprus Mines and CAMC hold claims against the Debtors for breach of contract under certain letter agreements with the Debtor Imerys Talc America, Inc. ("ITA").  Under those agreements, ITA was and remains required to defend Cyprus Mines and CAMC in talc-related personal injury litigation and to do so "in a manner not prejudicial to Cyprus Mines and/or CAMC."  *See, e.g.*, Proof of Claim No. 1379 Add. ¶ 16(a).  ITA breached that agreement in various ways, including through its repudiation of its defense obligations and its handling of the talc litigation prepetition.  As a result of those breaches, Cyprus has incurred significant damages, including significant costs and expenses in defending claims and protecting its rights in this bankruptcy proceeding, among other things. *See id.* ¶ 17.

10.      Those damages claims, however, do not arise out of payments to individuals that have Direct Talc Personal Injury Claims.  They are not derivative of payments made to resolve liabilities of the Debtors.  Thus, the requirements in the TDPs for Indirect Talc Personal Injury Claims do not readily apply to those claims.  Cyprus cannot show that it "paid in full the liability and obligation of the Trust to the individual claimant to whom the Trust would otherwise have had a liability or obligation."  2d Am. TDPs § 5.4.

11.      Cyprus does not agree or concede that its claims are all properly classified as Talc Personal Injury Claims and channeled to the Trust.  But if the Debtors intend for such claims to be channeled to the Trust and resolved by the TDPs, then the TDPs must explain how all such claims will be addressed.  Otherwise, Cyprus does not know, for purposes of voting or formulating objections to the Plan, how its claims will be treated.

B.      **The Third Amended Disclosure Statement does not provide adequate information regarding indemnity claims against Johnson & Johnson.**

12.     As the Court is aware, the largest potential asset of the Debtors' estate is what the Debtors assert to be their "uncapped indemnity rights against J&J." 3d Am. DS §§ 3.1(d)(3), 4.2(b)(1).[8] To the extent claimants in Class 4 have claims that fall within the J&J indemnities, they have the prospect of a complete recovery without relying on the Trust. The Debtors, however, have again failed to provide adequate information regarding how the supposed indemnity will be used and how the value of the indemnity can be accessed by Class 4 claimants.

13.     On March 20, J&J filed its Lift-Stay Motion, in which J&J proposed a "Litigation Protocol" that would honor some (but not all) of its indemnity obligations and unimpair a significant percentage of creditors.[9] J&J and the Debtors, however, did not reach agreement on the terms of the Litigation Protocol, and in any case the Lift-Stay Motion was ultimately denied.[10] The Debtors have therefore excised references to a "J&J Protocol" from the Plan and the Disclosure Statement.

14.     The Second Amended TDPs nonetheless contemplate, in newly-added provisions, that "Talc Personal Injury Claimants," if they hold "Indemnified Claims" (namely claims against the Debtors subject to the J&J Indemnities), can "determine" for themselves what rights they have "under the J&J Indemnities" and, if they so elect, can pursue claims against the Debtors "*in*

---

[8] Cyprus has brought an adversary proceeding challenging the Debtors' and J&J's assertion that Cyprus Mines and CAMC transferred indemnity rights to the Debtors in 1992. *See* Compl., *Cyprus Mines Corp., et al.* v. *Imerys Talc America, Inc., et al.*, Adv. Proc. No. 20-50626 (LSS) (Bankr. D. Del. June 15, 2020) [Main Case D.I. 1850] ("J&J Complaint").

[9] *Johnson & Johnson's Motion Pursuant to 11 U.S.C. § 362(d)(1), Fed. R. Bankr. P. 4001, and Local Bankruptcy Rule 4001-1 for Entry of Order Modifying Automatic Stay To Permit J&J To Send Notice Assuming Defense of Certain Talc Claims and To Implement Talc Litigation Protocol* [D.I. 1567] ("Lift-Stay Motion").

[10] *Order Denying Motion for Order Modifying Automatic Stay* [D.I. 2253].

*the tort system . . .* based on one or more of the of the J&J Indemnities." 2d Am TDPs §§ 2.3(b), 2.3(a)(ii) (emphasis added).

15.    This contemplated procedure is exceedingly unclear.  As explained in prior submissions, under two agreements entered into in 1989, J&J agreed to provide broad indemnities to Cyprus for product liability claims relating to talc.[11]  Subsequently, in 1992, Cyprus Mines transferred certain assets relating to its talc business to an entity that became Debtor ITA, and ITA assumed Cyprus' product liabilities.  Although Cyprus and the Debtors have a dispute regarding whether any indemnity rights against J&J were transferred to ITA, to the extent they were transferred, Cyprus believes that its claims against ITA relating to the use of J&J's products — on account of ITA's assumption of liabilities in 1992 — would all be "Indemnified Claims" as defined in the Second Amended TDPs, because they are "product liability-based claim[s]" for which J&J is "directly or indirectly responsible" (1989 SPA § 11.2; 1989 Supply Agreement § 11).  Accordingly, treatment of "Indemnified Claims" under the TDPs is highly relevant to Cyprus and will affect its recoveries.

16.    But the Second Amended TDPs provide only the vaguest guidance as to how Cyprus would protect its rights as a holder of "Indemnified Claims."  Section 2.3(a)(ii), as noted, provides that holders of "Indemnified Claims" can pursue such claims in the tort system "based on one or more of the J&J Indemnities."  But if the indemnities belong to the Debtors, it is unclear how claimants such as Cyprus would obtain standing to bring claims "based on" the indemnities.  Notably, the Plan appears to contemplate assignment of any indemnity claims of the Debtors to *the Trust*, not to individual claimants.  *See* 3d Am. Plan §§ 1.1.13, 9.1.5(xix).  The TDPs, accordingly, hold out the prospect of recovery by individual claimants from J&J without

---

[11] *See* D.I. 1730 ¶¶ 15-16; J&J Compl. ¶¶ 26-34.

providing a legal mechanism or clear guidance for claimants to assert what the Debtors claim to be their rights.

17.     Given the critical importance of the J&J Indemnities (as defined in the Second Amended TDPs) to the recoveries of Class 4 claimants, the Third Amended Disclosure Statement and Second Amended TDPs cannot be approved absent significant clarification of the process set forth in Section 2.3 of those TDPs.

**C.      The Third Amended Disclosure Statement should clarify the treatment of Cyprus' insurance rights.**

18.     As Cyprus has noted previously, the Plan contains provisions that, as written, appear to infringe upon insurance policies and rights owned by Cyprus.  The Debtors cannot compromise those rights without either obtaining consent from Cyprus or prevailing in an adversary proceeding.  The Debtors' intentions should be clarified so that Cyprus knows whether it needs to object to the Plan on that basis.

19.     The Plan's "Insurance Entity Injunction" prohibits assertion of any Talc Personal Injury Claim against any "Talc Insurance Company."  3d Am. Plan § 12.3.2.  But "Talc Insurance Company" is defined as any insurer that issued a policy that either "nam[es] the Debtors (or any predecessor, subsidiary, or past or present Affiliate of the Debtors)" or is "*otherwise alleged to* afford the Debtors insurance coverage."  *Id.* §§ 1.1.195, 1.1.196 (emphasis added).  The Debtors have asserted that ITA "has the right to seek proceeds from" Cyprus' insurance policies. 3d Am. DS § 4.2(a)(2).  Thus, Cyprus' insurers appear to be "Talc Insurance Compan[ies]," as defined in the Plan, and the Insurance Entity Injunction on its face would appear to bar Cyprus from accessing its own insurance policies, even though the Court has

authorized Cyprus to utilize those insurance policies and an adversary proceeding is pending

regarding the rights of Cyprus and the Debtors to the proceeds.[12]

20.    The following changes to § 12.3.2(b) of the Plan would make clear that Cyprus'

insurance rights are not prejudiced by the Insurance Entity Injunction:

> provided, however, that (a) the injunction set forth in this Section 12.3.2(b) shall
> not impair in any way any (i) actions brought by the Talc Personal Injury Trust
> against any Talc Insurance Company and (ii) the rights of **Cyprus or of** any co-
> insured of the Debtors (x) with respect to any Talc Insurance Policy or Talc
> Insurance CIP Agreement or against any Talc Insurance Company **or** ~~and~~ (y) as
> specified under any Final Order of the Bankruptcy Court approving a Talc
> Insurance CIP Agreement . . . .

In any case, Cyprus is entitled to clear and fair notice as to whether the Debtors are purporting to

use their Plan to impair or affect Cyprus' insurance-related rights.

## **CONCLUSION**

21.    Cyprus respectfully submits that the Court should deny approval of the Third

Amended Disclosure Statement.  Cyprus reserves all rights to supplement this objection further

and to object to the Third Amended Plan, or any further amended Plan, on any and all grounds.

---

[12] *Final Order Granting Cyprus Mines Corporation and Cyprus Amax Minerals Company (I) Relief from
the Automatic Stay Under Bankruptcy Code § 362(d) To Use Insurance Coverage Under Cyprus
Historical Policies and (II) Related Relief* [D.I. 309]; *Imerys Talc America, Inc., et al.* v. *Cyprus Amax
Minerals Co., et al.*, Adv. Proc. No. 19-50115 (LSS) (Bankr. D. Del.).

Dated:  October 26, 2020
        Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Robert J. Dehney*
Robert J. Dehney (No. 3578)
Matthew O. Talmo (No. 6333)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE  19899-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
rdehney@mnat.com

- and -

**VINSON & ELKINS LLP**

Paul E. Heath (admitted *pro hac vice*)
Matthew W. Moran (admitted *pro hac vice*)
Katherine Drell Grissel (admitted *pro hac vice*)
2001 Ross Avenue, Suite 3900
Dallas, TX  75201
Telephone:  (214) 220-7700
pheath@velaw.com

*Attorneys for Cyprus Amax Minerals Company and Cyprus Mines Corporation*

- and -

**WACHTELL, LIPTON, ROSEN & KATZ**

Emil A. Kleinhaus (admitted *pro hac vice*)
Douglas K. Mayer (admitted *pro hac vice*)
Nicholas Walter (admitted *pro hac vice*)
Joseph C. Celentino (admitted *pro hac vice*)
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
eakleinhaus@wlrk.com

*Attorneys for Cyprus Amax Minerals Company*