Amy C. Quartarolo
Direct Dial: +1.213.891.8966
Amy.Quartarolo@lw.com

355 South Grand Avenue, Suite 100
Los Angeles, California  90071-1560
Tel: +1.213.485.1234  Fax: +1.213.891.8763
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

October 30, 2020

BY CM/ECF AND ELECTRONIC MAIL

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court
For the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:   Imerys Talc America, Inc. et al., Case No. 19-10289 (LSS)

Dear Judge Silverstein:

    We write on behalf of the Debtors[1] in response to the letter filed by Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "J&J") on October 23, 2020 [D.I. 2394] regarding certain plan-related discovery disputes.

    As a preliminary matter, the Debtors must correct the record as to J&J's erroneous contention that the Debtors are "attempting to hide relevant data and information," or any suggestion that the Debtors have not been actively engaged in plan-related discovery. Over the past several months, the Debtors have expended significant time and resources responding to a multitude of plan-related discovery requests, producing thousands of pages of responsive documents, and meeting and conferring with interested parties – including J&J. Indeed, with respect to J&J alone, the Debtors have responded (without extension) to two separate sets of written discovery served by J&J on June 8, 2020 and August 24, 2020, totaling 65 requests for production. Moreover, the Debtors made their initial document production within one day of serving responses, on July 9, 2020. And, plan-related written discovery has not been limited to J&J. The Debtors also have responded to (i) requests for production (18 requests) and a set of interrogatories (10 interrogatories) served by Cyprus on September 10, 2020; (ii) requests for

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Third Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc., and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code [D.I. 2354] (the "Third Amended Plan").

LATHAM&WATKINS LLP

production (41 requests) served by the Cyprus Historical Excess Insurers[2] on July 15, 2020; and (iii) requests for production (18 requests) served by the Certain Insurers[3] on June 15, 2020.

The Debtors' collection, review and production of documents in response to the 142 plan-related document requests served to date has been fulsome. Among the documents produced in response to plan-related discovery are documents the Debtors provided informally to the Tort Claimants' Committee and the FCR during their due diligence process over the course of the Chapter 11 Cases.[4] In addition, the Debtors took steps to collect and produce responsive, non-privileged plan-related negotiations between and among the Plan Proponents. This involved the review of emails from selected custodians[5] from the Petition Date through March 14, 2020.[6] At the request of J&J, the Debtors subsequently expanded their review for plan-related negotiations to the pre-petition time period (September 1, 2018 through February 13, 2019) and produced any additional responsive, non-privileged documents from that review. And, at J&J's behest, the Debtors ran additional searches across an expanded date range for communications between or among the Debtors and certain consultants to the Plan Proponents (Ankura Consulting Group LLC, Ducera Partners LLC and Ducera Securities LLC (together, "Ducera") and Legal Analysis Systems), again producing responsive, non-privileged documents from that review. The Debtors also worked with their advisors (Alvarez & Marsal ("A&M")) to collect and produce additional documents that may have been provided directly by A&M to certain consultants to the Tort Claimants' Committee (Ducera and GlassRatner Advisory & Capital Group LLC) in connection

---

[2] The "Cyprus Historical Excess Insurers" are Columbia Casualty Company, Continental Casualty Company, the Continental Insurance Company, as successor to CNA Casualty of California and as successor in interest to certain insurance policies issued by Harbor Insurance Company, Lamorak Insurance Company (formerly known as OneBeacon America Insurance Company), as successor to Employers' Surplus Lines Insurance Company, Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company), National Union Fire Insurance Company of Pittsburgh, Pa., and Lexington Insurance Company to the extent that they issued policies to Cyprus Mines Corporation prior to 1981.

[3] The "Certain Insurers" are Century Indemnity Company, Federal Insurance Company, Central National Insurance Company of Omaha, Certain Underwriters at Lloyd's, London and Certain London Market Insurers, TIG Insurance Company, International Surplus Lines Insurance Company, Mt. McKinley Insurance Company, Fairmont Premier Insurance Company, Everest Reinsurance Company, and The North River Insurance Company.

[4] As discussed in further detail in Section A *infra*, the Debtors have withheld from production nine spreadsheets containing confidential settlement and claims data because claimants holding an interest in such information have declined to consent to their production to co-defendants such as J&J.

[5] The Debtors shared the search parameters they used with J&J, including the 37 search terms applied.

[6] The March 14, 2020 end date was selected because it is approximately one week after March 5, 2020, the date on which the Plan Proponents reached an agreement in principle on the key terms for a proposed plan of reorganization and global settlement, which are embodied in the Third Amended Plan. That final negotiated term sheet (which was produced by the Debtors in discovery) formed the framework for the plan-related documents, as filed. Once agreement in principle was reached, the common interest privilege protects from discovery further communications between and among the Plan Proponents related to the Plan. *See, e.g.*, *In re Tribune Co.*, No. 08-13141 (KJC), 2011 WL 386827, at *4 (Bankr. D. Del. Feb. 3, 2011) ("Even though the DCL Plan Proponents' interests are not completely in accord, they share the common legal interest of obtaining approval of their settlement and confirmation of the DCL Plan, thereby resolving the legal disputes between and among them.").

with its due diligence process. Further, in connection with J&J's second set of requests for production, the Debtors also collected and produced certain insurance-related documents.

It bears emphasizing that the Debtors' collection, review and production of documents to J&J did not occur in a vacuum, but was instead the result of a cooperative and iterative process, involving numerous written exchanges and telephonic meet and confers with J&J over the past several months. Contrary to J&J's suggestion to the contrary, the Debtors have been nothing short of transparent, cooperative and responsive with respect to J&J's discovery requests.[7]

To date, the Debtors have produced six volumes of plan-related discovery, which in total contain over 7,000 documents comprising over 137,000 pages. In producing these documents, the Debtors have not put quantity over quality as J&J's letter asserts. Rather, the Debtors have made a thorough and comprehensive effort to work with J&J (as well as the other parties seeking plan-related discovery) to provide responsive, non-privileged documents and information to enable full and fair plan-related discovery well in advance of the deadlines under the proposed confirmation schedule. Contrary to J&J's assertion that the Debtors are attempting "to stonewall discovery and then run the clock out to confirmation," the Debtors have responded to discovery in a timely manner (and without extension) and have produced a substantial volume of information months ahead of the anticipated confirmation hearing, now proposed for February 2021. Indeed, assuming the confirmation hearing proceeds as scheduled, the Debtors will have been engaged in plan-related discovery for an eight-month period leading up to the scheduled hearing. There can be no complaint that there has not been adequate time for full and fair discovery.[8]

With that important context, the Debtors address below the substance of the issues raised by J&J to the extent they relate to the Debtors. Certain issues will be addressed by separate letter submissions made on behalf of other Plan Proponents.

---

[7] In addition to diligently responding to J&J's discovery requests, as discussed above, the Debtors have actively engaged in discovery in response to requests received from other interested parties. As with J&J, the Debtors have worked with these parties to address any issues raised and to narrow any disputes that may need to be raised with the Court.

[8] Even prior to receiving specific plan-related discovery requests, the Debtors received and responded to discovery from J&J that, while served in connection with other contested matters, actually sought plan-related information. In response to discovery served in connection with *Debtors' Motion for an Order Further Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 1534] (the "Exclusivity Motion"), the Debtors provided J&J with written information regarding the dates and participants in plan-related negotiations and further sat for a deposition on May 1, 2020 to address questions regarding plan-related discussions at the Court's suggestion. J&J withdrew its objection to the Exclusivity Motion just hours after taking the deposition. In addition, in connection with *J&J's Motion Pursuant to 11 U.S.C. § 362(D)(1), Fed. R. Bankr. P. 4001, and Local Bankruptcy Rule 4001-1 for Entry of Order Modifying Automatic Stay to Permit J&J to Send Notice Assuming Defense of Certain Talc Claims and to Implement Talc Litigation Protocol* [D.I. 1567], J&J served 22 requests for production, and sought a deposition on various topics, many of which related to the proposed plan. The Debtors produced documents to J&J on May 27, 2020, and J&J took a deposition of the Debtors' witness on June 16, 2020.

### A. As discussed with J&J, the Debtors have a restricted ability to produce confidential settlement and claims data.

In response to certain of J&J's requests for production, the Debtors identified 11 spreadsheets containing settlement and claims data from the underlying talc litigation. The spreadsheets at issue contain varying levels of detail regarding confidential settlements in the underlying tort actions, including amounts of individual settlements in anonymized form and collective settlement amounts by law firm or case type, as well as detail regarding review and/or assessment of lawsuits. The Debtors identified from the outset, in their responses and objections to J&J's first set of requests for production served on July 8, 2020, that they were withholding these spreadsheets from production because they contain highly confidential information which, if produced, would provide J&J—a co-defendant in the very cases to which this confidential settlement information pertains—with an unfair litigation advantage. For that reason, among others, claimants (as represented by the Tort Claimants' Committee) objected to the Debtors' production of this information to J&J. As the Debtors discussed with J&J on multiple calls, that concern is particularly heightened here, where the same law firm that J&J has employed to represent it in the Chapter 11 Cases also represents J&J in the vast majority of the underlying tort actions. *See Robert D. Mabe, Inc. v. Optum Rx*, No. CV 3:17-1102, 2020 WL 4334976, at *5 (M.D. Pa. July 28, 2020) ("Because plaintiffs are admittedly in competition with defendant and because plaintiffs' counsel in this case is involved in other litigation and arbitration matters with defendant involving hundreds of pharmacies, the court, once again, finds that the protective order issued in this case is insufficient to protect against the competitive advantage that would be afforded plaintiffs if the court were to allow the requested discovery. As such, the plaintiffs' motion to compel discovery will be denied."); *see also Billy v. Peiper*, No. 1:11-CV-1577, 2013 WL 4083657, at *8 (M.D. Pa. Aug. 13, 2013) ("Furthermore, having access to otherwise confidential information from a previous representation could provide [plaintiff's counsel] advantages such as . . . what settlements to accept and what offers to reject, and innumerable other uses. . . . It is, therefore, unfair to afford one side such an advantage.") (internal quotation marks and citations omitted).

The Debtors asked J&J whether they could suggest any additional heightened protections for such information that might alleviate these concerns (e.g., ensuring that the information would not be shared with counsel who also actively litigates the underlying tort actions), but J&J refused to offer or agree to any proposed workaround. Despite this refusal, the Debtors—in an effort to move discovery forward—endeavored to work with counsel for the Tort Claimants' Committee,[9] and were able to obtain sign-off to produce 2 of the 11 spreadsheets. The Debtors have continued to cooperate with J&J by providing additional information and answering questions related to the spreadsheets produced, and have encouraged J&J to speak directly with counsel for the Tort Claimants' Committee to address remaining concerns.

---

[9] The Debtors have not "handed the TCC *carte blanche* to run these cases for its own benefit" as J&J contends in its letter—instead, with respect to the 11 spreadsheets at issue, the Debtors suggested that J&J raise the issue with counsel for the Tort Claimants' Committee because they represent those to whom the Debtors owe a confidentiality obligation with respect to the information contained in these spreadsheets.

4

**LATHAM&WATKINS**LLP

Absent court order or consent, the Debtors are not in a position to produce the remaining spreadsheets containing confidential settlement and claims data to J&J.

### B. The Debtors have provided sufficient information to permit J&J to assess the Debtors' assertion of privilege.

J&J's suggestion in its letter that the Debtors are using the mediation privilege (or any other recognized protection) as a mechanism to hide information is completely unfounded. During meet and confer discussions with J&J, the Debtors provided detail surrounding their assertions of privilege and other applicable protections, and agreed to compile a categorical privilege log to enable J&J to assess those assertions. In an effort to provide J&J with the level of information they were seeking, the Debtors asked J&J to provide samples of categorical logs that they found satisfactory or had used in other matters. The Debtors endeavored to create a privilege log that provided a similar level of information as the samples provided by J&J, but flagged for J&J that the Debtors would not be in a position to provide a specific number of documents withheld under each category because doing so would require the Debtors to collect and review documents that they are withholding as a category merely for the purpose of logging them. Such an exercise would be inefficient and costly, and would not provide J&J with any additional relevant information. The categorical privilege log provided by the Debtors (which is attached to J&J's letter) adequately fulfills the Debtors' obligation under Federal Rule of Civil Procedure 26(b)(5), which requires that the Debtors "describe the nature of the documents . . . not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See also Auto. Club of New York, Inc. v. Port Auth. of New York & New Jersey*, 297 F.R.D. 55, 59 (S.D.N.Y. 2013) ("Accordingly, a categorical privilege log is adequate if it provides information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege."); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008).

Specifically, J&J contends that the Debtors' categorical privilege log "falls short" because Category 6 set forth therein, which describes documents that are covered by the mediation privilege, purportedly does not contain sufficient detail about the topic of the mediation. As the Debtors explained to J&J in advance of J&J's submission of its letter, the relevant mediation involved the Plan Proponents, Rio Tinto and Zurich, and was for the purpose of determining whether and on what terms Rio Tinto and Zurich could participate in the Debtors' plan of reorganization. J&J has not articulated what, if any, additional detail J&J needs to assess whether information related to such mediation efforts are indeed protected from discovery. J&J also takes issue with the fact that the Debtors have withheld communications related to that mediation beginning in June 2019 when a mediation order was not entered by the Court until December 2019. However, J&J cites no authority requiring that a mediation order be in place in order for a party to claim mediation privilege over communications regarding that mediation. Here, although the mediation order was not entered until December 2019, the parties began mediation-related discussions in June 2019. While there are only a handful of responsive communications from this earlier time period, those communications were made in connection with and/or for the purposes of the mediation between and among the parties, and therefore, are covered by the mediation privilege. *See* Del. Bankr. L.R. 9019-5(d)(i) ("The mediator and the participants in mediation are

5

**LATHAM&WATKINS**LLP

prohibited from divulging, outside of the mediation, any oral or written information disclosed by the parties or by witnesses in the course of the mediation. . . . [N]o person shall seek discovery from any participant in the mediation with respect to any information disclosed during mediation."); *Court's December 26, 2019 Order Appointing Mediator* [D.I. 1370], p.3 ("[D]iscussions among the Mediation Parties, including discussions with or in the presence of the Mediator *before or after the entry of this Order*, . . . and [ ] correspondence, draft resolutions, offers, and counteroffers *produced for*, or as a result of, or during the Mediation . . . shall be strictly confidential . . . and no person or Mediation Party, including counsel for any Mediation Party, or any other party, shall in any way disclose to any person or entity that is not a Mediation Party or to any court . . . any such discussion, mediation statement, other document or information, correspondence, resolution, offer, or counteroffer that may be made or *provided in connection* with the Mediation unless otherwise available and not subject to a separate confidentiality agreement that would prevent its disclosure or as authorized by this Court.") (emphasis added).

### C. J&J's request for admittedly duplicative discovery is inappropriate.

In its letter, J&J complains that the objection by the Tort Claimants' Committee and the FCR that they should not have to produce documents that have already been produced by the Debtors or Imerys S.A. "goes too far." But it is J&J's position that is both inconsistent and indefensible. While J&J claims that it is not seeking to obtain duplicative documents, in the same breath it also attempts to justify its requests to other Plan Proponents by claiming it has no way of knowing whether the documents the Tort Claimants' Committee and the FCR have are duplicative of documents already produced. Simply put, J&J should not be permitted to seek duplicative discovery, particularly where, as here, the estate would bear the full cost of having the same categories of documents subject to discovery from the Debtors, the Tort Claimants' Committee and the FCR. Permitting J&J to obtain discovery from the Tort Claimants' Committee and the FCR that it has already sought and obtained from the Debtors would be unduly burdensome, oppressive and harassing. Accordingly, to maximize efficiency and lessen the financial burden on the estate, the Debtors request that any discovery sought from the Tort Claimants' Committee or the FCR be limited to categories of documents J&J has not or cannot obtain from the Debtors.

### D. J&J's subpoena to KCIC is improper and premature.

Just one day prior to submitting its letter with the Court, J&J served subpoenas on consultants engaged through counsel by each of the Plan Proponents, including KCIC, LLC ("KCIC"). Although the KCIC subpoena is not addressed in J&J's letter, because the issues overlap with those raised by J&J and in an effort to resolve discovery issues in a timely and efficient manner, the Debtors raise the issue for the Court's consideration. As a preliminary matter, the subpoena that J&J served on KCIC is improper because it expressly seeks discovery into information protected from disclosure. By way of background, KCIC was engaged by the Debtors' counsel, Neal, Gerber & Eisenberg LLP, in July 2018 to provide consulting services to the Debtors at the direction of counsel. *See Exhibit C to Debtors' Application for Order Authorizing the Employment and Retention of Neal, Gerber & Eisenberg LLP as Special Insurance Coverage and Indemnification Counsel Nunc Pro Tunc to the Petition Date* [D.I. 98-4]. Upon filing of the Chapter 11 Cases, the Debtors sought and obtained permission to retain KCIC as an insurance and valuation consultant. [*See* D.I. 98, 259.] Any work product generated by KCIC in consultation

6

**LATHAM&WATKINS**LLP

with or at the direction of counsel is protected by the work product privilege and any communications between KCIC and counsel are covered by attorney-client privilege. *See, e.g.*, *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), as amended (Oct. 12, 2007) ("The attorney-client privilege . . . applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.' 'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation.") (citation omitted); *see also Magten Asset Mgmt. Corp. v. Nw. Corp.*, No. CV 04-1494-JJF, 2007 WL 9811153, at *3 (D. Del. June 14, 2007), *report and recommendation adopted sub nom. IN RE: NORTHWESTERN CORPORATION, Debtor. MAGTEN ASSET MANAGEMENT CORP. & LAW DEBENTURE TRUST COMPANY OF NEW YORK, Plaintiffs, v. NORTHWESTERN CORPORATION, Defendant. MAGTEN ASSET MANAGEMENT CORP., Plaintiff*, No. BR 03-12872, 2007 WL 9811128 (D. Del. July 10, 2007) (noting that the "key to deciding if a consultant should be protected [under the attorney-client privilege] is if the consultant acts for the corporation and possesses the information needed by attorneys in rendering legal advice").

Here, the subpoena issued to KCIC contains broad requests that inappropriately seek the production of privileged documents and communications, including requests for all work product generated by KCIC, all documents received by KCIC, and all communications between KCIC and the Debtors relating to KCIC's services. *See, e.g.*, *In re Anderson News, LLC*, 615 B.R. 45, 50 (Bankr. D. Del. 2020) ("When considering Bankruptcy Rule 7037 motions, the Court must first determine whether the item sought to be compelled is 'discoverable.' Bankruptcy Rule 7026(b)(1), provides that discovery may be had of 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'"); *United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*, No. 00-CV-737, 2005 WL 8176426, at *5 (E.D. Pa. Nov. 16, 2005) (denying portion of motion to compel because, "even assuming the documents [requested] are relevant, they are privileged"). Such discovery is not permitted.

To the extent J&J contends the subpoena is appropriate as KCIC may be designated as a testifying expert or its work may be relied upon by the Debtors in connection with confirmation, J&J's requests are premature. If and when KCIC is designated as a testifying expert in these Chapter 11 Cases, there will be a time for appropriate expert discovery within the scope of applicable rules. *See, e.g.*, Federal Rule of Civil Procedure 26(b)(4); *see also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 665 n.7 (3d Cir. 2003) ("Rule 2[6](b)(4)(B) precludes discovery against an expert informally consulted in preparation for trial."). J&J cannot get around such limits on appropriate expert discovery by prematurely propounding such requests directly on KCIC.

\*   \*   \*

**LATHAM&WATKINS**LLP

  The Debtors look forward to further addressing these issues with the Court at its convenience.

            Respectfully submitted,

            /s/ *Amy C. Quartarolo*

            Amy C. Quartarolo
            of LATHAM & WATKINS LLP

cc: Marcos A. Ramos, Esq.