

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

October 30, 2020

**BY EMAIL/ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court
For the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

   Re:  <u>In re: Imerys Talc America, Inc., et al., Case No. 19-10289</u>[1]

Dear Judge Silverstein:

   This letter is sent on behalf of two non-debtor affiliates of the Debtors[2] in the above-captioned cases – Imerys S.A. and Imerys USA, Inc. (together, the "**Non-Debtor Affiliates**") – and responds specifically to the allegations made against Imerys S.A. in the October 23rd letter sent to the Court on behalf of Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, "**J&J**") [ECF No. 2394].[3]

## **<u>Preliminary Statement Regarding J&J's Recent Discovery Efforts Directed At Imerys S.A.</u>**

   In the last several months, Imerys S.A. has been served with, and fairly responded to, discovery requests propounded by J&J with respect to plan negotiations, including one overbroad set of voluminous document requests served in late August. There, in an effort to not further delay matters, or involve the Court with additional matters that could lead to delay, Imerys S.A. "bit its tongue" and provided J&J with documents far in excess of those requested by the underlying tort plaintiffs and their attorneys. These parties and their counsel had tens and even hundreds of millions of reasons to press for documents in the tort system and into this

---

1.  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

2.  Capitalized terms not otherwise defined herein shall have the meaning set forth in the *Third Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc., and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [ECF No. 2354] (the "**Plan**").

3.  Letter from Theodore E. Tsekerides to Hon. Laurie Selber Silverstein, ECF No. 2394 (Oct. 23, 2020). While this letter is sent on behalf of Imerys S.A. and Imerys USA, Inc., as the entities subject to J&J's current discovery efforts, my firm also represents all non-debtor Imerys entities.

bankruptcy process, which they very aggressively did.  It is telling that J&J's October 23rd letter does not describe—or even mention—the specific discovery requests it has made against Imerys S.A., or allege that any specific response Imerys S.A. has already made is deficient.  Here, as described below, the details very much matter.

For years before these bankruptcy cases began, attorneys for J&J and the Debtors sat side-by-side at counsel table in courts throughout the country defending individual talc personal injury cases, with their fortunes largely rising and falling together.  Throughout this period, and into the time of this bankruptcy, J&J continued to sell talc-based baby and body powder products, continuing to do business with the Debtors.  Beginning with the discovery requests it first served in late August, and continuing with recent far more expansive discovery requests J&J has very recently served on Imerys S.A. and Imerys USA, Inc., J&J has apparently decided to pursue a scorched earth path of discovery against the Non-Debtor Affiliates, who are Imerys entities affiliated with the Debtors.

J&J makes no pretense of this discovery being limited to, or even in any real way being related to, plan negotiations or actual plan confirmation.

Instead, J&J, whose only relevant connections to the Non-Debtor Affiliates run through the Debtors now seeks to take the place of the Official Committee of Tort Claimants (the "**TCC**") and the Future Claimants' Representative (the "**FCR**") and pursue discovery that J&J apparently believes would better support the argument that the Non-Debtor Affiliates should be liable in the underlying cases.  The entirety of J&J's newly served discovery (its second set of requests to Imerys S.A. and first set of requests to Imerys USA, Inc.), as well as much of the discovery it served in late August, launches from the faulty premise that it somehow has standing to now conduct a new investigation into potential bases for liability of the Non-Debtor Affiliates to the underlying tort plaintiffs.  It does not.  J&J cites no precedent for its ability to pursue such discovery, and has not made any request of the Court to answer this predicate question before launching such discovery.  If J&J believes that the TCC and FCR have been derelict in their duties to aggressively investigate and pursue additional grounds for potential liability against the Non-Debtor Affiliates – a view which, having been on the other side of these long and costly efforts, the Non-Debtor Affiliates do not share – J&J should describe to the Court why it believes this to be the case and why J&J and its counsel should be the ones conducting this entirely duplicative investigation at this time.

Much of what is described in this letter and all of what is described below will likely be new information for the Court.  As mentioned above, rather than raise issues with the Court, Imerys S.A., because an expeditious path to Confirmation of Plan is important to it, has simply quickly produced documents to J&J *even when* Imerys S.A. has viewed the requests as patently unfair and overbroad.  The portions of J&J's letter that relate to Imerys S.A. focus entirely on J&J's views of the French Blocking Statute (the "**FBS**"), including how and whether it is at issue here.  While the FBS is certainly relevant – it is after all a criminal statute that by its express terms bars Imerys S.A. from providing documents or other discovery material located in France to assist American litigation – Imerys S.A. respectfully submits that the FBS is by no means the primary issue this Court should address in considering the propriety of the additional discovery J&J now seeks from Imerys S.A.

It is the Non-Debtor Affiliates' position that they have now provided J&J with more than enough information that it could use for any reasonable purpose it might need in these proceedings.  J&J's late-game and overbroad discovery requests should be seen for what they truly are—a delay tactic and/or an attempt to obtain information for purposes unrelated to these Chapter 11 cases—and quashed in their entirety.

### J&J's First Set of Document Requests to Imerys S.A., and Imerys S.A.'s Response

J&J served its first set of document requests directed to Imerys S.A. on August 24, 2020,[4] over a year and a half after these bankruptcy cases began, and over three months after the initial Plan was filed with the Court.  J&J's first requests to Imerys S.A. contained thirty-two separate expansive requests for information without imposing any reasonable subject matter, geographic or temporal limitations.

J&J's first requests were neither narrowly tailored nor targeted at getting only what J&J could reasonably need from Imerys S.A. for these bankruptcy proceedings.  They were, for example, not limited in time or scope and were duplicative of discovery already sought from other parties who would more likely have access to relevant documents.  Nevertheless, Imerys S.A., without seeking extension, responded to J&J on September 24th.  Imerys S.A. individually responded to the voluminous requests and produced *over 40,000 documents* to J&J.  This production included (i) every document previously produced to the TCC and the FCR during the course of negotiating the Plan; (ii) all non-privileged correspondence with Plan Proponents regarding the Plan negotiations (which all took place in the United States), and (iii) all of the documents produced by the Non-Debtor Affiliates in connection with the litigation of alter ego and similar claims propounded by the underlying tort plaintiffs in pre-petition litigation.

Imerys S.A.'s sincere hope and desire was that giving J&J everything it could reasonably need from Imerys S.A. relating to the Plan, and more, would allow it to put this discovery behind it and let the parties at the center of this dispute—the Debtors and the tort plaintiffs— move towards confirmation of the Plan.

### The Meet and Confer Efforts that Followed

Shortly after Imerys S.A. had submitted its responses and provided J&J access to tens of thousands of documents, J&J's counsel sought a meet and confer session with counsel for Imerys S.A.  That meet and confer session took place on October 13th, and lasted roughly an hour.  Contrary to J&J's assertion in its letter at page 5, Imerys S.A. did agree in that session to prepare and provide a categorical privilege log for documents it was maintaining privilege over and is currently working to provide that privilege log.  Additionally, Imerys S.A. agreed to take into consideration specific issues J&J raised regarding specific responses it had made.  Also of note in that session was J&J counsel's foreboding preview that Imerys S.A. would soon receive a second set of document requests that would be even more expansive, and that J&J would also then seek to serve additional discovery on other non-debtor entities.

---

4.  J&J's First Req. for Production of Documents to Imerys S.A. (Aug. 24, 2020) (**Ex. 1**).

**J&J's Second Set of Discovery Requests Now Pending Against Imerys S.A. and Imerys USA, Inc.**

On October 16th, J&J served its second set of document requests against Imerys S.A., and first set of document requests against Imerys USA, Inc.  As previewed, these requests are even more breathtakingly broad, and make J&J's first requests to Imerys S.A. look narrow in comparison.  While composed of 19 individual requests, with subparts, the requests could fairly have been made in just two:

- every document Imerys S.A. or any other Imerys entity that has mined talc worldwide—well beyond the operations of the Debtors—has ever generated that relates to talc,[5] and

- every document, whether it relates to talc or not, that could shed light on how the Imerys entities are set up and managed.[6]

So the Court can see these requests firsthand, Imerys S.A. is providing these document requests as exhibits to this letter.  None of J&J's new requests even facially relate to Plan negotiations.

**J&J Apparently Desires to Re-Litigate the Alter Ego/Veil Piercing Issues and Implicitly Second Guess Plaintiffs' Tort and Bankruptcy Counsels' Ability to Effectively Do Their Job.**

J&J now asserts that it requires the additional requested documents from Imerys S.A. to assess Imerys S.A.'s "potential liability for Talc Personal Injury Claims, including based on theories of alter ego and veil piercing."[7]  How or why J&J, who is not an underlying plaintiff and does not stand in their shoes, thinks this is properly its business is unclear.  In that respect, J&J seeks to step into the shoes of plaintiffs in the underlying talc litigation, proceeding down a well-trodden path and apparently seeking a redo for how J&J would have litigated Imerys S.A.'s liability in the talc cases.  It is notable that for years, both in the tort system and in these bankruptcy cases, the plaintiffs in the underlying talc cases have aggressively pursued discovery against the Debtors and the Non-Debtor Affiliates, including as to theories of alter ego and veil piercing.  The full scope of these efforts would be impossible to fully describe here.  In the tort system alone, extensive discovery requests were served in, then negotiated and often litigated in, dozens of individual courts where tort cases were pending.  The costs associated with defending

---

5.  As just one illustrative example, J&J has requested: "All Documents and Communications relating to the operation of any mine from which talc was supplied to a third party, including but not limited to, J&J." (emphasis added).  J&J's Second Req. for Production of Documents to Imerys S.A. (Oct. 16, 2020) (**Ex. 2**) at 12; J&J's First Req. for Production of Documents to Imerys USA, Inc. (Oct. 16, 2020) (**Ex. 3**) at 12.

6.  An illustrative example includes J&J's request for: "Any board materials, including but not limited to, minutes, presentations, business analyses, and reports, relating to any transactions entered into by the following entities: a. Imerys S.A.; b. Imerys USA; c. Imerys Minerals; d. Unidentified Imerys Talc Oversight Entity; e. ITI; f. ITA; g. ITV; and h. ITC." (emphasis added).  J&J's Second Req. to Imerys S.A., *supra* note 5 (**Ex. 2**) at 10; J&J's First Req. to Imerys USA, Inc., *supra* note 5 (**Ex. 3**) at 10.

7.  *See* Letter from Theodore E. Tsekerides to Hon. Laurie Selber Silverstein, *supra* note 3, at 5.

these discovery efforts across multiple venues simultaneously was a substantial factor cited by the Debtors in driving their bankruptcy filing.[8]

The Non-Debtor Affiliates, while not directly implicated in those tort system cases, were subjected to substantial discovery in those cases both for their potential liability if the Debtors were unable to fully fund a final verdict *and* if a court were to find that the veil piercing/alter-ego arguments made against them had any merit. By way of a single example, just prior to the February 2019 bankruptcy filing, Imerys USA, Inc. successfully defended itself against an alter-ego argument made in *Leavitt v. Johnson & Johnson,* No. RG17882401 (Cal. Super. Ct. Dec. 28, 2018), a California state court mesothelioma case (where J&J was a co-defendant) where Imerys USA, Inc., following litigation over discovery issues in that court, produced *thousands* of pages of financial and other documents.

Following the commencement of these chapter 11 cases, with the discovery in the tort system as prologue, the Debtors (represented principally by Latham & Watkins LLP) and the Non-Debtor Affiliates (represented principally by my firm) have, since February 2019, dealt with aggressive efforts by the TCC and the FCR, and their myriad lawyers and financial advisors, to seek documents and other information relating to the issues before this Court in these bankruptcy cases, including with respect to theories of alter ego and veil piercing.

None of the parties involved took these efforts lightly. In pursuit of a consensual resolution, the Non-Debtor Affiliates voluntarily produced tens of thousands of documents, spanning hundreds of thousands of pages, and answered numerous informal information requests. It was then, and remains, the Non-Debtor Affiliates' position that they were producing, at substantial effort and expense, more information than should fairly be required of them. However, in connection with their continued attempt to efficiently reach a consensual resolution, the Non-Debtor Affiliates made and supplemented their extensive productions in these bankruptcy cases. As a result, following the TCC's and FCR's extensive, time-consuming, and costly investigation of potential claims against the Non-Debtor Affiliates, including with respect to theories of alter ego and veil piercing, the TCC and FCR—fiduciaries appointed by this Court to represent the interests of current and future claimants against the Debtors' estates—reached a comprehensive settlement of any and all such claims against the Non-Debtor Affiliates, as reflected in the Plan.

Imerys S.A. has provided to J&J *every single document* produced by the Non-Debtor Affiliates (i) in the tort system in pre-petition litigation *and* (ii) to the TCC and FCR in these Chapter 11 cases. J&J is free to review these documents and conduct its own evaluation of potential claims, but it should not be permitted to further delay these cases to conduct a sweeping fishing expedition of additional documents to conduct what amounts to a duplicative investigation of the claims previously settled among the Plan Proponents. An additional layer of review is not warranted and is not in the spirit of economy of administration in the handling of

---

8.  *See* Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings, ECF No. 10 (Feb. 13, 2019), ¶ 9 ("The Debtors lack the financial wherewithal to litigate against the mounting Talc Claims being asserted against them in the tort system.").

bankruptcy estates.[9]  Moreover, such discovery is not proportional to the needs of the case.[10] This is particularly true where, as here, the Plan Proponents seek to ensure that J&J has "neutrality" with respect to the indemnities.  *See* Plan art. 11.5.1.  Permitting J&J to engage in months of protracted and costly discovery to challenge a Plan that does not seek to impair any of J&J's rights and obligations is in no way "proportional to the needs of the case," as required by Federal Rule of Civil Procedure 26(b)(1).

## The Role of the French Blocking Statute (FBS) in the Current Discovery Issues

As discussed above, Imerys S.A. has sought in good faith to comply with its Plan discovery obligations, producing voluminous materials to J&J in response to its many requests.

Imerys S.A. has objected to producing any materials located in France largely because such documents exceed the scope of discovery needed by J&J.  Imerys has also objected to producing materials located in France out of concern over the FBS.  The FBS subjects entities— as well as their directors, representatives, agents, and officers—to criminal sanctions including prison terms and weighty fines should they produce French documents in response to discovery requests such as those propounded by J&J.  Penal Code Law No. 80-538, arts. 1A & 3 (Fr.).

In light of the FBS and the serious penalties for violations thereof, and as discussed further above, the Debtors, Imerys S.A., Imerys USA, Inc., the underlying tort plaintiffs, the TCC, and the FCR extensively negotiated and litigated discovery whereby all relevant litigants and the relevant courts could fully evaluate all claims against Debtors, Imerys USA, Inc., and Imerys S.A. without forcing Imerys S.A. to produce French documents in violation of the FBS.[11] As discussed above, J&J now has the relevant, non-privileged portion of this extensively litigated and negotiated discovery.  In neither the meet and confer nor in subsequent correspondence has J&J articulated any explanation for why the materials already produced are

---

9.  Bankruptcy courts regularly reject creditors' attempts to conduct duplicative investigation of estate claims.  *See, e.g., In re Spansion, Inc.*, 426 B.R. 114, 128 (Bankr. D. Del. 2010) (declining to appoint examiner where the committee conducted extensive discovery and an additional investigation would delay administration of the case); *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 639 (Bankr. S.D.N.Y. 2012) (declining to appoint an examiner and noting that the debtor and its professionals had already conducted an appropriate inquiry).

10.  Under Federal Rule of Civil Procedure 26(b)(1), made applicable here by Federal Bankruptcy Rules 7026 and 9014(c), discovery is permitted only to the extent that it is "relevant to any party's claim or defense and proportional to the needs of the case."

11.  J&J makes a passing and apparently hypothetical waiver argument, suggesting that Imerys S.A. *may* have waived its ability to give heed to FBS "to the extent" that any previously produced documents in these proceedings were originally from France.  Letter from Theodore E. Tsekerides to Hon. Laurie Selber Silverstein, *supra* note 3, at 5.  First, this argument is merely hypothetical; J&J points to no specific documents forming the basis for its argument.  But regardless, even if J&J were to identify any documents from the prior productions that originated in France, Imerys S.A. has consistently invoked the FBS where necessary throughout the course of these bankruptcy proceedings.  Imerys S.A. did so, for example, in resisting the collection and production of documents located in France when providing materials to the TCC and FCR as part of the Plan negotiation process, instead providing materials already located in the United States, largely from the pre-petition tort system cases.  To the extent any of these materials may have been collected from France and produced notwithstanding the FBS, the attenuated nature of such productions is in contrast to the firm stance Imerys S.A. has consistently taken throughout these proceedings, and does not form a sufficient basis for a waiver argument in contravention of that consistent position.

insufficient for purposes of Plan discovery.  However, J&J now argues that Imerys S.A. must violate the FBS and produce French documents in response to its overboard, irrelevant, and unduly burdensome discovery requests.

In support of this position, J&J attempts to dismiss the import of the FBS by falsely asserting that the FBS "cannot be validly invoked to object to discovery requests."[12]  However, the United States Supreme Court has specifically rejected this argument.  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 547 (1987) (holding that the Court of Appeals erred in finding that the Hague Convention procedures called for by the FBS do not or cannot apply in American discovery).  Instead, courts faced with a situation where a litigant might run afoul of the FBS if it produced certain discovery must conduct a comity analysis.  *See, e.g.*, *Salt River Proj. Agric. Improvement & Power Dist. v. Trench Fr. SAS*, 303 F. Supp. 3d 1004, 1007–10 (D. Ariz. 2018) (citing *Societe Nationale Industrielle Aerospatiale* and determining that comity analysis requires the application of the Hague Convention process required by the FBS).  Courts conducting this comity analysis consider factors including the: (1) importance to the litigation of the information and documents requested; (2) degree of specificity of the discovery requested; (3) location of the evidence; (4) availability of alternative means of securing the information; (5) competing interests of the nations whose laws are in conflict; and (6) hardship of compliance on the party from whom discovery is sought. *See, e.g.*, *id.*; *Behrens v. Arconic, Inc.*, No. 19-2664, 2020 U.S. Dist. LEXIS 44581, at \*13–31 (E.D. Pa. March 13, 2020) (weighing the comity factors and determining that the procedures required by the FBS should apply).[13]

Here, each of the comity factors weigh in favor of giving effect to the FBS.  As discussed above, J&J has already received copious discovery that more than enables it to fulfil its role in these bankruptcy proceedings, and the additional discovery that it now seeks is cumulative, overboard, and unduly burdensome.  *See, e.g.¸ Salt River*, 303 F. Supp. 3d at 1007–08 (finding that "[w]here the outcome of litigation does not stand or fall on the present discovery order or where the evidence sought is cumulative of existing evidence, courts have been unwilling to override foreign secrecy laws," and holding that the cumulative and burdensome nature of the requested discovery weighed in favor of giving effect to the FBS) (internal quotation marks and citation omitted); *Behrens*, 2020 U.S. Dist. LEXIS 44581, at \*15–17 (the fact that plaintiffs had already received discovery and the requests were very broad favored using the procedures required by the FBS); *In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 354-355 (D. Conn. 1991) (granting protective order in light of the FBS where, *inter alia*, the discovery requests were overbroad and largely unnecessary for the case at hand).  The documents in question are specifically those located in France, and the necessary requested information has already been secured and produced by alternate means through the production of non-French documents.  Moreover, France has a strong compelling interest in "controlling access to information created in its country and in protecting its citizens from foreign discovery practices," and Imerys S.A. (as well as its directors, representatives, agents, and officers) faces considerable hardship in the form

---

12. Letter from Theodore E. Tsekerides to Hon. Laurie Selber Silverstein, *supra* note 3, at 4.

13. Entire briefs could be written about the FBS, whereas J&J's Letter to this Court is woefully deficient on the applicable factors or any actual analysis.

of potential criminal sanctions under the FBS if it complies with J&J's additional discovery demands.  *Behrens*, 20202 U.S. Dist. LEXIS 44581, at \*23–26.

While J&J cites several cases where courts compelled discovery notwithstanding the FBS, none of these cases involved a situation where, as here, the discovery sought was overbroad and unduly burdensome, and the relevant and necessary discovery could be and had already been produced without violation of the FBS.  Indeed, none of the litigants in these cases apparently contested the relevance of the requested documents or seriously disputed that the discovery requests in question were appropriately tailored, and each of the courts thus determined that the requested discovery was both necessary and properly specific.  *See, e.g.*, *In re Air Cargo Shipping Serv. Antitrust Litig.*, 278 F.R.D. 51, 53–55 (E.D.N.Y. 2010) (finding that the interests of comity did not weigh against entry of an order compelling production because, *inter alia*, French documents already produced by defendant in connection with related criminal proceedings where defendant pleaded guilty were likely to be relevant to subsequent civil proceedings, the discovery request was specifically tailored, and prosecution under the FBS was unlikely because the documents had already been produced in American litigation).

In contrast to these cases, J&J refuses even to engage in a rational discussion regarding the scope of discovery and the reasonableness of Imerys S.A.'s extensive production of non-French documents.  Instead, J&J continues to bullheadedly demand that Imerys S.A. violate the FBS and produce documents that all other litigants have already conceded go beyond the scope of reasonable discovery.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

For all of the above reasons, the Court should reject J&J's efforts to seek discovery from Imerys S.A. (and now Imerys USA, Inc.) that goes far beyond Plan negotiations and into areas that are irrelevant to any reasonable purpose for which J&J could seek to use such materials in these bankruptcy proceedings.

Respectfully submitted,

/s/ William J. Beausoleil
William J. Beausoleil
Partner

cc:    All counsel by ECF