Exhibit 1

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| **In re** | Chapter 11 |
| **IMERYS TALC AMERICA, INC.,** *et al.*[1] | Case No. 19–10289 (LSS)<br>(Jointly Administered) |
| **Debtors.** | |

**JOHNSON & JOHNSON'S AND JOHNSON & JOHNSON CONSUMER INC.'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO IMERYS S.A.
RELATED TO THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF IMERYS TALC AMERICA, INC. AND ITS DEBTOR AFFILIATES
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable herein pursuant to Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Johnson & Johnson and Johnson & Johnson Consumer Inc. ("**J&J**"), by its undersigned counsel, hereby requests that Imerys S.A. produce the documents specified in these Requests in connection with the *Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code*, [D.I. 2083], in the above-captioned chapter 11 cases. J&J requests that Imerys S.A. provide the requested documents as soon as possible, but no later than September 24, 2020 at 5:00pm Eastern Time, and that they be served on or produced to the law offices of Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153, attention Theodore E. Tsekerides by delivery through electronic means to the email address

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6348), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East Suite 300, Roswell, Georgia 30076.

Theodore.Tsekerides@weil.com.

# I.    DEFINITIONS

The terms utilized herein shall have the meanings specified below. Each defined term shall have the meaning ascribed to it regardless of whether the term is capitalized. Any term referencing any business, legal, or government entity or association shall be deemed a reference to any and all of its predecessors, successors, Affiliates and subsidiaries, as well as any and all of its past or present officers, directors, partners, members, managers, employees, representatives, and agents. This includes, without limitation, the following:

1.    "Amended Plan" means the *Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code,* Case No. 19-10289 (LSS), [D.I. 2083].

2.    "Channeling Injunction" has the meaning ascribed to it in §1.1.23 of the Amended Plan.

3.    "Chapter 11 Cases" means the cases before the United States Bankruptcy Court for the District of Delaware docketed as, or associated with, 19-10289.

4.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements, press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

5.    "Cooperation Agreement" has the meaning ascribed to it in §1.1.40 of the Amended Plan.

6.    "Documents" means all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained, or translated, if necessary, through detection devices into reasonable usable form. The term "Documents" includes, but is not limited to:

    a.    correspondence, term sheets, proposals, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams,

WEIL:\97596936\6\54966.0222

journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intra-office communications, or offers;

b.      notations in any form made of conversations, telephone calls, meetings, negotiations or other communications;

c.      bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

d.      electronic, mechanical or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, computer-stored data or material), or transcriptions thereof, including but not limited to, databases and spreadsheets; and

e.      all drafts, alterations, modifications, changes and amendments of any of the foregoing and any material underlying, supporting or used in the preparation of any document.

7.      "FCR" means James L. Patton, Jr., the appointed future claims representative, in these Chapter 11 Cases.

8.      "Imerys Clays" means Imerys Clays, Inc.

9.      "Imerys Contribution" has the meaning ascribed to it in §1.1.80

10.     "Imerys Group" means a French multinational corporation comprised of over 360 affiliated entities directly and indirectly owned by Non-Debtor Affiliate entity Imerys S.A., incorporating the meaning adopted by the Picard Declaration.

11.     "Imerys S.A." means Imerys S.A. and any of their attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys S.A.

12.     "Imerys USA" means Imerys USA, Inc.

3

13.     "ITI" means Imerys Talc Italy, S.P.A.

14.     "J&J" means Johnson & Johnson and Johnson & Johnson Consumer Inc.

15.     "Non-Debtor Affiliates" means any and all Affiliates of any Debtor other than Imerys S.A. or one of the other Debtors.

16.     "Plan" means the *Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code,* Case No. 19-10289 (LSS), [D.I. 1714].

17.     "Plan Documents" has the meaning ascribed to it in §1.1.136 of the Amended Plan.

18.     "Plan Proponents" has the meaning ascribed to it in §1.1.137 of the Amended Plan.

19.     "Released Parties" has the meaning ascribed to it in §1.1.146 of the Amended Plan.

20.     "Revised Disclosure Statement" means the *Disclosure Statement for Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code,* Case No. 19-10289 (LSS), [D.I. 2084].

21.     "Talc Personal Injury Claim" has the meaning ascribed to it in §1.1.192 of the Amended Plan.

22.     "TCC" means the Official Committee of Tort Claimants appointed in these Chapter 11 Cases, including its individual members and any attorneys, representatives, consultants, advisors or anyone acting on the TCC's behalf.

## II.    **INSTRUCTIONS**

The preceding definitions apply to the following instructions and each of the succeeding requests:

1. The terms used in the Requests are to be given their most expansive and inclusive interpretation unless otherwise expressly limited in a Request. This includes, without limitation, the following:

    a. Construing "and" and "or" in the disjunctive or conjunctive as necessary to make a request more inclusive;

    b. Construing the singular form of a word to include the plural and the plural to include

WEIL:\97596936\6\54966.0222

the singular;

    c.   Construing the term "among" to mean between or among;

    d.   Construing the term "any" to mean any, all, each, and every;

    e.   Construing the masculine, feminine, or neutral pronouns to include all genders; and

    f.   Construing the present tense of a verb to include its past tense and vice versa.

2.   You are required to obtain and furnish all Documents available to You and to any of Your representatives, agents, employees, or attorneys, and to obtain and furnish all Documents that are in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees, accountants, or attorneys.

3.   These requests are continuing in nature and, to the extent that Your responses may be enlarged, diminished, or otherwise modified by information acquired after your initial responses to these Requests, You are required to promptly supplement Your initial responses in writing reflecting such changes, and to produce any additional Documents, to the fullest extent required by any applicable law or rule.

4.   If any Documents were formerly in your possession, custody, or control, and have been lost, destroyed, or otherwise disposed of, then You are required to furnish a list that identifies all Documents that have been lost, destroyed, or otherwise disposed of, and that states for all Documents:

    a.   The nature of the Documents (*e.g.*, letter, memorandum, etc.);

    b.   The size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

    c.   The subject matter of the Documents;

    d.   The persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

    e.   The date on which the Documents were prepared or transmitted; and

    f.   The date on which the Documents were lost, destroyed, or otherwise disposed of, the conditions of and reasons for such destruction or other disposition, and the persons requesting and performing the destruction or other disposition.

5.  For each of the Documents withheld on the ground of any privilege or immunity, You are required to furnish a list that identifies each of the Documents that have been withheld, and that states for each of the Documents:

    a.  The nature of the Documents (*e.g.*, letter, memorandum, etc.);

    b.  The size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

    c.  The subject matter of the Documents;

    d.  The persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

    e.  Each person having a copy of the Documents, each person to whom a copy was sent, and each person by whom a copy was received;

    f.  The date on which the Documents were prepared or transmitted; and

    g.  The nature of the privilege or immunity claimed and the basis for claiming the privilege or immunity.

6.  If any portion of any Documents is responsive to these Requests, the entirety of the Documents shall be produced. Moreover, if only a part of any Document is protected by any privilege or immunity, the Document shall be produced with only the privileged matter redacted.

7.  All Documents shall be produced as they are kept in the ordinary course of business. The name of the file from which they were produced, the identity of the person from whose file they were produced, and the identity of the present custodian of that file shall each be set forth.

8.  All financial data shall be produced in native format to the extent available.

9.  All Documents, except financial data as described in Instruction 8, shall be provided as a PDF with optical character recognition.

10. All Documents shall be produced in the order in which they are found in a person's files, and shall not be rearranged. If the Documents are kept in a file with a file label, a copy of that label shall be produced together with the other Documents, Communications, or other materials in the file.

11. Nothing set forth herein shall constitute or be deemed an admission or a waiver of any kind

WEIL:\97596936\6\54966.0222

with respect to any defense or objection regarding the admissibility or relevance of any Documents produced in response to these Requests.

## III.    DOCUMENT REQUESTS

In accordance with the foregoing Definitions and Instructions, please produce the following documents:

1. All Documents and Communications between Imerys S.A. and the TCC.

2. All Documents and Communications between Imerys S.A. and the FCR.

3. All Documents and Communications provided by Imerys S.A. to the TCC and/or the FCR, including but not limited to, as referenced in Latham & Watkins Responses to TCC Document Requests – August 19, 2019 (Bates Number: Imerys_Plan_00117105 through Imerys_Plan_0011718), attached hereto as Exhibit A.

4. All Documents and Communications between or among the Plan Proponents relating to the negotiation of the Plan Documents.

5. All Documents and Communications between or among the Plan Proponents relating to the Channeling Injunction.

6. All Documents and Communications between or among the Plan Proponents relating to the Cooperation Agreement.

7. All Documents and Communications between or among the Plan Proponents relating to the Imerys Contribution.

8. All Communications between or among the Plan Proponents relating to the determination of which entities would be included as Released Parties.

9. All Documents and Communications relating to any settlement, termination, satisfaction or resolution of any Talc Personal Injury Claims against the Debtors, Imerys S.A., or the Non-Debtor Affiliates, including all settlement agreements, claim information sheets, claim summaries, verdicts or judgments, dismissals, and dismissals that were refiled.

10. All Documents and Communications relating to any payments made by Imerys S.A., Imerys USA, Imerys Clays, and/or the Imerys Group relating to the satisfaction, settlement or resolution of any Talc Personal Injury Claims.

11. All Documents and Communications relating to any claims submitted to Imerys S.A. on behalf of the Debtors in connection with any Talc Personal Injury Claims.

WEIL:\97596936\6\54966.0222

12. All Documents and Communications relating to any Analyses and Models, estimates or projections related to the projected or estimated monetary exposure of the Debtors to Talc Personal Injury Claims.

13. All Documents and Communications relating to any Analyses and Models, estimates or projections related to the projected or estimated monetary exposure of Imerys S.A. to Talc Personal Injury Claims.

14. All Documents and Communications relating to any Analyses and Models, estimates or projections related to the projected or estimated monetary exposure of the Non-Debtor Affiliates to Talc Personal Injury Claims.

15. All Documents and Communications relating to the calculation or negotiation of the contribution and/or settlement amount for Imerys S.A. as contemplated in the Amended Plan.

16. All Documents and Communications relating to the calculation or negotiation of the contribution and/or settlement amount for the Debtors as contemplated in the Amended Plan.

17. All documents and Communications between Imerys S.A. and any of the Debtors relating to the Plan and/or the Amended Plan.

18. All documents and Communications between Imerys S.A. and any of the Non-Debtor Affiliates relating to the Plan and/or the Amended Plan.

19. All Documents and Communications among or between the Plan Proponents relating to the indemnity obligations allegedly owed to the Debtors or any Non-Debtor Affiliates by J&J.

20. All Documents and Communications relating to claim amounts agreed to between and/or among the Plan Proponents relating to the J&J Talc Claims.

21. All Documents and Communications relating to the negotiations between and/or among the Plan Proponents over the terms of a framework for a plan reorganization for the Debtors that would include a chapter 11 filing for ITI as referenced in §3.3(b) of the Revised Disclosure Statement, including those relating to the potential for ITI to face increasing talc-related litigation if it remains in the tort system as referenced in §3.3(c) of the Revised Disclosure Statement.

22. All Documents and Communications relating to the "certain information and documents" Imerys S.A. provided in response to diligence requests from the TCC and the FCR referenced in §3.3(b) of the Revised Disclosure Statement.

23. All Documents and Communications exchanged between and/or among the Plan

Proponents and/or the Non-Debtor Affiliates.

24. Documents sufficient to explain in detail the corporate structure of the Imerys entities including Imerys S.A., the Debtors, and all sister companies, affiliates, and subsidiaries.

25. Documents sufficient to show all individuals who are or have ever simultaneously been employees, officers or directors of more than one of the following entities or any of their subsidiaries, sister companies, or subsidiaries of sister companies: any one of the Debtors and/or Imerys S.A..

26. All Documents and Communications related to efforts, programs, protocols, rules, bylaws, or agreements that give (or ever gave) Imerys S.A. the ability, authority, or option to influence, control, participate in, veto or otherwise affect any aspect of the management or administration of any Debtor, or any of their affiliates or subsidiaries.

27. Documents sufficient to show all tangible assets that have ever been utilized to assist or otherwise support the operation, management, or administration of any Debtor, or any of their affiliates or subsidiaries.

28. Documents sufficient to show all intangible assets that have ever been utilized to assist or otherwise support the operation, management, or administration of any Debtor, or any of their affiliates or subsidiaries.

29. Documents sufficient to show, in detail, the policies, rules, protocols, and efforts, if any, to segregate the corporate minutes of Imerys S.A. with those of any Debtor, or any of their affiliates or subsidiaries.

30. Documents sufficient to show, in detail, the policies, rules, protocols, and efforts, if any, to segregate the corporate records of Imerys S.A. with those of any Debtor, or any of their affiliates or subsidiaries.

31. Documents sufficient to identify the entity or entities paying, guaranteeing or otherwise taking responsibility for the legal fees incurred by any of the Debtors in connection with the Talc Claims and the chapter 11 cases.

32. All Documents and Communications related to any instructions, demands, directives, suggestions, or advice given by Imerys S.A. to any Debtor or ITI.

WEIL:\97596936\6\54966.0222

Dated: August 24, 2020

FAEGRE DRINKER BIDDLE & REATH LLP

_/s/ Patrick A. Jackson_
Patrick A. Jackson (Del. Bar No. 4976)
222 Delaware Ave., Ste. 1410
Wilmington, Delaware 19801
Telephone: (302) 467-4210
Facsimile: (302) 651-7701
Patrick.Jackson@faegredrinker.com

-and-

WEIL, GOTSHAL & MANGES LLP
Diane P. Sullivan (*pro hac vice*)
Ronit J. Berkovich (*pro hac vice*)
Theodore E. Tsekerides (*pro hac vice*)
Konrad L. Cailteux (*pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Johnson & Johnson*
*and Johnson & Johnson Consumer Inc.*

WEIL:\97596936\6\54966.0222

EXHIBIT A

11

*Latham & Watkins Responses to TCC Document Requests – August 19, 2019*

# Robinson+Cole
# WILLKIE FARR & GALLAGHER LLP

---

**PRIVILEGED AND CONFIDENTIAL
SUBJECT TO ATTORNEY-CLIENT PRIVILEGE
AND WORK PRODUCT DOCTRINE**

---

# MEMORANDUM

To:       The Official Committee of Tort Claimants *In re Imerys Talc America, Inc. et al.* ("Committee")

From:     Robinson & Cole LLP and Willkie Farr & Gallagher LLP

Date:     May 28, 2019

Subject:  The Committee's First Amended Document Requests to Debtors

The following list of items constitutes our proposed initial document requests to the Debtors. We have attempted to avoid any duplication with prior requests submitted by the proposed Future Claimants Representative, but in some instances have broadened the scope of an initial FCR request to ensure completeness.

## The Tort Claimant Committee's Initial Document Requests

FCR

1.   The Committee incorporates by reference the FCR's Initial Document Request dated September 21, 2018 and the FCR's Updated Document Request dated October 1, 2018.

     a.   **All non-privileged documents have been provided in the FCR Production.**[1]

2.   As an additional category of information within the "Claims database" requested by the FCR, the defense costs incurred with respect to each claim.

---

[1] The initial production to the TCC, which included documents that were provided to the FCR will be referred to as the "**FCR Production**." The production of documents made on June 7, 2019 will be referred to as "**Batch 1**." The production of documents made on June 14, 2019 (and then re-produced with the appropriate confidentiality designation on June 17, 2019) is referred to as "**Batch 2**." The production of documents made on June 22, 2019 is referred to as "**Batch 3**." The production of documents made on June 25, 2019 is referred to as "**Batch 4**." The production of documents made on July 5, 2019 is referred to as "**Batch 5**." The production of documents made on July 26, 2019 is referred to as "**Batch 6**." The production of documents made on August 5, 2019 is referred to as "**Batch 7**". The production of documents made on August 19, 2019 is referred to as "**Batch 8**." Production of documents made in course of Cyprus Adversary Proceeding is the "**Cyprus Production**."

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

    a. **Claims information was included in the FCR Production. Defense cost information on a claim-by-claim basis has not been tracked historically by the Debtors or their advisors (and in many cases were paid directly by insurers). Insurers may assert that defense costs paid directly by them are subject to a common-interest privilege.**

3. All documents produced to or otherwise shared with the FCR, YCST, or Ankura Consulting Group, LLC.

    a. **All non-privileged documents were provided in the FCR Production.**

4. All communications with the FCR, YCST, or Ankura Consulting Group, LLC.

    a. **Subject to privilege and overbroad.**

5. The native version of IMERYS-BKR-00023094.

    a. **Provided in Batch 3.**

<u>Bankruptcy and Corporate</u>

6. All documents that Alexandra Picard reviewed in connection with the Declaration Of Alexandra Picard, Chief Financial Officer Of The Debtors In Support Of Chapter 11 Petitions And First Day Pleadings (Dkt. No. 10).

    a. **All documents referenced in Ms. Picard's First Day Declaration have been produced or are otherwise available to the TCC.**

7. All documents referring or relating to the Debtors' decision to file for bankruptcy, including but not limited to:

**Subject to privilege and overbroad.**

    a. All communications with Imerys SA, affiliates, indemnitors, insurers, or other non-debtors;

    b. All documents referring or relating to any coordination with Imerys SA, affiliates, indemnitors, insurers, or other non-debtors;

    c. All documents referring or relating to any alternatives to bankruptcy that were considered; and

    d. All documents referring or relating to securing a 524(g) channeling injunction or similar protection for any Debtor or non-debtor.

2

Confidential

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

8.  For each of the Debtors:

**Produced in FCR Production, Batch 1 and Batch 3.  The Debtors understand that Imerys S.A. produced non-Debtor minute books.**

   a.  All charter documents, incorporation documents, articles of incorporation, certificates of incorporation, certificates of ownership, certificates of merger, bylaws, and similar organizational documents, and all amendments to such documents;

   b.  Corporate structure chart by business entity, including location of financial and operating assets and liabilities (including mines and legacy liabilities located at each entity);

   c.  Corporate organizational chart for both entity level and for management;

   d.  All board meeting minutes and resolutions from February 13, 2013 to present;

   e.  All shareholder meeting minutes and resolutions from February 13, 2013 to present; and

   f.  Copies of corporate records or ledgers identifying the issuance of any stock certificates and any dividends, including to whom each certificate or dividend was issued and the date on which each was issued.

9.  For Imerys SA:

**As discussed, Latham has coordinated with Hughes Hubbard, counsel to Imerys S.A., on these and other document requests that call for S.A. documents.  The Debtors understand that HHR has responded to these requests.  The Debtors will not produce or otherwise search internal records for documents that Imerys S.A. is providing.**

   a.  All charter documents, incorporation documents, articles of incorporation, certificates of incorporation, certificates of ownership, certificates of merger, bylaws, and similar organizational documents, and all amendments to such documents;

   b.  All board meeting minutes and resolutions from February 13, 2013 to present;

   c.  All shareholder meeting minutes and resolutions from February 13, 2013 to present; and

   d.  Copies of corporate records or ledgers identifying the issuance of any stock certificates and any dividends, including to whom each certificate or dividend was issued and the date on which each was issued.

3

Confidential

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

10. All documents from February 13, 2013 to present referring or relating to any intercompany transfer, containment, or ring-fencing of any actual or potential liability for Talc Claims.

   a. **See response to Question 9.**

11. All documents concerning Johnson & Johnson's stock sale of Windsor Minerals, Inc. (n/k/a Imerys Talc Vermont, Inc.) to Cyprus Mines Corporation.

   a. **For Questions 11 – 17: Responsive documents included in FCR Production and Batch 3. See also response to Question 9.**

12. All documents concerning Cyprus Mines Corporation's transfer and assignment of its then existing talc operations to Cyprus Talc Corporation.

13. All documents concerning RTZ America, Inc.'s (later known as Rio Tinto America, Inc.) purchase of 100% of the stock of Cyprus Talc Corporation.

14. All documents concerning Rio Tinto America, Inc.'s sale of Luzenac America, Inc. and Windsor Minerals, Inc. to Imerys Minerals Holding Limited (UK).

15. All documents concerning QIT Fer & Titane's sale of Luzenac, Inc. to Mircal, S.A.

16. All documents concerning the acquisition of the Debtors by "Imerys Group" through Mircal S.A.

17. All documents concerning the agreement between Mircal S.A. and Rio Tinto America, Inc. to purchase Rio Tinto Group's talc operations, including the stock of Luzenac America, Inc. and Windsor Minerals, Inc.

Claims

18. All documents referring or relating to any projections, estimates, or analyses of the Debtors' actual or potential liability for Talc Claims, including but not limited to all analyses referenced in Imerys SA's 2018 Registration Document.

   a. **Privileged. See response to Question 9.**

19. All documents referring or relating to any projections, estimates, or analyses of any non-debtor's actual or potential liability for Talc Claims, including but not limited to all analyses referenced in Imerys SA's 2018 Registration Document.

   a. **See response to Question 9.**

4

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

20. All documents identifying products that incorporated talc supplied, distributed, and/or mined by the Debtors that have been claimed to be associated with mesothelioma and/or ovarian cancer.

   a. **The Debtors do not distribute end products to customers and do not track this information. In Batch 7, Bates No. IMERYS-BKR-00115337, pp. 15-16, item 3.c, the Debtors identified a non-exhaustive list of manufacturers and distributors that have been identified in the talc litigation as using cosmetic grade talc supplied by the Debtors or their predecessors (not all of which are current customers).**

21. All documents provided to KCIC Consulting.

   a. **Non-privileged documents provided to KCIC in connection with its valuation and claims analysis have been provided in the FCR Production (including anonymized settlement data), by KCIC to Gilbert LLP in its role as TCC insurance counsel, and in Batches 2 and 8.**

22. All communications with KCIC Consulting.

   a. **Privileged and overbroad.**

23. All agreements that contain indemnification provisions that do or may apply to Talc Claims.

   a. **Produced in the FCR Production.**

24. All documents referring or relating to indemnification for Talc Claims, including but not limited to all demands for indemnification, responses and defenses asserted, communications with potential indemnitors, and all documents referring or relating to projected liability.

   a. **Produced in Batch 2.**

25. All documents referring or relating to any of Johnson & Johnson's agreements or other obligations to indemnify the Debtors for Talc Claims, including but not limited to all demands for indemnification, responses and defenses asserted, communications with Johnson & Johnson, and all documents referring or relating to projected liability.

   a. **Produced in Batch 2.**

26. All contracts, agreements, statements of work, form of purchase orders or description of any oral agreements relating to the supply or distribution of talc.

   a. **Produced in Batch 1, Batch 2, Batch 3 and Batch 6.**

27. All documents relating to any representations, warranties, and/or indemnities relative to the supply of talc.

Confidential

Imerys_Plan_00117109

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

a. **See responses to Questions 24-26.**

28. All documents related to warranty claims associated with talc supply or distribution contracts.

a. **See responses to Questions 24-26.**

29. All insurance policies that may provide coverage for Talc Claims and a claim history for each policy from February 13, 2013 to present.

a. **Produced in FCR Production and Batch 1.**

30. All documents referring or relating to insurance coverage for Talc Claims, including but not limited to all communications with insurers and all documents referring or relating to projected liability.

a. **Responsive, non-privileged information included in Cyprus Production and other productions in the Cyprus adversary proceeding.**

31. All documents referring or relating to Imerys SA's participation in or knowledge of talc sales, marketing, contamination, the potential of talc to cause ovarian cancer or mesothelioma, or actual or potential liability for Talc Claims.

a. **See response to Question 9.**

32. All documents referring or relating to Cyprus Mines Corporation's participation in or knowledge of talc sales, marketing, contamination, the potential of talc to cause ovarian cancer or mesothelioma, or actual or potential liability for Talc Claims.

a. **Responsive, non-privileged information included in Cyprus Production.**

33. All documents referring or relating to Johnson & Johnson's participation in or knowledge of talc sales, marketing, contamination, the potential of talc to cause ovarian cancer or mesothelioma, or actual or potential liability for Talc Claims.

a. **Responsive documents identified as non-privileged were produced in Batch 3, Batch 6, Batch 7 and Batch 8.**

34. All non-privileged documents referring or relating to the Debtors' tort system experience, strategy, joint defense, defense costs, and settlements.

a. **Please refer to response to Question 2 and May 15, 2019 email at 12:22 p.m. PST from H. Tseregounis to R. Strickland listing prepetition verdicts, settlements and judgements.**

35. Documents sufficient to show the sale, use, and distribution of all products alleged to have caused Talc Claims.

a. **See response to Question 20.**

6

|||

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

36. All tests, surveys, analyses, reports and/or other studies associated with the potential causal connection between talc and ovarian cancer, mesothelioma, and/or other diseases.

    a. **Batch 6 and Batch 7.**

37. All advertising and marketing documents for all products alleged to have caused Talc Claims.

    a. **The Debtors do not create or sell end-use products.  Therefore they do not market to end-users.  Responsive documents produced in Batch 3 and Batch 6.**

38. All documents referring or relating to any of the Debtors' accounting treatment of, including but not limited to the setting of reserves or provisions associated with, Talc Claims.

    a. **Responsive information relating to the Debtors' accounting treatment of talc claims is reflected in the Debtors' financial statements other related documents produced in the FCR Production and other batches.  Certain additional documents relating to accounting treatment and reserves is privileged.**

39. All documents referring or relating to any of Imerys SA's accounting treatment of, including but not limited to the setting of reserves or provisions associated with, Talc Claims.

    a. **See response to Question 9.**

40. Any notices regarding non-compliance or required corrections issued by any governmental agency or by any insurance company.

    a. **Based on our review, we have not located any non-compliance or required corrections issued by a governmental agency.  See Batch 1, Batch 2 and Batch 3 for insurance notices.  The Debtors have included the Senator Murray information request and production in Batch 7.**

<u>Intercompany Agreements and Transactions</u>

41. All documents referring or relating to claims, liabilities, loans, reimbursements, dividends, asset transfers, shared management, or intercompany agreements between the Debtors and Imerys non-Debtor entities regardless of whether the agreements are currently in effect, amended or terminated, including but not limited to:

    **Produced in FCR Production, Batch 1, Batch 2, Batch 5 and Batch 8.  See also response to Question 9.**

    a. Shared Services Agreements;

7

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

    b.   Cash Management Agreements or Policies;

    c.   Master Service Level Agreements;

    d.   Agreements/Policies related to Customer Programs including but not limited to rebates, commissions, specification warranties and supply warranties;

    e.   Separate Services Agreements (i.e., the "North American Service Agreements");

    f.   Intercompany Loan and Investment Agreements;

    g.   Documentation relating to other Intercompany Transactions and Agreements as described in the Cash Management Motion;

    h.   Documentation of intercompany claims as defined in the Cash Management Motion;

    i.   Transfer Pricing Arrangements;

    j.   Standby Letters of Credit;

    k.   Promissory Notes; and

    l.   Letters of Support or Guarantees between related parties and the Debtors.

42. Allocation methodology used to allocate costs to the Debtors and Imerys non-Debtor entities in the years 2013 through current including:

**Ducera and Alvarez have worked directly on the following requests. Many of the below requested items have been produced in the FCR Production. Where other documents have been produced other Batches it is noted below.**

    a.   Journal entries, supporting documentation and calculations justifying such allocations;

        i.   **Produced in Batch 1 and 2.**

    b.   Key Debtor and Imerys non-Debtor metrics (i.e., number of employees, sales ratios) used in computing the allocation of intercompany expenses; and

        i.   **Data not presently available.**

    c.   A list of all interest rates used to accrue interest at each period for intercompany balances owed to, or by, the Debtors and the source of those interest rates.

        i.   **Produced in Batch 1 and 2.**

43. Shared Service Center ("SSC") Audit Work Files for the years 2013 through current and related documentation of management reviews and validations.

8

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

    a.  **Data not presently available.**

44. Documentation of any intercompany transfer, or any other transfer of the Debtors' assets to/from an Imerys non-Debtor whether under a Transfer Pricing Agreement or otherwise in the years 2013 through current.

    a.  **Produced in Batch 1.**

45. Any and all intercompany invoices or other documentation of amounts due to/due from the Debtors and any Imerys non-Debtor entity in the years 2013 through current.

    a.  **Data not presently available.**

46. Schedule of services provided to the Debtors by Imerys non-Debtor entities or any of their affiliates and vice versa.

    a.  **See response to Question 41.**

47. Schedule of assets owned by the Imerys non-Debtor entities or their affiliates and used by the Debtors and vice versa.

    a.  **None.**

Projections/Business Plans

48. All projections from February 13, 2013 to present and associated work papers including:

    a.  5-year projected fully integrated financial model in Excel format including:

        i.  Breakdown by segments, end-markets, subsidiaries, and mines/mills/plants;

            1.  **Produced in Batch 1, Batch 3, Batch 6 and Batch 8.**

        ii.  Any alternative cases, including upside and downside market sensitivities; and

            1.  **None.**

        iii.  Working capital assumptions including overview of key drivers and details of how working capital is forecast.

            1.  **Produced in Batch 3 and Batch 4.**

49. All business plans from February 13, 2013 to present and associated work papers including business plan presentations and Board presentations from the past 3 years.

        i.  **Produced in Batch 1 and 2.**

9

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

Financial Information and Accounting Records

50. For purposes of familiarity with the Debtors' operating and accounting system interfaces, please identify systems used in the years 2013 through current, regardless of implementation date or date taken out of service, including but not limited to:

**Produced in Batch 1 and/or 3.**

   i.   Software used to track income, expenses, assets, and liabilities;

   ii.  Software used to prepare financial statements;

   iii. Specialty software systems used in the operations of the Debtors; and

   iv.  Flow chart of system interfaces.

51. Annual general ledger detail for the years 2013 through current by year in Excel format including:

   a. All general ledger accounts and all available general ledger report columns (i.e., entry/modification date, entered/modified by, memo fields); and

      i.  **Produced in Batch 4.**

   b. General ledger audit and journal entry reports by year.

      i.  **Not available.**

52. Monthly bank and account statements held by the Debtors for the years 2013 to present in Excel format, including but not limited to those of any account shared with any of the Debtors' parents, subsidiaries, or affiliates.

   a. **Produced in Batch 5.**

53. All audited financial statements for 2013 through present including accounting work papers associated with audited financial statements including:

**Produced in Batch 5.**

   a. Auditor's notes, lists, or schedules showing the components of each aggregated total amount.

   b. Attorney responses to audit inquiries.

54. Monthly income statements, balance sheets, and statements of cash flow for the years 2013 through present in Excel format.

   a. **Produced in Batch 1 and Batch 2.**

10

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

55. Monthly 3-year historical financial model in Excel format including:

    a.  Breakdown by segments, end-markets, subsidiaries, and mines/mills/plants;

        1.  **Produced in Batch 1 and Batch 2.**

    b.  Any alternative cases, including upside and downside market sensitivities; and

        1.  **Not available.**

    c.  Working capital assumptions including overview of key drivers and details of how working capital is forecast.

        1.  **Produced in Batch 3 and see response to Question 48.**

56. Income statement, balance sheet and statement of cash flow for the year ended December 31, 2012 to be used as a baseline.

    a.  **Produced in Batch 1 and Batch 2.**

57. Breakdown of selling, general and administrative ("SG&A") expenses for the years 2013 through current by segments, end-markets, divisions, and profit centers including identification of shared services allocations.

    a.  **Produced in Batch 1 and Batch 2.**

58. Schedule of net operating losses (showing amounts and expiration dates for any carryovers), tax credits, and any other tax attributes as of December 31, 2018 for all subsidiaries and entities of the Debtors and all related non-Debtor subsidiaries and entities.

    a.  **Produced in Batch 5.**

59. Copies of all federal, state and local income/franchise tax returns and information reports filed by the Company in the last three years plus any prior periods that may be subject to additional tax assessments or claims including:

**Produced in Batch 1.**

    a.  Any analysis of tax implications of selling assets, including the cost basis of the assets.

60. Listing of Debtors' assets sold in the years 2013 through current by year including sale price and book value.

    a.  **Produced Batch 1 and 3.**

61. Identification of any extraordinary or one-time items including the amount and date recorded in the general ledger for the years 2013 through present.

11

     a. **Produced in Batch 5.**

62. Identification of any non-operating assets, non-operating income, off-balance sheet assets and liabilities by year for the years 2013 through current.

     a. **Produced in Batch 1.**

63. Schedule of revenue generated in most recent fiscal year allocated on a country-by-country basis, based on customer location.

     a. **Produced in Batch 5.**

64. Customer list for the years 2013 through current in Excel format including total sales by customer in each year and identifying any intercompany sales.

     a. **Produced in Batch 1, Batch 2 and Batch 5.**

65. Vendor list for the years 2013 through current in Excel format including total purchases by vendor in each year and identifying any intercompany purchases.

     a. **Produced in Batch 1 and Batch 3.**

66. List of top 20 trade payable accounts/vendors and copies of any contracts with such vendors with a term of one year or more.

     a. **Produced in Batch 1 and Batch 3.**

67. Confirm that none of the top 20 customers have notified the Debtors or its affiliates that it is cancelling or termination its relationship (or materially decrease the rate of purchasing).

     a. **Confirmed as of August 16, 2019. As previously disclosed, the Debtors' relationship with J&J will be ending in the near future due to J&J moving the location of its baby powder production facilities. A top 20 customer, Borealis, is decreasing its rate of purchasing due to the customer's loss of a significant contract with a third party (unrelated to the chapter 11 filing). The revenue decline is approximately ~$1.1 million year over year through July 2019.**

68. Copies of all historical impairment testing, appraisals and associated valuation analysis.

     a. **See response to Question 9.**

69. Copies of any other material non-public presentations from the past 3 years, related to M&A and/or other strategic alternatives.

     a. **See response to Question 9.**

70. Any historical analysis of minimum liquidity needs to run the business.

Confidential

Imerys_Plan_00117116

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

    a. **Not available.**

71. Mines and permit level details of all reclamation accounting liabilities and estimated future costs of reclaiming each, including: details of reclamation collateral support, including cash, letters of credit, self-bonding, and surety bonds including a detailed breakdown by state, legal corporate entity, mine, and permit.

    a. **Produced in Batch 1, Batch 4 and Batch 6.**

Mine/Mill/Segment Specific Information

72. Documents, presentations, and analyses regarding individual mine details, including contract positions, production rates, liabilities, segment and end-market breakdowns, and historical and projected financials.

    a. **Produced in Batch 4.**

73. Summary of estimated peak production for each mine.

    a. **Produced in Batch 1 and Batch 3.**

74. Description of all leases, including schedule of material terms and counterparties of lease agreements.

    a. **Produced in Batch 6 and Batch 7.**

75. Supply agreements broken down by contract execution dates, segment allocation and end-market use, duration, price, volume and details of individual mines/mills capable of satisfying the contracts.

    a. **Produced in Batch 6.**

76. Historical volume and pricing by segment, end-market, and product type for each mine for FYE 2015, 2016, 2017, 2018, and YTD 2019.

    a. **Produced in Batch 1, Batch 2 and Batch 5.**

77. Projected volume and pricing by segments, end-markets, and product type for each mine for FYE 2019 and 2020.

    a. **Produced in Batch 5.**

78. Operational summaries for each mine, including information on labor type, transportation/logistics and reserves.

    a. **Produced in Batch 4.**

79. Latest FTE headcount by mine.

Confidential

Imerys_Plan_00117117

*LATHAM & WATKINS RESPONSES TO TCC DOCUMENT REQUESTS – 8.19.2019*

    a. **Produced in Batch 4.**

80. Detailed capital expenditure budget by mine and type, including maintenance, environmental, growth, safety, sustaining, and others as appropriate.

    a. **Produced in Batch 1 and Batch 3.**

81. Any industry reports for comparable mining operations, including market forecasts.

    a. **Produced in Batch 4.**

Notes:

- "Talc Claims" shall mean all past, present, and future claims for personal injuries caused by exposure to talc mined, processed, and/or distributed by one or more of the Debtors, including all such claims against non-debtors.

- These requests seek all responsive documents in the possession, custody, or control of the Debtors and any of their parents, subsidiaries, or affiliates.

- These requests are preliminary and may be supplemented by further requests for information and documents as we proceed with our due diligence review.

- All documents are requested as amended to date and should include all schedules, exhibits, and appendices thereto. The words "include," "includes," and "including" will be deemed to be followed by "without limitation."

14

Imerys_Plan_00117118

Exhibit 2

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re** | Chapter 11 |
| **IMERYS TALC AMERICA, INC.,** *et al.*[1] | Case No. 19–10289 (LSS)<br>(Jointly Administered) |
| **Debtors.** | |

**JOHNSON & JOHNSON'S AND JOHNSON & JOHNSON CONSUMER INC.'S
SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO IMERYS S.A.
RELATING TO THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF IMERYS TALC AMERICA, INC. AND ITS DEBTOR AFFILIATES
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable herein pursuant to Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "**J&J**"), by its undersigned counsel, hereby requests that Imerys S.A. ("**You**") produce the documents specified in these Requests in connection with the *Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [D.I. 2289] (as it may be amended, modified, or supplemented and together with any exhibits or schedules thereto, the "**Plan**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). J&J requests that Imerys S.A. provide the requested documents as soon as possible, but no later than November 16, 2020 at 5:00 p.m. Eastern Time, and that they be served on or produced to the law offices of (i) Weil, Gotshal

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6348), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East Suite 300, Roswell, Georgia 30076.

& Manges, LLP, 767 Fifth Avenue, New York, New York 10153, attention Theodore E.

Tsekerides or by delivery through electronic means to the email address

Theodore.Tsekerides@weil.com and (ii) Faegre Drinker Biddle & Reath LLP, 222 Delaware

Avenue, Suite 1410, Wilmington, Delaware 19801, attention Brett D. Fallon or by delivery

through electronic means to the email Brett.Fallon@faegredrinker.com.

## I.  <u>DEFINITIONS</u>

Capitalized terms used but not herein defined have the meanings ascribed to such terms in

the Plan. Each defined term shall have the meaning ascribed to it regardless of whether the term is

capitalized. Any term referencing any business, legal, or government entity or association shall be

deemed a reference to any and all of its predecessors, successors, Affiliates and subsidiaries, as

well as any and all of its past or present officers, directors, partners, members, managers,

employees, representatives, and agents. This includes, without limitation, the following:

1.  "<u>Bankruptcy Code</u>" means chapter 11 of title 11 of the United States Code.

2.  "<u>Communication</u>" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements, press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities. For the avoidance of doubt, this definition includes all transmittals over any videoconference or telephonic platform, or any other similar platform, *e.g.*, Zoom, WebEx, Microsoft Teams, etc.

3.  "<u>Documents</u>" means all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained, or translated, if necessary, through detection devices into reasonable usable form. The term "Documents" includes, but is not limited to:

a.      correspondence, term sheets, proposals, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intra-office communications, or offers;

b.      notations in any form made of conversations, telephone calls, meetings, negotiations or other communications;

c.      bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

d.      electronic, mechanical or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, computer-stored data or material), or transcriptions thereof, including but not limited to, databases and spreadsheets; and

e.      all drafts, alterations, modifications, changes and amendments of any of the foregoing and any material underlying, supporting or used in the preparation of any document.

4.      "FCR" means James L. Patton, Jr., the appointed future claims representative, in these Chapter 11 Cases, including any attorneys, representatives, consultants, advisors or anyone else acting on his behalf.

5.      "Imerys Clays" means Imerys Clays, Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Clays, Inc.

6.      "Imerys Group" means a French multinational corporation comprised of over 360 affiliated entities directly and indirectly owned by Non-Debtor Affiliate entity Imerys S.A., incorporating the meaning adopted by the Picard Declaration.

7.      "Imerys Minerals" means Imerys Minerals Holding Limited (UK) and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Minerals Holding Limited (UK).

8.      "<u>Imerys S.A.</u>" means Imerys S.A. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys S.A.

9.      "<u>Imerys USA</u>" means Imerys USA, Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys USA, Inc.

10.     "<u>ITA</u>" means Imerys Talc America, Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Talc America, Inc.

11.     "<u>ITC</u>" means Imerys Talc Canada Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Talc Canada Inc.

12.     "<u>ITV</u>" means Imerys Talc Vermont, Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Talc Vermont, Inc.

13.     "<u>ITI</u>" means Imerys Talc Italy, S.P.A. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Talc Italy, S.P.A.

14.     "<u>Non-Debtor Affiliates</u>" means any and all Affiliates of any Debtor other than Imerys S.A. or one of the other Debtors.

15.     "<u>Picard Declaration</u>" means the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 10] (the "**Picard Declaration**").

16.     "<u>Relating</u>" means concerning, referring to, describing, evidencing, or constituting.

17.     "<u>TCC</u>" means the Official Committee of Tort Claimants appointed in these Chapter 11 Cases, including its individual members and any attorneys, representatives, consultants, advisors or anyone acting on the Official Committee of Tort Claimants' behalf.

18.     "<u>Unidentified Imerys Talc Oversight Entity</u>" means the entity that—as described by Alexandra Picard at the April 25, 2019 Meeting of Creditors under section 341(a) of the Bankruptcy Code—sat in Paris and exercised oversight of Imerys Group's worldwide talc operations until November 2018.

## II.    <u>INSTRUCTIONS</u>

The preceding definitions apply to the following instructions and each of the succeeding requests:

1.    The terms used in the Requests are to be given their most expansive and inclusive interpretation unless otherwise expressly limited in a Request. This includes, without limitation, the following:

    a.    Construing "and" and "or" in the disjunctive or conjunctive as necessary to make a request more inclusive;

    b.    Construing the singular form of a word to include the plural and the plural to include the singular;

    c.    Construing the term "among" to mean between or among;

    d.    Construing the term "any" to mean any, all, each, and every;

    e.    Construing the masculine, feminine, or neutral pronouns to include all genders; and

    f.    Construing the present tense of a verb to include its past tense and vice versa.

2.    You are required to obtain and furnish all Documents available to You and to any of Your representatives, agents, employees, or attorneys, and to obtain and furnish all Documents that are in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees, accountants, or attorneys.

3.    These Requests are continuing in nature and, to the extent that Your responses may be enlarged, diminished, or otherwise modified by information acquired after your initial responses to these Requests, You are required to promptly supplement Your initial responses in writing reflecting such changes, and to produce any additional Documents, to the fullest extent required by any applicable law or rule.

4.    If any Documents were formerly in your possession, custody, or control, and have been lost, destroyed, or otherwise disposed of, then You are required to furnish a list that identifies all Documents that have been lost, destroyed, or otherwise disposed of, and that states for all Documents:

    a.    The nature of the Documents (*e.g.*, letter, memorandum, etc.);

    b.    The size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

     c.      The subject matter of the Documents;

     d.      The persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

     e.      The date on which the Documents were prepared or transmitted; and

     f.      The date on which the Documents were lost, destroyed, or otherwise disposed of, the conditions of and reasons for such destruction or other disposition, and the persons requesting and performing the destruction or other disposition.

5.      For each of the Documents withheld on the ground of any privilege or immunity, You are required to furnish a list that identifies each of the Documents that have been withheld, and that states for each of the Documents:

     a.      The nature of the Documents (*e.g.*, letter, memorandum, etc.);

     b.      The size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

     c.      The subject matter of the Documents;

     d.      The persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

     e.      Each person having a copy of the Documents, each person to whom a copy was sent, and each person by whom a copy was received;

     f.      The date on which the Documents were prepared or transmitted; and

     g.      The nature of the privilege or immunity claimed and the basis for claiming the privilege or immunity.

6.      If any portion of any Document is responsive to these Requests, the entirety of the Document shall be produced. Moreover, if only a part of any Document is protected by any privilege or immunity, the Document shall be produced with only the privileged matter redacted.

7.      All Documents shall be produced as they are kept in the ordinary course of business. The name of the file from which they were produced, the identity of the person from whose file they were produced, and the identity of the present custodian of that file shall each be set forth.

8.      All financial data shall be produced in native format to the extent available.

9.      All Documents, except financial data as described in Instruction 8, shall be provided as a PDF with optical character recognition.

10. All Documents shall be produced in the order in which they are found in a person's files, and shall not be rearranged. If the Documents are kept in a file with a file label, a copy of that label shall be produced together with the other Documents, Communications, or other materials in the file.

11. Nothing set forth herein shall constitute or be deemed an admission or a waiver of any kind with respect to any defense or objection regarding the admissibility or relevance of any Documents produced in response to these Requests.

12. Unless otherwise stated, these Requests seek information from January 1, 2011 through the present.

### III.    DOCUMENT REQUESTS

In accordance with the foregoing Definitions and Instructions, please produce the following documents:

1. Documents sufficient to describe in detail the corporate structure of Imerys Group including but not limited to, a complete corporate organizational chart.

2. Documents sufficient to identify the entity defined herein as the Unidentified Imerys Talc Oversight Entity.

3. All Documents and Communications relating to the formation, incorporation, or corporate by-laws, including any amendments thereto, of the following entities:

   a. Imerys S.A.;

   b. Imerys USA;

   c. Imerys Minerals;

   d. Unidentified Imerys Talc Oversight Entity;

   e. ITI;

   f. ITA;

   g. ITV; and

   h. ITC.

4. All Documents and Communications relating to the acquisition of the assets and/or liabilities of the following entities:

   a. Luzenac America, Inc.;

   b. Windsor Minerals, Inc.; and

7

     c.      Luzenac, Inc.

5.     All Documents and Communications between You, including but not limited to, Your officers, directors, and executive personnel, and the below-listed entities, including but not limited to, their officers, directors, and executive personnel (as applicable), relating to talc operations, including but not limited to, mining, processing, shipping, contents, and quality:

     a.      Imerys USA;

     b.      Imerys Minerals;

     c.      Unidentified Imerys Talc Oversight Entity;

     d.      ITI;

     e.      ITA;

     f.      ITV;

     g.      ITC

     h.      The TCC; and

     i.      The FCR.

6.     All Documents and Communications between You and the below-listed entities relating to Talc Personal Injury Claims, including but not limited to, analyses, models, estimates, or projections relating to the projected or estimated monetary exposure thereto:

     a.      Imerys USA;

     b.      Imerys Minerals;

     c.      Unidentified Imerys Talc Oversight Entity;

     d.      ITI;

     e.      ITA;

     f.      ITV;

     g.      ITC;

     h.      The TCC; and

     i.      The FCR.

7.      All Documents and Communications relating to any settlement, termination, satisfaction, or resolution of any Talc Personal Injury Claim against the Debtors, Imerys S.A., or the Non-Debtor Affiliates, including but not limited to, requests to approve such settlement, termination, satisfaction, or resolution, or notice thereof.

8.      Documents sufficient to identify the directors, officers, and other executive personnel, as well as the number of employees, of the below-listed entities from their inception to present:

      a.      Imerys S.A.;

      b.      Imerys USA;

      c.      Imerys Minerals;

      d.      Unidentified Imerys Talc Oversight Entity;

      e.      ITI;

      f.      ITA;

      g.      ITV; and

      h.      ITC.

9.      Documents sufficient to show all individuals who are or have ever simultaneously been employees, officers or directors of more than one of the following entities or any of their subsidiaries, sister companies, or subsidiaries of sister companies:

      a.      Imerys S.A.;

      b.      Imerys USA;

      c.      Imerys Minerals;

      d.      Unidentified Imerys Talc Oversight Entity;

      e.      ITI;

      f.      ITA;

      g.      ITV; and

      a.      ITC.

10.    Any board materials, including but not limited to, minutes, presentations, business analyses, and reports relating to the talc operations of any Imerys Group entity.

11.    Any board materials, including but not limited to, minutes, presentations, business analyses, and reports, relating to any transactions entered into by the following entities:

    a.    Imerys S.A.;

    b.    Imerys USA;

    c.    Imerys Minerals;

    d.    Unidentified Imerys Talc Oversight Entity;

    e.    ITI;

    f.    ITA;

    g.    ITV; and

    h.    ITC.

12.    All Documents and Communications relating to the capitalization, at inception, of the following entities:

    a.    Imerys USA;

    b.    Imerys Minerals;

    c.    Unidentified Imerys Talc Oversight Entity;

    d.    ITI;

    e.    ITA;

    f.    ITV; and

    g.    ITC.

13.    All Documents and Communications relating to any transfer of any assets, including but not limited to, cash, cash equivalents, debt or equity instruments, and any other tangible or intangible asset, or loans, between You and the following entities (in either direction) from their inception to present:

    a.    Imerys USA;

    b.    Imerys Minerals;

      c.      Unidentified Imerys Talc Oversight Entity;

      d.      ITI;

      e.      ITA;

      f.      ITV; and

      g.      ITC.

14.      All Documents and Communications relating to You satisfying the obligations, financial or otherwise, of the below-listed entities:

      a.      Imerys USA;

      b.      Imerys Minerals;

      c.      Unidentified Imerys Talc Oversight Entity;

      d.      ITI;

      e.      ITA;

      f.      ITV; and

      g.      ITC.

15.      All Documents and Communications relating to any of the below-listed entities satisfying Your obligations, financial or otherwise:

      a.      Imerys USA;

      b.      Imerys Minerals;

      c.      Unidentified Imerys Talc Oversight Entity;

      d.      ITI;

      e.      ITA;

      f.      ITV; and

      g.      ITC.

16.     All Documents and Communications relating to the operation of any mine from which talc was supplied to a third party, including but not limited to, J&J.

17.     All Documents and Communications relating to talc sold by any Imerys Group entity to a third party, including but not limited to, J&J.

18.     All Documents and Communications between You and J&J relating to analyzing the contents of talc.

Dated: October 16, 2020                    FAEGRE DRINKER BIDDLE & REATH LLP

                                           */s/ Patrick A. Jackson*                    
                                           Brett D. Fallon (Del. Bar No. 2480)
                                           Patrick A. Jackson (Del. Bar No. 4976)
                                           222 Delaware Ave., Ste. 1410
                                           Wilmington, Delaware 19801
                                           Telephone: (302) 467-4210
                                           Facsimile: (302) 651-7701
                                           Brett.Fallon@faegredrinker.com
                                           Patrick.Jackson@faegredrinker.com

                                           -and-

                                           WEIL, GOTSHAL & MANGES LLP
                                           Diane P. Sullivan (*pro hac vice*)
                                           Ronit J. Berkovich (*pro hac vice*)
                                           Theodore E. Tsekerides (*pro hac vice*)
                                           Konrad L. Cailteux (*pro hac vice*)
                                           767 Fifth Avenue
                                           New York, New York 10153
                                           Telephone: (212) 310-8000
                                           Facsimile: (212) 310-8007

                                           *Attorneys for Johnson & Johnson
                                           and Johnson & Johnson Consumer Inc.*

Exhibit 3

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re** | Chapter 11 |
| **IMERYS TALC AMERICA, INC.,** *et al.*[1] | Case No. 19–10289 (LSS)<br>(Jointly Administered) |
| **Debtors.** | |

**JOHNSON & JOHNSON'S AND JOHNSON & JOHNSON CONSUMER INC.'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO IMERYS USA, INC.
RELATING TO THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF IMERYS TALC AMERICA, INC. AND ITS DEBTOR AFFILIATES
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable herein pursuant

to Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Johnson & Johnson

and Johnson & Johnson Consumer Inc. (together, "**J&J**"), by its undersigned counsel, hereby

requests that Imerys USA, Inc. ("**You**") produce the documents specified in these Requests in

connection with the *Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its*

*Debtor Affiliates under Chapter 11 of the Bankruptcy Code* [D.I. 2289] (as it may be amended,

modified, or supplemented and together with any exhibits or schedules thereto, the "**Plan**"), in the

above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). J&J requests that Imerys USA, Inc.

provide the requested documents as soon as possible, but no later than November 16, 2020 at

5:00pm Eastern Time, and that they be served on or produced to the law offices of (i) Weil, Gotshal

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6348), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East Suite 300, Roswell, Georgia 30076.

& Manges, LLP, 767 Fifth Avenue, New York, New York 10153, attention Theodore E.

Tsekerides or by delivery through electronic means to the email address

Theodore.Tsekerides@weil.com and (ii) Faegre Drinker Biddle & Reath LLP, 222 Delaware

Avenue, Suite 1410, Wilmington, Delaware 19801, attention Brett D. Fallon or by delivery

through electronic means to the email Brett.Fallon@faegredrinker.com.

## I.    **DEFINITIONS**

Capitalized terms used but not herein defined have the meanings ascribed to such terms in

the Plan. Each defined term shall have the meaning ascribed to it regardless of whether the term is

capitalized. Any term referencing any business, legal, or government entity or association shall be

deemed a reference to any and all of its predecessors, successors, Affiliates and subsidiaries, as

well as any and all of its past or present officers, directors, partners, members, managers,

employees, representatives, and agents. This includes, without limitation, the following:

1.    "Bankruptcy Code" means chapter 11 of title 11 of the United States Code.

2.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements, press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities. For the avoidance of doubt, this definition includes all transmittals over any videoconference or telephonic platform, or any other similar platform, *e.g.*, Zoom, WebEx, Microsoft Teams, etc.

3.    "Documents" means all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained, or translated, if necessary, through detection devices into reasonable usable form. The term "Documents" includes, but is not limited to:

a.     correspondence, term sheets, proposals, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intra-office communications, or offers;

b.     notations in any form made of conversations, telephone calls, meetings, negotiations or other communications;

c.     bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

d.     electronic, mechanical or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, computer-stored data or material), or transcriptions thereof, including but not limited to, databases and spreadsheets; and

e.     all drafts, alterations, modifications, changes and amendments of any of the foregoing and any material underlying, supporting or used in the preparation of any document.

4.    "FCR" means James L. Patton, Jr., the appointed future claims representative, in these Chapter 11 Cases, including any attorneys, representatives, consultants, advisors or anyone else acting on his behalf.

5.    "Imerys Clays" means Imerys Clays, Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Clays, Inc.

6.    "Imerys Group" means a French multinational corporation comprised of over 360 affiliated entities directly and indirectly owned by Non-Debtor Affiliate entity Imerys S.A., incorporating the meaning adopted by the Picard Declaration.

7.    "Imerys Minerals" means Imerys Minerals Holding Limited (UK) and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Minerals Holding Limited (UK).

8.      "<u>Imerys S.A.</u>" means Imerys S.A. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys S.A.

9.      "<u>Imerys USA</u>" means Imerys USA, Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys USA, Inc.

10.     "<u>ITA</u>" means Imerys Talc America, Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Talc America, Inc.

11.     "<u>ITC</u>" means Imerys Talc Canada Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Talc Canada Inc.

12.     "<u>ITV</u>" means Imerys Talc Vermont, Inc. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Talc Vermont, Inc.

13.     "<u>ITI</u>" means Imerys Talc Italy, S.P.A. and any of its attorneys, representatives, consultants, advisors, or anyone acting on behalf of Imerys Talc Italy, S.P.A.

14.     "<u>Non-Debtor Affiliates</u>" means any and all Affiliates of any Debtor other than Imerys S.A. or one of the other Debtors.

15.     "<u>Picard Declaration</u>" means the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 10] (the "**Picard Declaration**").

16.     "<u>Relating</u>" means concerning, referring to, describing, evidencing, or constituting.

17.     "<u>TCC</u>" means the Official Committee of Tort Claimants appointed in these Chapter 11 Cases, including its individual members and any attorneys, representatives, consultants, advisors or anyone acting on the Official Committee of Tort Claimants' behalf.

18.     "<u>Unidentified Imerys Talc Oversight Entity</u>" means the entity that—as described by Alexandra Picard at the April 25, 2019 Meeting of Creditors under section 341(a) of the Bankruptcy Code—sat in Paris and exercised oversight of Imerys Group's worldwide talc operations until November 2018.

## II.    <u>INSTRUCTIONS</u>

The preceding definitions apply to the following instructions and each of the succeeding requests:

1.    The terms used in the Requests are to be given their most expansive and inclusive interpretation unless otherwise expressly limited in a Request. This includes, without limitation, the following:

    a.    Construing "and" and "or" in the disjunctive or conjunctive as necessary to make a request more inclusive;

    b.    Construing the singular form of a word to include the plural and the plural to include the singular;

    c.    Construing the term "among" to mean between or among;

    d.    Construing the term "any" to mean any, all, each, and every;

    e.    Construing the masculine, feminine, or neutral pronouns to include all genders; and

    f.    Construing the present tense of a verb to include its past tense and vice versa.

2.    You are required to obtain and furnish all Documents available to You and to any of Your representatives, agents, employees, or attorneys, and to obtain and furnish all Documents that are in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees, accountants, or attorneys.

3.    These Requests are continuing in nature and, to the extent that Your responses may be enlarged, diminished, or otherwise modified by information acquired after your initial responses to these Requests, You are required to promptly supplement Your initial responses in writing reflecting such changes, and to produce any additional Documents, to the fullest extent required by any applicable law or rule.

4.    If any Documents were formerly in your possession, custody, or control, and have been lost, destroyed, or otherwise disposed of, then You are required to furnish a list that identifies all Documents that have been lost, destroyed, or otherwise disposed of, and that states for all Documents:

    a.    The nature of the Documents (*e.g.*, letter, memorandum, etc.);

    b.    The size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

c. The subject matter of the Documents;

d. The persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

e. The date on which the Documents were prepared or transmitted; and

f. The date on which the Documents were lost, destroyed, or otherwise disposed of, the conditions of and reasons for such destruction or other disposition, and the persons requesting and performing the destruction or other disposition.

5. For each of the Documents withheld on the ground of any privilege or immunity, You are required to furnish a list that identifies each of the Documents that have been withheld, and that states for each of the Documents:

a. The nature of the Documents (*e.g.*, letter, memorandum, etc.);

b. The size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

c. The subject matter of the Documents;

d. The persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

e. Each person having a copy of the Documents, each person to whom a copy was sent, and each person by whom a copy was received;

f. The date on which the Documents were prepared or transmitted; and

g. The nature of the privilege or immunity claimed and the basis for claiming the privilege or immunity.

6. If any portion of any Document is responsive to these Requests, the entirety of the Document shall be produced. Moreover, if only a part of any Document is protected by any privilege or immunity, the Document shall be produced with only the privileged matter redacted.

7. All Documents shall be produced as they are kept in the ordinary course of business. The name of the file from which they were produced, the identity of the person from whose file they were produced, and the identity of the present custodian of that file shall each be set forth.

8. All financial data shall be produced in native format to the extent available.

9. All Documents, except financial data as described in Instruction 8, shall be provided as a PDF with optical character recognition.

10. All Documents shall be produced in the order in which they are found in a person's files, and shall not be rearranged. If the Documents are kept in a file with a file label, a copy of that label shall be produced together with the other Documents, Communications, or other materials in the file.

11. Nothing set forth herein shall constitute or be deemed an admission or a waiver of any kind with respect to any defense or objection regarding the admissibility or relevance of any Documents produced in response to these Requests.

12. Unless otherwise stated, these Requests seek information from January 1, 2011 through the present.

## III.    DOCUMENT REQUESTS

In accordance with the foregoing Definitions and Instructions, please produce the following documents:

1. Documents sufficient to describe in detail the corporate structure of Imerys Group including but not limited to, a complete corporate organizational chart.

2. Documents sufficient to identify the entity defined herein as the Unidentified Imerys Talc Oversight Entity.

3. All Documents and Communications relating to the formation, incorporation, or corporate by-laws, including any amendments thereto, of the following entities:

   a.    Imerys USA;

   b.    Imerys Minerals;

   c.    Unidentified Imerys Talc Oversight Entity;

   d.    ITI;

   e.    ITA;

   f.    ITV; and

   g.    ITC.

4. All Documents and Communications relating to the acquisition of the assets and/or liabilities of the following entities:

   a.    Luzenac America, Inc.;

   b.    Windsor Minerals, Inc.; and

   c.    Luzenac, Inc.

7

5.      All Documents and Communications between You, including but not limited to, Your officers, directors, and executive personnel, and the below-listed entities, including but not limited to, their officers, directors, and executive personnel (as applicable), relating to talc operations, including but not limited to, mining, processing, shipping, contents, and quality:

      a.      Imerys S.A.;

      b.      Imerys Minerals;

      c.      Unidentified Imerys Talc Oversight Entity;

      d.      ITI;

      e.      ITA;

      f.      ITV;

      g.      ITC;

      h.      The TCC; and

      i.      The FCR.

6.      All Documents and Communications between You and the below-listed entities relating to Talc Personal Injury Claims, including but not limited to, analyses, models, estimates, or projections relating to the projected or estimated monetary exposure thereto:

      a.      Imerys S.A.;

      b.      Imerys Minerals;

      c.      Unidentified Imerys Talc Oversight Entity;

      d.      ITI;

      e.      ITA;

      f.      ITV;

      g.      ITC;

      h.      The TCC; and

      i.      The FCR.

7.      All Documents and Communications relating to any settlement, termination, satisfaction, or resolution of any Talc Personal Injury Claim against the Debtors,

Imerys S.A., or the Non-Debtor Affiliates, including but not limited to, requests to approve such settlement, termination, satisfaction, or resolution, or notice thereof.

8.      Documents sufficient to identify the directors, officers, and other executive personnel, as well as the number of employees, of the below-listed entities from their inception to present:

     a.      Imerys S.A.;

     b.      Imerys USA;

     c.      Imerys Minerals;

     d.      Unidentified Imerys Talc Oversight Entity;

     e.      ITI;

     f.      ITA;

     g.      ITV; and

     h.      ITC.

9.      Documents sufficient to show all individuals who are or have ever simultaneously been employees, officers or directors of more than one of the following entities or any of their subsidiaries, sister companies, or subsidiaries of sister companies:

     a.      Imerys S.A.;

     b.      Imerys USA;

     c.      Imerys Minerals;

     d.      Unidentified Imerys Talc Oversight Entity;

     e.      ITI;

     f.      ITA;

     g.      ITV; and

     a.      ITC.

10.     Any board materials, including but not limited to, minutes, presentations, business analyses, and reports relating to the talc operations of the below-listed entities:

     a.      Imerys USA;

     b.      Imerys Minerals;

    c.     Unidentified Imerys Talc Oversight Entity;

    d.     ITI;

    e.     ITA;

    f.     ITV; and

    g.     ITC.

11.    Any board materials, including but not limited to, minutes, presentations, business analyses, and reports, relating to any transactions entered into by the following entities:

    a.     Imerys S.A.;

    b.     Imerys USA;

    c.     Imerys Minerals;

    d.     Unidentified Imerys Talc Oversight Entity;

    e.     ITI;

    f.     ITA;

    g.     ITV; and

    h.     ITC.

12.    All Documents and Communications relating to the capitalization, at inception, of the following entities:

    a.     Imerys USA;

    b.     Imerys Minerals;

    c.     Unidentified Imerys Talc Oversight Entity;

    d.     ITI;

    e.     ITA;

    f.     ITV; and

    g.     ITC.

13.    All Documents and Communications relating to any transfer of any assets, including but not limited to, cash, cash equivalents, debt or equity instruments, and

any other tangible or intangible asset, or loans, between You and the following entities (in either direction) from their inception to present:

    a.    Imerys S.A.;

    b.    Imerys Minerals;

    c.    Unidentified Imerys Talc Oversight Entity;

    d.    ITI;

    e.    ITA;

    f.    ITV; and

    g.    ITC.

14.    All Documents and Communications relating to You satisfying the obligations, financial or otherwise, of the below-listed entities:

    a.    Imerys S.A.;

    b.    Imerys Minerals;

    c.    Unidentified Imerys Talc Oversight Entity;

    d.    ITI;

    e.    ITA;

    f.    ITV; and

    g.    ITC.

15.    All Documents and Communications relating to any of the below-listed entities satisfying Your obligations, financial or otherwise:

    a.    Imerys S.A.;

    b.    Imerys Minerals;

    c.    Unidentified Imerys Talc Oversight Entity;

    d.    ITI;

    e.    ITA;

    f.    ITV; and

g.    ITC.

16.    All Documents and Communications relating to the operation of any mine from which talc was supplied to a third party, including but not limited to, J&J.

17.    All Documents and Communications relating to talc sold by any Imerys Group entity to a third party, including but not limited to, J&J.

18.    All Documents and Communications between You and J&J relating to analyzing the contents of talc.

Dated: October 16, 2020            FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Patrick A. Jackson*
Brett D. Fallon (Del. Bar No. 2480)
Patrick A. Jackson (Del. Bar No. 4976)
222 Delaware Ave., Ste. 1410
Wilmington, Delaware 19801
Telephone: (302) 467-4210
Facsimile: (302) 651-7701
Brett.Fallon@faegredrinker.com
Patrick.Jackson@faegredrinker.com

-and-

WEIL, GOTSHAL & MANGES LLP
Diane P. Sullivan (*pro hac vice*)
Ronit J. Berkovich (*pro hac vice*)
Theodore E. Tsekerides (*pro hac vice*)
Konrad L. Cailteux (*pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Johnson & Johnson*
*and Johnson & Johnson Consumer Inc.*

14