

**WILMINGTON**
RODNEY SQUARE

**NEW YORK**
ROCKEFELLER CENTER

**Kevin A. Guerke**
P 302.571.6616
F 302.576.3403
kguerke@ycst.com

October 30, 2020

**BY EMAIL/ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court
For the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:    <u>In re: Imerys Talc America, Inc. et al., Case No. 19-10289 (LSS)</u>

Dear Judge Silverstein:

We write on behalf of James L. Patton, Jr., the legal representative for future talc personal injury claimants (the "<u>FCR</u>"), in response to the discovery letter filed on October 23, 2020 by Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "<u>J&J</u>") [Docket No. 2394].

**<u>Duplication is an Appropriate Objection</u>**

The FCR agrees with J&J that "transparency and disclosure are hallmarks of bankruptcy proceedings," but discovery in furtherance of these hallmarks must be appropriately tailored and proportional to the needs of the case. Here, J&J has demanded, among other things, that the FCR produce all documents and communications related to fifty-eight (58) vague categories, almost all of which are privileged. J&J's requests overlap with requests J&J made to the Debtors and TCC. Every dollar that the FCR and TCC spend on discovery is borne by the estate, and talc claimants are therefore the ultimate victims of burdensome and duplicative discovery requests.

Mindful of his constituency and the fact that every dollar wasted during the pendency of these cases is one less dollar that can ultimately be funded to a trust, the FCR believes "duplication" is an appropriate objection to J&J's vague, redundant, and voluminous document requests. To the extent J&J narrows its discovery requests so that they are reasonable and appropriately tailored, the FCR is willing to search for responsive, non-privileged documents. Indeed, the FCR has already begun to work with J&J in this regard. The FCR also intends to discuss a categorical privilege log with J&J in conjunction with the ongoing discussions regarding the scope of the discovery requests. However, J&J should not be allowed to serve identical, blanket requests on the Plan Proponents and then complain when the Plan Proponents push back on the basis of cost efficiency and duplication.

**Young Conaway Stargatt & Taylor, LLP**
Rodney Square | 1000 North King Street | Wilmington, DE 19801
P  302.571.6600    F  302.571.1253    YoungConaway.com

27256831.6

Young Conaway Stargatt & Taylor, LLP
The Honorable Laurie Selber Silverstein
October 30, 2020
Page 2

## J&J's Subpoena to Ankura Consulting Group, LLC

On October 22, 2020, J&J served a subpoena upon the FCR's claims evaluation and financial valuation consultant, Ankura Consulting Group, LLC ("Ankura"). Like J&J's other discovery requests to the Plan Proponents, its subpoena to Ankura is broad and vague, but its subpoena fails for another reason—Ankura is a consulting expert whose documents, work product, and communications are heavily guarded by the Federal Rules.

Federal Rule of Civil Procedure 26(b)(4) identifies two types of experts: testifying and consulting. An opposing party may discover facts known or opinions held by a consulting expert "only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[1] As the Court for the District of Delaware has held, "[c]onsulting expert discovery is much more limited than testifying expert discovery—materials considered by a consulting expert are generally not discoverable."[2] This general protection of consulting experts is in line with Third Circuit precedent,[3] and other courts have construed 26(b)(4)(B) as creating a privilege against disclosure.[4]

Here, the FCR retained Ankura to be his claims evaluation and financial valuation consultant, and J&J cannot satisfy either of the two exceptions set forth in Rule 26(b)(4). Rule 35(b) is inapplicable, and J&J can certainly obtain facts and opinions on talc claims elsewhere given its wealth of resources and the abundance of litigation on the subject matter. Ankura should accordingly be afforded Rule 26(b)(4)'s broad protections for consulting experts. If the FCR designates Ankura as a testifying expert, the FCR and Ankura will make the appropriate

---

[1] Fed. R. Civ. P. 26(b)(4).

[2] *Ansell Healthcare Prod. LLC v. Reckitt Benckiser LLC*, No. 15-CV-915-RGA, 2017 WL 6328149, at *2 (D. Del. Dec. 11, 2017); *see also Employees Committed for J. v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008) ("When an expert is retained as a litigation consultant, however, materials reviewed or generated by the expert are generally privileged and immune from disclosure."); *Plymovent Corp. v. Air Tech. Sols., Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007) ("Rule 26(b)(4)(B) thus creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances.").

[3] *See In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 665 n.7 (3d Cir. 2003) ("[Rule 26(b)(4)] precludes discovery against an expert informally consulted in preparation for trial. Fed.R.Civ.P. 26(b)(4), Advisory Comm. Notes, 1970 Amendment. Under this rule, a party 'may discover facts known or opinions held by an expert who has been retained or specially employed . . . upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.' Fed.R.Civ.P. 26(b)(4)(B). Once such a showing is made, a court, before ordering discovery, must analyze the policy considerations underlying the rule to determine whether they outweigh the exceptional circumstances. Moore's Federal Practice § 26.80[2], at 26–236.5 (citing the policy consideration of 'allowing counsel to obtain the expert advice they need to properly evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the discovery mill')").

[4] *Plymovent Corp.*, 243 F.R.D. at 143 (citing *FMC Corp. v. Vendo Co.*, 196 F.Supp.2d 1023, 1044 (E.D.Cal.2002) (describing the rule's protection as "the free consultation privilege"); *Texas Lawyers Ins. Exchange v. Resolution Trust Corp.*, 822 F.Supp. 380, 382 (W.D.Tex.1993) ("the consultant witness privilege"); *Dayton–Phoenix Group, Inc. v. General Motors Corp.*, 1997 WL 1764760 at *1, n. 2 (S.D.Ohio Feb. 19, 1997) ("Rule 26(b)(4)(B) is a specialized application of the work product doctrine."))

Young Conaway Stargatt & Taylor, LLP
The Honorable Laurie Selber Silverstein
October 30, 2020
Page 3

disclosures on a schedule agreed to by the parties or ordered by the Court, but the FCR currently has no intention of calling Ankura as a testifying expert.

## J&J Lacks Standing to Contest Confirmation

J&J's prepetition rights and obligations are unaffected here because the Debtors' plan of reorganization (as may be amended, the "Plan") is "indemnity neutral," and J&J will be in the same position after confirmation that it was in prior to the Debtors' bankruptcy. Section 11.5 of the Plan makes this clear by affirming that nothing contained in the Plan "shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying the J&J Indemnification Rights and Obligations."[5] Like insurers in "insurance neutral" plans that leave prepetition rights and obligations unaffected, J&J does not possess standing to contest the Plan's confirmation.[6] Without standing, J&J has no basis to seek discovery from the Plan Proponents.[7] To the extent disputes exist regarding J&J's indemnification rights and obligations, they will be resolved post-effective date, and the trust will implement the outcome pursuant to the applicable trust documents.[8]

## Settlement and Claims Data

The FCR adopts and incorporates by reference the TCC and Debtors' arguments in response to J&J's letter addressing settlement and claims data.

Respectfully Submitted,

*/s/ Kevin A. Guerke*

Kevin A. Guerke

---

[5] *See* Plan § 11.5.1.

[6] *See In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 379–81 (3d Cir. 2012) (holding that unless the creation of a trust "staggeringly increases insurers' risk and exposure," courts will generally not afford insurers standing because doing so would grant them "powerful leverage that may amount to a de facto veto over the reorganization proceeding."); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 218 (3d Cir. 2004), *as amended* (Feb. 23, 2005); *see also In re Thorpe Insulation Co.*, 677 F.3d 869, 887 (9th Cir. 2012) (holding that whether an insurer has bankruptcy standing turns on whether the proposed plan is "insurance neutral").

[7] *See In re Flintkote Co.*, 486 B.R. 99, 110 (Bankr. D. Del. 2012), *aff'd*, 526 B.R. 515 (D. Del. 2014).

[8] *See Debtors' Omnibus Reply In Support Of Motion For Entry Of Order (I) Approving Disclosure Statement And Form And Manner Of Notice Of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form And Manner Of Notice To Attorneys And Certified Plan Solicitation Directive, (IV) Approving Form Of Ballots, (V) Approving Form, Manner, And Scope Of Confirmation Notices, (VI) Establishing Certain Deadlines In Connection With Approval Of Disclosure Statement And Confirmation Of Plan, And (Vii) Granting Related Relief* at ¶ 35 [Docket No. 2293].

27256831.6