## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------- x
                 :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | : | Case No. 19-10289 (LSS) |
| | : | |
| Debtors. | : | **Hearing Date: November 16, 2020 at 10:00 a.m. ET** |
| | : | |
| | : | **Ref. Docket Nos. 2459** |

---------------------------------------------------- x

### DECLARATION OF KEVIN P. COLLINS, CFA IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

I, Kevin P. Collins, CFA, pursuant to 28 U.S.C. § 1764, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a finance and management professional and Member of The Old Hill Company LLC. I have more than forty years of experience in investment analysis, commercial banking, investment banking, and corporate governance, and serve as the independent director of Imerys Talc America, Inc., Imerys Talc Vermont, Inc. and Imerys Talc Canada Inc., as debtors and debtors in possession (collectively, "**Imerys**" or the "**Debtors**"). I submit this declaration (the "**Declaration**") in support of the *Motion of Debtors for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative*

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

*Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 2459] (the "**DIP Motion**").[2]

2.      Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents, information provided to me by members of the Debtors' management or their advisors, or my opinion based on my experience, knowledge, and information concerning the operations of the Debtors and their industry.  I am generally familiar with the material terms of the DIP Facility.  If called upon to testify, then I would testify competently to the facts set forth in this Declaration.

3.      I have served as an independent manager or director on 11 boards.  I joined each of the Debtors' boards of directors (collectively, the "**Board**") in October 2018.  I also currently serve as the independent director on the board of directors of an affiliate of the Debtors, Imerys Talc Italy S.p.A. ("**ITI**").  I had no prior affiliation with the Debtors, and other than serving as an independent director of the Debtors' Board and the board of ITI, I hold no other positions with the Debtors or any of their affiliates more broadly.  In particular, I have no role or affiliation with the DIP Facility Lender.

4.      In connection with the above-captioned cases (the "**Chapter 11 Cases**") and my role on the Board, I have received bi-weekly updates regarding the Debtors' financial situation and liquidity needs.  In connection with those updates, in July 2020, it became clear that the Debtors would need to secure postpetition financing in order to fund the Debtors' business and satisfy working capital needs and other expenses to ensure the successful resolution of these Chapter 11 Cases.  In light of the Debtors' immediate liquidity needs (which are addressed in detail in the DIP Motion and the DIP Declaration), on July 30, 2020, the Board approved the Debtors' efforts to

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Motion.

explore postposition financing options that would create the certainty with respect to cash flows necessary for the administration of the Chapter 11 Cases through the sale process and confirmation.

5.      As part of exploring the Debtors' options, I received regular updates on the status and progress of matters relating to postpetition financing.  At the direction of the Board, the Debtors engaged in discussions regarding postpetition financing with the DIP Facility Lender, their ultimate corporate parent, which agreed to provide the Debtors with postpetition financing of up to $30 million to fund the administration of the Chapter 11 Cases, post-Effective Date costs, and the Debtors' general corporate and business operations.  The Debtors also engaged in discussions with Ducera Partners LLC, the investment banker representing the Tort Claimants' Committee ("**TCC**"), regarding potential solicitation of financing proposals from third-party lenders.

6.      In consultation with their advisors, and after consultation with the TCC and the FCR, the Debtors concluded that entry into the DIP Facility negotiated with the DIP Facility Lender was in the best interest of their estates, including because the terms of the DIP Facility are more favorable than the terms the Debtors could expect to be able to secure in the general financing market.  Specifically, the DIP Facility is being offered to the Debtors without requiring payment of customary lender and facility fees, such as upfront fees and commitment fees, and on a potentially interest-free basis if the Debtors comply with the DIP Milestones.  The DIP Facility will also provide the Debtors with the required liquidity on an accelerated basis given the DIP Facility Lender's intimate familiarity with the Debtors' business and the unique circumstances of these Chapter 11 Cases, which allows the Debtors to avoid the time and expense of due diligence and additional professional fees associated with a third-party lender proposal.

7.      Despite the fact that the DIP Facility Lender is an affiliate of the Debtors, I believe the DIP Facility is the result of good faith and arm's-length negotiations between the Debtors and

the DIP Facility Lender.  For purposes of negotiating the terms of the DIP Facility, the Debtors and the DIP Facility Lender were represented by separate counsel—Latham & Watkins LLP for the Debtors and Hughes Hubbard & Reed LLP for the DIP Facility Lender.  Based on all information available to me and in consultation with the Debtors' advisors, I believe the terms of the DIP Facility are fair and reasonable.  The TCC and the FCR also were involved in negotiations related to the DIP Facility and I understand they approve of the terms of the DIP Facility.  Ultimately, after careful consideration and in consultation with the Debtors' advisors, on October 13, 2020, the Board unanimously approved the Debtors' entry into the proposed DIP Facility on substantially the same terms as presented to the Board, subject to further negotiations, and to pursue a third-party financing proposal to the extent an agreement could not be reached with the DIP Facility Lender on the remaining DIP Facility terms.

8.     Based upon my experience and review of the Debtors' current financial situation, I believe that the DIP Facility presents the best available financing option for the Debtors.  As discussed in greater detail above, the DIP Facility will enable the Debtors to obtain the requisite financing on an expedited and potentially interest-free basis and without the incursion of fees typical in third-party lending transactions.  It is my belief that the Debtors' entry into the DIP Facility is an exercise of the Debtors' sound business judgment, which will give the Debtors the ability to consummate the transactions contemplated under the Plan.  It further is my belief that the terms and conditions of the DIP Facility, which were negotiated in good faith and at arm's-length by separate counsel and approved by the TCC and FCR, as well as the Debtors' Board, are entirely fair under the circumstances and could not be replicated in the general financing market.

RLF1 24309156v.1

9.      For all the reasons described herein and as set forth in the DIP Motion, I believe that the approval of the DIP Facility is in the best interests of the Debtors' estates, is entirely fair, and that the Court should grant the relief requested in the DIP Motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of November 2020.

_/s/ Kevin P. Collins_
Kevin P. Collins, CFA