### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------------ | x | |
| In re: | : | Chapter 11 |
| | : | |
| IMERYS TALC AMERICA, INC., *et al.*, | : | Case No. 19-10289 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| ------------------------------------------------------------ | x | **Re: Docket Nos: 805, 1173, 1484** |

### MEMORANDUM ON COMBINED FIRST INTERIM FEE APPLICATION REQUEST OF JAMES L. PATTON, JR. AS THE LEGAL REPRESENTATIVE FOR FUTURE TALC PERSONAL INJURY CLAIMANTS AND YOUNG CONAWAY STARGATT & TAYLOR, LLP AS COUNSEL TO THE LEGAL REPRESENTATIVE FOR FUTURE TALC PERSONAL INJURY CLAIMANTS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM FEBRUARY 13, 2019 THROUGH MAY 31, 2019

On June 3, 2019, I entered an order appointing James L. Patton, Jr. to serve as the representative for demand holders in these bankruptcy cases. The appointment was made after a contested hearing in which I took evidence and heard argument from multiple parties, including Debtors, the Office of the United States Trustee, the Official Committee of Tort Claimants and those Certain Excess Insurers.

Mr. Patton's law firm, Young Conaway Stargatt & Taylor, LLP ("YCST"), participated at that hearing and the proceedings leading up to it on Mr. Patton's behalf. In their first combined interim fee application, Mr. Patton and YCST seek compensation from the estate for their time in that endeavor. At a hearing on that fee application, I expressed the view that those fees might not be compensable from the bankruptcy estates and asked for supplemental briefing. Having reviewed the supplemental briefing and considered the issue, I now conclude that fees and expenses incurred by Mr. Patton in his quest to become the

future claimants' representative do not benefit the bankruptcy estates. Accordingly, to that extent, the fee application is denied.

## Background

Imerys Talc America, Inc. and certain affiliated entities ("Debtors")[1] filed their bankruptcy cases on February 13, 2019. Two weeks later, on February 27, 2019, Debtors filed their motion to appoint Mr. Patton as the legal representative for future talc personal injury claimants ("Debtor Motion")[2] pursuant to § 524(g) of the United States Bankruptcy Code ("Bankruptcy Code"). At the March 25 hearing on the Debtor Motion, I was informed that Debtors and the United States Trustee ("UST") agreed to an adjournment of the hearing to April 26 with a response deadline of April 10. The UST also informed me that he might propose other candidates for the position which led Debtors to state that they would conduct interviews or mini depositions of those candidates.

On April 10, 2019, the UST filed an objection[3] to the Debtor Motion and also filed his own, separate motion to appoint a legal representative ("UST Motion").[4] In the UST Motion, the UST did not propose a particular candidate or propose a particular process. Rather, the UST simply requested that I permit other parties-in-interest to nominate alternative candidates as part of a "collective proceeding." On April 10, the Certain Excess Insurers filed an objection to the Debtor Motion and also sought to postpone the hearing

---

[1] Debtors are: Imerys Talc America, Inc., Imerys Talc Vermont, Inc. and Imerys Talc Canada Inc.
[2] Debtors' Mot. for Order Appointing James L. Patton, Jr., as Legal Representative for Future Talc Personal Injury Claimants, *Nunc Pro Tunc* to the Petition Date, D.I. 100.
[3] United States Trustee's Obj. to Debtors' Mot. for Entry of an Order Appointing James L. Patton, Jr., as Legal Representative for Future Talc Personal Injury Claimants, *Nunc Pro Tunc* to the Petition Date, D.I. 347.
[4] Mot. of the United States Trustee to Appoint a Legal Representative for Future Talc Personal Injury Claimants, D.I. 348.

pending discovery. Debtors and the Official Committee of Tort Claimants filed separate

replies in support of the Debtor Motion and in opposition to the UST Motion.[5]

I held the April 26 hearing on both the Debtor Motion and the UST Motion. Mr.

Patton testified and certain documents were admitted into evidence. I heard argument on

various issues, including the UST's request for a collective process, and took the matter

under advisement. On May 7, 2019, I ruled from the bench ("Bench Ruling").[6] In my

Bench Ruling I found the process sufficient, ruled on the appropriate standard for

appointment and required certain additional disclosures from Mr. Patton. After the

additional disclosures were made[7] and I rejected a subsequently filed conflict objection,[8] I

entered an Order appointing Mr. Patton as the legal representative for demand holders.[9]

The UST Motion was denied.[10]

---

[5] Official Committee of Tort Claimants' Omnibus (I) Reply in Supp. of the Debtors' Mot. for Entry of an Order Appointing James L. Patton, Jr. as Legal Representative for Future Talc Personal Injury Claimants and (II) Response in Opp. to the Mot. of the United States Trustee to Appoint a Legal Representative for Future Talc Personal Injury Claimants, D.I. 410; Debtors' (I) Reply in Supp. of the Debtors' Mot. for Order Appointing James L. Patton, Jr. as Legal Representative for Future Talc Personal Injury Claimants, *Nunc Pro Tunc* to the Petition Date and (II) Obj. to the Mot. of the United States Trustee to Appoint a Legal Representative for Future Talc Personal Injury Claimants, D.I. 413.

[6] I subsequently cleaned up the Bench Ruling and it was filed on the docket. Bench Ruling on Mot. to Appoint James L. Patton, Jr. as the Legal Representative for Future Talc Personal Injury Claimants, D.I. 503.

[7] Suppl. Decl. of James L. Patton, Jr. in Supp. of the Debtors' Mot. for Entry of an Order Appointing James L. Patton, Jr., as Legal Representative for Future Talc Personal Injury Claimants, *Nunc Pro Tunc* to the Petition Date, D.I. 527; Suppl. Decl. (Second) of James L. Patton, Jr. in Supp. of the Debtors' Mot. for Entry of an Order Appointing James L. Patton, Jr., as Legal Representative for Future Talc Personal Injury Claimants, *Nunc Pro Tunc* to the Petition Date, D.I. 554.

[8] Cyprus Historical Excess Insurers Suppl. Obj. to Debtor's Proposed Form of Order Appointing James L. Patton as Future Claimants Representative, D.I. 571; Court's Letter Ruling, D.I. 636.

[9] Order Appointing James L. Patton, Jr., as Legal Representative for Future Talc Personal Injury Claimants, *Nunc Pro Tunc* to the Petition Date, D.I. 647.

[10] Order Denying Mot. of the United States Trustee to Appoint a Legal Representative, D.I. 648.

On July 15, 2019, Mr. Patton and YCST filed their Combined First Interim Fee Application[11] for the period of February 13, 2019 to May 31, 2019. In it, Mr. Patton and YCST sought a total of $761,932.50 in fees and $7,580.27 in expenses.[12] No objections were filed to the Combined First Interim Fee Application, but the Fee Examiner appointed in these cases raised certain issues and YCST and/or Mr. Patton agreed to reduce their requested compensation by $8,828.[13]

On October 15, 2019, I held a hearing on the first interim fee applications of all professionals retained in these cases. At the hearing I raised, *sua sponte*, the question of whether YCST should be compensated by the estates for time spent in connection with Mr. Patton's appointment. I compared this request to one by a committee member for fees and expenses incurred in attending a formation meeting, which I have previously held are not compensable. Given that I was raising the issue for the first time, I asked YCST to supplement the Combined First Interim Fee Application with any legal authority supporting payment of these fees and expenses. Other than that, I accepted the reduction negotiated with the fee examiner and asked for a revised form of order granting the Combined First Interim Fee Application, on an interim basis, after subtracting the fees and expenses related

---

[11] Combined First Interim Fee Application Request of James L. Patton, Jr. as the Legal Representative for Future Talc Personal Injury Claimants and Young Conaway Stargatt & Taylor, LLP as Counsel to the Legal Representative for Future Talc Personal Injury Claimants for Allowance of Compensation and Reimbursement of Expenses for the Period from February 13, 2019 through May 31, 2019, D.I. 805. The applicants stated that they were submitting a combined fee application to conserve costs because Mr. Patton is a member of YCST. Combined First Interim Fee Application 1.

[12] The aggregate fees and expenses were attributed: (i) YCST: $661,497.50 in fees, $6,207.62 in expenses and (ii) Mr. Patton: $100,435 in fees and $1,372.65 in expenses. *Id.*

[13] Fee Examiner's Final Report on the First Interim Fee Application of Young Conaway Stargatt & Taylor, LLP as Counsel to the Legal Representative for Future Talc Claimants for Allowance of Compensation and Reimbursement of Expenses for the Period from February 13, 2019 through May 31, 2019, D.I. 1111.

4

to Mr. Patton's appointment.[14]  On October 18, 2019, an Order was entered approving the

Combined First Interim Fee Application, less the agreed to reduction of $8,828 and

$232,471.50 identified by YCST as fees incurred in connection with the appointment

process.[15]

YCST filed its supplement to the Combined First Interim Fee Application on

February 19, 2020.[16]  In it, YCST argues that the services provided by YCST to Mr. Patton

in his pursuit of appointment as the future claimants' representative are "actual" and

"necessary" as those terms are used in § 330 of the Bankruptcy Code as "they were based

upon Young Conaway's special expertise in the appointment process of future claimants'

representatives and could only have been rendered prior to the appointment."[17]  YCST's

arguments boil down to:

> ➤ Because Mr. Patton served in the role of representative for future demand
> holders prepetition, his appointment postpetition protected the interests of the
> futures constituency.[18]

---

[14] Tr., D.I. 1166.

[15] First Omnibus Order Awarding Interim Allowance and Compensation for Services Rendered and for Reimbursement of Expenses, D.I. 1173.

[16] Suppl. to Combined First Interim Fee Application Request of James L. Patton, Jr. as the Legal Representative for Future Talc Personal Injury Claimants and Young Conaway Stargatt & Taylor, LLP as Counsel to the Legal Representative for Future Talc Personal Injury Claimants for Allowance of Compensation and Reimbursement of Expenses for the Period from February 13, 2019 through May 31, 2019 ("Supplement"), D.I. 1484.

[17] *Id.* 3.

[18]        Mr. Patton had already served as the prepetition fiduciary of the future claimants of Imerys, and retention of him in that role was integral to protecting the interests of that constituency.  Preserving Mr. Patton as the FCR provided a material benefit to the estate, namely that of maintaining the pre-petition knowledge that Mr. Patton and Young Conaway had acquired about the Debtors and the circumstances leading to these cases, and facilitating continuity of representation of the class of creditors consisting of the future claimants so that they would not be at a disadvantage as the bankruptcy cases and negotiations toward a consensual plan of reorganization commenced.
Supplement 4.
        In supporting the Debtors' motion to appoint him as the FCR, Mr. Patton was acting as the proposed fiduciary for future claimants and not out of any personal or self-interest. With Mr. Patton having already been serving as the fiduciary for the future

> ➢ Because of its long-standing experience in the space, YCST is "unique[ly] equipped" to provide assistance to Debtors in supporting their motion to appoint Mr. Patton as the future claimants' representative.[19]

> ➢ YCST was instrumental in overcoming the UST's newly-formed position in this and multiple cases across the country challenging the process for appointment of a claimants' representative and proposing other nominees.

> ➢ Mr. Patton was required to respond and supplement his disclosures on discrete issues and attend the evidentiary hearing. YCST conducted Mr. Patton's direct testimony and presented argument.

YCST also attached to its Supplement filings from six bankruptcy cases in which fees were awarded, presumably for such services.[20] Finally, YCST distinguished Mr. Patton's role as a future claimants' representative from a committee member's role arguing that while

---

claimants, it was in the interests of the future claimants to have the same fiduciary retained, thereby maintaining the continuity of representation by a knowledgeable and highly experienced fiduciary. Accordingly, the Pre-Appointment Services were rendered by the proposed FCR in performance of his duties as a fiduciary to serve the interests of the future claimants, and not for the purpose of advancing any personal interest of Mr. Patton.
Supplement 9.

[19]    Young Conaway supplemented the Debtors' services in support of the motion, providing input on strategy and precedent that Young Conaway was uniquely equipped to provide. The alternative would have been for the Debtors' counsel to provide all the services in support of the motion; while Debtors' counsel is ably qualified, the Debtors would not have had the benefit of Young Conaway's unique experience and expertise. It was more economical for Young Conaway to provide a portion of the services in support of the motion when billing rates are considered, and also more efficient when experience and expertise are considered. Young Conaway was uniquely qualified to provide insight and analysis in support of the Debtors' motion to appoint the FCR. Young Conaway is a preeminent firm in this field, having represented future claimants' representatives in nearly 30 matters. That deep experience and expertise is one reason why the Debtors sought to engage Mr. Patton and Young Conaway. The Debtors and their estates benefited from calling upon Young Conaway's previous experience in successfully overcoming objections to appointment of a proposed future claimants' representative.
Supplement 5.
[20] Supplement Exs. A-R. These exhibits include retention applications, fee applications, orders approving of same and a hearing transcript.

creditors serving on official committees advance that creditor's personal interest, Mr. Patton has no personal interest to advance by serving as the future claimants' representative.[21]

*Discussion*

In my Bench Ruling, I explored the origins of the court-developed position of future claimants' representative as well as its codification in the Bankruptcy Code in connection with my consideration of the proper standard for the appointment of a representative under § 524(g). As I noted then, the Bankruptcy Code does not expressly provide a process for the selection of the representative or the applicable standard. To those observations, I now add that the Bankruptcy Code does not specifically provide for the compensation of the representative or his counsel.

But, as with the appropriate standard, the seminal cases give guidance as to retention of professionals and thus compensation of them. The *Johns-Manville*,[22] *UNR*[23] and *Amatex*[24] courts based their respective appointment of a representative for future claimants on the ground that demand holders are parties-in-interest and deserve representation in the bankruptcy case.[25] As a future representative is worthy of a voice in the proceedings, retention of professionals to provide that voice is appropriate, if not critical.[26] Consistent with this theory, I permitted Mr. Patton to retain YCST. But, as neither § 327 nor § 1103

---

[21] *See* Supplement 7–9.

[22] *In re Johns-Manville Corp.*, 52 B.R. 940 (S.D.N.Y. 1985).

[23] *In re UNR Indus., Inc.*, 46 B.R. 671 (Bankr. N.D. Ill. 1985).

[24] *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985).

[25] *Id.* at 1043 ("Terming future claimants parties in interest will permit them to have a voice in proceedings that will vitally affect their interests.").

[26] *Cf. Johns-Manville*, 52 B.R. 943 ("The importance of the future claimants to this reorganization is undeniable, regardless of their status or dischargeability. Given the great importance of having their position adequately represented . . . *it is wholly appropriate to provide for such compensation.*") (emphasis added).

provide for retention of professionals by a future claimants' representative, I granted the request to retain YCST under § 105(a) and § 524(g) of the Bankruptcy Code ("Retention Order").[27]

In the Retention Order, I also provided for compensation to be awarded consistent with § 330 and § 331 of the Bankruptcy Code, the relevant Bankruptcy Rules and orders entered in these cases regarding procedures for interim compensation and reimbursement of expenses of professionals. Although the compensation of a future claimants' representative and his professionals does not fit squarely into a particular statutory section,[28] compensating his professionals fits naturally into the sections of the Bankruptcy Code by which other professionals are compensated.

YCST analyzes its fees and expenses under § 330, but it fails to fully assess the singular context in which it rendered services. Unlike a debtor or an official committee, at the time Mr. Patton retained YCST, Mr. Patton was not an estate representative and he might not ever become one. YCST acknowledges this challenge by explaining that both the Debtor Motion and Mr. Patton's application to retain YCST sought orders effective on a *nunc pro tunc* basis, "the purpose of [which] was to provide assurance to Mr. Patton and Young Conaway that they were able to render services in their proposed capacities while their appointments were pending, thereby facilitating the continuation of diligence and negotiations toward a consensual plan of reorganization, and to seek reasonable compensation for their services."[29] This statement ignores the element of risk inherent in

---

[27] Order Authorizing the Future Claimants' Representative to Retain and Employ Young Conaway Stargatt & Taylor, LLP as his Attorneys, *Nunc Pro Tunc* to the Petition Date, D.I. 669.

[28] Section 330(a)(1) does not expressly provide for compensation or payment of expenses to legal representatives or professional persons they employ.

[29] Supplement 2.

every *nunc pro tunc* retention application filed by a professional, namely, that his retention may not be approved. More importantly, regardless of *nunc pro tunc* approval, the services rendered in the interim must still meet the § 330 standard. The question before me is whether a professional retained by a legal representative candidate can be compensated by the bankruptcy estate for services performed to get him appointed.[30] It is not surprising that YCST did not cite any caselaw directly on point as this appears to be a matter of first impression.[31]

Section 330 permits the court to award reasonable compensation for "actual and necessary" services. In the Supreme Court's *ASARCO* opinion, the Court provides the starting point for a § 330 analysis—the services must benefit the estate or a particular constituency (e.g. an official committee).[32] In *ASARCO*, debtor's counsel was awarded fees under § 330 based on services which indisputably benefitted the bankruptcy estates. Debtors (under new control) appealed the award of attorneys fees and counsel was forced to defend it. Counsel prevailed on appeal and subsequently asked the bankruptcy court to award it fees for its successful work defending its initial fee award.

The Supreme Court's decision ultimately turned on the application of the American Rule in the context of § 330.[33] In its analysis the Court explained that § 330 only permits

---

[30] Arguably, no compensation should be awarded for counsel to a future claimants' representative before the representative is appointed. But, I have already permitted compensation for services unrelated to Mr. Patton's appointment and I will not revisit that decision here. I do note, however, that YCST performed this work at its own risk. If Mr. Patton had not been appointed, it is not clear there would be any basis for awarding compensation for this work.

[31] The orders and other filings attached to the Supplement are unhelpful. None discuss this issue.

[32] *See Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 128–29 (2015).

[33] *ASARCO*, 576 U.S. 126 ("the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise . . . departures from the American Rule only in specific and explicit provisions for the allowance of attorneys' fees under selected statutes . . . they tend to authorize the award of a reasonable attorney's fee, fees, or litigation costs, and usually refer

compensation "in service of" the estate administrator. The Court zeroed in on the actual words of the statute which "specifically" allows "reasonable compensation for *actual, necessary services rendered*" by the applicant.[34] Finding these qualifying words "significant," the Court states that professionals may be compensated for services only if that service is rendered to another and is "disinterested service." The Court concluded that fee litigation could not be described as rendering service to another, much less rendering "disinterested service" to the debtor. Rather, the Court ruled that counsel fees incurred in defending its fee application benefitted *the firm*, not the bankruptcy estates. The Court analogized that "it would be natural to describe a car mechanic's preparation of an itemized bill as part of his 'services' to the customer because it allows a customer to understand—and, if necessary, dispute—his expenses. But it would be less natural to describe a subsequent court battle over the bill as part of the 'services rendered' to the customer."[35]

Applying that standard here, I see no basis to award YCST compensation for work it performed in support of Mr. Patton's appointment. Services rendered on behalf of Mr. Patton to attain his appointment as the future claimants' representative benefit Mr. Patton and his firm, not the estate or demand holders. While YCST argues that Mr. Patton has no personal interest to advance and serves merely as a fiduciary for the interest of future claimants,[36] his personal interest is obvious. The appointment furthers Mr. Patton's

---

to a prevailing party in the context of an adversarial action.") (internal quotation and citations omitted).

[34] *Id.* at 128.

[35] *Id.* at 132.

[36] *See, e.g.*, Supplement 9 ("Mr. Patton had (and still has) no personal interest to advance by serving as the FCR.")

professional career and provides his law firm with a lucrative engagement.[37] Services
performed by YCST for the purpose of his appointment, therefore, advance Mr. Patton's
and YCST's personal interests.

YCST's arguments to the contrary are not persuasive; in essence, they assume the
end result. First, YCST suggests Mr. Patton was the best candidate for the position, so
furthering his candidacy benefitted the estates. This is an argument any candidate could
make. YCST's, Mr. Patton's or even Debtors' view of the best candidate does not support a
finding that the fees and expenses of YCST benefitted the estates. Under the Bankruptcy
Code, the court must determine who is best qualified. A debtor's nominee is not entitled to
any particular deference.[38]

Second, YCST suggests that its assistance in overcoming the UST's positions on the
appointment process and potential alternative nominees benefitted the estates. This
argument is simply a variant of the first and suffers from the same failing. It appears to be
correct that the UST has only recently taken views in court regarding the process for
appointing a legal representative and/or suggested alternative candidates for the position.
But I cannot conclude that opposing the UST's participation or nominee is a benefit to the
estates or to demand holders. In this case, for example, the UST's participation led me to
explore and establish a standard for appointment admittedly different than that which other

---

[37] YCST admits as much despite having generally disclaimed any personal interest in the outcome.
Supplement 10 ("The only potential personal or self-interest derived by Mr. Patton in continuing as
the future claimants' representative is the pecuniary interest of being paid to serve as the FCR.").
[38] *See* Bench Ruling 6 ("I agree with Judge Carey in *Maremont*, that neither more nor less deference
should be given to a candidate simply because he is proposed by a debtor. *Maremont Corp.*, No. 19-
10118 (KJC), Tr. at 100 (Bankr. D. Del. Mar. 8, 2019), D.I. 126. And, I would add that there
should be neither more nor less deference given to a candidate proposed by any movant."); *id.* at 11
("[W]hile it seems apparent that any person retained prepetition as the legal representative has a leg
up in the post-bankruptcy appointment process, there is no guarantee.").

courts have used over the years.[39]  Further, a representative will be appointed in every case where one is required; opposing the UST's nominee or proposed process is not a benefit to the estates.

Third, YCST seeks fees for preparing Mr. Patton for the hearing, preparing for argument and assisting Mr. Patton in supplementing his disclosures on discrete issues. While hearing preparation may have been necessary for Mr. Patton's appointment, YCST's assistance may not have been.  Debtors' counsel could have (and did) prepare for and attend the hearing, making argument in support of their motion.  YCST's voluntary assistance, even if helpful to Debtors, was either duplicative, or primarily benefitted Mr. Patton and YCST.[40]

As for supplementing Mr. Patton's disclosures, this work was a necessary part of the appointment process to answer outstanding questions regarding whether Mr. Patton's appointment was appropriate.  These fees and expenses are simply the cost of doing business.  While there was not an alternate candidate vying for the position in this case, these same expenses would be incurred by other candidates, if any, who were not appointed.  This highlights the truism that expenses incurred in the appointment process are for the benefit of the candidate and not the bankruptcy estate.

In my Bench Ruling appointing Mr. Patton, I found a future claimants' representative to be akin to the client in the attorney/client relationship.  Or, in bankruptcy parlance, most like a committee member.  I recently concluded that a committee member is

---

[39] That standard was not the one advanced by YCST.
[40] YCST suggests that its work did not duplicate Latham's work on Debtors' behalf.  Assuming this is a relevant consideration, a review of Latham's fees for the appointment of the claimants' representative does not support that position.

not entitled to be compensated for attending a formation meeting. Expenses incurred in getting appointed are not expenses incurred in the performance of one's duties as a committee member.[41] A creditor that truly believes it can best contribute to the committee may or may not get appointed, but it must pick up its own expenses in the attempt. Similarly, the bankruptcy estate does not pick up the expenses for professionals pitching the committee—even those that get selected.[42] So too, a future claimants' representative must bear the cost associated with getting the job.

The services YCST rendered to Mr. Patton in the appointment process were not services to an estate representative and they were not "disinterested service;" they were services that benefitted Mr. Patton and YCST. Extending the *ASARCO* analogy, the service for which YCST seeks compensation is the equivalent of a mechanic advocating for the use of its services over those of its competition. This self-advocacy—even if accompanied by a genuine belief in the superiority of one's services—is performed to benefit the mechanic, not the customer.

***Process for Appointment of a Representative for Demand Holders***

Having presided over three appointments in the last year and a half, I have some thoughts on the appointment process. In an attempt to avoid, or at least mitigate, the

---

[41] *See e.g.*, Tr. 12–18, *In re CR Liquidating, Inc., et al.*, No. 19-10210 (Bankr.D.Del. Oct. 16, 2019), D.I. 1054.

[42] *Cf. In re The Fairbanks Co.*, No. 18-41768-pwb (Bankr. N.D. Ga.), July 16, 2019, Tr. 23:25-24:12 ("[THE COURT:] if candidates for future claims representative have to go through this litigious process and have to employ counsel to do it, which I, I've already said, I just reject that proposition. It seems unseemly to me that someone who is proposed to be the candidate thinks we have to litigate about whether I'm gonna be appointed. It's sort of like, it's different obviously, but it's like a beauty show to represent the committee. You go in, you put your stuff together. You, you take your shot and the committee makes a decision. Lawyers don't get paid for that. And so this is a similar process except it has to take place or did take place under this process in Court.").

expense of the process for all parties involved, in future cases before me, any person seeking

to be appointed as a legal representative should file with the court: (i) a fulsome disclosure

of connections, similar to that required under Bankruptcy Rule 2014 and (ii) a

resume/curriculum vitae. Whether and the terms under which any discovery will be

permitted will be the subject of a status conference to discuss the scheduling of the hearing

on the appointment. The status conference will take place as soon as practicable after the

filing of a request to appoint a representative. While parties-in-interest may have a

legitimate interest in the appointment process,[43] it should not be so cumbersome, litigious or

expensive that the process itself dissuades capable candidates or becomes a barrier to entry.

*Conclusion*

My decision today is consistent with the Bankruptcy Code. It also furthers the

process I believe is appropriate for appointing a representative for demand holders and to

some degree levels the playing field at least so far as the expense associated with

appointment is concerned. I decline to award YCST fees for work performed in the

appointment process.

Dated: November 20, 2020

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[43] In my Bench Ruling I observed, as did the *Amatex* and *Johns-Manville* Courts that no party in the case has interests similar to those of the demand holders and indeed others' interests may conflict with that of the legal representative. Bench Ruling 7, 8.