## Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Theodore E. Tsekerides**
+1 (212) 310-8218
theodore.tsekerides@weil.com

December 3, 2020

**BY EMAIL/ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court
For the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

   <u>**Re:**</u>  **In re: Imerys Talc America, Inc. et al., Case No. 19-10289 (LSS)**

Dear Judge Silverstein:

  We write on behalf of Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "J&J") to address the letters submitted by the Debtors, Imerys SA, the FCR, and the TCC in their respective responses [D.I. 2444, 2445, 2446 and 2450] to J&J's discovery disputes [D.I. 2394] and to respond to certain issues raised by the Plan Proponents that were not the subject of our prior meet and confer sessions.

  **<u>Lack of Transparency</u>**

  The Plan Proponents' combined 26 pages of responses to J&J's submission make one thing clear: while the Plan Proponents have been exchanging documents for well over a year and "engaged in months of settlement negotiations beginning in the summer of 2019 and continuing until March 2020," well before they filed the first chapter 11 plan (D.I. 2450, p.2, n.1), their refusal to share these key materials with J&J is unreasonable. Indeed, even though none of these previously exchanged materials would be privileged, the Debtors and Imerys SA have produced only a paltry number of emails, notwithstanding the admittedly extensive negotiations. And while the TCC and FCR have in the past few weeks partially reversed course and indicated that they will produce *some* documents to J&J, given statements by the TCC that the production will be small, it is likely that they will hide behind the same overly aggressive assertions of privilege that the Debtors have relied upon. See D.I. 2394, p.5-6. The strategy for the Plan Proponents is simple: deny J&J access to the documents it needs to demonstrate that the Plan is the product of a bad-faith effort to improperly and unlawfully foist as much liability as possible on J&J for the Talc Personal Injury Claims at the center of these Chapter 11 Cases.

  Similarly, the TCC and FCR's claims that J&J lacks standing to pursue any discovery [D.I. 2446, p.3; 2450, p.4] are an apparent attempt by these Plan Proponents to muzzle J&J (while continuing to seek its money) so that J&J cannot continue to expose the weaknesses in their proposed Plan, including that it reflects the Debtors' complete and collusive abdication of their fiduciary duties solely to obtain a

channeling injunction for Imerys SA, their parent company. As explained below, J&J has standing to obtain discovery and object to the proposed Plan.

### Claims Settlement Information

The Plan Proponents' lack of transparency is perhaps best exemplified by their refusal to produce spreadsheets containing the Debtors' prior talc claim settlements and claims data. As an initial matter, the TCC falsely accuses J&J of misrepresenting what transpired during the meet and confer sessions relating to confidentiality and redaction of the materials. The truth is that the Debtors already informed J&J that the data was anonymized, a point disclosed to the TCC as a reason why it should have no objection to production. The Debtors reiterate this fact in their October 30, 2020 letter, confirming that the data is anonymized. [D.I. 2444, p. 4]. J&J's point was and remains that it is entitled to the same information the Debtors provided to the TCC and FCR so it can analyze the fairness of the proposed claim amounts in the Trust Distribution Procedures ("TDPs"). J&J also made clear it would keep the materials "professional eyes only" in addition to being bound by the protective order in this case.

There is no serious debate that this information is relevant to the contested valuation of claims in the proposed TDPs. In fact, courts regularly look to pre-bankruptcy settlement history to value claims in a mass tort bankruptcy. *See, e.g.*, *In re Specialty Prod. Holding Corp.*, No. BR 10-11779-JKF, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) (considering Debtors' settlement history, small market share, claim history, and percentage of claims paid versus those dismissed or unpaid); *In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133 (D. Del. 2005) (determining claim amounts after evidentiary hearing based on prepetition settlement numbers); *In re Eagle-Picher Indus. Inc.*, 189 B.R. 681 (Bankr. S.D. Ohio 1995) (establishing seven qualitative factors in considering valuation of mass tort claims, including settlement values prior to the bankruptcy filing). The Plan Proponents claim the information in the spreadsheets is not "statistically reliable" and apparently (and suspiciously) has not been used by them and their experts in setting the values in the TDPs [D.I. 2450, p.5, n.2]—likely because the data do not support the values in their TDPs. But that is not a basis to withhold the data from J&J's counsel; to the contrary, the Plan Proponents do not get to unilaterally decide for all parties, all experts, and the Court what is reliable.

The main objection the TCC (and apparently now also the FCR) relies on for blocking disclosure of the Debtors' settlement and claims data is that J&J will obtain a supposed "unfair advantage" in the tort system if it obtains this information. First, there is no such privilege. Second, the argument makes little sense, as Imerys and J&J are different defendants with arguably different exposures. Third, the data does not disclose the underlying plaintiff's case strategy. In addition, J&J as a claimed indemnitor would be entitled to this information under the indemnity agreements with the Debtor. Finally, J&J would also be entitled to this data in the underlying tort cases to determine set off or allocation rights in connection with any verdicts, as even the Plan Proponents concede. [D.I. 2394, p.2-4].

The cases the TCC cites in support of its objection actually undermine its position. For example, even where a heightened showing of relevance is required, it is clear that settlement data are not automatically protected from discovery, but rather turn on the circumstances under which the settlements are sought. *See, e.g.*, *Burlington v. News Corp.*, No. 09-cv-1908, 2015 WL 2070063, *4-5 (E.D. Pa. May

4, 2015) (recognizing that a confidential settlement between parties "does not automatically render it confidential for discovery purposes" but finding that the stated need – determining the amount of an offset of damages – was not yet an issue in the case). Here, the need for this claims data *now*, in the midst of plan discovery, is clear—to determine whether the TDP values bear any relation to Imerys' actual claims valuation/settlement history. The other cases cited by the TCC stand for the same proposition and none recognize either a blanket rule prohibiting production of settlement information nor a rule that any such production would result in an unfair advantage to the defendant. [D.I. 2450, p. 3-4]. J&J simply seeks the same data that the Debtors have already shared with the TCC and FCR.

The Plan Proponents' argument also ignores the fact that by keeping the information professionals' eyes only, J&J itself will not see the information and it is J&J, not its counsel, who has settlement authority in any tort case. In addition, the TCC and FCR have not established that J&J's counsel in these Chapter 11 cases even represent J&J in whatever underlying cases Imerys settled that may be reflected in the spreadsheets. In fact, to our knowledge, no attorney from Weil is involved in any case where a plaintiff has settled with the Debtors. Finally, none of the cases relied on by the TCC stand for the proposition that having access to settlement data would provide a defendant with an "unfair litigation advantage." For example, the *Peiper* case involved an attorney disqualification motion where the attorney representing the plaintiff had previously represented the defendants in other matters—hardly the situation here. The *Optum* case involved independent pharmacies challenging the reimbursements they receive from pharmacy benefit managers. While the Court denied plaintiff's motion to compel discovery, the discovery sought was entirely different from that sought by J&J here. In *Optum*, the plaintiff was seeking highly proprietary information from a competitor. J&J is not seeking any "trade secrets" here. Far from seeking an "unfair advantage," J&J seeks to be placed on equal footing with the Plan Proponents which have freely shared this information among themselves. The only unfair advantage at this juncture is held by the Plan Proponents, all of whom have the settlement and claims data while J&J does not.

### "Duplicative" Discovery/Privilege Logs

J&J is not seeking duplicative production from one Plan Proponent that it has already received from another. But given the low volume of email reflecting plan negotiations produced by the Debtors, J&J cannot agree that the Debtors' production should act as the foundation for all other productions. Perhaps the missing emails are being withheld on alleged privilege grounds, but J&J has no way of knowing that because the Debtors refuse to provide an itemized log and will not provide a count for their categorical log so that these assertions can be tested. Imerys SA has also since provided a categorical log (and the TCC and FCR claim their logs are coming), but that too contains insufficient information from which to properly test privilege assertions. *See* attached log. In addition, if the TCC and FCR were having communications between themselves, without including the Debtors, such communications would obviously not have been included in the Debtors' production. No such communications have been produced to date, even though such communications are highly likely to have occurred and would not be privileged. While the issue of whether any of the asserted privileges are applicable is not before the Court at this time, J&J asks that the Court require the Plan Proponents to provide more specific information with respect to their categorical logs in order to determine if itemized logs are required and to aid the process of determining whether the asserted privileges are appropriate. [D.I. 2394, p.5-6].

**Weil, Gotshal & Manges LLP**

December 3, 2020
Page 4

### J&J's Subpoenas to Experts

The Plan Proponents argue that the subpoenas issued to their experts are premature and improperly seek privileged communications with a consulting expert. Putting aside the fact that there have been no meet and confers regarding the subpoenas, these objections are misplaced. First, claims of prematurity ring hollow. The Plan Proponents will need expert testimony to support their proposed Plan and TDP values and these experts presumably used data from some source to determine the TDP claim values. J&J should be entitled to see that data and the basis for the claim values in the TDPs. Moreover, claiming a subpoena is premature is not a valid basis to quash it. It is ironic that the Plan Proponents claim they want to move quickly towards confirmation, but then refuse to turn over information they know they will have to produce later. As the Federal Rules of Civil Procedure make plain, experts who will testify have to produce the facts and data they considered as well facts and data that came from the party's attorney. Fed. R. Civ. P. 26(a)(2)(B) and (b)(4)(C)(ii). The longer they wait to produce this information, the longer the process will take.

Second, claims of privilege relating to the expert materials are without basis. The subpoenas seek materials that will have to be produced if these experts testify.[1] But even if they do not testify, to the extent any of the experts exchanged materials with other parties or communicated with other parties, these materials and communications would not be privileged. Using request number 8 of the attached subpoena as an example, if the TCC's expert has documents and communications relating to estimates of the number and value of present and future Talc Personal Injury Claims that it prepared and shared with the Debtors' or FCR's experts or representatives, those documents and communications are fair game and should be produced now. The Plan Proponents' letters ignore this point entirely.

### Imerys SA and Imerys USA, Inc.

For its part, Imerys SA claims that it was doing J&J a favor by even responding to J&J's discovery requests. However, it ignores the fact that it (along with Imerys USA, Inc.) is a Plan Proponent and the beneficiary of a proposed channeling injunction and release of claims. Discovery of Imerys SA, and any other non-debtor affiliate like Imerys USA, Inc. that benefits from the proposed Plan, is therefore not limited to "plan discovery" but rightfully includes discovery relating to the claims against these parties that are being released and the amount of the contribution being made in exchange for those releases. Contrary to Imerys SA's views, access to this discovery is not limited to the province of the TCC, the FCR, or the Debtors, and J&J does not have to rely on those other parties' assessments. Rather, J&J, as a party in interest and one that stands to benefit from a greater contribution by Imerys SA to the proposed Plan, has the right to seek this discovery to ensure no collusive deals or schemes are in play that will permit Imerys SA to escape liability for a relatively small contribution, so long as the Debtors capitulate to wildly inflated TDP values and provide a path to a greater potential recovery against J&J and insurance companies. Far from being irrelevant to J&J, issues relating to any special deal Imerys SA may have been

---

[1] The subpoena served on the TCC's expert is attached as an example. The notice and certificate of service pages are omitted to spare the Court unnecessary pages.

**Weil, Gotshal & Manges LLP**

December 3, 2020
Page 5

granted through plan negotiations are at the heart of J&J's objections to the Plan. At a minimum, discovery relating to alter ego and veil piercing is relevant to whether the settlement with Imerys SA and others satisfies Rule 9019.

Although Imerys SA has made a production, during the meet and confer it stated that if any documents responsive to J&J's requests were in France, they would not be searched for, let alone produced. Given Imerys SA's role in these proceedings, that objection is baseless. If responsive documents exist in France, they should be produced. At a minimum, Imerys SA should clarify and represent whether a search has been run and whether any unique, responsive documents exist in France.

### **Standing**

The Plan Proponents claim that J&J lacks standing to seek discovery because the proposed Plan is purportedly "neutral" as to J&J. But simply saying something does not make it so. First, J&J filed a proof of claim for liquidated and unliquidated amounts based on its contractual and common law indemnity claims, which is presumptively valid. *See* J&J's Preliminary Response To The Debtors' Objection To Proof Of Claim Nos. 915, 922, And 926 Filed By J&J [D.I. 2465].[2] As a creditor, J&J is clearly a party in interest. Furthermore, as J&J explained in its Disclosure Statement objection [D.I. 2412], the proposed Plan does not come close to providing the language necessary to make it neutral to J&J as an indemnitor. *See* J&J Disclosure Statement Objection [D.I. 2412] ¶¶ 54-57. Where, as here, "a plan … allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed. In short, they at least have bankruptcy standing." *In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 204 (3d Cir. 2011). Moreover, as the issue of whether the Plan provides neutrality is and will be hotly contested, making rulings on standing now in the context of a discovery dispute and cutting off J&J's right to discovery on significant plan-related issues would be manifestly unfair, particularly where the Plan Proponents seek to offload liability for the Debtors' talc liability onto J&J.

We look forward to discussing these issues further with the Court at the December 8 hearing.

Respectfully Submitted,

*/s/ Theodore E. Tsekerides*
Theodore E. Tsekerides

All counsel by ECF
Attachments: Subpoena to Legal Analysis Systems, Inc.
　　　　　　Imerys SA categorical privilege log

---

[2] As noted in J&J's Response [D.I. 2465], the premature claims objection itself is evidence of the Plan Proponents' attempts to eliminate an adversary that is shining a light on the improprieties under the Plan.