## **EXHIBIT B**

**Talc Personal Injury Trust Agreement**

US-DOCS\120811676.4

**IVORY AMERICA PERSONAL INJURY TRUST AGREEMENT**

# TABLE OF CONTENTS

**Page**

ARTICLE I    AGREEMENT OF TRUST .................................................................. 3
   1.1    Creation and Name ............................................................................ 3
   1.2    Purpose .............................................................................................. 3
   1.3    Transfer of Assets ............................................................................. 3
   1.4    Acceptance of Assets and Assumption of Liabilities ......................... 4
ARTICLE II    POWERS AND TRUST ADMINISTRATION ............................. 5
   2.1    Powers ............................................................................................... 5
   2.2    General Administration ...................................................................... 9
   2.3    Claims Administration ...................................................................... 13
ARTICLE III    ACCOUNTS,  INVESTMENTS, AND PAYMENTS ................... 13
   3.1    Accounts ............................................................................................ 13
   3.2    Investments ....................................................................................... 13
   3.3    Source of Payments ........................................................................... 16
ARTICLE IV    TRUSTEES; DELAWARE TRUSTEE ...................................... 16
   4.1    Number .............................................................................................. 16
   4.2    Term of Service ................................................................................. 16
   4.3    Appointment of Successor Trustees .................................................. 17
   4.4    Liability of Trustees, Members of the TAC and the FCR ................. 18
   4.5    Compensation and Expenses of Trustees and Delaware Trustee ........ 18
   4.6    Indemnification ................................................................................. 19
   4.7    Lien ................................................................................................... 20
   4.8    Trustees' Employment of Experts; Delaware Trustees' Employment of Counsel ............................................................................................. 21
   4.9    Trustees' Independence ..................................................................... 21
   4.10    Bond ................................................................................................. 21
   4.11    Delaware Trustee ............................................................................. 22
   4.12    Medicare Reporting Obligations ...................................................... 24
ARTICLE V    TRUST ADVISORY COMMITTEE ........................................... 24
   5.1    Members ............................................................................................ 24
   5.2    Duties ................................................................................................ 25

## TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 5.3 | Term of Office | 25 |
| 5.4 | Appointment of Successor | 26 |
| 5.5 | TAC's Employment of Professionals | 27 |
| 5.6 | Compensation and Expenses of the TAC | 28 |
| 5.7 | Procedures for Consultation with and Obtaining the Consent of the TAC | 29 |
| ARTICLE VI | THE FCR | 31 |
| 6.1 | Duties | 31 |
| 6.2 | Term of Office | 32 |
| 6.3 | Appointment of Successor | 32 |
| 6.4 | FCR's Employment of Professionals | 33 |
| 6.5 | Compensation and Expenses of the FCR | 34 |
| 6.6 | Procedures for Consultation with and Obtaining the Consent of the FCR | 34 |
| ARTICLE VII | GENERAL PROVISIONS | 36 |
| 7.1 | Irrevocability | 36 |
| 7.2 | Term; Termination | 36 |
| 7.3 | Amendments | 38 |
| 7.4 | Meetings | 39 |
| 7.5 | Severability | 39 |
| 7.6 | Notices | 39 |
| 7.7 | Successors and Assigns | 41 |
| 7.8 | Limitation on Claim Interests for Securities Laws Purposes | 41 |
| 7.9 | Entire Agreement; No Waiver | 41 |
| 7.10 | Headings | 42 |
| 7.11 | Governing Law | 42 |
| 7.12 | Settlors' Representative and Cooperation | 43 |
| 7.13 | Dispute Resolution | 43 |
| 7.14 | Enforcement and Administration | 44 |
| 7.15 | Effectiveness | 44 |
| 7.16 | Counterpart Signatures | 44 |

20877240v15

## IVORY AMERICA PERSONAL INJURY TRUST AGREEMENT

This Ivory America Personal Injury Trust Agreement (this **"Trust Agreement"**), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into pursuant to the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code [Docket No. _____] (as may be further amended or modified, the **"Plan"**),[1] by Imerys Talc America, Inc. and its Debtor affiliates (referred to as the **"Debtors"**)[2], the debtors and debtors-in-possession whose Chapter 11 Cases are administered under Case No. 19-10289 (LSS) in the United States Bankruptcy Court for the District of Delaware (**"Bankruptcy Court"**); the Tort Claimants' Committee (**"TCC"**); the Legal Representative of Future Claimants (the **"FCR"**); [_____] (the **"Delaware Trustee"**); the Trustees identified on the signature pages hereof (the **"Trustees"**); and the members of the Talc Trust Advisory Committee identified on the signature pages hereof (the **"TAC"** and, together with the Debtors, the TCC, the FCR, the Delaware Trustee, and the Trustees, the **"Parties"**);

**WHEREAS,** the Debtors have reorganized under the provisions of Chapter 11 of the Bankruptcy Code in the cases filed in the Bankruptcy Court jointly administered and known as *In re: Imerys Talc America, Inc., et al.,* Case No. 19-10289 (LSS); and

**WHEREAS,** the Confirmation Order has been entered by the Bankruptcy Court and the Affirmation Order entered by the District Court; and

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference.  All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

[2] To the extent Imerys Talc Italy S.p.A. ("**ITI**") seeks protection pursuant to the terms of the Bankruptcy Code in the Bankruptcy Court, the defined term Debtors shall include ITI.

**WHEREAS,** the Plan provides, *inter alia,* for the creation of the Ivory America Personal Injury Trust (the **"Talc Personal Injury Trust"** or the **"Talc Trust"**); and

**WHEREAS,** pursuant to the Plan, the Talc Trust is to use its assets and income to resolve all Talc Personal Injury Claims (**"Talc Claims"**); and

**WHEREAS,** it is the intent of the TCC, the Debtors, the FCR, the Trustees, and the TAC that the Talc Trust will value, and be in a financial position to pay, Talc Claims that involve similar claims in substantially the same manner and in accordance with the terms of this Trust Agreement and the Trust Distribution Procedures (the **"TDP"**) attached to the Plan as Exhibit A; and

**WHEREAS,** all rights of the holders of Talc Claims arising under this Trust Agreement and the TDP shall vest upon the Effective Date; and

**WHEREAS,** pursuant to the Plan, the Talc Trust is intended to qualify as a "qualified settlement fund" (a **"Qualified Settlement Fund"**) within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the **"QSF Regulations"**); and

**WHEREAS,** the Bankruptcy Court has determined that the Talc Trust and the Plan satisfy all the prerequisites for issuance of an injunction pursuant to sections 524(g) and 105(a) of the Bankruptcy Code with respect to any and all Talc Claims, and such injunction has been entered in connection with the Confirmation Order;

**NOW, THEREFORE,** it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

1.1    **Creation and Name.**  The Debtors as settlors (**"Settlors"**) hereby create a trust known as the "Imerys America Personal Injury Trust," which is the Talc Trust provided for and

-2-

referred to in the Plan.  The Trustees of the Talc Trust may transact the business and affairs of

the Talc Trust in the name of the Talc Trust, and references herein to the Talc Trust shall include

the Trustees acting on behalf of the Talc Trust.  It is the intention of the Parties that the Talc

Trust constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C.

§ 3801 *et seq.* (the **"Act"**) and that this document constitute the governing instrument of the Talc

Trust.  The Trustees and the Delaware Trustee are hereby authorized and directed to execute and

file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as

Exhibit 1.

      1.2    **Purpose.**  The purpose of the Talc Trust is to assume all liabilities and

responsibility for all Talc Claims and, among other things, to: (a) direct the processing,

liquidation, and payment of all Talc Claims in accordance with the Plan, the TDP, and the

Confirmation Order; (b) preserve, hold, manage, and maximize the assets of the Talc Trust for

use in paying and resolving Talc Claims; and (c) qualify at all times as a Qualified Settlement

Fund.  The Talc Trust is to use the Talc Trust's assets and income to pay the holders of all Talc

Claims in accordance with this Trust Agreement and the TDP in such a way that such holders of

Talc Claims are treated fairly, equitably, and reasonably in light of the assets available to resolve

such claims, and to otherwise comply in all respects with the requirements of a trust set forth in

section 524(g)(2)(B) of the Bankruptcy Code.

      1.3    **Transfer of Assets.**  Pursuant to, and in accordance with Article IV of the Plan,

the Talc Trust has received the Talc Personal Injury Trust Assets to fund the Talc Trust and settle

or discharge all Talc Claims.  In all events, the Talc Personal Injury Trust Assets or any other

assets to be transferred to the Talc Trust under the Plan will be transferred to the Talc Trust free

and clear of any liens or other claims by the Debtors, the Reorganized Debtors, the other

Protected Parties, any creditor, or other entity except as otherwise provided in the Plan.  Article

IV, Section 4.6 of the Plan provides for the Debtors and the Reorganized Debtors, among others,

to execute and deliver such documents to the Talc Trust as the Trustees may request to effectuate

the transfer and assignment of any Talc Personal Injury Trust Assets to the Talc Trust.

      1.4      **<u>Acceptance of Assets and Assumption of Liabilities</u>**.

(a)      In furtherance of the purposes of the Talc Trust, the Talc Trust hereby

expressly accepts the transfer to the Talc Trust of the Talc Personal Injury Trust Assets or any

other transfers contemplated by the Plan in the time and manner as, and subject to the terms,

contemplated in the Plan.

(b)      In furtherance of the purposes of the Talc Trust, the Talc Trust expressly

assumes all liabilities and responsibility for all Talc Claims (except as set forth in the Plan) and

the indemnification obligations in Section 4.12 of the Plan in substitution for the financial or

other responsibility or liability of the Reorganized Debtors therefor and neither the Reorganized

Debtors nor any of the Protected Parties shall have any further financial or other responsibility or

liability therefor except as explicitly set forth in the Plan.  Except as otherwise provided in this

Trust Agreement and the TDP, the Talc Trust shall have all defenses, cross-claims, offsets, and

recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights,

regarding such claims that the Debtors or the Reorganized Debtors have or would have had

under applicable law.  Regardless of the foregoing, however, a claimant must meet otherwise

applicable federal and state statutes of limitations and repose, except as otherwise provided in

Section 5.1(a)(ii) of the TDP.

(c)     Notwithstanding anything to the contrary herein, no provision herein or in the TDP shall be construed or implemented in a manner that would cause the Talc Trust to fail to qualify as a Qualified Settlement Fund under the QSF Regulations.

(d)     Nothing in this Trust Agreement shall be construed in any way to limit (i) the scope, enforceability, or effectiveness of the Injunctions or (ii) the Talc Trust's assumption of liability for all Talc Claims subject to the provisions of Section 1.4(b) above and the Plan.

(e)     In this Trust Agreement and the TDP, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(f)     To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the Talc Trust (the **"Beneficial Owners"**) shall be deemed to be the holders of Talc Claims; provided that (i) the holders of Talc Claims, as such Beneficial Owners, shall have only such rights with respect to the Talc Trust and its assets as are set forth in the TDP and (ii) no greater or other rights, including upon dissolution, liquidation, or winding up of the Talc Trust, shall be deemed to apply to the holders of Talc Claims in their capacity as Beneficial Owners.

## ARTICLE II

## POWERS AND TRUST ADMINISTRATION

### 2.1    Powers.

(a)     The Trustees are and shall act as fiduciaries to the Talc Trust in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order. The Trustees shall, at all times, administer the Talc Trust and the Talc Personal Injury Trust Assets in accordance with the purposes set forth in Section 1.2 above.  Subject to the limitations

-5-

set forth in this Trust Agreement, the Trustees shall have the power to take any and all actions that, in the judgment of the Trustees, are necessary or proper to fulfill the purposes of the Talc Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)     Except as required by applicable law or otherwise specified herein, the Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Without limiting the generality of Section 2.1(a) above, and except as limited below or by the Plan, the Trustees shall have the power to:

(i)     receive and hold the Talc Personal Injury Trust Assets and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the Talc Personal Injury Trust Assets;

(ii)     invest the monies held from time to time by the Talc Trust;

(iii)     enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Talc Trust to operate;

(iv)     pay liabilities and expenses of the Talc Trust including the indemnification obligations set forth in section 4.12 of the Plan;

(v)     establish such funds, reserves, and accounts within the Talc Trust estate, the Trustees deem useful in carrying out the purposes of the Talc Trust;

(vi)     sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

-6-

(vii)    establish, supervise, and administer the Talc Trust in accordance with this Trust Agreement and the TDP and the terms thereof;

(viii)    appoint such officers, hire such employees, engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the Talc Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms of the Talc Trust;

(ix)    pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents (including those engaged by the Talc Trust in connection with its alternative dispute resolution activities);

(x)    as provided below, (a) compensate the Trustees, the Delaware Trustee, and the FCR, and the employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents of each of them, and (b) reimburse the Trustees, the Delaware Trustee, and the FCR for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xi)    execute and deliver such instruments as the Trustees deem proper in administering the Talc Trust;

(xii)    enter into such other arrangements with third parties as the Trustees deem useful in carrying out the purposes of the Talc Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement;

(xiii)    in accordance with Sections 4.4 and 4.6 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) (A) the Trustees, (B) the Delaware

-7-

Trustee, (C) the TAC and its members, (D) the FCR, and (E) the officers, employees, consultants, advisors, and agents of each of the Talc Trust, the TAC, and the FCR (each of those in (E) herein, the **"Additional Indemnitees"**), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and representatives.  No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below;

(xiv)    consult with the TAC and the FCR at such times and with respect to such issues relating to the purpose, conduct, and affairs of the Talc Trust as the Trustees consider desirable;

(xv)    make, pursue (by litigation or otherwise), collect, compromise, or settle, in the name of the Talc Trust, any claim, right, action, or cause of action included in the Talc Personal Injury Trust Assets or which may otherwise hereafter accrue in favor of the Talc Trust, including, but not limited to, insurance recoveries, before any court of competent jurisdiction; and

(xvi)    exercise any and all other rights, and take any and all other actions as are permitted, of the Trustees in accordance with the terms of this Trust Agreement.

(d)    The Trustees shall not have the power to guarantee any debt of other persons.

(e)    The Trustees agree to take the actions of the Talc Trust required hereunder.

(f)     The Trustees shall give the TAC and the FCR prompt notice of any act performed or taken pursuant to Sections 2.1(c)(i) or (vi) above, and any act proposed to be performed or taken pursuant to Section 2.2(f) below.

**2.2     General Administration.**

(a)     The Trustees shall act in accordance with this Trust Agreement, the Plan, the Confirmation Order and the TDP.  In the event of a conflict between the terms of this Trust Agreement and the TDP, the terms of this Trust Agreement shall control.  In the event of a conflict between the terms or provisions of the (i) Plan and (ii) this Trust Agreement or the TDP, the terms of the Plan shall control.

(b)     The Trustees shall (i) timely file such income tax and other returns and statements required to be filed and shall timely pay all taxes required to be paid by the Talc Trust, (ii) comply with all applicable reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Talc Trust as a Qualified Settlement Fund within the meaning of the QSF Regulations, and (iv) take no action that could cause the Talc Trust to fail to qualify as a Qualified Settlement Fund within the meaning of the QSF Regulations.

(c)     The Trustees shall timely account to the Bankruptcy Court as follows:

(i)     The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the **"Annual Report"**) containing financial statements of the Talc Trust (including, without limitation, a balance sheet of the Talc Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied

by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims.  The Trustees shall provide a copy of such Annual Report to the TAC and the FCR when such reports are filed with the Bankruptcy Court.

(ii)    Simultaneously with the filing of the Annual Report, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims resolved during the period covered by the financial statements.  The Trustees shall provide a copy of such report to the TAC and the FCR when such report is filed.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for Region Three (the **"UST"**).

(d)    The Trustees shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year. The budget and cash flow projections shall include a determination of the Maximum Annual Payment pursuant to Section 2.9 of the TDP.  The Trustees shall provide a copy of the budget and cash flow projections to the TAC and the FCR.

(e)    The Trustees shall consult with the TAC and the FCR on (i) the general implementation and administration of the Talc Trust; (ii) the general implementation and administration of the TDP; and (iii) such other matters as may be required under this Trust Agreement or the TDP.

-10-

(f)    The Trustees shall be required to obtain the consent of the TAC and the FCR pursuant to the consent process set forth in Section 7.1(b) below, in addition to any other instances elsewhere enumerated, in order:

(i)    to reduce the number of Trustees as provided in Section 4.1 below;

(ii)    to determine, establish, or change the Payment Percentage described in Section 2.8 of the TDP as provided in Section 4.2 of the TDP;

(iii)    to change the Scheduled Values and/or Medical/Exposure Criteria set forth in Section 5.3(a)(iii) of the TDP;

(iv)    to establish and/or to change the Claims Materials to be provided to holders of Talc Claims under Section 6.1 of the TDP;

(v)    to require that claimants provide additional kinds of medical evidence pursuant to Section 6.1 of the TDP;

(vi)    to change the form of Acceptance and Release to be provided pursuant to Section 7.2 of the TDP;

(vii)    to terminate the Talc Trust pursuant to Section 7.3 below;

(viii)    to settle the liability of any insurer under any insurance policy or legal action related thereto;

(ix)    to change the compensation and/or expense reimbursement limitations of the members of the TAC, the FCR, the Delaware Trustee, or the Trustees, other than to reflect cost-of-living increases or to reflect changes approved by the Bankruptcy Court as otherwise provided herein;

(x)    to take actions to minimize any tax on the Talc Personal Injury Trust Assets, provided that no such action may be taken if it prevents the Talc Trust from

-11-

qualifying as a Qualified Settlement Fund within the meaning of the QSF Regulations or requires an election for the Talc Trust to be treated as a grantor trust for tax purposes;

(xi)    to amend any provision of this Trust Agreement or the TDP in accordance with the terms thereof; provided that no such amendment shall be in contravention of the Plan;

(xii)    to acquire an interest in, or to merge any claims resolution organization formed by the Talc Trust with, another claims resolution organization that is not specifically created by this Trust Agreement or the TDP, or to contract with another claims resolution organization or other entity that is not specifically created by this Trust Agreement or the TDP, or permit any other party to join in any claims resolution organization that is formed by the Talc Trust pursuant to this Trust Agreement or the TDP; provided that such acquisition, merger, contract, or joinder shall not (a) subject the Reorganized Debtors, or any successors in interest thereto, or the Protected Parties to any risk of having any Talc Claim asserted against it or them, or (b) otherwise jeopardize the validity or enforceability of the Injunctions or any other injunction or release issued or granted in connection with the Plan and/or the Confirmation Order, (c) permit the surviving organization to make decisions about the allowability and value of claims that are not in accordance with the TDP, or (d) cause the Talc Trust to fail to qualify as a Qualified Settlement Fund under the QSF Regulations;

(xiii)    if and to the extent required by Section 6.5 of the TDP, to disclose any information, documents, or other materials to preserve, litigate, resolve, or settle coverage, or to comply with an applicable obligation under an insurance policy or settlement agreement pursuant to Section 6.5 of the TDP;

-12-

(xiv)    sell, transfer, or exchange any or all of the Talc Personal Injury Trust Assets at such prices and upon such terms as the Trustees may consider proper, consistent with the other terms of this Trust Agreement;

(xv)    delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Talc Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 4.4 below; or

(xvi)    to approve any release or abandonment of the J&J Indemnification Obligations.

(g)    The Trustees shall meet with the TAC and the FCR no less often than quarterly.  The Trustees shall meet in the interim with the TAC and the FCR when so requested by either.  Meetings may be held in person, by telephone conference call, or by a combination of the two.

(h)    The Trustees, upon notice from either the TAC or the FCR, if practicable in view of pending business, shall at their next meeting with the TAC or the FCR consider issues submitted by the TAC or the FCR.  The Trustees shall keep the TAC and the FCR reasonably informed regarding all aspects of the administration of the Talc Trust.

2.3    **Claims Administration.**  The Trustees shall promptly proceed to implement the TDP.

2.4    **Medicare Reporting Obligations.**

(a)    The Talc Trust shall register as a Responsible Reporting Entity (**"RRE"**) under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) (**"MMSEA"**).

(b)    The Talc Trust shall, at its sole expense, timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Talc Trust or with respect to contributions to the Talc Trust.  The Talc Trust, in its role as RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, **"CMS"**) to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)    Before remitting funds to claimants' counsel, or to the claimant if such claimant is acting *pro se*, in respect of any Talc Claim, the Trustees shall obtain a certification that said claimant (or such claimant's authorized representative) has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Talc Claim.

## ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1    Accounts.**

(a)    The Trustees may, from time to time, create such accounts and reserves within the Talc Trust estate as they deem necessary, prudent, or useful in order to provide for the payment of expenses and payment of Talc Claims and may, with respect to any such account or reserve, restrict the use of monies therein, and the earnings or accretions thereto.

-14-

(b)      The Trustees shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account, and the payments from each such account in the reports to be filed with the Bankruptcy Court and provided to the TAC and the FCR pursuant to Section 2.2(c)(i) above.

3.2    **Investments**.  Investment of monies held in the Talc Trust shall be administered in a manner consistent with the standards set forth in the Uniform Prudent Investor Act, subject to the following limitations and provisions;

(a)      With respect to equity investments, the Talc Trust may invest only in diversified equity portfolios whose benchmark is a broad equity market index such as, but not limited to, the S&P 500 Index, Russell 1000 Index, S&P ADR Index, or MSCI EAFE Index. The Talc Trust shall not acquire, directly or indirectly, equity in any entity (other than the Reorganized Debtors or any successor to the Reorganized Debtors) or business enterprise if, immediately following such acquisition, the Talc Trust would hold more than 5% of the equity in such entity or business enterprise.  The Talc Trust shall not hold, directly or indirectly, more than 5% of the equity in any entity (other than the Reorganized Debtors, or any successor to the Reorganized Debtors) or business enterprise.

(b)      The Talc Trust shall not acquire or hold any long-term debt securities unless (i) such securities are Talc Trust Assets under the Plan, (ii) such securities are rated "Baa" or higher by Moody's, "BBB" or higher by Standard & Poor's ("**S&P**"), or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency, or (iii) have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.  This restriction does not apply to any pooled

-15-

investment vehicles where pooled assets receive an investment grade rating (*i.e.*, "BBB" rating or above) by a nationally recognized rating agency.

(c)     The Talc Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-l" or higher by Moody's or "A-l" or higher by S&P or has been given an equivalent rating by another nationally recognized statistical rating agency.

(d)     The Talc Trust shall not acquire any debt securities or other debt instruments issued by any entity if, following such acquisition, the aggregate market value of all such debt securities and/or other debt instruments issued by such entity held by the Talc Trust would exceed 5% of the then current aggregate value of the Talc Trust's assets.  There is no limitation on holding debt securities or other debt instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(e)     The Talc Trust shall not acquire or hold any certificates of deposit in an amount exceeding any federal insurance on such certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 3.2(b) above.

(f)     The Talc Trust may acquire and hold any securities or instruments issued by the Reorganized Debtors or any successor to the Reorganized Debtors or obtained as proceeds of litigation or otherwise to resolve disputes, without regard to the limitations set forth in Subsections (a)-(e) above.

(g)     The Talc Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustees, such obligations are adequately collateralized.

-16-

(h)     The Talc Trust may allow its investment managers to acquire or hold derivative instruments—including, without limitation, options, futures, and swaps—in the normal course of portfolio management to help hedge, manage, or mitigate portfolio risk, including, without limitation, interest rate risk and equity market risk.  However, using derivative instruments to speculate or to leverage a portfolio at a much greater risk to the portfolio is prohibited.

(i)     The Talc Trust may lend securities on a short-term basis, subject to adequate, normal, and customary collateral arrangements.

(j)     Notwithstanding (a) above, the Talc Trust may acquire and hold an equity interest in a claims resolution organization without limitation as to the size of the equity interest acquired and held if prior to such acquisition, the Talc Trust complies with the provisions of Section 2.2(f)(xii) hereof with respect to the acquisition.

**3.3     Source of Payments.**

(a)     All Talc Trust expenses and payments and all liabilities with respect to Talc Claims shall be payable solely by the Talc Trust out of the Talc Personal Injury Trust Assets.  Neither the Trustees, the Delaware Trustee, the TAC, the FCR, nor any of their officers, employees, consultants, advisors, and agents, nor the Debtors, the Reorganized Debtors, nor any other Protected Party, shall be liable for the payment of any Talc Trust expense or any other liability of the Talc Trust, except to the extent explicitly provided for in (i) the Plan or, (ii) solely with respect to the Trustees, the Delaware Trustee, the TAC, the FCR, and any of their officers, employees, consultants, advisors, and agents, the Plan Documents.

(b)     The Trustees shall include in the Annual Report a reasonably detailed description of any payments made in accordance with this Section 3.3

-17-

(c)      The Trustees, with the consent of the TAC and the FCR, shall establish and implement billing guidelines applicable to the Trustees, the TAC, and the FCR as well as their respective professionals who seek compensation from the Talc Trust.

## ARTICLE IV

## TRUSTEES; DELAWARE TRUSTEE

**4.1**      **Number.**  In addition to the Delaware Trustee appointed pursuant to Section 4.11, there shall be three (3) Trustees who shall be those persons named on the signature pages hereof. Upon the unanimous vote of the Trustees, with the consent of the TAC and the FCR, the number of Trustees may be reduced to two (2) or one (1) at such time as the Trustees see fit.

**4.2**      **Term of Service.**

(a)      The initial Trustees named pursuant to Section 4.1 above shall serve an initial term of service of three-, four-, or five years from the date on the signature pages hereof. Thereafter, each term of service shall be for five (5) years.  The initial Trustees shall serve from the Effective Date until the earliest of (i) the end of his or her term, (ii) his or her death, (iii) his or her mandatory retirement at the end of the year in which he or she reaches the age of 70 (unless, and for so long as, this mandatory retirement requirement is waived by the agreement of the TAC and the FCR), (iv) his or her resignation pursuant to Section 4.2(b) below, (v) his or her removal pursuant to Section 4.2(c) below, or (vi) the termination of the Talc Trust pursuant to Section 7.3 below.

(b)      A Trustee may resign at any time by written notice to the TAC and the FCR.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)      A Trustee may be removed by the Bankruptcy Court on the motion of the other Trustees, the TAC or the FCR, in the event that he or she becomes unable to discharge his

-18-

or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause.  Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of Section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of a Trustee hereunder, or repeated non-attendance at scheduled meetings.  Such removal shall take effect at such time as the Bankruptcy Court shall determine.

   **4.3**  **Appointment of Successor Trustees.**

   (a)  In the event of a vacancy in a Trustee position, whether by term expiration, death, retirement, resignation, or removal, the vacancy shall be filled by the unanimous vote of the remaining Trustees, with the consent of the TAC and FCR.  In the event that the remaining Trustees cannot agree on the successor Trustee or the TAC and FCR do not consent, the Bankruptcy Court shall select the successor Trustee.

   (b)  Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers, and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

   (c)  Each successor Trustee shall serve until the earliest of (i) the end of the term of five (5) years for which he or she was appointed if his or her immediate predecessor Trustee completed his or her term pursuant to Section 4.2(a) above, (ii) the end of the term of the Trustee whom he or she replaced if his or her predecessor Trustee did not complete such term, (iii) his or her death, (iv) his or her mandatory retirement at the end of the year in which the Trustee reaches the age of 70 (unless, and for so long as, this mandatory retirement requirement

20877240v15

is waived by the agreement of the TAC and the FCR), (v) his or her resignation pursuant to Section 4.2(b) above, (vi) his or her removal pursuant to Section 4.2(c) above, or (vii) the termination of the Talc Trust pursuant to Section 7.3 below.

(d)     Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as a Trustee for one or more additional terms.

**4.4    Liability of Trustees and Others.**  The Trustees, the members of the TAC, the FCR, and each of their officers, employees, consultants, advisors, and agents shall not be liable to the Talc Trust, to any individual holding a Talc Claim, or to any other person, except for their own acts or omissions that constitute a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e).

**4.5    Compensation and Expenses of the Trustees.**

(a)     Each Trustee shall receive a retainer from the Talc Trust for his or her service as a Trustee in the amount of [$____] per annum, paid annually.  Hourly time, as described below, shall first be billed and applied to the annual retainer.  Hourly time in excess of the annual retainer shall be paid by the Talc Trust.  For all time expended as Trustees, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustees shall receive the sum of [$____] per hour.  For all non-working travel time in connection with Talc Trust business, the Trustees shall receive the sum of [$___] per hour.  All time shall be computed on a decimal (1/10th hour basis.  The Trustees shall record all hourly time to be charged to the Talc Trust on a daily basis.  The hourly compensation payable to the Trustees hereunder shall be reviewed every year by the Trustees and, after consultation with the members of the TAC and the FCR, appropriately adjusted for changes in the cost of living.

-20-

(b)     The Talc Trust will promptly reimburse the Trustees for all reasonable out-of-pocket costs and expenses incurred by the Trustees in connection with the performance of their duties hereunder.

(c)     The Talc Trust shall include in the Annual Report a description of the amounts paid under this Section 4.5.

**4.6    Indemnification of Trustees and Others.**

(a)     The Talc Trust shall indemnify and defend the Trustees, the members of the TAC, the Delaware Trustee, and the FCR in the performance of their duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware (after the application of Section 7.11) is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment, or funding of the Talc Trust.  The Talc Trust shall indemnify to the fullest extent permitted by applicable law any of the Additional Indemnitees in the performance of their duties hereunder against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment, or funding of the Talc Trust, except for their own acts or omissions that constitute a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e).  Notwithstanding the foregoing, no individual shall be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which he or she is ultimately liable under Section 4.4 above.

-21-

(b)      Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trustees, a member of the TAC, the Delaware Trustee, the FCR, or an Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative, or arbitrative, from which they are indemnified by the Talc Trust pursuant to Section 4.6(a) above, shall be paid by the Talc Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trustees, the member of the TAC, the Delaware Trustee, the FCR, or the Additional Indemnitee (as applicable), to repay such amount in the event that it shall be determined ultimately by final order that the Trustees, the member of the TAC, the Delaware Trustee, the FCR, or the Additional Indemnitee (as applicable) is not entitled to be indemnified by the Talc Trust.

(c)      The Talc Trust must purchase and maintain reasonable amounts and types of insurance on behalf of each individual who is or was a Trustee, a member of the TAC, the Delaware Trustee, the FCR, or an Additional Indemnitee, including against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, TAC member, Delaware Trustee, FCR, or Additional Indemnitee.

(d)      From and after the Effective Date, the Talc Trust shall indemnify, to the fullest extent permitted by applicable law, each of the Debtors, the Reorganized Debtors, and the other Protected Parties for reasonable documented out-of-pocket expenses (including, without limitation, attorney's fees and expenses) that occur after the Effective Date attributable to the defense of any Talc Claim asserted against the Debtors, Reorganized Debtors, or the other Protected Parties to the extent set forth in Section 4.12 of the Plan.  Nothing provided in this Trust Agreement or the TDP shall obligate the Trust to indemnify or pay any liabilities, fees, or

-22-

expenses that Johnson & Johnson and/or Johnson & Johnson Consumer Inc. is obligated to pay or indemnify.

4.7     **Lien.**  The Trustees, members of the TAC, the FCR, and the Additional Indemnitees shall have a first priority lien upon the Talc Personal Injury Trust Assets to secure the payment of any amounts payable to them pursuant to Section 4.6 above or any undisputed compensation.

4.8     **Trustees' Employment of Experts.**  The Trustees may, but are not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed by the Trustees to be qualified as experts on the matters submitted to them (the **"Trust Professionals"**) regardless of whether any such party is affiliated with any of the Trustees in any manner (except as otherwise expressly provided in this Trust Agreement).  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e), the written opinion of or information provided by any such party deemed by the Trustees to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustees hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

4.9     **Trustee Independence.**  The Trustees shall not, during the term of their service, hold a financial interest in, act as attorney or agent for, or serve as an officer or as any other professional for the Reorganized Debtors.  Notwithstanding the foregoing, the Trustees may serve, without any additional compensation other than the compensation to be paid by the Talc Trust pursuant to Section 4.5(a) above, as a director of the Reorganized Debtors.  The Trustees

shall not act as an attorney, agent, or other professional for any person who holds a Talc Claim. For the avoidance of doubt, this Section shall not be applicable to the Delaware Trustee.

      4.10   **No Bond.**  Neither the Trustees nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

      4.11   **Delaware Trustee.**

      (a)   There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act. The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware in accordance with section 3807 of the Act, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 4.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.11(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.

      (b)   The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustees set forth herein. The Delaware Trustee shall be one of the trustees of the Talc Trust for the sole and limited purpose of fulfilling the requirements of section 3807 of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Talc Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of

-24-

Delaware that the Delaware Trustee is required to execute under section 3811 of the Act (acting solely at the written direction of the Trustees) and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Talc Trust, the other Parties hereto or any beneficiary of the Talc Trust, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.

(c)     The Delaware Trustee shall serve until such time as the Trustees remove the Delaware Trustee or the Delaware Trustee resigns, and a successor Delaware Trustee is appointed by the Trustees in accordance with the terms of Section 4.11(d) below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustees; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustees in accordance with Section 4.11(d) below.  If the Trustees do not act within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustees shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the

20877240v15

Trustees and any undisputed fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Trust Agreement.

(e)     The Delaware Trustee shall neither be required nor permitted to attend meetings relating to the Talc Trust.

(f)     The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

(g)     The Talc Trust will promptly reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Delaware Trustee in connection with the performance of their duties hereunder.

(h)     The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder, and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

## ARTICLE V

## TRUST ADVISORY COMMITTEE

**5.1**     **Members.**  The original TAC shall consist of the eleven (11) members who were appointed to serve as members of the Tort Claimants' Committee.  To the extent that a member of the TAC elects to resign from the TAC in accordance with Section 5.3(b) below or is removed pursuant to Section 5.3(c) below, that member shall not be replaced; provided, however, that: (i) this Section 5.1 shall not prevent the appointment of a successor pursuant to Section 5.4(a); and

-26-

(ii) notwithstanding anything contained herein, the membership in the TAC shall not be less than five (5) members.

      **5.2**    <u>**Duties**</u>.  The members of the TAC shall serve in a fiduciary capacity, representing the interests of all holders of present Talc Claims.  The TAC shall have no fiduciary obligations or duties to any party other than the holders of present Talc Claims.  The Trustees must consult with the TAC on matters identified in Section 2.2(e) above and in other provisions herein and must obtain the consent of the TAC on matters identified in Section 2.2(f) above.  Where provided in the TDP, certain other actions by the Trustees are also subject to the consent of the TAC.  Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TAC.  To the extent that, at law or in equity, the TAC has duties (including fiduciary duties) and liabilities relating thereto to the Talc Trust, the other Parties hereto or any beneficiary of the Talc Trust, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of the TAC expressly set forth in this Trust Agreement and the documents referenced herein (including the TDP, the Plan and the Confirmation Order).

      **5.3**    <u>**Term of Office**</u>.

      (a)    The initial members of the TAC appointed in accordance with Section 5.1 above shall serve the staggered three-, four-, or five-year terms shown on the signature pages hereof.  Thereafter, each term of office shall be five (5) years.  Each member of the TAC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b) below, (iii) his or her removal pursuant to Section 5.3(c) below, (iv) the end of his or her term as provided above, or (v) the termination of the Talc Trust pursuant to Section 7.3 below.

-27-

(b)    A member of the TAC may resign at any time by written notice to the other members of the TAC, the Trustees, and the FCR.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal may be made by the Bankruptcy Court on the motion of the remaining members of the TAC, the Talc Trust, or the FCR.

**5.4    <u>Appointment of Successors</u>.**

(a)    If, prior to the termination of service of a member of the TAC other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the TAC, such individual shall be his or her successor.  If such member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor.  If: (i) a member of the TAC did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) a member is removed pursuant to Section 5.3(c) above, no successor will be appointed unless absent such appointment, the membership of the TAC would be reduced to a number less than five (5).  If, absent appointment of a successor, the TAC will not have of at least five (5) members, the successor shall be appointed by a majority of the remaining members of the TAC and if such members cannot agree on a successor, the

Bankruptcy Court.  Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as a member of the TAC for an additional term, and there shall be no limit on the number of terms that a TAC member may serve.

(b)    Each successor TAC member shall serve until the earlier of (i) the end of the full term for which he or she was appointed, (ii) the end of the term of the member of the TAC whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.3(b) above, (v) his or her removal pursuant to Section 5.3(c) above, or (vi) the termination of the Talc Trust pursuant to Section 7.3 below.

(c)    No successor TAC member shall be liable personally for any act or omission of his or her predecessor TAC member.  No successor TAC member shall have any duty to investigate the acts or omissions of his or her predecessor TAC member.  No TAC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**5.5    TAC's Employment of Professionals.**

(a)    The TAC may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed by the TAC to be qualified as experts on the matters submitted to them (the **"TAC Professionals"**).  The TAC and the TAC Professionals shall at all times have complete access to the Talc Trust's officers, employees, and agents, as well as to the Trust Professionals, and shall also have complete access to all non-privileged information generated by them or otherwise available to the Talc Trust or the Trustees.  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of

-29-

12 Del. C. § 3806(e), the written opinion of or information provided by any TAC Professional or Trust Professional deemed by the TAC to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the TAC in good faith and in accordance with the written opinion of or information provided by the TAC Professional or Trust Professional.

(b)    The Talc Trust shall promptly reimburse, or pay directly if so instructed, the TAC for all reasonable fees and costs associated with the TAC's employment of legal counsel and forecasters (including estimation consultants and experts) pursuant to this provision in connection with the TAC's performance of its duties hereunder.  The Talc Trust shall also promptly reimburse, or pay directly if so instructed, the TAC for all reasonable fees and costs associated with the TAC's employment of any other TAC Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder; *provided, however,* that (i) the TAC has first submitted to the Talc Trust a written request for such reimbursement setting forth (A) the reasons why the TAC desires to employ such TAC Professional, and (B) the basis upon which the TAC seeks advice independent of the Trust Professionals to meet the need of the TAC for such expertise or advice, and (ii) the Talc Trust has approved the TAC's request for reimbursement in writing, which approval must not be unreasonably withheld, delayed, or denied.  If the Talc Trust agrees to pay for the TAC Professional, such reimbursement shall be treated as a Talc Trust expense.  If the Talc Trust declines to pay for the TAC Professional, it must set forth its reasons in writing.  If the TAC still desires to employ the TAC Professional at the Talc Trust's expense, the TAC and/or the Trustees shall resolve the dispute pursuant to Section 7.13 below.

(c)      In the event that the TAC retains counsel in connection with any matter whether or not related to any claim that has been or might be asserted against the TAC and irrespective of whether the Talc Trust pays such counsel's fees and related expenses, any communications between the TAC and such counsel shall be deemed to be within the attorney-client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of whether such communications are related to any claim that has been or might be asserted by or against the TAC and regardless of whether the Talc Trust pays such counsel's fees and related expenses.

5.6      **Compensation and Expenses of the TAC.**  The members of the TAC shall not: (i) receive compensation from the Talc Trust for their services as TAC members; or (ii) receive reimbursement for any out-of-pocket costs or expenses incurred in connection with the performance of such member's duties hereunder notwithstanding the reasonableness of such cost or expense.

## ARTICLE VI

## THE FCR

6.1      **Duties.**  The initial FCR shall be the individual identified on the signature pages hereof.  He or she shall serve in a fiduciary capacity, representing the interests of the holders of future Talc Claims for the purpose of protecting the rights of such persons.  The FCR shall have no fiduciary obligations or duties to any party other than holders of future Talc Claims.  The Trustees must consult with the FCR on matters identified in Section 2.2(e) above and in other provisions herein and must obtain the consent of the FCR on matters identified in Section 2.2(f) above.  Where provided in the TDP, certain other actions by the Trustees are also subject to the consent of the FCR.  Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the TDP), there shall be no other duties (including

-31-

fiduciary duties) or obligations, express or implied, at law or in equity, of the FCR.  To the extent

that, at law or in equity, the FCR has duties (including fiduciary duties) and liabilities relating

thereto to the Talc Trust, the other Parties hereto or any beneficiary of the Talc Trust, it is hereby

understood and agreed by the other Parties hereto that such duties and liabilities are replaced by

the duties and liabilities of the FCR expressly set forth in this Trust Agreement and the

documents referenced herein (including the TDP, the Plan and the Confirmation Order).

> **6.2** **Term of Office.**

> (a)    The FCR shall serve until the earlier of (i) his or her death, (ii) his or her

resignation pursuant to Section 6.2(b) below, (iii) his or her removal pursuant to Section 6.2(c)

below, or (iv) the termination of the Talc Trust pursuant to Section 7.3 below.

> (b)    The FCR may resign at any time by written notice to the Trustees and the

TAC.  Such notice shall specify a date when such resignation shall take effect, which shall not be

less than ninety (90) days after the date such notice is given, where practicable.

> (c)    The FCR may be removed in the event that he or she becomes unable to

discharge his or her duties hereunder due to accident, physical deterioration, mental

incompetence, or a consistent pattern of neglect and failure to perform or to participate in

performing the duties hereunder, such as repeated non-attendance at scheduled meetings, or for

other good cause.  Such removal may be made upon a unanimous vote of the Trustees and

consent of the TAC, or by the Bankruptcy Court on the motion of the Talc Trust, or the TAC.

> **6.3** **Appointment of Successor.**

> (a)    A vacancy caused by resignation or death shall be filled with an individual

nominated by the former FCR prior to the effective date of the resignation or death.  A vacancy

caused by removal of the FCR based on inability of the FCR to discharge his or her duties due to

accident, physical deterioration, or mental incompetence shall be filled with an individual nominated by the FCR prior to the inability.  In the event a nominee has not been pre-selected, the successor shall be chosen by the Trustees in consultation with the TAC.  A vacancy caused by removal of the FCR for other reasons shall be filled by a successor selected by the Trustees in consultation with the TAC.

(b)      No successor FCR shall be liable personally for any act or omission of his or her predecessor.  No successor FCR shall have any duty to investigate the acts or omissions of his or her predecessor.  No FCR shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

### 6.4   FCR's Employment of Professionals.

(a)      The FCR may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed by the FCR to be qualified as experts on the matters submitted to them (the **"FCR Professionals"**).  The FCR and the FCR Professionals shall at all times have complete access to the Talc Trust's officers, employees, and agents, as well as to the Trust Professionals, and shall also have complete access to all non-privileged information generated by them or otherwise available to the Talc Trust or the Trustees.  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e), the written opinion of or information provided by any FCR Professional or Trust Professional deemed by the FCR to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the FCR in good faith and in accordance with the written opinion of or information provided by the FCR Professional or Trust Professional.

-33-

(b)    The Talc Trust shall promptly reimburse, or pay directly if so instructed,

the FCR for all reasonable fees and costs associated with the FCR's employment of legal counsel

and forecasters (including estimation consultants and experts) pursuant to this provision in

connection with the FCR's performance of his or her duties hereunder.  The Talc Trust shall also

promptly reimburse, or pay directly if so instructed, the FCR for all reasonable fees and costs

associated with the FCR's employment of any other FCR Professionals pursuant to this provision

in connection with the FCR's performance of his or her duties hereunder; *provided, however,*

that (i) the FCR has first submitted to the Talc Trust a written request for such reimbursement

setting forth (A) the reasons why the FCR desires to employ such FCR Professional, and (B) the

basis upon which the FCR seeks advice independent of the Trust Professionals to meet the need

of the FCR for such expertise or advice, and (ii) the Talc Trust has approved the FCR's request

for reimbursement in writing, which approval must not be unreasonably withheld, delayed, or

denied.  If the Talc Trust agrees to pay for the FCR Professional, such reimbursement shall be

treated as a Talc Trust expense.  If the Talc Trust declines to pay for the FCR Professional, it

must set forth its reasons in writing.  If the FCR still desires to employ the FCR Professional at

the Talc Trust's expense, the FCR and/or the Trustees shall resolve the dispute pursuant to

Section 7.13 below.

(c)    In the event that the FCR retains counsel in connection with any matter

whether or not related to any claim that has been or might be asserted against the FCR and

irrespective of whether the Talc Trust pays such counsel's fees and related expenses, any

communications between the FCR and such counsel shall be deemed to be within the attorney-

client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of

whether such communications are related to any claim that has been or might be asserted by or

20877240v15

against the FCR and regardless of whether the Talc Trust pays such counsel's fees and related expenses.

      **6.5**    **Compensation and Expenses of the FCR.**  The FCR shall receive compensation from the Talc Trust in the form of payment at the FCR's normal hourly rate for services performed, as such may be adjusted from time to time.  The Talc Trust will promptly reimburse the FCR for all reasonable out-of-pocket costs and expenses incurred by the FCR in connection with the performance of his or her duties hereunder.  Such reimbursement or direct payment shall be deemed a Talc Trust expense.  The Talc Trust shall include a description of the amounts paid under this Section 6.5 in the Annual Report to be filed with the Bankruptcy Court and provided to the FCR and the TAC pursuant to Section 2.2(c)(i).

**ARTICLE VII**

**GENERAL PROVISIONS**

      **7.1**    **Procedures for Consulting with or Obtaining Consent of the TAC and FCR.**

      (a)    <u>Consultation Process</u>.

      (i)    In the event the Trustees are required to consult with the TAC and FCR pursuant to Section 2.2(e) above, the TDP, the Plan, or otherwise, the Trustees shall provide the TAC and FCR with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide the TAC and FCR with such reasonable access to the Trust Professionals and other experts retained by the Talc Trust and its staff (if any) as the TAC and FCR may reasonably request during the time that the Trustees are considering such matter, and shall also provide the TAC and FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustees.

-35-

(ii)     In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 7.1(a), the Trustees shall take into consideration the time required for the TAC and FCR, if they so wish, to engage and consult with their own independent financial or investment advisors as to such matter.  In any event, the Trustees shall not take definitive action on any such matter until at least thirty (30) days after providing the TAC and FCR with the initial written notice that such matter is under consideration by the Trustees, unless such period is waived by the TAC and FCR.

(b)     <u>Consent Process</u>.

(i)     In the event the Trustees are required to obtain the consent of the TAC and FCR pursuant to Section 2.2(f) above, the TDP, the Plan, or otherwise, the Trustees shall provide the TAC and FCR with a written notice stating that their consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustees propose to take, and explaining in detail the reasons why the Trustees desire to take such action. The Trustees shall provide the TAC and FCR as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustees shall also provide the TAC and FCR with such reasonable access to the Trust Professionals and other experts retained by the Talc Trust and its staff (if any) as the TAC and FCR may reasonably request during the time that the Trustees are considering such action, and shall also provide the TAC and FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustees.

(ii)     The TAC and FCR must consider in good faith and in a timely fashion any request for their consent by the Trustees and must in any event advise the Trustees in writing of their consent or objection to the proposed action within thirty (30) days of receiving

-36-

the original request for consent from the Trustees, or within such additional time as the Trustees and TAC and FCR may agree.  The TAC and FCR may not withhold their consent unreasonably. If the TAC or FCR decides to withhold consent, they must explain in detail their objections to the proposed action.  If either the TAC or the FCR does not advise the Trustees in writing of its consent or objections to the proposed action within thirty (30) days of receiving notice regarding such request (or any additional time period agreed to by the Trustees), then consent of the TAC or the FCR (as applicable) to the proposed action shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 7.1(b), the TAC or FCR continues to object to the proposed action and to withhold its consent to the proposed action, the Trustees and the TAC or FCR shall resolve their dispute pursuant to Section 7.13.  The TAC or FCR (as applicable) shall bear the burden of proving that it reasonably withheld its consent.  If the TAC or FCR (as applicable) meets that burden, the Talc Trust shall then bear the burden of showing why it should be permitted to take the proposed action notwithstanding the TAC or the FCR's reasonable objection.

**7.2    Irrevocability.**  To the fullest extent permitted by applicable law, the Talc Trust is irrevocable.

**7.3    Term; Termination.**

(a)    The term for which the Talc Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 7.3 (b) - (d) below.

(b)    The Talc Trust shall automatically dissolve on the date (the **"Dissolution Date"**) ninety (90) days after the first occurrence of any of the following events:

-37-

(i) the date on which the Trustees decide, with the consent of the TAC and the FCR, to dissolve the Talc Trust because (A) the Trustees deem it unlikely that new Talc Claims will be filed against the Talc Trust, (B) all Talc Claims duly filed with the Talc Trust have been liquidated and paid or otherwise resolved, and (C) twelve (12) consecutive months have elapsed during which no new Talc Claim has been filed with the Talc Trust; or

(ii) if the Trustees, with the consent of the TAC and the FCR, have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Talc Trust in a manner consistent with this Trust Agreement and the TDP, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a Final Order; or

(iii) subject to the periods provided herein, the Talc Trust shall be perpetual to the fullest extent permitted by Delaware law, provided however to the extent that any property of the Talc Trust is subject to any rule against perpetuities then applicable to the Talc Trust, then the Talc Trust shall terminate as to such property only on the date on which twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof, or such other permissible last day of the perpetuities period.

(c) On the Dissolution Date (or as soon thereafter as is reasonably practicable), after the wind-up of the Talc Trust's affairs by the Trustees and payment of all the Talc Trust's liabilities have been provided for as required by applicable law including section 3808 of the Act, all monies remaining in the Talc Trust shall be given to charitable organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue

-38-

Code, which tax-exempt organization(s) shall be selected by the Trustees using their reasonable discretion; *provided, however,* that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on the cure of, or other relief for individuals suffering from talc-related disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtors within the meaning of section 468B(d)(3) of the Internal Revenue Code.  Notwithstanding any contrary provision of the Plan and related documents, this Section 7.3(c) cannot be modified or amended.

(d)    Following the dissolution and distribution of the assets of the Talc Trust, the Talc Trust shall terminate and the Trustees and the Delaware Trustee (acting solely at the written direction of the Trustees) shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Talc Trust to be filed in accordance with the Act.  Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Talc Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

**7.4    Amendments.**    The Trustees, after consultation with the TAC and the FCR, and subject to the unanimous consent of the TAC and the FCR, may modify or amend this Trust Agreement (except with respect to Section 7.3(c), which by its own terms is expressly not subject to modification or amendment).  The Trustees, after consultation with the TAC and the FCR, and subject to the consent of the TAC and the FCR, may modify or amend the TDP; *provided, however,* that no amendment to the TDP shall be inconsistent with the provisions limiting amendments to that document provided therein, and in particular the provisions limiting amendment of the Payment Percentage set forth in Section 4.2 of the TDP.  Any modification or amendment made pursuant to this Section must be done in writing.  Notwithstanding anything contained in this Trust Agreement or the TDP to the contrary, neither this Trust Agreement, the

TDP, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify (i) the applicability of section 524(g) and section 105 of the Bankruptcy Code to the Plan, the Confirmation Order, or the Talc Trust, (ii) the efficacy or enforceability of the Injunctions or any other injunction or release issued or granted in connection with the Plan, (iii) the Talc Trust's Qualified Settlement Fund status under the QSF Regulations, or (iv) except with the written advance consent of the Reorganized Debtors and the Imerys Plan Proponents, the scope and the terms of the releases and injunctions included in Article XII of the Plan.  Any amendment affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent.

  **7.5** **Severability.** Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

  **7.6** **Notices.**

  (a) Notices to persons asserting claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's representative, in each case as provided on such person's claim form submitted to the Talc Trust in accordance with the TDP  with respect to his or her Talc Claim, or by such other means, including electronic notice, as may be agreed between the Talc Trust and the TAC.

  (b) Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

-40-

To the Talc Trust through the Trustees:

    Ivory America Personal Injury Trust
    c/o
    [_____]

With a copy to:

    [_____]

To the Delaware Trustee;

    [_____]

To the TAC:

    [_____]

To the FCR:

    [_____]

With a copy to:

    [_____]

To the Reorganized Debtors:

    [_____]

With a copy to:

    [_____]

(c)    All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

**7.7**    **Successors and Assigns.**  The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Debtors, the Talc Trust, the FCR, the TAC, the

-41-

Trustees, and the Reorganized Debtors, and their respective successors and assigns, except that neither the Debtors, the Talc Trust, the FCR, the TAC, the Trustees, nor the Reorganized Debtors may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Trustees in accordance with Section 4.3 above, the TAC members in accordance with Section 5.4 above, and the FCR in accordance to Section 6.3 above.

      **7.8**    <u>**Limitation on Claim Interests for Securities Laws Purposes**</u>.  Talc Claims, and any interests therein, (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest; provided, however, that clause (a) of this Section 7.8 shall not apply to the holder of a claim that is subrogated to a Talc Claim as a result of its resolution of such Talc Claim.

      **7.9**    <u>**Entire Agreement; No Waiver**</u>.  The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein, and in the documents referred to herein (including the Plan), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

      **7.10**    <u>**Headings**</u>.  The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

**7.11**    <u>**Governing Law.**</u>  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Talc Trust, the Trustees, the Delaware Trustee, the TAC, the FCR, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustees accounts or schedules of Trustees fees and charges; (b) affirmative requirements to post bonds for the Trustees, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustees, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of Trustees, the Delaware Trustee, the TAC, or the FCR set forth or referenced in this Trust Agreement.  Section 3540 of the Act shall not apply to the Talc Trust.

20877240v15

7.12    **Settlors' Representative and Cooperation.**  The Debtors are hereby irrevocably designated as the Settlors and are hereby authorized to take any action required of the Settlors by the Trustees in connection with the Trust Agreement.  The Reorganized Debtors agree to cooperate in implementing the goals and objectives of this Trust Agreement at the sole expense of the Talc Trust.

7.13    **Dispute Resolution.**  Any disputes that arise under this Trust Agreement or under the TDP among the Parties hereto shall be resolved by submission of the matter to an alternative dispute resolution (**"ADR"**) process mutually agreeable to the Parties involved.  Should any Party to the ADR process be dissatisfied with the decision of the arbitrator(s), that Party may apply to the Bankruptcy Court for a judicial determination of the matter.  Any review conducted by the Bankruptcy Court shall be *de novo*.  In any case, if the dispute arose pursuant to the consent provision set forth in Section 7.1, the Party or Parties who withheld consent shall bear the burden of proving that it reasonably withheld its consent.  If the objecting Party meets that burden, the Talc Trust shall then bear the burden of showing why it should be permitted to take the proposed action notwithstanding the reasonable objection.  Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the Parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court.  If the Trustees determine that the matter in dispute is exigent and cannot await the completion of the ADR process, the Trustees shall have the discretion to elect out of the ADR process altogether or at any stage of the process and seek resolution of the dispute in the Bankruptcy Court.

7.14    **Enforcement and Administration.**  The provisions of this Trust Agreement and the TDP shall be enforced by the Bankruptcy Court pursuant to the Plan and the Confirmation Order.  The Parties hereby acknowledge and agree that the Bankruptcy Court shall have

-44-

continuing exclusive jurisdiction over the settlement of the accounts of the Trustees and over any disputes that arise under this Trust Agreement or the TDP and are not resolved by alternative dispute resolution in accordance with Section 7.13 above.

**7.15** **Effectiveness.**  This Trust Agreement shall not become effective until the Effective Date of the Plan and it has been executed and delivered by all the Parties hereto.

**7.16** **Counterpart Signatures.**  This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

-45-

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this_____ day of _____, 2021.

**SETTLORS:**

**IMERYS TALC AMERICA, INC.**                    **IMERYS  TALC VERMONT, INC.**


By:_____          By:_____


**IMERYS TALC CANADA INC.**


By:_____


**OFFICIAL COMMITTEE OF TORT CLAIMANTS**


By:_____

**TRUSTEES**

**DELAWARE TRUSTEE**
**[_____]**

_____

By:_____

Name:
Expiration Date of Initial Term:
anniversary of the date of this Trust Agreement

    Name:
    Title:

_____

Name:
Expiration Date of Initial Term:
anniversary of the date of this Trust Agreement

_____

Name:
Expiration Date of Initial Term:
anniversary of the date of this Trust Agreement

**TRUST ADVISORY COMMITTEE**

_____
Firm:   Ashcraft & Gerel LLP
Name: Michelle A. Parfitt
Initial Term of ____(_) years

_____
Firm:   Barnes Law Group
Name: John R. Bevis
Initial Term of ____(_) years

_____
Firm:   Baron & Budd P.C.
Name: Steve Baron
Initial Term of ____(_) years

_____
Firm:   Beasley Allen Crow Methvin Portis
& Miles P.C.
Name: Ted G. Meadows
Initial Term of ____(_) years

_____
Firm:   Burns Charest LLP
Name: Amanda Klevorn
Initial Term of ____(_) years

_____
Firm:   Cohen Placitella Roth PC
Name: Christopher Placitella
Initial Term of ____(_) years

_____
Firm:   Gori Julian & Assocs., P.C.
Name: Wendy M. Julian
Initial Term of ____(_) years

_____
Firm:   The Lanier Law Firm
Name: Maura Kolb
Initial Term of ____(_) years

_____
Firm:   Levy Konigsberg LLP
Name: Audrey Raphael
Initial Term of ____(_) years

_____
Firm:   OnderLaw, LLC
Name: James G. Onder
Initial Term of ____(_) years

_____
Firm:   Simon Greenstone Panatier, P.C.
Name: Leah Kagan
Initial Term of ____(_) years

20877240v15

**FCR**

_____

Firm:   Young Conaway Stargatt & Taylor LLP
Name:  Sharon M. Zieg

**Exhibit 1**

Certificate of Trust

**(TO COME)**