**<u>EXHIBIT D</u>**

**Cyprus Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the **"Cyprus Settlement Agreement"**) is entered into by and among Cyprus Mines Corporation (**"Cyprus Mines"**), Cyprus Amax Minerals Company (**"CAMC,"** together with Cyprus Mines, **"Cyprus"**), Freeport-McMoRan Inc. (**"Freeport"** and, together with Cyprus, the **"Cyprus Parties"**), on the one hand, and Imerys Talc America, Inc. (**"ITA"**), Imerys Talc Vermont, Inc. (**"ITV"**), Imerys Talc Canada Inc. (**"ITC"**), and, to the extent it becomes a debtor in the Imerys Chapter 11 Cases, Imerys Talc Italy S.p.A. (**"ITI"**), the Tort Claimants' Committee in the Imerys Chapter 11 Cases (the **"Tort Claimants' Committee"**), and James L. Patton as Future Claims Representative in the Imerys Chapter 11 Cases (the **"FCR"**) on the other hand.  Capitalized terms appearing in this Cyprus Settlement Agreement that are not defined in this prefatory paragraph have the meanings set out in Section 1 of this Cyprus Settlement Agreement.

## RECITALS

WHEREAS, certain Talc Personal Injury Claims have been brought, and in the future may be brought, against the Imerys Debtors and/or Cyprus seeking damages and other relief for, among other things, alleged bodily injury;

WHEREAS, disputes have arisen as to the liabilities or obligations of the Imerys Debtors and of Cyprus for Talc Personal Injury Claims;

WHEREAS, disputes have also arisen as to (a) the rights of the Imerys Debtors and of Cyprus to seek coverage for Talc Personal Injury Claims under the Cyprus Talc Insurance Policies and (b) the existence and scope of the rights of the Imerys Debtors and of Cyprus to seek indemnification for Talc Personal Injury Claims from J&J;

WHEREAS, on February 13, 2019, ITA, ITV, and ITC filed voluntary petitions for relief with the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, commencing their respective chapter 11 cases;

WHEREAS, pursuant to the Imerys Plan, ITI will file its own Chapter 11 Case if the Imerys Plan is accepted by the requisite percentages of holders of Talc Personal Injury Claims;

WHEREAS, the Imerys Debtors, on the one hand, and the Cyprus Parties, on the other hand, while denying that they are liable for any injuries relating to the Talc Personal Injury Claims, wish to fully and finally resolve their disputes as part of a global compromise and settlement to be implemented through the Imerys Plan and the Cyprus Mines Plan; and

WHEREAS, the global compromise and settlement is intended: (a) to provide the Cyprus Protected Parties with a full and comprehensive resolution and release of – and an injunction channeling to the Talc Personal Injury Trust – any and all current and future potential liabilities, at law or equity, arising out of or related to talc-related litigation claims that may be channeled, released and/or enjoined under the Bankruptcy Code (including sections 105(a), 524(g), and 1141(d) of the Bankruptcy Code) and Rule 9019 of the Bankruptcy Rules, and (b) to resolve any and all estate claims (including claims based on theories of veil piercing, successor liability or conspiracy) that any of the Imerys Debtors, or Cyprus Mines as a debtor, could assert against Cyprus Mines (in the case of the Imerys Debtors), CAMC, or any other Cyprus Protected Party;

NOW THEREFORE, in consideration of the foregoing, and in consideration of the other mutual considerations, promises, releases, and covenants set forth below, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

US-DOCS\120836835.1

1.    **ADDITIONAL DEFINITIONS**

The following definitions apply to this Cyprus Settlement Agreement.  The singular form of a word includes the plural and vice versa; the disjunctive "or" is not exclusive and thus includes the conjunctive "and"; all pronouns apply to the male, female, and neutral genders; the word "any" includes the word "all" and vice versa; and the words "includes" and "including" are without limitation.

1.1.    **"Affirmation Order"** shall have the meaning set forth in the Imerys Plan.

1.2.    **"ATA"** shall mean that certain Agreement of Transfer and Assumption (as amended) dated June 5, 1992 between Cyprus Mines and Cyprus Talc Corporation (n/k/a Imerys Talc America, Inc.).

1.3.    **"Bankruptcy Code"** shall have the meaning set forth in the Imerys Plan.

1.4.    **"Bankruptcy Court"** shall have the meaning set forth in the Imerys Plan.

1.5.    **"Bankruptcy Rules"** shall have the meaning set forth in the Imerys Plan.

1.6.    **"Business Day"** shall have the meaning set forth in the Imerys Plan.

1.7.    **"California Coverage Action"** means the action captioned as *Columbia Casualty Co., et al.* v. *Cyprus Mines Corp., et al.*, No. CGC-17-560919 (Cal. Super. Ct.).

1.8.    **"CAMC Cash Payments"** shall have the meaning set forth in Section 3.1 of this Cyprus Settlement Agreement.

1.9.    **"CAMC Funding Loan"** shall have the meaning set forth in Section 5.7 of this Cyprus Settlement Agreement.

1.10.    **"Cash"** shall have the meaning set forth in the Imerys Plan.

1.11.    **"Channeling Injunction"** shall mean the permanent injunction provided for in the Imerys Plan and the Cyprus Plan with respect to Talc Personal Injury Claims against the

3

Protected Parties to be issued pursuant to the Confirmation Order and the confirmation order in the Cyprus Mines Bankruptcy, it being understood that the scope of the Channeling Injunction in the Cyprus Mines Plan shall channel all Talc Personal Injury Claims as defined in the Cyprus Mines Plan and shall otherwise be substantially similar to the Channeling Injunction in the Imerys Plan.

1.12. **"Claim,"** when capitalized, shall have the meaning set forth in the Imerys Plan.

1.13. **"CMAC"** shall mean Climax Molybdenum Asia Corporation.

1.14. **"Confirmation Date"** shall have the meaning set forth in the Imerys Plan.

1.15. **"Confirmation Order"** shall have the meaning set forth in the Imerys Plan.

1.16. **"Cyprus Affiliated Parties"** shall have the meaning set forth in the Imerys Plan.

1.17. **"Cyprus Contribution"** shall have the meaning set forth in the Imerys Plan.

1.18. **"Cyprus Indemnity Adversary Proceeding"** shall mean *Cyprus Mines Corporation and Cyprus Amax Minerals Company v. Imerys Talc America, Inc., Imerys Talc Vermont, Inc., Johnson & Johnson and Johnson & Johnson Consumer Inc.*, Adv. Pro. No. 20-50626 (Bankr. D. Del.).

1.19. **"Cyprus Indemnity Rights"** shall mean (i) all of the Cyprus Parties' rights to or claims for indemnification, contribution (whether via any "other insurance" clauses or otherwise), reimbursement or subrogation against any Person relating to the payment or defense of any Talc Personal Injury Claim or other past talc-related claim channeled to the Talc Personal Injury Trust prior to the Cyprus Trigger Date (the **"Cyprus Credits"**), and (ii) all of their rights or claims for indemnification, contribution (whether via any "other insurance" clauses or otherwise), reimbursement or subrogation against any Person relating to any other Talc Personal Injury Claim or other claims channeled to the Talc Personal Injury Trust (the **"Cyprus Future**

4

**Credits"**); *provided, however*, that the assertion of the Cyprus Credits or Cyprus Future Credits against a Protected Party shall be subject to the Channeling Injunction, and nothing herein shall impact the injunctions and releases otherwise inuring to the benefit of the Cyprus Protected Parties under the terms of the Imerys Plan and Cyprus Plan; and *provided further* that, for the avoidance of doubt, the Cyprus Indemnity Rights shall not include, and the assignment of such rights shall not impair, the rights of any Talc Insurance Company.

1.20. **"Cyprus Insurance Adversary Proceeding"** shall mean *Imerys Talc America, Inc., et al. v. Cyprus Amax Minerals Company and Cyprus Mines Corporation*, Adv. Pro. No. 19-50115 (Bankr. D. Del.).

1.21. **"Cyprus Insurance Protocol"** shall have the meaning set forth in the Imerys Plan, it being understood that any changes to the Cyprus Insurance Protocol from that which is set out in the Fifth Amended Imerys Plan must be consented to by the Parties hereto.

1.22. **"Cyprus Mines Bankruptcy"** shall have the meaning set forth in the Imerys Plan.

1.23. **"Cyprus Mines Estate"** means the estate created in the Cyprus Mines Bankruptcy under section 541 of the Bankruptcy Code.

1.24. **"Cyprus Mines Plan"** shall have the meaning set forth in the Imerys Plan.

1.25. **"Cyprus Mines Released Claims"** shall have the meaning set forth in Section 4.3 of this Cyprus Settlement Agreement.

1.26. **"Cyprus Parties"** shall have the meaning set forth in the Imerys Plan.

1.27. **"Cyprus Protected Parties"** shall have the meaning set forth in the Imerys Plan.

1.28. **"Cyprus Released Claims"** shall have the meaning set forth in Section 4.1 of this Cyprus Settlement Agreement and Section 12.2.1(d) of the Imerys Plan, it being understood

5

that the Cyprus Mines Plan shall include a definition of "Cyprus Released Claims" substantially similar to the definition in the Imerys Plan.

    1.29.  **"Cyprus Settlement"** means that certain comprehensive settlement by and among the Cyprus Parties, the Debtors, the Tort Claimants' Committee, and the FCR, the terms of which are set forth in and implemented by the Imerys Plan, the Cyprus Mines Plan, and this Cyprus Settlement Agreement, pursuant to which, in exchange for the Cyprus Contribution and other good and valuable consideration, the Cyprus Protected Parties receive the benefit of the releases, injunctions, and other protections set forth in the Imerys Plan, the Cyprus Mines Plan, and this Cyprus Settlement Agreement

    1.30.  **"Cyprus Talc Insurance Company"** shall have the meaning set forth in the Imerys Plan.

    1.31.  **"Cyprus Talc Insurance Policy"** shall have the meaning set forth in the Imerys Plan.

    1.32.  **"Cyprus Talc Insurance Policy Rights"** shall mean (a) all rights, Claims, benefits or causes of action held by the Cyprus Protected Parties with respect to the Cyprus Talc Insurance Policies, including the right to receive proceeds; and (b) all rights, Claims, or causes of action held by the Cyprus Protected Parties, including the right to receive proceeds, with respect to any settlement agreements or coverage-in-place agreements to the extent those agreements amend, modify, replace, or govern the rights and obligations of, and the coverage afforded to, any or all of the Cyprus Protected Parties under any Cyprus Talc Insurance Policy. For the avoidance of doubt, subject to Section 6.1 hereof, the right to receive proceeds under any such agreements will not apply to any proceeds paid to a Cyprus Protected Party under such agreements prior to the Cyprus Trigger Date.

US-DOCS\120836835.1

1.33.    **"Cyprus Trigger Date"** shall have the meaning set forth in the Imerys Plan.

1.34.    **"Disclosure Statement"** shall have the meaning set forth in the Imerys Plan.

1.35.    **"District Court"** shall have the meaning set forth in the Imerys Plan.

1.36.    **"Document Access Agreement"** shall have the meaning set forth in Section 8.3 of this Cyprus Settlement Agreement.

1.37.    **"Estate Causes of Action"** shall mean all actions, claims, rights remedies, defenses, counterclaims, suit and causes of action that fall within the definition of "Estate Cause of Action" in the Imerys Plan or in the Cyprus Mines Plan, as applicable, it being understood that the Cyprus Mines Plan shall include a definition of "Estate Cause of Action" substantially similar to the definition in the Imerys Plan.

1.38.    **"Execution Date"** means the earliest date on which this Cyprus Settlement Agreement has been signed by all Parties.

1.39.    **"Fifth Amended Imerys Plan"** shall mean the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, Case No. 19-10289, D.I. 2673 (filed Dec. 22, 2020).

1.40.    **"Final Order"** shall have the meaning set forth in the Imerys Plan.

1.41.    **"First Installment"** shall have the meaning set forth in Section 3.1.1.1 of this Cyprus Settlement Agreement.

1.42.    **"Foreign Claims"** shall have the meaning set forth in the Imerys Plan.

1.43.    **"Imerys Chapter 11 Cases"** means the procedurally consolidated chapter 11 cases of the Imerys Debtors pending in the Bankruptcy Court and jointly administered as Case No. 19-10289 (LSS), and, if applicable, the chapter 11 case to be commenced by ITI.

1.44.    **"Imerys Debtors"** means ITA, ITV, ITC, and, to the extent it becomes a debtor in the Imerys Chapter 11 Cases, ITI.

1.45.    **"Imerys Debtor Released Claims"** shall have the meaning set forth in Section 4.2 of this Cyprus Settlement Agreement.

1.46.    **"Imerys Effective Date"** shall have the same meaning as the term "Effective Date" in the Imerys Plan.

1.47.    **"Imerys Estates"** means the estates created in the Imerys Chapter 11 Cases under section 541 of the Bankruptcy Code.

1.48.    **"Imerys Plan"** means the *Seventh Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated January 20, 2021 (ECF No. 2809), as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code, and with Cyprus' consent to the extent required by the Imerys Plan.

1.49.    **"Imerys Plan Supplement"** shall have the same meaning as the term "Plan Supplement" in the Imerys Plan.

1.50.    **"J&J"** shall have the meaning set forth in the Imerys Plan.

1.51.    **"Minimum Liquidity Covenant"** shall have the meaning set forth in Section 3.2 of this Cyprus Settlement Agreement.

1.52.    **"Parties"** shall mean the Cyprus Parties, the Imerys Debtors, the Tort Claimants' Committee and the FCR (and each, individually, a **"Party"**).

1.53.    **"PDC Agreement"** shall have the meaning set forth in the Imerys Plan.

1.54.    **"Person"** shall have the meaning set forth in the Imerys Plan.

1.55.    **"Plan Documents"** shall have the meaning set forth in the Imerys Plan.

US-DOCS\120836835.1

1.56.    **"Protected Party"** shall have the meaning set forth in the Imerys Plan.

1.57.    **"Reorganized Imerys Debtors"** shall have the same meaning as the term "Reorganized Debtors" in the Imerys Plan.

1.58.    **"Section 105 Injunction"** shall mean an injunction pursuant to Section 105 of the Bankruptcy Code entered in the Imerys Chapter 11 Cases against the commencement or continuation of any Talc Personal Injury Claims against Cyprus Mines and CAMC.   The Section 105 Injunction shall be effective on an interim basis and terminate, absent extension by the Bankruptcy Court, if the Confirmation Order confirming the Imerys Plan, and incorporating the Cyprus Settlement, is not entered by June 30, 2021.  In the event the Imerys Plan is approved by the Bankruptcy Court by June 30, 2021, the Section 105 Injunction shall extend through at least September 30, 2021, subject to further extension by the Bankruptcy Court.

1.59.    **"Supplemental Settlement Injunction Order"** shall have the meaning set forth in the Imerys Plan.

1.60.    **"Talc Insurance Company"** shall have the meaning set forth in the Imerys Plan.

1.61.    **"Talc Personal Injury Claim"** shall mean any Claim or Talc Personal Injury Demand (as such terms are defined in the Imerys Plan or the Cyprus Mines Plan) that falls within the definition of "Talc Personal Injury Claim" in the Imerys Plan or in the Cyprus Mines Plan, it being understood that the Cyprus Mines Plan shall include a definition of "Talc Personal Injury Claim" that includes claims, with respect to any manner of alleged bodily injury, death, sickness, disease or alleged disease process, emotional distress, fear of cancer, medical monitoring, or any other alleged personal injuries (whether physical, emotional or otherwise), against any Cyprus Protected Party that directly or indirectly arise out of or relate to the alleged acts or omissions of Cyprus Mines, or any other entity for whose conduct Cyprus Mines has or is alleged to have

9

liability, relating to talc or talc-related products.  As in the Imerys Plan, the definition of "Talc Personal Injury Claim" in the Cyprus Mines Plan shall include Indirect Talc Personal Injury Claims as defined in the Cyprus Mines Plan.

1.62.   **"Talc Personal Injury Trust"** shall have the meaning set forth in the Imerys Plan.

1.63.   **"Trust Distribution Procedures"** shall have the meaning set forth in the Imerys Plan.

## 2.   CONDITIONS TO EFFECTIVENESS

2.1.   This Cyprus Settlement Agreement shall become effective and binding on the earliest date on which all of the following conditions precedent have occurred, *provided, however*, that any of the conditions precedent set out in Sections 2.1.1 through 2.1.8 below may be waived pursuant to a writing signed by each Party (if before the Imerys Effective Date), or signed by each of the Cyprus Parties and the Talc Personal Injury Trust (if after the Imerys Effective Date) on a prospective or retroactive basis:

2.1.1.   Each Party executes this Cyprus Settlement Agreement;

2.1.2.   The Imerys Debtors seek the Section 105 Injunction no later than January 21, 2021;

2.1.3.   The Bankruptcy Court enters the Section 105 Injunction by February [28], 2021;

2.1.4.   The Bankruptcy Court confirms the Imerys Plan, including approval of the Cyprus Settlement, by June 30, 2021;

2.1.5.   A bankruptcy court confirms the Cyprus Mines Plan, including approval of the Cyprus Settlement, by September 30, 2021;

2.1.6.   The District Court enters the Affirmation Order with respect to the Imerys Plan and the Affirmation Order becomes a Final Order;

2.1.7.   A district court enters an affirmation order with respect to the Cyprus Mines Plan and that affirmation order becomes a Final Order;

2.1.8.   The other conditions precedent set forth in Section 9.2 of the Imerys Plan and substantially similar conditions in the Cyprus Mines Plan have been satisfied or waived in accordance with the terms of the applicable plan;

2.1.9.   The Imerys Effective Date has occurred; and

2.1.10. The Cyprus Trigger Date has occurred.

3.    **CYPRUS CONTRIBUTION**

3.1.   **CAMC Cash Payments**

3.1.1.   Following the Cyprus Trigger Date, pursuant to an unsecured seven-year promissory note, issued by CAMC, for and on behalf of itself, Cyprus Mines, and all other Cyprus Protected Parties, in favor of the Talc Personal Injury Trust, with a stated principal amount of $130 million as of the Cyprus Trigger Date, CAMC will pay, or cause to be paid, a total of $130 million in Cash, via wire transfers, to the Talc Personal Injury Trust (the **"CAMC Cash Payments"**) in seven installments, where each subsequent payment shall be made on or before the anniversary of the first payment.  The sum of the first three payments shall be $65 million, and the sum of the next four payments shall be $65 million. Each payment shall be made no later than as set forth in the following schedule:

- Within thirty (30) days after the Cyprus Trigger Date: $21.67 million (the **"First Installment"**);

- 1-year anniversary of the First Installment: $21.67 million;

11

- 2-year anniversary of the First Installment: $21.67 million;

- 3-year anniversary of the First Installment: $16.25 million;

- 4-year anniversary of the First Installment: $16.25 million;

- 5-year anniversary of the First Installment: $16.25 million; and

- 6-year anniversary of the First Installment: $16.25 million.

3.1.2.  Prior to the Cyprus Trigger Date, the Talc Personal Injury Trust shall provide the Cyprus Parties with a Form W-9 containing the Talc Personal Injury Trust's tax identification number and bank account information sufficient to make the required wire transfers to the Talc Personal Injury Trust.

3.1.3.  Payment of the CAMC Cash Payments by CAMC, for and on behalf of itself, Cyprus Mines, and all other Cyprus Protected Parties, shall not be reduced or affected by any payments the Cyprus Parties may have made in connection with Talc Personal Injury Claims prior to the Cyprus Trigger Date.

3.1.4.  The releases and injunctions contained in the Imerys Plan, this Cyprus Settlement Agreement, and the Confirmation Order with respect to the Cyprus Protected Parties shall dissolve immediately should any of the CAMC Cash Payments (or, if required by the guarantee in Section 3.2.1, any payments from Freeport) not be received by the Talc Personal Injury Trust within thirty (30) days of a true and accurate written notice from the Talc Personal Injury Trust to CAMC and Freeport in accordance with

12

Section 14.8 that such payment was due and not made by the applicable deadline set forth in Section 3.1.1.

3.2.    **Freeport Guarantee of CAMC Obligations**

3.2.1.   Freeport shall provide a guarantee of the CAMC Cash Payments and shall be subject to a minimum liquidity covenant of not less than $500 million tested as of the end of each of its fiscal quarters (the **"Minimum Liquidity Covenant"**).

3.2.2.   If Freeport fails to meet the Minimum Liquidity Covenant in respect of any such fiscal quarter before CAMC has paid the $130 million in full, Freeport will post security in favor of the Talc Personal Injury Trust in respect of the Cyprus Parties' obligations under Section 3 in the form of a performance bond, letter of credit, or other similar instrument for all remaining cash payments.

3.2.3.   For purposes of this Section 3.2, "liquidity" means the sum of unrestricted cash of Freeport and its consolidated subsidiaries as of the applicable test date, plus availability under Freeport's revolving credit facilities at such time.

3.3.    **Transfer of the Cyprus Talc Insurance Policies**

3.3.1.   On the Cyprus Trigger Date, or promptly thereafter (not to exceed five (5) Business Days), the Cyprus Parties shall execute and deliver to the Talc Personal Injury Trust an Assignment of Rights substantially in the form of **Exhibit A** assigning and transferring to the Talc Personal Injury Trust any and all of the Cyprus Talc Insurance Policy Rights, and any and all Cyprus Indemnity Rights.

3.3.2.   Upon the occurrence of the Cyprus Trigger Date, the Talc Personal Injury Trust will assume all present and future obligations associated with recovering proceeds under the Cyprus Talc Insurance Policies; *provided that* solely to the extent that the Talc

13

Personal Injury Trust asserts any claim as assignee of a Cyprus Protected Party bound by the PDC Agreement, the Talc Personal Injury Trust shall abide by the terms of the PDC Agreement; *provided further that* unless otherwise stated in the Imerys Plan or this Cyprus Settlement Agreement, the Talc Personal Injury Trust obligations shall not include any obligations undertaken by any Cyprus Protected Party in any settlement agreement or other contract compromising or releasing any rights under any Cyprus Talc Insurance Policy.

3.3.3.   Within five (5) Business Days of the Cyprus Trigger Date, CAMC shall deliver an officer's certificate representing that the Cyprus Protected Parties do not have insurance policies issued prior to June 30, 1992 that may provide coverage for any Talc Personal Injury Claim other than the Cyprus Talc Insurance Policies.

3.3.4.   Following the Cyprus Trigger Date, the Cyprus Protected Parties agree not to assert, file, or pursue any claim seeking contribution or indemnity against any Person in order to recover any proceeds of the Cyprus Talc Insurance Policies.

3.3.5.   The Cyprus Protected Parties shall assist and cooperate with the Talc Personal Injury Trust as may be reasonably necessary for the pursuit of coverage under the Cyprus Talc Insurance Policies, including with respect to the California Coverage Action.  Such assistance shall include, at least, using commercially reasonable efforts to provide all information and documentation reasonably necessary to assert all rights under the Cyprus Talc Insurance Policies, including: (a) non-privileged communications with the Cyprus Talc Insurance Companies regarding the Cyprus Talc Insurance Policies; (b) documents sufficient to show, and proof of, all amounts paid under the Cyprus Talc Insurance Policies, including for defense costs, judgments, or settlements of claims; and

14

(c) non-privileged communications with other third parties relating to the Cyprus Talc Insurance Policies, any rights thereunder, or any claims or defenses related thereto; *provided*, *however*, that such assistance will not extend to any documents or information that are subject to any applicable privilege, including attorney-client privilege, common-interest privilege, or mediation privilege, or to the work-product doctrine, and will be provided subject to the requirements of any existing confidentiality agreements, unless modified or waived by the necessary parties, and *provided further* that nothing in this Section 3.3.5 shall require any of the Cyprus Protected Parties to take any action that would expose them to liability, including for breach of confidentiality obligations**.**

3.4.    **Cyprus Insurance Protocol.**  The Talc Personal Injury Trust shall comply with the Cyprus Insurance Protocol.

## 4.  RELEASES

4.1.    **Release of the Cyprus Released Claims.**  Effective upon the Cyprus Trigger Date (and subject to Section 9 herein), for good and valuable consideration, the adequacy of which is hereby confirmed, the Imerys Debtors, on their own behalf and as representatives of their respective Imerys Estates, and the Reorganized Imerys Debtors, and any of their successors, are deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge each and all of the Cyprus Protected Parties of and from (a) all Estate Causes of Action and (b) any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which the Imerys Debtors, the Imerys Estates, and the

Reorganized Imerys Debtors have, had, may have, or may claim to have against any of the Cyprus Protected Parties, directly or indirectly arising out of, with respect to, or in any way relating to any Talc Personal Injury Claim, including any and all claims and causes of action asserted or assertable in the Cyprus Insurance Adversary Proceeding and the Cyprus Indemnity Adversary Proceeding (collectively, the **"Cyprus Released Claims"**).

4.2.    **Release of Imerys Debtor Released Claims.**  Effective upon the occurrence of the Cyprus Trigger Date (and subject to Section 9 herein), for good and valuable consideration, the adequacy of which is hereby confirmed, the Cyprus Protected Parties shall be deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge the Imerys Debtors, the Imerys Estates, the Reorganized Imerys Debtors, and (other than as provided in the Imerys Plan) the Talc Personal Injury Trust from any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which the Cyprus Protected Parties have, had, may have, or may claim to have against any of the Imerys Debtors, the Imerys Estates, the Reorganized Imerys Debtors, or (other than as provided in the Imerys Plan) the Talc Personal Injury Trust directly or indirectly arising out of, with respect to, or in any way relating to any Talc Personal Injury Claim, including any and all claims and causes of action asserted or assertable in the Cyprus Insurance Adversary Proceeding and the Cyprus Indemnity Adversary Proceeding (collectively, the **"Imerys Debtor Released Claims"**). For avoidance of doubt, nothing in this Section 4.2 shall affect or impair any Cyprus Protected Party's rights, causes of action or claims against J&J.

16

4.3.    **Release by Cyprus Mines of Cyprus Protected Parties**.  Effective upon the Cyprus Trigger Date (and subject to Section 9 herein), for good and valuable consideration, the adequacy of which is hereby confirmed, Cyprus Mines, on its own behalf and on behalf of the Cyprus Mines Estate, is deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge each and all of the Cyprus Protected Parties of and from (a) all Estate Causes of Action and (b) any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which Cyprus Mines or the Cyprus Mines Estate has, had, may have, or may claim to have against any of the Cyprus Protected Parties, directly or indirectly arising out of, with respect to, or in any way relating to any Talc Personal Injury Claim (collectively, the **"Cyprus Mines Released Claims"**).

4.4.    **Unknown or Future Claims.**  The Parties expressly acknowledge that there may be changes in the law or the Parties may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the claims released in Sections 4.1, 4.2, and 4.3 above.  Nevertheless, the Parties hereby agree that (subject to Section 9 of this Cyprus Settlement Agreement) the releases set forth in Sections 4.1, 4.2, and 4.3 above shall be and remain effective in all respects, notwithstanding any changes in the law or the discovery of such additional or different facts.  In addition, the Parties acknowledge that they have been advised by their respective legal counsel regarding, and are familiar with, the provisions of section 1542 of the California Civil Code, which provides:

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of**

**executing the release, and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Parties expressly waive and relinquish any and all rights or benefits they have or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect, as to the releases given in this Cyprus Settlement Agreement, to the full extent that such right or benefit may be lawfully waived.  In connection with the waiver and relinquishment of rights or benefits under California Civil Code § 1542 or any other federal or state statute, rule, law or common law principle of similar effect, each Party acknowledges that it fully understands that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Cyprus Settlement Agreement, and that it is that Party's intention hereby to fully, finally and forever release all claims and rights, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past, as to the matters released in Sections 4.1, 4.2, and 4.3 of this Cyprus Settlement Agreement.

4.5.    **Releases Cumulative.**  For the avoidance of doubt, the releases contained in this Section 4 are cumulative of any applicable releases contained in the Imerys Plan and the Cyprus Mines Plan.

4.6.    **Other Rights and Obligations Under This Cyprus Settlement Agreement Not Affected.**  The releases set forth in Section 4 of this Cyprus Settlement Agreement are not intended to, and shall not, extend to or otherwise release any of the respective rights, privileges, benefits, duties, or obligations of the Parties pursuant to or arising from this Cyprus Settlement Agreement, the Imerys Plan, or the Cyprus Mines Plan.

US-DOCS\120836835.1

**5.**    **CYPRUS MINES BANKRUPTCY**

5.1.    The Cyprus Mines Plan shall be in a form and substance reasonably acceptable to the Imerys Debtors, the Tort Claimants' Committee and the FCR, respectively and as applicable, with respect to each provision that is material to the Imerys Debtors, the Tort Claimants' Committee or the FCR's rights and obligations in connection with the Cyprus Settlement.  The Cyprus Mines Plan, the proposed confirmation order in the Cyprus Mines Bankruptcy, and the proposed affirmation order in the Cyprus Mines Bankruptcy shall be in form and substance acceptable to CAMC.

5.2.    The Imerys Debtors, Tort Claimants' Committee, and FCR agree to take all reasonable and necessary steps to obtain approval of the Cyprus Settlement in the Imerys Chapter 11 Cases.  The Tort Claimants' Committee and FCR also agree to take all reasonable and necessary steps to obtain approval of the Cyprus Settlement in the Cyprus Mines Bankruptcy.  The Tort Claimants' Committee, FCR, and the Cyprus Parties shall cooperate in good faith to seek entry of a confirmation order in the Cyprus Mines Bankruptcy and an affirmation order in the Cyprus Mines Bankruptcy that are each consistent with this Cyprus Settlement Agreement.

5.3.    The Parties shall coordinate the preparation and filing of the Imerys Plan and the Cyprus Mines Plan to the maximum extent possible, *provided that* such coordination is not the cause for delay of the Imerys Debtors' confirmation schedule as approved by the Bankruptcy Court.

5.4.    The Cyprus Mines Plan will provide that (a) unsecured claims against Cyprus Mines other than Talc Personal Injury Claims, including any environmental and pension claims, will proceed through the bankruptcy and be unimpaired and (b) the equity of CAMC in Cyprus

19

Mines and Cyprus Mines' equity in CMAC shall not be affected or impaired, except to the extent that equity in Cyprus Mines is pledged to the Talc Personal Injury Trust.

5.5.    Prior to the Cyprus Trigger Date, Cyprus Mines shall provide the Tort Claimants' Committee and the FCR with diligence showing the current assets and value of CMAC.

5.6.    Absent the consent of the other Parties hereto, Cyprus Mines and CAMC agree that they shall not seek, pursuant to Section 105 of the Bankruptcy Code or otherwise, any interim injunctive protection applicable to any Talc Personal Injury Claim in connection with the Cyprus Mines Bankruptcy for the benefit of any party other than a Cyprus Protected Party.

5.7.    CAMC will provide superpriority debtor-in-possession financing to Cyprus Mines, on an unsecured basis, to fund the reasonable administrative expenses of the Cyprus Mines Bankruptcy, including the fees and expenses of a tort claimants' committee and future claims representative in the Cyprus Mines Bankruptcy (the **"CAMC Funding Loan"**).  Subject to Section 5.8 hereof, the CAMC Funding Loan will be in an amount reasonable and necessary to effectuate the Cyprus Settlement and consistent with customary terms and conditions.  The CAMC Funding Loan may not be used for purposes inconsistent with this Cyprus Settlement Agreement, including for pursuit of litigation against any Cyprus Protected Parties.  The CAMC Funding Loan (including any and all fees, costs, and expenses) will be forgiven upon the effective date of the Cyprus Mines Plan and the effectiveness of all associated releases and injunctions.

5.8.    Notwithstanding any other provision hereof, CAMC shall not be obligated to provide total financing in excess of $15 million (the **"Funding Commitment"**) in connection with the CAMC Funding Loan or to fund other expenses allocable to CAMC, Cyprus Mines or the Cyprus Mines Estate under Section 7 hereof.

20

5.9.    The Cyprus Mines Plan will contain the broadest releases and channeling injunctions permitted by sections 105(a), 524(g), and 1141(d)(1) of the Bankruptcy Code so as to prevent the assertion of any further Talc Personal Injury Claims of any kind against any Cyprus Protected Party.  The intent of the Parties is to provide the Cyprus Protected Parties with "global peace" from any further talc-related litigation.

5.10.    The Cyprus Mines Plan shall provide the following provisions or other equivalent provisions and protections, consistent with or parallel to the analogous provisions in the Imerys Plan:

5.10.1. The definition of "Estate Causes of Action" shall include causes of action against the Imerys Debtors, the Imerys Estates, and the Reorganized Imerys Debtors;

5.10.2. The definition of "Released Parties" shall include the Imerys Debtors, the Imerys Estates, and the Reorganized Imerys Debtors;

5.10.3. The definition of "Protected Parties" shall include the Imerys Debtors, the Imerys Estates, and the Reorganized Imerys Debtors;

5.10.4. This Cyprus Settlement Agreement shall be an exhibit to the Cyprus Mines Plan or included as part of the Cyprus Mines Plan Supplement;

5.10.5. The "Indemnification of Protected Parties" provision of the Cyprus Mines Plan shall provide for the indemnification of the Imerys Debtors, the Imerys Estates and the Reorganized Imerys Debtors;

5.10.6. The "Releases by Debtor and the Estate" provision of the Cyprus Mines Plan shall protect the Imerys Debtors, the Imerys Estates, and the Reorganized Imerys Debtors;

21

5.10.7. The "Releases by Holders of Claims" provision of the Cyprus Mines Plan shall protect the Imerys Debtors, the Imerys Estates, and the Reorganized Imerys Debtors;

5.10.8. The "Injunction Related to Releases" provision of the Cyprus Mines Plan shall protect the Imerys Debtors, the Imerys Estates and the Reorganized Imerys Debtors;

5.10.9. The "Channeling Injunction" provision of the Cyprus Mines Plan shall protect the Imerys Debtors, the Imerys Estates, and the Reorganized Imerys Debtors;

5.10.10. The Cyprus Mines Plan shall contain a provision substantially similar to the "Supplemental Settlement Injunction Order" provision of the Imerys Plan, and such provision shall protect the Imerys Debtors, the Imerys Estates, and the Reorganized Imerys Debtors; and

5.10.11. Proposed findings of fact and conclusions of law consistent with the relief to be provided to the Imerys Debtors, their Estates, and the Reorganized Imerys Debtors as set forth herein shall be included in the proposed order approving the Cyprus Mines Plan.

## 6. IMERYS CHAPTER 11 CASE

6.1. Following the entry of the Section 105 Injunction, as to all claims and lawsuits against Cyprus Mines and CAMC that are enjoined or stayed, and to the extent such injunctions or stays are and remain in place, Cyprus shall take all reasonable steps to avoid taking actions that would reduce the available limits of the Cyprus Talc Insurance Policies.

22

6.2.    The Parties shall cooperate in good faith to seek entry of the Confirmation Order and Affirmation Order in the Imerys Chapter 11 Cases.  The Imerys Plan, Confirmation Order, and Affirmation Order shall be in form and substance acceptable to CAMC and Cyprus Mines, respectively and as applicable, with respect to each provision that is material to CAMC's or Cyprus Mines' rights and obligations in connection with the Cyprus Settlement.

6.3.    The Imerus Plan shall include all terms that are material to the Cyprus Settlement that were first included in the Fifth Amended Imerys Plan, including at least the following provisions, and other terms necessary to effectuate the releases and protections to be afforded to the Cyprus Protected Parties pursuant to this Cyprus Settlement Agreement:

6.3.1.    The definition of "Estate Causes of Action" shall include causes of action against Cyprus Protected Parties.

6.3.2.    The definition of "Released Parties" shall include the Cyprus Protected Parties.

6.3.3.    The definition of "Protected Parties" shall include the Cyprus Protected Parties.

6.3.4.    This Cyprus Settlement Agreement shall be attached to the Imerys Plan.

6.3.5.    The "Indemnification of Protected Parties" provision shall include the Cyprus Protected Parties.  For the avoidance of doubt, the indemnification of the Cyprus Protected Parties shall not extend to Foreign Claims.

6.3.6.    The "Releases by Debtors and Estates" provision of the Imerys Plan shall protect the Cyprus Protected Parties, and a subsection of the Imerys Plan shall include a provision relating to "Cyprus Released Claims" that is

23

analogous to the "Imerys Released Claims" and "Rio Tinto/Zurich Released Claims" provisions as contained therein.

6.3.7. The "Releases by Holders of Claims" provision of the Imerys Plan shall protect the Cyprus Protected Parties.

6.3.8. The "Injunction Related to Releases" provision of the Imerys Plan shall protect the Cyprus Protected Parties.

6.3.9. The "Channeling Injunction" provision of the Imerys Plan shall protect the Cyprus Protected Parties.

6.3.10. The "Supplemental Settlement Injunction Order" provision of the Imerys Plan shall protect the Cyprus Protected Parties.

6.3.11. The Talc Personal Injury Trust shall assume the liabilities, obligations, and responsibilities of the Imerys Debtors and the Cyprus Protected Parties for all Talc Personal Injury Claims, financial or otherwise, including Indirect Talc Personal Injury Claims.

6.3.12. Proposed findings of fact and conclusions of law consistent with the relief to be provided to the Cyprus Protected Parties as set forth herein shall be included in the proposed order approving the Imerys Plan.

6.4.    On and after December 22, 2020, (a) the Cyprus Protected Parties shall stay and cease prosecuting all adversary proceedings, proofs of claim, objections, discovery demands and discovery disputes, and any other litigation against the Imerys Debtors, the Tort Claimants' Committee, and the FCR, and (b) the Imerys Debtors, the Tort Claimants' Committee, and the FCR shall stay and cease prosecuting all adversary proceedings, proofs of claim, objections, discovery demands and discovery disputes, and any other litigation against Cyprus Mines and the

other Cyprus Protected Parties; *provided that* the Imerys Debtors shall be permitted to file a proof of claim in the Cyprus Mines Bankruptcy solely to preserve their rights pending the Cyprus Trigger Date; *provided further* that, for the avoidance of doubt, the filing of the Imerys Plan shall not stay, delay, or otherwise prevent the adjudication of any adversary proceedings or claims of the Cyprus Protected Parties against J&J.

6.5.    Upon occurrence of the Cyprus Trigger Date, (a) the Cyprus Protected Parties shall release, dismiss and withdraw all claims against the Imerys Debtors arising out of, with respect to, or in any way relating to any Talc Personal Injury Claim, including without limitation all indemnity claims, and (b) the Imerys Debtors shall release, dismiss and withdraw all claims against Cyprus Mines and the other Cyprus Protected Parties arising out of, with respect to, or in any way relating to any Talc Personal Injury Claim, including all indemnity claims.  The foregoing dismissals and withdrawals shall be without prejudice to re-filing, and all releases shall be void and all released claims may be reinstated, if and only if the Affirmation Order or the affirmation order in the Cyprus Mines Bankruptcy fails to become a Final Order.

6.6.    Except to contend that any of the Parties hereto have breached this Cyprus Settlement Agreement, or to address any changes to the Imerys Plan or the Plan Documents materially impacting the rights of any Cyprus Protected Party or treatment of their Claims against the Imerys Debtors, the Cyprus Protected Parties shall not object to the Imerys Plan or seek any formal discovery from the Imerys Debtors, the Tort Claimants' Committee, or the FCR (and the Imerys Debtors, the Tort Claimants' Committee, and the FCR shall not seek formal discovery from the Cyprus Protected Parties) with respect to the Imerys Plan.  Within three (3) days following the Execution Date, any pending objections of the Cyprus Parties to the Imerys Plan and Disclosure Statement shall be deemed withdrawn.  Such withdrawals shall be without prejudice until the

US-DOCS\120836835.1

occurrence of the Cyprus Trigger Date, at which time such withdrawals shall be deemed to be with prejudice.  For the avoidance of doubt, in the event that this Cyprus Settlement Agreement is terminated or is no longer effective, this Section 6.6 shall no longer be effective and shall not prejudice the Cyprus Protected Parties' rights to take any of the actions described in this Section 6.6.

6.7.    On the Imerys Effective Date, the rights and obligations of the Imerys Debtors under this Cyprus Settlement Agreement shall be deemed to have been assigned and transferred to the Talc Personal Injury Trust without need of further action by any Party or Person, and the Talc Personal Injury Trust shall be bound by all of the provisions of this Cyprus Settlement Agreement.  The Reorganized Imerys Debtors shall continue to be bound by this Cyprus Settlement Agreement and shall retain the obligations and benefits hereunder to the extent consistent with the Imerys Plan.

6.8.    Solely in the event the conditions to effectiveness described in Section 2 of this Cyprus Settlement Agreement do not occur and are not waived, the stays described in Sections 6.5 and 6.6 shall be lifted and the Cyprus Protected Parties, on the one hand, and the Imerys Debtors, on the other hand: (a) shall be fully entitled to prosecute and seek recovery on all claims against one another, including under the Trust Distribution Procedures (as applicable), and in the interim may take any necessary action to avoid forfeitures or waivers of such claims; and (b) notwithstanding any prior actions or omissions, may opt out of any consensual release in the respective plans.

## 7.    ALLOCATION OF PROFESSIONAL FEES

7.1.    Cyprus Mines shall pay the reasonable fees and expenses of professionals for the TCC and FCR incurred on or after December 22, 2020, including to the extent those

26

professionals act in unofficial capacities on behalf of Cyprus Mines tort claimants prior to the Cyprus Mines Bankruptcy, in connection with preparation for Cyprus Mines' bankruptcy case, including preparation of its plan, disclosure statement and related documents.  Cyprus Mines shall provide reasonable retainers for Robinson & Cole LLP, Young Conaway Stargatt & Taylor, LLP, Willkie Farr & Gallagher LLP and Gilbert LLP for work in advance of the Cyprus Mines Bankruptcy on behalf of tort claimants against Cyprus Mines and the proposed representative of future tort claimants against Cyprus Mines.

7.2.    Any and all reasonable and documented fees and expenses incurred by the Tort Claimants' Committee and the FCR in the Imerys Chapter 11 Cases on or after December 22, 2020 related exclusively to the Cyprus Settlement or the defense of same will be paid by CAMC. For the avoidance of doubt, this includes the costs of litigating any objection made to the approval or implementation of this Cyprus Settlement Agreement by any entity in the Imerys Chapter 11 Case.

7.3.    Any and all reasonable and documented fees and expenses incurred by the Tort Claimants' Committee and the FCR in the Imerys Chapter 11 Cases defending objections or for other work that the Parties reasonably determine, in good faith, materially relates to both to the Cyprus Settlement and to other aspects of the Imerys Plan shall be allocated equally between the CAMC and the Imerys Estates (50% to each) until CAMC has expended $2.5 million under this Section 7.3.

7.4.    After CAMC has expended $2.5 million under Section 7.3, then fees and expenses in the category described in Section 7.3 shall be allocated equitably between CAMC and the Imerys Estates based on the relative benefit to the Cyprus Protected Parties, on the one hand, and the Imerys Estates, on the other.

27

7.5.    Fees or expenses relating to the Imerys Plan that do not relate in any material respect to the Cyprus Protected Parties and the Cyprus Settlement will be allocated solely to the Imerys Estates and not to Cyprus Mines or CAMC.

7.6.    The Parties will negotiate in good faith to resolve disputes regarding assignment of fees and expenses among the categories above.  Absent agreement, the Parties will submit to accelerated binding arbitration of disputes by Lawrence Pollack using a streamlined process to be determined in consultation with Mr. Pollack.

7.7.    For the avoidance of doubt, all fees and expenses paid by CAMC under this Section 7 shall be counted towards the $15 million Funding Commitment limit set forth in Section 5.8.

## 8.  COOPERATION

8.1.    Each Party shall use its reasonable efforts to obtain approval of this Cyprus Settlement Agreement.  In the event that any action or proceeding is commenced or prosecuted by any Person to invalidate or prevent the approval, validation, enforcement, or carrying out of all or any provisions of this Cyprus Settlement Agreement, the Parties mutually agree to cooperate in opposing such action or proceeding.

8.2.    Each of the Parties shall reasonably cooperate with each of the other Parties in responding to or opposing any motion, objection, claim, assertion, or argument by any Person that this Cyprus Settlement Agreement is not binding, or should be avoided, or that valuable and fair consideration or reasonably equivalent value has not been exchanged pursuant to this Cyprus Settlement Agreement.

8.3.    On the Cyprus Trigger Date, Cyprus Mines, CAMC and the Talc Personal Injury Trust shall enter into an agreement (the **"Document Access Agreement"**) whereby (i) certain

28

books and records of the Cyprus Protected Parties will be transferred, or otherwise made available, to the Talc Personal Injury Trust, and (ii) the Cyprus Protected Parties will reasonably cooperate with the Talc Personal Injury Trust with respect to all rights and causes of action assigned or contributed to the Talc Personal Injury Trust, including claims related to insurance or indemnity rights transferred to the Talc Personal Injury Trust against any Talc Insurance Company or J&J; *provided that* nothing in this Section 8.3 shall require any of the Cyprus Protected Parties to take any action that would expose them to liability.  The Document Access Agreement shall be filed by no later than the date of filing of the Plan Supplement in the Cyprus Mines Bankruptcy.

## 9.  VOIDABILITY

9.1.    This Cyprus Settlement Agreement shall be rendered null and void, as applicable, if any of the following contingencies occur, *provided, however*, that any of the contingencies set out in Sections 9.1.1 through 9.1.4 may be waived by the Parties pursuant to a writing signed by each Party (if before the Imerys Effective Date, including the Tort Claimants Committee and the FCR; if after the Imerys Effective Date, including the Talc Personal Injury Trust):

9.1.1.  The entry of a Confirmation Order by the Bankruptcy Court, or of an Affirmation Order by the District Court, confirming or affirming the confirmation of a Chapter 11 plan of reorganization for the Imerys Debtors that is not the Imerys Plan;

9.1.2.   The entry of a confirmation order by a bankruptcy court, or of an affirmation order by a district court, confirming or affirming the confirmation of a Chapter 11 plan of reorganization for Cyprus Mines that does not incorporate the terms of the Cyprus Settlement as set forth in this Cyprus Settlement Agreement and the Imerys Plan;

9.1.3.   The entry by the Bankruptcy Court or District Court of an order denying approval of the Cyprus Settlement or of this Cyprus Settlement Agreement, including an

29

order denying approval of the Imerys Plan to the extent it incorporates the Cyprus Settlement or the Cyprus Mines Plan to the extent it incorporates the Cyprus Settlement;

9.1.4.   The entry by the Bankruptcy Court, prior to the Imerys Effective Date, of a Final Order converting the Imerys Chapter 11 Cases into cases under Chapter 7 of the Bankruptcy Code or dismissing the Imerys Chapter 11 Cases;

9.1.5.   The non-occurrence of any of the conditions set forth in Section 2.1, including:

- Each Party executes this Cyprus Settlement Agreement;

- The Imerys Debtors seek the Section 105 Injunction no later than January 21, 2021;

- The Bankruptcy Court enters the Section 105 Injunction by February [28], 2021;

- The Bankruptcy Court confirms the Imerys Plan, including approval of the Cyprus Settlement, by June 30, 2021;

- A bankruptcy court confirms the Cyprus Mines Plan, including approval of the Cyprus Settlement, by September 30, 2021;

9.1.6.   The entry by the Bankruptcy Court, prior to the Imerys Effective Date, of a Final Order appointing a trustee or an examiner substantially possessing the rights, powers, and duties of a bankruptcy trustee in the Imerys Chapter 11 Cases; or

US-DOCS\120836835.1

9.1.7.   The entry by the Bankruptcy Court of a Final Order appointing a trustee or an examiner substantially possessing the rights, powers, and duties of a bankruptcy trustee in the Cyprus Mines Bankruptcy.

9.2.    Notwithstanding anything in this Cyprus Settlement Agreement to the contrary, in the event that one of the contingencies listed in Section 9.1 above occurs and is not waived by the Parties on a prospective or retrospective basis:

9.2.1.   This Cyprus Settlement Agreement, except for this Section 9 and any definitions of capitalized terms used herein (which shall remain in full force and effect), shall be null and void and:

- None of the Parties shall be bound by the terms of the Cyprus Settlement or any of the terms of this Cyprus Settlement Agreement (including the releases contained in Section 4 and the Assignment of Rights attached as Exhibit A);

- CAMC, for and on behalf of itself, Cyprus Mines, and all other Cyprus Protected Parties and/or Freeport shall not be obligated to pay the CAMC Cash Payments as described in Section 3.1 herein, and the Cyprus Protected Parties shall not be obligated to assign the Cyprus Talc Insurance Policy Rights or the Cyprus Indemnity Rights to the Talc Personal Injury Trust as described in Section 3.3 herein.

- The Cyprus Protected Parties shall not be designated as Protected Parties, in the Imerys Plan, Confirmation Order, or Affirmation Order, and the Cyprus Protected Parties shall not be entitled to assert the Channeling Injunction as a defense to any Talc Personal Injury Claim;

31

- The Cyprus Protected Parties shall not be obligated to pay any of the professional fees allocated to any of them pursuant to Section 7 that have not yet been incurred as of the date that one of the contingencies listed in Section 9.1 above occurs and is not waived by the Parties; and

- The Parties shall have all of the same rights, defenses, and obligations under or with respect to any and all of the Cyprus Talc Insurance Policies, and any and all agreements giving rise to the Cyprus Indemnity Rights, that they would have had absent this Cyprus Settlement Agreement.

9.2.2.  In the event of a material breach of this Cyprus Settlement Agreement by any Party to this agreement (regardless of whether such Party has signed the Settlement Agreement or been authorized to enter into the agreement), any Party to this Settlement Agreement whose rights are materially affected by such breach may terminate the Settlement Agreement and all obligations hereunder by providing notice to all other Parties hereto in accordance with Section 14.8.  Upon such termination, the Parties shall have no further obligations under the Cyprus Settlement Agreement, and, for the avoidance of doubt, the provisions of Section 9.2.1 shall apply.  Termination of this Cyprus Settlement Agreement pursuant to this Section 9.2.2 shall be the exclusive remedy for material breach of this Cyprus Settlement Agreement.

9.2.3.  Any and all otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date on which this Cyprus Settlement Agreement becomes null and void in accordance with Section 9.1 above, and no Party shall assert that any other

32

Party's failure during said period to raise any claim that would have been resolved by this Cyprus Settlement Agreement, had this Cyprus Settlement Agreement become effective or not been voided, as applicable, renders such claim time-barred.

## 10.    NO ADMISSIONS OR WAIVER OF PRIVILEGE

Nothing contained in this Cyprus Settlement Agreement, or in any negotiations, discussions, correspondence, or other materials of any kind relating to this Cyprus Settlement Agreement or relating to the negotiation of this Cyprus Settlement Agreement, shall be deemed to be an admission by any Party with respect to any matter or any factual or legal issue of any kind. In particular, nothing in this Agreement shall constitute an admission by any Party with respect to any factual or legal issue of any kind regarding the claims and causes of action asserted or assertable in the Cyprus Insurance Adversary Proceeding and the Cyprus Indemnity Adversary Proceeding. Nothing in this Cyprus Settlement Agreement is intended to waive, waives or shall be deemed to waive any Party's work-product protection or right to claim the protections of any applicable privilege, including attorney-client privilege, common-interest privilege, or mediation privilege.

## 11.    BINDING EFFECT OF AGREEMENT

Upon the Cyprus Trigger Date, all terms and provisions of this Cyprus Settlement Agreement shall be binding on, and shall inure to the benefit of, the Parties and their respective successors and assigns, including the Talc Personal Injury Trust.

## 12.    DISPUTE RESOLUTION

If any dispute should arise concerning the terms, meaning, or implementation of this Cyprus Settlement Agreement, the Parties agree to use their best efforts to reach a prompt resolution of such dispute. If the Parties are unable to reach an agreement, they shall proceed to

mediation administered by JAMS, and agree to request that Lawrence Pollack shall serve as mediator. Either Party may initiate litigation in the Bankruptcy Court to the extent the Bankruptcy Court has subject-matter jurisdiction, or to the extent it does not, in any other appropriate forum, but no Party may initiate litigation until forty-five (45) days after a mediation has commenced and the mediator has determined that the Parties' mediation has reached an impasse. All of the Parties consent to personal jurisdiction in any federal court (including the Bankruptcy Court) or state court in the State of Delaware for purposes of resolving any dispute concerning the terms, meaning, or implementation of this Cyprus Settlement Agreement.

## 13.    CONSTRUCTION OF AGREEMENT

13.1.    The Parties represent and acknowledge that they have participated in the preparation and drafting of this Cyprus Settlement Agreement or have each given their approval to all of the language contained in this Cyprus Settlement Agreement, and it is expressly agreed and acknowledged that if any of the Parties later asserts that there is an ambiguity in the language of this Cyprus Settlement Agreement, such asserted ambiguity shall not be presumptively construed for or against any Party on the basis that one Party drafted the language of this Cyprus Settlement Agreement or played a greater role in the drafting of the language.

13.2.    This Cyprus Settlement Agreement shall be interpreted and construed consistent and *in pari materia* with the Imerys Plan. To the extent the Cyprus Protected Parties obtain benefits or protection under this Cyprus Settlement Agreement but not under the Imerys Plan, or vice versa, all benefits or protections are to be deemed cumulative and non-exclusive.

13.3.    The headings of this Cyprus Settlement Agreement are included for convenience and are not part of the provisions hereof and shall have no force or effect.

US-DOCS\120836835.1

13.4.    If any provision of this Cyprus Settlement Agreement or application thereof is held to be invalid or unenforceable, any Party shall be entitled to terminate this Cyprus Settlement Agreement as though a material breach had occurred under Section 9.2.2.

## 14.    REPRESENTATIONS, WARRANTIES, AND OTHER MISCELLANEOUS PROVISIONS

14.1.    Each Party represents and warrants that, subject to the conditions precedent set out in Section 2 of this Cyprus Settlement Agreement, it has taken all necessary corporate governance and legal action required to duly approve the making and performance of this Cyprus Settlement Agreement and that no further action is necessary to make this Cyprus Settlement Agreement binding and legally enforceable according to its terms.

14.2.    Each Party represents and warrants that, to the best of its knowledge and belief, the making and performance of this Cyprus Settlement Agreement will not violate any provision of law or any of its respective articles of incorporation or bylaws or any contract or agreement by which it is bound.

14.3.    Each Party represents and warrants that (a) it is the owner, or believes itself to be the owner, of the rights and claims to be compromised and released by it under this Cyprus Settlement Agreement and (b) it has not assigned or transferred, or does not believe it has assigned or transferred, to any Person any such right or claim or other matter to be compromised and released hereunder.

14.4.    Each Party represents and warrants that this Cyprus Settlement Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Cyprus Settlement Agreement legally binding and enforceable on and after the Cyprus Trigger Date.

14.5.    Each Party represents and warrants that this Cyprus Settlement Agreement has been entered into in good faith, as a result of arm's-length negotiations, with advice of counsel,

35

and that this Cyprus Settlement Agreement represents a fair, reasonable, proportionate, and good faith compromise of disputed claims, disputed liabilities, and disputed issues.

14.6.    Each Party represents and warrants that it has read this Cyprus Settlement Agreement in its entirety, fully understands all of its terms and the consequences thereof, and that the individual signing this Cyprus Settlement Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Cyprus Settlement Agreement.

14.7.    This Cyprus Settlement Agreement (including the exhibits attached to it) sets forth the entire agreement among the Parties as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral, except that this Cyprus Settlement Agreement shall be read *in pari materia* with the Imerys Plan.

14.8.    All notices, demands, or other communications to be provided pursuant to this Cyprus Settlement Agreement shall be in writing and sent by electronic mail and also by overnight mail (or United States first-class mail, postage prepaid), to the other Parties at the addresses set forth below, or to such other persons or addresses as the Parties may designate in writing from time to time:

For Cyprus Mines:

D. Jansing Baker
PO Box 609
Garrison, NY 10524
djbaker@djbaker.net

With a copy to:

Paul M. Singer
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222
psinger@reedsmith.com

36

<u>For CAMC</u>:

Scott Statham
c/o Freeport-McMoRan Inc.
333 North Central Ave.
Phoenix, AZ 85004
sstatham@fmi.com

With a copy to:

Emil A. Kleinhaus
Wachtell, Lipton, Rosen & Katz
52 West 52nd Street
New York, NY 10019
eakleinhaus@wlrk.com

<u>For Freeport</u>:

Scott Statham
c/o Freeport-McMoRan Inc.
333 North Central Ave.
Phoenix, AZ 85004
sstatham@fmi.com

With a copy to:

Emil A. Kleinhaus
Wachtell, Lipton, Rosen & Katz
52 West 52nd Street
New York, NY 10019
eakleinhaus@wlrk.com

<u>For the Imerys Debtors</u>:

Ryan Van Meter, Esq.
Imerys Talc America, Inc.
100 Mansell Court East, Suite 300
Roswell, Georgia 30076
ryan.vanmeter@imerys.com

37

<u>With a copy to:</u>

Kimberly A. Posin, Esq.
Latham & Watkins LLP
355 S. Grand Avenue, Suite 100
Los Angeles, CA 90071
kim.posin@lw.com

Angela R. Elbert, Esq.
Neal, Gerber & Eisenberg LLP
Two North La Salle Street, Suite 1700
Chicago, IL  60602
aelbert@nge.com

<u>For the Tort Claimants Committee and the FCR</u>:

Kami E. Quinn, Esq.
Gilbert LLP
700 Pennsylvania Ave. SE
Washington, DC  20003
quinnk@gilbertlegal.com

with a copy to:

*Tort Claimants' Committee:*

Natalie D. Ramsey, Esq.
Robinson & Cole LLP
1201 North Market Street
Suite 1406
Wilmington, DE  19801
Direct 302.516.1702
nramsey@rc.com

*FCR:*

Edwin J. Harron, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE  19801
eharron@ycst.com

38

14.9.    This Cyprus Settlement Agreement may be amended only by a writing signed by or on behalf of each Party (if before the Imerys Effective Date, by the Tort Claimants Committee and the FCR; if after the Imerys Effective Date, by the Talc Personal Injury Trust).

14.10.    This Cyprus Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.    Execution of this Cyprus Settlement Agreement may be effected by electronic transmission of executed copies of the signature pages delivered to counsel for the Parties.

**IN WITNESS WHEREOF**, the Parties have duly executed this Cyprus Settlement Agreement as of the last date indicated below.

**IMERYS TALC AMERICA, INC. (on behalf of itself and each of the Imerys Debtors in the Imerys Chapter 11 Cases)**

By:    _____

Name: _____

Title:  _____

Date:  _____

**IMERYS TALC ITALY S.P.A.**

By:    _____

Name: _____

Title:  _____

Date:  _____

**CYPRUS MINES CORPORATION**

By:    _____

Name: _____

Title:  _____

Date:  _____

**CYPRUS AMAX MINERALS COMPANY**

By:    _____

Name: _____

Title:  _____

Date:  _____

**FREEPORT-MCMORAN INC.**

39

By: _____

Name: _____

Title: _____

Date: _____


**TORT CLAIMANTS' COMMITTEE**          **FCR**

By: _____        By: _____

Name: _____      Name: _____

Title: _____     Title: _____

Date: _____      Date: _____

40