# EXHIBIT B

**Financial Projections – North American Debtors**

**Financial Projections: Imerys Talc America, Inc., Imerys Talc Vermont, Inc. and Imerys Talc Canada Inc.**

**Introduction**

Imerys Talc America, Inc. ("**ITA**"), Imerys Talc Vermont, Inc. ("**ITV**") and Imerys Talc Canada Inc. ("**ITC**"), with the assistance of their restructuring, legal, and financial advisors, have prepared these projections (the "**North American Debtors Projections**"). The North American Debtors Projections should be read in connection with the assumptions and qualifications as described herein and in the Disclosure Statement.[1] For the purpose of projecting liabilities and continuing costs, the Debtors have assumed that the Effective Date of the Plan will be July 31, 2021.[2]

In order to fully administer the Plan, it is estimated that the Reorganized North American Debtors will require a consolidated cash balance totaling approximately $24.7 million. The cash balance is expected to be funded, as of the Effective Date, through a combination of the following sources:

- Cash held by the Debtors as of the date operations are discontinued and assets are transferred to a third party buyer;
- liquidation of any remaining receivable owed from Imerys USA to ITA or ITV;
- liquidation of any remaining receivable owed from Imerys S.A. to ITC;
- contribution from the Imerys Non-Debtors totaling $5.0 million to pay general unsecured claims of the North American Debtors;
- the Contingent Contribution; and
- proceeds from the Sale (subject to certain reductions).[3]

Estimated liabilities included as part of the North American Debtors Projections have been allocated to four separate Reserves, as required pursuant to the Plan. Funds held in the Reserves attributable to these liabilities will be disbursed on or following the Effective Date. The table below summarizes the projected disbursements and related timing, by year. The sections that follow provide additional details for the underlying costs within each Reserve.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "**Plan**").

[2] If the Plan is accepted by the requisite number of claimants in Class 4, Imerys Talc Italy S.p.A. ("**ITI**") will commence a bankruptcy case that will be, pending entry of an order by the Bankruptcy Court, jointly administered under Case No. 19-10289 (LSS). Financial projections related to ITI are separately attached to the Disclosure Statement.

[3] The North American Debtor Projections assume that the sale of the North American Debtors' assets to Magris Resources Canada Inc. pursuant to the Asset Purchase Agreement (as approved by the Sale Order) will close prior to the Effective Date.

| Plan of Reorganization: Funding Rollforward<br>($ in 000s) | 2021 | 2022 | 2023-2030 | Total |
|---|---:|---:|---:|---:|
| **Beginning Cash Balance** | **$24,734** | **$8,232** | **$3,778** | **$24,734** |
| | | | | |
| **Reserved Liabilities** | | | | |
| Administrative Claim Reserve | (1,851) | (135) | (34) | (2,020) |
| Fee Claim Reserve | (8,474) | - | - | (8,474) |
| Disputed Claims Reserve | (357) | - | - | (357) |
| Reorganized North American Debtor Cash Reserve | (5,820) | (1,754) | (3,744) | (11,319) |
| **Total Disbursements** | **(16,503)** | **(1,889)** | **(3,778)** | **(22,170)** |
| | | | | |
| Undistributed Imerys S.A. contribution for General Unsecured Claims (transferred to Trust) | - | (2,564) | - | (2,564) |
| | | | | |
| **Total Estate Disbursements** | **(16,503)** | **(4,454)** | **(3,778)** | **(24,734)** |
| | | | | |
| **Ending Cash Balance** | **$8,232** | **$3,778** | **$0** | **$0** |

**Administrative Claim Reserve**

As of the Effective Date, the Debtors project that certain Administrative Claims will be incurred, but remain unpaid. In addition to any accrued and unpaid Administrative Claims as of the Effective Date, the Estates will continue to incur costs, which would be granted administrative expense priority and/or be paid from the Administrative Claim Reserve, until the final decree is entered. The full balance of projected claims allocated to the Administrative Claim Reserve are discussed below.

United States Trustee Fees

Includes quarterly United States Trustee fees accrued for the period through July 2021. Individual balances for each of the North American Debtors are as follows:

($s in thousands)
- Imerys Talc America   $250.0
- Imerys Talc Vermont   $28.0
- Imerys Talc Canada   $88.0

Contract Cures

The Debtors do not currently estimate any reserve requirements related to contract cures, as no service agreements or similar third-party contracts are necessary post-Effective Date. To the extent certain indemnification agreements are deemed executory, the Debtors would likely assume such contracts, and currently do not estimate any cures with respect to such agreements.

Fees and Expenses of the Canadian Information Officer and Counsel to the Information Officer

The Information Officer is expected to remain in place until a final decree is entered in order to ensure adequate treatment of Canadian creditors and to close out the Canadian Proceeding. Estimated costs for the Information Officer and counsel to the Information Officer total $270.0 thousand.

Excluded Liabilities

Certain administrative expenses incurred as of the Sale Closing Date, namely property taxes and royalties, have due dates that arise after the Effective Date. As such, these obligations, totaling approx. $0.7 million, will remain unpaid as of the Effective Date and require to be reserved.

Post-Effective Date Claim Activities

The Debtors anticipate being required to undertake certain activities corresponding to the transfer of Talc Personal Injury Trust Assets to the Talc Personal Injury Trust. These activities include, but are not limited to, eDiscovery, document production, and maintaining records. In addition to these costs, the Debtors also estimate additional costs will be incurred by the Reorganized North American Debtors related to post-Effective Date claim objections (as related to Administrative Claims), other sale costs, and contingencies.

503(b)(9) and Disputed Administrative Claims

The Debtors' estimates currently include $472.5 thousand for allowed 503(b)(9) claims, Disputed Administrative Claims, and Administrative Claims not yet identified.

**Fee Claim Reserve**

Concurrent with the Effective Date, any accrued and unpaid professional fees will be held in the Fee Claim Reserve. These unpaid professional fees remain subject to Bankruptcy Court approval and timing per the Compensation Procedures Order. Professional fees included with the Fee Claim Reserve include:

- retained professionals for the Debtors, FCR, and Tort Claimants' Committee; and
- monthly fee applications, interim fee applications, and final fee applications not otherwise paid prior to the Effective Date.

Note: Restructuring professionals fees related to ITI are excluded from the Fee Claim Reserve. It is assumed that all restructuring fees related to ITI will be paid directly by ITI or reimbursed by ITI to ITA prior to the Effective Date. It is also assumed that investment bankers' transaction and advisory fees will be paid after the Sale Closing Date, but prior to the Effective Date.

**Disputed Claims Reserve**

The Debtors and their advisors continue to reconcile Claims recorded on the Claims Register maintained by Prime Clerk LLC ("**Prime Clerk**"). Amounts included in the Disputed Claims Reserve are maintained for distributable amounts required to be set aside on account of Disputed Non-Talc Claims. If the Debtors prevail in their objections to Disputed Non-Talc Claims included within this Reserve, any undistributed amounts from this Reserve will be transferred to the Talc Personal Injury Trust.

**Reorganized North American Debtor Cash Reserve**

The following section details key assumptions and post-Effective Date costs that are required to be reserved, and will be paid from Cash held by the Estates. The Reorganized North American Debtor Cash Reserve will be funded in a sufficient amount to satisfy certain Non-Talc Claims, and account for post-Effective Date obligations of the Reorganized North American Debtors, including, but not limited to, amounts necessary to (i) resolve potential environmental liabilities excluded from Asset Purchase Agreement, including estimated winddown costs, (ii) compensate the Disbursing Agent, (iii) enforce all rights to commence and pursue certain causes of action (as applicable), and (iv) administer the Canadian Proceeding.

Environmental Liabilities

The Debtors' environmental advisor, Ramboll US Corporation, prepared cost estimates for the closure of certain of the Debtors' former operational sites not otherwise sold as part of the Sale ("**Former Sites**"), as well as certain pre-closure environmental matters. Estimates related to potential environmental liabilities of Former Sites (that were not assumed by the Buyer), including a potential insurance policy, total approximately $4.2 million.

Disbursing Agent

The Plan requires appointment of a Disbursing Agent to make or facilitate Distributions pursuant to the Plan. Projected costs for the Disbursing Agent, during the post-Effective Date period, total approximately $1.4 million. The following key assumptions outline this position and related costs:

- Retention of a third party professional services firm with experience in these matters;
- Financial books and records electronically archived prior to the Effective Date; and
- Disbursing Agent will require ten (10) years from the Effective Date to close the North American Debtors' Chapter 11 Cases.

As the responsible party for the Reorganized North American Debtors, it is anticipated that the Disbursing Agent's role will include the following:

- Compliance with fiduciary duties required by the Reorganized North American Debtors;
- Assist legal counsel with filing objections to any Disputed Non-Talc Claims;
- Remit Distributions to holders of remaining Allowed Non-Talc Claims;
- Prosecute remaining Estate Causes of Action (if and as applicable);
- Distribute agreed documents and assets to the Talc Personal Injury Trust;
- File tax returns; and
- Oversee winddown of Former Sites, including resolution of remaining environmental claims (estimated to take approximately ten (10) years in total).

Legal Counsel

Legal counsel to provide support for Disbursing Agent mandates. The current reserve estimate of $1.1 million assumes legal counsel's role will involve the following:

- Resolve Claims objections;
- Resolve Disputed Claims;
- Respond to United States Trustee inquiries;
- Final decree to close Chapter 11 Cases for the North American Debtors; and
- Advise on any legal disputes arising from winddown of Former Sites.

Counsel for Canadian Recognition Proceeding

Canadian counsel will need to be retained as the Canadian Proceeding will continue until the ITA and ITV Chapter 11 Cases are closed. The estimated costs of $200.0 thousand are based on a historical 3-month average incurred costs during the pendency of these Chapter 11 Cases.

Noticing Agent

Estimated costs of $765.0 thousand incurred by Prime Clerk from the Effective Date through entry of final decree for services including maintenance of official Claims Register, noticing, serving objections, motions and distributions, if requested.

Independent Contractor Costs

Additional costs to periodically engage legacy Debtor personnel as contractors for *ad hoc* services projected to total approximately $40.0 thousand.

Final Post-Effective Activities

Included within the Reorganized North American Debtor Cash Reserve are estimates for a variety of other potential costs the Reorganized North American Debtors could incur post-Effective Date. These estimates total $465.0 thousand and include, without limitation:

- Cooperation costs (*e.g.*, expenses incurred under the Cooperation Agreement as outlined therein);
- Filing of tax returns;
- Provide W-2s to former employees; and
- Document retention and destruction.

Allowed Non-Talc Claims

Through extensive claim reconciliation efforts, the Debtors and their advisors estimate that Distributions on account of Allowed Non-Talc Claims will be as follows:

- Priority & Secured Claims: $800.0 thousand

- Unsecured Claims: $2.1 million

Post-Effective Date United States Trustee Fee

Reserved amount totals $210.0 thousand, and is based on projected disbursements made by the Reorganized North American Debtors following the Effective Date. This estimate utilizes the same methodology and assumptions applied for each United States Trustee quarterly fee payment calculated during the pendency of the Chapter 11 Cases.