**EXHIBIT D**

**Liquidation Analysis**

US-DOCS\120811663.4

**Liquidation Analysis**

## 1) Introduction

The Debtors, with the assistance of their restructuring, legal, and financial advisors, have prepared this hypothetical Liquidation Analysis in connection with the Debtors' Plan and Disclosure Statement pursuant to chapter 11 of the Bankruptcy Code.[1] The Liquidation Analysis indicates the estimated recoveries that may be obtained by Classes of Claims and Equity Interests in a hypothetical liquidation pursuant to chapter 7 of the Bankruptcy Code upon disposition of assets as an alternative to the Plan. Accordingly, asset values discussed herein may be different than amounts referred to in the Plan. In addition, ITI is included in the Liquidation Analysis even though ITI does not intend to file a chapter 11 bankruptcy petition unless holders of Claims in Class 4 vote to accept the Plan.

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to confirmation of the Plan, that each holder of a Claim or Equity Interest in each Impaired Class: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. In order to make these findings, the Bankruptcy Court must: (1) estimate the cash proceeds (the "**Liquidation Proceeds**") that a chapter 7 trustee (the "**Trustee**") would generate if each Debtor's chapter 11 case was converted to a chapter 7 case on the Effective Date and the assets of such Debtor's Estate were liquidated; (2) determine the distribution (the "**Liquidation Distribution**") that each holder of a Claim or Equity Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and (3) compare each holder's Liquidation Distribution to the distribution under the Plan that such holder would receive if the Plan were confirmed and consummated. Accordingly, asset values discussed herein may be different than amounts referred to in the Plan. The Liquidation Analysis is based upon certain assumptions discussed herein and in the Disclosure Statement.

THE DEBTORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES AND ASSUMPTIONS CONTAINED HEREIN, OR A TRUSTEE'S ABILITY TO ACHIEVE FORECASTED RESULTS. IN THE EVENT THAT THE CHAPTER 11 CASES ARE CONVERTED TO A CHAPTER 7 LIQUIDATION, ACTUAL RESULTS COULD VARY MATERIALLY FROM THE ESTIMATES AND PROJECTIONS SET FORTH IN THE LIQUIDATION ANALYSIS.

## 2) Basis of Presentation

The Liquidation Analysis has been prepared assuming that the Debtors' chapter 7 liquidation would commence on or about July 31, 2021 (the "**Liquidation Date**"). The *pro forma* values referenced herein are projected as of July 31, 2021. The Liquidation Analysis assumes that if the Plan is not confirmed at the Confirmation Hearing likely to occur 30 to 120 days prior

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (the "**Plan**").

to the Liquidation Date, the Chapter 11 Cases would convert to a chapter 7 liquidation.  The Liquidation Analysis was prepared on a legal entity basis for each Debtor and summarized into a consolidated report.

For the North American Debtors, the Liquidation Analysis assumes the sale of substantially all of the North American Debtors' assets (the "**Sale**") will close on or around January 31, 2021. For ITI, the Liquidation Analysis represents an estimate of recovery values and percentages based upon a hypothetical liquidation if a trustee were appointed by the Bankruptcy Court to convert assets into cash.  The determination of the hypothetical proceeds from the liquidation of assets is a *highly uncertain* process involving the extensive use of estimates and assumptions that, although considered reasonable by management and their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors and their management team.  The Liquidation Analysis should be read in conjunction with the assumptions, qualifications, and explanations set forth in the Disclosure Statement and the Plan in their entirety as well as the notes and assumptions set forth below.

The Liquidation Analysis assumes a timeline in which:

- The Sale closes on or around January 31, 2021;

- On the Liquidation Date, the North American debtors commence orderly wind-down procedures over a 3-month period to wind-down the estate at which point all book-keeping and claims distributions are finalized by October 31, 2021;

- on the Liquidation Date, ITI converts existing raw materials to finished goods for sale to customers over a 1-month period, ceasing operations by August 31, 2021; and

- all ITI assets are assumed to be sold and book-keeping is finalized by November 30, 2021, over a 3-month period following the cessation of operations.

In preparing the Liquidation Analysis, the Debtors have estimated an amount of Allowed Claims – except that no value has been estimated for Claims in Class 4 for the reasons set forth in Note T below – or Equity Interests for each Class of claimants based upon a review of the Debtors' balance sheets as of October 31, 2020, adjusted for estimated balances as of the Liquidation Date where needed.  The estimate of Allowed Claims in the Liquidation Analysis is based on the par value of each of these Claims.  The estimate of the amount of Allowed Claims and Equity Interests set forth in the Liquidation Analysis should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims and Equity Interests under the Plan.  The actual amount of Allowed Claims and Equity Interests could be materially different from the amount of Claims estimated in the Liquidation Analysis.[2]

---

[2] For example, the cessation of business in a liquidation is likely to trigger certain claims that otherwise would not exist under a chapter 11 plan absent a liquidation.

US-DOCS\120911017.1

For the avoidance of doubt, the Liquidation Analysis does not:

- include estimates for the tax consequences that may be triggered upon the liquidation and sale of assets in the manner described above (although such tax consequences may be material);

- assign value to Claims in Class 4 for the reasons discussed in Note T;

- estimate insurance or indemnity recoveries, including potential recoveries associated with the J&J Indemnification Obligations, for purposes of determining the Liquidation Proceeds, as the Debtors do not expect that insurance or indemnification recoveries would be higher in a chapter 7 liquidation than they would be pursuant to the Plan;

- include recoveries resulting from any potential preference, fraudulent transfer, or other litigation or avoidance actions; given the complexities in calculating such estimates, and the costs associated with prosecuting such actions, any potential recoveries were assumed to be negligible; or

- include recoveries potentially attributable to claims that are being settled under the Plan or pursuant to separate settlement agreements (*e.g.*, claims against Imerys S.A., Rio Tinto and Zurich, or Cyprus) as the Debtors assume that the value attributable to such claims will be less in the context of a chapter 7 liquidation given that (i) any recoveries on such claims will be offset by substantial legal costs associated with prosecuting the claims and (ii) the settling parties would not be entitled to the same injunctions and releases in the context of a chapter 7 liquidation.

**3) Liquidation Process**

This Liquidation Analysis assumes that substantially all of the assets of the North American Debtors have been disposed of pursuant to the Sale.  As such, a Trustee would not be required to liquidate any material assets of the North American Debtors, but would still be required to oversee all other aspects associated with the winding down the North American Debtors' Estates over a 3-month period.  The Trustee's mandate would primarily include:

- Oversight of the liquidation process and the related costs, including wind-down costs, and Trustee, professional, and other administrative fees; and

- Distribution of net proceeds to creditors in accordance with the priority scheme under chapter 7 of the Bankruptcy Code.

ITI's hypothetical liquidation would be conducted in a chapter 7 environment with the Trustee managing ITI's Estate to maximize recovery in an expedited process.  The Trustee's initial step would be to develop a liquidation plan to generate proceeds from the sale of entity specific assets for distribution to creditors.  The three major components of ITI's liquidation are as follows:

- generation of cash proceeds from asset sales, largely sold on a piecemeal basis;

3

- costs related to the liquidation process, such as personnel retention costs, severance, Estate wind-down costs and Trustee, professional, and other administrative fees; and

- distribution of net proceeds generated from asset sales to the holders of Claims and Equity Interests in accordance with the priority scheme under chapter 7 of the Bankruptcy Code.[3]

**4) Distribution of Net Proceeds to Claimants**

Any available net proceeds would be allocated to the applicable holders of Claims and Equity Interests in strict priority in accordance with section 726 of the Bankruptcy Code:

- Secured Claims: includes claims arising from post-petition contract claim at ITA and capital leases and auto leases at ITI.

- Chapter 11 Administrative Expense and Priority Claims: includes post-petition liabilities,[4] priority taxes, and restructuring professional fees.

- Unsecured Claims: includes contract rejection claims, trade claims, environmental liabilities, and various other unsecured liabilities.

- Talc Personal Injury Claims: includes claims against one or more of the Debtors directly or indirectly arising out of or relating to the presence of or exposure to talc or talc-containing products based on alleged acts or omissions of the Debtors or any other entity for whose conduct the Debtors have or are alleged to have liability, prior to the Effective Date.

- Intercompany Claims: includes claims held by both non-debtor affiliates and other Debtors.

- Existing Equity Interests: includes any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all common stock or units, preferred stock or units, or other instruments evidencing an ownership interest in any of the Debtors.

**5) Conclusion**

The Debtors have determined, as summarized in the following analysis, upon the Effective Date, the Plan will provide all holders of Claims and Equity Interests with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under

---

[3] The liquidation process would include a reconciliation of claims asserted against the Estates to determine the Allowed Claim amount per Class.

[4] The Liquidation Analysis assumes that all employees of the North American Debtors will be transferred to the Buyer pursuant to the Sale. Accordingly, post-petition vacation and severance costs contained within the analysis correspond to ITI's employees. For the avoidance of doubt, this Liquidation Analysis is a hypothetical analysis, and the Sale of the North American Debtors' assets to Magris Resources Canada Inc. pursuant to the Sale Order has not yet closed.

chapter 7 of the Bankruptcy Code, and as such believe that the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.

Under the proposed Plan, holders of Unsecured Claims would be paid in full, and the Talc Personal Injury Trust would receive contributions of at least (i) $75 million plus any remaining portion of the Sale Proceeds (up to $223 million) on the Effective Date pursuant to the Imerys Settlement (subject to the Contingent Contribution and certain reductions described in the Plan);[5] (ii) $340 million pursuant to the Rio Tinto/Zurich Settlement; and (iii) $130 million pursuant to the Cyprus Settlement.  In a liquidation under chapter 7 of the Bankruptcy Code, there is no guarantee that any of the funds to be paid pursuant to the Imerys Settlement, the Rio Tinto/Zurich Settlement, or the Cyprus Settlement would be available for distribution to holders of Talc Personal Injury Claims.

---

[5] In addition, pursuant to the Imerys Settlement, the Imerys Non-Debtors will contribute (i) $5 million for the payment of Allowed Claims in Class 3 against the North American Debtors, and (b) $2.5 million, which represents the balance of the Intercompany Loans, to fund administrative expenses during the pendency of the Chapter 11 Cases.

The following Liquidation Analysis should be reviewed with the accompanying notes.  The following tables reflect the rollup of the deconsolidated liquidation analysis for the Debtors.

| ($ in 000s) | Notes | Net Book Value 10/31/2020 | Adjustment | Pro Forma Value 7/31/2021 | Recovery Estimate $ Low | Midpoint | High |
|---|---|---|---|---|---|---|---|
| **Gross Liquidation Proceeds** | | | | | | | |
| **Current Assets** | | | | | | | |
| Cash & Cash Equivalents | [A] | $ 12,960 | $ 175,222 | $ 188,182 | $ 188,182 | $ 188,182 | $ 188,182 |
| Accounts Receivable | [B] | 25,054 | (20,951) | 4,103 | 3,252 | 3,460 | 3,669 |
| Intergroup Loan | [C] | 32,051 | (11,118) | 20,933 | 20,933 | 20,933 | 20,933 |
| Inventory | [D] | 29,169 | (27,279) | 1,889 | 601 | 730 | 859 |
| Other Current Assets | | | | | | | |
| Amounts owed from Debtors | [E] | 9,624 | 5,236 | 14,860 | 14,860 | 14,860 | 14,860 |
| Amounts owed from Non-Debtor Affiliates | [E] | 176 | 2,185 | 2,361 | 2,361 | 2,361 | 2,361 |
| Prepaid Expenses | [E] | 1,267 | (1,267) | -- | -- | -- | -- |
| Other Receivables | [E] | 2,021 | (1,625) | 396 | -- | -- | -- |
| Total Current Assets | | 112,323 | 120,403 | 232,725 | 230,190 | 230,527 | 230,864 |
| **Long Term Assets** | | | | | | | |
| PP&E | [F] | 61,942 | (57,307) | 4,635 | 1,653 | 1,866 | 2,079 |
| Deferred Tax | [G] | 11,275 | (10,071) | 1,204 | -- | -- | -- |
| Intangible Assets | [H] | 415 | (415) | 0 | -- | -- | -- |
| Other Long-Term Assets | [I] | 18,411 | (14,011) | 4,400 | 97 | 145 | 194 |
| Total Long-Term Assets | | 92,043 | (81,804) | 10,239 | 1,750 | 2,012 | 2,273 |
| **Total Assets** | | $ 204,366 | $ 38,599 | $ 242,964 | 231,940 | 232,539 | 233,137 |
| Intra-Debtor Equity Proceeds | | | | | -- | -- | -- |
| **Total Distributable Value** | | | | | 231,940 | 232,539 | 233,137 |
| **Less: Liquidation Costs** | | | | | | | |
| Post-Conversion Cash Flow | [J] | | | | 426 | 426 | 426 |
| Chapter 7 Trustee Commission | [K] | | | | (6,983) | (7,001) | (7,019) |
| Chapter 7 Professional Fees | [L] | | | | (1,706) | (1,721) | (1,736) |
| Orderly Wind-Down Costs | [M] | | | | (5,523) | (5,523) | (5,523) |
| Estate Wind-Down Costs | [N] | | | | (280) | (280) | (280) |
| Decommissioning Costs | [O] | | | | (1,800) | (1,800) | (1,800) |
| **Total Liquidation Adjustment** | | | | | (15,865) | (15,898) | (15,931) |
| **Net Liquidation Proceeds Available for Distribution to Creditors** | | | | | $ 216,075 | $ 216,641 | $ 217,206 |

6

| **Net Liquidation Proceeds Available for Distribution to Creditors** | | | | $ 216,075 | $ 216,641 | $ 217,206 |
|---|---|---|---|---|---|---|
| | | | **Estimated** | **Recovery Estimate $** | | |
| | **Notes** | | **Claims** | **Low** | **MidPoint** | **High** |
| Class 2 - Secured Claims | [P] | | $ 736 | $ 736 | $ 736 | $ 736 |
| **Remaining Amount Available for Distribution** | | | | 215,339 | 215,905 | 216,470 |
| Administrative Claims | [Q] | | 47,047 | 47,047 | 47,047 | 47,047 |
| **Remaining Amount Available for Distribution** | | | | 168,292 | 168,858 | 169,424 |
| Priority Tax Claims | [R] | | 64 | 64 | 64 | 64 |
| **Remaining Amount Available for Distribution** | | | | 168,229 | 168,794 | 169,360 |
| Class 1 - Priority Non-Tax Claims | [S] | | -- | -- | -- | -- |
| **Remaining Amount Available for Distribution** | | | | 168,229 | 168,794 | 169,360 |
| Classes 3-5 - Nonpriority Unsecured Claims | [T] | | 33,946 | 168,229 | 168,794 | 169,360 |
| **Remaining Amount Available for Distribution** | | | | -- | -- | -- |
| Class 6 - Equity Interests in North America Debtors | [U] | | 85,505 | -- | -- | -- |
| **Remaining Amount Available for Distribution** | | | | -- | -- | -- |
| Class 7 - Equity Interests in ITI | [V] | | $ 28,945 | -- | -- | -- |
| **Remaining Amount Available for Distribution** | | | | $ -- | $ -- | $ -- |

*[Remainder of This Page Intentionally Left Blank]*

7

**Specific Notes to the Liquidation Analysis**

*Net Liquidation Proceeds*[6]

- **Note A - Cash & Cash Equivalents**
  - Consists of rollforward of book cash as of the Liquidation Date for all legal entities.
  - Includes all cash held at SunTrust, Royal Bank of Canada, Signature Bank, Société Générale Italy, and Intesa Sanpaolo.
  - The projected cash balance for the North American Debtors as of July 31, 2021 reflects proceeds from the Sale and any additional *pro forma* cash activity through the Liquidation Date.
  - The projected cash balance for ITI as of July 31, 2021 is based on the latest *pro forma* business plan projections prepared by ITI and its advisors.
  - The Debtors estimate a 100% recovery of the *pro forma* balance of cash.

- **Note B - Accounts Receivable**
  - The analysis assumes the North American Debtors' accounts receivable balances will be conveyed to the Buyer as part of the Sale; therefore no recoverable value is projected.
  - The negative adjustments to accounts receivable reflect the Sale of the North American Debtors' assets. As the Sale is expected to close prior to the Liquidation Date, these assets are not reflected in the *pro forma* balance.
  - The only remaining accounts receivable on the Liquidate Date is accounts receivable for ITI.
  - For ITI:
    - Accounts receivable consists of accrued revenue, which is assumed to be paid in the ordinary course on 30 to 60 day payment terms.
    - The projected accounts receivable balances as of July 31, 2021 is based on the latest *pro forma* business plan projections prepared by the Debtors and its advisors.
    - The analysis assumes that a chapter 7 Trustee would retain certain existing staff to handle collection efforts for outstanding trade accounts receivable for the entities undergoing liquidation.
    - There are high risks with collecting accounts receivable once a liquidation is announced.
    - The adjustments to collections reflect the potential costs of litigation if customers do not pay or delay payments, customers attempting to offset payables due to business disruption, contract breach expenses as a result of the cessation of operations, and other offset risks.
    - The Debtors estimate the liquidation recovery value of accounts receivable is 79% to 89% of the *pro forma* value.

---

[6] Estimated net Liquidation Proceeds do not include an estimate for rights to insurance or indemnification proceeds as the Debtors do not expect that insurance or indemnification recoveries would be higher in a chapter 7 liquidation than they would be pursuant to the Plan.

US-DOCS\120911017.1

- **Note C - Intergroup Loan**
    - Consists of prepetition amounts owed from non-debtor affiliates.
    - The negative adjustments to the intergroup loan reflect the Sale of the North American Debtors' assets.  As the Sale is expected to close prior to the Liquidation Date, these assets are not reflected in the *pro forma* balance.
    - The projected parent receivable balance as of July 31, 2021 is based on the latest *pro forma* business plan projections prepared by the Debtors and its advisors and reflects draws against the balance for liquidity purposes to fund operations.
    - The Debtors estimate a 100% recovery of the *pro forma* balance of the intergroup loan.

- **Note D - Inventory**
    - The analysis assumes the North American Debtors' inventory will be conveyed to the Buyer as part of the Sale; therefore no recoverable value is projected as to the North American Debtors.
    - For ITI:
        - Inventory includes raw materials, spare parts, and finished goods.  ITI holds no goods on consignment.
        - Inventory is held across multiple locations and includes multiple SKUs and types.
        - Recovery percentages were estimated based on turnover metrics, days on hand, recent market price, and discussions with management.
        - Recovery percentages for finished goods assumed assets are sold in a fire-sale scenario.
        - Recovery percentages for raw materials reflect recovery against *pro forma* balances after adjustment for conversion of raw materials to finished goods during the post-conversion cash flow period.
        - The Debtors estimate the liquidation recovery value of inventory is 32% to 45% of the *pro forma* value.

- **Note E - Other Current Assets**
    - Other current assets primarily include amounts owed from other Debtors, amounts owed from non-debtor affiliates, prepaid expenses, and other receivables.
    - For both Debtor and non-debtor affiliate balances, debit balances located on the liability side of balance sheet were re-classed to receivables.
    - Debtor and non-debtor affiliate receivable balances were offset by post-petition payable balances at the legal entity level.
    - It is assumed that all prepaid expenses corresponding to the North American Debtors will be conveyed to the Buyer as part of the Sale.  ITI does not have prepaid expenses.
    - It is assumed that all other receivables of the North American Debtors will be conveyed to the Buyer as part of the Sale.  ITI's other receivables are not recoverable per discussions with management.
    - The negative adjustments to prepaid expenses and other receivables reflect the Sale of the North American Debtors' assets.  As the Sale is expected to close prior to the Liquidation Date, these assets are not reflected in the *pro forma* balance.

9

o The Debtors estimate the liquidation recovery value of other current assets is 100% of the *pro forma* value.

- **Note F - Property, Plant, and Equipment**
  o The analysis assumes the North American Debtors' Property, Plant, and Equipment will be conveyed to the Buyer as part of Sale; therefore no recoverable value is projected
  o For ITI:
    - Consists primarily of production plants, equipment utilized at the plant and mines, and land.
    - Estimated recoveries are based on estimates from management team and guidance on current market environment.
    - Recoveries on plants assume that ITI has ceased operations and no volumes are moving through the plants and they are sold in a fire-sale scenario. The buyer would purchase the plants as-is and would be responsible for any dismantling and transportation costs to relocate the assets to an operating location.
    - Other tangible assets were evaluated for their marketability to a non-talc related purchaser.
    - Recovery on land was discounted given the assumption that the asset was disposed in a fire-sale scenario.
    - The Debtors estimate the liquidation recovery value of Property, Plant, and Equipment is 36% to 45% of the *pro forma* value.

- **Note G - Deferred Taxes**
  o Deferred income taxes are assets arising from differences between statutory accounting and tax basis.
  o Per discussions with the parent company's internal tax professionals, deferred taxes can only be utilized by the Debtors and have no market value to third parties.
  o The Debtors estimate the liquidation recovery value of deferred taxes is 0% of the *pro forma* value.

- **Note H - Intangible Assets**
  o Consists primarily of software, goodwill, intangibles, and other assets, including intellectual property, patents, and business methodologies.
  o The Debtors estimate the liquidation recovery value of intangible assets is 0% of the *pro forma* value.

- **Note I - Other Long-Term Assets**
  o The analysis assumes the North American Debtors' other long-term assets will be conveyed to the Buyer as part of the Sale; therefore no recoverable value is projected
  o For ITI:
    - Other long-term assets includes overburden and mineral reserves associated with operating the mills and mines.

10

- Overburden is a capitalized cost incurred when removing the surface, rock and soil in order to access the underlying mineral deposit. As there is no tangible asset associated with this capitalized cost, no estimated recovery is assumed.
- Mineral reserves are the economically mineable part of a measured or indicated mineral resource and represents mineable ore within the mine. Talc mines with remaining useful life and unmined resources are primarily marketable to companies that mine talc minerals. This assumption creates the highest and best use, maximizes return for the Estates, and has been included as part of the Liquidation Analysis.
- The Debtors estimate the liquidation recovery value of other long-term assets is 2% to 4% of the *pro forma* value.

*Liquidation Adjustments*

- **Note J - Post-Conversion Cash Flow**
  - o Adjustment is based on (i) estimated cash flow generated (used) by the North American Debtors for the 1-month subsequent to Liquidation Date for claims reconciliations, and other Estate activities, and (ii) estimated cash flow generated (used) by ITI for 1-month subsequent to Liquidation Date for converting existing raw materials into finished goods for sale to third parties.
  - o For the North American Debtors, amounts are allocated to each legal entity based on the ratable total distributable value ("**Distributable Value**"), which is defined as economic recovery on assets prior to liquidations costs, generated by such legal entity. Estimated post-conversion cash flow for the North American Debtors is assumed to be ($0.2) million.
  - o ITI post-conversion cash flow was calculated independently for 1-month of operations until mine production and maintenance activities are assumed to be completely eliminated. Estimated post-conversion cash flow for ITI is assumed to be $0.6 million.

- **Note K - Chapter 7 Trustee Fees**
  - o Chapter 7 Trustee fees consist of fees paid to the chapter 7 Trustee to liquidate the Estates of the Debtors.
  - o The estimate is pursuant to section 326 of the Bankruptcy Code and is calculated at approximately 3% of all gross Liquidation Proceeds in excess of $1.0 million.
  - o Based on the Liquidation Proceeds forecast, the Debtors estimate the chapter 7 Trustee fees to be $7.0 million.

- **Note L - Chapter 7 Professional Fees**
  - o Chapter 7 professional fees includes costs to retain key professionals (attorneys, investment bankers, and financial advisors).
  - o The North American Debtors' Chapter 7 professional fee costs are assumed at 0.5% of Distributable Value.
  - o ITI's Chapter 7 professional fee costs are assumed at 2.5% of Distributable Value.

- o Based on the Liquidation Proceeds forecast, the Debtors estimate the chapter 7 professional fees to be $1.7 million.

- **Note M - Orderly Wind-Down Costs**
  - o Includes payroll, facility and overhead costs to assist the Trustee and retained professionals with post-close activities, which include: (i) accounting and remittance for accrued and unpaid invoices, (ii) calculating and distributing final payouts, and (iii) other administrative, dissolution and tax-related activities required to close the chapter 7 cases.
  - o Additional wind-down activities include monetizing assets (for ITI), reconciling claims and winding-down the estate.
  - o For the North American Debtors, these expenses are incurred over a 2-month period subsequent to cessation of operations.
  - o For ITI, a collective dismissal procedure would be required and managed according to established union procedures and labor law.  This communication and consultation lasts a maximum of 75 days.
  - o Additional costs at ITI include $3.2 million to account for a 12 months lay-off incentive to facilitate trade unions negotiations, $1.4 million in lieu of the dismissal notice requirement, and $0.7 million for dismissal tickets and the employee termination fund.
  - o Wind-down budget drafted in coordination with management, with an initial headcount totaling 311 FTEs declining over 4 months.
  - o Orderly wind-down costs for all of Debtors is estimated to be $5.5 million.

- **Note N - Estate Wind-Down Costs**
  - o Includes document retention, final W-2s, and final tax returns.
  - o Costs are estimated to be $0.3 million.

- **Note O - Decommissioning Costs**
  - o Includes amounts associated with decommissioning and reclamation of the Rodoretto mine at ITI.
  - o Examples of costs include earthwork/excavation, demolition, equipment demobilization, and associated operating expenses during the decommissioning period.
  - o Total estimated costs are estimated to be $1.8 million.

*Claims*

- **Note P - Secured Claims (Class 2)**
  - o Includes claims arising from post-petition contract claim at ITA and capital leases and auto leases at ITI.
  - o The Debtors estimate that there will be approximately $0.7 million of secured claims as of the Liquidation Date and that the recoveries will be 100%.

US-DOCS\120911017.1

- **Note Q - Administrative Expenses**
  - o Includes actual and necessary post-petition cost or expense of preserving the Estates or operating the businesses of the Debtors, post-petition costs, indebtedness or contractual obligations duly and validly incurred or assumed by the Debtors in the ordinary course of business, and compensation or reimbursement of expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 327, 328, and 330(a) of the Bankruptcy Code.
  - o Claims pursuant to section 503(b)(9) of the Bankruptcy Code as a result of receiving goods in the 20-day period prior to the Petition Date, have been paid in the ordinary course during chapter 11.
  - o Estimate of accrued professional fees based on the latest *pro forma* cash flow forecast projections prepared by the Debtors and their advisors.
  - o Accrued professional fee balances were offset at the advisor level for any retainers in place as of the Petition Date.
  - o The Debtors estimate that there will be approximately $47.0 million of chapter 11 administrative expenses remaining as of the Liquidation Date and that the recoveries will be 100%.

- **Note R - Priority Tax Claims**
  - o Allowed priority tax claims will be treated per section 1129(a)(9)(C) of the Bankruptcy Code and will receive interest on such allowed priority tax claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.
  - o The Debtors estimate that there will be approximately $0.1 million of priority tax claims and that recoveries will be 100%.

- **Note S – Employment Related Claims (Administrative Claims) and Priority Non-Tax Claims (Class 1)**
  - o The Debtors estimate that there will be no employment related claims or priority non-tax claims as the Liquidation Analysis assumes that all employees of the North American Debtors will be transferred to the Buyer pursuant to the Sale and ITI employment claims are addressed within Note M.

- **Note T – Non-Priority Unsecured Claims (Class 3)**
  - o *Overview – Classes 3, 4, and 5*
    - ▪ Claims in Classes 3, 4, and 5 are treated *pari passu*, and the Debtors estimate that in a chapter 7 liquidation there would be approximately $168.8 million distributed to holders of Claims in these Classes. The estimated amount of Claims in these Classes, other than Talc Personal Injury Claims, is $33.9 million. The Debtors estimate in a chapter 7 liquidation, all remaining distributable proceeds from the North American Debtors would go to Holders of Claims in Classes 3, 4, and 5 and no value would flow to Holders of Equity Interests in the North American Debtors or ITI. To the extent distributable proceeds remain such proceeds would go to holders of Equity Interests. As discussed below, no value has been assigned to the Talc

13

Personal Injury Claims therefore estimated recoveries are higher than stated claim value.

- Assuming Talc Personal Injury Claims are excluded from the Liquidation Analysis, Holders of Unsecured Claims and Intercompany Claims against ITI and the North American Debtors are expected to recover in full in a hypothetical liquidation pursuant to chapter 7.

o *Unsecured Claims (Class 3)*

- Includes unpaid prepetition trade, legal costs arising from prepetition talc litigation, environmental liabilities and surety bond claims.
- The Debtors estimate that there will be approximately $20.2 million of Unsecured Claims as of the Liquidation Date.
- For purposes of the Liquidation Analysis, estimated recovery values do not contemplate any potential distributions on account of the Talc Personal Injury Claims, given the inability to estimate such Claims. Accordingly, recovery values for Unsecured Claims may be materially less, depending on the actual value of the Talc Personal Injury Claims.

o *Talc Personal Injury Claims (Class 4)*

- Represents claims against one or more of the Debtors directly or indirectly arising out of or relating to the presence of or exposure to talc or talc-containing products based on alleged acts or omissions of the Debtors or any other entity for whose conduct the Debtors have or are alleged to have liability, prior to the Effective Date.
- At the time the Disclosure Statement was filed, Talc Personal Injury Claims remain unliquidated, contingent or disputed, and the aggregate amount of such Claims is unknown. The Debtors do not have sufficient information to estimate the amount of these Claims for purposes of this analysis, and therefore, no value has been assigned to Class 4 and no recovery value is currently projected.
- Conversion to chapter 7 would substantially impact the cost and efficiency of resolving the Talc Personal Injury Claims. Chapter 7 of the Bankruptcy Code contains no provision for establishing a trust or other efficient means to resolve such Claims.
- Under chapter 7, the Talc Personal Injury Claims, or any portion of such Claims would need to be resolved through litigation and the Trustee would need to engage litigation counsel to defend and liquidate those Claims. This differs significantly from the Plan, which proposes to establish the Talc Personal Injury Trust to resolve such Claims through the Trust Distribution Procedures. As such, litigation in a chapter 7 liquidation is likely to be more costly and time-consuming than resolving all Talc Personal Injury Claims through the Talc Personal Injury Trust to be established under the Plan. Additionally, and as discussed above, the Plan guarantees that certain amounts will be contributed to the Talc Personal Injury Trust as part of the Imerys Settlement, the Rio Tinto/Zurich Settlement, and the Cyprus Settlement. All or a portion of these amounts would likely not be paid in a chapter 7 liquidation or not without incurring significant litigation expenses.

14

- o *Intercompany Claims (Class 5)*
    - Includes claims held by both non-debtor affiliates and other Debtors. Claims held by non-debtor affiliates represent prepetition balances that arose in the ordinary course of business in trading relationships with the Debtors.
    - Debtor intercompany claims represent prepetition amounts owed to ITA from ITV, ITC, and ITI.
    - The Debtors estimate that there will be approximately $13.8 million of intercompany claims as of the Liquidation Date.

- **Note U - Equity Interests in the North American Debtors (Class 6)**
    - o Existing Interests consists of interests of any holders of any class of equity securities of any of the North American Debtors, represented by shares of common or preferred stock, limited partnership interests or other instruments evidencing an ownership interest in any of the North American Debtors, whether or not certificated, transferable, voting or denominated "stock" or a similar security, or any option, warrant or right, contractual or otherwise, to acquire any such interest.
    - o ITA is the direct parent of ITV and receives any proceeds remaining subsequent to ITV distributions following strict priority in accordance with section 726 of the Bankruptcy Code.
    - o The Debtors estimate that there will be no recoveries for equity interests in the North American Debtors.

- **Note V - Equity Interests in ITI (Class 7)**
    - o Existing Interests consists of interests of any holders of any class of equity securities of ITI, represented by shares of common or preferred stock, limited partnership interests or other instruments evidencing an ownership interest in any of ITI, whether or not certificated, transferable, voting or denominated "stock" or a similar security, or any option, warrant or right, contractual or otherwise, to acquire any such interest.
    - o Estimated recoveries for Equity Interests in ITI are expected to be zero.

US-DOCS\120911017.1