

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

February 1, 2021

**BY EMAIL/ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court
For the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

      Re:    <u>In re: Imerys Talc America, Inc., et al., Case No. 19-10289</u>[1]

Dear Judge Silverstein:

      This letter is sent on behalf of my client Imerys S.A. in response to the January 22, 2021 letter [ECF No. 2822] sent by counsel for Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "J&J").  This letter and J&J's from last week address the status of the discovery disputes that remain between J&J and Imerys S.A.  This current correspondence builds on the prior discussion contained in my October 30, 2020 letter [ECF No. 2445], which responded to allegations made in the J&J's October 23, 2020 letter [ECF No. 2394] to the Court, and discussions during recent hearings and conferences with the Court that have followed. Wherever possible, Imerys S.A. refers to this prior discussion and does not seek to restate arguments or positions it has described before.

      At the outset, the Non-Debtor Affiliates[2] state that while disagreements remain, they appreciate J&J's efforts to narrow their requests and attendant scope of the discovery disputes before this Court, including those described in J&J's January 22, 2021 letter.  For the first time since the parties' discussions began last fall, that letter describes tangible narrowed requests focused against Imerys S.A. (at pages 7-8) that J&J views as being what they actually need for the purported purposes it contends it needs them.  However, J&J continues to, in Imerys S.A.'s view, inaccurately frame this discovery dispute as centering on a theoretical disagreement over the applicability of the French Blocking Statute ("FBS").  Broad allegations that Imerys S.A. is seeking to avail itself of the benefits of the courts in this country while using the FBS as a shield

---

1.   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

2   Capitalized terms not otherwise defined have the same meaning as in our October 30, 2020 letter [ECF No. 2445].

from participation in a full and fair discovery process are neither true, nor helpful in reaching a resolution of the parties' continuing discovery disputes.

Here, the central issue on which the parties need this Court's assistance concerns the extent to which *any* additional discovery—whether from France or elsewhere—would be relevant and proportional to the needs of the parties in the context of these chapter 11 cases, as the Federal Rules of Civil Procedure require. *See* Fed. R. Civ. P. 26(b)(1). The Non-Debtor Affiliates including Imerys S.A. have already devoted enormous effort and resources to providing tens of thousands of documents about the pre-petition relationship between the Debtors and Non-Debtor Affiliates to the TCC and FCR, and subsequently to J&J. J&J has thus far failed to articulate any legitimate reason why J&J needs *any* additional documents— including documents located in France—for any legitimate purpose for which it could need them in these bankruptcy proceedings.

A.    **The Role Of The French Blocking Statute And The Proper Context For Imerys S.A.'s Productions**

J&J has indicated its dissatisfaction with the current discovery that Imerys S.A. has produced stems from the fact that Imerys S.A. did not collect and provide the TCC and FCR with materials located in France that are subject to the FBS. J&J has no direct alter ego or veil piercing claims against Imerys S.A. It instead is seeking to functionally audit the job that the TCC and FCR have done in pursuing and evaluating the claims, second-guessing the decisions they made during the discovery process, which naturally included agreeing to push in some areas of discovery while conceding in others.

While the FBS is real and Imerys S.A. is certainly concerned about the potential criminal consequences of violating it, Imerys S.A.'s primary objection to now producing any documents that exist in France and are subject to the FBS—contrary to J&J's mischaracterizations—is that they are beyond the scope of relevance for purposes of Plan discovery and the burden of collecting, reviewing and producing such documents in compliance with the Hague Evidence Convention would far exceed the needs of the case. The TCC and FCR were ultimately satisfied by the voluminous materials provided to them from U.S. sources in conducting their alter ego investigation. This stands to reason: the very idea underlying alleged alter ego control is that a parent corporation exerted undue control over its subsidiary, which by definition would have been evident in the instructions actually provided to the subsidiary or the transactions with the subsidiary. The control, if it existed at all, would be more evident in the subsidiaries' documents—such as the Debtor board of directors' materials, transaction information between subsidiaries, and the other categories of materials already produced to the TCC and FCR, and subsequently to J&J.

The application of the appropriate FBS comity analysis weighs in favor of giving effect to the FBS. To avoid repeating arguments previously made, we refer the Court to the FBS comity analysis described in my October 30, 2020 letter, [ECF 2445], in particular at pages 7 and 8, and respond here only to object to J&J's inaccurate application of these factors, which again ignores, most importantly, (i) the fulsome and comprehensive productions Imerys S.A. has already made to J&J and (ii) the fact that the additional documents J&J now seeks are beyond the proper scope of Plan discovery. Perhaps recognizing that it was likely to lose on the "degree of

specificity" factor alone, J&J has now shifted its tack—for the first time, and in its letter brief, rather than in a meet and confer—and purports to offer to "narrow" its discovery requests.

The "narrowed" requests, while better, continue to seek expansive and unnecessary discovery, beyond the proper scope of Plan discovery.  For example, the only "narrowing" apparent from the first two categories is that for Requests 4-16, J&J is now only seeking "*internal*" discussions for those 13 requests.  The same is true for the fourth category they propose, spanning 16 other requests, including, for example: "All Documents and Communications related to any instructions, demands, directives, suggestions, or advice given by Imerys S.A. to any Debtor or ITI,"[3] as well as "All Documents and Communications between You, including but not limited to, Your officers, directors, and executive personnel, and [nine listed entities], including but not limited to, their officers, directors, and executive personnel (as applicable), relating to talc operations, including but not limited to, mining, processing, shipping, contents, and quality."[4]  These requests remain tremendously overbroad, seeking material far outside the proper scope of Plan discovery.

**B.     J&J Improperly Seeks So-Called "Alter Ego-Related Discovery" Beyond the Scope of Plan Discovery and Irrelevant to Examining Alter Ego Claims**

Imerys S.A. and Imerys U.S.A., Inc. have fully responded to J&J's discovery demands within the limits of the proper scope of Plan discovery.

Rule 26(b) of the Federal Rules of Civil Procedure (made applicable by Rule 7026 of the Federal Rules of Bankruptcy Procedure) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  J&J has failed to articulate any reason why additional documents from the Non-Debtor Affiliates—whether located in France or anywhere else—would be relevant or proportional to J&J's potential objections to confirmation of the Plan.

As to relevance, J&J contends that they need additional documents from the Non-Debtor Affiliates to (i) "ensure no collusive deals or schemes are in play (e.g., permitting Imerys SA to escape liability for a small contribution…)" and (ii) assess whether "the settlement with Imerys S.A. and other[s] [relating to alter ego and veil piercing] satisfies Rule 9019."[5]

As for proportionality, J&J's intention to investigate the claims that were previously investigated by plaintiffs in the tort system, and the FCR and TCC in these chapter 11 cases, would exponentially expand the scope of discovery and impose a significant additional burden on the Non-Debtor Affiliates.  This is unnecessary when the TCC and FCR—**the court-appointed estate fiduciaries charged with looking at these claims, with the actual interest in seeking a maximum recovery for such claims, and acting on behalf of the only class of**

---

3 J&J's First Req. for Production of Document to Imerys S.A. (Aug. 24, 2020) at 32.

4 J&J's Second Req. for Production of Documents to Imerys S.A. (Oct. 16, 2020) at 5.

5 J&J's January 22, 2021 Letter [ECF No. 2822] (Jan. 22, 2021), 7.

**creditors entitle to vote on the Plan**—already completed this task and negotiated the terms of the Plan, including the Imerys Settlement based, in part, on their investigation of such claims.

Further, assuming J&J is entitled to examine the entire universe of the TCC and FCR's alter ego investigation, they are already equipped to do so. J&J's efforts to pursue overbroad and disproportionate discovery beyond these bounds is inconsistent with the appropriate scale of discovery in connection with confirmation of the Plan. Bankruptcy courts have rejected efforts to turn the confirmation hearing into a "mini-trial," instead choosing to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *See In re Best Prods. Co.*, *Inc.*, 168 F.R. 35, 51 (Bankr. S.D.N.Y. 1994); *see also In re Spansion, Inc.*, 2009 Bankr. LEXIS 1283, at *22 (Bankr. D. Del. June 2, 2009) (Carey, J.) ("[T]he Court's task is not to decide issues of law or fact raised by the objections but rather to canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." (quotation marks omitted).

Immoderate discovery related to a proposed settlement simply cannot be justified merely by leveling charges of "bad faith" or "collusion." *See, e.g., In re Washington Mutual, Inc.,* 2011 Bankr. LEXIS 56, at *129 (Bankr. D. Del. Jan. 7, 2011) ("[m]ore than mere innuendo and speculation is needed to establish a lack of good faith."). This is particularly true where, as here, the Plan Proponents seek to ensure that J&J has "neutrality" with respect to the indemnities. *See* Plan art. 11.5.1.

Although J&J has to date failed to offer a clear rationale for the relevance of their sought-after discovery to analyzing potential claims of alter ego against Imerys S.A., an examination of what might be relevant to such claims confirms both that (i) the TCC and FCR's investigation was fulsome and complete and (ii) J&J is seeking overbroad discovery of material beyond the bounds of relevance.

### i) Alter Ego Legal Standard

Piercing the corporate veil is an extraordinary remedy. It is a general principle of U.S. corporate law that a parent corporation is not liable for the acts of its subsidiaries.[6] The corporate veil can be pierced to disregard the corporate form and impose liabilities on the corporation's parent entity only under limited circumstances.

To succeed in piercing the corporate veil, a plaintiff must establish that, "in all aspects of the business, the . . . corporations actually functioned as a single entity and should be treated as such."[7] Given the fact-intensive nature of the inquiry, there is no bright line test for determining whether a plaintiff has met his or her burden of demonstrating an alter ego relationship. In making such a determination, courts in the Third Circuit weigh the following seven factors:

---

6.  *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 (D. Del. 2010) (citing *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998)).

7.  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).

(1)    whether the subsidiary was undercapitalized at the relevant time;

(2)    whether the subsidiary was insolvent at the relevant time;

(3)    whether the companies failed to observe corporate formalities;

(4)    whether there was a siphoning of the subsidiary's funds by the parent;

(5)    whether the subsidiary did not pay dividends to the parent;

(6)    the absence of corporate records; and

(7)    whether the subsidiary is merely a façade for the operations of the parent.[8]

This list of factors is not exhaustive and "no single factor is dispositive."[9]

Even if a plaintiff can establish the existence of all or a combination of the above factors, to succeed on a veil piercing claim under Delaware law, a plaintiff must also demonstrate that there exists an element of fraud, injustice or unfairness related to the abuse of the corporate form. For example, unjust actions such as the misdirection of subsidiary funds to the parent or the exercise of "crippling control" by the parent over the subsidiary for the parent's benefit would each be considered an abuse of the corporate form.

### ii)  The Prior Alter Ego Investigation By the TCC and FCR

Here, J&J already has all of the discovery they need to independently evaluate the claims settled pursuant to the Imerys Settlement embodied in the Plan.  To avoid burdening the Court with repetition, we refer back to our October 30th submission [ECF No. 2445] for the broad details of the prior productions, and highlight here only a few additional facts relevant to the narrow dispute at issue:

**Productions in Tort Cases:**  The Non-Debtor Affiliates produced to J&J *every* document they produced in the tort system prior to the Petition Date.  Each of the 14,650 plaintiffs who had sued the Debtors as of the Petition Date had every incentive to pursue claims against the Non-Debtor Affiliates in the tort system if such claims existed, and some of those plaintiffs *did* actively pursue such claims.  One set of materials provided to the TCC and FCR particularly relevant to the present dispute are the materials produced in *Leavitt v. Johnson & Johnson*, No. RG17882401 (Cal. Super. Ct. Dec. 28, 2018), a California state court mesothelioma case (where J&J was a co-defendant) where Imerys USA, Inc., following litigation over discovery issues in that court, produced thousands of pages of financial and other documents.  These materials were produced in the context of Imerys USA, Inc. defending itself against an alter ego argument, and included, *inter alia*:

- Accounting records;

---

8.  *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981); *Blair*, 720 F. Supp. 2d at 470-71.

9.  *Blair*, 720 F. Supp. 2d at 471.

- ITA and Imerys USA bank statements;
- Documents evidencing the Intercompany Loan between ITA and Imerys USA;
- Stock ownership certificates showing ownership of ITA and Imerys USA;
- Board resolutions showing slate of officers, directors and board members of Imerys USA and ITA;
- Leases held by Imerys USA;
- Shared Services Agreements;
- Partially redacted tables of contents of Imerys USA and ITA's board minutes and resolutions
- Shareholder resolution of Imerys Minerals Holding Limited (ITA's immediate parent)

The TCC and FCR were given all of these materials as part of the alter ego investigation they undertook, and J&J equally has these materials.

**Productions to TCC and FCR:** The Non-Debtor Affiliates produced to J&J *every* document they produced to the TCC and FCR in these Chapter 11 Cases, including all documents related to the TCC and FCR's investigation of alter ego claims against the Debtors. As disclosed in the Debtors' application to retain the FCR, the FCR and his professionals engaged in a months-long diligence process pre-petition to investigate, among other things, "whether there was any potential for recovery from current or former affiliates of the Debtors based upon a variety of derivative liability theories, including alter ego, successor liability, and/or fraudulent conveyance."[10] Following the commencement of these chapter 11 cases and appointment of the Tort Claimants' Committee, the professionals for the Tort Claimants' Committee reviewed the materials the FCR examined, and then pressed for even more diligence materials. In response to informal document requests from the Tort Claimants' Committee received in May 2019, the Non-Debtor Affiliates produced more than 240,000 pages of documents to the Tort Claimants' Committee and FCR. Following this extensive diligence process, the Plan Proponents reached the terms of the Imerys Settlement embodied in the Plan.

The documents produced to the TCC and FCR (and subsequently to J&J) included, among other things, the following categories of document relevant to evaluating any alter ego claim against the Non-Debtor Affiliates: (i) relevant excerpts of board minutes for Imerys Minerals Holding Limited (UK) and Imerys USA, Inc., the U.S. Debtors' direct and indirect parent corporations, (ii) spreadsheet showing all transfers to and from Imerys S.A., on the one hand, and the Debtors, on the other hand from 2013 to the Petition Date; (iii) spreadsheet showing all transfers to and from Imerys USA, Inc. on the one hand, and the Debtors, on the other hand from 2013 to the Petition Date; (iv) a complete organizational chart as of December 31, 2019; (v) corporate by-laws and other relevant organizational documents of Imerys S.A., a publicly traded company; and (vi) documents necessary to identify the boards of the Debtors' direct and indirect parent companies. The documents produced to the TCC and FCR (and subsequently to J&J) also included responsive non-privileged documents from a negotiated group of custodians that matched negotiated search terms aimed at identifying documents related to the Non-Debtor Affiliates' involvement in the talc litigation (e.g., variations of the following

---

10. *See* Debtors' Motion for Order Appointing James L. Patton, Jr., as Legal Representative for Future Talc Personal Injury Claimants, *Nunc Pro Tunc* to the Petition Date [Docket No. 100], at 6.

terms with connectors, in French and English: tort, plaintiff, liability, talc, lawsuit, claim, fraud, cancer, mesothelioma, etc.).

Then as now, and contrary to J&J's baseless assertion that Imerys S.A. is "only now" concerned about the FBS, Imerys S.A. raised concerns about running afoul of the FBS during its discovery process with the TCC and FCR, and the TCC and FCR agreed to first examine and conduct its analysis on the basis of the voluminous materials already available from U.S. sources, which ultimately proved to be sufficient.

**Communications with TCC and FCR:**  The Non-Debtor Affiliates produced to J&J *all* non-privileged correspondence regarding Plan negotiations with the TCC and FCR, which includes more than 800 emails from June 9, 2019 through March 5, 2020.  J&J has all of the documentary material it needs to "ensure no collusive deals or schemes are in play."  Notably, we have confirmed that there exist no communications about Plan negotiations between a French custodian, on the one hand, and the TCC or FCR, on the other hand, that have not already been produced to J&J because the communication also included a U.S. custodian.

We further detail these prior productions to demonstrate that J&J is seeking to pursue a massively duplicative inquiry, despite having a tenuous interest at best, given that these claims are simply not owed to J&J.  Notwithstanding the tenuous nature of J&J's interest, Imerys S.A. has fully complied in timely giving J&J exactly the same level of access and information—with narrow privilege exceptions—that it gave the TCC and FCR during their alter ego investigation. J&J's present complaint about not receiving even more access to information than the TCC and FCR should, respectfully, be quashed.

For all of the above reasons, and those stated in our October 30th letter, the Court should reject J&J's efforts to seek additional discovery from Imerys S.A. (and now Imerys USA, Inc.) that goes far beyond any reasonable purpose for which J&J could seek to use such materials in these bankruptcy proceedings.  Accordingly, we respectfully submit that this Court should reject JJ's attempts to seek unnecessary discovery beyond the voluminous productions already made by the Non-Debtor Affiliates.

Finally, while Imerys S.A.'s primary argument against J&J's further sought-after discovery is based on relevance and proportionality, rather than the FBS, as this Court has recognized, the FBS permits discovery to be conducted under the ambit of the Hague Evidence Convention.  In the event that this Court determines that—notwithstanding the reasons presented above—J&J is entitled to any further discovery, we respectfully request the opportunity to comply with the mechanisms of the Hague Convention in making any further productions.[11]

---

[11] Whereas Chapter I of the Hague Convention of Evidence provides a time-consuming "Letters of Request" method, Chapter II allows for the appoint of a private attorney in France to serve as "commissioner" and oversee production far more swiftly.  *See, e.g.*, *Salt River Proj. Agric. Improvement & Power Dist. v. Trench Fr. SAS*, 303 F. Supp. 3d 1004, 1006–10 (D. Ariz. 2018) (finding that "[w]here the outcome of litigation does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign secrecy laws," and holding that the cumulative and burdensome nature of the requested discovery weighed in favor of giving effect to the FBS) (internal quotation marks and citation omitted).  Imerys S.A. would seek to accomplish any further required productions as

Respectfully submitted,


/s/ William J. Beausoleil
William J. Beausoleil
Partner

cc:    All counsel by ECF

---

expeditiously as possible, and certainly before the expiration of the discovery deadline for document productions.

99424345_11