

**Patrick A. Jackson**
Partner
patrick.jackson@faegredrinker.com
302-467-4210 direct

**Faegre Drinker Biddle & Reath** LLP
222 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801
+1 302 467 4200 main
+1 302 467 4201 fax

faegredrinker.com

April 6, 2021

VIA CM/ECF AND EMAIL

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:   Imerys Talc America, Inc. et al., Case No. 19-10289 (LSS)

Dear Judge Silverstein:

We write on behalf of Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "**J&J**") in response to the March 29, 2021 letters from the Debtors [D.I. 3267] ("**Debtors' Letter**") and Imerys S.A. and Imerys USA, Inc. (together, the "**Non-Debtor Affiliates**") [D.I. 3268] ("**Parent's Letter**" and, together with Debtors' Letter, the "**March 29 Letters**"). At their core, these letters seek reconsideration of the Court's February 23, 2021 discovery ruling [D.I. 3004] (the "**February 23 Decision**") that rejected the Debtors' proffered bases for withholding certain documents and communications between the Debtors and the Non-Debtor Affiliates in response to J&J's discovery requests. For the reasons set forth below, the Court should not allow the Debtors' and the Non-Debtor Affiliates to withhold production of the Subject Documents (as defined below). Alternatively, to the extent the Court is inclined to entertain the Debtors' and the Non-Debtor Affiliates' new arguments, a complete *in camera* review of the Subject Documents (and not merely a sampling self-selected by the Debtors and Non-Debtor Affiliates) is necessary because it is not possible to determine from the Debtors' privilege log, without the necessary context provided by the documents themselves, whether the claimed privilege legitimately applies (i) at all, and (ii) to the entirety of a given document.

### The February 23 Decision

At the January 15, 2021, disclosure statement hearing, J&J's counsel raised the issue of parties withholding discovery on the basis of purported common interest privilege, and the Court agreed that the issue needed to be briefed and decided:

> [W]e should discuss it. I don't know that I am prepared today without giving the FCR, the committee, the debtors, *whoever wants to brief me on the common interest privilege. . . .* So I'd like authority on the common interest privilege. . . . I would like the

> parties to focus me on the couple of cases that they think are best for their position and tell me what it is.
>
> . . .
>
> So why don't *the people who . . . will not produce documents because of common privilege* give me the reasons why.

(Hr'g Tr. Jan. 15, 2021 at 113:13-115:6 (emphasis added).)

On January 20, 2021, the Debtors submitted a letter outlining certain broad categories of documents they had withheld from production to J&J and the Arnold & Itkin plaintiffs, including the following from "at least as of February 13, 2019 - ongoing":

> Communications and documents to/from/among Debtors, Imerys S.A., and their respective counsel and/or advisors reflecting legal advice and/or for the purpose of rendering legal advice regarding the bankruptcy action and related proceedings.

(Debtors' Jan. 20, 2021 Letter [D.I. 2807], Ex. A #4.) The Debtors' proffered basis for withholding this category of documents from production was "Attorney-Client Privilege; Common Interest Privilege; Attorney Work Product." (*Id.*)

Despite the Court's invitation, the Non-Debtor Affiliates did *not* submit a position paper in support of the Debtors' withholding or their withholding of any documents on the grounds of common interest privilege.

After reviewing the various submissions from the Debtors, the Tort Claimants Committee (the "**TCC**"), the Future Claimants Representative (the "**FCR**"), the Arnold & Itkin plaintiffs, and J&J, the Court issued its February 23 Decision. In it, the Court held that the Debtors' "category 4, communications between Debtors and Imerys S.A. with respect to the entire case, is . . . overbroad" and the Debtors "ha[d] not met their burden to show that they shared a common *legal* interest prior to the [March 5, 2020, plan] settlement with Imerys S.A." (Feb. 23 Decision at 7.) The Court reasoned, in pertinent part, as follows:

> While *Quigley*[1] does hold that it is possible for a parent and subsidiary to share a common legal interest in confirming a plan of reorganization, it does not mandate that result. Unlike *Quigley*, there is no evidence before me that Imerys S.A. was a co-defendant in the Imerys prepetition litigation or that Imerys S.A. shares derivative liability with Debtors, factors the *Quigley* court heavily relies on in its decision. There is also no evidence of a joint defense agreement between the Debtors and Imerys SA, much less any evidence before me of decades-long coordinated defense efforts, factors the *Quigley* court thought were relevant in establishing the common legal interest.

(*Id.* at 9.) Accordingly, the Court found that (i) the Debtors had not established "a common legal interest between themselves and Imerys S.A. regarding the bankruptcy action as of February 13, 2019" (the "**Petition Date**"), and (ii) "a common legal interest with respect to the Plan did not

---

[1] *In re Quigley Co., Inc.*, No. 04-15739 SMB, 2009 WL 9034027 (Bankr. S.D.N.Y. Apr. 24, 2009).

ACTIVE.126762539.02

exist until March 5, 2020." (*Id.* at 10.)

With respect to certain other categories of documents at issue in the parties' submissions, the Court agreed with the Debtors and found that (i) "Debtors and the FCR share a common legal interest in maximizing assets for recoveries to creditors from September 25, 2018 to the Petition Date" and (ii) "Debtors generally share that common legal interest in maximizing assets for recoveries to creditors with the TCC and FCR from the Petition Date forward." (Feb. 23 Decision at 11-12.) However, the Court specifically found that "Imerys S.A. does not share in that common legal interest, certainly as it pertains to itself." (*Id.* at 12.)

### **The March 29 Letters**

Debtors' Letter, as supplemented by the privilege log on April 2, 2021 [D.I. 3297], seeks this Court's blessing to withhold from production 266 families of communications and documents dating from December 9, 2018 to March 5, 2020 (collectively, the "**Subject Documents**"). The Subject Documents appear to fit within "category 4" as discussed by the Court in its February 23 Decision. But, instead of a common interest privilege (which the Court has found did not exist prior to March 5, 2020), the Debtors now shift their focus to the attorney work product privilege as the basis for withholding these documents.

Parent's Letter also seeks this Court's approval to withhold the Subject Documents from production, both on the basis of the attorney work product privilege, as argued in Debtors' Letter, and on the basis of a common interest privilege. In support of the latter argument, the Non-Debtor Affiliates proffer new "evidence" consisting of (i) a list of cases in which they were co-defendants with the Debtors prepetition[2] and (ii) a post-petition email chain between counsel for the Debtors and the TCC culminating in the Debtors' agreement that the TCC would have derivative standing to commence any action against the Non-Debtor Affiliates, subject to certain conditions, with the Debtors reserving rights other than standing. Based on this "evidence," the Non-Debtor Affiliates argue that the rationale and holding of *Quigley* apply, contrary to the Court's conclusion in its February 23 Decision.[3]

Perhaps in an effort to overshadow the importance of the newly identified withheld materials, the Debtors and Non-Debtor Affiliates are eager to inform the Court of the number of requests for production of documents, interrogatories, and requests for admission that the Debtors have received from a variety of objecting parties, the number of documents produced in response thereto, the number of depositions noticed by J&J, the number of deposition topics proposed by J&J, etc. (*See* Debtors' Letter at 3; Parent's Letter at 2). But the volume and content of other

---

[2] The list provides no further context regarding the relationship between the Debtors and the Non-Debtor Affiliates in these cases, *e.g.*, whether they were represented by separate counsel, whether the Non-Debtor Affiliates' alleged liability was direct or derivative of the Debtors' liability, and whether there were any cross-claims between the Debtors and Non-Debtor Affiliates.

[3] *Quigley* remains distinguishable, however, including because of (i) the existence of a formal joint defense agreement, and (ii) the debtor and non-debtor's joint prosecution of the bankruptcy case from its inception, as noted by Judge Bernstein. As discussed below (and noted by this Court in its February 23 Decision), the Debtors here claim that they and the Non-Debtor Affiliates engaged in "extensive" and "intensive" negotiations with one another and reached agreement only on March 5, 2020.

ACTIVE.126762539.02

discovery requests that are not at issue in the March 29 Letters, and the size of Debtors' (modest) production to date, are wholly irrelevant to this latest attempt to withhold otherwise responsive documents. J&J's responses to the Debtors' and the Non-Debtor Affiliates' *substantive* arguments are below.

### As a Threshold Matter, the Court Should Not Reconsider its February 23 Decision on Common Interest Privilege

As discussed above, the Court ruled on February 23 that there was no common interest privilege between the Debtors and Imerys S.A. at any time prior to the parties' agreement on the material terms of a chapter 11 plan on March 5, 2020. A motion for reconsideration of this ruling under Federal Rule of Civil Procedure 59, made applicable by Federal Rule of Bankruptcy Procedure 9023, would have needed to be filed by March 9, 2020. *See* Fed. R. Bankr. P. 9023 ("A motion [under Rule 59] shall be filed . . . no later than 14 days after entry of the judgment."). Thereafter, reconsideration would be governed by Federal Rule of Civil Procedure 60(b), made applicable by Federal Rule of Bankruptcy Procedure 9024.

Rule 60(b) enumerates six grounds for relief from a prior ruling of the Court, including (i) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," and (ii) "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(2) & (6). However, a request for reconsideration under 60(b) must be made "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and neither the Debtors nor the Non-Debtor Affiliates provide an adequate explanation as to why they are just now – over one month since the February 23 Decision (and five days before/after the agreed upon date for substantial completion of document production) – raising the issue of materials potentially protected by the work product doctrine. While the Debtors' Letter suggests that the Subject Documents were somehow discovered only after the February 23 Decision, that does not square with the Debtors' January 20 submission—which, as noted above, specifically invoked "Attorney Work Product" with respect to the "category 4" documents to which the Subject Documents belong. The Debtors' and Non-Debtor Affiliates' delay in bringing these issues to a head is highly prejudicial to J&J, particularly in light of the looming fact discovery cut-off date and the fact that fact depositions are beginning April 7, 2021.

Even if the Court were inclined to consider the Debtors' and the Non-Debtor Affiliates' request for reconsideration, none of the grounds under Rule 60(b) is satisfied. While "evidence" is proffered in support of the request, none of it was "newly discovered"—indeed, all of it was known to the parties on January 20 when the letters on common interest privilege were submitted (or in the case of the Non-Debtor Affiliates, not submitted[4]). And the law is well-settled that where a specific ground for relief under Rule 60(b)(1)-(5) applies and is not satisfied, the "catch-all" provision of Rule 60(b)(6) may not be invoked to cure it. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (finding that a request under Rule 60(b)(6) may not be premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)); *see also In re Critical*

---

[4] To provide cover for their failure to submit papers previously, the Non-Debtor Affiliates subtly recast the Court's January 15 invitation to "whoever wants to brief me on common interest privilege," *supra* at Hr'g Tr. Jan. 15, 2021 at 113:13-115:6 , as a direction limited to the Debtors, the TCC, and the FCR. Parent's Letter at 3. This is simply not the case, as the Court was addressing "the people who . . . will not produce documents because of common privilege" generally. *Supra* at Hr'g Tr. Jan. 15, 2021 at 113:13-115:6 .

*Care Support Services*, 236 B.R. 137, 142 (E.D.N.Y. 1999) (same); *In re Silver Spring Ctr.*, 251 B.R. 17, 20 (Bankr. D.R.I. 2000) (same).

Finally, and procedural issues aside, nothing in the Debtors' Letter or the Parent's Letter merits reconsideration of the Court's prior findings that there was no common interest between the Debtors and Imerys S.A. with respect to the bankruptcy proceedings at any time before March 5, 2020. In reaching its findings in the February 23 Decision, this Court identified the following three takeaways based on its review of the relevant case law:

i. A common interest privilege *can be*, but is not necessarily, applicable in the plan context;

ii. Parties can simultaneously share a common legal interest with respect *to some but not other issues*; and

iii. To the extent that parties share a common legal interest, the common interest doctrine only protects the communications that are in furtherance of that common legal interest.

(February 23 Decision at 4 (emphasis added).) As the Court correctly concluded, "**context matters**." (*Id.* (emphasis added).) Based on this principle, the Court found that Debtors' assertion that *all* communications between Debtors and Imerys S.A. with respect to the "entire case" was "overly broad" and that the Debtors had not "met their burden to show that they shared a common *legal* interest prior to the settlement with Imerys S.A." (*Id.* at 7 (emphasis in original).) Importantly, this Court recognized that, in defending against claims of collusion and bad faith, the Debtors themselves had repeatedly described the negotiations concerning all aspects of the proposed Plan, ***including those between the Debtors and the Non-Debtor Affiliates***, as "extensive" and "intensive." (*Id.* at 9.) Such statements demonstrated that there were unresolved issues and potential disputes between the Debtors and the Non-Debtor Affiliates even after the Petition Date.

Indeed, a key issue in the chapter 11 cases (and, J&J submits, *the only issue* resolved in the March 5, 2020 "agreement" regarding the chapter 11 plan) is the size of the Non-Debtors' Affiliates' contribution to the Trust, made in settlement of the estates' alter ego claims against their affiliates, especially Imerys S.A. The Debtors and the Non-Debtor Affiliates are (or at least should be) on opposite sides of that key issue, and completely adverse. Such adversity is *perfectly consistent* with the March 19, 2019, agreement between the Debtors and the TCC upon which the Debtors' Letter and the Parent's Letter rely so heavily. That agreement provided only that the TCC could "commence" a derivative action against the Non-Debtor Affiliates on behalf of the estates. It did not give the TCC *exclusive* standing to do so, nor did it provide the TCC any (much less exclusive) standing to *settle* any such action independent from the Debtors. Rather, it provided that the Debtors would forbear from settling any derivative action against the Non-Debtor Affiliates by way of a plan or Rule 9019 motion without the TCC's consent for a period of 180 days. By implication, then, the Debtors retained the legal right to commence and settle any derivative actions against the Non-Debtor Affiliates. The Debtors' and the Non-Debtor Affiliates' *legal* interests in the bankruptcy proceedings remained adverse, even if their *commercial* interests were allegedly aligned, which is perfectly consistent with the Court's February 23 Decision. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 365 (3d Cir. 2007) (holding that the protection under the common interest doctrine is only afforded to parties that share a common *legal* interest, not

merely a commercial interest).[5]

In any case, the Debtors entered into the March 19, 2019 "agreement" without notice to other parties in interest, an opportunity to object, or Court approval. Thus, the agreement is not even binding on the Debtors, whose interests and duties in bankruptcy should clearly be to maximize the value of their estates, including by vigorously pursuing claims against their affiliates.[6]

### Where Debtors and Non-Debtor Affiliates were Adversaries, Disclosure Among Them Waived the Work Product Doctrine

The Debtors and the Non-Debtor Affiliates baldly assert that so long as the Subject Documents were prepared in anticipation of litigation and/or bankruptcy, they are categorically protected by the work product doctrine. As an initial matter, however, the Court must first be satisfied that the Subject Documents were, in fact, prepared in anticipation of litigation and/or bankruptcy and not for a commercial purpose. *See In re HH Liquidation, LLC*, 571 B.R. 97, 104 (Bankr. D. Del.) (refusing to apply work product privilege where the Court was "not satisfied from its review of the privilege logs that the documents the Debtors withheld were prepared in anticipation of litigation").

Moreover, in determining whether the exchange of the Subject Documents as between the Debtors and the Non-Debtor Affiliates constituted a waiver of the work product doctrine, the Court must closely examine whether they are properly considered "adversaries" on any of the issues that are covered in the documents. Here, Your Honor has previously ruled that there was no common legal interest between Debtors and Imerys S.A. regarding the bankruptcy action as of February 13, 2019, and that such a common legal interest did not exist until March 5, 2020 (and then, it only extended to the Plan). In so finding, the Court looked to Debtors' own statements that that there were issues unresolved as between Debtors and Non-Debtor Affiliates that required "intensive" and "extensive" negotiations. (Feb. 23 Decision at 9.) In short, there was no common legal interest

---

[5] Indeed, a conclusion now that the March 19, 2019 agreement somehow established a common interest between the Debtors and the Non-Debtor Affiliates in insulating the latter from liability would contradict the Court's other findings in the February 23 Decision regarding the Debtors' common interest with the TCC and the FCR in maximizing the value of the Debtors' estates. *See* D.I. 3004 at 12 (finding the "Debtors generally share that common legal interest in maximizing assets for recoveries to creditors with the TCC and FCR from the *Petition Date* forward," but that "Imerys S.A. does not share in that common legal interest, certainly as it pertains to itself" (emphasis added)).

[6] J&J notes it was completely unaware, before the Debtors' letter submitted to the Court two years later in March 2021, of this "agreement" from March 2019 where the Debtors agreed not just to provide the TCC standing, but also that the Debtors will "not object to any personal injury claims filed against the estates . . . ." This previously undisclosed agreement is consistent with J&J's theory of the case that the Debtors gave up all defenses and completely abdicated control over their cases to the plaintiffs' representatives in exchange for a release of their parent. If J&J's theory is correct, the documents between the Debtors and the Non-Debtor Affiliates may include documents *confirming* that this was their goal, and these documents should see the light of day. Especially where good faith is at issue, the Court should not allow parties to hide behind broad claims of privilege to prevent others from discovering evidence of the alleged bad faith.

ACTIVE.126762539.02

because their interest diverged as to the bankruptcy proceedings. To say, therefore, that the Debtors and Non-Debtor Affiliates were "non-adversaries" in *all respects* regarding a potential bankruptcy filing (Category I) and negotiations with the TCC and FCR with respect to the terms of the yet-to-be finalized settlement and Plan (Category II) flies in the face of this Court's prior ruling.[7]

Rather, as was the case in examining the applicability of the common interest doctrine, "***context matters***" and this Court must again determine whether, in disclosing documents reflecting legal considerations for the bankruptcy proceeding in which their interests diverged, the parties waived the work product doctrine by turning them over to an "adversary."

*First,* to the extent the documents in question related to analysis regarding potential alter ego claims, the Debtors and the Non-Debtor Affiliates were, by definition, adversaries. Alter ego claims against non-debtors are generally considered property of a debtor's bankruptcy estate. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704 (2d Cir. 1989) (holding alter ego claim against debtor's parent was property of debtor's bankruptcy estate); *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, (7th Cir. 1987) (same); *In re Buildings by Jamie, Inc.*, 230 B.R. 36, 43 (Bankr. D.N.J. 1998) (same). Therefore, it would be the Debtors who had the right to assert the claims against the Non-Debtor Affiliates—which, as noted above, is entirely consistent with the March 19, 2019, agreement between the Debtors and the TCC granting the TCC limited standing "to commence" a derivative action, subject to certain conditions, while retaining all other rights for the Debtors' estates.

*Second,* documents regarding "potential parameters of contribution by Imerys S.A." (as are included in Category II) would cover the very issues for which this Court already found the Debtors and Non-Debtors were not aligned until March 2020—i.e., "expanding the pie" of estate assets, in which the Debtors, TCC, and FCR were aligned and Imerys S.A. was not (at least, as to itself). In other words, it appears the Debtors and Non-Debtor Affiliates are seeking a second bite of the apple to protect documents that the Court already determined were not protected by the common interest privilege because the parties did not yet share the same position – issues for which they were supposedly engaged in extensive and intensive negotiations against each other.

*Indeed,* at a very high level, Imerys S.A.'s singular goal in these cases may have been to obtain a release of their claims for as little consideration as possible. At the same time though, the Debtors' interests should have been exactly the opposite on this issue. And, on all other issues, it is unclear that Imerys S.A. had *any* legitimate interest before the settlement on its release, let alone one in common with the Debtors. It was only subsequently (March 2020) that Imerys S.A. would have an interest in common with the Debtors in ensuring approval of the Plan, which included its

---

[7] It also flies in the face of common sense in the chapter 11 context. For instance, if a single law firm proposed to represent both a chapter 11 debtor and its non-debtor parent *concurrently in the bankruptcy case*, the firm would clearly "represent an interest adverse to the estate" in the parent, which would disqualify it from representing the debtor. *See* 11 U.S.C. § 327(a); *see also In re NNN 400 Cap. Ctr. 16, LLC*, 619 B.R. 802, 814 (Bankr. D. Del. 2020) (noting "adverse interest" under section 327(a) includes "any economic interest that would tend to . . . create an actual or potential dispute in which the estate is a rival claimant" and any "predisposition under circumstances that render such a bias against the estate" (internal quotation marks, citations omitted)). How, then, can a debtor and its non-debtor parent be viewed as "non-adversaries" when represented by different counsel, so as to fully occupy the same tent for privilege purposes on any and all issues, irrespective of any community of interest (or lack thereof) on those issues?

ACTIVE.126762539.02

settlement. But, before that, Imerys S.A. and the Debtors were adversaries – with few, if any, interests in common. If – after it was clear prepetition that the Debtors were insolvent (and especially after the Petition Date) – Imerys S.A. continued to control the Debtors and dictate their strategy (instead of the Debtors' own board of directors), this is not a sign of common interest over which any privilege should protect evidence from disclosure; but rather a circumstance that requires discovery and brought to light.

*****

The Court should reject the efforts of the Debtors and their Non-Debtor Affiliates to avoid producing these Subject Documents. In the alternative, the Court should review the Subject Documents *in camera* to determine whether there is an appropriate and legitimate basis supporting the sought after protections or whether they are related to a subject matter on which the Debtors and Non-Debtor Affiliates were actually non-adversaries. We look forward to discussing these issues at the Court's convenience.

Respectfully submitted,

*/s/ Patrick A. Jackson*

Patrick A. Jackson
Partner

PAJ//s

Cc:     All counsel of record via CM/ECF