**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMERYS TALC AMERICA, INC., *et al*., | Case No. 19-10289 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 2863, 3334, 3425, 3445** |

**CYPRUS HISTORICAL EXCESS INSURERS' JOINDER TO THE MOTION OF
HOLDERS OF TALC PERSONAL INJURY CLAIMS REPRESENTED
BY ARNOLD & ITKIN LLP TO EXTEND DISCOVERY DEADLINES
AND PERMIT DISCOVERY RELATING TO SOLICITATION AND
VOTING WITH RESPECT TO THE NINTH AMENDED JOINT
CHAPTER 11 PLAN, [D.I. 3425], MOTION TO EXTEND DISCOVERY, AND
OBJECTION TO DEBTORS' MOTION TO QUASH DISCOVERY [D.I. 3459]**

Cyprus Historical Excess Insurers (the "Excess Insurers") join Arnold & Itkin LLP in moving to extend the discovery deadlines to permit discovery relating to solicitation and tabulation of ballots with respect to the Ninth Amended Plan.[1]

The voting process—and the integrity of that process—is fundamental to the confirmation of a plan of reorganization. It is important to verify that the solicitation, casting, and tabulation of ballots was conducted fairly and with integrity; that the process of including and excluding ballots in the vote count was conducted on an even-handed basis, and not skewed in favor of the Plan Proponents; and that there was no impropriety in the voting process.

Where, as here, the persons being balloted are self-identified by entities with an economic incentive to round up as many votes as possible, close scrutiny of the solicitation process is warranted—especially where master ballots are employed. *See In re Congoleum Corp.*, 426 F.3d

---

[1] The Excess Insurers join *Arnold & Itkin's Motion To Extend Discovery Deadlines And Permit Discovery Relating To The Solicitation And Voting With Respect To The Ninth Amended Joint Chapter 11 Plan Of Imerys. And Its Debtor Affiliates* [D.I. 3425] and separately seek the same relief.

675, 693–94 (3d Cir. 2005) (stressing the "high order" of court supervision required in complex mass tort bankruptcies); *In re Quigley Co.*, 346 B.R. 647, 653 (Bankr. S.D.N.Y. 2006) (noting the practice of counsel casting votes for unsubstantiated claims on master ballots). There should be full transparency as to what instructions third parties communicated to the balloting agent,[2] what materials they gave the balloting agent to include in the solicitation packages, and who precisely voted as a result.

As explained by Arnold & Itkin in its motion, a review of the Preliminary Voting Certification raises potential concerns with respect to the integrity and even-handedness of the process. [D.I. 3425 at 4–10]. But even if these concerns were not present, the discovery sought should be permitted to confirm the vote. For this reason, balloting agents in other mass tort cases have cooperated with such discovery requests or were otherwise compelled to do so by the court. *See, e.g.*, *In re PG&E Corp.*, No. BR 19-30088-DM, 2020 WL 9211190, at *1 n.2 (Bankr. N.D. Cal. July 6, 2020) ("Prime Clerk turned over *all* documents that we requested in order to investigate whether there were irregularities on a systemic basis and whether that affected the vote.") (emphasis added); Order Compelling Debtors to Produce Ballots and Voting Database ["Order"], *In re Congoleum Corp.*, No. 03-51524-KCF (Bankr. D.N.J. Feb. 28, 2006).

The Excess Insurers served a subpoena requesting the production of the Voting Database; documents reflecting the instructions third parties communicated to the balloting agent; materials third parties gave the balloting agent to include in the solicitation packages; and copies of the ballots, so who has voted may be confirmed. [D.I. 3445.01, 3445.02].

The Debtors stipulated to producing the Voting Database but have otherwise moved to quash the rest of the discovery requests. [D.I. 3459]. The Debtors contend that the information

---

[2] Prime Clerk LLC is the balloting agent in these chapter 11 cases.

sought is untimely, but this objection is meritless as the vote was not completed until *after* the written discovery deadline. *See* Solicitation Procedures Order[3] at 5 (establishing February 15, 2021 as the *written* discovery deadline). Moreover, there still was additional time for fact discovery at the time the discovery requests were made. *See* Extension Order[4] at 2 (extending the fact discovery deadline to May 14, 2021). The Debtors' assertion that the discovery sought is irrelevant is equally baseless, as the Excess Insurers are entitled as a matter of right to know who voted and what was sent to them with their solicitation packages. *See, e.g.*, Order, *In re Congoleum Corp.*, No. 03-51524-KCF at 2 ("The Debtors shall provide [the insurer] with access to the **Ballots** . . . .") (emphasis added).

The Solicitation Procedures Order contemplates that everyone solicited received the exact same package, and, along with the Solicitation Procedures, requires that the solicitation package be produced to "all interested parties." *See* Solicitation Procedures Order at 7; Solicitation Procedures Section III. If plaintiff firms and/or claims aggregators requested that Prime Clerk include other documents along with the solicitation package, it is relevant to the integrity of the solicitation process to know what Prime Clerk was asked to send and who exactly received these solicitation packages. Further, the last-minute rush to obtain votes to generate the required numerical target raises additional questions about who voted and when. Accordingly, the communications exchanged with Prime Clerk may lead to the discovery of relevant evidence on this important issue, made even more critical in a case like this where the balloted voters are self-

---

[3] The "Solicitation Procedures Order" refers to the *Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Attorneys and Certified Plan Solicitation Directive, (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief*. [D.I. 2863].

[4] The "Extension Order" refers to the April 15, 2021 *Order Adjourning Confirmation Hearing and Related Dates*, which extended the period for depositions and deadline for fact discovery to May 14, 2021. [D.I. 3412].

selected and so many were not involved in prepetition litigation against the Debtors.  *See In re Dune Deck Owners Corp.*, 175 B.R. 839, 845 (Bankr. S.D.N.Y. 1995) (when there is reason to question the truthfulness of certain votes, "the Court must inquire into [such votes] in order to preserve the integrity of the Chapter 11 process").

WHEREFORE, the Excess Insurers join Arnold & Itkin in respectfully requesting a grant of leave to take and participate in discovery with respect to these areas, including discovery from the Plan Proponents, Prime Clerk, and certain of the Late Voting Parties, and such other relief as the Court deems appropriate under the circumstances.

Dated: May 1, 2021
Wilmington, Delaware

Respectfully submitted,

*/s/ Stamatios Stamoulis*

STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com

O'MELVENY & MYERS LLP
Tancred Schiavoni  (*pro hac vice*)
Janine Panchok-Berry (*pro hac vice*)
Times Square Tower, 7 Times Square
New York, New York  10036-6537
Telephone:    +1 212 326 2000
Facsimile:     +1 212 326 2061
tschiavoni@omm.com
jpanchok-berry@omm.com

*Counsel for Cyprus Historical Excess Insurers, defined as Columbia Casualty Company, Continental Casualty Company, the Continental Insurance Company, as successor to CNA Casualty of California and as successor in interest to certain insurance policies issued by Harbor Insurance Company, Lamorak Insurance Company (formerly known as OneBeacon America Insurance Company), as successor to Employers' Surplus Lines Insurance Company, Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company), and National Union Fire Insurance Company of Pittsburgh PA, to the extent that they issued policies to Cyprus Mines Corporation prior to 1981*