**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------- x
In re:                                  :    Chapter 11
                                        :
IMERYS TALC AMERICA, INC., et al.,¹     :    Case No. 19-10289 (LSS)
                                        :
          Debtors.                      :    (Jointly Administered)
                                        :
                                        :    Hearing Date: June 7, 2021 at 10:00 a.m. (ET)
                                        :    Obj. Deadline: May 28, 2021 at 4:00 p.m. (ET)
------------------------------------------------------------- x
```

**DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING NOTICE
PROCEDURES, (II) AUTHORIZING ACQUISITIONS AND
(III) GRANTING RELATED RELIEF**

The debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**") hereby file this motion (the "**Motion**") with the Court

for entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed**

**Order**") (a) subject to the Notice Procedures (as defined below) and the consent of the Tort

Claimants' Committee and the FCR (as defined below), authorizing the Debtors to purchase, either

directly or indirectly through a wholly-owned subsidiary, one or more businesses with real

property assets, any fixtures and improvements located thereon, and certain personal property

related thereto for an aggregate purchase price not to exceed $12 million, including any deposits

(collectively, the "**Acquisitions**"), (b) approving the Notice Procedures related thereto,

(c) authorizing the Debtors to make one or more refundable deposits with respect to potential

Acquisitions on terms and conditions set forth herein; (d) authorizing the Debtors to take other

actions as they may deem necessary to effectuate the Acquisitions; and (e) granting related relief.

In support of this Motion, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050) and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. §

157(b) and, under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors

consent to the entry of a final order by the Court in connection with this Motion to the extent that

it is later determined that the Court, absent consent of the parties, cannot enter final orders or

judgments consistent with Article III of the United States Constitution.  Venue of these Chapter

11 Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are sections 105(a)

and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"),

Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and Local Rule 9013-1.

## BACKGROUND

### A.      General Background

3.      On February 13, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions

in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code.  The Debtors

continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107

and 1108 of the Bankruptcy Code.  On March 5, 2019, the Office of the United States Trustee for

the District of Delaware (the "**U.S. Trustee**") appointed the Tort Claimants' Committee [Docket

No. 132] in the Chapter 11 Cases.  On June 3, 2019, the Court entered an order [Docket No. 647]

appointing the future claimants' representative (the "**FCR**") pursuant to sections 105(a),

524(g)(4)(B)(i) and 1109(b) of the Bankruptcy Code.  As of the date hereof, no trustee or examiner

2

has been requested in the Chapter 11 Cases.  The Chapter 11 Cases are jointly administered for procedural purposes only.

4.    On February 29, 2019, Debtor Imerys Talc Canada Inc., as the "foreign representative" acting on behalf of the Debtors' estates, commenced an ancillary proceeding under the Companies' Creditors Arrangement Act (Canada), R.S.C. 1985, c. C-36, as amended, in the Ontario Superior Court of Justice (Commercial List) and filed an application therein to recognize the Chapter 11 Cases and the United States as the center of main interest.

5.    On November 17, 2020, the Court entered an order [Docket No. 2539] (the "**Sale Order**"), which, among other things, approved the consummation of the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**") on terms and conditions set forth in an asset purchase agreement with Magris Resources Canada Inc. (the "**Buyer**"), dated as of October 13, 2020 (the "**Asset Purchase Agreement**").  Pursuant to the Asset Purchase Agreement, the Debtors agreed to sell the Assets to the Buyer for a purchase price comprised of $223 million in cash and the assumption of certain liabilities.  On February 17, 2021, the closing of the Sale occurred. (Danner Decl. ¶ 6.)

6.    On January 27, 2021, the Debtors filed their *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 2852] (as may be amended or modified, the "**Plan**").  The Plan contemplates the establishment of a section 524(g) trust (the "**Trust**") to which the Debtors' Talc Personal Injury Claims (as defined in the Plan) will be channeled and which will take ownership of the reorganized Debtors upon the Effective Date (as defined in the Plan).

7.    On March 12, 2021, the Court entered an order authorizing the Debtors to employ CohnReznick LLP ("**CohnReznick**") to provide interim management services and to designate

3

Eric Danner as Chief Restructuring Officer ("**CRO**") of the Debtors, *nunc pro tunc* to January 28, 2021, and as President and Treasurer of the Debtors effective as of February 17, 2021 [Docket No. 3087].

8.    The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 10] (the "**First Day Declaration**") as well as the *Disclosure Statement for Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 2853].[2]

### B.    The Proposed Acquisitions

9.    The Debtors intend to utilize a portion of the Sale proceeds to purchase one or more operating businesses.  As noted above, the Trust will take ownership of the reorganized Debtors upon the Effective Date of the Plan, providing the Trust with a source of future revenue on a go-forward basis.  The Debtors, together with their advisors, have worked to identify well-established targets with a proven track record of financial results that will afford the reorganized Debtors a stable foundation and income stream post-emergence.  (Danner Decl. ¶ 7.)

10.    The Debtors have engaged in a nationwide search for potential targets with a specific focus on businesses meeting the following criteria: (i) conservative businesses with durable real property assets that are best-positioned to retain value through changing business cycles; (ii) mature businesses that generate a reliable revenue stream and have historical financial

---

[2]    The First Day Declaration and other relevant case information is available on (i) the Court's website, www.deb.uscourts.gov, and (ii) the website maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, at https://cases.primeclerk.com/ImerysTalc/.

results reflected in financial and tax returns that demonstrate consistent profitability; and (iii) self-sufficient businesses with limited operating expenses and minimal need for direct involvement from the Debtors' management.  (*Id.* ¶ 8.)

11.    CohnReznick has conducted an extensive analysis of potential targets across several industries and has identified a number of opportunities fitting the Debtors' acquisition criteria, including self-storage businesses, logistics businesses, quick-serve dining restaurants, laundromats, car washes, and gas stations.  (*Id.* ¶ 9.)  CohnReznick's review of potential opportunities has been informed by discussions with business and commercial real-estate brokers regarding industries that best maintained value during the COVID-19 pandemic and those that are best positioned to retain value in the near-term and long-term.  (*Id.*)  CohnReznick also reviewed online platforms for specific opportunities matching the Debtors' acquisition criteria, has assessed the diligence necessary for specific industries, and has conducted diligence on specific targets. (*Id.*)

12.    CohnReznick's diligence efforts with respect to these targets have included customary financial diligence, including reviewing tax returns, historical financial statements, and future financial projections, as well as direct discussions with sellers and site visits to review the enterprise and the assets.  (*Id.*)  Each of the potential targets identified by CohnReznick thus far have purchase prices between $2.5 million and $3.5 million.  (*Id.* ¶ 10.)

13.    Despite having engaged in negotiations with a number of sellers, the Debtors' efforts have not yet resulted in an executed purchase agreement.  (*Id.* ¶ 11.)  The Debtors' experience in the market suggests that it will be challenging to execute on an attractive transaction if the Debtors are unable to put down a deposit and/or must enter into purchase agreements that are conditioned upon court approval.  (*Id.* ¶ 12.)  In light of current market conditions and the

5

relatively simple nature of these types of transactions, opportunities do not tend to remain on the market for an extended period of time. (*Id.* ¶ 11.) The Debtors therefore believe they will be better positioned to execute on opportunities meeting their criteria if they can represent to sellers that they have the requisite court authority to make deposits and move expeditiously to close an Acquisition subject to the Notice Procedures (defined below) and the aggregate purchase price limit set forth herein. (*Id.* ¶ 13.)

14.    For the reasons stated above, the Debtors seek authority to make Acquisitions subject to the Notice Procedures and to make deposits with respect to potential Acquisitions. Based on discussions CohnReznick has had with potential sellers, the Debtors anticipate that sellers will require an earnest-money deposit of not more than 10% to be provided substantially contemporaneously with entering into a purchase agreement. (*Id.* ¶ 12.) The Debtors' ability to promptly make deposits to demonstrate financial wherewithal will be critical in combatting the perception many sellers may harbor that dealing with a debtor-in-possession subject to an ongoing chapter 11 proceeding adds a layer of complexity, risk, and uncertainty. (*Id.*) Absent authority to make such deposits, the Debtors expect that it will be challenging to make competitive offers. (*Id.* ¶ 13.)

15.    The Debtors, however, do not seek unfettered authority to make deposits. Instead, the Debtors seek authority that is carefully circumscribed and appropriately conditioned. The Debtors will only make refundable deposits on customary terms and conditions for transactions of this type subject in each case to an aggregate $1.2 million limit. Further, the Debtors will confer with the Tort Claimants' Committee and the FCR regarding any proposed transaction and will only make a deposit upon obtaining the advance consent of the Tort Claimants' Committee and

US-DOCS\121947960.9RLF1 25315622v.1

the FCR. To that end, the Proposed Order grants the Tort Claimants' Committee and the FCR consent rights over all deposits and Acquisitions.

16.        Further, to effectuate the Acquisitions, the Debtors seek authority to form a new wholly-owned subsidiary for the purpose of acquiring and holding the purchased assets.

**C.        Proposed Notice Procedures**

17.        The Debtors seek authority to acquire, either directly or indirectly through a wholly-owned subsidiary, one or more businesses with real property assets, any fixtures and improvements located thereon, and certain personal property related thereto meeting the criteria set forth herein subject to the following notice procedures (the "**Notice Procedures**"):

    i.    Within two (2) business days following entry by the Debtors, or a wholly-owned subsidiary of one or more of the Debtors, into an agreement to purchase one or more businesses with real property assets, any fixtures and improvements located thereon, and certain personal property related thereto as described in this Motion, which agreement will not be entered absent consent by each of the Tort Claimants' Committee and the FCR to the terms thereof, the Debtors shall file with the Court a notice of entry into such agreement, substantially in the form attached hereto as **Exhibit B** (each a "**Purchase Notice**"), which notice will include the applicable purchase agreement (subject to confidentiality considerations) and set forth the material terms of the proposed Acquisition. The Purchase Notice shall be served on (a) the U.S. Trustee; (b) the Office of the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; and (d) the Information Officer (as defined in the Plan) (collectively, the "**Notice Parties**").

    ii.    Each Notice Party shall have seven (7) calendar days after service of a Purchase Notice (each an "**Objection Deadline**") to object to the proposed Acquisition.

    iii.    If no objections are timely filed, upon expiration of the Objection Deadline, the Debtors shall be authorized to take actions necessary to consummate the proposed Acquisition and perform under the applicable purchase agreement without further notice or order of the Court.

    iv.    If any Notice Party objects to a proposed Acquisition, it must file and serve on the Debtors and each other Notice Party a written objection (an "**Objection**") so as to be received on or before the Objection Deadline. Any Objection must identify with specificity the terms of the proposed

7

Acquisition or purchase agreement that are subject to the Objection and the basis for such Objection. The Debtors shall, in good faith, attempt to resolve the Objection; provided that any resolution of an Objection shall be subject to the consent of the Tort Claimants' Committee and the FCR. If the Objection has not been resolved in accordance with the preceding sentence within seven (7) calendar days after the Objection is filed (or another mutually agreed-upon period), the parties shall seek an order of the Court resolving any unresolved issues. The Debtors shall have seven (7) calendar days after the filing of an Objection to file a response to such Objection.

## **RELIEF REQUESTED**

18.     By this Motion, the Debtors request entry of the Proposed Order:

> i.     authorizing the Debtors to purchase, either directly or indirectly through a wholly-owned subsidiary, one or more businesses with real property assets, any fixtures and improvements located thereon, and certain personal property related thereto pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9014; *provided* that (a) the Debtors comply with the Notice Procedures, (b) the Tort Claimants' Committee and FCR consent to each purchase including the underlying terms of such purchase, and (c) the aggregate purchase price, including any deposits, shall not exceed $12 million absent further order of this Court;

> ii.    approving the Notice Procedures;

> iii.   authorizing the Debtors to make one or more refundable deposits on customary terms and conditions with respect to potential Acquisitions in an aggregate amount not to exceed $1.2 million, subject in each case to the consent of the Tort Claimants' Committee and the FCR; and

> iv.    authorizing the Debtors to take other actions as they may determine to be necessary to effectuate such Acquisitions, including (a) following the entry of the Proposed Order, forming a wholly-owned subsidiary owned by one or more of the Debtors for the purpose of purchasing and holding the purchased assets and (b) subject to the Notice Procedures and the consent of the Tort Claimants' Committee and the FCR, (x) entering into one or more asset purchase agreements and (y) performing under such asset purchase agreements.

19.     In support of this Motion, the Debtors respectfully submit the *Declaration of Eric Danner in Support of Debtors' Motion for Entry of Order (I) Approving Notice Procedures,*

*(II) Authorizing Acquisitions, and (III) Granting Related Relief* (the "**Danner Declaration**"),

attached hereto as **Exhibit C**.

<strong><u>BASIS FOR RELIEF</u></strong>

**I.    APPROVAL OF THE NOTICE PROCEDURES AND THE AUTHORIZATIONS REQUESTED HEREIN ARE APPROPRIATE UNDER SECTION 363 OF BANKRUPTCY CODE.**

20.    Section 363 of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor must demonstrate a sound business justification for the use of assets outside the ordinary course of business.  *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).  Once a court determines that a valid business justification exists for a use of property outside the ordinary course of business, courts must determine whether: (a) adequate and reasonable notice was given to interested parties, (b) the purchase price is fair and reasonable, and (c) the parties have acted in good faith.  *In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008).  As described below, the Debtors' pursuit of the proposed Acquisitions, subject to the Notice Procedures and other conditions, meets each of these requirements.

21.    Here, a strong business justification exists for pursuing the proposed Acquisitions consistent with the Notice Procedures.  Following the Sale, the Debtors are no longer engaged in their historical talc businesses and are holding a significant amount of cash.  Investing a portion of the cash in conservative, revenue generating assets will provide a stable ongoing income stream for the benefit of the Debtors and their estates.  Under the Plan, the Trust will become the owner

9

of any assets acquired by virtue of its ownership of the equity in the reorganized Debtors.  As a result, all income produced by the assets and other return on the investment post-Effective Date (as defined in the Plan) will accrue to the benefit of the holders of Talc Personal Injury Claims (as defined in the Plan).  For these reasons, the proposed Acquisitions constitute a sound exercise of the Debtors' business judgment.

22.     Because the Debtors have not yet entered into a purchase agreement, they are not seeking authority to consummate a specific transaction.  Instead, the Debtors seek prospective authority for the proposed Acquisitions subject to the Notice Procedures, the consent rights of the Tort Claimants' Committee and the FCR, and the purchase price cap.  The Debtors also seek prospective authority to make deposits in connection with proposed Acquisitions on customary terms and conditions and subject to an aggregate cap and the consent rights of the Tort Claimants' Committee and the FCR.  Based on the Debtors' experience to date, sellers expect potential purchasers to make a deposit contemporaneously with executing a purchase agreement and to move expeditiously toward closing.  (Danner Decl. ¶ 12.)  It is doubtful that the Debtors will be able to execute on a transaction meeting the criteria set forth herein if they are unable to put down a deposit and/or must enter into purchase agreements that are conditioned upon court approval. (*Id.* ¶ 13.)

23.     The Notice Procedures are reasonable under the circumstances and appropriately balance the Debtors' need to act swiftly to execute on attractive opportunities with providing interested parties notice of specific transactions and an opportunity to consider and be heard with respect to the terms and conditions of any particular Acquisition prior to consummation.  Similar notice procedures for the prospective purchase of assets have been approved by this Court in similar circumstances.  *See In re Flintkote Company*, No. 04-11300, D.I. 7493 (Bankr. D. Del.

Apr. 5, 2013) (authorizing future purchases of real property subject to existing leases with operating businesses upon notice to and consent of the Official Committee of Asbestos Personal Injury Claimants and the legal representative of future asbestos claimants).  Accordingly, interested parties will receive adequate and reasonable notice.

24.     The Debtors propose to impose a $12 million aggregate limit on Acquisitions that they may consummate, which may include any refundable deposits up to an aggregate limit of $1.2 million, and reserve the right to seek further approval from the Court to increase such limits or seek related relief.  The purchase price and deposit caps together with the proposed Notice Procedures will appropriately cabin the relief requested and balance the need for flexibility to pursue appropriate Acquisitions with the appropriate level of notice and oversight regarding any individual Acquisitions.  Likewise, the consent rights of the Tort Claimants' Committee and the FCR will ensure that the representatives of the ultimate economic stakeholders support any proposed Acquisition.

25.     Any purchase agreement entered by the Debtors will be the product of good faith, arms' length negotiations with the proposed seller.  None of the potential sellers the Debtors have engaged with to date are insiders or otherwise affiliated with the Debtors, and the Debtors will not pursue any Acquisitions with insiders or affiliates without further Court approval.  (Danner Decl. ¶ 15.)  The proposed Notice Procedures will also afford all interested parties an opportunity to be heard on the fairness and reasonableness of any proposed Acquisition and the applicable purchase agreement.

26.     Finally, in furtherance of their intended goal to purchase one or more businesses, it is appropriate for the Debtors to have the authority to create a wholly-owned subsidiary as a vehicle to purchase such assets.  Purchasing and holding assets through a wholly-owned subsidiary may

prove to be more advantageous from a corporate structure and tax perspective than the Debtors purchasing and holding the assets directly. (*Id.* ¶ 14.)

## CONCLUSION

27.     For the above reasons, the Debtors respectfully request that the Court enter the Proposed Order.

## NOTICE

28.     Notice of this Motion will be given to: (a) counsel to the Tort Claimants' Committee; (b) counsel to the FCR; (c) those parties who have made the appropriate filings requesting notice of all pleadings filed in the Chapter 11 Cases; (d) the U.S. Trustee; (e) the Office of the United States Attorney for the District of Delaware; (f) the Internal Revenue Service; and (g) the Information Officer.  The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR MOTION

29.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, granting the relief requested in this Motion and such other relief as may be just and proper.

Dated:  May 14, 2021
       Wilmington, Delaware

Respectfully submitted,

*/s/ Sarah E. Silveira*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Sarah E. Silveira (No. 6580)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
       merchant@rlf.com
       steele@rlf.com
       silveira@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
Shawn P. Hansen (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
       kim.posin@lw.com
       helena.tseregounis@lw.com
       shawn.hansen@lw.com

- and -

Richard A. Levy (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  richard.levy@lw.com

*Counsel for Debtors and Debtors-in-Possession*