# EXHIBIT C

# Danner Declaration

US-DOCS\121947960.9RLF1 25315622v.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | Case No. 19-10289 (LSS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF ERIC DANNER IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING NOTICE PROCEDURES, (II) AUTHORIZING ACQUISITIONS AND (III) GRANTING RELATED RELIEF**

Under 28 U.S.C. § 1764, Eric Danner declares as follows under the penalty of perjury:

1. I am a Partner at CohnReznick LLP ("**CohnReznick**"), which maintains offices at 1301 6th Ave, New York, NY 10019, and Chief Restructuring Officer, President, and Treasurer of the Debtors. I am authorized to submit this declaration (this "**Declaration**") on behalf of the Debtors.[2]

2. I submit this Declaration in support of the relief requested in the *Debtors' Motion for Entry of Order (I) Approving Notice Procedures, (II) Authorizing Acquisitions and (III) Granting Related Relief* (the "**Motion**"). I have reviewed the Motion and the documents filed in support of the Motion, and it is my belief that the relief sought therein is reasonable and in the best interest of the Debtors, their estates, their creditors, and other parties in interest. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050) and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2] Capitalized terms used in this Declaration and not otherwise defined shall have the meanings ascribed to them in the Motion.

knowledge of such matters from the Debtors' employees or retained advisers that report to me in the ordinary course of my responsibilities. If called upon to testify, I would testify competently to the facts set forth herein.

## BACKGROUND

3. On February 13, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases (the "**Chapter 11 Cases**") for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to manage and operate their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. The Debtors filed the Motion to request entry of an order (a) subject to the Notice Procedures and the consent of the Tort Claimants' Committee and the FCR, authorizing the Debtors to purchase, either directly or indirectly through a wholly-owned subsidiary, one or more businesses with real property assets, any fixtures and improvements located thereon, and certain personal property related thereto for an aggregate purchase price not to exceed $12 million, including any deposits (collectively, the "**Acquisitions**"); (b) approving the Notice Procedures related thereto; (c) authorizing the Debtors to make one or more refundable deposits with respect to potential Acquisitions on terms and conditions set forth in the Motion; (d) authorizing the Debtors to take other actions as they may deem necessary to effectuate the Acquisitions, including, without limitation, (i) following the entry of the Proposed Order, forming a wholly-owned subsidiary owned by one or more of the Debtors for the purpose of purchasing and holding the purchased assets and (ii) subject to the Notice Procedures and the consent of the Tort Claimants' Committee and the FCR, (x) entering into one or more asset purchase agreements and (y) performing under such asset purchase agreements; and (e) granting related relief.

5. I submit this Declaration to describe the circumstances giving rise to the need for the relief sought in the Motion.

## SALE OF ASSETS

6. On November 17, 2020, the Court entered an order [Docket No. 2539] (the "**Sale Order**"), which, among other things, approved the consummation of the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**") on terms and conditions set forth in an asset purchase agreement with Magris Resources Canada Inc. (the "**Buyer**"), dated as of October 13, 2020 (the "**Asset Purchase Agreement**"). Pursuant to the Asset Purchase Agreement, the Debtors agreed to sell the Assets to the Buyer for a purchase price comprised of $223 million in cash and the assumption of certain liabilities. On February 17, 2021, the closing of the Sale occurred.

## PROPOSED ACQUISITIONS

7. The Debtors intend to use a portion of the Sale proceeds to purchase one or more operating businesses. The Debtors, together with their advisors, have worked to identify well-established targets with a proven track record of financial results that will afford the reorganized Debtors a stable foundation and income stream post-emergence.

8. The Debtors have engaged in a nationwide search for potential targets with a specific focus on businesses meeting the following criteria: (a) conservative businesses with durable real property assets that are best-positioned to retain value through changing business cycles; (b) mature businesses that generate a reliable revenue stream and have historical financial results reflected in financial and tax returns that demonstrate consistent profitability; and (c) self-sufficient businesses with limited operating expenses and minimal need for direct involvement from Debtors' management.

9.    CohnReznick has conducted an extensive analysis of potential targets across several industries and has identified a number of opportunities fitting the Debtors' criteria. Those opportunities include self-storage businesses, logistics businesses, quick-serve dining restaurants, laundromats, car washes, and gas stations. CohnReznick's review of potential targets has been informed by discussions with business and commercial real-estate brokers regarding industries that best maintained value during the COVID-19 pandemic and those that are best positioned to retain value in the near-term and long-term. CohnReznick also reviewed online platforms for specific opportunities matching the Debtors' criteria, has assessed the diligence necessary for specific industries and has conducted diligence on specific targets. CohnReznick's diligence efforts have included customary financial diligence, including reviewing tax returns, historical financial statements, and future financial projections, as well as direct discussions with sellers and site visits to review the enterprise and the assets.

10.    Each of the potential targets identified thus far have purchase prices between $2.5 million and $3.5 million.

11.    The Debtors have engaged in negotiations with a number of potential sellers, but the Debtors' efforts have not resulted in an executed purchase agreement. Currently, there is an active market for the types of businesses the Debtors are targeting. Due to the active market and relatively simple nature of these types of transactions, CohnReznick has observed that opportunities do not tend to remain on the market for an extended period of time. Sellers expect potential buyers to move quickly in making offers, conducting diligence, and moving toward closing.

12.    In particular, based on feedback from sellers, the Debtors understand that sellers expect potential purchasers to make an earnest-money deposit contemporaneously with executing

a purchase agreement. Based on discussions with potential sellers, I expect that sellers will typically require an earnest-money deposit of not more than 10% to be made substantially contemporaneously with entering into a purchase agreement. Being able to promptly make deposits to demonstrate financial wherewithal will be critical for the Debtors given the perception many sellers may have that dealing with a debtor-in-possession subject to a chapter 11 proceeding adds a layer of complexity, risk, and uncertainty.

13. Based on CohnReznick's experience, it will be challenging for the Debtors to execute on an attractive transaction if the Debtors are unable to put down a deposit and/or must enter into purchase agreements that are conditioned upon court approval. I believe that the Debtors will be better positioned to execute on opportunities meeting their criteria if they can represent to sellers that they have requisite court authority to more expeditiously close an acquisition, subject to the Notice Procedures and the aggregate purchase price limit.

14. The Debtors seek authority to form a wholly-owned subsidiary to effectuate the proposed Acquisitions. I understand, based on discussions with the Debtors' advisors, that purchasing and holding assets through a wholly-owned subsidiary may be more advantageous from a corporate structure and tax perspective than the Debtors purchasing and holding the assets directly.

15. None of the potential sellers the Debtors have engaged with to date are insiders or otherwise affiliated with the Debtors.

16. It is my belief that making one or more purchases of businesses on the terms outlined herein is in the best interest of the Debtors' estates and, as such, constitutes a proper exercise of the Debtors' business judgment.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of May 2021.

                                                              */s/ Eric Danner*
                                                              Eric Danner
                                                              Chief Restructuring Officer, President, and Treasurer of Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada Inc.