**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| IMERYS TALC AMERICA, INC., *et al.*,[1] ) | Case No. 19-10289 (LSS) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | **Re: Docket No. 3561** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF ARNOLD &
ITKIN LLP TO DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING
NOTICE PROCEDURES, (II) AUTHORIZING ACQUISITIONS, AND
(III) GRANTING RELATED RELIEF**

Arnold & Itkin LLP ("Arnold & Itkin"), on behalf of holders of Talc Personal Injury Claimants represented by Arnold & Itkin[2] ("Objectors"), submits this limited objection and reservation of rights (this "Limited Objection") to the *Debtors' Motion for Entry of Order (I) Approving Notice Procedures, (II) Authorizing Acquisitions and (III) Granting Related Relief* [Docket No. 3561] (the "Motion").

**Limited Objection**

1.  It is extremely unusual for a debtor-in-possession which has sold substantially of all its assets to seek Court authority thereafter to "invest" part of the sale proceeds in one or more new and unrelated businesses while it has a plan pending that provides for the distribution of those sale proceeds. It is even more unusual for a debtor to do so after it

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2] Unless otherwise defined, defined terms used herein have the meaning set forth in the Motion or in the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 2852] (the "Plan"), as applicable.

1

has filed a plan that provides for the proceeds of such sale to be transferred to a plan trust, with certain limited deductions that do *not* include any deduction for any such new investment; obtained court approval of a disclosure statement that makes no mention of any such investment of the sale proceeds; and solicited votes on such a plan based on such a disclosure statement. But that is exactly what is being proposed here. While the Debtors claim that there is a valid business justification for this extraordinary activity, Arnold & Itkin believes that the real (but hidden) motivation for the Motion is to enable the Debtors to attempt to meet the "going concern" requirement that has been found applicable to testing compliance with section 524(g)(2)(B)(i)(ii)-(III) of the Code, so that the Plan Proponents can obtain a section 524(g) channeling injunction under the proposed Plan.

2. The Debtors acknowledge they have no ongoing business, since the sale of substantially all of their assets closed in February 2021. To support the façade of a valid "business judgment" justification for the relief sought in the Motion—the ability to invest up to $12 million in a hodge podge of businesses such as self-storage facilities, gas stations, and laundromats—the Debtors vaguely mention the supposed need to have "a stable ongoing income stream for the benefit of the Debtors and their estates" and note that "all income produced by the assets and other return on the investment post-Effective Date will accrue to the benefit of the holders of Talc Personal Injury Claims." Motion ¶ 21. The Debtors obfuscate and fail to say explicitly what is obvious to Arnold & Itkin and anyone familiar with section 524(g) who is not wearing blinders – the true purpose of the Motion is to attempt to comply with the "going concern" requirement under section 524(g). That tactical purpose does not satisfy the standards of Bankruptcy Code section 363 and does not represent a proper use of estate assets.

3. The Debtors assert that the purpose of the Acquisitions is for investment. Motion ¶ 21. However, the Bankruptcy Code prevents "investments" that do not fall within narrow, statutorily defined parameters. The Motion is an end run around Bankruptcy Code section 345. In addition to investing in potential Acquisitions, the Debtors seek authorization to make one or more refundable deposits of estate cash with third-parties without complying with section 345(b) of the Bankruptcy Code. The Debtors fail to cite section 345(b) or to provide support for their request that the Court authorize them to deviate from the strict requirements of the statute or meet the United States Trustee Operating Guidelines that would require the deposits to be made into a bank that has executed a Uniform Depository Agreement with the Region 3 UST Office.

4. In addition, the Debtors' request "to utilize a portion of the Sale proceeds to purchase one or more operating businesses" (Motion ¶ 9) represents a material modification of the Plan, because using the Sale Proceeds for that new purpose diverts Sale Proceeds that are required to be transferred directly to fund the Talc Personal Injury Trust on the Plan Effective Date. The Debtors do not even mention, let alone address, this Plan modification issue. Nor do they explain why their Disclosure Statement never mentioned any plan to "invest" a portion of the Sale Proceeds in some different asset (like a laundromat) instead of being transferred to the Trust.

5. Objectors object to the proposed Order on the Motion to the extent that if the Court grants the Motion, it should be without prejudice to the rights of Arnold & Itkin and the Objectors: (i) to object to confirmation on the grounds that, and argue at the Confirmation Hearing (x) that the existence of these Acquisitions, and the Debtors' ownership of any such Acquisitions, do not satisfy the requirements of section 524(g)(2)(B)(i)(II)-(III) or any other

applicable provision of section 524(g); and (y) that the diversion and use of a portion of the Sale Proceeds to make the Acquisitions is a plan modification that is subject to all provisions of the Bankruptcy Code and Rules that apply to plan modifications, including all requirements applicable to plan modifications made after votes on a plan have been solicited; (ii) to object to any Acquisition, or the deposit to be made by the Debtors in connection with any Acquisition, on the grounds that it fails to comply with section 345 of the Code.

6. Accordingly, Arnold & Itkin requests that any order granting the Motion include specific language that these rights are preserved and not impaired or otherwise affected by the relief granted.

**A.    The "Going Concern" Requirement of Section 524(g)(2)(B)(i)(II)-(III)**

7. Section 524(g) permits a court to confirm a chapter 11 plan that includes a channeling injunction, if, among other requirements, a personal injury trust is "funded in whole or in part by the securities of 1 or more debtors involved in such plan and by the obligation of such debtor or debtors to make future payments, including dividends." 11 U.S.C. § 524(g)(2)(B)(i)(II). "The implication of this requirement is that the reorganized debtor must be a going concern, such that it is able to make future payments into the trust to provide an 'evergreen' funding source for future asbestos claimants." *In re Combustion Engineering, Inc.*, 391 F. 3d 190, 248 (3d Cir. 2004); *see also In re Plant Insulation Co.*, 734 F. 3d 900, 914 (9th Cir. 2013); *In re Flintkote Co.*, 486 BR 99 (Bankr. D. Del. 2012).

8. Here, the Motion simply makes indirect references to the supposed need to have "a stable ongoing income stream for the benefit of the Debtors and their estates" and notes that "all income produced by the assets and other return on the investment post-Effective Date will accrue to the benefit of the holders of Talc Personal Injury Claims." Motion ¶ 21. Nowhere

4

do the Debtors mention the "going concern" business requirement under section 524(g) that must be satisfied for the Plan Proponents to obtain a channeling injunction for Talc Personal Injury Claims into the Talc Personal Injury Trust, or their likely inability to satisfy that requirement absent the Acquisitions. It is unfortunate that the Debtors have not been more forthcoming with the Court. It is obvious to Arnold & Itkin that the Debtors are attempting, after the fact, to *create* an ongoing business where this is none.

9. The problem the Plan Proponents face—and that the Debtors are apparently aware of and attempting to solve through the proposed "Acquisitions"—is that although the stock of the Reorganized North American Debtors is to be owned by the Talc Personal Injury Trust, the Reorganized North American Debtors will not satisfy the "going concern" requirement articulated by the Third Circuit, because they have sold substantially all of their assets. As a result, they will have no ongoing operations.

10. In apparent recognition of this shortcoming, the Plan calls for another device to attempt to address the "going concern" requirement, but that device will not pass muster under section 524(g). The Plan Proponents have come up with the artifice of having a financially-sound Italian affiliate of the North American Debtors—Imerys Talc Italy S.p.A. ("ITI")—all of whose employees and operations are in Italy; whose only property in the United States appears to consist of retainers to certain professionals; and that has been subject to only eight talc personal injury lawsuits filed by a single law firm, file a chapter 11 petition shortly before the Confirmation Hearing, and providing in the Plan that ITI's parent will provide the Trust with a $500,000 promissory note that will be guaranteed by ITI and secured by a majority of its voting shares.

11. To begin with, however, that chapter 11 petition would be subject to dismissal on bad faith grounds, because ITI is financially healthy and has no need for chapter 11 relief; and the only real reason for its chapter 11 filing years into these cases will be to create the appearance of compliance with sections 524(g)(2)(B)(i)(II)-(III) for the benefit of the North American Debtors and their non-Debtor affiliates who will benefit from the section 524(g) third party injunction. This is not a proper use of chapter 11 by a financially-sound foreign entity.

12. Even if the Court is willing to tolerate a chapter 11 case filed for this purpose, the ruse of issuing a $500,000 note guaranteed by ITI and secured by a majority of its stock does not pass muster under section 524(g). ITI's financial condition is such that the probability of the "note-default" contingency that would entitle the Trust to own a majority of ITI's stock actually occurring is virtually zero; and if that contingency were to occur, the stock of ITI that the Trust would receive would have little or no value (as would be reflected in ITI's failure to honor its guaranty of the note). Under applicable case law, this is not the kind of "contingency" that satisfies sections 524(g)(2)(B)(i)((II)-(III).

13. The Debtors now seek to "solve" the foregoing problems that they face in attempting to satisfy the Third Circuit's "going concern" requirement by seeking authority to make the Acquisitions under the facade of their "business judgment" and the supposed benefits of investing up to $12 million to do so. The Objectors' substantive arguments, which will be raised at confirmation, should not be prejudiced by the relief requested in this Motion. The Debtors should not be able to simply rely on a "business judgment" standard or the contrived justification set forth in the Motion or rely on Court approval of the Motion to meet the "going concern" requirement in section 524(g) at the Confirmation Hearing. Indeed, confirmation will require the Debtors and other Plan Proponents to satisfy all the elements of section 524(g) to

6

obtain a channeling injunction. The Objectors and other parties should not be prejudiced with arguments in connection with their confirmation objections or at the Confirmation Hearing simply because the Court already approved the procedures set forth in the Motion. All parties' rights to make arguments about the "going concern" requirement of section 524(g) should be expressly preserved.

B.  **The Diversion of a Portion of the Sale Proceeds to Fund Acquisitions Is a Modification of the Plan that is Subject to all Requirements Applicable to Plan Modifications**

14. Through the procedures set forth in the Motion, the Debtors "intend to utilize a portion of the Sale proceeds to purchase one or more operating businesses." *See* Motion ¶ 9. This diversion of Sale Proceeds is a modification of the pending Plan, because the Plan requires that the net Sale Proceeds be transferred to fund the Talc Personal Injury Trust on the Effective Date, and makes no provision for a deduction for Sale Proceeds diverted to fund the acquisition of new "businesses."

15. The Plan requires that, on the Effective Date, the "Talc Personal Injury Trust Assets" be transferred to the Talc Personal Injury Trust. Plan at Article 4.6.1. The "Talc Personal Injury Trust Assets" are defined to mean "the following assets and any income, profits, and proceeds derived from such assets subsequent to the transfer of such assets to the Talc Personal Injury Trust, including, but not limited to "the ***Imerys Settlement Funds*** . . . ." Plan at Article 1.1.239 (emphasis added).

16. In turn, the "Imerys Settlement Funds" consist of:

(i) $75 million, consisting of $74.5 million Cash and the Talc PI Note, plus (ii) the ***Sale Proceeds***, plus (iii) a contingent purchase price enhancement of up to $102.5 million, subject to the Cash value of the Sale Proceeds provided that in the event the Sale contemplated by and pursuant to the Sale Order closes, no contingent purchase price enhancement shall be payable, less (iv) if the DIP Order is entered, amounts required to pay the DIP Facility Claims pursuant to the terms of the DIP

7

>Loan Documents and Allowed by the DIP Order, less (v) if the DIP Order is not entered, Imerys S.A.'s reasonable and documented out-of-pocket costs and expenses of negotiation and preparation of the DIP Loan Documents estimated to be $400,000 as of December 10, 2020.

Plan at Article 1.1.124 (emphasis added).  The "Sale Proceeds" include the net proceeds from the Sale of substantially all of the Debtors' assets pursuant to the Assert Purchase Agreement with the Buyer, Magris Resources Canada Inc., for the purchase price of $223 million in cash and the assumption of certain liabilities.  *See* Plan at Article 1.1.218; Motion ¶ 5.

17. Through the relief requested in the Motion, the Debtors now intend to use some of the Sale Proceeds that the Plan dedicated as assets of the Talc Personal Injury Trust for making Acquisitions.  The Objectors should not be prejudiced in making any objections or other arguments relating to this Plan modification, including, without limitation, the Plan Proponents' failure to comply with any applicable requirements of the Code or Rules.  No voting Class 4 creditors were notified about this potential use of Sale Proceeds until after solicitation on the Plan was complete.  The diversion of Sale Proceeds could be considered a material and adverse modification to the Plan, and the Objectors do not yet know if the Plan requires resolicitation after a hearing pursuant to Bankruptcy Rule 3019.  Accordingly, the Objectors' rights to make such arguments and any other arguments relating to this Plan modification should be preserved with language added to the proposed order on the Motion.

**C.     Deposits for the Acquisitions May Violate Section 345(b) of the Bankruptcy Code**

18. In making potential Acquisitions of businesses, the Debtors seek authorization to make one or more refundable deposits of estate cash up to $1.2 million with third-parties in apparent violation of section 345(b) of the Bankruptcy Code.  Motion ¶¶ 13, 14, 15. The Debtors fail to cite section 345(b) in the Motion or explain how they are able to satisfy or get around the strict requirements of the statute or meet the United States Trustee Operating

8

Guidelines that would require the deposits to be made into a bank that has executed a Uniform Depository Agreement with the Region 3 UST Office.  Although the proposed deposits will be refundable, subject to aggregate limits, and subject to consent rights of the TCC and FCR, none of those provisions is sufficient to comply with section 345(b).

19. Section 345(a) of the Bankruptcy Code governs a debtor's deposit and investment of cash during its chapter 11 case and authorizes such deposits or investments as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires that the debtor obtain from the "entity with which the money is deposited or invested a bond in favor of the United States [that is] secured by the undertaking of a[n adequate] corporate surety . . . unless the court for cause orders otherwise."  In addition, Local Rule 2015-2(b) provides that "no waiver of the investment requirements of section 345 shall be granted by the Court without notice and an opportunity for hearing in accordance with these Local Rules."  The Debtors have not asked for a section 345 waiver.  Accordingly, the right of the Objectors to object to the terms of any specific deposit proposed to be made in connection with any specific proposed Acquisition should be preserved.

**D.     Reservation of Rights Language for the Proposed Order**

20. The following language should be added to the proposed order on the Motion to preserve the Objectors' rights:

> "No provision of this Order or the record of the proceedings on the Motion shall operate as collateral estoppel against, or otherwise prejudice any rights of, Arnold & Itkin LLP ("Arnold & Itkin"), on behalf of holders of Talc Personal Injury Claimants represented by Arnold & Itkin ("Objectors") or the Objectors, to make

9

any arguments or objections in connection with confirmation of the Plan (or any later amended or new chapter 11 plan) regarding issues raised by Arnold & Itkin in its Limited Objection and Reservation of Rights to the Motion [Docket No. ___], including, but not limited to, (a) that the Debtors have not met the "going concern" requirement embodied in section 524(g)(2)(B)(i)(II)-(III) of the Bankruptcy Code and cannot manufacture compliance with that section through the Acquisitions; and (b) that the use of a portion of the Sale Proceeds to make Acquisitions is a modification of the Plan that is subject to, and requires compliance with, all provisions of the Bankruptcy Code and Rules applicable to plan modifications. In addition, no provision of this Order or the record of the proceedings on the Motion shall operate as collateral estoppel against, or otherwise prejudice any rights of, Arnold & Itkin or the Objectors, to make any argument or objections with respect to whether any specific proposed Acquisition or any deposit to be made in connection with any specific proposed Acquisition violates section 345 of the Bankruptcy Code."

21. The Debtors should also make the following changes to the proposed procedures:

    a. The Notice Parties that are served with a Purchase Notice should include those parties that have requested service of notices in the cases pursuant to Bankruptcy Rule 2002, with email notice being sufficient. *See* Proposed Order ¶ 3.i.

    b. The Debtors' filing of any response to an Objection should not be more than seven (7) calendar days after the filing of an Objection but should also be filed at least two (2) business days before any hearing scheduled to resolve the Objection. *See* Proposed Order ¶ 3.iv.

**Reservation of Rights**

22. The Objectors expressly reserve all rights to defend, object or otherwise respond and raise any of the issues identified in this Limited Objection in connection with confirmation of the Plan and at the Confirmation Hearing, and in connection with any other plan or hearing on confirmation of such other plan, or as otherwise set forth in this Limited Objection.

| | |
|---|---|
| Dated: May 28, 2021 | PACHULSKI STANG ZIEHL & JONES LLP |

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Debra I. Grassgreen (CA Bar No. 169978)
John A. Morris (NY Bar No. 2405397)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:   ljones@pszjlaw.com
         dgrassgreen@pszjlaw.com
         jmorris@pszjlaw.com
         pkeane@pszjlaw.com

*Special Bankruptcy Counsel to Arnold & Itkin LLP*

-and-

ARNOLD & ITKIN LLP
Jason A. Itkin
6009 Memorial Drive
Houston, TX 77007
Main: 713.222.3800
Fax: 713.222.3850
Email: jitkin@arnolditkin.com

*Counsel to the Objectors*