# Exhibit A

# IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **In re** | Chapter 11 |
| **IMERYS TALC AMERICA, INC., *et al.*[1]** | Case No. 19–10289 (LSS) <br> (Jointly Administered) |
| **Debtors.** | |

**JOHNSON & JOHNSON'S AND JOHNSON & JOHNSON CONSUMER INC.'S
FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS TO DEBTORS RELATED
TO THE PROPOSED NINTH AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF IMERYS TALC AMERICA, INC. AND ITS DEBTOR
AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Under Federal Rules of Civil Procedure 26 and 34, made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, Johnson & Johnson and Johnson & Johnson Consumer Inc. ("**J&J**"), by its undersigned counsel, requests that Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc. (the "**Debtors**") produce the documents specified in these Requests in connection with the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (D.I. 2864), in the above-captioned chapter 11 cases. J&J requests that the Debtors provide the requested documents as soon as possible but no later than May 10, 2021, and that they be served on or produced to the law offices of Weil, Gotshal & Manges, LLP, 767 Fifth

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6348), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East Suite 300, Roswell, Georgia 30076.

Avenue, New York, New York 10153, attention Theodore E. Tsekerides by delivery through electronic means to the email address Theodore.Tsekerides@weil.com.

## I.   DEFINITIONS

The terms used in these Requests have the meanings specified below.  Each defined term shall have the meaning ascribed to it regardless of whether the term is capitalized.  Any term referencing any business, legal, or governmental entity or association shall be deemed a reference to any and all of its predecessors, successors, Affiliates and subsidiaries, as well as any and all of its past or present officers, directors, partners, members, managers, employees, representatives, and agents. This includes, without limitation, the following:

1.      "Affiliate" means any entity ascribed to such term in §101(2) of the Bankruptcy Code.

2.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements, press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

3.      "Debtors" means ITA, ITV, and ITC and any of their attorneys, representatives, consultants, advisors or anyone acting on the Debtors' behalf.

4.      "Documents" means all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind

or other data compilations from which information can be obtained, or translated, if necessary, through detection devices into reasonable usable form. The term "Documents" includes, but is not limited to:

 a. correspondence, term sheets, proposals, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intra-office communications, or offers;

 b. notations in any form made of conversations, telephone calls, meetings, negotiations or other communications;

 c. bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

 d. electronic, mechanical or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail,

electronic mail, computer-stored data or material), or transcriptions thereof, including but not limited to, databases and spreadsheets; and

e.   all drafts, alterations, modifications, changes and amendments of any of the foregoing and any material underlying, supporting or used in the preparation of any document.

5.   "ITA" means Imerys Talc America, Inc., formerly Luzenac America, formerly Cyprus Talc Corporation.

6.   "ITC" means Imerys Talc Canada Inc.

7.   "ITI" means Imerys Talc Italy S.p.A.

8.   "ITV" means Imerys Talc Vermont, Inc., formerly Cyprus Windsor Minerals, Inc., formerly Windsor Minerals, Inc.

9.   "J&J" means Johnson & Johnson and Johnson & Johnson Consumer Inc.

10.  "Plan" means the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (D.I. 2864) or any prior or subsequent version thereof.

11.  "Plan Proponents" has the meaning ascribed to it in § 1.1.176 of the Plan.

12.  "Related to" means concerning, referring to, regarding, relating to, describing, evidencing or constituting.

13.  "Vote Certification" means the *Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Preliminary Tabulation of Ballots Cast on the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code Filed by Imerys Talc America, Inc.* (D.I. 3334).

## II.    <u>INSTRUCTIONS</u>

The preceding definitions apply to the following instructions and each of the succeeding requests:

1.    The terms used in the Requests are to be given their most expansive and inclusive interpretation unless otherwise expressly limited in a Request. This includes, without limitation, the following:

        a.    construing "and" and "or" in the disjunctive or conjunctive as necessary to make a request more inclusive;

        b.    construing the singular form of a word to include the plural and the plural to include the singular;

        c.    construing the term "among" to mean between or among;

        d.    construing the term "any" to mean any, all, each, and every;

        e.    construing the masculine, feminine, or neutral pronouns to include other genders; and

        f.    construing the present tense of a verb to include its past tense and vice versa.

2.    You are required to obtain and furnish all Documents available to you and to any of your representatives, agents, employees or attorneys, and to obtain and furnish all Documents that are in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees, accountants or attorneys.

3.    These requests are continuing in nature and, to the extent that your responses may be enlarged, diminished or otherwise modified by information acquired after your initial responses to these requests, you are required promptly to supplement your initial responses

in writing reflecting such changes, and to produce any additional Documents, to the fullest extent required by any applicable law or rule.

4. If any Documents were formerly in your possession, custody or control and have been lost, destroyed or otherwise disposed of, then furnish a list that identifies all Documents that have been lost, destroyed or otherwise disposed of, and that states for all Documents:

   a. the nature of the Documents (*e.g.*, letter, memorandum, etc.);

   b. the size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

   c. the subject matter of the Documents;

   d. the persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

   e. the date on which the Documents were prepared or transmitted; and

   f. the date on which the Documents were lost, destroyed or otherwise disposed of, the conditions of and reasons for such destruction or other disposition and the persons requesting and performing the destruction or other disposition.

5. For each of the Documents withheld on the ground of any privilege or immunity, furnish a list that identifies each of the Documents that have been withheld, and that states for each of the Documents:

   a. the nature of the Documents (*e.g.*, letter, memorandum, etc.);

   b. the size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

   c. the subject matter of the Documents;

d.    the persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

e.    each person having a copy of the Documents, each person to whom a copy was sent and each person by whom a copy was received;

f.    the date on which the Documents were prepared or transmitted; and

g.    the nature of the privilege claimed and the basis for claiming the privilege.

6.    If any portion of any Documents is responsive to these requests, the entirety of the Documents shall be produced. Moreover, if only a part of any Document is protected by any privilege or immunity, the Document shall be produced with only the privileged matter redacted.

7.    All Documents shall be produced as they are kept in the ordinary course of business. The name of the file from which they were produced, the identity of the person from whose file they were produced, and the identity of the present custodian of that file shall each be set forth.

8.    All financial data shall be produced in native format to the extent available.

9.    All Documents, except financial data described in Instruction 8, shall be provided as a PDF with optical character recognition.

10.    Documents shall be produced in the order in which they are found in a person's files, and shall not be rearranged. If the Documents are kept in a file with a file label, a copy of that label shall be produced together with the other Documents, Communications or other materials in the file.

11.     Nothing set forth herein shall constitute or be deemed an admission or a waiver of any kind with respect to any defense or objection regarding the admissibility or relevance of any Documents produced in response to these requests.

### III.    DOCUMENT REQUESTS

In accordance with the foregoing Definitions and Instructions, please produce the following documents:

1)      All Documents and Communications between and/or among the Plan Proponents relating to the solicitation of the Plan.

2)      All Documents and Communications between and/or among the Plan Proponents relating to the vote on the Plan.

3)      All Documents and Communications between and/or among the Plan Proponents and any potential or actual member of Class 4, as defined in the Plan, including, but not limited to, counsel for such member, relating to the solicitation of the Plan.

4)      All Documents and Communications between and/or among the Plan Proponents and any potential or actual member of Class 4, as defined in the Plan, including, but not limited to, counsel for such member, relating to the vote on the Plan.

5)      All Documents and Communications between and/or among the Plan Proponents and Prime Clerk, LLC relating to the solicitation of the Plan.

6)      All Documents and Communications between and/or among the Plan Proponents and Prime Clerk, LLC relating to the vote on the Plan.

7)      All Documents and Communications between and/or among the Plan Proponents relating to the results of the vote on the Plan as reported in the Vote Certification.

8)      All Documents and Communications between and/or among the Plan Proponents and any

member of Class 4, as defined in the Plan, including, but not limited to, counsel for such

member, relating to the results of the vote on the Plan as reported in the Vote Certification.


Dated: April 9, 2021                              **FAEGRE DRINKER BIDDLE & REATH LLP**

                                                  */s/   Patrick A. Jackson*
                                                  Patrick A. Jackson (Del. Bar No. 4976)
                                                  222 Delaware Ave., Ste. 1410
                                                  Wilmington, Delaware 19801
                                                  Telephone: (302) 467-4200
                                                  Facsimile: (302) 467-4201
                                                  patrick.jackson@faegredrinker.com

                                                  -and-

                                                  **WEIL, GOTSHAL & MANGES LLP**
                                                  Diane P. Sullivan (*pro hac vice*)
                                                  Ronit J. Berkovich (*pro hac vice*)
                                                  Theodore E. Tsekerides (*pro hac vice*)
                                                  Konrad L. Cailteux (*pro hac vice*)
                                                  767 Fifth Avenue
                                                  New York, New York 10153
                                                  Telephone: (212) 310-8000
                                                  Facsimile: (212) 310-8007

                                                  *Attorneys for Johnson & Johnson*
                                                  *and Johnson & Johnson Consumer Inc.*

# Exhibit B

## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **In re** | Chapter 11 |
| **IMERYS TALC AMERICA, INC.,** *et al.*[1] | Case No. 19–10289 (LSS)<br>(Jointly Administered) |
| **Debtors.** |  |

### JOHNSON & JOHNSON'S AND JOHNSON & JOHNSON CONSUMER INC.'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS TO THE TORT CLAIMANTS' COMMITTEE RELATED TO THE PROPOSED NINTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF IMERYS TALC AMERICA, INC. AND ITS <u>DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

Under Federal Rules of Civil Procedure 26 and 34, made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, Johnson & Johnson and Johnson & Johnson Consumer Inc. ("**J&J**"), by its undersigned counsel, requests that the Torts Claimants' Committee (the "**TCC**") produce the documents specified in these Requests in connection with the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (D.I. 2864), in the above-captioned chapter 11 cases.  J&J requests that the Debtors provide the requested documents as soon as possible but no later than May 10, 2021, and that they be served on or produced to the law offices of Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153, attention

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6348), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East Suite 300, Roswell, Georgia 30076.

Theodore E. Tsekerides by delivery through electronic means to the email address Theodore.Tsekerides@weil.com.

## I.    DEFINITIONS

The terms used in these Requests have the meanings specified below.  Each defined term shall have the meaning ascribed to it regardless of whether the term is capitalized.  Any term referencing any business, legal, or governmental entity or association shall be deemed a reference to any and all of its predecessors, successors, Affiliates and subsidiaries, as well as any and all of its past or present officers, directors, partners, members, managers, employees, representatives, and agents. This includes, without limitation, the following:

1.    "Affiliate" means any entity ascribed to such term in §101(2) of the Bankruptcy Code.

2.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements, press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

3.    "Debtors" means ITA, ITV, and ITC and any of their attorneys, representatives, consultants, advisors or anyone acting on the Debtors' behalf.

4.    "Documents" means all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind

or other data compilations from which information can be obtained, or translated, if necessary, through detection devices into reasonable usable form. The term "Documents" includes, but is not limited to:

a.    correspondence, term sheets, proposals, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intra-office communications, or offers;

b.    notations in any form made of conversations, telephone calls, meetings, negotiations or other communications;

c.    bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

d.    electronic, mechanical or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail,

electronic mail, computer-stored data or material), or transcriptions thereof, including but not limited to, databases and spreadsheets; and

e.     all drafts, alterations, modifications, changes and amendments of any of the foregoing and any material underlying, supporting or used in the preparation of any document.

5.     "ITA" means Imerys Talc America, Inc., formerly Luzenac America, formerly Cyprus Talc Corporation.

6.     "ITC" means Imerys Talc Canada Inc.

7.     "ITI" means Imerys Talc Italy S.p.A.

8.     "ITV" means Imerys Talc Vermont, Inc., formerly Cyprus Windsor Minerals, Inc., formerly Windsor Minerals, Inc.

9.     "J&J" means Johnson & Johnson and Johnson & Johnson Consumer Inc.

10.    "Plan" means the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (D.I. 2864) or any prior or subsequent version thereof.

11.    "Plan Proponents" has the meaning ascribed to it in § 1.1.176 of the Plan.

12.    "Related to" means concerning, referring to, regarding, relating to, describing, evidencing or constituting.

13.    "Vote Certification" means the *Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Preliminary Tabulation of Ballots Cast on the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code Filed by Imerys Talc America, Inc.* (D.I. 3334).

## II.    <u>INSTRUCTIONS</u>

The preceding definitions apply to the following instructions and each of the succeeding requests:

1.      The terms used in the Requests are to be given their most expansive and inclusive interpretation unless otherwise expressly limited in a Request. This includes, without limitation, the following:

      a.      construing "and" and "or" in the disjunctive or conjunctive as necessary to make a request more inclusive;

      b.      construing the singular form of a word to include the plural and the plural to include the singular;

      c.      construing the term "among" to mean between or among;

      d.      construing the term "any" to mean any, all, each, and every;

      e.      construing the masculine, feminine, or neutral pronouns to include other genders; and

      f.      construing the present tense of a verb to include its past tense and vice versa.

2.      You are required to obtain and furnish all Documents available to you and to any of your representatives, agents, employees or attorneys, and to obtain and furnish all Documents that are in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees, accountants or attorneys.

3.      These requests are continuing in nature and, to the extent that your responses may be enlarged, diminished or otherwise modified by information acquired after your initial responses to these requests, you are required promptly to supplement your initial responses

in writing reflecting such changes, and to produce any additional Documents, to the fullest extent required by any applicable law or rule.

4.     If any Documents were formerly in your possession, custody or control and have been lost, destroyed or otherwise disposed of, then furnish a list that identifies all Documents that have been lost, destroyed or otherwise disposed of, and that states for all Documents:

    a.     the nature of the Documents (*e.g.*, letter, memorandum, etc.);

    b.     the size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

    c.     the subject matter of the Documents;

    d.     the persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

    e.     the date on which the Documents were prepared or transmitted; and

    f.     the date on which the Documents were lost, destroyed or otherwise disposed of, the conditions of and reasons for such destruction or other disposition and the persons requesting and performing the destruction or other disposition.

5.     For each of the Documents withheld on the ground of any privilege or immunity, furnish a list that identifies each of the Documents that have been withheld, and that states for each of the Documents:

    a.     the nature of the Documents (*e.g.*, letter, memorandum, etc.);

    b.     the size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

    c.     the subject matter of the Documents;

    d.      the persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

    e.      each person having a copy of the Documents, each person to whom a copy was sent and each person by whom a copy was received;

    f.      the date on which the Documents were prepared or transmitted; and

    g.      the nature of the privilege claimed and the basis for claiming the privilege.

6.    If any portion of any Documents is responsive to these requests, the entirety of the Documents shall be produced. Moreover, if only a part of any Document is protected by any privilege or immunity, the Document shall be produced with only the privileged matter redacted.

7.    All Documents shall be produced as they are kept in the ordinary course of business. The name of the file from which they were produced, the identity of the person from whose file they were produced, and the identity of the present custodian of that file shall each be set forth.

8.    All financial data shall be produced in native format to the extent available.

9.    All Documents, except financial data described in Instruction 8, shall be provided as a PDF with optical character recognition.

10.    Documents shall be produced in the order in which they are found in a person's files, and shall not be rearranged. If the Documents are kept in a file with a file label, a copy of that label shall be produced together with the other Documents, Communications or other materials in the file.

11.    Nothing set forth herein shall constitute or be deemed an admission or a waiver of any kind with respect to any defense or objection regarding the admissibility or relevance of any Documents produced in response to these requests.

## III.    <u>DOCUMENT REQUESTS</u>

In accordance with the foregoing Definitions and Instructions, please produce the following documents:

1)    All Documents and Communications between and/or among the Plan Proponents relating to the solicitation of the Plan.

2)    All Documents and Communications between and/or among the Plan Proponents relating to the vote on the Plan.

3)    All Documents and Communications between and/or among the Plan Proponents and any potential or actual member of Class 4, as defined in the Plan, including, but not limited to, counsel for such member, relating to the solicitation of the Plan.

4)    All Documents and Communications between and/or among the Plan Proponents and any potential or actual member of Class 4, as defined in the Plan, including, but not limited to, counsel for such member, relating to the vote on the Plan.

5)    All Documents and Communications between and/or among the Plan Proponents and Prime Clerk, LLC relating to the solicitation of the Plan.

6)    All Documents and Communications between and/or among the Plan Proponents and Prime Clerk, LLC relating to the vote on the Plan.

7)    All Documents and Communications between and/or among the Plan Proponents relating to the results of the vote on the Plan as reported in the Vote Certification.

8)     All Documents and Communications between and/or among the Plan Proponents and any

member of Class 4, as defined in the Plan, including, but not limited to, counsel for such

member, relating to the results of the vote on the Plan as reported in the Vote Certification.


Dated:  April 9, 2021                          **FAEGRE DRINKER BIDDLE & REATH LLP**

                                               */s/   Patrick A. Jackson*
                                               Patrick A. Jackson (Del. Bar No. 4976)
                                               222 Delaware Ave., Ste. 1410
                                               Wilmington, Delaware 19801
                                               Telephone: (302) 467-4200
                                               Facsimile: (302) 467-4201
                                               patrick.jackson@faegredrinker.com

                                               -and-

                                               **WEIL, GOTSHAL & MANGES LLP**
                                               Diane P. Sullivan (*pro hac vice*)
                                               Ronit J. Berkovich (*pro hac vice*)
                                               Theodore E. Tsekerides (*pro hac vice*)
                                               Konrad L. Cailteux (*pro hac vice*)
                                               767 Fifth Avenue
                                               New York, New York 10153
                                               Telephone: (212) 310-8000
                                               Facsimile: (212) 310-8007

                                               *Attorneys for Johnson & Johnson*
                                               *and Johnson & Johnson Consumer Inc.*

# Exhibit C

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| **In re** | Chapter 11 |
| **IMERYS TALC AMERICA, INC.,** *et al.*[1] | Case No. 19–10289 (LSS)<br>(Jointly Administered) |
| **Debtors.** |  |

**JOHNSON & JOHNSON'S AND JOHNSON & JOHNSON CONSUMER INC.'S
THIRD REQUEST FOR PRODUCTION OF DOCUMENTS TO IMERYS S.A.
RELATING TO THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF IMERYS TALC AMERICA, INC. AND ITS DEBTOR AFFILIATES
<u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable herein pursuant

to Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Johnson & Johnson

and Johnson & Johnson Consumer Inc. (collectively, "**J&J**"), by its undersigned counsel, hereby

requests that Imerys S.A. produce the documents specified in these Requests in connection with

the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its

Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (D.I. 2864), in the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**"). J&J requests that Imerys S.A. provide the requested

documents as soon as possible, but no later than May 10, 2020, and that they be served on or

produced to the law offices of Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax
identification number, are: Imerys Talc America, Inc. (6348), Imerys Talc Vermont, Inc. (9050),
and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East Suite 300,
Roswell, Georgia 30076.

York 10153, attention Theodore E. Tsekerides by delivery through electronic means to the email address Theodore.Tsekerides@weil.com.

## I.    DEFINITIONS

Capitalized terms used but not herein defined have the meanings ascribed to such terms in the Plan. Each defined term shall have the meaning ascribed to it regardless of whether the term is capitalized. Any term referencing any business, legal, or government entity or association shall be deemed a reference to any and all of its predecessors, successors, Affiliates and subsidiaries, as well as any and all of its past or present officers, directors, partners, members, managers, employees, representatives, and agents. This includes, without limitation, the following:

1.    "Affiliate" means any entity ascribed to such term in §101(2) of the Bankruptcy Code.

2.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including meetings, conversations in person, telephone conversations, records of conversations or messages, telegrams, facsimile transmissions, electronic mail transmissions, letters, reports, memoranda, formal statements, press releases, and newspaper stories. References to communications with business entities shall be deemed to include all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

3.    "Debtors" means ITA, ITV, and ITC and any of their attorneys, representatives, consultants, advisors or anyone acting on the Debtors' behalf.

4.    "Documents" means all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind

or other data compilations from which information can be obtained, or translated, if necessary, through detection devices into reasonable usable form. The term "Documents" includes, but is not limited to:

a.   correspondence, term sheets, proposals, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intra-office communications, or offers;

b.   notations in any form made of conversations, telephone calls, meetings, negotiations or other communications;

c.   bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements or worksheets;

d.   electronic, mechanical or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail,

electronic mail, computer-stored data or material), or transcriptions thereof, including but not limited to, databases and spreadsheets; and

e.     all drafts, alterations, modifications, changes and amendments of any of the foregoing and any material underlying, supporting or used in the preparation of any document.

5.     "<u>ITA</u>" means Imerys Talc America, Inc., formerly Luzenac America, formerly Cyprus Talc Corporation.

6.     "<u>ITC</u>" means Imerys Talc Canada Inc.

7.     "<u>ITI</u>" means Imerys Talc Italy S.p.A.

8.     "<u>ITV</u>" means Imerys Talc Vermont, Inc., formerly Cyprus Windsor Minerals, Inc., formerly Windsor Minerals, Inc.

9.     "<u>J&J</u>" means Johnson & Johnson and Johnson & Johnson Consumer Inc.

10.    "<u>Plan</u>" means the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (D.I. 2864) or any prior or subsequent version thereof.

11.    "<u>Plan Proponents</u>" has the meaning ascribed to it in § 1.1.176 of the Plan.

12.    "<u>Related to</u>" means concerning, referring to, regarding, relating to, describing, evidencing or constituting.

13.    "<u>Vote Certification</u>" means the *Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Preliminary Tabulation of Ballots Cast on the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code Filed by Imerys Talc America, Inc.* (D.I. 3334).

## II.    <u>INSTRUCTIONS</u>

The preceding definitions apply to the following instructions and each of the succeeding requests:

1.    The terms used in the Requests are to be given their most expansive and inclusive interpretation unless otherwise expressly limited in a Request. This includes, without limitation, the following:

        a.    construing "and" and "or" in the disjunctive or conjunctive as necessary to make a request more inclusive;

        b.    construing the singular form of a word to include the plural and the plural to include the singular;

        c.    construing the term "among" to mean between or among;

        d.    construing the term "any" to mean any, all, each, and every;

        e.    construing the masculine, feminine, or neutral pronouns to include other genders; and

        f.    construing the present tense of a verb to include its past tense and vice versa.

2.    You are required to obtain and furnish all Documents available to you and to any of your representatives, agents, employees or attorneys, and to obtain and furnish all Documents that are in your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of any of your representatives, agents, employees, accountants or attorneys.

3.    These requests are continuing in nature and, to the extent that your responses may be enlarged, diminished or otherwise modified by information acquired after your initial responses to these requests, you are required promptly to supplement your initial responses

in writing reflecting such changes, and to produce any additional Documents, to the fullest extent required by any applicable law or rule.

4. If any Documents were formerly in your possession, custody or control and have been lost, destroyed or otherwise disposed of, then furnish a list that identifies all Documents that have been lost, destroyed or otherwise disposed of, and that states for all Documents:

    a. the nature of the Documents (*e.g.*, letter, memorandum, etc.);

    b. the size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

    c. the subject matter of the Documents;

    d. the persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

    e. the date on which the Documents were prepared or transmitted; and

    f. the date on which the Documents were lost, destroyed or otherwise disposed of, the conditions of and reasons for such destruction or other disposition and the persons requesting and performing the destruction or other disposition.

5. For each of the Documents withheld on the ground of any privilege or immunity, furnish a list that identifies each of the Documents that have been withheld, and that states for each of the Documents:

    a. the nature of the Documents (*e.g.*, letter, memorandum, etc.);

    b. the size of the Documents (*e.g.*, the number of pages for a document, the number of bytes for an electronic record, etc.);

    c. the subject matter of the Documents;

d. the persons who prepared or authored the Documents, and, if applicable, the persons to whom the Documents were sent;

e. each person having a copy of the Documents, each person to whom a copy was sent and each person by whom a copy was received;

f. the date on which the Documents were prepared or transmitted; and

g. the nature of the privilege claimed and the basis for claiming the privilege.

6. If any portion of any Documents is responsive to these requests, the entirety of the Documents shall be produced. Moreover, if only a part of any Document is protected by any privilege or immunity, the Document shall be produced with only the privileged matter redacted.

7. All Documents shall be produced as they are kept in the ordinary course of business. The name of the file from which they were produced, the identity of the person from whose file they were produced, and the identity of the present custodian of that file shall each be set forth.

8. All financial data shall be produced in native format to the extent available.

9. All Documents, except financial data described in Instruction 8, shall be provided as a PDF with optical character recognition.

10. Documents shall be produced in the order in which they are found in a person's files, and shall not be rearranged. If the Documents are kept in a file with a file label, a copy of that label shall be produced together with the other Documents, Communications or other materials in the file.

11.     Nothing set forth herein shall constitute or be deemed an admission or a waiver of any kind
        with respect to any defense or objection regarding the admissibility or relevance of any
        Documents produced in response to these requests.

### III.    DOCUMENT REQUESTS

In accordance with the foregoing Definitions and Instructions, please produce the following documents:

1)      All Documents and Communications between and/or among the Plan Proponents relating to the solicitation of the Plan.

2)      All Documents and Communications between and/or among the Plan Proponents relating to the vote on the Plan.

3)      All Documents and Communications between and/or among the Plan Proponents and any potential or actual member of Class 4, as defined in the Plan, including, but not limited to, counsel for such member, relating to the solicitation of the Plan.

4)      All Documents and Communications between and/or among the Plan Proponents and any potential or actual member of Class 4, as defined in the Plan, including, but not limited to, counsel for such member, relating to the vote on the Plan.

5)      All Documents and Communications between and/or among the Plan Proponents and Prime Clerk, LLC relating to the solicitation of the Plan.

6)      All Documents and Communications between and/or among the Plan Proponents and Prime Clerk, LLC relating to the vote on the Plan.

7)      All Documents and Communications between and/or among the Plan Proponents relating to the results of the vote on the Plan as reported in the Vote Certification.

8)    All Documents and Communications between and/or among the Plan Proponents and any

member of Class 4, as defined in the Plan, including, but not limited to, counsel for such

member, relating to the results of the vote on the Plan as reported in the Vote Certification.


Dated: April 9, 2020                              **FAEGRE DRINKER BIDDLE & REATH LLP**

                                                  _/s/   Patrick A. Jackson_____
                                                  Patrick A. Jackson (Del. Bar No. 4976)
                                                  222 Delaware Ave., Ste. 1410
                                                  Wilmington, Delaware 19801
                                                  Telephone: (302) 467-4200
                                                  Facsimile: (302) 467-4201
                                                  Patrick.Jackson@faegredrinker.com

                                                  -and-

                                                  **WEIL, GOTSHAL & MANGES LLP**
                                                  Diane P. Sullivan (_pro hac vice_)
                                                  Ronit J. Berkovich (_pro hac vice_)
                                                  Theodore E. Tsekerides (_pro hac vice_)
                                                  Konrad L. Cailteux (_pro hac vice_)
                                                  767 Fifth Avenue
                                                  New York, New York 10153
                                                  Telephone: (212) 310-8000
                                                  Facsimile: (212) 310-8007

                                                  _Attorneys for Johnson & Johnson_
                                                  _and Johnson & Johnson Consumer Inc._

# Exhibit D

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
|  | . | Case No. 19-10289 (LSS) |
| IMERYS TALC AMERICA, INC., | . |  |
| et al, | . | Courtroom No. 1 |
|  | . | 824 North Market Street |
|  | . | Wilmington, Delaware 19801 |
| Debtors. | . |  |
|  | . | April 7, 2021 |
| . . . . . . . . . . . . . . . | . | 10:04 a.m. |

TRANSCRIPT OF TELEPHONIC MOTION HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY COURT

TELEPHONIC APPEARANCES:

For the Debtor:              Michael Merchant, Esquire
                             Marcos A. Ramos, Esquire
                             RICHARDS LAYTON & FINGER, P.A.
                             One Rodney Square
                             920 North King Street
                             Wilmington, DE, 19809

                             - and -

                             Kimberly Posin, Esquire
                             Amy Quartarolo, Esquire
                             LATHAM & WATKINS, LLP
                             355 South Grand Avenue, Suite 100
                             Los Angeles, CA 90071


Audio Operator:              Brandon J. McCarthy

Transcription Company:       Reliable
                             1007 N. Orange Street
                             Wilmington, Delaware 19801
                             (302)654-8080
                             Email: gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

APPEARANCES (Cont'd):

For Johnson & Johnson:     Theodore Tsekerides, Esquire
                           WEIL GOTSHAL MANGES
                           767 Fifth Avenue
                           New York, New York 10153

                           - and -

                           Patrick Jackson, Esquire
                           FAEGRE DRINKER BIDDLE & REATH, LLP
                           222 Delaware Avenue, Suite 1410
                           Wilmington, Delaware 19801

                           - and --

                           James Murdica, Esquire
                           BARNES & THORNBURG, LLP
                           2029 Century Park East, Suite 300
                           Los Angeles, CA 90067

For Imerys SA:             William Beausoleil, Esquire
                           HUGHES HUBBARD & REED LLP
                           One Battery Park Plaza
                           New York, New York 10004

For the Committee of       Stuart Lombardi, Esquire
Tort Claimants:            WILLKIE FARR & GALLAGHER LLP
                           787 Seventh Avenue
                           New York, New York 10019

                           - and --

                           Natalie D. Ramsey, Esquire
                           ROBINSON & COLE LLP
                           1201 North Market Street, Suite 1406
                           Wilmington, Delaware 19801

For the Representative     Edwin J. Harron, Esquire
for Future Talc            YOUNG CONAWAY STARGATT & TAYLOR LLP
Claimants:                 Rodney Square
                           1000 N. King Street
                           Wilmington, Delaware 19801

INDEX

MATTERS GOING FORWARD:

Letter to the Honorable Laurie Selber Silverstein [Docket No. 3267 – filed March 29, 2021]

Letter to the Honorable Laurie Selber Silverstein [Docket No. 3268 – filed March 29, 2021]


Amended Letter to the Court Regarding Deficiencies in Johnson & Johnson and Johnson & Johnson Consumer Inc.'s document production [Docket No. 3287 – filed March 31, 2021]

1      (Proceedings commenced at 10:04 a.m.)

2           THE COURT:  Good morning.  This is Judge Silverstein.

3  We're here in the Imerys case, Case Number 19-10289.  And I

4  will turn it over to debtor's counsel.

5           MR. MERCHANT:  Good morning, Your Honor.  Michael

6  Merchant of Richards Layton & Finger on behalf of the debtors.

7           Your Honor, we were notified by chambers a short

8  while ago that Your Honor has not had an opportunity to get to

9  the fee applications yet.  So we did notify professionals, but

10 we did that shortly before the hearing, so I thought it best to

11 announce it now, which I believe just leaves the discovery

12 disputes.

13          But before getting to those issues, I'd like to cede

14 the podium to Ms. Posin to update the Court with respect to

15 certain issues regarding the confirmation process.

16          THE COURT:  Okay, that's fine.  And, yes, thank you.

17 We were not able to get to the fee applications.  I do promise

18 to get to them in a more timely fashion than I did previously.

19 And so we'll let you know if we have any issues with them.  But

20 anyone who is on the hearing just for that, please feel free to

21 drop off.

22          And I thought I had something else, but I can't think

23 of it.  So Ms. Posin?

24          MS. POSIN:  Good morning, Your Honor.  Kim Posin of

25 Latham & Watkins, counsel for the debtors.  As Mr. Merchant

1  noted before we proceeded with the hearing this morning, we

2  wanted to bring to the Court's attention what we believe to be

3  a very positive development in these cases, and that is that

4  this morning the debtor's balloting agent, Prime Clerk, filed a

5  voting declaration.

6          The declaration provides that based on the diligence

7  that Prime Clerk has been able to conduct to date, 79.73

8  percent of the ballots cast were in favor of the plan.  As

9  noted in Prime Clerk's declaration, Prime Clerk is continuing

10 its diligence with respect to certain defective ballots which

11 are attached, listed to and attached in that declaration.  And

12 they do intend to file a revised declaration as appropriate

13 once that diligence process is complete.

14         The process has taken longer than originally

15 expected, largely due to the volume of votes that we received.

16 While the debtors had less than 15,000 talc claims pending

17 against them as of the petition date, ultimately more than

18 78,000 votes were included in the voting tabulation.  And we

19 have something like at least more than 10,000 additional votes

20 that have been listed in the voting declaration as defective in

21 some way.

22         Many of those are or appear to be duplicative, and so

23 we're working on getting to the bottom of that.  And several of

24 them, a fair number of them do not include social security

25 numbers so they've been deemed defective on that basis.

1          The debtors and the plan proponents remain committed

2  to the plan, of course, and we look forward to continuing on

3  with plan confirmation now that the votes have been tabulated.

4  However, in light of the fact that Prime Clerk's diligence is

5  continuing, the fact that there are several ongoing meet-and-

6  confer discussions that are moving forward between and among

7  the plan proponents and various objected parties, and we also

8  have I think something like 28 depositions scheduled or at

9  least requested, many of which are to take place beginning

10  today and over the course of the next two weeks.

11          So the debtors have spoken with the plan proponents,

12  and we believe that it would be appropriate and probably even

13  prudent to continue the confirmation hearing.  It's currently

14  scheduled for June 21, 22, and 23.  We believe that moving the

15  confirmation hearing to August 2nd, 3rd, 4th, and 5th would be

16  appropriate.  That's about a six-week continuance.  We've

17  already checked with chambers, and the Court does have those

18  dates available unless they've been taken in the last 24 hours.

19          We have not -- we are, of course, you know, prepared

20  to proceed on whatever timeline the Court feels is appropriate

21  including the current one.  But we do believe that additional

22  time will provide all parties in interest, you know, more time

23  to finalize discovery in a, you know, timely and reasonable

24  manner.  We have not yet had the opportunity to raise the

25  proposed continuance with the objecting parties.  We do intend

1  to circulate a revised proposed schedule this afternoon for

2  discussion with all of the objecting parties and we hope that

3  we'll be able to bring to the Court an agreed-upon revised

4  schedule as appropriate from the Court's perspective.

5          However, if we aren't able to reach agreement, we

6  would request that the Court consider scheduling a status

7  conference for next week so that we could raise any issues that

8  we may have after those discussions with the Court as promptly

9  as possible.

10         THE COURT:  Okay.  Well, I'll let you have those

11 discussions with the objectors and see where we are.  And if

12 need to have a status conference next week, that's probably

13 possible.  Let's see, as far as those dates, I can definitely

14 accommodate you in August.  It may not be that first week, and

15 that would be my miscommunication with my chambers.  But I'll

16 know a little bit more about that as well next week.

17         So let's see if there's agreement and -- first on the

18 continuance and then we'll finalize dates in August --

19         MS. POSIN:  Okay.  Thank you very much, Your Honor.

20         THE COURT:  -- early August.  Okay.  Thank you for

21 the update.

22         MS. POSIN:  Thank you.

23         MR. HARRON:  Your Honor, this is Ed Harron for the

24 FCR.  I just wanted to note for the record that for the reasons

25 Ms. Posin described, while we're eager to get the plan

1  confirmed and we're pleased with the voting results, we do

2  support the effort to continue it to give us some more time to

3  properly address all of the discovery.  Thank you.

4          THE COURT:  Okay.  Anyone else before we get into

5  today's agenda?

6      (No audible response)

7          THE COURT:  Okay.

8          MS. RAMSEY:  Yes, Your Honor.  I'm sorry, I was

9  having difficulty unmuting.  Natalie Ramsey for the Tort

10 Claimants Committee.  We are also in agreement, Your Honor.

11         THE COURT:  Thank you.

12         MR. BEAUSOLEIL:  Your Honor, just to close the loop,

13 Imerys SA, Bill Beausoleil here.  We also agree for the reasons

14 stated.

15         THE COURT:  Thank you.

16         Anyone else?

17     (No audible response)

18         THE COURT:  Okay.  So let's get to the discovery

19 issues.

20         MS. QUARTAROLO:  Your Honor, it's Amy Quartarolo,

21 Latham & Watkins, on behalf of the debtors.  I think I'll kick

22 things off with regard to the letters that were submitted by

23 the debtor in connection with certain documents that have been

24 withheld from discovery.

25         As was described in the letter, you know, we've tried

# Exhibit E

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re:                                            :    Chapter 11
                                                  :
IMERYS TALC AMERICA, INC., et al.,[1]             :    Case No. 19-10289 (LSS)
                                                  :
         Debtors.                                 :    (Jointly Administered)
                                                  :
                                                  :    Re: Docket Nos. 2852, 2853, & 2863
------------------------------------------------------------ x
```

## ORDER ADJOURNING CONFIRMATION HEARING AND RELATED DATES

Upon the certification of counsel, dated April 13, 2021 (the "**Certification of Counsel**"), of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases regarding dates and deadlines related to confirmation of the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 2852] (the "**Plan**"); and this Court having jurisdiction to consider the Certification of Counsel and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012; and the consideration of the Certification of Counsel and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Certification of Counsel; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

**IT IS HEREBY ORDERED THAT:**

1.      Pursuant to Bankruptcy Rule 3020(b)(2),[2] the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") shall be held on August 16, 17, 18, 19, and 20, 2021 at 10:00 a.m. (prevailing Eastern Time).  The Confirmation Hearing may be adjourned from time to time by this Court or the Plan Proponents without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with this Court.

2.      The following dates and deadlines related to confirmation of the Plan and the Confirmation Hearing are hereby approved and supersede the dates and deadlines approved by this Court in the *Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Attorneys and Certified Plan Solicitation Directive, (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief* [Docket No. 2863] (the "**Solicitation Procedures Order**"):

| Event | Date |
|---|---|
| Fact Depositions | April 7, 2021 – May 14, 2021 |
| End of Fact Discovery | May 14, 2021 |
| Affirmative Expert Reports Due | May 21, 2021 |
| Responsive Expert Reports Due | June 17, 2021 |
| Expert Depositions | June 21, 2021 – July 2, 2021 |
| End of Expert Discovery | July 2, 2021 |
| Confirmation Objection Deadline | July 16, 2021, at 4:00 p.m. (prevailing Eastern Time) |

---

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Solicitation Procedures Order (as defined herein) or the Plan, as applicable.

| Event | Date |
|---|---|
| Confirmation Reply Deadline and Deadline to File Form of Confirmation Order | August 9, 2021, at 4:00 p.m. (prevailing Eastern Time) |
| Confirmation Hearing | August 16, 17, 18, 19, and 20, 2021 at 10:00 a.m. (prevailing Eastern Time) |

3.      Objections to confirmation of the Plan not timely filed and served in accordance with the provisions of the Solicitation Procedures Order shall not be considered by this Court and are denied and overruled unless otherwise ordered by this Court.

4.      Except to the extent inconsistent with the dates and deadlines set forth in paragraph 2 herein, all terms and provisions of the Solicitation Procedures Order shall remain in full force and effect.

5.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

7.      This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

**Dated: April 15th, 2021**
**Wilmington, Delaware**

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

US-DOCS\122763287.3RLF1 25101089v.2

# Exhibit F

Page 1

1

2   IN THE UNITED STATES BANKRUPTCY COURT

3   FOR THE DISTRICT OF DELAWARE

4   ---------------------------*

5   In re:                          Chapter 11

6   IMERYS TALC AMERICA, INC.,      Case No. 19-10289(LSS)

7   et al.,                         Jointly Administered

8                  Debtors.

9   ---------------------------*

10              STENOGRAPHIC REMOTE VIRTUAL

11              DEPOSITION OF JASON ITKIN

12                 Friday, June 4, 2021

13                    1:04 p.m.

14

15

16

17

18

19   Reported before and by:

20   Josephine H. Fassett, RPR, CCR

21   Job No. 4612362

22

23

24

25

Page 2

1

2                          Friday, June 4, 2021

3                              1:04 p.m.

4

5          T R A N S C R I P T of the stenographic remote

6     virtual deposition of JASON ITKIN, held on Friday,

7     June 4, 2021, commencing at approximately 1:04 p.m.,

8     before Josephine H. Fassett, a Registered

9     Professional Reporter, Certified Court Reporter, and

10    Notary Public of the State of New York and New

11    Jersey.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      ITKIN
 2   negotiating leverage with J&J?
 3        A.   Arnold & Itkin, yes, sure.
 4        Q.   With who?
 5        A.   Well, let me, let me -- let me do it
 6   this way, because the way your question's phrased
 7   I'm not sure.
 8             I will tell you that Arnold & Itkin are
 9   or myself on behalf of Arnold & Itkin has had
10   conversations about how the indemnity claim -- the
11   importance of the indemnity claim is what I
12   would -- is what I would say.
13        Q.   What do you mean by "importance of the
14   indemnity claim"?
15        A.   The indemnity claim is, I think, the
16   largest, potentially the largest asset of the
17   bankruptcy estate.
18        Q.   And what's your basis for believing it's
19   the largest asset in the bankruptcy estate?
20        A.   Well, I heard as much from Steve Baron.
21        Q.   So you've spoken about this with Steve
22   Baron?
23        A.   Correct.
24        Q.   Anyone other than Steve Baron you've
25   spoken about that topic with?
```

```
 1                        ITKIN
 2       A.    I've had conversations about the
 3  indemnity with several people.
 4       Q.    Who?
 5       A.    I've had conversations with John Boundas
 6  and Avram Blair.  Steve Baron I told you.  Jim
 7  Onder.  I had conversations with some members of
 8  the Molten Group or the ad hoc committee.  And
 9  there may be others, but that's a pretty good
10  start.
11       Q.    And we can do this generally, if we can,
12  but I'll dig in, if we need to.
13             Over what period of time were the
14  conversations that you're referencing?
15       A.    They would have been probably mid -- I
16  couldn't tell you when they would have begun, but
17  the bulk of the conversations happened in early
18  2021.
19       Q.    And for what purpose were you having
20  those conversations?
21       A.    Most of those conversations I believe
22  are privileged and so I don't know that I can tell
23  you the purpose.  The conversations, you know,
24  with Steve Baron were about him trying to convince
25  me to drop my objections to the plan.
```

1               ITKIN

2        Q.    And what did he say to you in that

3   regard?

4        A.    Well, we had a couple of conversations.

5   At the beginning Steve Baron was trying to

6   convince me that there would be transparency and

7   accountability and how the indemnity would be

8   prosecuted.  And later on he was trying to

9   convince me to drop my objections in exchange for,

10  essentially, you know, to be involved in how and

11  why the indemnity claims would be prosecuted.

12       Q.    What does that mean in exchange for?

13  Did he promise you something specifically?

14       A.    I was promised a seat on the TAC.  And I

15  was promised -- a seat on the TAC along with some,

16  you know, with some other conditions.

17       Q.    What other conditions?

18       A.    It was essentially a seat on the TAC.

19  There would be, I believe, a 66 percent voting

20  requirement to approve any settlement that I would

21  have to drop my objections.  I'd have to get the

22  Pachulski law firm's agreement not to be involved

23  with any other objectors or to be involved at all

24  in the bankruptcy.  That I would try to use

25  efforts to convince other objectors to not object

```
 1                     ITKIN
 2   to the plan.
 3        Q.    And what was your response?
 4        A.    I did not accept the proposal.
 5        Q.    Why?
 6        A.    That I think invades attorney-client
 7   work product issues.
 8        Q.    Did you tell Mr. Baron why?
 9        A.    I think that I was very consistent in my
10   communications with Mr. Baron and -- and others
11   that I wanted to make sure that the plan was in
12   the best interest of my clients.  That there was
13   transparency and accountabilities as it relates to
14   the indemnity.  And that on the 40/40/20 split
15   that it was, you know, done more -- on a more
16   equitable pro rata type basis.  And that I didn't
17   think that offering me a seat on a committee was
18   going to accomplish those goals.
19        Q.    I want to unpack that a bit.
20              When you said you wanted to make sure
21   there was transparency and accountability, did you
22   suggest anything to Mr. Baron that would address
23   that issue?
24        A.    I don't know that I ever specifically
25   addressed anything to Mr. Baron.
```

```
 1                      ITKIN
 2       Q.   Did you address that to anyone else?
 3       A.   I don't think I can give you an answer
 4   to that without implicating joint prosecution or
 5   joint interest privilege.
 6       Q.   So, respectfully, Mr. Itkin, I think
 7   your client -- excuse me -- your counsel can
 8   object and can instruct you not to answer, but I'm
 9   going to ask that you not make a decision on your
10   own to withhold information in response to
11   questions.
12            MR. MORRIS:  Amy, just respectfully,
13        Mr. Itkin is a seasoned lawyer.  He's the
14        one who participated in the conversations.
15        I did not.  So it's not always easy for me
16        to anticipate whether your question is
17        impinging, some of it won't, and he was
18        just very candid about his conversations
19        with people that were not subject to the
20        common interest privilege.  So I'm going to
21        allow him to do that, and if you want to
22        test it, you're welcome to do that.  But I
23        can't, I can't get in his head because I
24        wasn't privy to a lot of these
25        conversations.  That's what he did, and
```

                                              Page 40

 1                          ITKIN

 2          you're trying to get the facts, and I

 3          appreciate that.  And I think Mr. Itkin is

 4          honestly and capably trying to divulge all

 5          that he can consistent with his obligations

 6          under the common interest privilege.

 7               MS. QUARTAROLO:  So let me test it

 8          this way.

 9     BY MS. QUARTAROLO:

10          Q.   Mr. Itkin, other than your counsel, who

11     do you believe you've had conversations with that

12     are subject to a privilege?

13          A.   So Jim Onder.  Avram Blair.  The

14     Williams Hart law firm.  The -- I call them the

15     Molten Group.  I think they have an ad hoc name.

16     I think it's now called the Talc Litigation.  I

17     call them the Molten Group, just so you know.

18               The Aylstock firm.  And I believe that

19     there may be others, but I believe that would be

20     it.  That is sort of a big -- that would cover

21     almost most of it.

22          Q.   Just to make sure the record is

23     complete.

24               Is it your testimony today that you will

25     not provide testimony or answer questions about

```
 1                          ITKIN
 2    any of your communications with any of the law
 3    firms or attorneys at those law firms that you've
 4    just referenced.
 5          A.    Through a point --
 6          Q.    What does that mean?
 7          A.    -- in time.
 8                Well, I think communications, for
 9    example, with Williams Hart after they changed
10    their vote are probably not privileged.
11          Q.    Anyone else who it changed over time?
12          A.    Well, I would say Jim Onder probably
13    falls into that category, because he voted in
14    favor of the plan.
15          Q.    And did you have any conversations with
16    anyone at the Williams Hart firm about the plan,
17    any aspect of the plan, after they made their
18    decision to change to accept the plan?
19          A.    Yes.
20          Q.    And with whom did you speak?
21          A.    It would have been, I believe, John
22    Boundas only.
23          Q.    And what were the subject matters that
24    you covered in those discussions?
25          A.    Essentially that why they had decided to
```

```
                                        Page 42

 1                       ITKIN
 2    vote in favor of the plan.
 3         Q.    What did they say?  What did John say?
 4         A.    That Steve Baron had offered them a seat
 5    on the TAC.  That the seat was conditioned upon
 6    them, I believe, switching their vote from a no to
 7    a yes after the deadline.  Or there was an
 8    extension.  I don't know if they actually voted no
 9    or there was an extension, but there'll be
10    documents that show that.
11              That they would have to use best efforts
12    to convince other firms who would also be given
13    extensions on their voting time to change their
14    votes.
15              And that, essentially that, you know,
16    this was a decision that they had to make
17    professionally and they hoped that our personal
18    relationship would not be affected.
19         Q.    What was your response?
20         A.    That everybody should act in what they
21    believe is the best interest of their clients, and
22    that I would respect their votes, their decision.
23         Q.    And any other topics that were covered
24    in those discussions with John Boundas after
25    Williams Hart voted the claims that it represents
```