IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | : | Case No. 19-10289 (LSS) |
| Debtors. | : | (Jointly Administered) |
| | : | **Re: Docket No. 3624** |

**DEBTORS' OBJECTION TO MOTION OF HOLDERS OF TALC PERSONAL INJURY CLAIMS REPRESENTED BY ARNOLD & ITKIN LLP TO DISREGARD CERTAIN VOTE CHANGES MADE WITHOUT COMPLYING WITH BANKRUPTCY RULE 3018, AND THE REQUIRED SHOWING OF CAUSE, IN CONNECTION WITH THE VOTING ON THE NINTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF IMERYS TALC AMERICA, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") in these chapter 11 cases (the "**Chapter 11 Cases**") hereby file this objection (the "**Objection**") to the *Motion of Holders of Talc Personal Injury Claims Represented By Arnold & Itkin LLP to Disregard Certain Vote Changes Made Without Complying with Bankruptcy Rule 3018, and the Required Showing of Cause, in Connection with the Voting on the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 3624] (the "**Motion**") filed by Arnold & Itkin LLP ("**Movant**") and to the joinders to the Motion filed by (i) Johnson & Johnson and Johnson & Johnson Consumer Inc. [Docket No. 3653], (ii) the Cyprus Excess Insurers [Docket No. 3679], and (iii) Aylstock, Witkin, Kreis & Overholtz, PLLC [Docket No. 3685]. In support of this

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

Objection, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. As a tag-along to Movant's prior request for a unilateral extension of the court-ordered confirmation schedule to permit it to serve harassingly overboard written discovery "on all issues concerning the solicitation and tabulation of ballots,"[2] Movant has found yet another avenue to strike a collateral attack on the Plan[3] and to try to call into question the integrity of the voting process. Having been unable to point to any evidence of bad faith or impropriety or to identify any breach of *any* provision of the Solicitation Procedures in connection with the Discovery Motion, Movant's motivation in filing the Motion could not be more clear – to try to tank the vote and block confirmation of the Plan by any means necessary even if it requires the disenfranchisement of thousands of talc claimants that voted in favor of the Plan.

2. This time, Movant asks this Court to take the unprecedented step of converting more than 18,000 votes accepting the Plan into rejections. These votes were submitted by three law firms (the "**Voting Parties**")[4] on behalf of their clients after the March 25, 2021 Voting

---

[2] *See Motion of Holders of Talc Personal Injury Claims Represented By Arnold & Itkin LLP to Extend Discovery Deadlines and Permit Discovery of the Plan Proponents, Prime Clerk and Certain Third Parties Relating to the Solicitation and Voting With Respect to the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 3425] at ¶ 6, filed by Movant on April 17, 2021 (the "**Discovery Motion**"). On June 11, 2021, the Debtors filed the *Debtors' Objection to Motion of Holders of Talc Personal Injury Claims Represented By Arnold & Itkin LLP to Extend Discovery Deadlines and Permit Discovery of the Plan Proponents, Prime Clerk and Certain Third Parties Relating to the Solicitation and Voting With Respect to the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 3640] (the "**Discovery Motion Objection**").

[3] Capitalized terms used and not otherwise defined herein have the meaning ascribed to them in the Plan or the Solicitation Procedures Order (each as defined herein).

[4] The Voting Parties are (i) Bevan and Associates LPA, Inc. ("**Bevan**"), (ii) Trammel P.C., and (iii) Williams Hart Boundas Easterby ("**Williams Hart**").

Deadline and superseded the claimants' prior votes to reject the Plan submitted by the Voting Parties. Such a request is not warranted where, as the Debtors detailed in their Discovery Motion Objection responding to myriad unfounded accusations set forth in the Discovery Motion, the Plan Proponents properly accepted votes after March 25, 2021 and the Debtors and the Voting Parties complied with the Solicitation Procedures approved by the Court. Despite the baseless claims made in the Motion (and in the Discovery Motion), the Debtors have continuously conducted themselves in a manner that promotes the integrity of the voting process, and have at all times acted with full transparency.

3. Movant's arguments in support of this extraordinary relief disregard the court-approved Solicitation Procedures which (i) direct the Debtors' solicitation agent, Prime Clerk LLC ("**Prime Clerk**"), to count superseding ballots submitted on or before the March 25 Voting Deadline or such later date as agreed by the Debtors with the consent of the Plan Proponents and (ii) also provide a "rebuttable presumption that any claimant who submits a properly completed superseding Ballot . . . on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change . . . such claimant's acceptance or rejection of the Plan." Solicitation Procedures at §§ VI.2.f, VI.2.h. These provisions obviate the need for separate notice and a hearing pursuant to Bankruptcy Rule 3018 in order to approve a vote change where, as here, the Plan Proponents agreed to accept all votes submitted on or before April 6, 2021 and the Voting Parties submitted their superseding Master Ballots on or before that date. Nevertheless, Movant requests that the Court disregard the superseding Master Ballots submitted by the Voting Parties on behalf of their clients without grounds to do so and without even attempting to rebut the presumption established in the Solicitation Procedures that the Voting Parties had sufficient cause to change their votes.

4. Even if the Court were to determine that Bankruptcy Rule 3018 nevertheless requires the Voting Parties to establish cause in the first instance (despite the rebuttable presumption established in the Solicitation Procedures), cause exists for a party to change its vote where the change is based on a misunderstanding of the terms of a plan. As discussed below, this was exactly the case with at least one of the Voting Parties – Bevan – which exercised its right to withdraw its initial Master Ballot and cast a superseding Master Ballot in accordance with the process outlined in the Solicitation Procedures after realizing that it had misinterpreted certain provisions of the Plan.

5. At bottom, the Motion is a last ditch attempt by a disgruntled party dissatisfied with the results of the solicitation process to manufacture an error in hopes of reversing the results of the vote for its own benefit. This Court should decline to take the unprecedented step of reversing votes submitted by the Voting Parties that represent the will of over 18,000 talc claimants and deny the Motion.

## FACTUAL BACKGROUND

6. The *Motion of Debtors For Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Attorneys and Certified Plan Solicitation Directive, (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (IV) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief* [Docket No. 1716] (the "**Solicitation Procedures Motion**") was filed over a year ago, on May 15, 2020. On January 27, 2021, the relief

sought in the Solicitation Procedures Motion was approved by the Court,[5] and 4:00 p.m. (prevailing Eastern Time) on March 25, 2021 (the "**Voting Deadline**") was established as the deadline to submit votes on the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 2852] (the "**Plan**"). Although the Voting Deadline was set for March 25, 2021, consistent with the Solicitation Procedures, the Debtors, with the consent of the other Plan Proponents, accepted all properly completed ballots that were submitted on or before April 6, 2021 (the day before the Initial Voting Declaration (as defined herein) was filed). In other words, the Voting Deadline was extended to April 6, 2021 as to all parties that submitted late votes.

7. As described in the Voting Declarations,[6] Prime Clerk received, reviewed, determined the validity of, and tabulated the ballots submitted to vote on the Plan. Each ballot submitted to Prime Clerk was date-stamped, scanned, assigned a ballot number, entered into Prime Clerk's voting database and processed in accordance with the Solicitation Procedures. To be included in the tabulation results as valid, a ballot must have been (i) properly completed pursuant to the Solicitation Procedures, (ii) executed by the relevant holder entitled to vote on the Plan (or

---

[5] *See Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Attorneys and Certified Plan Solicitation Directive, (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief* [Docket No. 2863] ("**Solicitation Procedures Order**"). The "**Solicitation Procedures**" were approved by, and attached as Exhibit 1 to, the Solicitation Procedures Order.

[6] On April 7, 2021, Prime Clerk filed the *Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Preliminary Tabulation of Ballots Cast on the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 3334] (the "**Initial Voting Declaration**"). On May 7, 2021, Prime Clerk filed the *Supplemental Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 3534] (the "**Supplemental Voting Declaration**", together with the Initial Voting Declaration, the "**Voting Declarations**").

such holder's authorized representative), (iii) returned to Prime Clerk via an approved method of delivery set forth in the Solicitation Procedures, and (iv) received by Prime Clerk on or before the Voting Deadline, except to the extent such Voting Deadline was extended by the Debtors, with the consent of the Plan Proponents. Suppl. Voting Decl. at ¶ 8.

8. The Supplemental Voting Declaration includes Prime Clerk's final tabulation of votes, resulting in a total of 78,357 valid votes received, with 62,553 accepting votes (79.83%) and 15,804 rejecting votes (20.17%). Suppl. Voting Decl. at Ex. A. Exhibit C to the Supplemental Voting Declaration lists all defective votes that were excluded from the tabulation for various reasons, including, among other reasons, because such votes were superseded by a valid superseding vote by or on account of the same holder of a claim. *Id*. at Ex. C.

9. As noted in the Voting Declarations, Prime Clerk received Master Ballots after the March 25 Voting Deadline for holders of Direct Talc Personal Injury Claims from the three Voting Parties, as well as certain other law firms, including (i) Aylstock, Witkin, Kreis & Overholtz, PLLC, (ii) Linville Johnson PLLC, (iii) Morgan & Morgan, (iv) Bachus & Schanker, LLC, (v) Baum Hedlund Aristei & Goldman, P.C., and (vi) Seithel Law, LLC. These Master Ballots included 18,553 accept votes and 3,120 reject votes. *See* Initial Voting Decl. at ¶ 7, n.6; Suppl. Voting Decl. at ¶ 8, n.6. The Debtors also received certain Direct Ballots from holders of Direct Talc Personal Injury Claims after the March 25 Voting Deadline. *See* Initial Voting Decl. at ¶ 7, n.7; Suppl. Voting Decl. at ¶ 8, n.7.[7] The Debtors, with the consent of the Plan Proponents, waived the late defect – *i.e.*, extended the Voting Deadline – as to each of these Master Ballots and Direct

---

[7] The Initial Voting Declaration notes that "Prime Clerk received 128 Direct Ballots from holders of Direct Talc Personal Injury Claims after the Voting Deadline." *See* Initial Voting Decl. at ¶ 7, n.7. This number was updated in the Supplemental Voting Declaration, which notes that "Prime Clerk received 142 Direct Ballots from holders of Direct Talc Personal Injury Claims after the Voting Deadline and prior to the filing of the [Initial Voting Declaration]." *See* Suppl. Voting Decl. at ¶ 8, n.7.

Ballots, which were received on or before April 6, and directed Prime Clerk to include the votes in the vote tabulation.

10. In addition, the Supplemental Voting Declaration corrected certain typographical errors that were made in the Initial Voting Declaration. The Initial Voting Declaration incorrectly stated that the reason for exclusion of the votes cast by the Voting Parties in the original Master Ballots was "Master Ballot superseded by later received valid master ballot from *different* law firm with *consistent* vote on account of the same holder." *See* Initial Voting Decl. at Ex. C (emphasis added). As noted in paragraph 16 of the Supplemental Voting Declaration, however, this was a typographical error as each of the Voting Parties submitted revised Master Ballots that changed the votes that had been submitted in a prior Master Ballot by that same firm. *See* Suppl. Voting Decl. at ¶ 16. Accordingly, the Supplemental Voting Declaration corrected the error and clarified that the reason for exclusion was "Master Ballot superseded by latest-dated valid Master Ballot from the *same* law firm with *inconsistent* vote on account of the same holder." *See id.* at Ex. C (emphasis added).[8]

## ARGUMENT

### A. The Solicitation Procedures Established a Rebuttable Presumption that the Voting Parties had Sufficient Cause Within the Meaning of Bankruptcy Rule 3018(a) to Change Their Votes

11. The Solicitation Procedures undercut Movant's argument that the votes submitted by the Voting Parties should be disregarded for an alleged failure to comply with Bankruptcy Rule 3018. First, the Solicitation Procedures provide that:

---

[8] This error would have been readily apparent to anyone reviewing the Initial Voting Declaration, as the tabulation attached as Exhibit A thereto disclosed only 15,900 votes rejecting the Plan. *See* Initial Voting Decl. at Ex. A. If the language in Exhibit C to the Initial Voting Declaration had been correct, an additional 18,000 votes would have been included as reject votes in the vote tabulation.

> if multiple Ballots are received from the same attorney or agent with respect to the same Claim (but not from the holder thereof), the latest-dated otherwise valid Ballot that is received before the Voting Deadline (or such later date as agreed by the Debtors with the consent of the Plan Proponents, with such consent not to be unreasonably withheld) will be the Ballot that is counted as a vote to accept or reject the Plan.

Solicitation Procedures at § VI.2.h. This language requires Prime Clerk to count the latest-dated ballot received before or *after* the Voting Deadline (if agreed to by the Debtors with the consent of the Plan Proponents) as a vote to accept or reject the Plan. Second, in the event a superseding ballot is received, the Solicitation Procedures further provide that "[t]here will be a ***rebuttable presumption*** that any claimant who submits a properly completed superseding Ballot or withdrawal of a Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's acceptance or rejection of the Plan." *Id.* at § VI.2.f (emphasis added) (the "**Rebuttable Presumption Provision**"). Taken together, these provisions allow claimants to submit superseding ballots after the Voting Deadline, if an extension to such Voting Deadline is agreed by the Debtors, with the consent of the Plan Proponents, and create a rebuttable presumption that such claimant acted with cause in changing his or her vote within the meaning of Bankruptcy Rule 3018(a) (thereby obviating the need for a separate notice and a hearing).

12. In applying the foregoing, it is evident that the superseding Master Ballots submitted by the Voting Parties were appropriately included in the vote tabulation without the need for the Voting Parties to seek separate notice and a hearing under Bankruptcy Rule 3018 because the Plan Proponents consented to the late submission of the superseding Master Ballots –

thereby extending the Voting Deadline – which resulted in a rebuttable presumption that the Voting Parties had cause to change and/or withdraw their prior Master Ballots.[9]

13. Although Movant agrees that the Solicitation Procedures establish a rebuttable presumption of cause for votes changed prior to March 25, 2021, it argues that the Solicitation Procedures "do not provide the same rebuttable presumption under Rule 3018 for votes submitted after the Voting Deadline even if the Debtors and Plan Proponents permit such votes to be submitted after the Voting Deadline." Motion at ¶ 20. Movant's reading assumes that the term "Voting Deadline" means March 25, 2021 and does not include any extension agreed to by the Debtors, with the consent of the Plan Proponents. The Debtors disagree with this interpretation and submit the Voting Deadline is properly read to include any extensions to the original deadline or consent to the submission of late votes provided in connection with the Solicitation Procedures.[10]

14. Movant's overly technical reading of the Rebuttable Presumption Provision frustrates the purpose and effect of related provisions in the Solicitation Procedures. Specifically, Section VI.2.c of the Solicitation Procedures permits any voter to withdraw his or her vote by delivering a written notice of withdrawal to Prime Clerk before the Voting Deadline or such later date as agreed by the Debtors with the consent of the Plan Proponents. *See* Solicitation Procedures at § VI.2.c. Similarly, Section VI.2.h of the Solicitation Procedures *requires* Prime Clerk to count superseding ballots received before the Voting Deadline or such later date as agreed by the Debtors

[9] Movant suggests that the "procedure" to rebut the presumption is "the filing of a 3018 vote change motion" by the party submitting the superseding vote. Motion at ¶ 21. Such a reading conflicts with the plain language of the Rebuttable Presumption Provision and would render the presumption – an evidentiary burden – utterly meaningless. It is up to a party that believes the presumption should be rebutted, *i.e.* the party contesting the change in vote, to provide evidence in support of such rebuttal. Otherwise, the presumption should stand.

[10] *See infra* ¶ 16.

with the consent of the Plan Proponents. *See id.* at § VI.2.h.[11] Accordingly, the Plan Proponents are authorized to permit a party to withdraw a ballot or submit a superseding ballot after the Voting Deadline if such deadline is extended pursuant to the terms of the Solicitation Procedures (and Prime Clerk is required to recognize the withdrawal or superseding ballot). Notwithstanding, Movant takes the illogical position that such claimant would not receive the benefit of the Rebuttable Presumption Provision (and would therefore be required to file a separate motion with the Court to permit the vote change or withdrawal, which Prime Clerk is already required to accept, even if the presumption is not rebutted). This requires a tortured reading of the Solicitation Procedures that creates arbitrarily inconsistent treatment among voters.

15. When read in conjunction with the other provisions of the Solicitation Procedures, the logical interpretation is that the Rebuttable Presumption Provision is intended to apply equally to claimants that submit properly completed superseding ballots on or before the Voting Deadline ***as such deadline may be extended as agreed by the Debtors with the consent of the Plan Proponents***. *See United States v. Nee*, 573 F. App'x 37, 39 (2d Cir. 2014) ("When interpreting a particular provision of a [order], 'we are required . . . to read that provision in light of the [order] as a whole.'") (internal citation omitted); *In re Trico Marine Services, Inc.*, 450 B.R. 474, 482-83 (Bankr. D. Del. 2011) ("[T]he Court is obliged to construe [the order] in its entirety and interpret its provisions in a consistent manner."); *see also Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009) ("The paramount goal of contract interpretation is to determine the

---

[11] In addition, Section VI.2.j of the Solicitation Procedures expressly provides the Debtors with the option of recognizing any vote change after the Voting Deadline or such later date as agreed by the Debtors with the consent of Plan Proponents. *See id.* at § VI.2.j ("The Debtors will not be obligated to recognize any . . . change of any vote received after the Voting Deadline (or such later date as agreed by the Debtors with the consent of the Plan Proponents[.]").

intent of the parties.") (quotations omitted).[12] Movant's reading would frustrate the Debtors' ability to extend the Voting Deadline to superseding claims, which is clearly contemplated by the Solicitation Procedures. *See Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir. 1973) ("A contract is to be considered as a whole, and, if possible, all its provisions should be given effect[.]"); *In re Dura Auto. Sys., Inc.*, 379 B.R. 257, 268 (Bankr. D. Del. 2007) ("[R]ead the contract as a whole and consider all parts of the whole and not give undue force to certain words or phrases that would distort or confuse the primary and dominant purpose of the contract."); *Anguilla RE, LLC v. Lubert-Adler Real Estate Fund IV, L.P.*, No. N11C-10-061, 2012 WL 5417101, at *5 (Del. Super. Nov. 5, 2012) ("[T]he court must interpret the contract so as to conform to an evident consistent purpose and in a manner that makes the contract internally consistent."); *GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. 5571-CS, 2012 WL 2356489, at *4 (Del. Ch. June 21, 2012) ("When interpreting a contract, a court must give effect to all of the terms of the instrument and read it in a way that, if possible, reconciles all of its provisions. That is, a court will prefer an interpretation that harmonizes the provisions in a contract as opposed to one that creates an inconsistency or surplusage.").

16. This interpretation is further supported by the use of the term "Voting Deadline" throughout the Solicitation Procedures, the Solicitation Procedures Order, and the Master Ballots, including the following:

- Solicitation Procedures Order at ¶ 5: Voting Deadline is "March 25, 2021, at 4:00 p.m. (Prevailing Eastern Time); *provided* that the Debtors are authorized to extend the Voting Deadline for any party entitled to vote on the Plan[.]";

---

[12] When construing an agreed order, courts approach this task as an exercise of contract interpretation. *See Trico Marine Services*, 450 B.R. at 482 ("When construing an agreed or negotiated form of order . . . the Court approaches the task as an exercise of contract interpretation rather than the routine enforcement of a prior court order."); *In re Felt Mfg. Co., Inc.*, 402 B.R. 502, 511 (Bankr. D.N.H. 2009) ("The terms of court orders, plans of reorganizations, and stipulations between parties are typically examined under principles of contract interpretation.").

- Solicitation Procedures Order at ¶ 20: "A Ballot shall not be counted if: [t]he Ballot is not actually received by the Solicitation Agent in the manner set forth in the Solicitation Procedures by the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline with respect to such Ballot, or this Court shall have granted such an extension.";
- Solicitation Procedures at § VI.1.b: "A vote cast on a Ballot will **not** be counted if any of the following applies to such Ballot: [t]he Ballot is not **actually received** by the Solicitation Agent . . . by the Voting Deadline, unless the Debtors, with the consent of the Plan Proponents, have granted an extension of the Voting Deadline with respect to such Ballot, or the Bankruptcy Court has granted an extension.";
- Solicitation Procedures at § VI.2.c: "Any voter that delivers a valid Ballot may withdraw his, her, or its vote by delivering a written notice of withdrawal to the Solicitation Agent before the Voting Deadline (or such later date as agreed by the Debtors with the consent of the Plan Proponents, with such consent not to be unreasonably withheld).";
- Solicitation Procedures at § VI.2.j: "The Debtors will not be obligated to recognize any withdrawal, revocation or change of any vote received after the Voting Deadline (or such later date as agreed by the Debtors with the consent of the Plan Proponents, with such consent not to be unreasonably withheld).";
- Solicitation Procedures Order at Ex. 3-2: "If your Ballot is **not received** on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted."; and
- Solicitation Procedures Order at Ex. 3-2*:* "Unless such time is extended by the Debtors or the Bankruptcy Court, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent . . . [by the Voting Deadline]."

17. These provisions make clear that "Voting Deadline" is intended to include any extension of the Voting Deadline agreed to by the Debtors, with the consent of the Plan Proponents.

**B. Bankruptcy Rule 3018(a) is Inapplicable**

18. As discussed above, the Voting Parties' compliance with the Solicitation Procedures creates a rebuttable presumption that the Voting Parties had sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change their votes to accept the Plan. Thus, and despite the contentions made by Movant, the Voting Parties were not required to file a Bankruptcy Rule 3018 motion, and the burden is on Movant or other third parties to rebut the presumption.

19. Instead of rebutting the presumption, Movant contends that "[e]ven if it is permissible for a solicitation procedures order to include such rebuttable presumption under Rule

3018, that presumption does not excuse compliance with Rule 3018 altogether." *See* Motion at ¶ 21. Movant even takes this one step further, noting that:

> The Debtors did not give reasonable notice to parties in interest or the Bankruptcy Court that the Debtors were setting up procedures, ***in direct contravention of Rule 3018***, whereby they could abuse their power to accept Master Ballots after the Voting Deadline to "persuade" parties to change their votes after the Voting Deadline, without adhering to the requirements of Rule 3018 and the required showing of cause and disclosure of reasons and motivation for the change of such votes. The Debtors and the other Plan Proponents should not be able to argue they can do so now.

*Id.* at ¶ 23. These allegations are nothing more than an untimely attack on the Solicitation Procedures, which were approved by the Court nearly five months ago. The Debtors did not hide the ball or provide inadequate notice of the Solicitation Procedures to parties in interest or the Court. To the contrary, the Rebuttable Presumption Provision was included in the initial version of the Solicitation Procedures Order filed with the Solicitation Procedures Motion over a year ago. Movant was given ample time to object to the Rebuttable Presumption Provision in the Solicitation Procedures – *over 8 months,* significantly more time than most parties in chapter 11 proceedings have to object to solicitation procedures – but failed to do so despite submitting over 70 pages of objections related to the Solicitation Procedures Motion with the Court. Movant should not be entitled to re-litigate issues that have long ago been decided by the Court.

20. Moreover, provisions similar to the Rebuttable Presumption Provision are regularly approved by courts in the Third Circuit and other circuits (including in the mass tort context). Accordingly, the implication that the Rebuttable Presumption Provision is somehow inappropriate or an "abuse of power" is in direct contradiction with established practice in this district. *See, e.g., In re BL Restaurants Holding LLC*, Case No. 20-10156 (MFW) (Bankr. D. Del. Mar. 10, 2021) [Docket No. 787]; *In re RUI Holding Corp*., Case No. 19-11509 (JTD) (Bankr. D. Del. Jan. 15, 2020) [Docket No. 359]; *In re Kaiser Gypsum Company, Inc.*, Case No. 16-31602 (JCW) (Bankr.

W.D.N.C. Oct. 23, 2019) [Docket No. 1875]; *In re Garlock Sealing Technologies LLC*, Case No. 10-BK-31607 (JCW) (Bankr. W.D.N.C. July 29, 2016) [Docket No. 5445]; *In re Shelbourne North Water Street, L.P.*, Case No. 13-44315 (JSB) (Bankr. N.D. Ill. June 30, 2014) [Docket No. 267]. Indeed, it is routine and customary for claimants to cast superseding votes in accordance with court-approved solicitation procedures without seeking separate notice and a hearing. *See, e.g.*, *In re BBGI US, Inc.*, No. 20-11785 (CSS) (Bankr. D. Del. Mar. 3, 2021) [Docket No. 1085] (final tabulation excluded ballots that were superseded by later received valid ballots, consistent with solicitation procedures); *In re GNC Holdings, Inc.*, No. 20-11662 (KBO) (Bankr. D. Del. Oct. 8, 2020) [Docket No. 1350] (same); *In re TK Holdings, Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Feb. 16, 2018) [Docket No. 2100] (same).

21. At bottom, the Solicitation Procedures establish a process that permits Movant to rebut the presumption that the Voting Parties had sufficient cause to change their votes, but Movant has failed to do so.[13] Instead, Movant makes ancillary and groundless accusations using hyperbolic language aimed at the Debtors' conduct related to the voting process. For example, Movant attempts to elevate a mere scrivener's error – the typographical error discussed in paragraph 10 above, which was corrected in the Supplemental Voting Declaration – to some sort of conspiracy on the part of the Debtors to mislead all parties and the Court. Not only are such accusations baseless and wildly inappropriate attacks on the Debtors and their professionals, but Movant fails to explain how or why the Debtors would benefit from seeking to "hide" such information where any party that compared Exhibit C of the Initial Voting Declaration to the final tabulation would

[13] While Mr. Itkin testified at his deposition in connection with the Discovery Motion that he had substantial communications with many parties in relation to the Plan, including Williams Hart (one of the Voting Parties), he admitted that he has had no communications with Bevan and thus has no basis for an understanding as to why Bevan submitted a superseding Master Ballot. *See* Discovery Motion Objection at Ex. A (Deposition of Jason Itkin)) at 153:20-154:4, 165:5-20.

have identified that there was clearly an error in the Initial Voting Declaration.[14] In any event, these types of accusations are not relevant to rebutting the presumption of cause established by the Solicitation Procedures.

### C. Sufficient Cause Exists to Permit Bevan to Change Its Votes and the Voting Parties Should Have an Opportunity to Seek Relief Under Bankruptcy Rule 3018

22. Assuming *arguendo* that this Court were to determine that the Voting Parties must still establish cause pursuant to Bankruptcy Rule 3018 despite the Rebuttable Presumption Provision, sufficient cause exists to permit Bevan to change its votes.[15]

23. On March 25, 2021, Bevan cast an initial Master Ballot ("**Initial Master Ballot**") totaling 15,719 votes rejecting the Plan. Then, on March 29, 2021, Bevan informed Prime Clerk in writing of its decision to withdraw the Initial Master Ballot in accordance with the terms of the Solicitation Procedures governing the withdrawal of votes. *See* Solicitation Procedures at § VI.2.c. The Debtors, with the consent of the Plan Proponents, consented to the withdrawal of the Initial Master Ballot. Thereafter, on April 6, 2021, Bevan cast a superseding Master Ballot ("**Superseding Master Ballot**") totaling 15,719 votes accepting the Plan. The Debtors, with the consent of the Plan Proponents, agreed to the late submission of the Superseding Master Ballot.

24. As described in the Bevan Declaration,[16] the Initial Master Ballot submitted by Bevan was based on a misunderstanding of the Plan. Specifically, the Bevan Declaration makes

---

[14] One such party clearly identified this error in its joinder to the Discovery Motion. *See Joinder by AWKO Claimants to Motion of Holders of Talc Personal Injury Claims Represented by Arnold & Itkin LLP to Extend Deadlines for Voting-Related Discovery* [Docket No. 3527] at ¶ 5, n.3. Movant also acknowledged the improbability of the tabulation results if Exhibit C of the Initial Voting Declaration was accurate. *See* Discovery Motion at ¶ 16.

[15] The Bevan votes reflect the majority of the votes submitted by the Voting Parties in the aggregate. However, the Debtors also believe that sufficient cause exists to permit the other Voting Parties to change their votes, as well.

[16] *See Declaration of Counsel* [Docket No. 3684] (the "**Bevan Declaration**").

clear that the Initial Master Ballot was submitted because counsel for the Bevan Claimants (as defined in the Bevan Declaration) believed that the Plan "negatively and unfairly impacted the Bevan Claimants that were exposed to industrial talc in the manufacturing process" in that the Plan "may impair the Bevan Claimants' voting rights under the bankruptcy case of Cyprus Mines Corporation[.]" *See* Bevan Declaration at ¶ 4. After submitting the Initial Master Ballot, Bevan discussed its concerns with representatives of the Tort Claimants' Committee, and on or about March 26, 2021, Bevan received certain clarifications that alleviated its concerns "regarding the impact [t]he Plan may have on the Bevan Claimants' voting rights under the Cyprus Bankruptcy." *See id.* at ¶¶ 5-6. After confirming this misunderstanding, Bevan withdrew the Initial Master Ballot, informed representatives of the Tort Claimants' Committee that Bevan was in support of the Plan, and submitted the Superseding Master Ballot. Thus, after receiving certain clarifications regarding the Plan and its impact on the Cyprus Bankruptcy (as defined in the Bevan Declaration), the Bevan Claimants are fully in support of the Plan. *Id.* at ¶¶ 7-10.

25. Bankruptcy Rule 3018(a) provides that "[f]or cause shown, the court after notice and a hearing may permit a creditor or equity security holder to change or withdraw an acceptance or rejection. "Cause" is not defined in Bankruptcy Rule 3018, and is "left up to the court to determine in the exercise of its discretion. *See In re MPM Silicones, LLC*, No. 14-22503-rdd, 2014 WL 4637175, at *1-2 (Bankr. S.D.N.Y. Sept. 17, 2014). In analyzing Bankruptcy Rule 3018(a), courts have determined that the test for determining whether cause exists is not a difficult one to meet. *See In re Kellogg Square P'ship*, 160 B.R. 332, 334 (Bankr. D. Minn. 1993) ("The test for determining whether cause has been shown should not be a difficult one to meet. As long as the reason for the vote change is not tainted, the change of vote should usually be permitted. The court

must only ensure that the change is not improperly motivated."); *see also MPM Silicones*, 2014 WL 4637175, at *2 (same).

26. Moreover, courts generally agree that cause exists to change a vote "in order to allow the voting entity to intelligently express its will." *See Kellogg Square P'ship*, 160 B.R. at 334. Examples of this type of cause include, among others: (1) misreading the terms of the plan; (2) a breakdown in communications at the voting entity; or (3) execution of the first ballot by one without authority. *See id.*; *see also MPM Silicones*, 2014 WL 4637175, at *2. In these situations, courts allow vote changing almost as a matter of course. *See In re Kellogg Square P'ship*, 160 B.R. at 335 ("[G]iving effects to the erroneously cast vote would defeat the right to franchise.").

27. Movant's notion that Bankruptcy Rule 3018(a) requires something more than a mere change of heart and that a vote change should not be permitted where it did the confirmation process violence is inapposite. As is clear from the above, the Initial Master Ballot submitted by Bevan was based on a misunderstanding of the Plan, and Bevan exercised its right to withdraw the Initial Master Ballot and cast the Superseding Master Ballot in accordance with the process outlined in the Solicitation Procedures. Movant has not suggested that Bevan acted in a manner that was inconsistent with the Solicitation Procedures or provided any evidence that Bevan acted with an improper motive.[17] Where, as here, a vote was cast based on a misreading of the terms of the Plan, a party should be permitted to change its vote and intelligently express its will. Thus, it is readily apparently that cause would exist under Bankruptcy Rule 3018.

28. Based on all of the foregoing, it is the Debtors' position that a separate notice and a hearing pursuant to Bankruptcy Rule 3018 is not required. However, if the Court is inclined to

---

[17] Further, the Bevan Declaration notes that "[n]o promises or inducements were offered by anyone to entice the Bevan Claimants to support the Plan." *See* Bevan Declaration at ¶ 11.

disagree, the Debtors request that the Court provide each Voting Party with the opportunity to file a motion pursuant to Bankruptcy Rule 3018 prior to ruling on the relief sought by Movant in the Motion. Nothing precludes the Voting Parties from filing a Bankruptcy Rule 3018 motion in the event the Court determines that is necessary or advisable to do so. *See MPM Silicones*, 2014 WL 4637175, at *1-2 ("Before the 1991 amendments of the Bankruptcy Rules, Bankruptcy Rule 3018(a) also required that any motion to change or withdraw a vote be made before the deadline for voting had passed, but this was repealed in the form of the current version of the rule[.]").

**D. Movant's Requested Relief is Unconscionable**

29. Movant is seeking not only to disregard the superseding Master Ballots submitted by the Voting Parties, but also asks the Court to recognize and tabulate the superseded reject votes cast by the Voting Parties. If Movant's request is granted not only will more than 18,000 votes cast by the Voting Parties be disregarded, but they will be counted as votes against the Plan – which would consist of a 36,000 vote swing from acceptance to rejection. This would be an absurd result that has no basis in law or equity.

30. Movant is effectively seeking to disenfranchise 18,000 claimants for the sole purpose of blocking plan confirmation, and asks the Court to ignore the fact that the Voting Parties independently decided that it was in the best interests of their clients to change their votes to accept the Plan. The relief requested by Movant goes against the fundamental principles of the voting process and would put the Court in the position of stepping into the claimant's shoes and making a decision regarding acceptance or rejection of the Plan on their behalf. The fact that this request is coming from a party that rejected the Plan and is now seeking to block confirmation is concerning, and if permitted, raises serious questions as to the fairness and integrity of the voting process.

**CONCLUSION**

31. For the reasons stated herein, the Court should sustain the Objection and deny the relief requested in the Motion.

Dated: June 15, 2021
Wilmington, Delaware

/s/ *Amanda R. Steele*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
E-mail: collins@rlf.com
merchant@rlf.com
steele@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
E-mail: jeff.bjork@lw.com
kim.posin@lw.com
helena.tseregounis@lw.com

- and -

Richard A. Levy (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: richard.levy@lw.com

*Counsel for Debtors and Debtors-in-Possession*