

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

Laurie Selber Silverstein
Chief Judge

824 N. Market Street
Wilmington, DE 19801
(302) 252-2900

August 10, 2021

**Via CM/ECF Notification and email**

Marcos A. Ramos
Richards Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, DE 19801

Erin R. Fay
Bayard P.A.
600 N. King Street
Suite 400
Wilmington, DE 19801

Amy C. Quartarolo
Latham & Watkins LLP
355 South Grand Avenue
Los Angeles, CA 90071

William J. Beausoleil
Hughes Hubbard & Reed LLP One
Battery Park Plaza
New York, NY 10004

Patrick A. Jackson
Faegre Drinker Biddle & Reath LLP
222 Delaware Ave.
Wilmington, DE 19801

    Re:    *Imerys Talc America, Inc.*, **Case No. 19-10289**
              <u>**Letter Submissions: Dkt. Nos. 3267, 3268, 3318**</u>

    This letter addresses the remaining discovery dispute among Debtors, Imerys, S.A. and Johnson & Johnson and Johnson & Johnson Consumer Inc. (together "J&J"), as set forth in letters submitted by those parties (Dkt. Nos. 3267, 3268 and 3318, respectively). I am writing for the parties and assume familiarity with the procedural posture, operative facts and undefined terms used herein.

Imerys Talc America, Inc.– 19-10289
August 10, 2021
Page 2

At the hearing held on April 7,[1] I requested a random sampling of one hundred documents (each, a "Document" and, collectively, "Documents"), which I subsequently received for review *in camera*. The Documents are from a set of 266 identified families of documents withheld from production by Debtors and Imerys S.A. based on asserted privileges. Each Document includes the primary document and any attachments. A review of the privilege log shows that Debtors' description accurately reflects the referenced Documents.

Debtors have also correctly described the two categories of communications and/or Documents as: (i) draft and final presentations prepared by counsel for Debtors and Imerys S.A. (in some instances with input from in-house counsel) for presentation to Debtors and Imerys S.A. leadership concerning "the timing and schedule of potential bankruptcy filings, anticipated legal issues and potential litigations in the context of the chapter 11 proceedings, and the costs and benefits of pursuing certain negotiating tactics with various parties-in-interest"[2] as well as communications regarding same; and (ii) communications between in-house and outside counsel for Debtors and Imerys S.A. "analyzing, assessing, and furthering the negotiation between Debtors and Imerys S.A., on the one hand, and the TCC and FCR, on the other hand, with respect to terms of a settlement that eventually became the Plan" including "email summaries by counsel of negotiations, draft term sheets, discussions regarding potential parameters of contribution by Imerys S.A., suggested tactical steps, concerns and reactions of counsel during negotiations, and other factors that could inform litigation risk as against the TCC and FCR."[3]

Citing to *Chevron*[4] and *Westinghouse*,[5] Debtors argue that the Documents could be shared between Debtors and Imerys S.A. even if work product because Debtors and Imerys S.A. were not adversaries. Debtors contend that the Documents show that "neither the Debtors nor the Non-Debtor Affiliates considered themselves to be, nor positioned themselves as potential 'adversaries' in navigating the chapter 11 proceedings." Debtors point to the fact that they jointly defended claims in the tort system with Imerys S.A. and other non-debtor affiliates. Debtors also argue that they did not share the Documents in a manner that would make them more likely to be disclosed to "actual adversaries in the bankruptcy (i.e. the TCC, FCR, or other parties-in-interest.)" Debtors attach to their submission a March 19, 2019 email exchange between professionals for Debtors and the TCC reflecting an agreement that the TCC will have derivative standing to commence on

---

[1] Argument was held April 7, 2021. Thereafter, I was asked to defer ruling pending discussions among the parties. On June 4, 2021, I was informed that the parties were at an impasse and required a ruling. After reviewing the Documents, I sent a letter to the parties containing questions not addressed in the submissions or at argument. Dkt. No. 3861. Additional argument was held on July 28, 2021.
[2] Dkt. No. 3267, 10.
[3] *Id*. 11.
[4] *In re Chevron Corp.*, 633 F.3d 153 (3d Cir. 2011).
[5] *Westinghouse Elec. Corp. v. Rep. of the Philippines*, 951 F.2d 1414 (3d Cir. 1991).

behalf of the estates any action against Imerys S.A. or other non-debtor affiliates subject to certain terms and conditions.

Imerys S.A. concurs with Debtors with respect to the work product arguments. Imerys S.A. also asserts that it and Debtors were not acting as adversaries because they both wanted a consensual plan and Imerys S.A. knew that "the representatives of the underlying tort claimants would never accept any agreement between Debtors and the Non-Debtor Affiliates resolving any potential exposure of the Non-Debtor Affiliates, and any claims against the Non-Debtor Affiliates would have to be negotiated by representatives of the underlying tort claimants, the TCC and FCR." Imerys S.A. also asks that I reconsider the conclusions in my February 23, 2021 letter with respect to the common interest doctrine given that my letter was written generally and not in the context of a review of specific documents. Imerys S.A. also relies on the March 19, 2019 email exchange referenced above as well as a list of cases in which Imerys USA, Inc. was named as a co-defendant with Debtors in the tort system. Imerys S.A. represents that it and Debtors jointly defended the underlying lawsuits including as to alter ego liability. With this further evidence, Imerys S.A. compares the facts here to those before the court in *Quigley*.[6]

J&J objects to any reconsideration of the conclusions in my February 23, 2021 letter. Beyond that, J&J argues that to the extent the Documents discuss potential alter ego claims or potential parameters of a contribution by Imerys S.A., Debtors and its non-debtor affiliates are, by definition, adversaries and that Documents on these topics go towards "increasing the pie," an area in which Debtors and Imerys S.A. do not share a common interest. As for "all other issues," J&J contends that it is "unclear that Imerys S.A. had *any* legitimate interest before the settlement on its release, let alone one in common with the Debtors."

*Discussion*

In my February 23, 2021 letter, I came to multiple conclusions with respect to the common interest doctrine. As relevant here, I concluded that: (i) Debtors had not met their burden of establishing a common legal interest between themselves and Imerys S.A. regarding the bankruptcy action as of February 13, 2019; (ii) a common legal interest between Debtors and Imerys S.A. with respect to the Plan did not exist until March 5, 2020 and (iii) Debtors generally share a common legal interest with the TCC and FCR with respect to maximizing assets for recoveries to creditors, but Imerys S.A. does not share that common legal interest, certainly as it pertains to itself. But, as noted in my February 23, 2021 letter, I did not have the benefit of any specific documents to provide context.

---

[6] *In re Quigley Co., Inc.*, 2009 WL 9034027 (Bankr. S.D.N.Y. Apr. 24, 2009).

### A. Work Product

Having reviewed the Documents, it is clear that they are opinion work product.[7] The Documents generated prepetition were prepared in anticipation of the bankruptcy case and they reflect the strategy of attorneys for Debtors and/or Imerys S.A. with respect to all aspects of the case as well as the effect of the bankruptcy case on the companies' businesses.[8] The Documents generated postpetition were prepared as part of the case and reflect ongoing strategy, including drafts of various documents. None of these Documents would have been prepared in the ordinary course of business. The question is whether the sharing of the Documents among the identified parties has waived that privilege.

The work product doctrine permits attorneys to prepare their cases secure in the knowledge that their work product will not be used against their clients.[9] Disclosure to a third party of documents containing work product does not necessarily waive the protection of the work product doctrine as long as the disclosure furthers the doctrine's underlying goal.[10] As both Debtors and Imerys S.A. recognize in their submissions, courts often examine whether the disclosure was to an adversary or non-adversary.

Both Debtors and Imerys S.A. argue that they are not adversaries because they neither considered themselves to be adversaries nor positioned themselves as potential adversaries in connection with the chapter 11 proceedings. Both rely on the March 19, 2019 email exchange to show their true adversaries – the TCC and FCR. J&J counters that as to potential alter ego claims, the Debtors and non-Debtor Affiliates are "by definition" adverse.

No party discussed how to define an "adversary" in the context of the work product doctrine. In *Chevron* and *Westinghouse*, the documents at issue were not disclosed directly to an adversary in the case before the court. In *Chevron*, the documents were disclosed to a court-appointed expert and in *Westinghouse* the documents were disclosed to the Securities & Exchange Commission and the Department of Justice. In each instance, the Third Circuit held that the disclosure waived the protection of the work product doctrine because the purpose of the disclosure was not consistent with the goal of the privilege – the secure preparation of a case. In *Chevron*, the purpose for disclosure was to convince the court-appointed expert of that party's position on a damages assessment in the hope that the expert would adopt its conclusions and include those conclusions in the expert's report. The Court held that this disclosure put the expert in the position as serving as a conduit to

---

[7] Portions of the Documents may also contain legal advice or requests for legal advice that is protected by the attorney-client privilege, a further position taken by Imerys SA. The advice was interwoven with the work product.
[8] A mass tort case constitutes litigation for purposes of the work product doctrine. *Quigley*, 2009 WL 9034027 * 6-7.
[9] *Chevron*, 633 F.3d at 164 (citing *Westinghouse*, 951 F.2d at 1428).
[10] *Westinghouse*, 951 F.2d at 1429.

Imerys Talc America, Inc.– 19-10289
August 10, 2021
Page 5

transmit the documents to the other party in the litigation. In *Westinghouse*, the Third Circuit held that the purpose of the disclosure to an agency investigating allegations against an entity is to convince the agency that the charges are unfounded or to obtain more lenient treatment. Neither of these objectives, while rational, furthered the goals of the work product doctrine. Accordingly, the Third Circuit found in each instance that the protection of the work product doctrine was waived.[11]

Here, the Documents were not shared with the TCC or the FCR. Rather, they were shared among counsel for Debtors, counsel for Imerys S.A. and in-house counsel to both. The Documents reflect a joint effort to address and/or strategize around a bankruptcy filing and the many issues that would arise (or were arising postpetition) in the case. In this sense, the Documents were shared consistent with the underlying purpose of the work product doctrine, namely to prepare for litigation.

But, the Documents include discussion of the potential alter ego claims against Imerys S.A. and an Imerys S.A. contribution to the Debtors' estates. As to those topics, the issue remains whether Debtors and Imerys S.A. are adverse. And, if so, whether notwithstanding the adversity, Debtors and Imerys S.A. can act as if they are not adverse while preserving the protection of the work product doctrine? An alternative or follow-on question might be: can parties that are adverse on one issue share work product on that issue in the context of a broader exchange of information on which they are aligned? I think the answer to both questions is "no."

*Teleglobe* informs the current situation.[12] In *Teleglobe*, the Third Circuit examined the common interest privilege and use of in-house counsel in the context of a parent/subsidiary situation. As explained by the Court, it is "inevitable" that parents and subsidiaries will find that their interests diverge and insolvency (along with spin-offs and sales) is a stated example. In those situations, the parent should secure outside counsel for the subsidiary.[13] The Court recognizes that exactly when to retain outside counsel for the subsidiary is often a difficult decision, stating only that "the best answer" is when the parent and subsidiary become "sufficiently adverse." Notwithstanding that the parent and subsidiary are

---

[11] I will confess to some confusion with respect to the interplay of the concept of "adversary" in these cases with the discussion of whether documents were shared for a purpose consistent with the rationale of the work product doctrine. Perhaps the use of the word "adversary" is a shorthand way of expressing this concept. In any event, the work product doctrine promotes the adversary system by enabling attorneys to prepare their cases secure in the knowledge that their work product will not be used against their client. Preparing for litigation with your adversary is the antithesis of the doctrine.

[12] *In re Teleglobe Communications Corp.*, 493 F.3d 345, 373 (3d Cir. 2007).

[13] *Id.* ("from the perspective of protecting the privilege the best answer is that once the parties' interests become sufficiently adverse that the parent does not future controllers of the subsidiary to be able to invade the parent's privilege, it should end any joint representation on the matter of the relevant transaction.")

Imerys Talc America, Inc.– 19-10289
August 10, 2021
Page 6

sufficiently adverse on one transaction or in one context, in-house counsel can continue to represent the subsidiary on other matters. As the Court recognizes, spin-off transactions can be in the works for months or years and during that period it is appropriate for in-house counsel to represent the subsidiary (jointly or alone) in other matters.

I conclude that Debtors and Imerys S.A. were sufficiently adverse for some purposes at least as of December 9, 2018, the earliest date of any Document which Debtors and/or Imerys S.A. seek to withhold from discovery. According to Jeffrey Bjork:[14]

- Since 2004, Latham represented *Imerys S.A.* and certain non-Debtor affiliates on corporate matters unrelated to these bankruptcy cases;

- In April 2018, Latham was retained to assist *Imerys Talc America Inc.* with certain talc litigation matters;

- In June, 2018, Latham began to provide general advice to *Imerys Talc America, Inc.* "regarding strategic alternatives to address the significant number of talc related claims that have been asserted against Imerys Talc America, Inc. and certain of its affiliates."

- Prior to November 2018, Lathan advised *Imerys S.A.* and certain non-Debtor affiliates in connection with assessing alternatives to resolve talc related litigation against the Debtors.

- On November 5, 2018, *Debtors* and Latham executed an amended engagement letter "pursuant to which [Latham] continued to advise the Debtors on certain litigation matters and also *began providing advice to the Debtors* relating to potential restructuring alternatives."

- Since November 2018, *Imerys S.A.* and certain non-Debtor affiliates have been separately represented by Hughes Hubbard & Reed LLP with respect to restructuring alternatives.

- *Debtors* have consented to Latham's continued representation of *Imerys S.A.* in unrelated matters. Latham has obtained an appropriate waiver form *Imerys S.A.* in connection with Latham's representation of Debtors in the chapter 11 cases.

---

[14] Declaration of Jeffrey E. Bjork and Disclosure Statement of Latham & Watkins LLP Under 11 U.S.C. §§ 327, 329, and 504, Fed. R. Bankr. P. 2014(a) and 2016(b), and Del. Bankr. L.R. 2014-1(a) and 2016-1 ¶¶ 4, 19, 20.

It may be true as Debtors argue, that simply retaining separate counsel for a subsidiary—or in this case parent—is not conclusive on a determination of adversity. Here, however, there are other indicia of adversity on the issues of alter ego claims and a potential Imerys S.A. contribution in a bankruptcy case. In September 25, 2018, Debtors asked James L. Patton, Jr. to serve as the legal representative for future personal injury claimants ("FCR") in conjunction with a possible plan of reorganization under chapter 11 of the United States Bankruptcy Code. [Dkt. No. 100-4]. While the FCR was, at that time, adverse to both Debtors and Imerys, S.A., including with respect to alter ego claims and a potential Imerys S.A. contribution, that does not mean that Debtors and its parent were no longer adverse on these issues vis-à-vis a bankruptcy case.

Debtors also acknowledge this adversity in at least other two ways. First, the approved version of the Disclosure Statement provides that:

> Each of the *Debtors*, the Tort Claimants' Committee, and the FCR *conducted extensive investigations into potential claims against Imerys S.A.* and other entities for which Imerys S.A. is either a direct or indirect parent. This investigation included, among other things, the review of tens of thousands of documents and numerous meetings over several months. The Imerys Settlement is the result of that investigation *and in the view of each of the Debtors*, the Tort Claimants' Committee, and the FCR *is fair and equitable and in the best interest of the Debtors*, their Estates, and creditors.[15]

Second, the March 19, 2019 exchange of emails between counsel for Debtors and counsel for the TCC acknowledges the potential alter ego claims and, as between the two, apportions responsibility for the bringing of those claims. In this communication, Debtors reserve the right to resolve the alter ego claims. While this is a typical arrangement, it does not mean that adversity between the parent and subsidiary no longer exists; if this arrangement is approved by the court, the TCC is simply substituted as the estate representative for purposes of prosecuting the estate's claims.

Finally, I disagree with Debtors' position that the primary focus of the work product doctrine analysis should be on how the parties conducted themselves. This suggests that parties can choose their adversaries. Debtors did not cite a case for the proposition that parties can ignore with impunity their theoretical or legal alignments. No case cited even suggests this outcome. In both *Westinghouse* and *Chevron*, the party asserting privilege did not consider itself adverse to the entity with whom it shared documents and yet the Third Circuit found those entities to be adversaries. In *Teleglobe*, the Third Circuit cautions

---

[15] Disclosure Statement for Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code 9, Dkt. No. 2674 (emphasis supplied).

Imerys Talc America, Inc.– 19-10289
August 10, 2021
Page 8

corporate families to obtain separate counsel when their interests diverge for the very purpose of protecting privileges.

### B. The Common Interest Doctrine

Imerys S.A. asks that I reconsider my earlier ruling with respect to the common interest privilege and find all communications between Imerys S.A. and Debtors to be protected communications. Based on the further information provided to me regarding Debtors' and Imerys S.A.'s joint defense of certain underlying tort litigation as well as their prebankruptcy planning, I am prepared to conclude that, except with respect to the alter ego claims and an Imerys S.A. contribution, Debtors and Imerys S.A. share a common legal interest with respect to the bankruptcy case and planning as of December 9, 2018. But, with respect to alter ego claims and an Imerys, S.A. contribution, Debtors do not share a common legal interest with Imerys S.A. for the reasons stated in my earlier letter. Even though Debtors and Imerys S. A. were aligned in defending against alter ego claims in the tort system, I conclude that for the period at issue, their interests with respect to potential alter ego claims and an Imerys contribution diverged respect to bankruptcy planning and the bankruptcy case.

### Conclusion

For the reasons set forth above, I conclude that:

(i) Debtors and Imerys S.A. are adverse and do not have a common legal interest with respect to potential alter ego claims and the Imerys S.A. contribution. Those portions of the Documents discussing these topics must be produced; and

(ii) Debtors and Imerys S.A. are not adverse and have a common legal interest with respect to other aspects of bankruptcy planning and strategy such that the remainder of the content of the Documents need not be produced.[16]

Very truly yours,

Laurie Selber Silverstein

LSS/cmb

---

[16] J&J agreed that only those portions of documents not protected by the work product privilege need be produced.