## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                            :    Chapter 11

                                                  :

IMERYS TALC AMERICA, INC., *et al.*,[1]           :    Case No. 19-10289 (LSS)

                                                  :

          Debtors.                                :    (Jointly Administered)

                                                  :

                                                  :    **Hearing Date: November 15, 2021 at 10:00 a.m. (ET)**
                                                  :    **Objection Deadline: November 8, 2021 at 4:00 p.m. (ET)**

------------------------------------------------------------ x

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPOINTING MEDIATOR, (II) REFERRING CERTAIN MATTERS TO MEDIATION, AND (III) GRANTING RELATED RELIEF

The debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") hereby move (this "**Motion**"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and Rules 9019-3 and 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (a) appointing Kenneth R. Feinberg, Esq.[2] (the "**Mediator**") to mediate (i) the resolution of disputes over the obligations of certain insurers that issued insurance policies to Cyprus Mines Corporation ("**Cyprus Mines**") and its past or present affiliates and (ii) certain matters relating to the settlement entered into by the Debtors, the TCC (as defined below), the FCR (as defined below), Cyprus

---

[1]       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2]       The Mediator has confirmed that he is available and willing to conduct a mediation with respect to the matters set forth herein.

Mines and Cyprus Amax Minerals Company ("**CAMC**"); (b) referring such matters to mandatory mediation; (c) establishing mediation procedures as set forth in the Proposed Order; and (d) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors commenced the Chapter 11 Cases on February 13, 2019 with the primary goal of confirming a consensual plan of reorganization pursuant to sections 105(a), 524(g) and 1129 of the Bankruptcy Code that channels all present and future Talc Personal Injury Claims[3] to a trust vested with substantial assets and provides for a channeling injunction prohibiting claimants from asserting against any Debtor or non-debtor affiliate any claims arising from talc mined, produced, sold or distributed by any of the Debtors prior to their emergence from the Chapter 11 Cases.  While the Debtors have consistently disputed liability as to the Talc Personal Injury Claims, the Debtors continue to believe that this approach will provide fair and equitable treatment of all stakeholders.

2.      To that end, in March 2020, the Debtors reached an agreement with the other Plan Proponents[4] with respect to the terms of a chapter 11 plan of reorganization which provides that all Talc Personal Injury Claims will be channeled to a trust (the "**Talc Personal Injury Trust**") and that the Talc Personal Injury Trust will be funded with certain assets.  Based on settlements, such assets include: (a) the Imerys Settlement Funds; (b) the right to receive $340 million pursuant to the Rio Tinto/Zurich Settlement; (c) the right to receive $130 million pursuant to the Cyprus

---

[3]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Tenth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtors Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 4099] (as may be amended or modified, the "**Plan**").

[4]      The Plan Proponents are comprised of: (a) the Debtors, (b) the TCC, (c) the FCR and (d) the Imerys Plan Proponents.

2

Settlement, subject to the terms of the Cyprus Settlement Agreement[5] and conditioned upon the occurrence of the Cyprus Trigger Date;[6] (d) all Cash held by the Debtors as of the Effective Date of the Plan, other than Cash used to fund the Reserves; (e) the Talc Insurance Actions; (f) the Talc Insurance Action Recoveries; and (g) the rights of the Debtors with respect to Talc Insurance Policies, Talc Insurance CIP Agreements, Talc Insurance Settlement Agreements and Claims thereunder (collectively, the "**Talc Personal Injury Trust Assets**") in complete satisfaction of all Talc Personal Injury Claims that can be asserted against the Debtors or any other Protected Party. The Plan, as most recently amended, was filed on September 16, 2021.  The Plan embodies several settlement agreements, including the Cyprus Settlement Agreement with Cyprus Mines, CAMC and other parties (the "**Cyprus Settlement**").  Following agreement on the terms of the Cyprus Settlement Agreement, Cyprus Mines filed for bankruptcy under chapter 11 of the Bankruptcy Code in this Court, Case No. 21-10398 (LSS) (the "**Cyprus Mines Bankruptcy**").  Thereafter, a tort claimants committee (the "**Cyprus TCC**") and a future claimants representative (the "**Cyprus FCR**") were appointed in the Cyprus Mines Bankruptcy.  As part of the Cyprus Settlement Agreement, Cyprus Mines, CAMC and certain affiliates agreed, among other things, to transfer to the Talc Personal Injury Trust the Cyprus Talc Insurance Policy Rights and Cyprus Indemnity Rights, subject to the occurrence of the Cyprus Trigger Date and other terms of the Plan and Cyprus Settlement Agreement.  The Cyprus Talc Insurance Policies to which the Cyprus Talc Insurance

---

[5]     The Cyprus Settlement Agreement is attached as Exhibit D to the Debtors' *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtors Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 2864].

[6]     Cyprus Trigger Date, as defined in the Plan, means the later of (i) the later of the Effective Date or the date the Affirmation Order becomes a Final Order or (ii) the Cyprus Mines Plan Trigger Date.  *See* Plan § 1.1.69.  Cyprus Mines Plan Trigger Date means the later of (a) the effective date of the Cyprus Mines Plan or (b) the date the order of the District Court affirming confirmation of the Cyprus Mines Plan and issuing or affirming the issuance of the channeling injunction (as described in the Cyprus Mines Plan) in favor of the Cyprus Protected Parties thereunder becomes a Final Order.  *See* Plan § 1.1.59.

US-DOCS\126552741.6

Policy Rights relate include policies issued by the Chubb Insurers and the Cyprus Historical Excess Insurers (each as defined below).

3.      Following the Court's *Opinion* [Docket No. 4239] issued on October 13, 2021, the Debtors suspended all remaining deadlines related to confirmation of the Plan and requested that the confirmation hearing be taken off-calendar.  The Debtors stand at a critical juncture in these Chapter 11 Cases and seek to pursue mediation with the Mediation Parties (as defined below) in an effort to achieve further consensus and to minimize the issues that will be presented to the Court during the plan confirmation process.  The appointment of the Mediator at this stage of the Chapter 11 Cases will assist the parties in addressing key issues and foster productive settlement discussions.  Discussions facilitated by the Mediator, who has experience mediating these types of disputes, will allow the Mediation Parties to express their views on the Mediation Issues (as defined below) in these cases in a candid and confidential manner that is more likely to yield a positive result than negotiations outside of mediation.  The depth of experience of the Mediator will be instrumental and will benefit the Debtors' estates and the overall chapter 11 process.

4.      Ultimately, a negotiated settlement will help avoid a value-destructive highly contested plan confirmation process, and efforts to achieve such a result are supported by the key constituents in these Chapter 11 Cases, including each of the Plan Proponents.  Thus, by this Motion, the Debtors seek to further the achievement of one of their major objectives in these Chapter 11 Cases: fair and equitable distribution of the Talc Personal Injury Trust Assets.  Mandatory mediation will help to achieve this goal.  Moreover, both the Chubb Insurers and the Cyprus Historical Excess Insurers have indicated a willingness to proceed with mediation to resolve outstanding insurance-related issues.  The Debtors have also discussed mediation with the TCC, the FCR, Cyprus Mines, CAMC, the Cyprus TCC and the Cyprus FCR.

4

## JURISDICTION

5.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Rules 2002 and 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105 of the Bankruptcy Code and Local Rules 9019-3 and 9019-5.

## GENERAL BACKGROUND

6.     On February 13, 2019, the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On March 5, 2019, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Tort Claimants' Committee (the "**TCC**") [Docket No. 132] in the Chapter 11 Cases.  On June 3, 2019, the Court entered an order [Docket No. 647] appointing the future claimants' representative (the "**FCR**") pursuant to sections 105(a), 524(g)(4)(B)(i) and 1109(b) of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been requested in the Chapter 11 Cases.  The Chapter 11 Cases are jointly administered for procedural purposes only.

7.     On February 29, 2019, Debtor Imerys Talc Canada Inc., as the "foreign representative" acting on behalf of the Debtors' estates, commenced an ancillary proceeding under

5

US-DOCS\126552741.6

the Companies' Creditors Arrangement Act (Canada), R.S.C. 1985, c. C-36, as amended, in the Ontario Superior Court of Justice (Commercial List) and filed an application therein to recognize the Chapter 11 Cases and the United States as the center of main interest.

8.      On November 17, 2020, the Court entered an order [Docket No. 2539] (the "**Sale Order**"), which, among other things, approved the consummation of the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**") on terms and conditions set forth in an asset purchase agreement with Magris Resources Canada Inc. (the "**Buyer**"), dated as of October 13, 2020 (as amended, the "**Asset Purchase Agreement**").    Pursuant to the Asset Purchase Agreement, the Debtors agreed to sell the Assets to the Buyer for a purchase price comprised of $223 million in cash and the assumption of certain liabilities. On February 17, 2021, the closing of the Sale occurred.

9.      On May 14, 2020, the Debtors filed their initial version of the plan of reorganization.   Additional versions followed to, among other things, incorporate additional settlements reached following the filing of the initial plan.   On September 16, 2021, the Debtors filed the most recent iteration of the Plan.  As noted above, the Plan contemplates the establishment of the Talc Personal Injury Trust pursuant to sections 105(a) and 524(g) of the Bankruptcy Code to which the Debtors' Talc Personal Injury Claims will be channeled upon the Effective Date.  As anticipated under the Plan, upon the Effective Date, the Trust will take full ownership of the Reorganized North American Debtors.

10.     The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 10] and the *Disclosure*

*Statement for Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America,*

*Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 2866].

## RELIEF REQUESTED

11.     By this Motion, the Debtors request entry of the Proposed Order, pursuant to section

105(a) of the Bankruptcy Code and Local Rules 9019-3 and 9019-5, (i) appointing the Mediator

to mediate any and all issues related to the resolution of disputes over the obligations of certain

insurers that issued insurance policies to Cyprus Mines and its past and present affiliates (the

"**Insurance Issues**") and certain matters with respect to the Cyprus Settlement (the "**Settlement**

**Issues**" and together with the Insurance Issues, the "**Mediation Issues**"), (ii) referring the

Mediation Issues to mandatory mediation, and (iii) granting related relief.

12.     The Debtors request that the following parties be directed to participate in the

mediation (collectively, the "**Mediation Parties**"): (a) the Debtors; (b) the TCC; (c) the FCR;

(d) Cyprus Mines; (e) CAMC; (f) the Cyprus TCC; (g) the Cyprus FCR; (h) Century Indemnity

Company, Federal Insurance Company and Central National Insurance Company of Omaha

(collectively, the "**Chubb Insurers**"), (i) Columbia Casualty Company, Continental Casualty

Company, the Continental Insurance Company, as successor to CNA Casualty of California and

as successor in interest to certain insurance policies issued by Harbor Insurance Company,

Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance

Company), National Union Fire Insurance Company of Pittsburgh PA, and Lexington Insurance

Company to the extent that they issued policies to Cyprus Mines prior to 1981 (collectively, the

"**Cyprus Historical Excess Insurers**"), and (j) any other parties that the Court, the Mediator

and/or the Mediation Parties agree in the future should participate in the mediation process.  The

mediation will commence on a date to be determined and will proceed on a schedule that the

Mediator deems appropriate.  However, the Debtors expect that the mediation process can be initiated shortly after an order approving the relief sought herein is approved and will not delay the progress of the Chapter 11 Cases.

## BASIS FOR RELIEF

13.     Local Rule 9019-5 provides that this Court may refer "any dispute" to mediation. Del. Bankr. L.R. 9019-5(a) ("The Court may assign to mediation any dispute arising in an adversary proceeding, contested matter or otherwise in a bankruptcy case.").  Local Rule 9019-3 provides, in relevant part that "Notwithstanding any provision of law to the contrary, the Court may refer a dispute pending before it to mediation [. . .] During a mediation, the parties may stipulate to allow the mediator [. . .] to hear and arbitrate the dispute."  Section 105 of the Bankruptcy Code provides that this Court "may issue any order, process or judgement that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a); *see also In re Atl. Pipe Corp.*, 304 F.3d 135, 140 (1st Cir. 2002) ("There are four potential sources of judicial authority for ordering mandatory non-binding mediation of pending cases, namely (a) the court's local rules, (b) an applicable statute, (c) the Federal Rules of Civil Procedure, and (d) the court's inherent powers."); *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 85 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order a party to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis."), *rev'd on other grounds*, 452 B.R. 374 (S.D.N.Y. 2011).

14.     The appointment of the Mediator is a necessary step to address some of the key remaining open issues facing the Debtors in these Chapter 11 Cases: resolution of insurance coverage disputes and issues with respect to the Cyprus Settlement.  Indeed, commencing mediation may prevent the undue delay and excessive costs associated with litigating coverage

8

issues and issues that may arise in relation to the Cyprus Settlement.  Litigating all (or even some) of these matters (or continuing to litigate plan confirmation issues with the insurers) would entail extensive costs and professional fees and expenses and could extend the timeline of the Debtors' Chapter 11 Cases, thereby compounding such costs – costs that would predominantly be borne by the Debtors' estates to the detriment of their creditors and the only impaired voting class in the Debtors' Chapter 11 Cases - the Talc Personal Injury Claimants.  Thus, resolving these issues both expeditiously and efficiently is of paramount importance to achieving a resolution of these cases and providing the best recovery for creditors.  Accordingly, the Debtors believe that providing the parties an opportunity to work with the Mediator with the goal of trying to resolve the Mediation Issues in advance of the confirmation hearing on the Plan, if possible, is a worthwhile effort and such efforts will benefit the estates.  The Debtors believe that the Mediation Parties' and Mediator's wealth of experience will allow the Debtors to progress these cases on a largely consensual basis to the benefit of the Debtors' estates.  Each of the TCC, the FCR, Cyprus Mines, CAMC, the Chubb Insurers, the Cyprus TCC, the Cyprus FCR and the Cyprus Historical Excess Insurers were apprised of the proposed mediation several weeks ago.  While the Debtors took substantial steps to try to reach an agreement with all such parties on the mediation process, they were ultimately unable to do so, although all of the forgoing parties have expressed a willingness to engage in mediation.

15.    The proposed Mediator is uniquely qualified to address the issues to be addressed through the proposed Mediation.  Mr. Feinberg has acted as an independent, neutral mediator for more than 30 years, retained by private parties and federal and state courts, to design and administer mediation procedures aimed at resolving thousands of complex disputes.  *See, e.g.*, *In Re Agent Orange*, 611 F. Supp. 1396 (E.D.N.Y. 1985); *Sec. & Exch. Comm'n v. Maurice R.*

*Greenberg & Howard I. Smith*, No. 09-Civ.-6939 (S.D.N.Y. 2011); *United States v. Computer Associates Int'l, Inc.*, No. 04-cr-837 (E.D.N.Y. 2007); *In Re Purdue Pharma L.P., et al.*, Case No. 19-23649 (Bankr. S.D.N.Y. 2019) (RDD); *In Re Paddock Enterprises, LLC,* Case No. 20-10028 (LSS) (Bankr. D. Del.  2020); *In Re Mallinckrodt plc, et al.,* Case No. 20-12522 (JTD) (Bankr. D. Del.  2020).  Mr. Feinberg has also been appointed by federal and state judges to act as the independent neutral Distribution Agent in administering class action settlements in complex commercial and tort cases, including the allocation and distribution of class settlement proceeds to eligible claimants.  *E.g.*, The Gulf Coast Claims Facility; GM Ignition Compensation Claims Resolution Facility, Final Protocol for Compensation of Certain Death and Physical Injury Claims Pertaining to the GM Ignition Switch Recall (June 30, 2014).  And, after the September 11 terrorist attacks, Mr. Feinberg was appointed by the Attorney General of the United States to act as the Special Master/Administrator of The Federal September 11 Victim Compensation Fund of 2001.  *See* 49 U.S.C. § 40101; 28 C.P.R. §§ 104.2, *et seq*. (2003).  A copy of Mr. Feinberg's *curriculum vitae* is attached hereto as **Exhibit B**.

16.    Movants also propose that payment of the proposed Mediator's fees and expenses (the "**Mediation Fees**") be allocated as follows:  (i) with respect to mediation of the Insurance Issues, (a) 50% of Mediation Fees to be borne by the Chubb Insurers and the Cyprus Historical Excess Insurers, collectively; (b) 25% of Mediation Fees to be borne by Cyprus Mines; and (c) 25% of the Mediation Fees to be borne by the Debtors; and (ii) with respect to mediation of the Settlement Issues, (y) 50% of Mediation Fees to be borne by Cyprus Mines; and (z) 50% of the Mediation Fees to be borne by the Debtors.

17.    Accordingly, the Debtors respectfully submit that the Court should enter the Proposed Order appointing the Mediator, establishing mediation procedures, and affording the Mediation Parties a valuable opportunity to reach consensus on important issues in these cases.

## NOTICE

18.    Notice of this Motion will be provided to: (a) the Mediation Parties; (b) the U.S. Trustee; (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; and (e) all parties entitled to notice pursuant Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR MOTION

19.    The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: October 26, 2021
Wilmington, Delaware

*/s/  Michael J. Merchant*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                     merchant@rlf.com
                     steele@rlf.com

- and -

Jeffrey E. Bjork (*pro hac vice*)
Kimberly A. Posin (*pro hac vice*)
Helena G. Tseregounis (*pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:     (213) 485-1234
Facsimile:      (213) 891-8763
Email:            jeff.bjork@lw.com
                     kim.posin@lw.com
                     helena.tseregounis@lw.com

- and -

Richard A. Levy (*pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:     (312) 876-7700
Facsimile:      (312) 993-9767
Email:            richard.levy@lw.com

*Counsel to the Debtors and the Debtors-in-Possession*

US-DOCS\126552741.6