**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IMERYS TALC AMERICA, Inc., *et al.*,[1] | Case No. 19-10289 (LSS) (Jointly Administered) |
| Debtors. | **Hearing Date: May 15, 2024, at 2:00 p.m. (ET)** **Objection Deadline: May 2, 2024, at 4:00 p.m. (ET)** |

**MOTION OF IMERYS DEBTORS FOR AN ORDER APPROVING THE ASSIGNMENT AGREEMENT BETWEEN IMERYS TALC AMERICA, INC. AND STRONGHOLD INSURANCE COMPANY LIMITED**

Imerys Talc America, Inc. ("ITA"), Imerys Talc Vermont, Inc., and Imerys Talc Canada Inc. (collectively, the "Imerys Debtors"), debtors and debtors-in-possession in the above-captioned cases jointly administered under Case No. 19-10289 (LSS) (the "Imerys Cases"), through their undersigned counsel, hereby move (this "Motion") this Court, pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order approving the Stronghold Assignment Agreement (the "Assignment Agreement"), dated April 12, 2024, by and among ITA and Stronghold Insurance Company Limited ("Stronghold"), a copy of which is attached hereto as **Exhibit A**. In support of this Motion, the Imerys Debtors respectfully represent as follows:

---

[1] The Imerys Debtors, along with the last four digits of each Imerys Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Imerys Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

**PRELIMINARY STATEMENT**

1.      The Imerys Cases and the Chapter 11 case captioned, *In re Cyprus Mines Corporation*, Case No. 21-10398 (LSS) (the "Cyprus Case"), were filed to manage the potential liabilities arising from claims by plaintiffs alleging personal injuries caused by exposure to talc mined, processed, and/or distributed by the Imerys Debtors, Cyprus Mines Corporation (the "Cyprus Debtor" and, together with the Imerys Debtors, the "Debtors") or their former subsidiaries.  Through confirmation of chapter 11 plans (collectively, the "Plans") in each of the Imerys Cases and the Cyprus Case, the Debtors intend to establish a single personal injury trust (the "Trust") in accordance with sections 105(a) and 524(g) of the Bankruptcy Code that will assume liability for, and use its assets to resolve, the Debtors' talc-related personal injury liabilities.

2.      The Debtors and their affiliates assert rights to numerous primary, excess, and umbrella comprehensive general liability insurance policies that provide coverage for product liabilities.  From 1980 to 1984, Stronghold subscribed to several Policies (as defined below) issued by Lloyd's of London to the Amoco Corporation ("Amoco"), formerly known as Standard Oil Company (Indiana), that also provided coverage to the Cyprus Debtor as a then-subsidiary of Amoco, with original total limits of $7,794,017.  The proposed Assignment Agreement resolves various issues regarding the scope and accessibility of coverage that remains available under the Policies.  If approved, the Assignment Agreement is expected to yield the assignment of any right Stronghold has to seek indemnification from the Indemnitor[2] in the amount of $7,794,017, that is

---

[2]      Capitalized terms used but not defined in this Motion have the meanings given in the Assignment Agreement.

anticipated to be transferred (along with other assets) to the Trust for the benefit of current and future talc claimants pursuant to the Plans.

3.      For the reasons set forth herein, approval of the Assignment Agreement is in the best interests of the Imerys Debtors, their estates, and their creditors, including all holders of Talc Personal Injury Claims (as defined herein).  Importantly, the tort claimants' committee appointed in the Imerys Cases (the "Imerys TCC"), the tort claimants' committee appointed in the Cyprus Case (the "Cyprus TCC"), the future claimants' representative appointed in the Imerys Cases (the "Imerys FCR"), and the future claimants' representative appointed in the Cyprus Case (the "Cyprus FCR" and, collectively with the Imerys TCC, the Cyprus TCC, and the Imerys FCR, the "Supporting Parties") each support the Assignment Agreement and the relief requested in this Motion.  Moreover, the Cyprus Debtor and Cyprus Amax Minerals Corporation ("CAMC") have no objection to this Motion or the Assignment Agreement.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are sections 105 and 363 of the Bankruptcy Code.  Such relief is warranted under Bankruptcy Rules 2002, 6004, and 9019.

RLF1 30845322v.1

**BACKGROUND**

A.    **The Imerys Cases**

6.    On February 13, 2019 (the "Imerys Petition Date"), each of the Imerys Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").[3]

7.    The Imerys Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8.    On March 5, 2019, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Imerys TCC in the Imerys Cases.  See Imerys D.I. 132.

9.    On June 3, 2019, the Court entered an order appointing James L. Patton Jr. as the Imerys FCR.  See Imerys D.I. 647.

10.    As of this date, no trustee or examiner has been requested or appointed in the Imerys Cases.

B.    **The Cyprus Case**

11.    On February 11, 2021 (the "Cyprus Petition Date"), the Cyprus Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court.[4]

---

[3] In this Motion, unless otherwise noted, citations and references to documents filed in the Imerys Cases are to filings made in the lead Imerys Case and adhere to the following format:  Imerys D.I. [#].

[4] In this Motion, unless otherwise noted, citations and references to documents filed in the Cyprus Case adhere to the following format:  Cyprus D.I. [#].

- 4 -

12.     The Cyprus Debtor continues in the management of its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cyprus Case.

13.     On March 4, 2021, the U.S. Trustee appointed the Cyprus TCC in the Cyprus Case. See Cyprus D.I. 96.

14.     On June 10, 2021, the Court entered an Order appointing Roger Frankel as the Cyprus FCR. See Cyprus D.I. 344.

**C.     Relevant Corporate History of the Debtors**

15.     In 1980, Standard Oil Company (Indiana)—the Cyprus Debtor's then-parent corporation—contributed the stock of the Cyprus Debtor to Amoco Minerals Company, a wholly-owned subsidiary of Standard Oil Company (Indiana) incorporated under Delaware law. In 1985, Standard Oil Company (Indiana) changed its name to Amoco Corporation, and Amoco Minerals Company changed its name to Cyprus Minerals Company. Amoco thereafter spun off Cyprus Minerals Company as an independent company, with the Cyprus Debtor remaining as its subsidiary.

16.     On January 6, 1989, the Cyprus Debtor and Johnson & Johnson ("J&J") entered into a stock purchase agreement, pursuant to which the Cyprus Debtor acquired from J&J all of the stock of Windsor Minerals, Inc. Windsor Minerals, Inc. operated talc mines in Vermont and historically supplied talc to J&J for use in baby powder. In connection with the acquisition, Windsor Minerals, Inc. entered into a supply agreement, pursuant to which it continued to supply talc to J&J. The Cyprus Debtor renamed Windsor Minerals, Inc. as Cyprus Windsor Minerals Corp. ("Windsor"). Windsor supplied J&J with talc between 1989 and 1992. The Cyprus Debtor

- 5 -

itself never supplied talc to J&J except for a limited period between December 1979 and March 1980.

17.     In June 1992, the Cyprus Debtor sold its talc-related assets to RTZ America Inc. (later known as Rio Tinto America, Inc.) ("RTZ") through a two-step process.  *First*, the Cyprus Debtor transferred its talc-related assets and liabilities (subject to minor exceptions that are not relevant), including its stock in Windsor, to a newly formed subsidiary of the Cyprus Debtor now named Imerys Talc America, Inc. (formerly Cyprus Talc Corporation)—one of the Imerys Debtors—pursuant to an Agreement of Transfer and Assumption, dated June 5, 1992.  *Second*, the Cyprus Debtor sold the stock of Cyprus Talc Corporation to RTZ pursuant to a Stock Purchase Agreement, also dated June 5, 1992 (as amended, the "1992 SPA").

18.     Between 1993 and 2007, the identity of the Cyprus Debtor's ultimate owner changed three more times.  In 1993, Cyprus Minerals Company, the Cyprus Debtor's then parent, merged with AMAX Inc. to form CAMC.  In 1999, Phelps Dodge Corporation, a holding company for various mining properties and operations, acquired CAMC.  Freeport-McMoRan Inc. purchased CAMC in 2007.  CAMC never has had any talc operations, and today it remains the direct parent of the Cyprus Debtor.

19.     In that same time frame, the Cyprus Debtor's former talc assets underwent their own changes in ownership.  Soon after the 1992 SPA, RTZ merged Cyprus Talc Corporation with RTZ's existing subsidiary, Luzenac America, Inc.  As the surviving corporation, Cyprus Talc Corporation then changed its name to Luzenac America, Inc.  In 2011, RTZ sold the stock of Luzenac America, Inc. to Imerys Minerals UK, Ltd., which then changed the name of Luzenac America, Inc. to Imerys Talc America, Inc.  As part of these transactions, Windsor (which was

- 6 -

wholly owned by Luzenac America, Inc.) became Imerys Talc Vermont, Inc.—one of the Imerys Debtors.

**D.      Talc Personal Injury Claims**

20.      The Imerys Debtors commenced the Imerys Cases in order to manage the significant potential liabilities arising from claims by plaintiffs alleging personal injuries caused by exposure to talc mined, processed and/or distributed by one or more of the Imerys Debtors (the "Imerys Talc Personal Injury Claims").  As of the Imerys Petition Date, one or more of the Imerys Debtors had been sued by approximately 15,580 claimants seeking damages for personal injuries allegedly caused by exposure to the Imerys Debtors' talc products, with the vast majority of such claims (approximately 98%) based on alleged exposure to cosmetic talc products.

21.      The Cyprus Debtor commenced the Cyprus Case in order to manage the potential liabilities arising from claims by plaintiffs alleging personal injuries caused by exposure to talc mined, processed, and/or distributed by the Cyprus Debtor or its former subsidiaries (the "Cyprus Talc Personal Injury Claims" and, together with the Imerys Talc Personal Injury Claims, the "Talc Personal Injury Claims").  As of January 29, 2021, the Cyprus Debtor had been sued by approximately 427 claimants seeking damages for personal injuries allegedly caused by exposure to talc mined, processed, and/or distributed by the Cyprus Debtor or a former subsidiary, with the majority of such claims based on alleged exposure to cosmetic talc products.

**E.      Stronghold Policies**

22.      Between 1980 to 1984, Stronghold subscribed to certain policies issued by Lloyd's of London to Amoco, that also provided coverage to the Cyprus Debtor as a then-subsidiary of

Amoco, with original total limits of $7,794,017, as identified on **Exhibit B** attached hereto (the "Policies").

**F.      Negotiation of the Assignment Agreement**

23.      Stronghold is in creditors' voluntary liquidation and, on February 15, 2021, it adopted a scheme of arrangement pursuant to Part 26 of the Companies Act 2006 under the laws of the United Kingdom (the "Stronghold Direct Scheme") with respect to persons or entities with claims under direct insurance policies issued by Stronghold (or under which Stronghold has assumed liability) (the "Stronghold Direct Insurance").  Under the Stronghold Direct Scheme, any person or entity wishing to make a claim under the Stronghold Direct Insurance was required to do so by August 10, 2021.

24.      On August 10, 2021, ITA, on behalf of the Imerys Debtors, submitted a claim in the gross amount of $7,794,017.00 in the Stronghold Direct Scheme (the "ITA Scheme Claim").

25.      The Imerys Debtors conducted extensive, good faith negotiations with Stronghold for the purpose of resolving disputes regarding the value of the ITA Scheme Claim and the scope of Stronghold's obligations to provide coverage for Talc Personal Injury Claims.

26.      The Imerys TCC and the Imerys FCR worked with the Imerys Debtors in connection with the negotiations and agreement reached with Stronghold.

27.      Likewise, the Cyprus Debtor, CAMC, the Cyprus TCC, and the Cyprus FCR conducted a review of the Polices and the negotiations between Stronghold and the Imerys Debtors.

28.      The Assignment Agreement contemplates an assignment to ITA of any right Stronghold has to seek indemnity from the Indemnitor for claims made under the Policies in the

RLF1 30845322v.1

amount of $7,794,017 (the "Assignment").  The Assignment will ultimately be assigned to the

Trust, pursuant to the Plans.  Through the Assignment Agreement, the Imerys Debtors have

resolved various issues regarding the scope and accessibility of coverage that remains available

under the Policies, as well as issues regarding recovery from an entity in creditors' voluntary

liquidation under the laws of the United Kingdom.  Without the negotiated resolution of these

issues as embodied in the Assignment Agreement, the parties faced the prospect of having to

adjudicate these disputes pursuant to the procedures of the Stronghold Direct Scheme.  The

Assignment Agreement avoids both the costs and the risk of an adverse decision with respect to

such litigation.

### SUMMARY OF THE ASSIGNMENT AGREEMENT

29.     The Assignment Agreement resolves all claims of ITA against Stronghold in

respect of the Policies.  The material terms can be summarized as follows:[5]

a.     Stronghold shall assign to ITA all of Stronghold's rights, title and interest in, and the full benefit of, any Indemnity from the Indemnitor and all rights and benefits in respect of amounts receivable or accruing to Stronghold under any Indemnity. Upon confirmation of the Plans, ITA shall assign such rights, title and interest in, and the full benefit of, any such Indemnity to the Trust pursuant to the Plans.

b.     The ITA Scheme Claim shall be fully and finally agreed at $7,794,017 and would be entitled to payment pursuant to the terms of the Stronghold Direct Scheme.

c.     ITA shall only seek to recover the agreed amount of the ITA Scheme Claim from the Indemnitor pursuant to any Indemnity assigned by Stronghold to ITA.

d.     ITA shall immediately discontinue any pursuit of the ITA Scheme Claim against Stronghold, and Stronghold is fully and finally released and forever discharged in respect of the ITA Scheme Claim.

---

[5]  This is a summary only.  Reference should be made to the Assignment Agreement, which shall supersede the terms of this summary in all instances.

RLF1 30845322v.1

e.  The Assignment Agreement shall not entitle ITA to receive any payment from Stronghold in respect of the ITA Scheme Claim, regardless of whether or not any payment is made to ITA in respect of the ITA Scheme Claim pursuant to the terms of any Indemnity assigned by Stronghold to ITA.

30.  The Imerys Debtors believe that the Assignment Agreement is fair and equitable and in the best interests of their estates.  Subject to confirmation of the Plans, the Assignment will enable the Trust to pursue an indemnity payment from the Indemnitor in the amount of Stronghold's limits under the Policies and arrange for an orderly distribution of those monies to claimants who are asserting Talc Personal Injury Claims against the Debtors, while avoiding the costs of litigating or otherwise resolving the parties' dispute over (i) the availability of any coverage for Talc Personal Injury Claims under the Policies and (ii) the value of the ITA Scheme Claim.

## BASIS FOR RELIEF

**A.  The Court Should Approve the Assignment Agreement Under Bankruptcy Rule 9019.**

31.  Bankruptcy Rule 9019 provides that "[o]n motion by the trustee [or debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Compromises are a normal part of the bankruptcy process. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). As a matter of policy, compromises and settlements are favored in order to minimize litigation and expedite administration of the estate.  In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986); accord In re Heissinger Resources Ltd., 67 B.R. 378, 383 (C.D. Ill. 1986) ("the bankruptcy court is to consider that the law favors compromise").

32.  The decision to approve a compromise is within a bankruptcy court's discretion. See In re Summit Metals, Inc., 477 F. App'x 18, 21 (3d Cir. 2012) (applying the abuse of discretion

- 10 -

standard to affirm the bankruptcy court's approval of a settlement).  A compromise should be approved where the court determines it is fair and equitable and in the best interests of the bankruptcy estate.  See In re Capmark Financial Group Inc., No. 09-13684, 2011 WL 6013698 (Bankr. D. Del. Apr. 15, 2011).

33.    In determining whether a proposed compromise is fair and equitable, neither an evidentiary hearing nor a rigid mathematical analysis is required.  Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 655 (8th Cir. 2008), cert. denied, 555 U.S. 1046 (2008); In re Am. Reserve Corp., 841 F.2d 159, 163 (7th Cir. 1987) (minitrial not required).  Rather, the court must determine whether the proposed compromise falls within the reasonable range of litigation possibilities.  Tri-State Fin., LLC v. Lovald, 525 F.3d at 654 (the court is required only to "determine that the settlement does not fall below the lowest point in the range of reasonableness"); In re Jiangbo Pharm., Inc., 520 B.R. 316, 321 (Bankr. S.D. Fla. 2014).

34.    The Court should consider the following relevant factors:  (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.  In re Martin, 91 F.3d at 393.  The Court also may apply weight to a debtor's business judgment that the proposed compromise should be approved.  See In re Wheeling-Pittsburgh Steel Corp., 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987) (concluding that the court should not interfere with or second guess the debtor's sound business judgment).

35.    In resolving ITA's coverage disputes with Stronghold, the Imerys Debtors and the Supporting Parties reviewed, among other things, the Policies, past costs, available claims data including existing talc verdict and settlement figures, and applicable law and determined that the

Assignment was an equitable compromise given the range of potential outcomes from adjudicating the coverage disputes in the Stronghold Direct Scheme.  Stronghold disputed that it had any obligations to provide coverage for Talc Personal Injury Claims under any of the Policies.  The Supporting Parties, on the other hand, maintained that: (i) the Debtors faced extensive liability for both ovarian cancer and mesothelioma talc claims that triggered Stronghold's coverage obligations and (ii) the Debtors' extensive liability would exhaust the Policies.  The Assignment Agreement eliminates the risk of receiving nothing or only a fraction of Stronghold's limits under the Policies via Stronghold's assignment to ITA, for subsequent assignment to the Trust pursuant to the Plans, of any rights to seek indemnity from the Indemnitor in the amount of $7,794,017.

36.    Given the significant risks inherent in adjudicating any dispute with Stronghold through the Stronghold Direct Scheme, the compromise provided for in the Assignment Agreement must be viewed as significant and propitious for the Imerys Debtors and their creditors.  Considering the range of reasonable outcomes of those disputes, the resolution afforded by the Assignment Agreement certainly exceeds the lowest point in the range of reasonableness.

37.    The support of the Supporting Parties for approval of the Assignment Agreement demonstrates that such approval is in the paramount interest of creditors.  See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) (court must consider "paramount interest of the creditors" when approving settlements under Rule 9019); In re Matco Elecs. Grp., Inc., 287 B.R. 68, 76-77 (Bankr. N.D.N.Y. 2002) ("[When approving a compromise,] a major consideration for the Court is the interests of the unsecured creditors.").  Together with the Imerys Debtors, the Supporting Parties believe that approval of the Assignment Agreement serves the paramount interests of creditors because, among other reasons, it (i) resolves and thereby eliminates the dispute between ITA and Stronghold over

the scope of Stronghold's obligations to provide coverage for Talc Personal Injury Claims under the Policies, (ii) increases the amount of recoverable proceeds under the Policies than had ITA resolved its dispute with Stronghold through the Stronghold Direct Scheme, and (iii) facilitates the fair and efficient distribution of proceeds to the Debtors' talc creditors.

38.     Under the circumstances of the Cyprus Case and the Imerys Cases, where the compromise to be approved concerns insurance funds that, subject to confirmation of the Plans, ultimately will be paid to the Trust and devoted to compensating Talc Personal Injury Claims, the Supporting Parties' support is significant and weighs heavily in favor of approving the Assignment Agreement.  See Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. CIVA 07-2785 FLW, 2008 WL 821088, at *8 n.8 (D.N.J. Mar. 25, 2008) (focusing on creditor view of insurance compromise that will fund asbestos trust because debtor "has no direct pecuniary interest in the amount of the insurance settlements [and] the true beneficiaries of the insurance are the asbestos claimants").

39.     The Cyprus Debtor and CAMC reviewed, among other things, the Policies, past costs, available claims data including existing talc verdict and settlement figures, and applicable law and have no objection to the Assignment Agreement.

40.     For the foregoing reasons, the Assignment Agreement satisfies the requirements of Bankruptcy Rule 9019 and the Martin factors.

**NO PRIOR REQUEST**

41.     No previous request for the relief sought herein has been made to this Court or any other court.

- 13 -

WHEREFORE, the Imerys Debtors respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit C**: approving the Assignment Agreement pursuant to Bankruptcy Rule 9019; approving the completion of performance of the other terms and conditions of the Assignment Agreement; and granting such other and further relief as may be just and proper.

*[The remainder of this page was intentionally left blank.]*

§

- 14 -

Dated: April 18, 2024
        Wilmington, Delaware

/s/ Amanda R. Steele

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Huiqi Liu (No. 6850)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
            merchant@rlf.com
            steele@rlf.com
            liu@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
            kim.posin@lw.com
            helena.tseregounis@lw.com

*Counsel for Debtors and Debtors-in-Possession*

- 15 -