# EXHIBIT A

## Settlement Agreement

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("**Agreement**") is entered into by and between Imerys Talc America, Inc. ("**ITA**"), Imerys Talc Vermont, Inc. ("**ITV**"), Imerys Talc Canada Inc. ("**ITC**"), and Imerys Talc Italy S.p.A. ("**ITI**" and collectively with ITA, ITV and ITC, the "**Imerys Debtors**"), Imerys S.A. (collectively with the Imerys Debtors, the "**Imerys Parties**"), Cyprus Mines Corporation (the "**Cyprus Debtor**" and, together with the Imerys Debtors, the "**Debtors**"), Cyprus Amax Minerals Company ("**CAMC**," and together with the Cyprus Debtor, the "**Cyprus Parties**"), the TCCs and FCRs (defined below, and collectively, the "**Claimant Fiduciaries**"), on the one hand, and Johnson & Johnson and any successor thereto, Johnson & Johnson Holdco (NA) Inc. (f/k/a Johnson & Johnson Consumer, Inc.) and any successor thereto, and LLT Management LLC (f/k/a LTL Management LLC) ("**LLT**") and any successor thereto including, if formed, Red River Talc LLC and/or Pecos River Talc LLC (collectively, "**J&J**" and, collectively with the Debtors, Imerys S.A., CAMC, and the Claimant Fiduciaries, the "**Parties**"), on the other hand. Capitalized terms appearing in this Agreement have the meanings set out in Section 1, Additional Definitions, below.

## RECITALS

WHEREAS, from 1965 to 1989, Windsor Minerals, Inc. ("**Windsor**" n/k/a ITV) was a wholly-owned subsidiary of Johnson & Johnson and supplied talc to its corporate parent;

WHEREAS Johnson & Johnson sold Windsor to the Cyprus Debtor through a Stock Purchase Agreement dated as of January 6, 1989 (the "**1989 SPA**");

WHEREAS, in 1992, the Cyprus Debtor transferred talc-related assets and liabilities, including its stock in Windsor, to a subsidiary, Cyprus Talc Corporation ("**CTC**," n/k/a ITA), pursuant to an Agreement of Transfer and Assumption, dated June 5, 1992 (the "**1992 ATA**"), and

1

the outstanding stock of CTC was purchased by RTZ America Inc. (n/k/a Rio Tinto America, Inc. ("**Rio Tinto**")) through a Stock Purchase Agreement, dated June 5, 1992 (the "**1992 SPA**");

WHEREAS, in 2011, Mircal S.A. entered into an agreement with Rio Tinto to purchase the stock of the Rio Tinto Group's talc operations, including the stock of Luzenac America, Inc. (n/k/a ITA) and Windsor (n/k/a ITV). The stock purchase agreement entitled Mircal S.A. to substitute other members of the Imerys Group[1] to acquire individual talc-related entities from the Rio Tinto Group and Mircal S.A. exercised that right to cause Imerys Minerals Holding Limited (UK) to acquire the outstanding shares of Luzenac America, Inc.;

WHEREAS, certain Debtors or their related entities supplied talc to certain J&J Corporate Parties (defined below) for use in products through several supply agreements—(i) that certain Talc Supply Agreement, between Windsor Minerals, Inc. and Johnson & Johnson Baby Products Company, a division of Johnson & Johnson Consumer Products, Inc., dated as of January 6, 1989 (the "**1989 Supply Agreement**"), as amended (the "**1996 Amendment to the 1989 Supply Agreement**"); (ii) that certain Supply Agreement between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc., dated April 15, 2001 (the "**2001 Supply Agreement**"), as amended (the "**2004 Amendment to the 2001 Supply Agreement**"); (iii) that certain Material Purchase Agreement, between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc., dated as of January 1, 2010 (the "**2010 Supply Agreement**"); and (iv) that certain Material Purchase Agreement, between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc., dated as of January 1, 2011 (the "**2011 Supply Agreement**");

---

[1] The Imerys Group is a French multinational corporation comprised of over 200 affiliated entities directly and indirectly owned by non-debtor affiliate Imerys S.A.

WHEREAS, J&J asserts that on October 12, 2021, Johnson & Johnson Consumer, Inc. ("**Old JJCI**") implemented a corporate restructuring pursuant to which Old JJCI ceased to exist and two new entities were created: (a) Johnson & Johnson Consumer, Inc. ("**New JJCI**"), now known as Johnson & Johnson Holdco (NA) Inc., and (b) LLT. J&J further asserts that, as a result of such corporate restructuring, LTL Management LLC (which subsequently changed its name to LLT Management LLC) was allocated Old JJCI's liabilities for current and future talc Claims (as defined below) and certain assets;

WHEREAS, J&J represents that the total limits of solvent remaining primary and excess insurance policies issued to J&J by third-party insurers that provide coverage for talc personal injury claims are approximately $1.5 billion;

WHEREAS, the Parties assert that some or all of the 1989 SPA, the 1989 Supply Agreement, the 1996 Amendment to the 1989 Supply Agreement, the 2001 Supply Agreement, the 2004 Amendment to the 2001 Supply Agreement, the 2010 Supply Agreement, and the 2011 Supply Agreement (collectively, the "**J&J Agreements**") contain various indemnification provisions and the parties to, and third-party beneficiaries of, those agreements may have rights and Claims against each other, including, contractual indemnification, contribution, subrogation, equitable indemnification and other Claims, including under common law;

WHEREAS, numerous talc personal injury claims have been brought against one or more of the Parties seeking damages and other relief for injury allegedly caused by exposure to talc, and the Parties expect that such talc personal injury claims will continue to be made in the future;

WHEREAS, disputes have arisen as to (i) the existence and scope of any obligation of the J&J Corporate Parties to indemnify the Debtors and/or the Debtor Corporate Parties under the J&J Agreements, (ii) the existence and scope of any obligation of certain Debtors and/or Debtor

Corporate Parties to indemnify the J&J Corporate Parties under the J&J Agreements, (iii) Claims the Parties may have against each other relating to the J&J Agreements or otherwise related to the supply of talc by the Debtors to any J&J Corporate Party, and (iv) other Claims the Parties may have against each other arising out of or relating to the Talc Personal Injury Claims, including Estate Causes of Action Against J&J and contribution, subrogation, equitable indemnification, and other Claims, including under common law;

WHEREAS, on February 13, 2019, ITA, ITV, and ITC each filed a voluntary petition for relief with the Bankruptcy Court under chapter 11 of the Bankruptcy Code, commencing the chapter 11 cases of ITA, ITV and ITC (jointly administered at Case No. 19-10289 (LSS)) (such cases, including to the extent ITI commences its own chapter 11 case, the "**Imerys Chapter 11 Cases**");[2]

WHEREAS, on February 11, 2021, the Cyprus Debtor filed a voluntary petition for relief with the Bankruptcy Court under chapter 11 of the Bankruptcy Code, commencing its chapter 11 case (Case No. 21-10398 (LSS)) (such case, the "**Cyprus Chapter 11 Case**" and, together with the Imerys Chapter 11 Cases, the "**Chapter 11 Cases**");[3]

WHEREAS, on January 9, 2020, J&J filed proofs of claims in the Imerys Chapter 11 Cases (POC #915, #922, #926) (the "**J&J Proofs of Claim**"), asserting claims for indemnification, contribution, and otherwise;

WHEREAS, on June 15, 2020, the Cyprus Parties commenced Adversary Case No. 20-50626-LSS in the Bankruptcy Court against ITA, ITV, Johnson & Johnson, and Old JJCI seeking

---

[2] Unless otherwise noted, citations and references to documents filed in the Imerys Chapter 11 Cases are to filings made in the lead Imerys Chapter 11 Case and adhere to the following format: Imerys D.I. [__].

[3] Unless otherwise noted, citations and references to documents filed in the Cyprus Chapter 11 Case adhere to the following format: Cyprus D.I. [__].

declaratory judgments regarding Johnson & Johnson and Old JJCI's obligations under certain of the J&J Agreements (the "**Cyprus Adversary Proceeding**");

WHEREAS, J&J sought to dismiss the Cyprus Adversary Proceeding by filing (i) on July 29, 2020, *Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Motion to Dismiss the Claims against Them for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Abstain, or to Sever and Transfer* (Cyprus Adv. Pro. D.I. 9) and an opening brief in support of such motion (Cyprus Adv. Pro. D.I. 10) and (ii) on September 16, 2020, *Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Reply in Further Support of Its Motion to Dismiss the Claims Against Them for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Abstain, or to Sever and Transfer* (Cyprus Adv. Pro. D.I. 23);

WHEREAS, the Cyprus Parties opposed J&J's motion to dismiss the Cyprus Adversary Proceeding by filing, on September 1, 2020, the *Cyprus Mines Corporation's and Cyprus Amax Minerals Company's Opposition to Johnson & Johnson and Johnson & Johnson Consumer Inc.'s Motion to Dismiss* (Cyprus Adv. Pro. D.I. 20);

WHEREAS, on January 27, 2021, the Bankruptcy Court authorized the Imerys Debtors to solicit votes on the *Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (Imerys D.I. 2852) (the "**2021 Imerys Plan**");

WHEREAS, on March 2, 2021, J&J filed *Johnson & Johnson's Objection and Reservation of Rights Regarding Debtors' Notice of Assumption of Certain Johnson & Johnson Contracts* in the Imerys Chapter 11 Cases (Imerys D.I. 3022);

WHEREAS, J&J opposed the 2021 Imerys Plan, including the proposed trust distribution procedures (the "**2021 TDP**"), and sought both extensive discovery on and clarification of the

Imerys Debtors' process, substance, and treatment of J&J under the 2021 Imerys Plan and 2021 TDP;

WHEREAS, the Imerys Debtors disagreed with J&J's objections to the 2021 Imerys Plan including the 2021 TDP;

WHEREAS, on July 27, 2021, ITA and ITV commenced Adversary Case No. 21-51006-LSS in the Bankruptcy Court against Johnson & Johnson and Old JJCI seeking declaratory judgments regarding Johnson & Johnson and Old JJCI's obligations under certain J&J Agreements (the "**Imerys Adversary Proceeding**" and, together with the Cyprus Adversary Proceeding, the "**Adversary Proceedings**");

WHEREAS, on September 21, 2021, J&J filed a motion to dismiss the Imerys Adversary Proceeding (Imerys Adv. Pro. D.I. 56) and an opening brief in support of such motion (Imerys Adv. Pro. D.I. 57);

WHEREAS, as of the Execution Date, the Bankruptcy Court has not yet ruled on the motions to dismiss filed in either of the Adversary Proceedings;

WHEREAS, on October 13, 2021, the Court issued an opinion in the Imerys Chapter 11 Cases excluding 15,719 votes (Imerys D.I. 4239), and also on October 13, 2021, the Imerys Debtors filed a notice cancelling their confirmation hearing and suspending all confirmation deadlines (Imerys D.I. 4243);

WHEREAS, on January 31, 2024, the Imerys Debtors and the Cyprus Debtor filed the Plans, new disclosure statements, and the *Ivory America/Cyprus Personal Injury Trust Distribution Procedures* (Imerys D.I. 6051-1; Cyprus D.I. 2132-2) (the "**2024 TDP**");

WHEREAS, J&J has stated that it opposes the Plans, including the 2024 TDP, and intends to object to their confirmation and approval absent the settlement embodied in this Agreement;

WHEREAS, the Imerys Parties have asserted they are additional insureds with respect to J&J Policies (as defined herein) for a period of time, and J&J believes that the Imerys Parties may be entitled, at most, to a *de minimis* percentage of the proceeds of such J&J Policies;

WHEREAS, the Imerys Parties, the Cyprus Parties, and the Claimant Fiduciaries, on the one hand, and the J&J Corporate Parties, on the other hand, wish to fully and finally resolve the disputes described above in these recitals, and to provide for the other consideration, promises, releases, and covenants set forth in this Agreement;

WHEREAS, in furtherance of the compromise and resolution of such disputes, the Debtors have agreed to sell, and J&J has agreed to purchase, all rights and claims against the J&J Corporate Parties, or any of them, under the J&J Agreements and in respect of the Debtor J&J Released Claims (defined below) pursuant to section 363 of the Bankruptcy Code, and to compromise and settle any and all such claims and disputes pursuant to Bankruptcy Rule 9019, subject to the terms and conditions set forth in this Agreement;

WHEREAS, the Claimant Fiduciaries have agreed to support such settlement, subject to the terms and conditions set forth in this Agreement;

WHEREAS, J&J is agreeing not to pursue its objections to the Plans, including the 2024 TDP, as each is revised to be consistent with this Agreement, in reliance on this Agreement and the compromises set forth herein, including that the 2024 TDP will not be used as a basis for the Debtors or the Talc Personal Injury Trust to assert claims against the J&J Corporate Parties, including, without limitation, under the J&J Agreements or otherwise; and

WHEREAS, the Imerys Debtors, the Cyprus Debtors, and each of the Claimant Fiduciaries believes the settlement reflected in this Agreement is in the best interests of the Debtors' estates and claimants.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the other mutual considerations, promises, releases, and covenants set forth below, the sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      **ADDITIONAL DEFINITIONS**

The following additional definitions apply to this Agreement.  The singular form of a word includes the plural and vice versa; the disjunctive "or" is not exclusive and thus includes the conjunctive "and"; all pronouns apply to the male, female, and neutral genders; the word "any" includes the word "all" and vice versa; the words "includes" and "including" are without limitation; and the past tense of a word includes the present tense and vice versa.

1.1.    "**Bankruptcy Code**" shall refer to title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. in effect on the Execution Date.

1.2.    "**Bankruptcy Court**" shall refer to the United States Bankruptcy Court for the District of Delaware.

1.3.    "**Bankruptcy Rules**" shall refer to Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any local rules of the Bankruptcy Court in effect on the Execution Date.

1.4.    "**Business Day**" shall refer to any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, NY are authorized or required by law or executive order to close.

1.5.    "**Claim**," when capitalized, shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.

1.6.    "**Closing Date**" means the date on or after the Trigger Date, on which the Designated Accounts (if prior to the Plans' Effective Date) or the Talc Personal Injury Trust (if

after the Plans' Effective Date) receives the J&J Initial Payment, $167,000,000 of the J&J Insurance Payments, and any additional portion of the J&J Insurance Payments and Home Proceeds recovered prior to the Trigger Date.

1.7. "**Cyprus Alternative Account**" means a bank account of the Cyprus Debtor other than the Cyprus Default Account or, by agreement of the Cyprus Parties, an escrow account or "qualified settlement fund" (within the meaning of Treasury Regulations Section 1.468B-1) with terms agreed between the Cyprus Parties and reasonably acceptable to the TCC and FCR appointed in the Cyprus Chapter 11 Case.

1.8. "**Cyprus Default Account**" means the bank account of the Cyprus Debtor designated on Schedule IV.

1.9. "**Cyprus Designated Account**" means (i) if, on or before the date that is two (2) Business Days after the Trigger Date, the Cyprus Debtor provides J&J a Form W-9 containing the applicable tax identification number and bank account information sufficient to make the required wire transfer(s) to a Cyprus Alternative Account, such Cyprus Alternative Account, or (ii) if the Cyprus Debtor fails to provide such information on or before the date that is two (2) Business Days after the Trigger Date, the Cyprus Default Account. In the event the Cyprus Designated Account is in the form of an escrow account or qualified settlement fund, the terms of any agreement governing such escrow account or qualified settlement fund shall provide that, in the event the Plans do not become effective, including if one of the Plans is withdrawn, the Bankruptcy Court or the District Court denies confirmation, or any confirmation order is reversed or vacated, the amounts held in or payable to such account or fund will revert to and be retained by the Cyprus Debtor.

1.10. "**Cyprus Talc Insurance Policy**" shall have the meaning set forth in the Plans.

1.11.    "**Debtor Corporate Parties**" means Imerys S.A. and CAMC and each of their past and present parents, subsidiaries and affiliates, and, in their capacities as such, all of their respective agents and representatives, direct and indirect equity holders, and the successors and assigns of each.  For the avoidance of doubt, Debtor Corporate Parties includes each of the entities listed on Schedule I and Schedule II, and excludes (x) the Debtors and (y) the J&J Corporate Parties and their affiliates.

1.12.    "**Debtor J&J Released Claims**" shall have the meaning ascribed to such term in Section 6.1 hereof.

1.13.    "**Debtor Released Claims**" shall have the meaning ascribed to such term in Section 6.4 hereof.

1.14.    "**Debtor Released Parties**" shall have the meaning ascribed to such term in Section 6.4 hereof.

1.15.    "**Debtor Releasing Parties**" shall have the meaning ascribed to such term in Section 6.1 hereof.

1.16.    "**Debtors' Policies**" mean any Cyprus Talc Insurance Policy, except, for the purposes of this Agreement, Cyprus Talc Insurance Policy does not include any J&J Policies.

1.17.    "**Designated Accounts**" means each of the Cyprus Designated Account and the Imerys Designated Account.

1.18.    "**District Court**" shall refer to the United States District Court for the District of Delaware.

1.19.    "**Escrow Account**" shall have the meaning ascribed to such term in Section 5.5 hereof.

1.20.    "**Escrow Agent**" shall have the meaning ascribed to such term in Section 5.5 hereof.

1.21.    "**Escrow Agreement**" shall have the meaning ascribed to such term in Section 5.5 hereof.

1.22.    "**Estate**" means, as to each Debtor, the estate created in its Chapter 11 Case under section 541 of the Bankruptcy Code.

1.23.    "**Estate Causes of Action Against J&J**" shall refer to any and all of the actions, claims, rights, remedies, defenses, counterclaims, suits, and causes of action owned or held, or assertable by or on behalf of a Debtor or its Estate (including, without limitation, claims assertable by the TCCs or FCRs, or by any other creditors, on behalf of any Debtor or its Estate), whether or not asserted, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction against any J&J Corporate Party.

1.24.    "**Execution Date**" means the earliest date on which this Agreement has been signed by all of the Parties.

1.25.    "**FCRs**" shall have the meanings set forth in the Plans.

1.26.    "**Final Order**" shall refer to, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

1.27.    "**Home Proceeds**" means all payments made by The Home Insurance Company in Liquidation's ("**Home**") estate with respect to the full amount of the Home allowance for proofs of claims made by ITV and J&J under any policies issued by The Home Insurance Company and/or its affiliates, which assert claims of $111,381,494, whether an initial payment or any subsequent payments relating to such allowance.  For the avoidance of doubt, Home Proceeds refers to the claims and proceeds referenced in the April 3, 2024 letter on behalf of the New Hampshire Insurance Commissioner to J&J and ITV.

1.28.    "**Imerys Alternative Account**" means a bank account of an Imerys Debtor other than the Imerys Default Account or, by agreement of the Imerys Parties, an escrow account or "qualified settlement fund" (within the meaning of Treasury Regulations Section 1.468B-1) with terms agreed between the Imerys Parties and reasonably acceptable to the TCC and FCR appointed in the Imerys Chapter 11 Cases.

1.29.    "**Imerys Default Account**" means the bank account of an Imerys Debtor designated in Schedule IV.

1.30.    "**Imerys Designated Account**" means (i) if on or before the date that is two (2) Business Days after the Trigger Date the Imerys Debtors provide J&J a Form W-9 containing the applicable tax identification number and bank account information sufficient to make the required wire transfer(s) to an Imerys Alternative Account, such Imerys Alternative Account, or (ii) if the Imerys Debtors fail to provide such information on or before the date that is two (2) Business Days after the Trigger Date, the Imerys Default Account.  In the event the Imerys Designated Account is in the form of an escrow account or qualified settlement fund, the terms of any agreement governing such escrow account or qualified settlement fund shall provide that, in the event the Plans do not become effective, including if one of the Plans is withdrawn, the Bankruptcy Court

or the District Court denies confirmation, or any confirmation order is reversed or vacated, the amounts held in or payable to such account or fund will revert to and be retained by the Imerys Debtors.

1.31.   "**Indirect Talc Personal Injury Claim**" shall have the meaning set forth in the Plans as of the Execution Date.

1.32.   "**Insurance Recoveries**" means any funds received by any J&J Corporate Party arising out of or relating to coverage under the J&J Policies for talc claims against J&J, including the proceeds of any settlement agreements with any insurance carrier, any insurer's reimbursement of defense costs, payments, settlements, or judgments, and the proceeds of any judgment against any insurer or insurers.  Insurance Recoveries include any settlement or reimbursement received on or after April 29, 2024 relating to talc claims against J&J, including approximately $167,000,000 J&J believes it will recover, as referenced in Section 5.2 below.  For the avoidance of doubt, Insurance Recoveries do not include (i) amounts recovered or received by J&J from Middlesex Assurance Company Limited ("**Middlesex**") or in connection with any insurance policy issued by Middlesex to another J&J Corporate Party, including defense cost recoveries paid to J&J Corporate Parties by Middlesex; and (ii) the Home Proceeds.

1.33.   "**Insurance Reporting Termination Date**" means the date on which the aggregate amount of two-hundred and eighty million U.S. dollars ($280,000,000) on account of the J&J Insurance Payments has been paid to the Designated Accounts or the Talc Personal Injury Trust (as applicable).

1.34.   "**J&J Buyback**" means the acquisition by J&J, pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, of the rights of the Debtors and their Estates in the J&J Agreements and any and all of the Debtor J&J Released Claims held by the Debtors and/or their

Estates, pursuant to the J&J Settlement Order, free and clear of any and all rights, claims, or interests of any other entity, including subrogation claims, except as provided in Section 3.1.

1.35. "**J&J Corporate Parties**" shall refer to J&J, Johnson & Johnson Baby Products Company, Johnson & Johnson Consumer Inc., Johnson & Johnson Consumer Products, Inc., and each of their past and present parents, subsidiaries and affiliates, and, in their capacities as such, all of their respective agents and representatives, direct and indirect equity holders, and the successors and assigns of each. For the avoidance of doubt, the J&J Corporate Parties includes LLT (and any successor thereto, including, if formed, Red River Talc LLC and/or Pecos River Talc LLC); Kenvue, Inc.; Janssen Pharmaceuticals, Inc.; Johnson & Johnson Holdco (NA) Inc.; and Middlesex, and the successors and assigns of each, and each of the entities listed on Schedule III, and the successors and assigns of each, and excludes the Debtors and the Debtor Corporate Parties.

1.36. "**J&J Initial Payment**" means two hundred twenty-five million U.S. dollars ($225,000,000).

1.37. "**J&J Insurance Payments**" means the first two hundred million U.S. dollars ($200,000,000) of any Insurance Recoveries, and fifty-percent (50%) of the next one-hundred sixty million U.S. dollars ($160,000,000), to be paid by J&J from Insurance Recoveries in accordance with Section 5.6 (if before the Trigger Date) or Section 5.10 (if on or after the Trigger Date); provided, however, (i) J&J shall pay, or cause to be paid, one hundred and sixty-seven million U.S. dollars ($167,000,000), in immediately available funds in U.S. dollars via wire transfer, to the Escrow Account within five (5) Business Days following the later to occur of (a) the entry by the Bankruptcy Court of the J&J Settlement Order and (b) the opening of the Escrow Account, and (ii) if the full two hundred and eighty million U.S. dollars ($280,000,000) has not been paid by

J&J before December 31, 2025, J&J shall pay the unpaid balance thereof using other sources on December 31, 2025, in accordance with the payment instructions in Section 4.1.

1.38. "**J&J Payment Obligations**" shall have the meaning ascribed to such term in Section 4.2 hereof.

1.39. "**J&J Policies**" means any general liability policy or other policy that previously did, does or may provide coverage for talc claims that was issued to any one or more of the J&J Corporate Parties from 1954 through 1989. For the avoidance of doubt, J&J Policies do not include the Debtors' Policies.

1.40. "**J&J Related Bankruptcy Case**" means any chapter 11 case or other bankruptcy or insolvency proceeding of any J&J Corporate Party (including, if formed, Red River Talc LLC and Pecos River Talc LLC).

1.41. "**J&J Releasing Parties**" shall have the meaning ascribed to such term in Section 6.4 hereof.

1.42. "**J&J Settlement Motion**" shall refer to a motion filed by the Imerys Debtors and the Cyprus Debtor in their respective Chapter 11 Cases supported by each of the Parties. Such motion shall be in form and substance acceptable to each of the Parties and shall seek (i) approval of this Agreement and the J&J Buyback pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and (ii) entry of the J&J Settlement Order.

1.43. "**J&J Settlement Order**" shall refer to an order issued by the Bankruptcy Court in form and substance acceptable to each of the Parties, approving this Agreement, the J&J Buyback, and the J&J Settlement Motion pursuant to sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 and containing the following provisions: (i) the J&J Buyback (a) represents a sound exercise of the Debtors' business judgment and is in the best interest of the Debtors and

their Estates, and otherwise complies with section 363 of the Bankruptcy Code; (b) meets the requirements for a sale of the rights of the Debtors and their Estates under the J&J Agreements and the Debtor J&J Released Claims held by the Debtors and/or their Estates, free and clear of any interests and claims of third parties in such property, including any claim of any person or entity on account of, based upon, directly or indirectly arising from, or in any way relating to any alleged right, claim, or interest of the Debtors and/or their Estates, or any of them, in the J&J Agreements and/or the Debtor J&J Released Claims, including subrogation claims (except as provided in Section 6.1), pursuant to section 363(f) of the Bankruptcy Code; and (c) constitutes a purchase by J&J in good faith pursuant to section 363(m) of the Bankruptcy Code, rendering the provisions of section 363(m) applicable; (ii) the settlement and mutual releases contained in this Agreement are in the best interests of the Estates; (iii) the Agreement and the J&J Buyback were negotiated at arm's length, without collusion or fraud, and in good faith; (iv) the total consideration provided by the J&J Corporate Parties constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law; (v) this Agreement and the J&J Buyback are not being entered into and consummated for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law; (vi) approval of the irrevocable and unconditional mutual releases as set forth herein, subject to the conditions precedent and subsequent set forth in this Agreement, including the making of the J&J Initial Payment and J&J's obligations with respect to the J&J Insurance Payments and Home Proceeds; (vii) J&J would not have entered into this Agreement and would not consummate the J&J Buyback if the J&J

Agreements and Debtor J&J Released Claims held by the Debtors and/or their Estates were not free and clear of all liens, claims and encumbrances, including subrogation claims (except as provided for in Section 6.1); (viii) the Debtors are authorized to sell (a) their rights and claims against the J&J Corporate Parties under the J&J Agreements and under common law and (b) the Debtor J&J Released Claims, held by the Debtors and/or their Estates free and clear of all liens, claims, and encumbrances, including subrogation claims (except as provided for in Section 6.1), because, with respect to each person or entity asserting a lien, claim or encumbrance, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied; (ix) except as provided for in Section 6.1, each person or entity asserting a lien, claim, or encumbrance in the J&J Agreements and/or Debtor J&J Released Claims held by the Debtors and/or their Estates (a) has consented to the J&J Buyback, (b) could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest, and/or (c) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code; (x) an injunction, consistent with Section 6.3 of this Agreement, enjoining the Debtors, the Reorganized Debtors, the Debtor Corporate Parties, and the Talc Personal Injury Trust from commencing, prosecuting, or otherwise pursuing any insurance coverage for J&J Talc Claims; and (xi) the J&J Settlement Order constitutes a final order within the meaning of 28 U.S.C. § 158(a), and notwithstanding Bankruptcy Rules 6004(h), no just reason exists for delay in implementation of the J&J Settlement Order and, subject to the conditions set forth therein, the J&J Settlement Order shall be immediately effective and enforceable upon its entry.

1.44. "**J&J Talc Claim**" means (i) any Talc Personal Injury Claim (including any Indirect Talc Personal Injury Claim) that alleges bodily injury exclusively due to talc or a talc-containing product mined, manufactured, processed, sold, marketed, and/or distributed by a J&J

Corporate Party or (ii) for any Talc Personal Injury Claim (including any Indirect Talc Personal Injury Claim) that alleges bodily injury due to a product mined, manufactured, processed, sold, marketed, and/or distributed by more than one entity (in addition to the Debtors), that portion of the claim that alleges bodily injury due to talc or a talc-containing product mined, manufactured, processed, sold, marketed, and/or distributed by Debtors and a J&J Corporate Party. For the avoidance of doubt, (i) any Talc Personal Injury Claim (including any Indirect Talc Personal Injury Claim) that alleges bodily injury exclusively due to any talc or a talc-containing product mined, manufactured, processed, sold, marketed, and/or distributed by entities that are not J&J Corporate Parties are not J&J Talc Claims and (ii) for any Talc Personal Injury Claim (including any Indirect Talc Personal Injury Claim) that alleges bodily injury due to any talc or a talc-containing product mined, manufactured, processed, sold, marketed, and/or distributed by more than one entity (in addition to the Debtors), that portion of the claim that alleges bodily injury due to a talc or a talc-containing product mined, manufactured, processed, sold, marketed, and/or distributed entirely by entities (other than the Debtors or in addition to the Debtors) that are not J&J Corporate Parties is not a J&J Talc Claim.

1.45. "**Non-Debtor J&J Released Claims**" shall have the meaning ascribed to such term in Section 6.2 hereof.

1.46. "**Non-Debtor Releasing Parties**" shall have the meaning ascribed to such term in Section 6.2 hereof.

1.47. "**Person**" shall refer to an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

1.48.   "**Plans**" means the *First Amended Plan of Reorganization of Cyprus Mines Corporation Under Chapter 11 of the Bankruptcy Code*, dated January 31, 2024 (Cyprus D.I. 2132) and the *Second Joint Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (Imerys D.I. 6051), as the same may be amended or modified from time to time; provided, however, where definitions in this Agreement state "Plans as of the Execution Date," such definitions shall not include amendments or modifications to such terms that are inconsistent with this Agreement.

1.49.   "**Plans' Effective Date**" means the date on which the Talc Personal Injury Trust is created.

1.50.   "**Protected Parties**" shall have the meaning set forth in the Plans.

1.51.   "**Reorganized Debtors**" shall have the meaning set forth in the Plans.

1.52.   "**Settling Talc Insurance Company**" shall have the meaning set forth in the Plans as of the Execution Date.

1.53.   "**Talc Insurance Company**" shall have the meaning set forth in the Plans as of the Execution Date.

1.54.   "**Talc Personal Injury Claim**" shall have the meaning set forth in the Plans as of the Execution Date.

1.55.   "**Talc Personal Injury Trust**" shall have the meaning set forth in the Plans.

1.56.   "**Tort Claimants' Committees**" or "**TCCs**" shall refer to the official committees of tort claimants appointed in each of the Chapter 11 Cases, as such committees may be reconstituted from time to time.

1.57.   "**Trust Distribution Procedures**" shall have the meaning set forth in the Plans.

1.58.   "**Trigger Date**" shall have the meaning ascribed to such term in Section 2 of this Agreement.

1.59.   "**Voting Affirmation Date**" means the date after the Voting Certification has been filed with the Bankruptcy Court in the Chapter 11 Cases evidencing requisite claimant approval of the Plans on which either (i) the Voting Objection Deadline has expired without (a) any Voting Objection being filed or (b) Voting Objection(s) being filed before expiration of the Voting Objection Deadline that, in the reasonable discretion of each of the Imerys Parties, Cyprus Parties and the Claimant Fiduciaries, if granted, individually or collectively could result in one or both of the Plans not having received requisite claimant approval or (ii) if one or more Voting Objection(s) are filed before expiration of the Voting Objection Deadline that, in the reasonable discretion of each of the Imerys Parties, Cyprus Parties and the Claimant Fiduciaries, if granted, individually or collectively could result in one or both of the Plans not having received requisite claimant approval, such Voting Objection(s) are resolved by the applicable parties or the Bankruptcy Court in a manner that confirms both of the Plans have received requisite claimant approval.

1.60.   "**Voting Certification**" shall have the meaning set forth in the Debtors' joint solicitation procedures motion, as the same may be amended or modified.

1.61.   "**Voting Objection**" means (i) a request that the Bankruptcy Court designate an entity on the basis that its acceptance or rejection of either Plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code and (ii) any other objection to the Voting Certification or to any one or more vote(s) accepting or rejecting either Plan.

1.62.   "**Voting Objection Deadline**" means the last day upon which any party in interest may file a Voting Objection.

## 2. EFFECTIVE DATE OF AGREEMENT AND CONDITIONS PRECEDENT

2.1.    This Agreement shall become binding on all Parties on the Execution Date, subject to entry by the Bankruptcy Court of the J&J Settlement Order.

2.2.    The "**Trigger Date**" shall be the earliest date on which all of the following conditions precedent have occurred:

2.2.1.    The Imerys Debtors and the Cyprus Debtor each have filed the J&J Settlement Motion in their respective Chapter 11 Cases.

2.2.2.    The Bankruptcy Court has entered the J&J Settlement Order.

2.2.3.    The Voting Affirmation Date.

2.3.    Once the Talc Personal Injury Trust is established, the Talc Personal Injury Trust shall provide J&J with a Form W-9 containing the tax identification number and bank account information sufficient to make the required wire transfer(s) to the Talc Personal Injury Trust. If the Talc Personal Injury Trust has been established and the Talc Personal Injury Trust has not provided such information concerning its accounts to J&J within two (2) Business Days prior to the date that any payment is required to be made to the Talc Personal Injury Trust, then J&J shall make the applicable payments to the Designated Accounts in satisfaction of its payment obligations to the Talc Personal Injury Trust until the Talc Personal Injury Trust provides such information, after which time J&J shall transfer any additional payments to the Talc Personal Injury Trust.

## 3. J&J BUYBACK

3.1.    The J&J Settlement Motion shall constitute a request by the Debtors for the Bankruptcy Court to approve the J&J Buyback, which shall be effective as of the Closing Date and consistent with the terms as set out in this Agreement, pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, free and clear of all interests and claims, including any claim of any person or entity against the J&J Corporate Parties, or any of them, on account of, based upon,

directly or indirectly arising from, or in any way relating to any alleged right, claim, or interest of the Debtors, or any of them, in the J&J Agreements or Debtor J&J Released Claims, including subrogation claims (except as provided for in section 6.1), and to find that J&J is a good-faith purchaser pursuant to section 363(m) of the Bankruptcy Code and approve the mutual releases and other compromises set forth in this Agreement pursuant to Bankruptcy Rule 9019. For the avoidance of doubt, and notwithstanding the foregoing, the J&J Buyback does not include, and J&J is not purchasing, any rights or interests in Claims against the J&J Corporate Parties arising out of or in connection with pre-petition payments to any of the Imerys Parties or Cyprus Parties, by way of subrogation or otherwise, asserted by Truck Insurance Exchange ("**Truck**"), any insurer currently or previously managed by Resolute Management, Inc. ("**RMI Managed Insurers**"), including National Union Fire Insurance Company of Pittsburgh, PA ("**National Union**"), or any other insurer that has made pre-petition payments to any of the Imerys Parties or Cyprus Parties.

4. **J&J INITIAL PAYMENT; JOINT AND SEVERAL LIABILITY**

4.1. On or prior to the date that is five (5) Business Days after the Trigger Date, J&J shall pay, or cause to be paid, the J&J Initial Payment, in immediately available funds in U.S. dollars via wire transfer(s) to, if the Talc Personal Injury Trust has not been established, the Designated Accounts, and, if the Talc Personal Injury Trust has been established, the account of the Talc Personal Injury Trust or the Designated Accounts, as applicable. Any payments to the Designated Accounts under this provision shall be divided evenly (50%/50%) between the Cyprus Designated Account and the Imerys Designated Account.

4.2. Each of Johnson & Johnson, and any successor thereto, and LLT, and any successor thereto, are jointly and severally liable for payment of the J&J Initial Payment, and the J&J Insurance Payments and any Home Proceeds received by any J&J Corporate Party as set forth in Section 5 below (the "**J&J Payment Obligations**"), and the commencement of a proceeding under

the Bankruptcy Code by one (including, if formed, Red River Talc LLC and/or Pecos River Talc LLC) will not operate as a stay of, or otherwise affect, the obligation of any of the others to make the J&J Payment Obligations. If the payment of any of the J&J Payment Obligations is subsequently avoided for any reason, including through the exercise of a trustee's avoidance powers under the Bankruptcy Code, any of the Parties jointly and severally liable for the J&J Payment Obligations shall irrevocably and indefeasibly pay, or cause to be paid, the J&J Payment Obligations, via wire transfer(s), to the entity(ies) as set forth in Section 4.1 hereof within five (5) Business Days from the date of written notice of the avoidance of any J&J Payment Obligation.

4.3.    Johnson & Johnson hereby agrees not to assert and waives and releases whatever claims it may have against LLT (or any successor thereto, including, if formed, Red River Talc LLC and/or Pecos River Talc LLC) for contractual, equitable, or common law indemnification, contribution, or reimbursement on account of it satisfying, whether in whole or in part, any J&J Payment Obligations as provided for hereunder, but solely if, and to the extent, such claim is the basis for an assertion by Johnson & Johnson or any other J&J Corporate Party that the Debtors are stayed or otherwise enjoined from enforcing their respective rights under this Agreement against Johnson & Johnson as a result of a J&J Related Bankruptcy Case. For the avoidance of doubt, Johnson & Johnson is not waiving or releasing such claims, or agreeing not to assert them, for any other purpose or to any other extent.

4.4.    J&J's payment obligations under this Agreement run solely to the Talc Personal Injury Trust or the Debtors, as set forth in Sections 4 and 5. In no event shall any J&J entity or J&J Corporate Party pay or be obligated to pay directly any claimant or any representative of any claimant, on account of any obligation under this Agreement.

**5. J&J INSURANCE PAYMENTS AND HOME PROCEEDS**

5.1.     J&J has sole discretion over pursuit and settlement of coverage under the J&J Policies, and the Debtor Releasing Parties shall have none, and J&J's method of pursuit and settlement of coverage shall not be a breach of J&J's obligations under this Agreement; provided that J&J shall diligently pursue Insurance Recoveries, employ best efforts to recover all potentially available insurance for talc claims, and may not abandon efforts to recover for talc claims under the J&J Policies, until the Insurance Reporting Termination Date.  J&J's discretion shall include strategic decisions concerning the presentation of claims and arguments in support thereof and resolution of those claims under the J&J Policies.  The Debtors and the Talc Personal Injury Trust shall reasonably cooperate with J&J in J&J's pursuit of Insurance Recoveries, at J&J's request and at J&J's sole expense.  If J&J fails to diligently pursue Insurance Recoveries, the Parties agree that such failure will be a breach of this Agreement.  In no event shall J&J be required to contribute any proceeds received from Middlesex or under Middlesex policies.

5.2.     J&J represents it has entered settlement agreements to recover approximately $167,000,000 of insurance proceeds on or about the time this Agreement is presented for approval, and such a recovery shall be included in Insurance Recoveries, as defined in this Agreement.  For the avoidance of doubt, J&J's obligation to pay J&J Insurance Payments pursuant to this Agreement terminates upon the Insurance Reporting Termination Date.

5.3.     Upon the occurrence of the Trigger Date, until the Insurance Reporting Termination Date, within five (5) Business Days after any receipt of Insurance Recoveries or Home Proceeds by any J&J Corporate Party, J&J shall deliver to the Claimant Fiduciaries, the Imerys Parties, and the Cyprus Parties (if prior to the Plans' Effective Date) or the Talc Personal Injury Trust (if after the Plans' Effective Date) a statement setting forth the date and source(s) of each such receipt of

Insurance Recoveries or Home Proceeds and the aggregate amount of the J&J Insurance Payments paid to date pursuant to this Agreement.

5.4.    Effective upon the Closing Date, J&J irrevocably assigns and transfers all of its rights with respect to the Home Proceeds to the Debtors, as joint owners of an undivided interest (if prior to the Plans' Effective Date) or the Talc Personal Injury Trust (if after the Plans' Effective Date) without need for further action, and J&J will work cooperatively with the Debtors, the Claimant Fiduciaries, and/or the Talc Personal Injury Trust in any efforts necessary to effectuate this assignment and recovery of the Home Proceeds, including by notifying the New Hampshire Insurance Commissioner.

5.5.    The Parties shall cooperate in good faith to open an escrow account (the "**Escrow Account**") within thirty (30) days from the Execution Date.  The Escrow Account shall be held by an escrow agent (the "**Escrow Agent**") pursuant to an escrow agreement (the "**Escrow Agreement**").  The identity of the Escrow Agent and the terms of the Escrow Agreement shall be consistent with the terms of this Agreement and subject to approval by the Parties in each Party's sole discretion.  The Escrow Account may hold cash or U.S. Treasury securities.  Any interest or other income earned on funds in the Escrow Account shall be redeposited into the Escrow Account.

5.6.    Prior to the Trigger Date, within five (5) Business Days after receipt of any portion of any J&J Insurance Payments or Home Proceeds by any J&J Corporate Party, J&J shall pay, or cause to be paid, the J&J Insurance Payments or Home Proceeds received, in immediately available funds in U.S. dollars via wire transfer, to the Escrow Account.

5.7.    After occurrence of the Trigger Date, and after ten (10) Business Days prior written notice from the Debtors to J&J, the Debtors shall instruct the Escrow Agent to irrevocably and indefeasibly pay, or cause to be paid, the balance of the Escrow Account, in immediately available

funds in U.S. dollars via wire transfer(s), as follows: (i) if after the Plans' Effective Date, to the Talc Personal Injury Trust; and (ii) if prior to the Plans' Effective Date, to the Designated Accounts. Any payments to the Designated Accounts under this provision shall be divided evenly (50%/50%) between the Cyprus Designated Account and the Imerys Designated Account.

5.8.   In the event this Agreement is terminated prior to the Trigger Date pursuant to Section 8.1 below: (i) after ten (10) Business Days' prior written notice from J&J to the Debtors, J&J shall instruct the Escrow Agent to distribute the balance of the Escrow Account (less the Home Proceeds) to J&J; and (ii) the Home Proceeds shall be deposited into or remain in the Escrow Account described above in Section 5.5, and the rights of the J&J Corporate Parties, the Imerys Parties, and the Cyprus Parties with respect to the Home Proceeds shall exist as they did prior to the execution of this Agreement.

5.9.   The Debtors agree that they will only direct the Escrow Agent to disburse funds from the Escrow Account pursuant to Section 5.7 above. J&J agrees that it will only direct the Escrow Agent to disburse funds from the Escrow Account pursuant to Section 5.8 above. Each of the Debtors and J&J agree to certify that any direction to the Escrow Agent to disburse funds from the Escrow Account complies with this Agreement.

5.10.   As of the Trigger Date, within five (5) Business Days after receipt of any portion of any J&J Insurance Payments or Home Proceeds by any J&J Corporate Party, J&J shall irrevocably and indefeasibly pay, or cause to be paid, any unpaid portion of the J&J Insurance Payments or Home Proceeds received as set forth in the statement delivered in accordance with Section 5.3 hereof, in immediately available funds in U.S. dollars via wire transfer(s), as follows: (i) if after the Plans' Effective Date, to the Talc Personal Injury Trust or the Designated Accounts, as applicable; and (ii) if prior to the Plans' Effective Date, to the Designated Accounts. Any

payments to the Designated Accounts under this provision shall be divided evenly (50%/50%) between the Cyprus Designated Account and the Imerys Designated Account.

5.11.   The obligation of J&J and LLT to make J&J Insurance Payments to the Talc Personal Injury Trust, the Escrow Account, or the Designated Accounts as applicable, under this Agreement shall total $280,000,000 in the aggregate.

5.12.   Effective upon the Insurance Reporting Termination Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Debtor Corporate Parties, and the Talc Personal Injury Trust shall assign to J&J all rights, interests and remedies they may have under the J&J Policies.

6.   **RELEASES**

6.1.   **Release by Debtor Releasing Parties.**  Effective upon the Closing Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Estates, the Reorganized Debtors, and the Talc Personal Injury Trust, and any successors, assigns, or representatives of each of the foregoing and any other persons claiming under or through them (collectively, the "**Debtor Releasing Parties**") shall be deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge the J&J Corporate Parties from any and all claims the Debtor Releasing Parties have against them, with the exception of "Subrogated Claims," as defined below, including: (a) all Claims raised (or that any Debtor Releasing Party could have raised) in the Adversary Proceedings; and (b) any and all Claims, counterclaims, causes of action, Estate Causes of Action Against J&J, disputes, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code),

27

whether arising pre-petition or post-petition, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, in law, equity, contract, tort, or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, including Claims or causes of action based on a theory of contribution, subrogation, contractual and/or equitable indemnification, or common law, or insurance coverage claims against Middlesex, which the Debtor Releasing Parties have, had, may have, or may claim to have against any of the J&J Corporate Parties directly, derivatively, or indirectly arising out of, with respect to, or in any way relating to Talc Personal Injury Claims, the J&J Agreements, or otherwise to the supply of talc by the Debtors to any J&J Corporate Party ("**Debtor J&J Released Claims**"). For the avoidance of doubt, the Debtor J&J Released Claims shall include any Claim or right against a J&J Corporate Party held by a Protected Party or a Talc Insurance Company (including a Settling Talc Insurance Company) that is assigned or otherwise transferred to the Talc Personal Injury Trust pursuant to the Plans (including the Contributed Indemnity and Insurance Interests, and the Rio Tinto/Zurich Credit Contribution, each as defined in the Plans). Notwithstanding the above, the Debtor J&J Released Claims shall not include any claims relating to J&J Talc Claims as to which, and in the amount as to which, any RMI Managed Insurer and/or Truck made pre-petition payments to or on behalf of the Imerys Parties or the Cyprus Parties (the "**Subrogated Claims**"). Upon the Closing Date, any and all requests, demands, or tenders for defense or indemnity previously submitted to the J&J Corporate Parties by any of the Debtor Releasing Parties with respect to a Debtor J&J Released Claim shall be deemed withdrawn, the Debtor Releasing Parties shall surrender, relinquish, and release any further right to tender or present any Debtor J&J Released Claims, and the J&J Corporate Parties

shall have no duty to defend, indemnify, reimburse, or otherwise pay the Debtor Releasing Parties with respect to any Debtor J&J Released Claims. For the avoidance of doubt, this Agreement shall have no effect on any subrogation rights that any insurer that has made pre-petition payments to or on behalf of any of the Imerys Parties or the Cyprus Parties, including Truck and the RMI Managed Insurers (including National Union) has asserted or may assert against J&J in connection with or as a result of such payments. The Imerys Parties and the Cyprus Parties represent that, other than the RMI Managed Insurers, including National Union, and Truck, and any affiliates thereof, they are aware of no insurers that have paid defense or indemnity costs to or on behalf of a Debtor Released Party in relation to J&J Talc Claims. From and after the Execution Date, unless and until this Agreement is terminated in accordance with Section 8 below, the Debtor Releasing Parties shall not pursue, and the Claimant Fiduciaries shall not seek standing to pursue, any Debtor J&J Released Claims; provided, however, for the avoidance of doubt, the Imerys Parties and the Cyprus Parties may file proof(s) of claim in any J&J Related Bankruptcy Case to ensure that the Debtor J&J Released Claims are not waived or impaired pending the Closing Date.

6.2.    **Release by Non-Debtor Releasing Parties.** Effective upon the Closing Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor Corporate Parties, any successors, assigns, or representatives of any of them, and any other persons claiming under or through them (collectively, the "**Non-Debtor Releasing Parties**") shall be deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge the J&J Corporate Parties from any and all claims the Non-Debtor Releasing Parties have against them relating to J&J Talc Claims, with the exception of Subrogated Claims, including (a) all Claims raised (or that any Non-Debtor Releasing Party could have raised) in the Adversary Proceedings; and (b) any and all Claims, counterclaims, causes of action, disputes, suits, costs,

debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether pre-petition or post-petition, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, in law, equity, contract, tort, or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, including Claims or causes of action based on a theory of contribution, subrogation, contractual and/or equitable indemnification, or common law, or insurance coverage claims against Middlesex, which the Non-Debtor Releasing Parties have, had, may have, or may claim to have against any of the J&J Corporate Parties directly, derivatively, or indirectly arising out of, with respect to, or in any way relating to Talc Personal Injury Claims, the J&J Agreements, or otherwise to the supply of talc by the Debtors to any J&J Corporate Party ("**Non-Debtor J&J Released Claims**").  Upon the Closing Date, any and all requests, demands, or tenders for defense or indemnity previously submitted to the J&J Corporate Parties by any of the Non-Debtor Releasing Parties with respect to a Non-Debtor J&J Released Claim shall be deemed withdrawn, the Non-Debtor Releasing Parties shall surrender, relinquish, and release any further right to tender or present any Non-Debtor J&J Released Claims, and the J&J Corporate Parties shall have no duty to defend, indemnify, reimburse, or otherwise pay the Non-Debtor Releasing Parties with respect to any Non-Debtor J&J Released Claims.  From and after the Execution Date until this Agreement is terminated in accordance with Section 8 below, the Non-Debtor Releasing Parties shall not pursue any Non-Debtor J&J Released Claims; provided, however, for the avoidance of doubt, the Non-Debtor Releasing Parties may file proof(s)

of claim in any J&J Related Bankruptcy Case to ensure that the Non-Debtor J&J Released Claims are not waived or impaired pending the Closing Date.

6.3.    Effective upon the Execution Date and, unless and until this Agreement is terminated in accordance with Section 8 below, or J&J provides express written consent, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor Releasing Parties and Non-Debtor Releasing Parties covenant not to pursue insurance coverage, or accept any payment, under any insurance policy, for J&J Talc Claims, including to recover any defense costs.  To the extent such claims have been made in the past and remain pending, the Debtor Releasing Parties and the Non-Debtor Releasing Parties shall pause any pursuit of the claims, shall so advise the party from whom they are pursuing such coverage, and shall not accept any payment for or in connection with such J&J Talc Claims.  For the avoidance of doubt, this Agreement does not prohibit or restrict any person or entity from pursuing coverage under the Debtors' Policies for Talc Personal Injury Claims or portions of Talc Personal Injury Claims that are not J&J Talc Claims.

6.4.    **Release by J&J Corporate Parties.**  Effective upon the Closing Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the J&J Corporate Parties, any successors, assigns, or representatives of any of them, and any other persons claiming under or through any of them (collectively, the "**J&J Releasing Parties**"), shall be deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge the Debtor Releasing Parties, the Non-Debtor Releasing Parties, and the Claimant Fiduciaries (and their agents and representatives) (collectively, the "**Debtor Released Parties**") from any and all claims the J&J Corporate Parties have against them, including:  (a) all Claims raised (or that any J&J Corporate Party could have raised) in the Adversary Proceedings or in the Proofs of Claim;

31

and (b) any and all Claims, counterclaims, causes of action, disputes, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether arising pre-petition or post-petition, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, in law, equity, contract, tort, or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, including Claims or causes of action based on a theory of contribution, subrogation, contractual and/or equitable indemnification, or common law, which the J&J Corporate Parties have, had, may have, or may claim to have against any of the Debtor Released Parties directly, derivatively, or indirectly arising out of, with respect to, or in any way relating to Talc Personal Injury Claims, the J&J Agreements, or otherwise to the supply of talc by the Debtors to any J&J Corporate Party (collectively, "**Debtor Released Claims**"). Upon the Closing Date, any and all requests, demands, or tenders for defense or indemnity previously submitted to the Debtor Released Parties by any of the J&J Corporate Parties with respect to a Debtor Released Claim shall be deemed withdrawn, and the J&J Corporate Parties shall surrender, relinquish, and release any further right to tender or present any Debtor Released Claims, and the Debtor Released Parties and the Estates shall have no duty to defend, indemnify, reimburse, or otherwise pay the J&J Corporate Parties with respect to any Debtor Released Claims. Upon the Closing Date, any and all requests or demands for payment of any Debtor Released Claim by the J&J Corporate Parties against any Debtor or Debtor Corporate Party or the Estates shall be deemed withdrawn with prejudice and the J&J Corporate Parties agree to waive any claim

against the Talc Personal Injury Trust for any reason, including, without limitation, indirect claims, contribution, or subrogation for any Talc Personal Injury Claim (as defined in the Plans) paid by a J&J Corporate Party. From and after the Execution Date, unless and until this Agreement is terminated in accordance with Section 8 below, the J&J Corporate Parties shall not pursue any Debtor Released Claims.

6.5. **Unknown or Future Claims.** The Parties expressly acknowledge that there may be changes in the law or the Parties may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims released in Sections 6.1, 6.2, and 6.4 above. Nevertheless, the Parties hereby agree that (subject to Section 8 of this Agreement) the releases set forth in Sections 6.1, 6.2, and 6.4 above shall be and remain effective in all respects, notwithstanding any changes in the law or the discovery of such additional or different facts. In addition, the Parties acknowledge that they have been advised by their respective legal counsel regarding, and are familiar with, the provisions of section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Parties expressly waive and relinquish any and all rights or benefits they have or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect, as to the releases given in this Agreement, to the full extent that such right or benefit may be lawfully waived. In connection with the waiver and relinquishment of rights or benefits under California Civil Code § 1542, each Party acknowledges that it fully understands that facts may later be discovered in addition to or different from those

facts which are now known or believed to be true with respect to the subject matter of this Agreement, and that it is that Party's intention hereby to fully, finally and forever release all Claims and rights, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past, as to the matters released in Sections 6.1, 6.2, and 6.4 of this Agreement.

**7.      COOPERATION AND BANKRUPTCY-RELATED OBLIGATIONS**

7.1.      The Debtors shall (i) amend each of their respective Plans to be consistent with this Agreement and thereafter cause each of their respective Plans to remain consistent with this Agreement, (ii) solicit votes on each of their respective Plans, (iii) file the Voting Certification with the Bankruptcy Court, (iv) request that the Bankruptcy Court enter an order setting a Voting Objection Deadline no later than thirty (30) days after the Voting Certification is filed with the Bankruptcy Court, and (v) if one or more Voting Objections(s) are filed with the Bankruptcy Court before expiration of the Voting Objection Deadline, seek to have the Bankruptcy Court decide such Voting Objection(s), in each case as expeditiously as reasonably practicable, taking into account the availability of the Bankruptcy Court, if applicable.  The Debtors acknowledge that the inclusion of this Section 7.1 is a material inducement to the willingness of J&J to enter into this Agreement.

7.2.      The Parties acknowledge that, pursuant to this Agreement, they share a common interest with respect to pursuit of insurance coverage described in Sections 5.1 and 5.4 above.

7.3.      Upon the Execution Date, no J&J Corporate Party shall be a party in interest in the Chapter 11 Cases, or participate in the Chapter 11 Cases, except (i) to enforce this Agreement, (ii) to fulfill its cooperation obligations under this Section 7, or (iii) in the event this Agreement is terminated pursuant to Section 8 hereof.  Accordingly, except to contend that the Debtors have

breached this Agreement or that such documents are otherwise inconsistent with this Agreement, no J&J Corporate Party shall object to the disclosure statements or Plans filed in the Chapter 11 Cases or seek discovery or disclosures from any other Party in the Chapter 11 Cases.

7.4.    Any chapter 11 plan filed in any J&J Related Bankruptcy Case shall be consistent with this Agreement.  Provided that any chapter 11 plan filed in any J&J Related Bankruptcy Case is consistent with the chapter 11 plan of reorganization of Red River Talc LLC released publicly on June 4, 2024, with respect to its treatment of the Imerys Parties and the Cyprus Parties and this Agreement, upon the Execution Date, no Imerys Party, Cyprus Party, or Claimant Fiduciary shall seek discovery or disclosures from any other Party in any J&J Related Bankruptcy Case, or participate in any J&J Related Bankruptcy Case, except (i) to enforce this Agreement, (ii) to fulfill its cooperation obligations under this Section 7, (iii) to file proofs of claim to the extent they deem it necessary or appropriate in the J&J Related Bankruptcy Case, or (iv) in the event this Agreement is terminated pursuant to Section 8 hereof.  Accordingly, except to contend that a J&J Corporate Party has breached this Agreement or that such documents are otherwise inconsistent with this Agreement, no Imerys Party, Cyprus Party, or Claimant Fiduciary shall object to the disclosure statements or chapter 11 plans filed in any J&J Related Bankruptcy Case or seek discovery or disclosures from any other Party in any J&J Related Bankruptcy Case.  In the event that a J&J Related Bankruptcy Case is commenced by LLT (or any successor thereto, including if formed Red River Talc LLC and/or Pecos River Talc LLC) prior to the earlier to occur of the Trigger Date and the date on which this Agreement is terminated pursuant to Section 8.1 or Section 8.3 below, J&J shall not, and shall cause the other J&J Corporate Parties, including any debtor in such J&J Related Bankruptcy Case, not to, seek a deadline for objection to the confirmation of any chapter

11 plan of reorganization for such debtor that is prior to the Trigger Date or the date that is ten (10) days after this Agreement is terminated pursuant to Section 8.1 or Section 8.3 below, as applicable.

7.5.    Each Party shall use its reasonable efforts, and take such steps and execute such documents as may be reasonably necessary and proper to effectuate the purpose and intent of, and obtain the outcomes sought by, this Agreement, including entry of the J&J Settlement Order, filing the Voting Certification, confirmation of the Plans, and the occurrence of the Plans' Effective Date, and to preserve the validity and enforceability of this Agreement.   In the event that any objection, action, or proceeding is commenced or prosecuted by any Person to invalidate, hinder, or prevent the approval, validation, enforcement, or carrying out of all or any provisions of this Agreement or to appeal the J&J Settlement Order, the Parties mutually agree to reasonably cooperate in good faith in opposing such objection, action, proceeding, or appeal.   Each of the Parties shall reasonably cooperate in good faith with each of the other Parties in responding to or opposing any motion, objection, claim, assertion, or argument by any third party that this Agreement is not binding, or should be avoided, or that valuable and fair consideration or reasonably equivalent value has not been exchanged pursuant to this Agreement.   For the avoidance of doubt, the obligations contained in this Section 7.5 shall survive and remain binding on the Parties until such time as the later of (i) the Plans' Effective Date has occurred and (ii) the Insurance Reporting Termination Date has occurred.  The J&J Corporate Parties acknowledge that the inclusion of this Section 7.5 is a material inducement to the Debtors entering into this Agreement in addition to payment in full of the J&J Payment Obligations.

7.6.    Upon the Closing Date, the Imerys Parties and Cyprus Parties, as applicable, shall dismiss the Adversary Proceedings with prejudice.  From the Execution Date, unless and until this

Agreement is validly terminated in accordance with Section 8 hereof, the Imerys Parties and the Cyprus Parties shall not take any action to further prosecute the Adversary Proceedings.

7.7.     Upon the Closing Date, any and all Claims that the J&J Corporate Parties have asserted or that have been asserted on any of their behalf against any of the Debtor Released Parties shall be deemed withdrawn with prejudice, including dismissal with prejudice of any and all proofs of claim filed by any J&J Corporate Parties in the Chapter 11 Cases.  Further, no J&J Corporate Party shall file or assert any additional Debtor Released Claims against any of the Debtor Released Parties arising from any Debtor Released Party's conduct.  From the Execution Date until this Agreement is validly terminated in accordance with Section 8 hereof, the J&J Corporate Parties shall not take any action to initiate or further prosecute any Claims against the Debtor Released Parties.  For the avoidance of doubt, upon the Closing Date, any and all Claims that the Debtor Releasing Parties have asserted or that have been asserted on any of their behalf against any of the J&J Corporate Parties shall be deemed withdrawn with prejudice.

7.8.     The Plans shall provide that, on the Plans' Effective Date, the rights of the Debtors under this Agreement shall be deemed to have been assigned and transferred to the Talc Personal Injury Trust without need of further action by any Party or Person, and the Talc Personal Injury Trust shall be bound by all of the applicable provisions of this Agreement.  Unless this Agreement is validly terminated pursuant to the terms hereof, the Debtors, the Reorganized Debtors, and the Debtor Corporate Parties shall continue to be bound by this Agreement and shall retain all of the obligations and benefits hereof, notwithstanding the Debtors' assignment and transfer of rights under this Agreement to the Talc Personal Injury Trust.

7.9.     The Parties agree, and the Plans shall include the following provision: "Nothing in the Plans or the Trust Distribution Procedures shall be binding on or used to impact, prejudice, or

affect the J&J Corporate Parties (including, without limitation, LLT, Johnson & Johnson, and, if formed, Red River Talc LLC and/or Pecos River Talc LLC), in the tort system or in a bankruptcy case."

7.10.    The Parties agree that nothing in this Agreement shall be binding on or used to impact, prejudice, or affect in any way the rights that any holder of a Talc Personal Injury Claim (or such holder's heirs, executors, and assigns) has directly against a J&J Corporate Party.  For the avoidance of doubt, the Parties acknowledge and agree that the immediately preceding sentence does not apply to rights to pursue Debtor J&J Released Claims or Non-Debtor J&J Released Claims.

## 8.    TERMINATION, BREACH, AND REMEDIES

8.1.    This Agreement shall terminate upon any of the following events:

  i.    the Bankruptcy Court does not enter the J&J Settlement Order within 90 days of the Execution Date unless such deadline is extended in writing by each of the Parties;

  ii.    the Trigger Date does not occur on or prior to March 31, 2025 unless such deadline is extended in writing by each of the Parties; or

  iii.    prior to the Trigger Date, the Bankruptcy Court enters an order converting any of the Chapter 11 Cases into cases under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases

8.2.    The Bankruptcy Court shall have the authority to determine whether a breach has occurred, whether a breach asserted by a Party amounts to a material breach of this Agreement (subject to Section 5.1 of this Agreement), and the appropriate remedy for any breach.

8.3.    In the event of a breach of this Agreement, Parties shall have all remedies available in law or equity, including specific performance; provided, however, no Party may exercise any remedies for breach hereunder until each of the following has occurred: (i) written notice to the other Parties setting forth with particularity the breach allegation, (ii) such breach remains uncured 10 days after receipt of such notice, and (iii) an order from the Bankruptcy Court after such cure period finding that such breach has occurred and the appropriate remedy therefor; provided further, however, that, notwithstanding the foregoing proviso, the Party alleging such breach may immediately seek an order from the Bankruptcy Court finding that such breach has occurred and the appropriate remedy therefor so long as such Party has first reasonably attempted to meet and confer with the other Parties' counsel regarding such breach and remedy.  Upon the Bankruptcy Court's determination that J&J has materially breached this Agreement, the Debtors, the Talc Personal Injury Trust, and/or Claimant Fiduciaries, as applicable, may, in their discretion, immediately terminate this Agreement, provided that none of the Debtors or the Claimant Fiduciaries have materially breached this Agreement.  Upon the Bankruptcy Court's determination that the Debtors, the Debtor Corporate Parties, or the Claimant Fiduciaries have materially breached this Agreement, J&J may, in its discretion, immediately terminate this Agreement, provided J&J has not materially breached this Agreement.

8.4.    No Party shall assert that the automatic stay in any bankruptcy case, including any J&J Related Bankruptcy Case, precludes an action for breach or enforcement of this Agreement. J&J shall not, and shall cause the other J&J Corporate Parties, including LLT (or any successor thereto, including, if formed Red River Talc LLC and/or Pecos River Talc LLC), not to, assert that the automatic stay in any future J&J Related Bankruptcy Case filed by LLT (or any successor thereto, including, if formed Red River Talc LLC and/or Pecos River Talc LLC)  would preclude,

or should be extended to preclude, an action against Johnson & Johnson for breach or enforcement of this Agreement.

8.5.     In the event termination pursuant to Sections 8.1 or 8.3 above occurs and is not waived by each of the Parties in writing, (i) the Parties shall be returned to the status quo ante immediately preceding the Execution Date, (ii) the Parties, the Debtor Released Parties, and the J&J Corporate Parties shall have all of the same claims, rights, defenses, and obligations under or with respect to any and all of the J&J Agreements or as may be available under applicable law that they would have had absent this Agreement, (iii) any and all otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date on which this Agreement becomes null and void in accordance with Sections 8.1, 8.2, or 8.3 above, and no Party shall assert that any other Party's failure during said period to raise any Claim that would have been resolved by this Agreement, had this Agreement become effective or not been voided, as applicable, renders such claim time-barred;

8.6.     In the event that this Agreement is terminated or otherwise no longer in effect, except as a result of a material breach by J&J pursuant to Section 8.3:  the Debtors, the Debtor Corporate Parties, and the Claimant Fiduciaries shall not pursue solicitation or confirmation of the Plans unless they file new disclosure statements and new solicitation procedures, seek to resolicit the Plans, and provide J&J at least four (4) weeks after the filing of the new disclosure statements and new solicitation procedures to file any objection to such disclosure statements and solicitation procedures.

8.7.     Remedies provided herein are cumulative and not exclusive of any remedies provided at law.

8.8. Notwithstanding the foregoing, termination of this Agreement shall not affect the Parties' rights with respect to Section 8 (Termination, Breach, and Remedies), Section 9 (No Admissions or Waiver of Privilege), Section 10 (Retention of Jurisdiction), and Section 11 (Construction of Agreement) of this Agreement.

8.9. The Parties agree and the J&J Settlement Order shall provide that damages, if any, payable by the Imerys Debtors or the Cyprus Debtor hereunder for breach of this Agreement shall be administrative expense claims against their estates. In the event that a J&J Related Bankruptcy Case is commenced by LLT (or any successor thereto, including if formed Red River Talc LLC and/or Pecos River Talc LLC), damages, if any, payable by the debtor in such J&J Related Bankruptcy Case for breach of this Agreement shall be administrative expense claims against its estate.

## 9. NO ADMISSIONS OR WAIVER OF PRIVILEGE

9.1. Nothing contained in this Agreement, or in any negotiations, discussions, correspondence, or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission by any Party with respect to any matter or any factual or legal issue of any kind. Nothing in this Agreement waives or shall be deemed to waive any Party's work-product protection or right to claim the protections of any applicable privilege, including attorney-client privilege, common-interest privilege, or mediation privilege.

## 10. RETENTION OF JURISDICTION AND GOVERNING LAW

10.1. The Bankruptcy Court retains jurisdiction to hear and determine the terms of any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Agreement.

10.2.    This Agreement is to be governed by and construed in accordance with the laws of the State of Delaware applicable to contracts made and to be performed in such State.

## 11.    CONSTRUCTION OF AGREEMENT

11.1.    The Parties represent and acknowledge that they have participated in the preparation and drafting of this Agreement or have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any Party on the basis that one Party drafted the language of this Agreement or played a greater role in the drafting of the language.

11.2.    The headings of this Agreement are included for convenience and are not part of the provisions hereof and shall have no force or effect.

11.3.    If any provision of this Agreement or application thereof is held to be invalid or unenforceable, the remainder of this Agreement shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties.  Notwithstanding the foregoing, Sections 2 through 8 and the definitions of the capitalized terms that appear in those Sections shall not be severable from this Agreement.

## 12.    RIGHTS UNAFFECTED BY AGREEMENT

12.1.    Notwithstanding any other provision of this Agreement, nothing contained herein shall affect the rights of an individual holder of a Talc Personal Injury Claim (as defined in the Plans), or such individual holder's heirs, executors, and assigns, to prosecute such individual holder's claims against any J&J Corporate Party.

## 13.    REPRESENTATIONS, WARRANTIES, AND OTHER MISCELLANEOUS PROVISIONS

13.1.    All of the Parties consent to personal jurisdiction in the Bankruptcy Court for purposes of resolving any dispute concerning the terms, meaning or implementation of this Agreement.

13.2.    Each Party represents and warrants that, subject to the conditions precedent set out in Section 2 of this Agreement (as applicable), it has taken all necessary corporate and legal action, as applicable, required to duly approve the making and performance of this Agreement and that no further action is necessary to make this Agreement binding and legally enforceable according to its terms.

13.3.    Each Party represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law or any of its respective articles of incorporation or bylaws or any contract or agreement by which it is bound.

13.4.    Each Debtor and J&J represents and warrants that (a) it is the owner of the rights and Claims to be compromised and released by it under this Agreement and (b) it has not assigned or transferred to any Person any such right or claim or other matter to be compromised and released hereunder.

13.5.    Each Party represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable on and after the Execution Date.

13.6.    Each Party represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations, with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good faith compromise and settlement of disputed Claims, disputed liabilities, and disputed issues.

13.7.    Each Party represents and warrants that it has read this Agreement in its entirety, fully understands all of its terms and the consequences thereof, and that the individual signing this Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

13.8.    No Talc Insurance Company shall be a third-party beneficiary to this Agreement. Nothing in this Agreement, express or implied, is intended to confer upon any Talc Insurance Company, any rights, remedies, obligations, or liabilities.

13.9.    This Agreement (including the exhibits attached to it) sets forth the entire agreement among the Parties as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral.

13.10.    All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and also by overnight mail (or United States first-class mail, postage prepaid), to the other Parties at the addresses set forth below, or to such other persons or addresses as the Parties may designate in writing from time to time:

> For J&J:
>
> Erik Haas, John Kim, and Andrew White
> One Johnson & Johnson Plaza
> New Brunswick, NJ 08933
> AWhite23@ITS.JNJ.com
> EHaas8@its.jnj.com
> JKim8@its.jnj.com
>
> With a copy to:
>
> Ronit Berkovich, Esq. and Theodore Tsekerides, Esq.
> Weil, Gotshal & Manges
> 767 Fifth Avenue
> New York, NY 10153
> Ronit.Berkovich@weil.com
> Theodore.Tsekerides@weil.com

James Murdica, Esq.
Barnes & Thornburg LLP
One North Wacker Drive Suite 4400
Chicago, IL 60606
jmurdica@btlaw.com

Dan B. Prieto, Esq.
Jones Day
2727 North Harwood
Dallas, TX 75201
dbprieto@jonesday.com

For the Imerys Parties:

*Imerys Debtors*
Ryan Van Meter, Esq.
Imerys Talc America, Inc.
100 Mansell Court East, Suite 300
Roswell, Georgia 30076
ryan.vanmeter@imerys.com

With a copy to:
Kimberly A. Posin, Esq.
Jeffrey Bjork, Esq.
Latham & Watkins LLP
355 S. Grand Avenue, Suite 100
Los Angeles, CA 90071
kim.posin@lw.com
jeff.bjork@lw.com

Angela R. Elbert, Esq.
Neal, Gerber & Eisenberg LLP
Two North La Salle Street, Suite 1700
Chicago, IL 60602
aelbert@nge.com

*Imerys S.A.*
Emmanuelle Vaudoyer
Imerys S.A.
43 Quai de Grenelle
Paris 75015
France

With a copy to:

Christopher K. Kiplok, Esq.

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
christopher.kiplok@hugheshubbard.com

For the Cyprus Parties:

*Cyprus Debtor*
D. J. Baker
266 Valley Ridge Road
Haverford, PA 19041
djbaker@djbaker.net
With a copy to:
Paul M. Singer, Esq.
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222
psinger@reedsmith.com


*CAMC*
Scott Statham
333 North Central Avenue
Phoenix, AZ 85004
sstatham@fmi.com

With a copy to:
Emil A. Kleinhaus, Esq.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
EAKleinhaus@wlrk.com

For the Tort Claimants' Committees:
Natalie D. Ramsey, Esq.
Mark Fink, Esq.
Robinson & Cole LLP
1201 North Market Street Suite 1406
Wilmington, DE 19801
Direct 302.516.1702
nramsey@rc.com
mfink@rc.com

Rachel C. Strickland, Esq.
Daniel Forman, Esq.
Willkie Farr & Gallagher LLP

787 Seventh Avenue
New York, New York 10019
RStrickland@willkie.com
DForman@willkie.com

Kami E. Quinn, Esq.
Gilbert LLP
700 Pennsylvania Ave., SE
Suite 400
Washington, DC 20003
quinnk@gilbertlegal.com

Kevin C. Maclay, Esq. and Todd E. Phillips, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
kmaclay@capdale.com
tphillips@capdale.com

Robert M. Horkovich, Esq.
Anderson Kill
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1322
rhorkovich@andersonkill.com

FCRs:
Edwin J. Harron, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
eharron@ycst.com

Richard H. Wyron, Esq.
Frankel Wyron LLP
2101 L Street, NW, Suite 300
Washington, DC 20037
rwyron@frankelwyron.com

Albert Togut, Esq.
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119
altogut@teamtogut.com

13.11.  The rights, duties, and obligations of any entity named or referred to in this Agreement shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

13.12.  This Agreement may be amended only by a writing signed by or on behalf of each Party.

13.13.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  Execution of this Agreement may be effected by PDF or other electronic transmission of executed copies of the signature pages delivered to counsel for the Parties.

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the last date indicated below.

**IMERYS TALC AMERICA, INC. (on behalf of itself, ITV and ITC)**

By: *Ryan Van Meter*
DocuSigned by:
FEF366B664B9476...

Name: Ryan Van Meter

Title: Secretary

Date: July 9, 2024

**IMERYS TALC ITALY S.P.A.**

By:

Name:

Title:

Date:

**IMERYS S.A.**

By:

Name:

Title:

Date:

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

IMERYS TALC AMERICA, INC. (on behalf of itself, ITV and ITC)

By:

Name:

Title:

Date:

IMERYS TALC ITALY S.P.A.

By:

Name:

Title:

Date: 07/08/2024

IMERYS S.A.

By:

Name:

Title:

Date:

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the last date indicated below.

**IMERYS TALC AMERICA, INC. (on behalf of itself, ITV and ITC)**

By:

Name:

Title:

Date:

**IMERYS TALC ITALY S.P.A.**

By:

Name:

Title:

Date:

**IMERYS S.A.**

By:

Name:    Emmanuelle Vaudoyer

Title:    General Counsel and Secretary

Date:    July 13, 2024

*[Signature Page to Settlement Agreement and Release]*

**CYPRUS MINES CORPORATION**

By: *D. J. Baker* (signature)

Name:   D. J. (Jan) Baker

Title:   Director

Date:  7/13/2024

**CYPRUS          AMAX          MINERALS
COMPANY**

By:

Name:

Title:

Date:

**CYPRUS MINES CORPORATION**

By:

Name:

Title:

Date:

**CYPRUS AMAX MINERALS COMPANY**

By:

Name: Scott Statham

Title:

Digitally signed by Scott Statham
Date: 2024.07.09 06:32:17 -07'00'

Date:

**JOHNSON & JOHNSON**

By: *[signature]*

Name: Marc Larkins

Title: Corporate Secretary

Date: July 4, 2024

**LLT MANAGEMENT LLC**

By:

Name:

Title:

Date:

**JOHNSON & JOHNSON**

By:

Name:

Title:

Date:

**LLT MANAGEMENT LLC**

By: _John K. Kim_

Name: John K. Kim

Title: Chief Legal Officer

Date: 7/4/2024

**IMERYS TORT CLAIMANTS' COMMITTEE**

By: *Maura Kolb*  Maura Kolb of The Lanier Law Firm
on behalf of Robin Alander

Name:  Maura Kolb of The Lanier Law Firm
on behalf of Robin Alander

Title:  Chair of the Imerys Tort Claimants' Committee

Date:  7/13/2024


**JAMES L. PATTON as IMERYS FCR**

By:

Name:

Title:

Date:


**CYPRUS MINES TORT CLAIMANTS' COMMITTEE**

By:

Name:

Title:

Date:


**ROGER FRANKEL as CYPRUS MINES FCR**

By:

Name:

Title:

Date:


*[Signature Page to Settlement Agreement and Release]*

**IMERYS TORT CLAIMANTS' COMMITTEE**

By:

Name:

Title:

Date:

**JAMES L. PATTON as IMERYS FCR**

By:

Name: Robert S. Brady

Title: Counsel to the Imerys FCR

Date: 7/13/2024

**CYPRUS MINES TORT CLAIMANTS' COMMITTEE**

By:

Name:

Title:

Date:

**ROGER FRANKEL as CYPRUS MINES FCR**

By:

Name:

Title:

Date:

*[Signature Page to Settlement Agreement and Release]*

**IMERYS TORT CLAIMANTS' COMMITTEE**

By:

Name:

Title:

Date:

**JAMES L. PATTON as IMERYS FCR**

By:

Name:

Title:

Date:

**CYPRUS MINES TORT CLAIMANTS' COMMITTEE**

By: *Shafequllah Syed*

Name: Shafequllah Syed

Title: Committee Member

Date: 07/12/2024

**ROGER FRANKEL as CYPRUS MINES FCR**

By:

Name:

Title:

Date:

*[Signature Page to Settlement Agreement and Release]*

**IMERYS TORT CLAIMANTS' COMMITTEE**

By:

Name:

Title:

Date:

**JAMES L. PATTON as IMERYS FCR**

By:

Name:

Title:

Date:

**CYPRUS MINES TORT CLAIMANTS' COMMITTEE**

By:

Name:

Title:

Date:

**ROGER FRANKEL as CYPRUS MINES FCR**

By:

Name: Roger Frankel

Title: FCR

Date: 7/11/24

## SCHEDULE I

### Cyprus Corporate Parties

- Ajo Improvement Company [AZ]
- Amax Arizona, Inc. [NV]
- Amax Energy Inc. [DE]
- Amax Exploration, Inc. [DE]
- Amax Metals Recovery, Inc. [DE]
- Amax Nickel Overseas Ventures, Inc. [DE]
- Amax Research & Development, Inc. [DE]
- Amax Specialty Coppers Corporation [DE]
- Amax Specialty Metals (Driver), Inc. [DE]
- Amax Zinc (Newfoundland) Limited [DE]
- American Metal Climax, Inc. [DE]
- Ametalco Limited [UK]
- Ametalco, Inc. [DE]
- Apache Nitrogen Products, Incorporated [NJ]
- Arguello Inc. [DE]
- Atlantic Copper, S.L.U. [Spain]
- AZ Big Sandy, LLC [NV]
- Bagdad Fire and Rescue, Inc. [DE]
- Bisbee Queen Mining Co. [DE]
- Blackwell Zinc Company, Inc. [DE]
- Byner Cattle Company [NV]
- Capital Gestao de Negocios LTDA. [Brazil]
- Cattierite Holdings Coöperatief U.A. [The Netherlands]
- Chino Acquisition LLC [DE]
- Climax Canada LTD. [DE]
- Climax Molybdenum Asia Corporation [DE]
- Climax Molybdenum B.V. [The Netherlands]
- Climax Molybdenum China Corporation [DE]
- Climax Molybdenum Company [DE]
- Climax Molybdenum GmbH [Germany]
- Climax Molybdenum Marketing Corporation [DE]
- Climax Molybdenum U.K. Limited [UK]
- Compania Exploradora De La Isla, S.A. [Cuba]
- Copper Market, Inc. [AZ]
- Copper Overseas Service Company [DE]
- Cyprus Amax Indonesia Corporation [DE]
- Cyprus Amax Minerals Company [DE]
- Cyprus Climax Metals Company [DE]
- Cyprus Copperstone Gold Corporation [DE]
- Cyprus El Abra Corporation [DE]

- Cyprus Exploration and Development Corporation [DE]
- Cyprus Gold Company [DE]
- Cyprus Gold Exploration Corporation [DE]
- Cyprus Metals Company [DE]
- Cyprus Mines Corporation [DE]
- Cyprus Pinos Altos Corporation [DE]
- Cyprus Specialty Metals Company [DE]
- Cyprus Tohono Corporation [DE]
- Drum Mountains Mineral Properties LLC [DE]
- Eastern Mining Company, Inc. [DE]
- Exploraciones Antakana S.A.C. [Peru]
- FCX Investment LLC [DE]
- FCX Oil & Gas LLC [DE]
- FM Chile Holdings Inc. [DE]
- FM Services Company [DE]
- FNS Holdings, LLC [AZ]
- Freeport Azufre Limitada [Chile]
- Freeport Butte Valle LLC [DE]
- Freeport Canadian Exploration Company [DE]
- Freeport Cobalt Americas LLC [DE] Sold 8/31/2021
- Freeport Cobalt Asia LTD. [Taiwan] Sold 11/30/2019
- Freeport Cobalt Europe GMBH [Germany] Sold 8/31/2021
- Freeport Cobalt Japan Inc. [Japan] Sold 8/31/2021
- Freeport Cobalt OY [Finland] Sold 8/31/2021
- Freeport Copper Company [DE]
- Freeport International, Incorporated [DE]
- Freeport Minerals Corporation [DE]
- Freeport Overseas Service Company [DE]
- Freeport Research and Engineering Company [DE]
- Freeport Sulphur Company [DE]
- Freeport Warim Inc. [DE]
- Freeport-McMoRan Inc. [DE]
- Freeport-McMoRan Bagdad Inc. [DE]
- Freeport-McMoRan Chino Inc. [DE]
- Freeport-McMoRan Chino Mines Company [NM]
- Freeport-McMoRan Cobalt Holdings Limited [Bermuda]
- Freeport-McMoRan Copper & Gold China Corporation [Cayman Islands]
- Freeport-McMoRan Copper & Gold Energy Services LLC [DE]
- Freeport-McMoRan Copper & Gold Investment Co., S.A. [Cayman Islands]
- Freeport-McMoRan Energy LLC [DE]
- Freeport-McMoRan Exploration & Production LLC [DE]
- Freeport-McMoRan Exploration Columbia S.A.S. [Columbia]
- Freeport-McMoRan Exploration Corporation [DE]
- Freeport-McMoRan Mercantile Company Inc. [DE]

- Freeport-McMoRan Miami Inc. [DE]
- Freeport-McMoRan Mineral Properties Canada Inc. [Canada]
- Freeport-McMoRan Mineral Properties Inc. [DE]
- Freeport-McMoRan Morenci Inc. [DE]
- Freeport-McMoRan Nevada LLC [DE]
- Freeport-McMoRan of Canada Limited [DE]
- Freeport-McMoRan Oil & Gas Inc. [DE]
- Freeport-McMoRan Oil & Gas LLC [DE]
- Freeport-McMoRan Safford Inc. [DE]
- Freeport-McMoRan Sales Company Inc. [DE]
- Freeport-McMoRan Shelf Properties LLC [DE]
- Freeport-McMoRan Sierrita Inc. [DE]
- Freeport-McMoRan Spain Inc. [DE]
- Freeport-McMoRan Tyrone Inc. [DE]
- Freeport-McMoRan Tyrone Mining LLC [NM]
- Fundacion Freeport-McMoRan Chile [Chile]
- Gaviota Gas Plant Company [CA]
- Grand Ecaille Land Company, Inc. [LA]
- Gulf Coast Ultra Deep Royalty Trust [DE]
- Habirshaw Cable and Wire Corporation [DE]
- Hidalgo Mining, LLC [NM]
- International Administrative Services Company [DE]
- International Air Capital Inc. [DE]
- International ASAZ LLC [DE]
- International Mining Investments, LLC [DE]
- International Purveyors Inc. [DE]
- International Support LLC [DE]
- James Douglas Insurance Company, LTD. [Bermuda]
- JEX Technologies Corporation [NV]
- K-Mc Venture I LLC [DE]
- Koboltti Chemicals Holdings Limited [Bermuda]
- LHD Ventures, LLC [DE]
- Main Pass Energy Hub LLC [DE]
- McMoRan Exploration LLC [DE]
- McMoRan Oil & Gas LLC [DE]
- Midwest Land Acquisition Company LLC [DE]
- Minera Cuicuilco S.A. de C.V. [Mexico]
- Minera Freeport-McMoRan South America Limitada [Chile]
- Minera Freeport-McMoRan South America S.A.C. [Peru]
- Missouri Lead Smelting Company [DE]
- MSS Properties, LLC [DE]
- Mt. Emmons Mining Company [DE]
- Nabire Bakti LLC [DE]
- Nicaro Nickel Company [DE]

- Overseas Service Company [DE]
- Pacific Western Land Company [CA]
- PD Peru, Inc. [DE]
- PD Receivables LLC [DE]
- PDRC Laurel Hill 9, LLC [DE]
- PDRC Laurel Hill Development, LLC [DE]
- Phelps Dodge Ajo, Inc. [DE]
- Phelps Dodge Development Corporation [DE]
- Phelps Dodge Hidalgo, Inc. [DE]
- Phelps Dodge High Performance Conductors of NJ, Inc. [NJ]
- Phelps Dodge Industries, Inc. [DE]
- Phelps Dodge Katanga Corporation [DE]
- Phelps Dodge Mining (Zambia) Limited [Zambia]
- Phelps Dodge Molybdenum Corporation [DE]
- Phelps Dodge of Africa, Ltd. [DE]
- Phelps Dodge Refining Corporation [DE]
- Plains Acquisition Corporation [DE]
- Plains Vietnam Ltd. [Cayman Islands]
- Pogo Partners, Inc. [TX]
- Point Arguello Natural Gas Line Company [CA]
- Point Arguello Pipeline Company [CA]
- PT Airfast Aviation Facilities Company [Indonesia]
- PT Eksplorasi Nusa Jaya [Indonesia]
- PT Freeport Indonesia [Indonesia]
- PT Freeport Management Indonesia [Indonesia]
- PT Irja Eastern Minerals [Indonesia]
- PT Kencana Infra Nusakarya [Indonesia]
- PT Kencana Wisata Nusakarya [Indonesia]
- PT Freeport Manyar Refinery [Indonesia]
- PT Mineserve International [Indonesia]
- PT Nabire Bakti Mining [Indonesia]
- PT Papua Utama Mitra [Indonesia]
- PT Puncakjaya Power [Indonesia]
- PT Rio Tinto Indonesia [Indonesia]
- PT Smelting [Indonesia]
- PXP Gulf Coast LLC [DE]
- PXP Louisiana L.L.C. [DE]
- PXP Louisiana Operations LLC [DE]
- PXP Producing Company LLC [DE]
- Servicios Especiales Nacionales, S.A. de C.V. a.k.a. "PD SENSA" [El Salvador]
- Silver Springs Ranch, Inc. [CO]
- Sociedad Contractual Minera El Abra [Chile]
- Sociedad Minera Cerro Verde S.A.A. [Peru]
- Southern Bayou Holdings, LLC [DE]

- Southern Pearl Holdings, LLC [DE]
- Suva Reka (BVI) LTD. [BVI] Sold 12/28/2019
- Tank Barge LLC [DE]
- The Morenci Water & Electric Company [AZ]
- Timok Metals D.O.O. BOR [Serbia]
- Tucson, Cornelia and Gila Bend Railroad Company [AZ]
- United States Metals Refining Company [DE]
- Verde Valley Tax Investments, LLC [DE]
- Warren Company [AZ]
- Western Nuclear, Inc. [DE]]

**Imerys Corporate Parties**

## CURRENT AFFILIATES

- AKROTIRIO THAHILAS DYO S.A.
- ALMATECH MINERAL INTERNATIONAL LTD
- ALUMICA CANADA INC.
- ARDOISIERES D'ANGERS
- CALDERYS ALGERIE SPA
- CALDERYS REFRACTARIOS VENEZOLANOS SA
- CALDERYS REFRAKTER
- CEBO HOLLAND B.V.
- CEBO INTERNATIONAL B.V.
- CEBO MARINE B.V.
- CEBO UK LIMITED
- DONBASSKERAMIKA
- DONKAOLIN
- ECCA HOLDINGS (PTY) LTD
- ECCA MINERALS (PTY) LTD
- ECO-BOS DEVELOPMENT LIMITED
- GEORGIA PROPPANTS LLC (f.k.a. US CERAMICS LLC)
- GIMPEX-IMERYS INDIA PRIVATE LTD
- HARBORLITE AEGEAN ENDUSTRI MINERALLERI SANAYI A.S.
- IMERTECH
- IMERYS
- IMERYS (SHANGHAI) INVESTMENT MANAGEMENT CO., LTD
- IMERYS (TIANJIN) NEW MATERIAL TECHNOLOGY CO., LTD. (f.k.a. KERNEOS (CHINA) ALUMINATE TECHNOLOGIES CO., LTD)
- IMERYS (ZHENGZHOU) NEW MATERIAL TECHNOLOGY CO., LTD
- IMERYS ADMINISTRATIVE GERMANY GMBH
- IMERYS AL ZAYANI CO. W.L.L. (f.k.a. IMERYS AL ZAYANI FUSED MINERALS CO. W.L.L.)
- IMERYS ALMERIA, SA DE CV
- IMERYS ALMERIA DIATOMITA CONCESIONES ZACOALCO S.A. de C.V. (f.k.a. ZAPATOS DE MEXICALI, S.A. DE C.V.)
- IMERYS ALUMINATES CORPORATE (f.k.a. KERNEOS CORPORATE SAS)
- IMERYS ALUMINATES LIMITED
- IMERYS ALUMINATES SA
- IMERYS ASIA PACIFIC PTE LTD
- IMERYS BEAUVOIR (f.k.a. IMERYS GREENELLE TROIS)
- IMERYS BELGIUM SA
- IMERYS BENTONITE GEORGIA LTD
- IMERYS BENTONITE HUNGARY KFT

- IMERYS BEYREDE (f.k.a. IMERYS FUSED MINERALS BEYREDE SAS)
- IMERYS BRITISH LITHIUM LIMITED (f.k.a. RESEARCH BY BRITISH LITHIUM LIMITED)
- IMERYS CANADA INC.
- IMERYS CARBONATES (THAILAND), LTD
- IMERYS CARBONATES AUSTRIA GMBH
- IMERYS CARBONATES INDIA LIMITED
- IMERYS CARBONATES USA, INC.
- IMERYS CERAMICS (INDIA) PRIVATE LIMITED
- IMERYS CERAMICS (THAILAND) LTD
- IMERYS CERAMICS BRASIL MINERAIS PARA CERAMICAS LTDA
- IMERYS CERAMICS EGYPT
- IMERYS CERAMICS FRANCE
- IMERYS CERAMICS ITALY S.R.L.
- IMERYS CERAMICS MEXICO SA DE CV
- IMERYS CERAMICS NEW ZEALAND
- IMERYS CERAMICS PORTUGAL, SA
- IMERYS CLAYS, INC.
- IMERYS CLERAC (f.k.a. IMERYS REFRACTORY MINERALS CLERAC)
- IMERYS CZECH REPUBLIC S.R.O.
- IMERYS DIATOMITA ALICANTE, S.A.
- IMERYS DO BRASIL COMERCIO
- IMERYS DOMODOSSOLA S.P.A. (f.k.a. IMERYS FUSED MINERALS DOMODOSSOLA S.P.A.)
- IMERYS DORTMUND GMBH (f.k.a. S&B HOLDING GMBH)
- IMERYS FILTRATION FRANCE
- IMERYS FILTRATION MINERALS, INC.
- IMERYS FUSED MINERALS (YINGKOU) CO., LTD
- IMERYS FUSED MINERALS FRANCE SARL
- IMERYS FUSED MINERALS GUIZHOU CO. LTD
- IMERYS FUSED MINERALS SALTO LTDA
- IMERYS GLOMEL (f.k.a. IMERYS REFRACTORY MINERALS GLOMEL)
- IMERYS GRAPHITE & CARBON BELGIUM SA
- IMERYS GRAPHITE & CARBON CANADA INC.
- IMERYS GRAPHITE & CARBON JAPAN KK
- IMERYS GRAPHITE & CARBON KOREA
- IMERYS GRAPHITE & CARBON SWITZERLAND SA
- IMERYS GREENELLE ONE
- IMERYS GREENELLE TWO
- IMERYS GREENEVILLE, INC. (f.k.a. IMERYS FUSED MINERALS GREENEVILLE, INC.)
- IMERYS INDUSTRIAL MINERALS DENMARK A/S
- IMERYS INDUSTRIAL MINERALS GREECE S.A.

- IMERYS JAPAN CO., LTD (f.k.a. IMERYS HIGH RESISTANCE MINERALS JAPAN KK)
- IMERYS KAOLIN, INC.
- IMERYS KILN FURNITURE (THAILAND) CO. LTD
- IMERYS KILN FURNITURE HUNGARY KFT.
- IMERYS KILN FURNITURE ESPAÑA, SA
- IMERYS LAUFENBURG GMBH (f.k.a. IMERYS FUSED MINERALS LAUFENBURG GMBH)
- IMERYS LITHIUM FRANCE (f.k.a. PARNASSE TRENTE DEUX)
- IMERYS MANUFACTURING KOREA LTD
- IMERYS MICA KINGS MOUTAIN, INC.
- IMERYS MIDDLE EAST HOLDING COMPANY W.L.L.
- IMERYS MINERAL ARABIA LLC
- IMERYS MINERALES ARGENTINA S.A.
- IMERYS MINERALES CHILE SPA
- IMERYS MINERALES PERU SAC
- IMERYS MINERALI CORSICO SRL
- IMERYS MINERALI SPA
- IMERYS MINERALS (THAILAND) LTD
- IMERYS MINERALS BULGARIA AD
- IMERYS MINERALS CHINA, INC.
- IMERYS MINERALS GMBH
- IMERYS MINERALS HOLDING LIMITED
- IMERYS MINERALS INTERNATIONAL SALES
- IMERYS MINERALS KOREA LTD
- IMERYS MINERALS LTD
- IMERYS MINERALS MALAYSIA SDN. BHD.
- IMERYS MINERALS NETHERLANDS B.V.
- IMERYS MINERALS VIETNAM LIMITED
- IMERYS MINERAUX BELGIQUE SA
- IMERYS MINÉRAUX FRANCE
- IMERYS MURG GMBH (f.k.a. IMERYS FUSED MINERALS MURG GMBH)
- IMERYS NIAGARA FALLS, INC. (f.k.a. IMERYS FUSED MINERALS NIAGARA FALLS, INC.)
- IMERYS NORFOLK, INC. (f.k.a. KERNEOS INC.)
- IMERYS OILFIELD MINERALS, INC.
- IMERYS PACIFIC LTD
- IMERYS PCC FRANCE
- IMERYS PCC UK
- IMERYS PERFORMANCE AND FILTRATION MINERALS PRIVATE LIMITED
- IMERYS PERFORMANCE MINERALS AMERICAS, INC. (f.k.a. IMERTECH USA, INC.)
- IMERYS PERLITA BARCELONA, S.A.
- IMERYS PERLITE SARDINIA S.R.L.

- IMERYS PERLITE USA, INC.
- IMERYS PIGMENTS (QINGYANG) CO., LTD
- IMERYS PIGMENTS (WUHU) CO., LTD
- IMERYS POLAND S.P. Z.O.O
- IMERYS RE
- IMERYS REFRACTORY MINERALS SOUTH AFRICA (PTY) LTD
- IMERYS REFRACTORY MINERALS USA, INC.
- IMERYS RICHARDS BAY (PTY) LTD (f.k.a. KERNEOS SOUTHERN AFRICA PTY LTD)
- IMERYS ROCA RODANDO CONCESIONES HMO, S.A. de C.V.
- IMERYS RUSE D.O.O. (f.k.a. IMERYS FUSED MINERALS RUSE D.O.O.)
- IMERYS SERAMIK HAMMADDELERI SANAYI VE TICARET LIMITED SIRKETI
- IMERYS SERVICES
- IMERYS SERVICES GERMANY GMBH & CO. KG
- IMERYS SERVICES GREECE
- IMERYS SOUTH AFRICA (PTY) LTD
- IMERYS SOUTH EUROPE, S.L.
- IMERYS SYDNEY PTY LTD (f.k.a. KERNEOS AUSTRALIA PTY LTD)
- IMERYS TABLEWARE DEUTSCHLAND GMBH
- IMERYS TABLEWARE FRANCE
- IMERYS TALC AUSTRALIA PTY LTD
- IMERYS TALC AUSTRIA GMBH
- IMERYS TALC BELGIUM
- IMERYS TALC EUROPE
- IMERYS TALC FINLAND OY
- IMERYS TALC GERMANY GMBH
- IMERYS TALC ITALY S.P.A.[4]
- IMERYS TALC LUZENAC FRANCE
- IMERYS TALC MEXICO, SA DE CV
- IMERYS TALC UK HOLDING LTD
- IMERYS TEUTSCHENTAL (f.k.a. IMERYS FUSED MINERALS TEUTSCHENTHAL GMBH)
- IMERYS TRADING MINERALS EGYPT
- IMERYS TRUSTEES LTD
- IMERYS UK FINANCE LIMITED
- IMERYS UK LTD
- IMERYS UK PENSION FUND TRUSTEES LTD
- IMERYS USA, INC.
- IMERYS VILLACH GMBH (f.k.a. IMERYS FUSED MINERALS VILLACH GMBH)
- IMERYS VIZAG PRIVATE LIMITED (f.k.a. KERNEOS INDIA ALUMINATE TECHNOLOGIES PRIVATE LIMITED)

---

[4] Imerys Talc Italy S.p.A. is only an Imerys Corporate Party to the extent it does not commence a bankruptcy case.

- IMERYS WOLLASTONITE USA, LLC
- IMERYS ZHEJIANG ZIRCONIA CO., LTD
- IMERYS ZSCHORNEWITZ GMBH (f.k.a. IMERYS FUSED MINERALS ZSCHORNEWITZ GMBH)
- INDUSTRIA MACINAZIONE MINERALI PER L'INDUSTRIA CERAMICA S.P.A
- INDUSTRIAL MINERALS OF GREECE
- INSTALACIONES REFRACTARIAS C.A.
- KENTUCKY-TENNESSEE CLAY COMPANY
- KERNEOS INDIA ALUMINATE PRIVATE LIMITED
- KINTA POWDERTEC SDN. BHD
- LATOMIA N. KORAKAS SA
- LAVIOSA CHIMICA MINERARIA SPA
- LINJIANG  IMERYS DIATOMITE CO., LTD
- LIQUID QUIMICA MEXICANA, SA DE CV
- LLC IMERYS ALUMINATES
- MICRON-ITA MINERACAO LTDA
- MIKRO MINERAL ENDUSTRIYEL MINERALLER SANAYI VE TICARET A.S.
- MILOS INITIATIVE
- MILOS MINING MUSEUM
- MINERA ROCA RODANDO  S.DE R.L. DE C.V.
- MINERAL RESOURCES DEVELOPMENT (M.R.D.) CO. LTD
- MINVEN - (C-E MINERALES DE VENEZUELA)
- MIRCAL
- MIRCAL DE MEXICO SA DE CV
- MIRCAL ITALIA SPA
- MONREFCO GMBH
- MRD-ECC CO. LTD
- MSL MINERAIS S.A.
- NIPPON POWER GRAPHITE CO., LTD
- NORTH AFRICAN INDUSTRIAL MINERAL EXPLORATION SARL - NAIMEX
- NYCO MINERALS, LLC
- PARIMETAL
- PPSA
- PT IMERYS CERAMICS INDONESIA
- PYRAMAX CERAMICS SOUTHEAST, LLC
- QUARTZ CORP (SHANGHAÏ) CO., LTD
- RECLAYM LIMITED
- REFRACTORY MINERALS (PTY) LTD
- S&B INDUSTRIAL MINERALS MOROCCO S.A.R.L.
- S&B MINERALS PARTICIPATIONS SARL
- SAMREC (PTY) LTD
- SEITISS IMERYS MINERAUX CIRCULAIRES (SIMC)
- SHANDONG IMERYS MOUNT TAI CO., LTD
- SIBIMIN OVERSEAS LTD

- THE QUARTZ CORP AS
- THE QUARTZ CORP SAS
- THE QUARTZ CORP USA
- TYGERKLOOF MINING (PTY) LTD
- VATUTINSKY KOMBINAT VOGNETRYVIV
- VERMICULITA Y DERIVADOS, SL
- VIOLET CACTUS, INC. (F.K.A. CALDERYS USA, INC.)
- VOUGIOUKLI QUARRIES AVEE
- XINYANG ATHENIAN MINING CO., LTD
- YBB CALCIUM PRODUCTS CO. LTD
- YUEYANG YINGYUE NEW MATERIALS CO., LTD

**FORMER AFFILIATES**

- 000 CALDERYS
- 11656490 CANADA INC.
- ADVANCED MINERALS CORPORATION
- AFRICA REFRACTORY CONSULTANTS (PTY) LTD
- AKROTIRIO TRAHILAS TRIA S.A.
- AMERICAN TRIPOLI, INC.
- AMMIN HOLDINGS, INC.
- ANADOLU PERLIT MEDENCILIK SANAYI
- ANGANG STOLLBERG & SAMIL CO., LTD
- ARC FUSED ALUMINA
- ARDOISE ET JARDIN
- AREFCON B.V.
- AREFCON HISMA B.V.
- ARTEMYN
- ARTEMYN ARG S.A.
- ARTEMYN ASIA PACIFIC PTE. LTD.
- ARTEMYN BELGIUM
- ARTEMYN BRAZIL LTDA
- ARTEMYN CANADA, ULC (f.k.a. BERG MINERALS CANADA INC.)
- ARTEMYN USA, LLC (f.k.a. AMERICARB, INC.)
- ASSOS MERMER SANAYI VE TICARET LTD SIRKETI
- AUSTRALIAN VERMICULITE INDUSTRIES (PTY) LTD
- B & B REFRACTORY SERVICES PTY LTD
- BAOTOU JINGYUAN GRAPHITE CO., LTD
- BERG MINERALS TRADING (SHANGHAÏ) CO., LTD
- BERG MINERALS UK LIMITED
- BLX TRADING SAS
- CALDERYS ALGERIE SERVICES SPA
- CALDERYS AUSTRALIA PTY LTD
- CALDERYS AUSTRIA GMBH

- CALDERYS BELGIUM
- CALDERYS CHINA
- CALDERYS CHINA CO., LTD
- CALDERYS CZECH S.R.O
- CALDERYS DANMARK A/S
- CALDERYS DE MEXICO SA DE CV
- CALDERYS DEUTSCHLAND GMBH
- CALDERYS FINLAND OY
- CALDERYS FRANCE
- CALDERYS IBERICA REFRACTARIOS, SA
- CALDERYS INDIA REFRACTORIES LIMITED
- CALDERYS ITALIA SRL
- CALDERYS JAPAN CO., LTD
- CALDERYS KOREA CO. LTD
- CALDERYS MAGYARORSZAG K.F.T. (HUNGARY)
- CALDERYS NGJ LIMITED
- CALDERYS NORDIC AB
- CALDERYS NORWAY AS
- CALDERYS POLSKA SP. Z.O.O.
- CALDERYS SOUTH AFRICA (PTY) LTD
- CALDERYS TAÏWAN CO LTD
- CALDERYS THE NETHERLANDS B.V.
- CALDERYS UKRAINE LTD
- CALDERYS UK LTD
- CALDERYS USA, LLC
- CAPTELIA
- CARBONATOS ANDINOS SA
- C-E NEWELL, INC.
- CELITE MEXICANA, SA DE CV
- CHANGBAI CELITE DIATOMITE CO., LTD
- CHARGES MINERALES DU PERIGORD - CMP
- CHOICEWISE LIMITED
- CONDIMENTUM OY
- COVEO
- DALIAN JINSHENG FINE CHEMICAL INDUSTRY CO., LTD
- DAMOLIN ETRECHY
- DAMOLIN GMBH
- DAMOLIN INVESTMENT A/S
- DOLPHIN FELDSPAR PRIVATE  LIMITED
- DOYET TERRE CUITE
- ECC OVERSEAS INVESTMENTS LTD
- ECC PACIFIC (AUSTRALIA) PTY LTD
- ECCA CALCIUM PRODUCTS, INC.
- EDWIN H. BRADLEY HOLDINGS LTD

- ELMIN BAUXITES S.R.L.
- ENGLISH CHINA CLAYS LTD
- EUROARGILLE
- EUROPE COMMERCE REFRACTORY
- FAGERSTA ELDFASTA AB
- FEL-MAC COMPANY LLC
- FIBERLEAN TECNOLOGIA E SOLUCOES EIRELI
- FIBERLEAN TECHNOLOGIE LIMITED
- FIBERLEAN TECHNOLOGIE NA INC.
- FOKIS MINING PARK
- GOONAMARRIS LIMITED
- GRAN BIANCO CARRARA SRL
- GUIYANG JIANAI SPECIAL ALUMINATES
- GUIZHOU S&B NEW-TYPE MATERIALS CO., LTD
- GUIZHOU STAR MINERALS CO., LTD
- GUNUNG IMBANGAN SDN. BHD
- HARBORLITE (UK) LTD
- HAZNEDAR DURER DIŞ TİCARET A.Ş (f.k.a. VENDER ENDÜSTRIYEL MALZEMELERI TICARET A.S.)
- HAZNEDAR DURER REFRAKTER MALZEMELERI SANAYI VE TICARET A.S.
- HAZNEDAR GMBH
- HJM INDUSTRIES SDN. BHD
- IGM FOR FIBRE GLASS
- IMERPLAST UK LIMITED
- IMERYS (SHANGHAÏ) FILTRATION MINERALS TRADING CO., LTD
- IMERYS ADVANCED MATERIALS (YINGKOU) CO., LTD
- IMERYS ALÜMINÄT DIS TICARET
- IMERYS ALUMINATES ASIA PACIFIC PTE LTD
- IMERYS ALUMINATES GMBH
- IMERYS ALUMINATES GROUPE (f.k.a. KERNEOS GROUP SAS)
- IMERYS ALUMINATES ITALIA S.R.L.
- IMERYS ALUMINATES NORDIC AB
- IMERYS ARGENTINA SRL
- IMERYS BAUXITE SA (f.k.a. ELMIN BAUXITES SA)
- IMERYS BENTONITE ITALY S.P.A.
- IMERYS BENTONITE USA, LLC
- IMERYS CALCIUM SOLUTIONS AUSTRIA GMBH
- IMERYS CANADA 2004, INC.
- IMERYS CANADA LP
- IMERYS CARBONATES LLC
- IMERYS CERAMICS ESPAÑA
- IMERYS CERAMICS ITALIA
- IMERYS CSI SWITZERLAND SAGL
- IMERYS DIATOMITA MEXICO, SA DE CV

- IMERYS FINE CHEMICAL (CHANGSHU) CO., LTD
- IMERYS FUSED MINERALS (TAICANG) CO., LTD
- IMERYS FUSED MINERALS (ZIBO) CO., LTD
- IMERYS FUSED MINERALS HULL LIMITED
- IMERYS GECKO GRAPHITE (NAMIBIA) (PTY) LTD
- IMERYS GECKO HOLDING (NAMIBIA) (PTY) LTD
- IMERYS GECKO OKANJANDE MINING (PTY) LTD
- IMERYS GRAPHITE & CARBON (CHANGZHOU) CO., LTD
- IMERYS GRAPHITE & CARBON GERMANY GMBH
- IMERYS GRAPHITE & CARBON USA, INC.
- IMERYS ITATEX SOLUCOES MINERAIS LTDA
- IMERYS KAOLIN BELGIUM
- IMERYS KILN FURNITURE FRANCE
- IMERYS METALCASTING FRANCE SARL
- IMERYS METALCASTING GERMANY GMBH
- IMERYS MICA SUZORITE INC.
- IMERYS MINERAL AB
- IMERYS MINERALES ESPANA, S.L.
- IMERYS MINERALES PERU S.A.C.
- IMERYS MINERALES SANTIAGO LIMITADA
- IMERYS MINERALI GAMALERO SRL
- IMERYS MINERALS (HEZHOU) CO., LTD
- IMERYS MINERALS (INDIA) PRIVATE LIMITED
- IMERYS MINERALS (TAIWAN) LTD
- IMERYS MINERALS AUSTRALIA PTY LTD
- IMERYS MINERALS CALIFORNIA, INC.
- IMERYS MINERALS HONG KONG LIMITED
- IMERYS MINERALS JAPAN KK
- IMERYS MINERALS OY
- IMERYS MINERALS USA, INC.
- IMERYS MINERAUX DE TUNISIE "IMT"
- IMERYS MINING DEVELOPMENT (QINGYANG) CO., LTD
- IMERYS NEWQUEST (INDIA) PRIVATE LIMITED
- IMERYS PAPER CARBONATES LLC
- IMERYS PARTICIPACOES LTDA
- IMERYS PERLITA PAULINIA MINERAIS LTDA
- IMERYS PIGMENTS TRADING (SHANGHAI) CO., LTD
- IMERYS PIGMENTS, INC.
- IMERYS REFRACTARIOS PARTICIPACOES MONTE DOURADO LTDA
- IMERYS REFRACTORY MINERALS INTERNATIONAL SALES
- IMERYS REFRACTORY MINERALS JAPAN KK
- IMERYS RIO CAPIM CAULIM SA
- IMERYS SPECIALITIES JAPAN CO., LTD
- IMERYS STEELCASTING DO BRASIL LTDA

- IMERYS STEELCASTING INDIA PRIVATE LIMITED
- IMERYS STEELCASTING USA, INC.
- IMERYS TABLEWARE BALKANS SRL
- IMERYS TABLEWARE CR S.R.O.
- IMERYS TABLEWARE GUANGZHOU CO., LTD
- IMERYS TABLEWARE NEW ZEALAND LTD
- IMERYS TALC CALIFORNIA, INC.
- IMERYS TALC DELAWARE, INC.
- IMERYS TALC OHIO, INC.
- IMERYS TALC SPAIN, S.A.
- IMERYS TC
- IMERYS TCSI SWITZERLAND SAGL
- IMERYS TECHNOLOGY CENTER AUSTRIA GMBH
- IMERYS TOITURE BELGIE N.V.
- IMERYS VOSTOK
- IMERYS WINDFARM PROJECT LTD
- IMERYS YILONG ANDALUSITE (XINJIANG) CO, LTD
- IMPALA ADMINCO LTD
- INDUSTRIALMIN
- ISOCON S.A.
- ITACA S.R.L.
- KAOLIN AUSTRALIA PTY LTD
- KAOLINS DE NOZAY (SOCIÉTÉ ANONYME DES)
- KAOPOLITE, INC.
- KERAPLAN GMBH
- KERN TECH 1
- KERN TECH 2
- KERN TECH 3
- KERNEOS DE MEXICO SA DE CV
- KERNEOS DO BRASIL COMERCIAL LTDA
- KERNEOS ESPANA SL
- KERNEOS HOLDING GROUP SAS
- KERNEOS HOLDING NORTH AMERICA, INC.
- KERNEOS HOLDING NORTHERN EUROPE LIMITED
- KERNEOS POLSKA SP. Z.O.O.
- KERNEOS SERVICIOS SA DE CV
- KILITEAM V
- KORUND D.O.O.
- KPCL   K.V.S.
- LA FRANCAISE DES TUILES ET BRIQUES
- LAVIOSA PROMASA S.A.
- L-IMERYS INDUSTRIA E COMERCIO DE CAL LTDA
- LUXOL PHOTOVOLTAICS SN
- LUZENAC MICRO MILLING LIMITED

- MAGEMO SCI
- MASSA MINERALI SRL
- MATISCO DEVELOPPEMENT
- METALLEION METALLEYMATON
- METRAMCO (PTY) LTD
- MICRON-ITA INDUSTRIA E COMERCIO DE MINERAIS LTDA
- MINERAL HOLDINGS, INC.
- MINERALIEN SCHIFFAHRT SPEDITION UND TRANSPORT GMBH - MST
- MINERALS MILLING TUNISIA
- MINERALS TRADING, INC.
- MIRCAL ARGENTINA SRL
- MIRCAL ASIA
- MIRCAL AUSTRALIA PTY LTD
- MIRCAL BRESIL
- MIRCAL CHILI
- MIRCAL EUROPE
- MIRCAL TALC HOLDING
- MSL OVERSEAS LTD
- MULLITE COMPANY OF AMERICA – MULCOA
- N.G. JOHNSON (NORTHERN) HOLDINGS LIMITED
- N.G. JOHNSON LIMITED
- NIIGATA GCC LTD
- NIZEROLLES
- NYCO MINERALS CANADA, INC.
- ORGANIK MADENCILIK AS
- PABALK MADEN SANAYI VE TICARET A.S.
- PANSHI HUANYU WOLLASTONITE CO., LTD
- PARNASSE TRENTE ET UN
- PARNASSE TRENTE TROIS
- PARNASSE VINGT DEUX
- PERAMIN AB
- PERGEM MINERAL MADENCILIK SANAYI VE TICARET AS
- PERU MINERALS CORPORATION
- PERUCO, INC.
- PGB SA
- PLIBRICO INSTALLACIONES REFRACTARIAS
- PLIBRICO LTD
- PLR REFRACTAIRES SAS U
- PPSA OVERSEAS LTD
- PROFIMO
- PROPERTY COMPANY ONE
- PROPERTY COMPANY TWO
- PT BINAH SURINDAH CEMERLANG
- PT ESENSINDO CIPTA CEMERLANG

- PT INDOPORLEN
- PT INDOPORLEN SAKTI
- PT STOLLBERG - SAMIL INDONESIA
- PYRAMAX CERAMICS ARKANSAS, LLC
- PYRAMAX CERAMICS, LLC
- QA REFRACTORIES (PTY) LTD
- QINGDAO STOLLBERG & SAMIL CO., LTD
- QS ABRASIVI MARENGO SRL
- QUARTZ DE MAURITANIE SA
- RECURSOS MINERALES DEL NORTE, SA DE CV
- RT 043 MINERACAO LTDA
- RUMICO FEUERFESTE BAUSTOFFE GMBH
- S&B BENTONITE CHAOYANG CO., LTD
- S&B ENDUSTRIYEL MINERALLER A.S.
- S&B INDUSTRIAL MINERALS (HENAN) CO., LTD
- S&B INDUSTRIAL MINERALS (SHANGHAI) CO., LTD
- S&B INDUSTRIAL MINERALS (TIANJIN) CO., LTD
- S&B INDUSTRIAL MINERALS SPAIN S.L.U.
- S&B MINERALS FINANCE SARL
- S&B MINERALS LIMITED
- S&B MINERALS PARTICIPATIONS 2 SARL
- S&B MINERALS PARTICIPATIONS LLC
- S&B MINERALS US HOLDING GMBH
- S&B MINERALS VERWALTUNG GMBH
- S&B WINES S.A.
- SAMREC VERMICULITE (ZIMBABWE) (PRIVATE) LTD
- SCEA STE COLOMBE
- SCOVER PLUS
- SEG
- SERVICIOS PIEDRA TUMBANTE S.DE R.L. DE C.V.
- SET LININGS GMBH
- SIDEX MONOLITHIQUES SRL
- SILLA DE PAITA S.A.C.
- SLS BAUSTOFFE GESELLSCHAFT MBH
- SOCIEDAD MINERA CELITE DEL PERU SA
- SOCIETE DE VALORISATION DES MINERAUX INDUSTRIELS SAS
- SOTRIVAL
- SPRINDEALS SIX PTY LTD
- STOLLBERG & SAMI CO., LTD
- SUNWARD REFRACTORIES CO., Ltd
- TALIMMO
- TENNESSEE ELECTRO MINERALS, INC. – TECO
- TERMORAK AB
- TERMORAK OY

- TERMORAK (THAILAND) CO LTD
- TOKAI CERAMICS CO., LTD
- TREIBACHER SCHLEIFMITTEL ABRASIVES KAILI CO., LTD
- TREIBACHER SCHLEIFMITTEL ASIA LTD
- TREIBACHER SCHLEIFMITTEL INTERNATIONALE VERTRIEBS MBH
- TREIBACHER SCHLEIFMITTEL ITALIA P. MAROZZI & CO SAS
- UCM GROUP LTD
- UCM MAGNESIA, INC.
- UNITEC CERAMICS LIMITED
- VERMICULITE INTERNATIONAL SALES
- WORLD MINERALS AMERICA LATINA, SA
- WORLD MINERALS USD LLC
- WORLD MINERALS USD SARL
- YUEYANG IMERYS ANTAI MINERALS CO., LTD
- ZHENGZHOU JIANAI SPECIAL ALUMINATES CO., LTD
- ZHENGZHOU TREIBACHER SCHLEIFMITTEL TENGDA ABRASIVES CO., LTD

<u>**SCHEDULE III**</u>

**J&J Corporate Parties**

- 3Dintegrated ApS
- ABD Holding Company, Inc.
- ABIOMED R&D, Inc.
- ABIOMED, Inc.
- Acclarent, Inc.
- Actelion Ltd
- Actelion Pharmaceuticals Ltd
- Actelion Pharmaceuticals Trading (Shanghai) Co., Ltd.
- Actelion Pharmaceuticals US, Inc.
- Actelion Treasury Unlimited Company
- Albany Street LLC
- ALZA Corporation
- Alza Land Management, Inc.
- AMO (Hangzhou) Co., Ltd.
- AMO (Shanghai) Medical Devices Trading Co., Ltd.
- AMO ASIA LIMITED
- AMO Australia Pty Limited
- AMO Canada Company
- AMO Denmark ApS
- AMO Development, LLC
- AMO France
- AMO Germany GmbH A
- MO Groningen B.V.
- AMO International Holdings Unlimited Company
- AMO Ireland
- AMO Italy SRL
- AMO Japan K.K.
- AMO Manufacturing USA, LLC
- AMO Netherlands BV
- AMO Nominee Holdings, LLC
- AMO Norway AS
- AMO Puerto Rico Manufacturing, Inc.
- AMO Sales and Service, Inc.
- AMO Singapore Pte. Ltd.
- AMO Spain Holdings, LLC
- AMO Switzerland GmbH
- AMO United Kingdom, Ltd.
- AMO Uppsala AB
- Anakuria Therapeutics, Inc.
- AorTx, Inc.

- Apsis SAS
- Aragon Pharmaceuticals, Inc.
- Asia Pacific Holdings, LLC
- Atrionix, Inc.
- AUB Holdings LLC
- Auris Health, Inc.
- Backsvalan 6 Handelsbolag
- Beijing Dabao Cosmetics Co., Ltd.
- BeneVir BioPharm, Inc.
- Berna Rhein B.V.
- BioMedical Enterprises, Inc.
- Biosense Webster (Israel) Ltd.
- Biosense Webster, Inc.
- Breethe, Inc.
- C Consumer Products Denmark ApS, n/k/a Coloplast Konsumerntvarer A/S Carlo Erba OTC S.r.l.
- Centocor Biologics, LLC
- Centocor Research & Development, Inc.
- Cerenovus, Inc.
- ChromaGenics B.V.
- Ci:z. Labo Co., Ltd.
- Cilag AG
- Cilag GmbH International
- Cilag Holding AG
- Cilag Holding Treasury Unlimited Company
- Cilag-Biotech, S.L.
- Coherex Medical, Inc.
- ColBar LifeScience Ltd.
- Consumer Test Entity
- Cordis de Mexico, S.A. de C.V.
- Corimmun GmbH
- CoTherix Inc.
- CRES Holdings, Inc.
- CrossRoads Extremity Systems, LLC
- CSATS, Inc.
- Debs-Vogue Corporation (Proprietary) Limited
- DePuy Hellas SA
- DePuy International Limited
- DePuy Ireland Unlimited Company
- DePuy Mexico, S.A. de C.V.
- DePuy Mitek, LLC
- DePuy Orthopaedics, Inc.
- DePuy Products, Inc.
- DePuy Spine, LLC

- DePuy Synthes Institute, LLC
- DePuy Synthes Products, Inc.
- DePuy Synthes Sales, Inc.
- DePuy Synthes, Inc.
- Dutch Holding LLC
- ECL7, LLC
- EES Holdings de Mexico, S. de R.L. de C.V.
- EES, S.A. de C.V.
- EIT Emerging Implant Technologies GmbH
- Ethicon Endo-Surgery (Europe) GmbH
- Ethicon Endo-Surgery, Inc.
- Ethicon Endo-Surgery, LLC
- Ethicon LLC
- Ethicon Sarl Ethicon US, LLC
- Ethicon Women's Health & Urology Sarl
- Ethicon, Inc.
- Ethnor (Proprietary) Limited
- Ethnor del Istmo S.A.
- Ethnor Farmaceutica, S.A.
- Finsbury (Development) Limited
- Finsbury (Instruments) Limited
- Finsbury Medical Limited
- Finsbury Orthopaedics International Limited
- Finsbury Orthopaedics Limited
- FMS Future Medical System SA
- GATT Technologies B.V.
- GH Biotech Holdings Limited
- Global Investment Participation B.V.
- GMED Healthcare BV
- Guangzhou Bioseal Biotech Co., Ltd.
- Hansen Medical Deutschland GmbH
- Hansen Medical International, Inc.
- Hansen Medical UK Limited
- Hansen Medical, Inc.
- Healthcare Services (Shanghai) Ltd.
- I.D. Acquisition Corp.
- Innomedic Gesellschaft für
- innovative Medizintechnik und
- Informatik mbH
- J & J Company West Africa Limited
- J&J Argentina S.A.
- J&J Pension Trustees Limited
- J&J Productos Medicos & Farmaceuticos del Peru S.A.
- J.C. General Services BV

- Janssen Biologics (Ireland) Limited
- Janssen Biologics B.V.
- Janssen BioPharma, LLC
- Janssen Biotech, Inc.
- Janssen Cilag Farmaceutica S.A.
- Janssen Cilag S.p.A.
- Janssen Cilag SPA
- Janssen Cilag, C.A.
- Janssen Development
- Finance Unlimited Company
- Janssen Egypt LLC
- Janssen Farmaceutica Portugal Lda
- Janssen France Treasury Unlimited Company
- Janssen Global Services, LLC
- Janssen Holding GmbH
- Janssen Inc.
- Janssen Irish Finance Unlimited Company
- Janssen Japan Treasury Unlimited Company
- Janssen Korea Ltd.
- Janssen Mexico Treasury Unlimited Company
- Janssen Oncology, Inc.
- Janssen Ortho LLC
- Janssen Pharmaceutica (Proprietary) Limited
- Janssen Pharmaceutica NV
- Janssen Pharmaceutica S.A.
- Janssen Pharmaceutical K.K.
- Janssen Pharmaceutical Sciences Unlimited Company
- Janssen Pharmaceutical Unlimited Company
- Janssen Pharmaceuticals, Inc.
- Janssen Products, LP
- Janssen R&D Ireland Unlimited Company
- Janssen Research & Development, LLC
- Janssen Sciences Ireland Unlimited Company
- Janssen Scientific Affairs, LLC
- Janssen Supply Group, LLC
- Janssen Vaccines & Prevention B.V.
- Janssen Vaccines Corp.
- Janssen-Cilag
- Janssen-Cilag (New Zealand) Limited
- Janssen-Cilag A/S
- Janssen-Cilag AG
- Janssen-Cilag Aktiebolag
- Janssen-Cilag AS
- Janssen-Cilag B.V.

- Janssen-Cilag d.o.o. Beograd
- Janssen-Cilag de Mexico S. de R.L. de C.V.
- Janssen-Cilag Farmaceutica Lda.
- Janssen-Cilag Farmaceutica Ltda.
- Janssen-Cilag GmbH
- Janssen-Cilag International NV
- Janssen-Cilag Kft.
- Janssen-Cilag Limited
- Janssen-Cilag Manufacturing, LLC
- Janssen-Cilag NV
- Janssen-Cilag OY
- Janssen-Cilag Pharma GmbH
- Janssen-Cilag Pharmaceutical S.A.C.I.
- Janssen-Cilag Polska, Sp. z o.o.
- Janssen-Cilag Pty Ltd Janssen-Cilag S.A.
- Janssen-Cilag s.r.o.
- Janssen-Cilag, S.A.
- Janssen-Cilag, S.A. de C.V.
- Janssen-Pharma, S.L.
- J-C Health Care Ltd.
- Jevco Holding, Inc.
- JJ Surgical Vision Spain, S.L.
- JJC Acquisition Company B.V.
- JJHC, LLC
- JJSV Belgium BV
- JJSV Manufacturing Malaysia SDN. BHD.
- JJSV Norden AB
- JJSV Produtos Oticos Ltda.
- JNJ Global Business Services s.r.o.
- JNJ Holding EMEA B.V.
- JNJ International Investment LLC
- JNTL (APAC) HoldCo 2 LLC
- JNTL (APAC) HoldCo 3 Pte. Ltd.
- JNTL (APAC) HoldCo LLC
- JNTL (APAC) HoldCo Pte. Ltd.
- JNTL (Japan) HoldCo Inc.
- JNTL (Malaysia) Sdn. Bhd.
- JNTL (Middle East) HoldCo LLC
- JNTL (Puerto Rico) HoldCo GmbH
- JNTL (Shanghai) Investment Co., Ltd.
- JNTL (Switzerland) HoldCo GmbH
- JNTL (Thailand) HoldCo LLC
- JNTL (UK) HoldCo Limited
- JNTL Consumer Health (Belgium) BV

- JNTL Consumer Health (Brazil) Ltda.
- JNTL Consumer Health (Czech Republic) s.r.o.
- JNTL Consumer Health (Dominican Republic), S.A.S.
- JNTL Consumer Health (Finland) Oy
- JNTL Consumer Health (France) SAS
- JNTL Consumer Health (Hungary) Kft
- JNTL Consumer Health (India) Private Limited
- JNTL Consumer Health (New Zealand) Limited
- JNTL Consumer Health (Norway) AS
- JNTL Consumer Health (Philippines) Inc.
- JNTL Consumer Health (Poland) sp. z o.o.
- JNTL Consumer Health (Portugal) Limitada
- JNTL Consumer Health (Services) LLC
- JNTL Consumer Health (Slovakia), s.r.o.
- JNTL Consumer Health (Spain), S.L.
- JNTL Consumer Health (Taiwan) Limited
- JNTL Consumer Health (Vietnam) Co. Ltd.
- JNTL Consumer Health General Services BV
- JNTL Consumer Health I (Ireland) Limited
- JNTL Consumer Health I (Switzerland) GmbH
- JNTL Consumer Health II (Switzerland) GmbH
- JNTL Consumer Health LLC
- JNTL Consumer Health Mexico, S. de R.L. de C.V.
- JNTL Consumer Health Middle East FZ-LLC
- JNTL HoldCo 2 LLC
- JNTL HoldCo 3 LLC
- JNTL HoldCo 4 LLC
- JNTL HoldCo 5 LLC
- JNTL HoldCo 6 LLC
- JNTL HoldCo 7 LLC
- JNTL HoldCo 8 LLC
- JNTL HoldCo LLC
- JNTL Holdings 2, Inc.
- JNTL Holdings 3, Inc.
- JNTL Holdings B.V.
- JNTL Holdings, Inc.
- JNTL Ireland HoldCo 2 B.V.
- JNTL Netherlands HoldCo B.V.
- JNTL Turkey Tüketici Sağlığı Limited Şirketi
- Johnson & Johnson
- Johnson & Johnson - Societa' Per Azioni
- Johnson & Johnson (Angola), Limitada
- Johnson & Johnson (Australia) Pty Ltd
- Johnson & Johnson (Canada) Inc.

- Johnson & Johnson (China) Investment Ltd.
- Johnson & Johnson (Ecuador) S.A.
- Johnson & Johnson (Egypt) S.A.E.
- Johnson & Johnson (Hong Kong) Limited
- Johnson & Johnson (Ireland) Limited
- Johnson & Johnson (Jamaica) Limited
- Johnson & Johnson (Kenya) Limited
- Johnson & Johnson (Middle East) Inc.
- Johnson & Johnson (Mozambique), Limitada
- Johnson & Johnson (Namibia) (Proprietary) Limited
- Johnson & Johnson (New Zealand) Limited
- Johnson & Johnson (Philippines), Inc.
- Johnson & Johnson (Private) Limited
- Johnson & Johnson (Singapore) Holdco LLC
- Johnson & Johnson (Thailand) Ltd.
- Johnson & Johnson (Trinidad) Limited
- Johnson & Johnson (Vietnam) Co., Ltd
- Johnson & Johnson AB
- Johnson & Johnson AG
- Johnson & Johnson Bulgaria EOOD
- Johnson & Johnson China Ltd.
- Johnson & Johnson Consumer (Hong Kong) Limited
- Johnson & Johnson Consumer (Thailand) Limited
- Johnson & Johnson Consumer B.V.
- Johnson & Johnson Consumer Holdings France
- Johnson & Johnson Consumer Inc.
- Johnson & Johnson Consumer NV
- Johnson & Johnson Consumer Saudi Arabia Limited
- Johnson & Johnson Consumer Services EAME Ltd.
- Johnson & Johnson d.o.o.
- Johnson & Johnson de Argentina S.A.C. e. I.
- Johnson & Johnson de Chile S.A.
- Johnson & Johnson de Colombia S.A.
- Johnson & Johnson de Mexico, S.A. de C.V.
- Johnson & Johnson de Uruguay S.A.
- Johnson & Johnson de Venezuela, S.A.
- Johnson & Johnson del Ecuador, S.A.
- Johnson & Johnson Del Paraguay, S.A.
- Johnson & Johnson del Peru S.A.
- Johnson & Johnson do Brasil Industria E Comercio de Produtos Para Saude Ltda.
- Johnson & Johnson Dominicana, S.A.S.
- Johnson & Johnson Enterprise Innovation Inc.
- Johnson & Johnson European Treasury Unlimited Company
- Johnson & Johnson Finance Corporation

- Johnson & Johnson Finance Limited
- Johnson & Johnson Financial Services GmbH
- Johnson & Johnson for Export and Import LLC
- Johnson & Johnson Gateway, LLC
- Johnson & Johnson Gesellschaft m.b.H.
- Johnson & Johnson GmbH
- Johnson & Johnson GT, Sociedad Anónima
- Johnson & Johnson Guatemala, S.A.
- Johnson & Johnson Health and Wellness Solutions, Inc.
- Johnson & Johnson Health Care Systems Inc.
- Johnson & Johnson Hellas Commercial and Industrial S.A.
- Johnson & Johnson Hellas Consumer Products Commercial Societe Anonyme
- Johnson & Johnson Hemisferica S.A.
- Johnson & Johnson Holdco (NA) Inc.
- Johnson & Johnson Holdco (NA) Inc.
- Johnson & Johnson Holding GmbH
- Johnson & Johnson Holdings (Austria) GmbH
- Johnson & Johnson Inc.
- Johnson & Johnson Industrial Ltda.
- Johnson & Johnson Innovation - JJDC, Inc.
- Johnson & Johnson Innovation Limited
- Johnson & Johnson Innovation LLC
- Johnson & Johnson International
- Johnson & Johnson International (Singapore) Pte. Ltd.
- Johnson & Johnson International Financial Services Unlimited Company
- Johnson & Johnson Irish Finance Company Limited
- Johnson & Johnson K.K. Johnson & Johnson Kft.
- Johnson & Johnson Korea Selling & Distribution LLC
- Johnson & Johnson Korea, Ltd.
- Johnson & Johnson Limited
- Johnson & Johnson LLC
- Johnson & Johnson Luxembourg Finance Company Sarl
- Johnson & Johnson Management Limited
- Johnson & Johnson Medical (China) Ltd.
- Johnson & Johnson Medical (Proprietary) Ltd
- Johnson & Johnson Medical (Shanghai) Ltd.
- Johnson & Johnson Medical (Suzhou) Ltd.
- Johnson & Johnson Medical B.V.
- Johnson & Johnson Medical Devices & Diagnostics Group - Latin America, L.L.C.
- Johnson & Johnson Medical GmbH
- Johnson & Johnson Medical Greece Single Member S.A.
- Johnson & Johnson Medical Korea Ltd.
- Johnson & Johnson Medical Limited

- Johnson & Johnson Medical Mexico, S.A. de C.V.
- Johnson & Johnson Medical NV
- Johnson & Johnson Medical Products GmbH
- Johnson & Johnson Medical Pty Ltd
- Johnson & Johnson Medical S.A.
- Johnson & Johnson Medical S.p.A.
- Johnson & Johnson Medical SAS
- Johnson & Johnson Medical Saudi Arabia Limited
- Johnson & Johnson Medical Taiwan Ltd.
- Johnson & Johnson Medical, S.C.S.
- Johnson & Johnson Medikal Sanayi ve Ticaret Limited Sirketi
- Johnson & Johnson MedTech (Thailand) Ltd.
- Johnson & Johnson Medtech Colombia S.A.S.
- Johnson & Johnson Middle East FZ-LLC
- Johnson & Johnson Morocco Societe Anonyme
- Johnson & Johnson Nordic AB
- Johnson & Johnson Pacific Pty Limited
- Johnson & Johnson Pakistan (Private) Limited
- Johnson & Johnson Panama, S.A.
- Johnson & Johnson Personal Care (Chile) S.A.
- Johnson & Johnson Pharmaceutical Ltd.
- Johnson & Johnson Poland Sp. z o.o.
- Johnson & Johnson Private Limited
- Johnson & Johnson Pte. Ltd.
- Johnson & Johnson Pty. Limited
- Johnson & Johnson Romania S.R.L.
- Johnson & Johnson S.E. d.o.o.
- Johnson & Johnson S.E., Inc.
- Johnson & Johnson Sante Beaute France
- Johnson & Johnson SDN. BHD.
- Johnson & Johnson Services, Inc.
- Johnson & Johnson Surgical Vision India Private Limited
- Johnson & Johnson Surgical Vision, Inc.
- Johnson & Johnson Taiwan Ltd.
- Johnson & Johnson UK Treasury Company Limited
- Johnson & Johnson Ukraine LLC
- Johnson & Johnson Urban Renewal Associates
- Johnson & Johnson Vision Care (Australia) Pty Ltd
- Johnson & Johnson Vision Care (Shanghai) Ltd.
- Johnson & Johnson Vision Care Ireland Unlimited Company
- Johnson & Johnson Vision Care, Inc.
- Johnson & Johnson Vision Korea, Ltd.
- Johnson & Johnson, Lda
- Johnson & Johnson, S.A.

- Johnson & Johnson, S.A. de C.V.
- Johnson & Johnson, s.r.o.
- Johnson & Johnson, s.r.o.
- Johnson and Johnson (Proprietary) Limited
- Johnson and Johnson Sihhi Malzeme Sanayi Ve Ticaret Limited Sirketi
- Johnson Y Johnson de Costa Rica, S.A.
- JOM Pharmaceutical Services, Inc.
- Kenvue Inc.
- La Concha Land Investment Corporation
- McNeil AB
- McNeil Consumer Pharmaceuticals Co.
- McNeil Denmark ApS
- McNeil Healthcare (Ireland) Limited
- McNeil Healthcare (UK) Limited
- McNeil Healthcare LLC
- McNeil Iberica S.L.U.
- McNeil LA LLC
- McNEIL MMP, LLC
- McNeil Nutritionals, LLC
- McNeil Panama, LLC
- McNeil Products Limited
- McNeil Sweden AB
- Medical Device Business Services, Inc.
- Medical Devices & Diagnostics Global Services, LLC
- Medical Devices International LLC
- Medos International Sarl Medos Sarl
- MegaDyne Medical Products, Inc.
- Menlo Care De Mexico, S.A. de C.V.
- Mentor B.V.
- Mentor Deutschland GmbH
- Mentor Medical Systems B.V.
- Mentor Partnership Holding Company I, LLC
- Mentor Texas GP LLC
- Mentor Texas L.P. Mentor Worldwide LLC
- Middlesex Assurance Company Limited
- Momenta Ireland Limited
- Momenta Pharmaceuticals, Inc.
- NeoStrata Company, Inc.
- NeoStrata UG (haftungsbeschränkt)
- Netherlands Holding Company
- Neuravi Limited
- NeuWave Medical, Inc.
- Novira Therapeutics, LLC
- NuVera Medical, Inc.

- Obtech Medical Mexico, S.A. de C.V.
- OBTECH Medical Sarl
- OGX Beauty Limited
- OMJ Holding GmbH
- OMJ Pharmaceuticals, Inc.
- Omrix Biopharmaceuticals Ltd.
- Omrix Biopharmaceuticals NV
- Omrix Biopharmaceuticals, Inc.
- Ortho Biologics LLC
- Ortho Biotech Holding LLC
- Orthospin Ltd.
- Orthotaxy SAS
- Patriot Pharmaceuticals, LLC
- Peninsula Pharmaceuticals, LLC
- Percivia LLC
- Pharmadirect Ltd.
- Pharmedica Laboratories (Proprietary) Limited
- preCARDIA, Inc.
- Princeton Laboratories, Inc.
- Productos de Cuidado Personal y de La Salud de Bolivia S.R.L.
- Proleader S.A.
- Prosidyan, Inc.
- PT Integrated Healthcare Indonesia
- PT Johnson & Johnson Indonesia
- PT Johnson and Johnson Indonesia Two
- Pulsar Vascular, Inc.
- Regency Urban Renewal Associates
- RespiVert Ltd.
- Review Manager Test Entity 2
- Royalty A&M LLC
- Royalty A&M LLC
- Rutan Realty LLC
- Scios LLC
- Serhum S.A. de C.V.
- Shanghai Elsker Mother & Baby Co., Ltd
- Shanghai Johnson & Johnson Ltd.
- Shanghai Johnson & Johnson Pharmaceuticals Ltd.
- Sodiac ESV
- Spectrum Vision Limited Liability Company
- Spectrum Vision Limited Liability Partnership
- SterilMed, Inc.
- Surgical Process Institute Deutschland GmbH
- Synthes Costa Rica S.C.R., Limitada
- SYNTHES GmbH

- Synthes GmbH Synthes Holding AG
- Synthes Holding Limited
- SYNTHES Medical Immobilien GmbH
- Synthes Medical Surgical Equipment & Instruments Trading LLC
- Synthes Produktions GmbH
- Synthes Proprietary Limited
- Synthes S.M.P., S. de R.L. de C.V.
- Synthes Tuttlingen GmbH
- Synthes USA Products, LLC
- Synthes USA, LLC
- Synthes, Inc.
- TARIS Biomedical LLC
- TearScience, Inc.
- The Anspach Effort, LLC
- The Vision Care Institute, LLC
- Tibotec, LLC
- Torax Medical, Inc.
- UAB "Johnson & Johnson"
- Vania Expansion
- Verb Surgical Inc.
- Vision Care Finance Unlimited Company
- Vogue International LLC
- WH4110 Development Company, L.L.C.
- Xian Janssen Pharmaceutical Ltd.
- XO1 Limited Zarbee's, Inc.