**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>IMERYS TALC AMERICA, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-10289 (LSS)<br>(Jointly Administered)<br><br>**Ref. No. 6376** |
| In re:<br><br>CYPRUS MINES CORPORATION,[2]<br><br>Debtor. | Chapter 11<br><br>Case No. 21-10398 (LSS)<br><br>**Ref. No. 2361** |

**OBJECTION OF DEBORAH GIANNECCHINI TO THE JOINT MOTION OF THE
IMERYS DEBTORS AND THE CYPRUS DEBTOR FOR AN ORDER (I) APPROVING
THE SETTLEMENT AGREEMENT BETWEEN THE IMERYS DEBTORS, THE
CYPRUS DEBTOR, JOHNSON & JOHNSON, AND THE OTHER PARTIES THERETO,
AND (II) APPROVING THE SALE OF CERTAIN RIGHTS**

Deborah Giannecchini ("**Objector**"), by and through her undersigned counsel, hereby

submits this objection to the Joint Motion of the Imerys Debtors and Cyprus Debtor for an Order

(the "**Settlement Order**") (I) Approving the Settlement Agreement Between the Imerys Debtors,

the Cyprus Debtor, Johnson & Johnson, and Other Parties Thereto (the "**Settlement Agreement**"),

and (II) Approving the Sale of Certain Rights (the "**Settlement Motion**," Dkt. No. 6376), filed on

July 13, 2024, by Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada

Inc., the debtors and debtors-in-possession in the above-captioned cases, jointly administered

---

[1] The "**Imerys Debtors**". The last four digits of each Imerys Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Imerys Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.
[2] The "**Cyprus Debtor**." The last four digits of the Cyprus Debtor's taxpayer identification number are 0890. The Cyprus Debtor's address is 333 North Central Avenue, Phoenix, AZ 85004. Together with the Imerys Debtors, the "**Imerys/Cyprus Debtors**."

under Case No. 19-10289 (LSS), and Cyprus Mines Corporation, the debtor and debtor-in-possession in the above-captioned Case No. 21-10398 (LSS)[3] (collectively, the "**Imerys/Cyprus Debtors**"). Objector's concerns about the proposed Settlement arise from the impact it would have on the rights of holders of Talc Personal Injury Claims like her in a J&J Related Bankruptcy Case (as defined in the Settlement Agreement) ("**LTL 3.0**"). In particular, Objector objects to two separate provisions in the Settlement Agreement (one of which is mirrored in the Settlement Order).[4]

First, Objector objects to paragraph 8.9 of the Settlement Agreement and corresponding paragraph 18 of the Settlement Order, which prejudice her rights—and the rights of all other unsecured creditors—in LTL 3.0 by granting the Imerys/Cyprus Debtors an administrative expense priority in that possible future bankruptcy for the J&J Corporate Parties' payment obligations under the Settlement Agreement. These provisions are also outside the jurisdiction of this Court and are contrary to the Federal Rules of Bankruptcy Procedure and the provisions of the Bankruptcy Code regarding determination of administrative expense status.

Second, Objector objects to paragraph 8.4 of the Settlement Agreement, which commits the J&J Corporate Parties, including the debtor entity in any future LTL 3.0 bankruptcy case, to abstain from asserting the automatic stay as precluding an action for breach or enforcement of the Settlement Agreement. This provision, which is effectively a prospective stay waiver, is unenforceable in a future bankruptcy. If permitted, however, it would prejudice the rights of holders of Talc Personal Injury Claims such as the Objector, who would still be bound by the

---

[3] An identical Settlement Motion was filed on the docket of Cyprus Mines Corporation, Case No. 21-10398 (LSS) at Dkt. No. 2361.
[4] Objector has contemporaneously filed the *Motion of Deborah Giannecchini for Clarification of the Settlement Agreement Between the Imerys Debtors, the Cyrus Debtor, Johnson & Johnson, and the Other Parties Thereto* on the dockets of Imerys Talc America, Inc., Case No. 19-10289 (LSS), and Cyprus Mines Corporation, Case No. 21-10398 (LSS).

2

automatic stay, even as enforcement of the Settlement Agreement would deplete the bankruptcy estate in a future LTL 3.0 bankruptcy.

## FACTUAL BACKGROUND

1.      Objector is a talc victim with ovarian cancer and a member of the Official Talc Claimants Committee in the bankruptcies of Imerys Talc America, Inc., Imerys Talc Vermont, Inc., Imerys Talc Canada Inc. (together with the bankruptcy of the Cyprus Debtor, the "**Imerys/Cyprus Bankruptcies**"). She also has claims for her talc-caused injuries against the J&J Corporate Parties (as defined in the Settlement). She brings these Limited Objections in her individual capacity as the holder of a Talc Personal Injury Claim (as defined in the Settlement Agreement).

2.      The J&J Corporate Parties are currently soliciting votes on a pre-packaged bankruptcy plan to be filed by an as-yet unformed entity. *See* Form 8-K, Johnson & Johnson, at 2, Ex. 99.2 (May 1, 2024). This bankruptcy would be the LTL 3.0 case. LTL 3.0, if filed, would be the J&J Corporate Parties third bankruptcy filing related to talc liabilities.[5] The first two filings were both dismissed for bad faith. *In re LTL Mgmt. LLC*, 64 F.4th 84, 106-110 (3d Cir. 2023) (as amended) (dismissing the first filing); *In re: LTL Mgmt. LLC*, No. 23-12825, Dkt. No. 1211 (Aug. 11, 2023) (dismissing the second filing), *aff'd* No. 23-2971 (3d Cir. July 25, 2024).

## LIMITED OBJECTION #1

3.      Objector objects to paragraph 8.9 in the Settlement Agreement and corresponding paragraph 18 in the Settlement Order. The Settlement Agreement states:

> In the event that a J&J Related Bankruptcy Case is commenced by LLT (or any successor thereto, including if formed Red River Talc LLC and/or

---

[5] The J&J subsidiary formerly known as LTL Management LLC, has changed its name to LLT Management LLC. The contemplated prepackaged bankruptcy would have the debtor entity be an as-yet unformed subsidiary of LLT Management LLC to be named Red River LLC. As shorthand, it is this contemplated Red River LLC bankruptcy filing that is referred to herein as "LTL 3.0."

> Pecos River Talc LLC), damages, if any, payable by the debtor in such J&J
> Related Bankruptcy Case [i.e., LTL 3.0] for breach of this Agreement shall
> be administrative expense claims against its estate.

Settlement Agreement ¶ 8.9.

The Settlement Orderly similarly states:

> In the event that a J&J Related Bankruptcy Case is commenced by LLT (or
> any successor thereto, including, if formed, Red River Talc LLC and/or
> Pecos River Talc LLC) [i.e., LTL 3.0], any damages payable by the debtor
> in such J&J Related Bankruptcy Case for breach of the Settlement
> Agreement shall be administrative expense claims against its estate.

Settlement Order ¶ 18.

**A.**  **The Proposed Settlement Order Prejudices the Rights of Talc Personal Injury Claimants in an LTL 3.0 Bankruptcy by Prioritizing the Settlement Obligation over Their Claims, Despite the Settlement Purporting Not to Affect Rights of Holders of Talc Personal Injury Claims**

4.     Objector first objects to Settlement Agreement ¶ 8.9 and Settlement Order ¶ 18 because it unfairly prejudices the rights of Talc Personal Injury Claimants in a future LTL 3.0 bankruptcy. Settlement Agreement ¶ 8.9 and Settlement Order ¶ 18 prioritize damages for any breach of the Settlement Agreement, including a pre-petition breach, over the claims of the Talc Personal Injury Claimants, which are general unsecured claims.

5.     Administrative expenses of the estate have priority under 11 U.S.C. § 507(a)(2). In a Chapter 7 liquidation such administrative expenses must be paid before general unsecured claims. 11 U.S.C. § 726(a)(1)-(2). In Chapter 11, such administrative expenses must be paid in full in cash on the effective date of the plan, 11 U.S.C. § 1129(a)(9), which temporally prioritizes them above general unsecured claim, which may be paid over time and need not be paid in full.

6.      There is no reason to prioritize payment of the Settlement in an LTL 3.0 bankruptcy over the claims of the holders of Talc Personal Injury Claims.[6]

7.      These provisions of the Settlement Order and Settlement Agreement are in tension with the provisions of the Settlement Order and Settlement Agreement that claim that they do not affect the rights of the holders of Talc Personal Injury Claims to pursue the J&J Corporate Parties. *See, e.g.*, Settlement Agreement ¶¶7.10, 12.1; Settlement Order ¶ O.

## B.  **The Proposed Settlement Order Requests an Impermissible Advisory Opinion About the Priority of Damages for a Future Breach of Contract in a Bankruptcy That Has Not Yet Been Filed**

8.      Objector additionally objects to Settlement Agreement ¶ 8.9 as implemented through Settlement Order ¶ 18 on the grounds that they are outside the jurisdiction of this Court. In Settlement Agreement ¶ 8.9 and Settlement Order ¶ 18 the Imerys/Cyprus Debtors are seeking an advisory opinion. The "case or controversy" requirement of Article III of the Constitution prohibits federal courts from issuing such advisory opinions.[7] *See, e.g.*, California v. Texas, 593 U.S. 659, 673 (2021) (emphasizing federal courts' lack of power to issue advisory opinions); *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) ("Federal courts have no jurisdiction to render advisory opinions.").

9.      Instead, federal courts are restricted to ruling on actual cases or controversies. This Court lacks jurisdiction to enter Settlement Order ¶ 18 because there is currently no case or controversy regarding the priority of damages for a future breach of the Settlement Agreement in an as-yet unformed entity's as-yet unfiled bankruptcy. Until and unless there is an actual LTL 3.0

---

[6] The Imerys/Cyprus Debtors are more than adequately protected against a future breach of contract by the fact that the Settlement makes all of the J&J Corporate Parties, including J&J itself, jointly liable. On information and belief, the J&J Corporate Parties do not contemplate a bankruptcy filing by J&J itself.

[7] Objector recognizes that the Bankruptcy Court is not an Article III court. Its jurisdiction, however, arises solely from the reference by the District Court, which is an Article III court.

bankruptcy filing, no federal court has jurisdiction to determine the priority of any claim in that bankruptcy.

**C. The Proposed Settlement Order Impermissibly Requests This Court Exercise Jurisdiction over Claims Against a Non-Existent Debtor That Does Not Have a Case Pending Before This Court**

10.    The jurisdictional defect in the proposed Settlement Order and Settlement Agreement is not limited to the request for an impermissible advisory opinion. The Settlement Order and Settlement Agreement request a declaration of the priority of a claim that does not even exist in a bankruptcy that does not exist of a debtor entity that does not yet exist.

11.    Until a bankruptcy case has been commenced, no court has jurisdiction over the debtor and its property. As 28 U.S.C. § 1334(e) states, "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." Indeed, until a case has been commenced, there is no "debtor" for purposes of the Bankruptcy Code. No court presently has jurisdiction over the yet non-existent LTL 3.0 debtor entity.[8] Until and unless there is a claim against a debtor entity with a case before *this* Court, there is no jurisdiction for the Court to enter this part of the proposed Settlement Order.

**D. The Proposed Settlement Order Violates Bankruptcy Rule 3012, Which Allows Determination of the Priority of Claims Only *After* They Have Been Filed**

12.    Settlement Agreement ¶ 8.9 and Settlement Order ¶ 18 purport to determine the priority of the entirety of a claim in LTL 3.0 for damages for breach of the Settlement Agreement.

---

[8] Should there be an LTL 3.0 bankruptcy, this Court would also lack jurisdiction over the debtor unless the case were filed in the District of Delaware. A bankruptcy court presiding over a case with one set of debtors (the Imerys/Cyprus Debtors) lacks jurisdiction to determine the priority of a claim against a debtor entity (the LTL 3.0 debtor) whose bankruptcy is pending in another court. Entering the proposed Settlement Order risks impinging on the future jurisdiction of another court.

The priority of a claim cannot be determined before the claim is filed. Federal Rule of Bankruptcy Procedure 3012(b) states that "A request to determine the amount of a claim entitled to priority may be made only by motion after a claim is filed or in a claim objection." Rule 3012(b) precludes any preemptive declaratory action about the priority of a claim that has not yet been filed. It is only possible to determine the priority of a claim once it has been filed, and no claim has yet been filed or could yet be for a possible future LTL 3.0 bankruptcy.

**E.** **There Is No Authority to Declare a Garden-Variety Breach of Contract Claim an Administrative Expense**

13.     Objector also objects to Settlement Agreement ¶ 8.9 and Settlement Order ¶ 18 because there is no authority for this Court preemptively to declare that a future prepetition breach of contract is an administrative claim. Prepetition breaches of contract are general unsecured claims. As relevant here, administrative expense status is reserved for "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

14.     A pre-petition breach of the Settlement Agreement cannot be an administrative expense of an LTL 3.0 bankruptcy estate because it is not an actual, necessary cost or expense of preserving such estate. In fact, such a claim adds nothing to the estate.

15.     A post-petition breach of the Settlement Agreement by an LTL 3.0 debtor is not a possibility, as it would be duplicative of the Imerys/Cyprus Debtors' claim in an LTL 3.0 bankruptcy.[9] In any event, paragraph 18 of the Settlement Order and paragraph 8.9 of the Settlement Agreement apply equally to pre-petition and post-petition breaches.

16.     There is no basis for this Court to preemptively declare the treatment of a garden-variety breach of contract claim in a future bankruptcy and determine the rights of a to-be-formed

---

[9] Additionally, not all damages arising from post-petition actions of a debtor are administrative expenses. *See In re Phila. Newspapers*, 690 F.3d 161 (3d Cir. 2012) (damages for post-petition defamation are not an administrative expense).

bankruptcy estate. A declaration that such damages would be an administrative claim would prejudice the rights of a future debtor entity and be inconsistent with that debtor entity's duties as debtor in possession to object to any improper treatment of claims.

17.    For the above stated reasons, Objector requests that paragraph 18 be stricken from the proposed Settlement Order and that paragraph 8.9 be stricken from the proposed Settlement Agreement.

## <u>LIMITED OBJECTION #2</u>

**A.** **<u>The Proposed Settlement Agreement Impermissibly Contains a Waiver of the Automatic Stay in a Future LTL 3.0 Bankruptcy</u>**

18.    Objector objects to Paragraph 8.4 of the Settlement Agreement as an impermissible waiver of the automatic stay in a future LTL 3.0 bankruptcy to the prejudice of the holders of Talc Personal Injury Claims like the Objector.

19.    Paragraph 8.4 of the Settlement Agreement provides that:

> No Party shall assert that the automatic stay in any bankruptcy case, including any J&J Related Bankruptcy Case, precludes an action for breach or enforcement of this Agreement. J&J shall not, and shall cause the other J&J Corporate Parties, including LLT (or any successor thereto, including, if formed Red River Talc LLC and/or Pecos River Talc LLC), not to, assert that the automatic stay in any future J&J Related Bankruptcy Case filed by LLT (or any successor thereto, including, if formed Red River Talc LLC and/or Pecos River Talc LLC) would preclude, or should be extended to preclude, an action against Johnson & Johnson for breach or enforcement of this Agreement.

20.    This provision is effectively a stay waiver in a future LTL 3.0 bankruptcy. Such an agreement inconsistent with the fiduciary duty of any future LTL 3.0 debtor in possession to an LTL 3.0 bankruptcy estate. Paragraph 8.4 also prejudices the rights of the holders of Talc Personal Injury Claims like the Objector. Holders of Talc Personal Injury Claims are likely to be general unsecured creditors in a LTL 3.0 bankruptcy filing. The holders of Talc Personal Injury Claims

will be prejudiced if the automatic stay is annulled, lifted, or not asserted in an LTL 3.0 bankruptcy as it would allow LTL's funds to be siphoned off to pay the Imerys/Cyprus settlement, leaving the LTL 3.0 bankruptcy estate with fewer assets to pay the claims of holders of Talc Personal Injury Claims.[10]

21.    Accordingly, Objector requests that this language be stricken from the Settlement Agreement.

## CONCLUSION

For the reasons set forth above, Objector respectfully requests that this Court modify the proposed Settlement Order and Settlement Agreement to:

(1) strike paragraph 8.9 from the Settlement Agreement;

(2) strike paragraph 18 from the Settlement Order;

(3) strike paragraph 8.4 from the Settlement Order; and

(4) grant such additional relief as is appropriate.

A copy of the proposed order sustaining the Limited Objections is attached hereto as **Exhibit A**.

Dated: July 29, 2024          */s/ Daniel K. Hogan*
Wilmington, Delaware          Daniel K. Hogan  (DE # 2814)
                              HOGAN♦MCDANIEL
                              1311 Delaware Avenue
                              Wilmington, DE 19806
                              (302) 656-7540; (302) 656-7599 (f)
                              dkhogan@dkhogan.com

                              *-and-*

---

[10] Objector recognizes that she can always object to the lifting of the stay in an LTL 3.0 bankruptcy, but she will have to bear the costs of doing so and is not guaranteed eventual recovery of those costs for having made a "substantial contribution" to the case. The cost of defending the stay should properly be borne by the bankruptcy estate as a whole through the action of the debtor in possession.

Andy D. Birchfield, Jr.(*pro hac vice pending*)
P. Leigh O'Dell (*pro hac vice pending*)
Ted G. Meadows (*pro hac vice pending*)
Beasley, Allen, Crow, Methvin,
Portis & Miles,P.C.
218 Commerce St
Montgomery, AL, 36104

*Counsel to Deborah Giannecchini*