**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  | X | Chapter 11 |
|---|---|---|
| In re: | : |  |
|  | : | Case No. 19-10289 (LSS) |
| IMERYS TALC AMERICA, INC., *et al.,*[1] | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : | Related to Docket No. 6376 |
|  | : |  |
| In re: | : | Chapter 11 |
|  | : |  |
| CYPRUS MINES CORPORATION,[2] | : | Case No. 21-10398 (LSS) |
|  | : |  |
| Debtor. | : | Related to Docket No. 2361 |
|  | : |  |

**RESPONSE AND RESERVATION OF RIGHTS**
**OF THE RIO TINTO SETTLING PARTIES TO JOINT MOTION**
**OF THE IMERYS DEBTORS AND THE CYPRUS DEBTOR FOR AN ORDER**
**(I) APPROVING THE SETTLEMENT AGREEMENT BETWEEN THE IMERYS**
**DEBTORS, THE CYPRUS DEBTOR, JOHNSON & JOHNSON, AND THE OTHER**
**PARTIES THERETO, AND (II) APPROVING THE SALE OF CERTAIN RIGHTS**

Rio Tinto America Inc. ("Rio Tinto"), Three Crowns Insurance Company, formerly

known as Three Crowns Insurance Company Limited ("TCI") and Metals & Minerals Insurance

Company Pte. Ltd. ("MMI"), both in their own capacities and, as applicable, as successor to

Falcon Insurance Ltd. (TCI and MMI, collectively, the "Rio Tinto Captive Insurers"; Rio Tinto

and the Rio Tinto Captive Insurers, collectively, the "Rio Tinto Settling Parties") hereby submit

this response and reservation of rights (the "Response") to the *Joint Motion of the Imerys*

*Debtors and Cyprus Debtor for an Order (I) Approving the Settlement Agreement Between the*

*Imerys Debtors, the Cyprus Debtor, Johnson & Johnson, and the Other Parties Thereto, and*

---

[1] The Debtors in the Imerys cases, along with the last four digits of each Debtor's federal tax identification number, are:  Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Imerys Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2] The last four digits of the Cyprus Debtor's federal tax identification number, is 0890.  The Cyprus Debtor's address is 333 North Central Avenue, Phoenix, AZ 85004.  The Imerys Debtors, together with the Cyprus Debtors, are referred to herein as the "Imerys/Cyprus Debtors."

*(II) Approving the Sale of Certain Rights* [D.I. 6376] (the "<u>J&J Settlement Motion</u>", and related proposed order, the "<u>J&J Settlement Order</u>").  In support of this Response, the Rio Tinto Settling Parties respectfully state as follows:

1.      As this Court will recall, the Rio Tinto Settling Parties, the Imerys Debtors, and certain other parties in interest engaged in a mediation between 2019 and 2020 that led to a comprehensive settlement among those parties (the "<u>Rio Tinto/Zurich Settlement</u>"), representing a crucial step forward in the Imerys Debtors' bankruptcy cases.  That settlement has remained in place for more than four years, but it has not been finalized and consummated because it is tied to confirmation of a plan of reorganization for the Imerys Debtors, something that has eluded the Imerys Debtors up until now.

2.      The Rio Tinto/Zurich Settlement is incorporated in the *Second Joint Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (D.I. 6439) (together with all schedules and exhibits thereto, as may be modified, amended or supplemented from time to time, the "<u>Imerys Plan</u>")[3].  The Rio Tinto/Zurich Settlement provides for, among other things, the sale by the Imerys Debtors, pursuant to section 363 of the Bankruptcy Code, of certain fronting policies that were issued by Zurich American Insurance Company ("<u>Zurich</u>") naming the Imerys Debtors as insureds and certain other policies that were issued by the Rio Tinto Captive Insurers which also name the Imerys Debtors as insureds, back to Zurich and the Rio Tinto Captive Insurers, respectively, free and clear of any and all claims and interests of any third parties.  The Rio Tinto/Zurich Settlement further contemplates that the Rio Tinto Settling Parties and Zurich will receive all the protections of the releases and injunctions under the Imerys Plan and related relief.

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Imerys Plan or the J&J Settlement Motion.

3.     Under the Rio Tinto/Zurich Settlement, Rio Tinto and Zurich will collectively pay $340 million to the Imerys estates.  That has been, by far, the largest plan funding source for Imerys' reorganization to date, and will remain the second largest, with only the settlement payment payable by Johnson & Johnson ("J&J") contemplated by the J&J Settlement Motion, if approved and consummated, to exceed it.

4.     It is against this backdrop that the Rio Tinto Settling Parties file this Response. The Rio Tinto Settling Parties have no objection in principle to a settlement between the Imerys and Cyprus Debtors, on the one hand, and J&J and its affiliates, on the other, especially if that settlement increases the likelihood that the Imerys Plan can receive the requisite creditor votes so that it can be confirmed and the Rio Tinto/Zurich Settlement can then, finally, go into effect.  As evidenced by their entry into the Rio Tinto/Zurich Settlement, the Rio Tinto Settling Parties are fully supportive of the Imerys Debtors' successful emergence from bankruptcy.  The Rio Tinto Settling Parties are concerned, however, that certain provisions of the proposed settlement agreement with J&J (the "J&J Settlement Agreement") and proposed order approving the J&J Settlement Agreement (as defined above, the J&J Settlement Order; together with the J&J Settlement Agreement, the "J&J Settlement Documents") could be interpreted as inconsistent with the Rio Tinto/Zurich Settlement.

5.     To that end, counsel for the Rio Tinto Settling Parties has engaged in productive discussions with counsel for the Imerys Debtors and counsel for other parties in interest, including the Tort Claimants Committee and the Future Claimants Representative appointed in the Imerys Debtors' Chapter 11 cases and counsel for J&J, over the past several weeks and shared with counsel for the Imerys Debtors and the other parties in interest proposed

3

modifications to the J&J Settlement Documents that could resolve the Rio Tinto Settling Parties'

concerns.  The parties have engaged in good faith discussions over those potential modifications.

6.       To facilitate those discussions, the Imerys Debtors (and the other parties in

interest) agreed to extend the Rio Tinto Settling Parties' objection deadline to the J&J Settlement

Motion until today, September 6, as the parties negotiated proposed changes to the J&J

Settlement Documents.  As of this filing, the Rio Tinto Settling Parties, the Imerys Debtors and

the other parties in interest, including J&J, have yet to reach final agreement on the revisions, but

the Rio Tinto Settling Parties remain optimistic that the parties will ultimately be able to do so.

In an abundance of caution, however, the Rio Tinto Settling Parties file this Response as a

protective measure in the event that they, the Imerys Debtors, J&J and the other parties in

interest are unable to reach final agreement on revisions to the J&J Settlement Documents that

address the Rio Tinto Settling Parties' concerns.

7.       The Rio Tinto Settling Parties believe that the provisions of the J&J Settlement

Documents that are potentially inconsistent with the Rio Tinto/Zurich Settlement were

inadvertent and not intended to clash with the terms of the Rio Tinto/Zurich Settlement.

Nonetheless, it is crucial that these provisions be revised to avoid any such clash.  If, as the Rio

Tinto Settling Parties understand, the J&J Settlement Documents were not intended to affect the

Rio Tinto Settling Parties' rights and the implementation of the Rio Tinto/Zurich Settlement, the

Imerys Debtors, J&J and the other parties in interest should have no objection to these proposed

modifications, subject to any tweaking of the wording as may be required.

## RESPONSE

8.       The Rio Tinto Settling Parties' concerns focus principally on four aspects of the

J&J Settlement Documents, as set forth below.

4

I.    **The J&J Settlement Documents Need To Be Amended So That They Do Not Extinguish the Rio Tinto Settling Parties' Subrogation Rights Without Adequate Protection**

9.      The J&J Settlement Agreement contains provisions that appear to circumvent certain of Rio Tinto's and the Rio Tinto Captive Insurers' contractual rights which must be preserved in the event the Rio Tinto/Zurich Settlement is not consummated.  For example, Section 1.34 of the J&J Settlement Agreement defines the term "J&J Buyback" as the sale by the Imerys/Cyprus Debtors to J&J "of the rights of the Debtors and their Estates in the J&J Agreements … *free and clear* of any and all rights, claims or interests of any other entity, including *subrogation claims*, except as provided in Section 3.1."  J&J Settlement Agreement, Sec. 1.34 (emphasis added).  This is problematic because Rio Tinto and the Rio Tinto Captive Insurers possess subrogation rights for pre-petition defense costs they paid with respect to claims asserted against the Imerys Debtors, as well as claims for any future defense costs and/or indemnification of any liability they may incur.  The definition of "J&J Buyback," as currently drafted, together with the operative provisions of the J&J Settlement Agreement providing for the J&J Buyback, could be read to cut off those rights.

10.     To be sure, if the Imerys Plan is confirmed and the Rio Tinto/Zurich Settlement is consummated, this issue should disappear, as Rio Tinto and the Rio Tinto Captive Insurers will assign their subrogation rights to the Imerys Debtors and/or the Imerys Talc Personal Injury Trust as required by that settlement's terms, and those parties in turn will sell those rights to J&J and its affiliates.  But should the Rio Tinto/Zurich Settlement not go into effect, the J&J Settlement Documents must make clear that Rio Tinto's and the Rio Tinto Captive Insurers' subrogation rights are protected and preserved.  Because the Imerys Debtors wish to sell those rights now, in advance of confirmation of any plan of reorganization, to J&J free and clear of any

interests pursuant to the J&J Settlement Agreement, the obvious solution is for any claims of Rio

Tinto or the Rio Tinto Captive Insurers for subrogation (or otherwise) to attach to the proceeds to

be paid by J&J and its affiliates to or on behalf of the Imery Debtors under the J&J Settlement

Agreement. The Rio Tinto Settling Parties therefore request the inclusion of the following (or

substantively similar) language in the J&J Settlement Order:

> Notwithstanding anything to the contrary contained in this Order or the
> Settlement Agreement, in the event that the J&J Buyback becomes effective
> but the Rio Tinto/Zurich Settlement (as defined in the Second Joint Plan of
> Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under
> Chapter 11 of the Bankruptcy Code [Imerys D.I. 6439] (as such plan may be
> modified from time to time, the "Imerys Plan")) is for any reason not
> consummated pursuant to confirmation of the Imerys Plan, any rights that, but
> for this Order and the Settlement Agreement, any Rio Tinto Captive Insurer or
> Rio Tinto (as defined in the Imerys Plan) could have asserted against any J&J
> Corporate Party, including as subrogee (or as assignee of Zurich (as defined in
> the Imerys Plan), as subrogee) to the rights (as they would have existed but for
> this Order and the Settlement Agreement) of any of the Imerys Debtors, may
> be asserted by such Rio Tinto Captive Insurer or Rio Tinto and shall attach to
> the fifty-percent (50%) share of the J&J Initial Payment, the J&J Insurance
> Payments, and any Home Proceeds that is to be paid by J&J to the Imerys
> Designated Account (or otherwise to or for the benefit of the Imerys Debtors
> and/or their Estates), with all parties reserving their rights to dispute the actual
> value, if any, such rights would have had but for this Order and the Settlement
> Agreement.

11.    Such a provision—enabling a sale "free and clear" of a third party's interests to

occur, but providing the third party with adequate protection in the form of a lien on the sale

proceeds—is standard under Section 363. *See, e.g., In re Lucky Brand Dungarees, LLC, et al.,*

No. 20-11768 (CSS) 2020 WL 4698654, at *5 (Bankr. D. Del. Aug. 12, 2020); *In re Golfsmith*

*Int'l Holdings, Inc.*, *et al*, No. 16-12033 (LSS) 2016 WL 10574673, at *3 (Bankr. D. Del. Nov.

2, 2016); *In re Namco, LLC*, No. 13-10610 (PJW) 2013 WL 1332581, at *12 (Bankr. D. Del.

March 27, 2013).

**II.    The J&J Settlement Documents Need To Be Clarified To Make Clear That The Imerys Debtors May Go Forward With The Rio Tinto/Zurich Settlement**

12.    Another concern of the Rio Tinto Settling Parties is that the J&J Settlement Documents could be read to bar the Imerys Debtors from consummating the Rio Tinto/Zurich Settlement.  Section 6.3 of the J&J Settlement Agreement includes a covenant by the Imerys Debtors (as well as, among others, the Cyprus Debtor) "not to pursue insurance coverage, or accept any payment, under any insurance policy, for J&J Talc Claims, including to recover defense costs."  J&J Settlement Agreement, Sec. 6.3.  By its terms, that covenant covers "*any* insurance policy," and not just ones issued to J&J.  The Rio Tinto/Zurich Settlement concerns many insurance policies; it concerns, among other things, insurance policies issued by the Rio Tinto Captive Insurers and Zurich naming the Imerys Debtors as insureds, but as to which J&J and/or one or more of its affiliates may claim an interest as an "additional insured."  The Rio Tinto/Zurich Settlement Agreement provides for the Imerys Debtors and their bankruptcy estates to sell those policies back to the Rio Tinto Captive Insurers and Zurich free and clear of any interests of third parties, including J&J and any affiliates, and for the Rio Tinto Captive Insurers (and Rio Tinto) and Zurich to obtain the protections of the related releases and injunctions to be provided under the Imerys Plan, all in connection with the "payment" of some $340 million by Zurich and the Rio Tinto Settling Parties.  Thus, read literally, the J&J Settlement Documents could be read to preclude the Imerys Debtors from proceeding with the Rio Tinto/Zurich Settlement.

13.    The Imerys Debtors presumably did not agree to the J&J Settlement with the intent of making it impossible for the Imerys Debtors to consummate the Rio Tinto/Zurich Settlement.  But Section 6.3 requires amendment to address the issue, along the following lines (the principal new language is highlighted below through underlining for ease of review):

Effective upon the Execution Date and, unless and until this Agreement is terminated in accordance with Section 8 below <u>and except as otherwise provided in this Section</u>, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor Releasing Parties and Non-Debtor Releasing Parties covenant not to pursue insurance coverage, or accept any payment, under any insurance policy, for J&J Talc Claims, including to recover any defense costs; to the extent such claims have been made in the past and remain pending, the Debtor Releasing Parties and the Non-Debtor Releasing Parties shall pause any pursuit of the claims, shall so advise the party from whom they are pursuing such coverage, and shall not accept any payment for or in connection with such J&J Talc Claims. <u>Notwithstanding anything to the contrary in the immediately prior sentence or in any other provision of this Agreement, the forgoing shall not apply, and J&J (on behalf of itself and all other J&J Corporate Parties) expressly consents, to the Debtors' pursuing, and accepting payment resulting from, (a) the Imerys Settlement, Rio Tinto/Zurich Settlement, Cyprus Settlement, and XL Settlement (each as defined in the Second Joint Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code [Imerys D.I. 6439] (the "Imerys Plan")), and (b) the settlement approved by the Bankruptcy Court pursuant to that certain Order (I) Approving the Settlement Agreement Among the Imerys Debtors, the Cyprus Debtor, Cyprus Amax Minerals Corporation, and Old Republic Insurance Company and (II) Approving the Sale of Certain Insurance Policies [Imerys D.I. 6262] ((a) and (b), collectively, the "Plan Settlement Agreements"). For the avoidance of doubt, J&J, on behalf of itself and all other the J&J Corporate Parties, further acknowledges that nothing in this Agreement is intended to be inconsistent with any of the Plan Settlement Agreements and that nothing in this Agreement shall afford any J&J Corporate Party any rights to any settlement proceeds or any other rights under any of the Plan Settlement Agreements. All parties to the Plan Settlement Agreements may rely on and enforce the terms of this Section 6.3.</u>

**III.    The Cooperation Provisions In the J&J Settlement Agreement Need To Be Modified To Ensure That The Parties Can Take All Necessary Steps To Implement The Rio Tinto/Zurich Settlement, Including By Obtaining Any Required Approvals**

14.    Section 7 of the J&J Settlement Agreement contains provisions obligating the Imerys Debtors and J&J to take certain actions to further those parties' settlement. In addition, except as otherwise specified, Section 7 includes provisions barring J&J and its affiliates from filing objections or otherwise seeking relief in the Chapter 11 cases of the Imerys Debtors, and correspondingly barring the Imerys Debtors from filing objections or otherwise seeking relief in any Chapter 11 case that a J&J affiliate may file. J&J Settlement Agreement, Sec. 7. These

8

provisions contain no language expressly obligating J&J to take necessary steps to enable the Rio

Tinto/Zurich Settlement to be consummated.  And they could be read to bar the Imerys Debtors,

if a J&J affiliate does file its own bankruptcy case, from seeking relief in that case necessary to

implement the Rio Tinto/Zurich Settlement.

15.     All of this matters as a result of a confluence of circumstances.  *First*, the Rio

Tinto Settling Parties understand that J&J has claimed to be an additional insured under certain

insurance policies issued by Zurich which name the Imerys Debtors as insureds.  As noted, the

Rio Tinto/Zurich Settlement requires that the Imerys Debtors sell the relevant policies issued by

Zurich and the Rio Tinto Captive Insurers back to Zurich and the Rio Tinto Captive Insurers free

and clear of all interests of third parties, including additional insureds.  *Second*, the Rio Tinto

Settling Parties understand that J&J may have purported to assign any such rights to its affiliates

that filed for bankruptcy in the last few years in conjunction with those filings.  *Third*, while

those cases were dismissed, there have been reports that a third bankruptcy filing by a different

affiliate may occur soon; indeed, the J&J Settlement Agreement contemplates that such a filing

may occur.  J&J Settlement Agreement, Secs. 1.40, 4.3, 7.4  Accordingly, if J&J (or any of its

affiliates that claims to hold any such "additional insured" rights) purports to assign those

putative rights to the affiliate, and that affiliate then files for bankruptcy, the Imerys Debtors may

be required to seek relief from the automatic stay in that affiliate's bankruptcy case in order to

sell the policies back to the Rio Tinto Captive Insurers and Zurich free and clear of any such

interests, as is a condition precedent for completion of the Rio Tinto/Zurich Settlement.  Indeed,

in a different "mass tort" Chapter 11 case, this Court held that an insurance policy could not be

sold free and clear of the interests of an additional insured that was a debtor in its own

bankruptcy case without an order of the bankruptcy court presiding over that other case granting

relief from the stay.  *See In re Boy Scouts of America and Delaware BSA, LLC*, 642 B.R. 504,

579 (Bankr. D. Del. 2022).

16.     Accordingly, the Rio Tinto Settling Parties propose the following language be

added to both the J&J Settlement Agreement and the J&J Settlement Order:

> No J&J Corporate Party may assign any right, title or interest they may have as
> additional insureds under any Rio Tinto Captive Insurer Policies and Zurich
> Policies (as defined in the Imerys Plan) to any party (including any other J&J
> Corporate Party) other than to the Rio Tinto Captive Insurers and Zurich (as
> appropriate).

> The J&J Corporate Parties consent to the sale of the Rio Tinto Captive Insurer
> Policies and the Zurich Policies back to the Rio Tinto Captive Insurers and
> Zurich (as defined in the Imerys Plan), pursuant to the terms of the Rio
> Tinto/Zurich Settlement, free and clear of the right, title or interest any of the
> J&J Corporate Parties may have as additional insureds (or otherwise) under the
> Rio Tinto Captive Insurer Policies and the Zurich Policies (a "Free and Clear
> Sale").  The J&J Corporate Parties shall not oppose, or support any other
> person in opposing, the entry of an order in any J&J Related Bankruptcy Case
> granting relief from the stay to the extent necessary for this Court to authorize
> and approve the Free and Clear Sale.

17.     In addition, the second sentence of Section 7.4 of the J&J Settlement Agreement

should be amended as follows, expressly to permit the Imerys Debtors to seek relief from the

stay as and to the extent needed in the bankruptcy case of a J&J affiliate to permit the Imerys

Debtors to sell the applicable policies back to the Rio Tinto Captive Insurers and Zurich free and

clear of any interests the J&J affiliate may purport to have:  Clause (iv) shall become clause (v),

and a new clause (iv) shall be added, as follows: "to seek relief from the automatic stay, as and to

the extent necessary, to authorize and obtain approval for the Free and Clear Sale" (as such term

is defined therein).

IV.    **The J&J Settlement Documents Need, In General, To Be Clear That The J&J Settlement Agreement Is Intended To Be, And Shall Be Construed To Be, Consistent With the Rio Tinto/Zurich Settlement**

18.    Lastly, the J&J Settlement Documents need to be clear that the J&J Settlement Agreement is intended to work in harmony with the Rio Tinto/Zurich Settlement. As currently drafted, there is not a single reference in the J&J Settlement Agreement to the Rio Tinto/Zurich Settlement, other than a passing mention of the "Rio Tinto/Zurich Credit Contribution" (as defined in the Imerys Plan), which refers to the various rights and claims to subrogation (or indemnification or contribution) to be assigned by the Rio Tinto Settling Parties and Zurich to the Imerys Talc Personal Injury Trust under that settlement, if and when consummated. It should be made clear that nothing in the J&J Settlement Agreement is intended to be inconsistent with or to prevent the full implementation of the Rio Tinto/Zurich Settlement.

19.    This can be accomplished with the following modifications/additions to Section 7.5 of the J&J Settlement Agreement, in underlined text below:

> Each Party shall use its reasonable efforts, and take such steps and execute such documents as may be reasonably necessary and proper to effectuate the purpose and intent of, and obtain the outcomes sought by, this Agreement, including entry of the J&J Settlement Order, filing the Voting Certification, confirmation of the Plans, including the settlement agreements provided for therein, and the occurrence of the Plans' Effective Date, and to preserve the validity and enforceability of this Agreement.
>
> Notwithstanding anything to the contrary contained in this Agreement, nothing in this Agreement is intended to prevent, or shall be construed to prevent, the implementation of the Imerys Settlement, Rio Tinto/Zurich Settlement, Cyprus Settlement, and XL Settlement (each as defined in the Second Joint Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code [Imerys D.I. 6439] (the "Imerys Plan")) or the settlement approved by the Bankruptcy Court pursuant to that certain *Order (I) Approving the Settlement Agreement Among the Imerys Debtors, the Cyprus Debtor, Cyprus Amax Minerals Corporation, and Old Republic Insurance Company and (II) Approving the Sale of Certain Insurance Policies* [Imerys D.I. 6262], or is intended to be, or shall be construed as, contrary to,

modifying, or giving any J&J Corporate Party any rights under, any of the foregoing settlements.

## **RESERVATION OF RIGHTS**

20.     The Rio Tinto Settling Parties are continuing to review the J&J Settlement Documents in their current form.  Moreover, the Imerys/Cyprus Debtors and J&J may propose further amendments and modifications to the J&J Settlement Documents, including as a result of the ongoing discussions to resolve the concerns the Rio Tinto Settling Parties have raised and the objections filed by other parties.  Accordingly, the Rio Tinto Settling Parties reserve all rights to amend and supplement this Response and to submit additional briefing, argument and/or evidence in support thereof at or prior to the hearing on the J&J Settlement Motion.

## **CONCLUSION**

For the reasons set forth above, in the event the Rio Tinto Settling Parties, the Imerys Debtors, the Cyprus Debtor and J&J are unable to reach agreement on modifications addressing the Rio Tinto Settling Parties' concerns, the Rio Tinto Settling Parties respectfully request that this Court require the modifications to the J&J Settlement Agreement and J&J Settlement Order, as set forth herein, as a condition to the Court's grant of the J&J Settlement Motion.


Dated: September 6, 2024
        Wilmington, Delaware

                                        */s/ Maria Aprile Sawczuk*
                                        Maria Aprile Sawczuk (Bar No. 3320)
                                        **Goldstein & McClintock, LLLP**
                                        501 Silverside Road, Suite 65
                                        Wilmington, DE  19809
                                        Telephone:  (302) 444-6710
                                        Facsimile:   (302) 444-6709
                                        Email:  marias@goldmclaw.com

Philip D. Anker
Lauren R. Lifland
**Wilmer Cutler Pickering Hale and Dorr LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8890
Facsimile: (212) 230-8888
Email: philip.anker@wilmerhale.com
 Email: lauren.lifland@wilmerhale.com

John D. Green
Erica Villanueva
**Farella Braun + Martel LLP**
One Bush Street, Suite 900
San Francisco, CA  94104
Telephone: (415) 954-4400
Facsimile:  (415) 954-4480
Email:  jgreen@fbm.com
Email:  evillanueva@fbm.com

*Counsel for Rio Tinto and The Rio Tinto Captive
Insurers*