## Exhibit 1

**Merger Agreement**

**AGREEMENT AND PLAN OF MERGER**

THIS AGREEMENT AND PLAN OF MERGER, dated as of [●] (this "Agreement"), is entered into by and among Ivory Vermont, Inc., a Vermont corporation ("IV"), Ivory Canada, Inc., a Delaware corporation ("IC") and Ivory America, Inc., a Delaware corporation ("IA" and, together with IV and IC, the "Merging Entities").

**RECITALS**

WHEREAS, IA and IV intend to effect a merger of IV with and into IA (the "First Merger") in accordance with this Agreement and the General Corporation Law of the State of Delaware (the "DGCL") and the Vermont Business Corporation Act (the "VBCA"), upon consummation of which IV will cease to exist as a separate corporate entity, and IA will continue as the surviving corporation of the First Merger;

WHEREAS, immediately following the consummation of the First Merger, IC and IA (as the surviving corporation of the First Merger) intend to effect a merger of IC with and into IA (the "Second Merger" and together with the First Merger, the "Mergers" and each, a "Merger") in accordance with this Agreement, the plan of continuance pursuant to which Ivory Canada, Inc., a Quebec corporation ("IC Canada"), was domesticated and continued as IC (the "Domestication"), and the DGCL, upon consummation of which IC will cease to exist as a separate corporate entity, and IA will continue as the surviving corporation of the Second Merger;

WHEREAS, the board of directors of each of the Merging Entities has (a) determined that this Agreement and the transactions contemplated hereby relating to such Merging Entity, including the applicable Merger, are advisable, fair to, and in the best interests of, such Merging Entity and its sole stockholder or shareholder, as applicable, (b) authorized and approved the execution, delivery and performance of this Agreement by the applicable Merging Entity, and the First Merger and the Second Merger, as applicable, and (c) recommended the adoption of this Agreement by the sole shareholder or stockholder of the applicable Merging Entity, and directed that this Agreement be submitted for consideration and adoption by the sole shareholder or the stockholder of the applicable Merging Entity, by written consent; and

NOW, THEREFORE, in consideration of the promises, covenants and agreements contained in this Agreement, and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the Merging Entities hereby agree as follows:

1. The First Merger.

(a) Upon the terms and subject to the conditions set forth in this Agreement, at the First Merger Effective Time (as defined below), IV shall be merged with and into IA, the separate corporate existence of IV shall cease and IA shall continue as the surviving corporation of the First Merger. The First Merger shall have the effects set forth in this Agreement and in the applicable provisions of the DGCL and the VBCA. Without limiting the generality of the foregoing, and subject to the DGCL, the VBCA and this Agreement, at the First Merger Effective Time, all of the assets, properties, rights, privileges, powers and franchises of IV and IA shall vest in IA as the surviving corporation of the First Merger ("Initial Surviving Corporation"), and all debts,

liabilities, obligations and duties of IV and IA shall become the debts, liabilities, obligations and duties of the Initial Surviving Corporation.

(b) Subject to the provisions of this Agreement, a certificate of merger with respect to the First Merger in substantially the form attached hereto as Exhibit A-1 (the "First Certificate of Merger") shall be duly executed by IA and delivered to and filed with the Secretary of State of the State of Delaware in accordance with the DGCL. Concurrently with the filing of the First Certificate of Merger, articles of merger with respect to the First Merger in substantially the form attached hereto as Exhibit A-2 (the "Articles of Merger" and, together with the First Certificate of Merger, the "First Merger Required Filings") shall be duly executed by IA and IV and delivered and filed with the Secretary of State of the State of Vermont in accordance with the VBCA. The First Merger shall become effective upon the date and time of the filing of the First Merger Required Filings with the Secretary of State of the State of Delaware and with the Secretary of State of the State of Vermont, or at such later time as may be mutually agreed in writing by IA and IV or specified in the First Merger Required Filings (the "First Merger Effective Time").

(c) The certificate of incorporation and bylaws of IA as in effect as of immediately prior to the First Merger Effective Time shall be the certificate of incorporation and bylaws of the Initial Surviving Corporation until amended and/or restated in accordance with the terms thereof and the DGCL, and the directors and officers of IA immediately prior to the First Merger Effective Time shall be the directors and officers of the Initial Surviving Corporation upon the First Merger Effective Time.

(d) At the First Merger Effective Time, by virtue of the First Merger and without any further action on the part of IV, IA or any other person, (i) each share of common stock, par value $0.01 per share, of IA issued and outstanding immediately prior to the First Merger Effective Time shall remain unchanged and continue to remain outstanding as one share of common stock, par value $0.01 per share, of IA, of the Initial Surviving Corporation, and (ii) each share of common stock, par value $0.01 per share, of IV issued and outstanding immediately prior to the First Merger Effective Time shall be cancelled and shall cease to exist, and no consideration shall be delivered in exchange therefor.

2. The Second Merger.

(a) Immediately following the effectiveness of the First Merger, and upon the terms and subject to the conditions set forth in this Agreement, at the Second Merger Effective Time (as defined below), IC shall be merged with and into the Initial Surviving Corporation, the separate corporate existence of IC shall cease and the Initial Surviving Corporation shall continue as the surviving corporation of the Second Merger. The Second Merger shall have the effects set forth in this Agreement and in the applicable provisions of the DGCL. Without limiting the generality of the foregoing, and subject to the DGCL and this Agreement, at the Second Merger Effective Time, all of the property, rights, privileges, powers and franchises of IC and the Initial Surviving Corporation shall vest in the Initial Surviving Corporation as the surviving corporation of the Second Merger ("Final Surviving Corporation"), and all debts, liabilities and duties of IC and the Initial Surviving Corporation shall become the debts, liabilities and duties of the Final Surviving Corporation as the surviving corporation of the Second Merger.

(b)     Subject to the provisions of this Agreement, a certificate of merger with respect to the Second Merger in substantially the form attached hereto as Exhibit B (the "Second Certificate of Merger") shall be duly executed by the Initial Surviving Corporation and delivered to and filed with the Secretary of State of the State of Delaware in accordance with the DGCL. The Second Merger shall become effective upon the date and time of the filing of the Second Certificate of Merger with the Secretary of State of the State of Delaware, or at such later time as may be mutually agreed in writing by the Initial Surviving Corporation and IC or specified in the Second Certificate of Merger (the "Second Merger Effective Time").

(c)     The certificate of incorporation and bylaws of the Initial Surviving Corporation as in effect as of immediately prior to the Second Merger Effective Time shall be the certificate of incorporation and bylaws of the Final Surviving Corporation until amended and/or restated in accordance with the terms thereof and the DGCL, and the directors and officers of the Initial Surviving Corporation immediately prior to the Second Merger Effective Time shall be the directors and officers of the Final Surviving Corporation upon the Second Merger Effective Time.

(d)     At the Second Merger Effective Time, by virtue of the Second Merger and without any action of any person, (i) each share of common stock, par value $0.01 per share, of the Initial Surviving Corporation issued and outstanding immediately prior to the Second Merger Effective Time shall remain unchanged and continue to remain outstanding as one share of common stock, par value $0.01 per share, of the Final Surviving Corporation, and (ii) each share of common stock, par value $0.01 per share, of IC issued and outstanding immediately prior to the Second Merger Effective Time shall be cancelled and shall cease to exist, and no consideration shall be delivered in exchange therefor.

3.     Additional Obligations.  As soon as practicable after the execution and delivery hereof, this Agreement shall be duly submitted to the sole shareholder of IV and to the sole stockholder of IA and IC, as applicable for the purposes of considering and acting upon the adoption of this Agreement and approval of the transactions contemplated herein as required by law.  Each of IV, IA and IC shall use its best efforts to obtain the requisite approval of its shareholder or stockholder, as the case may be, to the adoption of this Agreement and other transactions contemplated herein.  Subject to the adoption of this Agreement and the transactions contemplated herein by the sole shareholder of IV and the sole stockholder of IA and IC, as applicable, each of IV, IC and IA shall execute and file (or cause to be executed and filed) with the appropriate officials of the State of Vermont and State of Delaware, as applicable, all documents and papers necessary and required by any such state to consummate the Mergers.  In addition to the foregoing, each of IV, IC and IA shall take every reasonable and necessary step and action to comply with and secure such approval as may be required by the statutes, rules and regulations of the State of Vermont and State of Delaware applicable to this Agreement and the transactions contemplated herein.

4.     Conditions.

(a) The respective obligation of each of IV and IA to effect the First Merger is subject to the satisfaction or waiver (except as provided in this Agreement) of the following conditions: (i) this Agreement shall have been adopted by the sole shareholder of IV in accordance with the requirements of the VBCA and the articles of incorporation and bylaws of IV, and (ii) this

Agreement shall have been adopted by the sole stockholder of IA in accordance with the requirements of the DGCL and the certificate of incorporation and bylaws of IA; and

(b) The respective obligation of each of IA and IC to effect the Second Merger is subject to the satisfaction or waiver (except as provided in this Agreement) of the following condition: this Agreement shall have been adopted by the sole stockholder of IA and IC, as applicable, in accordance with the requirements of the DGCL and the certificate of incorporation and bylaws of IA and IC, respectively.

5. <u>Agreement and Plan of Merger</u>. This Agreement shall be the "agreement of merger" and/or "plan of merger" required by the DGCL and the VBCA, as applicable.

6. <u>Additional Actions</u>. Subject to the provisions of this Agreement, the parties hereto shall take all such reasonable and lawful action as may be necessary or appropriate in order to effect the Mergers and to comply with the requirements of the DGCL and the VBCA, as applicable, including (without limitation) in connection with the Mergers. If, at any time after the First Merger Effective Time, the Initial Surviving Corporation or, if at any time after the Second Merger Effective Time, the Final Surviving Corporation shall consider or be advised that any deeds, bills of sale, assignments, assurances, certificates or documents, or any other actions or things are necessary or desirable to vest, perfect or confirm, record or otherwise, in the Initial Surviving Corporation or Final Surviving Corporation, as applicable, its right, title or interest in, to or under any of the rights, properties or assets of IV or IC, respectively, or otherwise to carry out this Agreement or consummate the Mergers, a duly authorized officer of the Initial Surviving Corporation or the Final Surviving Corporation, as applicable, shall be authorized to execute and deliver, in the name and on behalf of IV or IC, respectively, all such deeds, bills of sale, assignments, assurances, certificates or documents, and to take and do, in the name and on behalf of IV or IC, as applicable, all such other actions and things as may be necessary or desirable to vest, perfect or confirm, record or otherwise any and all right, title and interest in, to and under such rights, properties or assets in the Initial Surviving Corporation or the Final Surviving Corporation, as applicable, or otherwise to carry out this Agreement or consummate the Mergers.

7. <u>Tax Matters</u>.

(a) **Domestication**. For U.S. federal and applicable state income tax purposes, the Domestication is intended to be treated as a "reorganization" within the meaning of Section 368(a)(1)(F) of the Code (the "<u>Domestication Intended Tax Treatment</u>"), and this Agreement constitutes, and is hereby adopted as, a "plan of reorganization" in respect of the Domestication for purposes of Section 354(a)(1) of the Code and within the meaning of Treasury Regulations Sections 1.368-2(g) and 1.368-3.

(b) **First Merger**. This Agreement is hereby adopted as a "plan of liquidation" of IV as such term is used in Section 332 of the Internal Revenue Code of 1986, as amended, (the "<u>Code</u>") and applicable Treasury Regulations thereunder. For U.S. federal and applicable state income tax purposes, it is intended that the First Merger shall be treated as a distribution by IV of all of its assets and liabilities to IA in complete liquidation of IV in a transaction intended to qualify as a transaction described in Section 332(b) of the Code (the "<u>First Merger Intended Tax Treatment</u>").

4

(c) **Second Merger**. For U.S. federal and applicable state income tax purposes, the Second Merger is intended to be treated as a "reorganization" within the meaning of Section 368(a)(1)(D) of the Code (the "Second Merger Intended Tax Treatment"), and this Agreement constitutes, and is hereby adopted as, a "plan of reorganization" in respect of the Second Merger for purposes of Section 354(a)(1) of the Code and within the meaning of Treasury Regulations Sections 1.368-2(g) and 1.368-3.

The parties shall file all tax returns consistent with, and take no positions inconsistent with, the Domestication Intended Tax Treatment, the First Merger Intended Tax Treatment and the Second Merger Intended Tax Treatment, except as required by applicable law.

8. Termination. Subject to any requirements under applicable law, this Agreement may be terminated and the transactions contemplated hereby, including the Mergers, may be abandoned at any time prior to the First Merger Effective Time by action of the board of directors of any party hereto for any reason or no reason, in its sole discretion. In the event of such termination and abandonment, this Agreement shall become void *ab initio*, and none of the Merging Entities nor their respective officers, directors, shareholders or stockholders or any other person, as the case may be, shall have any liability, obligation or responsibility with respect to such termination and abandonment, to the fullest extent of the applicable law.

9. Amendment and Waiver. At any time prior to the First Merger Effective Time (as to the First Merger) or the Second Merger Effective Time (as to the Second Merger), this Agreement may, to the extent permitted by the DGCL and the VBCA, as applicable, be supplemented, amended or modified by the mutual consent of the parties hereto. Any extension or waiver of the obligations herein of any party hereto shall be valid only if set forth in an instrument in writing referring to this section and signed by the party hereto to be bound thereby. Any waiver of any term or condition shall not be construed as a waiver of any subsequent breach or a subsequent waiver of the same term or condition, or a waiver of any other term or condition, of this Agreement. The failure of any party hereto to assert any of its rights hereunder shall not constitute a waiver of any of such rights.

10. Governing Law. This Agreement shall be governed by and construed and enforced under the laws of the State of Delaware and, where applicable, the laws of the State of Vermont, regardless of the laws of any other jurisdiction that might otherwise govern under applicable principles of conflicts of law thereof.

11. Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. No party hereto may assign either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other parties hereto.

12. No Third Party Beneficiaries. This Agreement shall not confer any rights or remedies upon any person other than the parties hereto and their respective successors and permitted assigns.

13. Headings. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

14. <u>Severability</u>. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction. If the final judgment of a court of competent jurisdiction declares that any term or provision hereof is invalid or unenforceable, the parties hereto agree that the court making the determination of invalidity or unenforceability shall have the power to reduce the scope, duration, or area of the provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Agreement shall be enforceable as so modified after the expiration of the time within which the judgment may be appealed.

15. <u>Entire Agreement</u>. This Agreement, including the exhibits, agreements, documents and instruments referred to herein, constitutes the entire agreement and supersedes all other prior agreements and undertakings, both written and oral, among the parties hereto, or any of them, with respect to the subject matter hereof.

16. <u>Counterparts</u>. This Agreement may be executed in counterparts (including by DocuSign, .pdf file format or other electronic means), any of which may be executed and delivered by email or other electronic means, each of which when executed shall be deemed to be an original and all of which shall constitute one and the same agreement. For the avoidance of doubt, a party's execution and delivery of this Agreement by electronic signature and electronic transmission shall constitute the execution and delivery of a counterpart of this Agreement by or on behalf of such party and shall bind such party to the terms of this Agreement.

17. <u>Agreement on File</u>. IA shall cause a copy of this Agreement to be on file with IA, as the Final Surviving Corporation, at the following address: [ ● ]. A copy of this Agreement shall be furnished by the Final Surviving Corporation upon written request and without cost to the sole stockholder or shareholder of IV, IA or IC.

*Signature page follows.*

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above stated.

**IVORY VERMONT, INC.**

By: _____
Name:
Title:

**IVORY CANADA, INC.**

By: _____
Name:
Title:

**IVORY AMERICA, INC.**

By: _____
Name:
Title:

[Signature Page to Agreement and Plan of Merger]

# **EXHIBIT A-1**

**The First Certificate of Merger**

[To come]

## **EXHIBIT A-2**

**The Articles of Merger**

[To come]

**EXHIBIT B**

**The Second Certificate of Merger**

[To come]