**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------ x
              :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | : | Case No. 19-10289 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Re: D.I. 7918** |

------------------------------------------------------------ x
               :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CYPRUS MINES CORPORATION,[2] | : | Case No. 21-10398 (LSS) |
| | : | |
| Debtor. | : | **Re: D.I. 3557** |
| | : | |

------------------------------------------------------------ x

**RESPONSE OF THE IMERYS DEBTORS AND CYPRUS DEBTOR TO**
**CERTAIN INSURERS' MOTION IN LIMINE TO LIMIT THE SCOPE AND TIMING**
<u>**OF REBUTTAL WITNESS TESTIMONY OF JONATHAN TERRELL**</u>

Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada Inc. (collectively, the "**Imerys Debtors**") and Cyprus Mines Corporation (the "**Cyprus Debtor**," and collectively with the Imerys Debtors, the "**Debtors**"), together, by and through their undersigned counsel, submit this response in opposition to the *Certain Insurers' Motion in Limine to Limit the*

---

[1]    The Imerys Debtors, along with the last four digits of each Imerys Debtor's federal tax identification number (as applicable), are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), Imerys Talc Canada Inc. (6748). The address for Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada Inc. is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2]    The last four digits of the Cyprus Debtor's taxpayer identification number are 0890. The Cyprus Debtor's address is 333 North Central Avenue, Phoenix, Arizona 85004.

*Scope and Timing of Rebuttal Witness Testimony of Jonathan Terrell* (the "**Motion**") [Imerys D.I. 7918; Cyprus D.I. 3557], filed by the Certain Insurers (the "**Certain Insurers**"),[3] and respectfully state as follows:

## INTRODUCTION

The Certain Insurers' Motion seeks to restrict the testimony of the Debtors' expert, Jonathan Terrell, at the upcoming Confirmation Hearing by (i) limiting his testimony at the resumed confirmation hearing "consistent with Plan Proponents' disclosures and Terrell's report and deposition" (Mot. at 3), and (ii) preventing the Debtors from offering Mr. Terrell's testimony unless and only after the expert testimony of Marc Scarcella, if the Certain Insurers so elect to call Mr. Scarcella as a witness.  As to the first point, the Debtors have no objection to Mr. Terrell testifying consistently with his opinions as disclosed (assuming Mr. Scarcella and all other experts are held to that same standard).  As to the second point, the Certain Insurers' requested limitation runs counter to both the parties' long-standing stipulation regarding the presentation of evidence

---

[3]    The Certain Insurers are TIG Insurance Company, International Surplus Lines Insurance Company, Mt. McKinley Insurance Company, Fairmont Premier Insurance Company, Everest Reinsurance Company, and The North River Insurance Company; Century Indemnity Company, Federal Insurance Company, and Central National Insurance Company of Omaha; Columbia Casualty Company, Continental Casualty Company, in its own right, and as successor to CNA Casualty of California, The Continental Insurance Company, as successor to and as successor in interest to certain insurance policies issued by Harbor Insurance Company, Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company), National Union Fire Insurance Company of Pittsburgh PA, and Lexington Insurance Company to the extent they issued policies to Cyprus Mines Corporation prior to 1981; and AIU Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, Granite State Insurance Company, The Continental Insurance Company, as successor to The Fidelity and Casualty Company of New York and as successor in interest to certain policies issued by London Guarantee & Accident of New York, and Republic Insurance Company to the extent they issued policies to Standard Oil of Indiana prior to 1986; Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company and successor by merger to St. Paul Fire and Marine Insurance Company) and The Travelers Indemnity Company; Allstate Ins. Co., solely as successor in interest to Northbrook Excess & Surplus Ins. Co., formerly Northbrook Ins. Co.; Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies as specifically identified in the Notice of Appearance and Request for Service of Documents filed at Dkt. 433 in the Imerys bankruptcy cases; Employers Mutual Casualty Company, by its managing general agent and attorney-in-fact, Coaction Specialty Insurance Group, Inc.; and Hartford Accident and Indemnity Company and First State Insurance Company.

at the Confirmation Hearing, as well as relevant Third Circuit law.  On that basis, the Debtors oppose the requested relief.

In March 2025, the Debtors and the Certain Insurers negotiated and jointly submitted trial management "rules of the road" and a pre-trial schedule governing a host of trial-related logistics, with the aim of maximizing the efficiency and simplicity of the Confirmation Hearing (the "**Stipulation**").  Within those rules, all parties expressly agreed that the Plan Proponents could present their entire case together—"including any evidence that may be characterized as rebuttal evidence"; the Certain Insurers agreed to that framework without reservation.  [Imerys D.I. 7190-1; Cyprus D.I. 2982-1].  The plain language of the Stipulation leaves no doubt that the Plan Proponents were permitted to present *all* of their evidence, including anything that parties may otherwise attempt to characterize as rebuttal evidence as part of their case-in-chief.  In reliance on the Stipulation, the Plan Proponents elected certain case and trial strategies, made their witness disclosures (narrowing the witnesses who would be called at the Confirmation Hearing), and made determinations regarding their presentation of evidence.

Now, *nine months later*, the Certain Insurers ask the Court to ignore the parties' Stipulation altogether.  But there is no reason to disregard the parties' agreement.  Applicable law does not prevent the Court from hearing evidence precisely as the parties originally contemplated in their Stipulation.  To the contrary, the Third Circuit has stated that a party may present testimony from an expert originally designated as "rebuttal" expert as an affirmative witness, and the Certain Insurers cite no controlling cases otherwise.

Finally, the Certain Insurers' attempt to prevent Mr. Terrell from testifying unless Mr. Scarcella first testifies also ignores the fact that Mr. Terrell's disclosed expert opinions also serve to rebut the expert testimony of Peter J. Kelly, who already has testified on behalf of the

3

Certain Insurers. Mr. Kelly's testimony was taken out of turn to accommodate Mr. Kelly's schedule, even though that testimony was presented during the Plan Proponents' affirmative case. Unsurprisingly, the Court and parties were able to accept and understand that testimony out-of-turn. As Mr. Terrell will be addressing Mr. Kelly's testimony in any event, the relief requested in the Motion is all the more nonsensical. This is the very reason the parties entered the Stipulation to begin with—to streamline and simplify these types of issues well in advance of the Confirmation Hearing.

Because (i) the Debtors do not intend for any of Mr. Terrell's testimony to exceed the scope of those opinions he already has disclosed, (ii) the parties entered a Stipulation to provide clarity to the parties and streamline the presentation of evidence at the Confirmation Hearing, and (iii) governing Third Circuit law endorses the notion of offering testimony from an expert witness initially identified in rebuttal as an affirmative witness, the Certain Insurers' Motion should be denied.

**ARGUMENT**

A.      **The Parties' Stipulation Expressly Permits the Presentation of Evidence the Certain Insurers Now Seek to Prevent the Debtors from Offering.**

The relief the Certain Insurers seek in the Motion runs directly counter to the parties' Stipulation. Starting in early March 2025, the Debtors and Certain Insurers met and conferred regarding the presentation of evidence at the Confirmation Hearing to develop a pre-trial schedule and rules regarding trial management. *See* Salerno Decl. Ex. A; *see also* Salerno Decl. Ex. C. The parties exchanged multiple drafts and redlines as they negotiated the draft protocol addressing how the Confirmation Hearing would proceed; the sequencing of the parties' evidentiary presentation was one of the issues specifically addressed in the course of those negotiations.

In a March 4, 2025 response to the Debtors' draft Stipulation – which proposed that the Debtors' entire affirmative case be put in together, with the objecting parties' cases to follow– the Certain Insurers wrote: "NTD: Does this mean there will be no rebuttal case?"  Salerno Decl. Ex. A at 10.  On March 5, 2025, in response to these queries and after a meet and confer, the Debtors proposed a revised Stipulation that included the following language: "Plan Proponents will put on their entire case first on all issues relative to the Imerys Plan and the Cyprus Plan, **including any evidence that may be characterized as rebuttal evidence[]**".  Salerno Decl. Ex. B at 6 (emphasis added).  On March 7, 2025, the Certain Insurers sent the Debtors a final draft of the Stipulation that left the rebuttal evidence language unmodified, stating that they had "no further comments to the revised pre-trial schedule".  Salerno Decl. Ex. D at 1.

On March 17, 2025, the Debtors, in agreement with the Certain Insurers and United States Trustee, filed the Stipulation, with the Court.  [Imerys D.I. 7190-1; Cyprus D.I. 2982-1].  The as-filed Stipulation states:

> [T]he Plan Proponents will put on their entire case first on all issues relative to the Imerys Plan and the Cyprus Plan, ***including any evidence that may be characterized as rebuttal evidence***.  Once the Plan Proponents rest, the Objecting Parties will put in their entire cases on both the Imerys Plan and the Cyprus Plan.

[Imerys D.I. 7190-1; Cyprus D.I. 2982-1] (emphasis added).

Not only was this language agreed to and memorialized, but afterwards on March 26, 2025, the Debtors filed a separate letter with the Court advising that the parties had agreed to "rules of the road" for governing the presentation of evidence and noted that there were a few open issues. The open issues did not include the ordering of witnesses, which was a topic already addressed in the Stipulation.  [Imerys D.I. 7272; Cyprus D.I. 3037].  On March 31, 2025, the Certain Insurers responded to this letter addressing open issues and did not raise *any* issue with respect to the

5

presentation of witnesses or the presentation of Mr. Terrell's testimony. [Imerys D.I. 7314; Cyprus D.I. 3060].

Although the Certain Insurers now refer to the agreed-to presentation approach as "inefficient and nonsensical," this exact issue was thoroughly negotiated and the parties' agreement was memorialized in the Stipulation. It is neither inefficient nor nonsensical. The Plan Proponents elected to disclose the witnesses they would call—and not call—at the Confirmation Hearing based on the Stipulation.

The Certain Insurers *know* that they are bound by their agreement in the Stipulation, and so they attempt to recast it as applying only to presentation of *fact* witness all at once. Mot. at 4. That is unsupported by the language of the Stipulation and the contemporaneous communications surrounding the negotiation of the Stipulation. The Stipulation explicitly addresses evidence and testimony beyond that of a fact witness. Moreover, the Certain Insurers' comments during the course of those negotiations confirm their contemporaneous understanding—that all evidence, including rebuttal, could be put on in the Debtors' affirmative case. The Certain Insurers should be held to their agreement, which the Debtors (and Plan Proponents more broadly) relied on in preparing for the Confirmation Hearing and identifying witnesses, including to make clear their intention that Mr. Terrell could be called as an affirmative witness.[4]

The Certain Insurers also attempt to reframe the Stipulation using an April 22, 2025 communication from the Debtors, wherein there was discussion about calling Mr. Terrell *last* at

---

[4]    Certain Insurers assert that the Debtors did not intend to call Mr. Terrell during their case-in-chief when Debtors requested an adjournment. However, the Debtors requested that the court hold the record open during that time and noted that, when the continued proceeding is resumed, the Debtors would recall witnesses and present expert witnesses that have yet to take the stand, which referenced Mr. Terrell. Salerno Decl. Ex. E at 70:23-25, 72:21-25 (4.28 Trial Transcript).

the April Plan Confirmation Hearing.  Mot. at 5.  The exhibit that Certain Insurers cite to is an email from Amy Quartarolo, counsel for the Imerys Debtors, with a list of the "current thinking on witness order[.]"  Mr. Terrell's name is listed last, but, notably, his name is accompanied by a question mark, indicating uncertainty regarding the sequence of his testimony.  Andrews Decl. ¶ 5; Ex. D at 3-4.  At the time, the parties were working together in an attempt to accommodate the schedule of each witness.  This email shows nothing more than the parties' cooperative efforts to work through which witness would testify when; it does not suggest that the Debtors were compromising their ability to call Mr. Terrell affirmatively, nor does it indicate that the Debtors were willing to modify the portion of the Stipulation that expressly permits the Plan Proponents to present evidence that could be characterized as rebuttal evidence in their case-in-chief.

The Certain Insurers assert that if they elect not to call Mr. Scarcella, then Mr. Terrell's testimony "would be superfluous and should not be heard."  Mot. at 4.  That position does not merely seek to dictate the timing of Mr. Terrell's testimony; it attempts to control whether he may testify at all.  This suggestion is particularly inappropriate given that Mr. Kelly—whose opinions Mr. Terrell directly addresses—has already testified at the April Confirmation Hearing.  For this reason alone, Mr. Terrell is entitled to testify regardless of whether the Certain Insurers elect to call Mr. Scarcella.  And because the Stipulation memorializes the parties' contemplated and agreed presentation of evidence, the testimony of Mr. Terrell can be presented once, efficiently, in the Debtors' case-in-chief if they so choose to call him affirmatively, regardless of the Certain Insurers' attempts to deviate from the Stipulation to which they agreed.

**B.**      **Third Circuit Precedent Endorses Offering  "Rebuttal" Experts in a Party's Case-in-Chief at Trial.**

The Stipulation is wholly consistent with Third Circuit law, which has endorsed the view that an expert's testimony—even "rebuttal" testimony—can be offered by a party affirmatively, as the parties agreed could happen in connection with the Confirmation Hearing.  As Chief Judge Becker succinctly stated: "The Federal Rules of Civil Procedure, and Rule 26(a)(2) governing the disclosure and discovery of expert witnesses in particular, make no distinction between the *permissible uses* of 'regular' experts and 'rebuttal' experts" and, as such, there is "no reason to prevent the plaintiffs from using [a rebuttal expert] in their case-in-chief at trial."  *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 259 (3d Cir. 1999) (emphasis added).

The Third Circuit in *Callahan* considered whether testimony from a rebuttal expert could be used affirmatively to support the plaintiff's case.  The defendants contended that the court was barred from relying on such testimony in opposing summary judgment because of the expert's rebuttal designation.  The court disagreed, concluding that a witness's "rebuttal expert" label does not prevent reliance on the testimony affirmatively.  *Callahan*, 182 F.3d at 259.  Even though the issue in *Callahan* was decided in the context of a summary judgment motion, Chief Judge Becker made clear that rebuttal expert testimony may be presented during the "case-in-chief at trial."  *Id*. Courts in this Circuit, and outside Circuits, have since relied on *Callahan* to hold that a rebuttal expert's testimony could be utilized to support a party's affirmative case.  *See e.g., United States Fid. & Guar. Co. v. Brown*, 2003 U.S. Dist. LEXIS 27654 (M.D. Pa. Mar. 7, 2003); *Flint Hills Res. LP v. Lovegreen Turbine Servs.*, 2008 WL 4527816 (D. Minn. Sept. 29, 2008).

In *United States Fid. & Guar. Co.*, after finding that the plaintiff timely submitted a rebuttal expert report, the court cited to *Callahan* in ruling that a rebuttal expert could be used to support plaintiff's prima facie case and denying a motion to strike.  *United States Fid. & Guar. Co.*, 2003 U.S. Dist. LEXIS 27654 at *6.  Similarly, during a jury trial in *Flint Hills Res. LP*, the court

8

allowed an expert originally designated as a rebuttal expert to testify during the case-in-chief, citing to *Callahan*. *Flint Hills Res.*, 2008 WL 4527816, at \*7. The court later reaffirmed that determination in denying a motion for a new trial based in part on the admission of the rebuttal expert's testimony during the case-in-chief. *Id.*

In their November 21, 2025 letter to the Court [Imerys D.I. 7928; Cyprus D.I. 3564], the Certain Insurers rely on *NIC Holding Corp. v. Lukoil, Pan Americas*, 2009 WL 996408 (S.D.N.Y. Apr. 14, 2009) to argue that Rule 26 of the Federal Rules of Civil Procedure, as amended post-*Callahan*, draws a bright-line distinction between rebuttal and regular experts. But Rule 26 was only stylistically reorganized in 2007—not substantively amended.[5] Indeed, a plain reading of the language governing rebuttal disclosures reveals that it remains substantively unchanged.[6] The crux of the Third Circuit's analysis in *Callahan*—that Rule 26(a)(2) made no distinction between "the *permissible uses* of 'regular' experts and 'rebuttal' experts"—remains just as true now as prior to Rule 26's amendment in 2007. *Callahan*, 182 F.3d at 259 (emphasis added). Because the

---

[5]    Although the defendant in *NIC Holding Corp.* stated that there was a 2000 amendment that added section (C)(ii) to Rule 26, it was not until 2007 where Rule 26 added that sub-bullet differentiation. Fed. R. Civ. P. 26(a)(2)(C)(ii) (2007 ed.) (restyling Rule 26 and, for the first time, breaking Rule 26(a)(2)(C) into subparagraphs—including (ii)—as a purely stylistic change).

[6]    The definition of a rebuttal expert ("evidence [] intended solely to contradict or rebut evidence on the same subject matter identified by another party") already was included in the disclosure requirements of Rule 26 that existed when the Third Circuit ruled in *Callahan*. *Compare* Fed. R. Civ. P. 26(a)(2)(C) (1993 ed.) (in regard to disclosure of expert testimony: "These disclosures shall be made […]at least 90 days before the trial date […] or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party…") *with* Fed. R. Civ. P. 26(a)(2)(C)(ii) (2007 ed.) (disclosure of expert testimony shall be made "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure."). The Certain Insurers offer no explanation of why this amendment should lead this court to abandon *Callahan*, particularly when other courts in this circuit continued to follow it after the 2007 amendment.

RLF1 34317010v.1

amendments to Rule 26 post-*Callahan* did not substantively change its meaning, the Third Circuit's interpretation and reasoning in *Callahan* should be followed here.

The Certain Insurers do not identify controlling case law to the contrary. Rather, they point the Court to cases standing for the noncontroversial position that rebuttal testimony "is not an opportunity for the correction of any oversight in the [party]'s case-in-chief." *In re President Casinos, Inc.*, 2007 WL 7232932, at \*2 (Bankr. E.D. Mo. May 16, 2007) (striking rebuttal expert testimony that addressed no unforeseen facts and was identical to affirmative experts); *see also Wang v. Injective Labs Inc.,* 2025 WL 775530, at \*1 (D. Del. Mar. 11, 2025) (same). No such circumstances exist here, and there is no risk of duplicative or cumulative testimony in Mr. Terrell's disclosed opinions. The Certain Insurers' reliance on *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997), in which the court excluded expert testimony on undisclosed matters, are similarly irrelevant here, as Mr. Terrell's opinions have been fully and timely disclosed. And the Certain Insurers' citation to *CPR Assocs., Inc. v. Southeastern Pennsylvania Ch. of Am. Heart Ass'n, Pa. Affiliate Inc.*, to bolster their argument that rebuttal evidence can only be presented by a party after they have rested their case, is also inapt. 1991 WL 53674 (E.D. Pa. Apr. 5, 1991). That case dealt with a late-raised rebuttal witness where plaintiff had announced it would conclude its case the next day and did not depose the witness before trial. *Id.* at \*16-17. Here, the Debtors seek to present Mr. Terrell—who was deposed by the Certain Insurers nearly a year ago— regardless of whether Mr. Scarcella testifies.

Thus, not only is the Debtors' approach consistent with the Stipulation, it is supported by applicable Third Circuit authority allowing rebuttal-designated experts to testify affirmatively. The Certain Insurers' arguments conflict with the Stipulation that they agreed to and find no

10

support in controlling caselaw.  There is no justification for granting the relief they seek in the Motion.

## <u>CONCLUSION</u>

For these reasons, the Debtors ask that the Court deny the Certain Insurers' Motion and permit the Debtors to call Mr. Terrell as a witness consistent with the Stipulation and applicable Third Circuit law.

*[Remainder of page intentionally left blank]*

RLF1 34317010v.1

Dated: December 5, 2025

Respectfully Submitted,

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ *Michael J. Merchant*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:   (302) 651-7700
Facsimile:    (302) 651-7701
E-mail: collins@rlf.com
merchant@rlf.com
ramos@rlf.com
haywood@rlf.com
silveira@rlf.com

– and –

**LATHAM & WATKINS LLP**

/s/ *Amy C. Quartarolo*
Jeffrey E. Bjork (admitted pro hac vice)
Kimberly A. Posin (admitted pro hac vice)
Amy C. Quartarolo (admitted pro hac vice)
Shawn P. Hansen (admitted pro hac vice)
Isaac J. Ashworth (admitted pro hac vice)
10250 Constellation Blvd., Suite 1100
Los Angeles, California  90067
Telephone:   (213) 485-1234
Facsimile:    (213) 891-8763
jeff.bjork@lw.com
kim.posin@lw.com
amy.quartarolo@lw.com
shawn.hansen@lw.com
isaac.ashworth@lw.com

*Counsel to the Imerys Debtors and Debtors-in-Possession*

**REED SMITH LLP**

/s/ *Cameron A. Capp*
Kurt F. Gwynne (No. 3951)
Jason D. Angelo (No. 6009)
Cameron A. Capp (No. 7173)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone:   (302) 778-7500
Facsimile:    (302) 778-7575
kgwynne@reedsmith.com
jangelo@reedsmith.com
ccapp@reedsmith.com

– and –

Paul M. Singer (*pro hac vice*)
Andrew J. Muha (*pro hac vice*)
Luke A. Sizemore (*pro hac vice*)
Victoria A. Russell (*pro hac vice*)
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:   (412) 288-3131
Facsimile:    (412) 288-3063
psinger@reedsmith.com
amuha@reedsmith.com
lsizemore@reedsmith.com
vrussell@reedsmith.com

*Counsel to the Cyprus Debtor and Debtor-in-Possession*

RLF1 34317010v.1