## EXHIBIT B

### Talc Personal Injury Trust Agreement

**IVORY AMERICA/CYPRUS PERSONAL INJURY TRUST AGREEMENT**

# CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST ..................................................................................3

    1.1    Creation and Name ...................................................................................3
    1.2    Purpose......................................................................................................4
    1.3    Transfer of Assets ....................................................................................4
    1.4    Acceptance of Assets and Assumption of Liabilities ..............................5

ARTICLE II POWERS AND TRUST ADMINISTRATION ........................................................6

    2.1    Powers......................................................................................................6
    2.2    General Administration...........................................................................10
    2.3    Claims Administration ...........................................................................15
    2.4    Medicare Reporting Obligations............................................................15

ARTICLE III ACCOUNTS, INVESTMENTS, AND PAYMENTS ..............................................16

    3.1    Accounts .................................................................................................16
    3.2    Investments ............................................................................................17
    3.3    Source of Payments................................................................................19

ARTICLE IV TRUSTEES; DELAWARE TRUSTEE..............................................................20

    4.1    Number ...................................................................................................20
    4.2    Term of Service.......................................................................................21
    4.3    Appointment of Successor and New Trustees ........................................21
    4.4    Liability of Trustees and Others .............................................................23
    4.5    Compensation and Expenses of the Trustees.........................................23
    4.6    Indemnification of Trustees and Others.................................................24
    4.7    Lien ........................................................................................................26
    4.8    Trustees' Employment of Experts .........................................................26
    4.9    Trustee Independence ............................................................................26
    4.10   No Bond..................................................................................................27
    4.11   Delaware Trustee ...................................................................................27

ARTICLE V TRUST ADVISORY COMMITTEES .................................................................31

    5.1    Members .................................................................................................31
    5.2    Duties .....................................................................................................31
    5.3    Term of Office ........................................................................................32
    5.4    Appointment of Successors.....................................................................33
    5.5    Employment of Professionals by the TACs............................................34
    5.6    Compensation and Expenses of the TACs.............................................35

i

ARTICLE VI THE FCRS ...................................................................................................36

    6.1     Duties ...............................................................................................36
    6.2     Term of Office ..................................................................................37
    6.3     Appointment of Successor ................................................................38
    6.4     Employment of Professionals by the FCRs .......................................38
    6.5     Compensation and Expenses of the FCRs .........................................40

ARTICLE VII GENERAL PROVISIONS ......................................................................40

    7.1     Procedures for Consulting with or Obtaining Consent of the TACs and FCRs ................................................................................................40
    7.2     Irrevocability ....................................................................................43
    7.3     Term; Termination ............................................................................43
    7.4     Amendments .....................................................................................46
    7.5     Severability ......................................................................................48
    7.6     Notices .............................................................................................48
    7.7     Successors and Assigns .....................................................................50
    7.8     Limitation on Claim Interests for Securities Laws Purposes ...............50
    7.9     Entire Agreement; No Waiver ...........................................................51
    7.10    Headings ...........................................................................................51
    7.11    Governing Law .................................................................................51
    7.12    Settlors' Representative and Cooperation ..........................................52
    7.13    Dispute Resolution ...........................................................................52
    7.14    Enforcement and Administration .......................................................53
    7.15    Effectiveness ....................................................................................53
    7.16    Counterpart Signatures .....................................................................54

ii

## <u>IVORY AMERICA/CYPRUS PERSONAL INJURY TRUST AGREEMENT</u>

This Ivory America/Cyprus Personal Injury Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of _____, 2025, is entered into pursuant to the *Second Joint Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Imerys Docket No. ____] (as may be further amended, supplemented or modified, the "**Imerys Plan**"),[1] and the *Third Modified First Amended Plan of Reorganization of Cyprus Mines Corporation Under Chapter 11 of the Bankruptcy Code* [Cyprus Docket No. ____] (as may be further amended, supplemented, or modified, the "**Cyprus Plan**" and, together with the Imerys Plan, the "**Plans**"), by and among Imerys Talc America, Inc. and its debtor affiliates (referred to as the "**Imerys Debtors**"), the debtors and debtors-in-possession whose Chapter 11 Cases are administered under Case No. 19-10289 (LSS) (the "**Imerys Chapter 11 Cases**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"); Cyprus Mines Corporation (referred to as the "**Cyprus Debtor**" and, together with the Imerys Debtors, the "**Debtors**"), the debtor and debtor-in-possession whose Chapter 11 Case is administered under Case No. 21-10398 (LSS) in the Bankruptcy Court (the "**Cyprus Chapter 11 Case**"); the legal representative for any and all persons who may assert Talc Personal Injury Demands associated with Ovarian Cancer Claims or Other Gynecological Disease Claims (each as defined in the TDP) payable from Fund A (the "**Post-Effective Date Ovarian Cancer FCR**"); the legal representative for any and all persons who may assert Talc Personal Injury Demands associated with Mesothelioma Claims,

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Imerys Plan or the Cyprus Plan (as defined herein) or the TDP (as defined herein), as the context requires or as indicated herein, and such definitions are incorporated herein by reference.  All capitalized terms not defined herein or in the Plans or the TDP, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

Lung Cancer Claims, or Other Non-Gynecological Disease Claims (each as defined in the TDP) payable from Fund B (the "**Post-Effective Date Mesothelioma / Lung Cancer FCR**" and with the Post-Effective Date Ovarian Cancer FCR, the "**FCRs**"); Wilmington Trust, National Association, as the Delaware resident trustee hereunder (the "**Delaware Trustee**"); the Trustees identified on the signature pages hereof (the "**Trustees**"); and the Trust Advisory Committees (the "**TACs**") whose members are identified on the signature pages hereof (the TACs together with the Debtors, the FCRs, the Delaware Trustee, and the Trustees, the "**Parties**");

**WHEREAS,** the Imerys Debtors have reorganized under the provisions of Chapter 11 of the Bankruptcy Code in the Imerys Chapter 11 Cases;

**WHEREAS**, the Cyprus Debtor has reorganized under the provisions of Chapter 11 of the Bankruptcy Code in the Cyprus Chapter 11 Case;

**WHEREAS,** the Confirmation Order in the Imerys Chapter 11 Cases (the "**Imerys Confirmation Order**") has been entered by the Bankruptcy Court and the Affirmation Order (as defined in the Imerys Plan) entered by the District Court;

**WHEREAS,** the Confirmation Order in the Cyprus Chapter 11 Case (the "**Cyprus Confirmation Order**" and, together with the Imerys Confirmation Order, the "**Confirmation Orders**") has been entered by the Bankruptcy Court and the Affirmation Order (as defined in the Cyprus Plan) entered by the District Court;

**WHEREAS,** the Plans provide, *inter alia,* for the creation of the Ivory America/Cyprus Personal Injury Trust (the "**Trust**");

**WHEREAS,** pursuant to the Plans, the Trust is to use its assets and income to resolve all Talc Personal Injury Claims as defined in the Imerys Plan and all Talc Personal Injury Claims as defined in the Cyprus Plan (collectively, "**Talc Personal Injury Claims**");

2

**WHEREAS,** it is the intent of the Debtors, the FCRs, the Trustees, and the TACs that the Trust will value, and be in a financial position to pay, Talc Personal Injury Claims that involve similar claims in substantially the same manner and in accordance with the terms of this Trust Agreement and the Trust Distribution Procedures (the "**TDP**") attached to the Plans as Exhibit A;

**WHEREAS,** all rights of the holders of Talc Personal Injury Claims arising under this Trust Agreement and the TDP shall vest upon the Effective Date;

**WHEREAS,** pursuant to the Plans, the Trust is intended to qualify as a "qualified settlement fund" (a "**Qualified Settlement Fund**") within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"); and

**WHEREAS,** the Bankruptcy Court has determined that the Trust and the Plans satisfy all the prerequisites for issuance of an injunction pursuant to sections 524(g) and 105(a) of the Bankruptcy Code with respect to any and all Talc Personal Injury Claims, and such injunction has been entered in connection with the Confirmation Orders;

**NOW, THEREFORE,** it is hereby agreed as follows:

**ARTICLE I**

**AGREEMENT OF TRUST**

**1.1**    **Creation and Name**.

(a)    The Debtors as settlors ("**Settlors**") hereby create a trust known as the "Ivory America/Cyprus Personal Injury Trust," which is the Trust provided for and referred to in the Plans.  The Trustees of the Trust may transact the business and affairs of the Trust in the name of the Trust, and references herein to the Trust shall include the Trustees acting on behalf of the Trust.  It is the intention of the Parties that the Trust constitutes a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del.  C. § 3801 *et seq.* (the "**Act**") and that this document

3

constitute the governing instrument of the Trust.  The Trustees and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit 1.

      **1.2**    __Purpose__.  The purpose of the Trust is to assume all liabilities and responsibility for all Talc Personal Injury Claims and, among other things, to: (a) direct the processing, liquidation, and payment of all Talc Personal Injury Claims in accordance with the Plans, the TDP, and the Confirmation Orders; (b) preserve, hold, manage, and maximize the assets of the Trust for use in paying and resolving Talc Personal Injury Claims; and (c) qualify at all times as a Qualified Settlement Fund.  The Trust is to use the Trust's assets and income to pay the holders of all Talc Personal Injury Claims in accordance with this Trust Agreement and the TDP in such a way that such holders of Talc Personal Injury Claims are treated fairly, equitably, and reasonably in light of the assets available to resolve such claims, and to otherwise comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code.

      **1.3**    __Transfer of Assets.__  Pursuant to, and in accordance with Article IV of the Imerys Plan and Article IV of the Cyprus Plan, as applicable, the Trust has received the Talc Personal Injury Trust Assets[2] to fund the Trust and settle or discharge all Talc Personal Injury Claims.  In all events, the Talc Personal Injury Trust Assets or any other assets to be transferred to the Trust under the Plans will be transferred to the Trust free and clear of any liens or other claims by the Debtors, the Reorganized Debtors as defined in the Imerys Plan (the "**Imerys Reorganized Debtors**"), the Reorganized Debtor as defined in the Cyprus Plan (the "**Cyprus Reorganized Debtor**" and together with the Imerys Reorganized Debtors, the "**Reorganized Debtors**"), the other Protected Parties as defined in the Imerys Plan (the "**Imerys Protected Parties**"), the other

---

[2] The "**Talc Personal Injury Trust Assets**" refer to the Trust Assets as that term is defined in the TDP.

Protected Parties as defined in the Cyprus Plan (the "**Cyprus Protected Parties**" and, together with the Imerys Protected Parties, the "**Protected Parties**"), any creditor, or other entity, except as otherwise provided in the Plans.  Article IV of the Imerys Plan and Article IV of the Cyprus Plan provide for the Debtors and the Reorganized Debtors, among others, to execute and deliver such documents to the Trust as the Trustees may request to effectuate the transfer and assignment of any Talc Personal Injury Trust Assets to the Trust.

      **1.4**      **Acceptance of Assets and Assumption of Liabilities**.

      (a)      In furtherance of the purposes of the Trust, the Trust hereby expressly accepts the transfer to the Trust of the Talc Personal Injury Trust Assets and any other transfers contemplated by the Plans in the time and manner as, and subject to the terms, contemplated in the Plans.

      (b)      In furtherance of the purposes of the Trust, the Trust expressly assumes all liabilities and responsibility for all Talc Personal Injury Claims (except as set forth in the Plans) and the indemnification obligations in Section 4.13 of the Imerys Plan and Section 4.13 of the Cyprus Plan, in substitution for the financial or other responsibility or liability of the Reorganized Debtors therefor and neither the Reorganized Debtors nor any of the Protected Parties shall have any further financial or other responsibility or liability therefor except as explicitly set forth in the Plans.  Except as otherwise provided in this Trust Agreement and the TDP, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors or the Reorganized Debtors have or would have had under applicable law.  Regardless of the foregoing, however, a claimant must meet otherwise applicable federal, state and foreign statutes of limitations and repose, except as otherwise provided in Section 5.1(a)(ii) of the TDP.

US-DOCS\163468783RLF1 33768897v.1

(c)     Notwithstanding anything to the contrary herein, no provision herein or in the TDP shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a Qualified Settlement Fund under the QSF Regulations.

(d)     Nothing in this Trust Agreement shall be construed in any way to limit (i) the scope, enforceability, or effectiveness of the Injunctions in the Plans or (ii) the Trust's assumption of liability for all Talc Personal Injury Claims subject to the provisions of Section 1.4(b) above and the Plans.

(e)     In this Trust Agreement and the TDP, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(f)     To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the Trust (the "**Beneficial Owners**") shall be deemed to be the holders of Talc Personal Injury Claims; provided that (i) the holders of Talc Personal Injury Claims, as such Beneficial Owners, shall have only such rights with respect to the Trust and its assets as are set forth in the TDP and (ii) no greater or other rights, including upon dissolution, liquidation, or winding up of the Trust, shall be deemed to apply to the holders of Talc Personal Injury Claims in their capacity as Beneficial Owners.

## ARTICLE II

## POWERS AND TRUST ADMINISTRATION

### 2.1     **Powers**.

(a)     The Trustees are and shall act as fiduciaries to the Trust in accordance with the provisions of this Trust Agreement, the Plans and the Confirmation Orders.  The Trustees shall, at all times, administer the Trust and the Talc Personal Injury Trust Assets in accordance with the purposes set forth in Section 1.2 above.  Subject to the limitations set forth in this Trust Agreement,

6

the Trustees shall have the power to take any and all actions that, in the judgment of the Trustees, are necessary or proper to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)    Except as required by applicable law or otherwise specified herein, the Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)    Without limiting the generality of Section 2.1(a) above, and except as limited herein, by the Plans, or by the TDP, the Trustees shall have the power to:

(i)    receive and hold the Talc Personal Injury Trust Assets and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the Talc Personal Injury Trust Assets;

(ii)    invest the monies held from time to time by the Trust;

(iii)    enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Trust to operate;

(iv)    pay liabilities and expenses of the Trust including the indemnification obligations set forth in section 4.13 of the Imerys Plan and Section 4.13 of the Cyprus Plan;

(v)    establish such funds, reserves, and accounts within the Trust estate, the Trustees deem useful in carrying out the purposes of the Trust;

(vi)    sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

7

(vii)     establish, supervise, and administer the Trust in accordance with this Trust Agreement and the TDP;

(viii)     appoint such officers, hire such employees, engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms of the Trust;

(ix)     pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents (including those engaged by the Trust in connection with its alternative dispute resolution activities);

(x)     as provided below, (a) compensate the Trustees, the Delaware Trustee, and the FCRs, and the employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents of each of them, and (b) reimburse the Trustees, the Delaware Trustee, and the FCRs for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xi)     execute and deliver such instruments as the Trustees deem proper in administering the Trust;

(xii)     enter into such other arrangements with third parties as the Trustees deem useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement;

(xiii)     in accordance with Sections 4.4 and 4.6 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) (A) the Trustees, (B) the Delaware

8

Trustee, (C) the TACs and their members, (D) the FCRs, and (E) the officers, employees, consultants, advisors, and agents of each of the Trust, the TACs, and the FCRs (each of those in (E) herein, the "**Additional Indemnitees**"), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and representatives. No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below;

(xiv)    enforce the J&J Settlement Agreement and, if the J&J Settlement Agreement is validly terminated pursuant to the terms thereof, pursue recoveries and allocate future proceeds received from J&J between Fund A and Fund B of the Trust in the same proportion as provided for in Section 2.2 of the TDP for allocation of the J&J Settlement Proceeds;

(xv)    consult with the TACs and the FCRs at such times and with respect to such issues relating to the purpose, conduct, and affairs of the Trust as the Trustees consider desirable; and

(xvi)    exercise any and all other rights, and take any and all other actions as are permitted, of the Trustees in accordance with the terms of this Trust Agreement.

(d)    The Trustees shall not have the power to guarantee any debt of other persons.

(e)    The Trustees agree to take the actions of the Trust required hereunder.

(f)    The Trustees shall give the TACs and the FCRs prompt notice of any act performed or taken pursuant to Sections 2.1(c)(i) or (vi) above, and any act proposed to be performed or taken pursuant to Section 2.2(f) below.

9

2.2 **General Administration**.

(a)     The Trustees shall act in accordance with this Trust Agreement, the Plans, the Confirmation Orders, and the TDP.  In the event of a conflict between the terms or provisions of (i) the Plan and (ii) this Trust Agreement or the TDP with respect to the rights of any Protected Party, the terms of the Plans shall control.

(b)     The Trustees shall (i) timely file such income tax and other returns and statements required to be filed and shall timely pay all taxes required to be paid by the Trust, (ii) comply with all applicable reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Trust as a Qualified Settlement Fund within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a Qualified Settlement Fund within the meaning of the QSF Regulations.

(c)     The Trustees shall timely account to the Bankruptcy Court as follows:

(i)     The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing financial statements of the Trust (including, without limitation, a balance sheet of the Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims.  The Trustees shall provide a copy of such Annual Report to the TACs and the FCRs when such reports are filed with the Bankruptcy Court.

(ii)     Simultaneously with the filing of the Annual Report, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary

10

regarding the number and type of claims resolved during the period covered by the financial statements.  The Trustees shall provide a copy of such report to the TACs and the FCRs when such report is filed.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for Region Three (the "**UST**").

(d)    The Trustees shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year. The budget and cash flow projections shall include a determination of the Maximum Annual Payment pursuant to Section 2.8 of the TDP.  The Trustees shall provide a copy of the budget and cash flow projections to the TACs and the FCRs.

(e)    The Trustees shall consult with the TACs and the FCRs on (i) the general implementation and administration of the Trust; (ii) the general implementation and administration of the TDP; and (iii) such other matters as may be required under this Trust Agreement or the TDP; *provided* that (a) only the Mesothelioma / Lung Cancer TAC and the Post-Effective Date Mesothelioma / Lung Cancer FCR shall have consultation rights for actions or decisions that affect only Fund B (the Mesothelioma Claim and/or Lung Cancer Claim sub-account), and (b) only the Ovarian Cancer TAC and the Post-Effective Date Ovarian Cancer FCR shall have consultation rights for actions or decisions that affect only Fund A (the Ovarian Cancer Claim sub-account).

(f)    The Trustees shall be required to obtain the consent of the TACs and the FCRs pursuant to the consent process set forth in Section 7.1(b) below (and with respect to the matters addressed in clause (v) of this Section 2.2(f), the written consent of each Protected Party

11

in accordance with and subject to the requirements set forth in footnote 7 of the TDP), in addition to any other instances elsewhere enumerated, in order:

(i)    to change the number of Trustees as provided in Section 4.1 below;

(ii)    to determine, establish, or change the Initial Payment Percentage and any subsequent Payment Percentage, as described in Section 2.7 of the TDP and as provided in Section 4.2 of the TDP;

(iii)    to change any of the Scheduled Values and/or Medical/Exposure Criteria set forth in Section 5.2(a)(iii) of the TDP and/or the Average Values and/or Maximum Values set forth in Section 5.2(b)(ix) of the TDP;

(iv)    to establish and/or to change the Claims Materials to be provided to holders of Talc Personal Injury Claims under Section 6.1 of the TDP; provided that separate Claims Materials shall be prepared for Fund A and Fund B;

(v)    to change the form of Acceptance and Release to be provided pursuant to Section 7.2 of the TDP (subject to the requirements contained in Section 7.2 of the TDP);

(vi)    to terminate Fund A, Fund B and/or the Trust pursuant to Section 7.3 below;

(vii)    to make, pursue (by litigation or otherwise), collect, compromise, or settle, in the name of the Trust, any claim, right, action, or cause of action included in the Talc Personal Injury Trust Assets or which may otherwise hereafter accrue in favor of the Trust, including, but not limited to, insurance recoveries, before any court of competent jurisdiction;

(viii)    to settle the liability of any insurer under any insurance policy or legal action related thereto;

12

(ix)    to change the compensation and/or expense reimbursement limitations of the members of the TACs, the FCRs, the Delaware Trustee, or the Trustees, other than to reflect cost-of-living increases or to reflect changes approved by the Bankruptcy Court as otherwise provided herein;

(x)    to take actions, outside the ordinary course of business, to minimize any tax on the Talc Personal Injury Trust Assets, provided that no such action may be taken if it prevents the Trust from qualifying as a Qualified Settlement Fund within the meaning of the QSF Regulations or requires an election for the Trust to be treated as a grantor trust for tax purposes;

(xi)    to amend any provision of this Trust Agreement or the TDP in accordance with the terms thereof; provided that no such amendment shall be in contravention of the Plans;

(xii)    to acquire an interest in, or to merge any claims resolution organization formed by the Trust with, another claims resolution organization that is not specifically created by this Trust Agreement or the TDP, or to contract with another claims resolution organization or other entity that is not specifically created by this Trust Agreement or the TDP, or permit any other party to join in any claims resolution organization that is formed by the Trust pursuant to this Trust Agreement or the TDP; provided that such acquisition, merger, contract, or joinder shall not (a) subject the Reorganized Debtors, or any successors in interest thereto, or the Protected Parties to any risk of having any Talc Personal Injury Claim asserted against it or them, or (b) otherwise jeopardize the validity or enforceability of the Injunctions or any other injunction or release issued or granted in connection with the Plans and/or the Confirmation Orders, (c) permit the surviving organization to make decisions about the

13

allowability and value of claims that are not in accordance with the TDP, or (d) cause the Trust to fail to qualify as a Qualified Settlement Fund under the QSF Regulations;

(xiii)   if and to the extent required by Section 6.5 of the TDP, to disclose any information, documents, or other materials to preserve, litigate, resolve, or settle coverage, or to comply with an applicable obligation under an insurance policy, indemnity or settlement agreement pursuant to Section 6.5 of the TDP;

(xiv)   to sell, transfer, or exchange any or all of the Talc Personal Injury Trust Assets;

(xv)   to delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Talc Personal Injury Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 4.4 below;

(xvi)   to select professionals to represent the Trust in litigation related to the Talc Insurance Assets and to enter into fee arrangements with such professionals;

(xvii)   to take certain steps in any litigation with respect to the Talc Insurance Assets (as detailed in Section 7.1(b)(iv) hereof);

(xviii)   to approve any release, settlement or abandonment of the Talc Insurance Assets; or

(xix)   to enforce the J&J Settlement Agreement and, if the J&J Settlement Agreement is validly terminated pursuant to the terms thereof, pursue recoveries.

For the avoidance of doubt, with respect to all of the foregoing in this Section 2.2(f), (a) any proposed actions or decisions that affect only Fund B (the Mesothelioma Claim and/or Lung

US-DOCS\163468783RLF1 33768897v.1

Cancer Claim sub-account) shall require consent solely by the Mesothelioma / Lung Cancer TAC and the Post-Effective Date Mesothelioma / Lung Cancer FCR and (b) any proposed actions or decisions that affect only Fund A (the Ovarian Cancer Claim sub-account) shall require consent solely by the Ovarian Cancer TAC and the Post-Effective Date Ovarian Cancer FCR.

(g)     The Trustees shall meet with the TACs and the FCRs no less often than quarterly.  The Trustees shall meet in the interim with the TACs and the FCRs when so requested by any of them.  Meetings may be held in person, by telephone and/or video conference, or by a combination thereof.

(h)     The Trustees, upon notice from any of the TACs or the FCRs, if practicable in view of pending business, shall at their next meeting with the TACs or the FCRs consider issues submitted by any of the TACs or the FCRs.  The Trustees shall keep the TACs and the FCRs reasonably informed regarding all aspects of the administration of the Trust.

(i)     The Trustees shall not permit any payment or other distribution to be made from the Trust to any claimant unless, as a condition precedent to making such payment or distribution, the Trustees receive from the claimant (or from a person or entity with authority to bind the claimant) a properly completed and executed "Acceptance and Release," as set forth in and in accordance with Section 7.2 of the TDP.

2.3     **Claims Administration.**  The Trustees shall promptly proceed to implement the TDP.

2.4     **Medicare Reporting Obligations**.

(a)     The Trust shall register as a Responsible Reporting Entity ("**RRE**") under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of

15

2007 (Pub. L. 110-173) ("**MMSEA**") in order to fulfill the reporting requirements applicable to the funders of the Trust.

(b)     The Trust, acting as the RRE and reporting agent for its funders, shall, at its sole expense, timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust. The Trust, in its role as RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)     Before remitting funds to claimants' counsel, or to the claimant if such claimant is acting *pro se*, in respect of any Talc Personal Injury Claim, the Trustees shall obtain a certification that said claimant (or such claimant's authorized representative) has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Talc Personal Injury Claim.

## ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1**     **Accounts**.

(a)     As detailed in Section 2.2 of the TDP, the Trust shall have two Funds (Fund A and Fund B), which shall operate separately and which shall be funded in the manner described in TDP Section 2.2. In addition, the Trustees may, from time to time, create such accounts and reserves within the Trust estate as they deem necessary, prudent, or useful in order to provide for

16

the payment of expenses and payment of Talc Personal Injury Claims and may, with respect to any

such account or reserve, restrict the use of monies therein, and the earnings or accretions thereto.

(b)     The Trustees shall include a reasonably detailed description of the creation

of any account or reserve in accordance with this Section 3.1 and, with respect to any such account,

the transfers made to such account, the proceeds of or earnings on the assets held in each such

account, and the payments from each such account in the reports to be filed with the Bankruptcy

Court and provided to the TACs and the FCRs pursuant to Section 2.2(c)(i) above.

**3.2**    **Investments.**    Investment of monies held in the Trust shall be administered in a

manner consistent with the standards set forth in the Uniform Prudent Investor Act, subject to the

following limitations and provisions;

(a)     With respect to equity investments, the Trust may invest only in diversified

equity portfolios whose benchmark is a broad equity market index such as, but not limited to, the

S&P 500 Index, Russell 1000 Index, S&P ADR Index, or MSCI EAFE Index.  The Trust shall not

acquire, directly or indirectly, equity in any entity (other than the Reorganized Debtors or any

successor to the Reorganized Debtors) or business enterprise if, immediately following such

acquisition, the Trust would hold more than 5% of the equity in such entity or business enterprise.

The Trust shall not hold, directly or indirectly, more than 5% of the equity in any entity (other than

the Reorganized Debtors, or any successor to the Reorganized Debtors) or business enterprise.

(b)     The Trust shall not acquire or hold any long-term debt securities unless

(i) such securities are Talc Personal Injury Trust Assets under the Plans, (ii) such securities are

rated "Baa" or higher by Moody's, "BBB" or higher by Standard & Poor's ("**S&P**"), or have been

given an equivalent investment grade rating by another nationally recognized statistical rating

agency, or (iii) have been issued or fully guaranteed as to principal and interest by the United

17

States of America or any agency or instrumentality thereof. This restriction does not apply to any pooled investment vehicles where pooled assets receive an investment grade rating (*i.e.*, "BBB" rating or above) by a nationally recognized rating agency.

(c)     The Trust shall not acquire or hold for longer than ninety (90) days any commercial paper unless such commercial paper is rated "Prime-l" or higher by Moody's or "A-l" or higher by S&P or has been given an equivalent rating by another nationally recognized statistical rating agency.

(d)     The Trust shall not acquire any debt securities or other debt instruments issued by any entity if, following such acquisition, the aggregate market value of all such debt securities and/or other debt instruments issued by such entity held by the Trust would exceed 5% of the then current aggregate value of the Trust's assets. There is no limitation on holding debt securities or other debt instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(e)     The Trust shall not acquire or hold any certificates of deposit in an amount exceeding any federal insurance on such certificates of deposit unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit and the holding company, if any, of which such financial institution is a subsidiary, meet the standards set forth in Section 3.2(b) above.

(f)     The Trust may acquire and hold any securities or instruments issued by the Reorganized Debtors or any successor to the Reorganized Debtors or obtained as proceeds of litigation or otherwise to resolve disputes, without regard to the limitations set forth in Subsections (a)- (e) above.

(g)     The Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustees, such obligations are adequately collateralized.

(h)     The Trust may allow its investment managers to acquire or hold derivative instruments—including, without limitation, options, futures, and swaps—in the normal course of portfolio management to help hedge, manage, or mitigate portfolio risk, including, without limitation, interest rate risk and equity market risk.  However, using derivative instruments to speculate or to leverage a portfolio at a much greater risk to the portfolio is prohibited.

(i)     The Trust may lend securities on a short-term basis, subject to adequate, normal, and customary collateral arrangements.

(j)     Notwithstanding (a) above, the Trust may acquire and hold an equity interest in a claims resolution organization without limitation as to the size of the equity interest acquired and held if prior to such acquisition, the Trust complies with the provisions of Section 2.2(f)(xii) hereof with respect to the acquisition.

**3.3**     **Source of Payments**.

(a)     All Trust expenses and payments and all liabilities with respect to Talc Personal Injury Claims shall be payable solely by the Trust out of the Talc Personal Injury Trust Assets.  Neither the Trustees, the Delaware Trustee, the TACs, the FCRs, nor any of their officers, employees, consultants, advisors, and agents, nor the Debtors, the Reorganized Debtors, nor any other Protected Party, shall be liable for the payment of any Trust expense or any other liability of the Trust, except to the extent explicitly provided for in (i) the Plans, (ii) solely with respect to the Trustees, the TACs, the FCRs, and any of their officers, employees, consultants, advisors, and agents, the Plan Documents, or (iii) solely with respect to the Delaware Trustee, this Trust Agreement.

19

(b)      The Trustees shall include in the Annual Report a reasonably detailed description of any payments made in accordance with this Section 3.3.

(c)      As detailed in Section 2.2 of the TDP, claimants whose claims are approved for payment by the Trust shall be paid from either Fund A or Fund B depending upon their Disease, and all expenses attributable to the operation of Fund A or Fund B shall be allocated solely to such Fund.  Common administrative expenses incurred by the Trust that cannot be attributed to the operation of a single Fund shall be allocated equitably between Fund A and Fund B by the Trustees based on the facts and circumstances with respect to such expenses.

(d)      The Trustees, with the consent of the TACs and the FCRs, shall establish and implement billing guidelines applicable to the Trustees, the TACs, and the FCRs as well as their respective professionals who seek compensation from the Trust.

**ARTICLE IV**

**TRUSTEES; DELAWARE TRUSTEE**

**4.1**     **Number.**

(a)      In addition to the Delaware Trustee appointed pursuant to Section 4.11, there shall be two (2) Trustees who shall be those persons named on the signature pages hereof. The number of Trustees may be changed as provided in Section 4.3 below.

(b)      When there are two Trustees and the Trustees, having exercised reasonable efforts to discuss their differing views and reach consensus, cannot agree on an action that requires a vote of the Trustees, the Trustees shall submit the matter to the applicable TAC(s) and the applicable FCR(s) and consult therewith in good faith in an effort to reach consensus.  In the event the Trustees cannot reach consensus after consulting with the applicable TAC(s) and the applicable FCR(s) for a period of no less than thirty (30) days, either of the Trustees (acting independently) may invoke the provisions of Section 4.3(b) requiring the appointment of a third Trustee.

20

**4.2**     **Term of Service**.

(a)     The initial Trustees named pursuant to Section 4.1 above shall serve an initial term of service of two or three years from the date on the signature pages hereof.  Thereafter, each term of service shall be for three (3) years.  The initial Trustees shall serve from the Effective Date until the earliest of (i) the end of his or her term, (ii) his or her death, (iii) his or her mandatory retirement at the end of the year in which he or she reaches the age of 70 (unless, and for so long as, this mandatory retirement requirement is waived by the agreement of the TACs and the FCRs), (iv) his or her resignation pursuant to Section 4.2(b) below, (v) his or her removal pursuant to Section 4.2(c) below, or (vi) the termination of the Trust pursuant to Section 7.3 below.

(b)     A Trustee may resign at any time by written notice to the TACs and the FCRs.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     A Trustee may be removed by the Bankruptcy Court on the motion of the other Trustee, either of the TACs or either of the FCRs, in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause.  Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of Section 2.2 above, a consistent pattern of neglect and failure to perform or participate in performing the duties of a Trustee hereunder, or repeated non-attendance at scheduled meetings.  Such removal shall take effect at such time as the Bankruptcy Court shall determine.

**4.3**     **Appointment of Successor and New Trustees**.

(a)     In the event of a vacancy in a Trustee position, whether by term expiration, death, retirement, resignation, or removal, the TACs and the FCRs shall determine whether to fill

21

the vacancy or to reduce the number of Trustees.  If they decide to fill the vacancy, they shall select the person to fill the vacancy.  In the event the TACs and the FCRs cannot agree on whether to fill the vacancy or to reduce the number of Trustees, the remaining Trustee shall make the decision. If there is no remaining Trustee, the Bankruptcy Court shall make the decision.  If the TACs and the FCRs agree to fill the vacancy but cannot agree on the identity of the person to fill the vacancy, the remaining Trustee shall select the successor Trustee.  If there is no remaining Trustee, the Bankruptcy Court shall select the successor Trustee.

(b)      In the event a third Trustee is to be appointed pursuant to the provisions of Section 4.1(b) hereof, the TACs and the FCRs shall select the Trustee to fill the new position.  If the TACs and the FCRs cannot agree on the identity of the new Trustee, the two existing Trustees shall select the new Trustee.  If the two existing Trustees cannot agree on the identity of the new Trustee, the Bankruptcy Court shall select the new Trustee.  The term of the new Trustee shall be three (3) years.

(c)      Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers, and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(d)      Each successor Trustee shall serve until the earliest of (i) the end of the term of three (3) years for which he or she was appointed if his or her immediate predecessor Trustee completed his or her term pursuant to Section 4.2(a) above, (ii) the end of the term of the Trustee whom he or she replaced if his or her predecessor Trustee did not complete such term, (iii) his or her death, (iv) his or her mandatory retirement at the end of the year in which the Trustee reaches

22

the age of 70 (unless, and for so long as, this mandatory retirement requirement is waived by the agreement of the TACs and the FCRs), (v) his or her resignation pursuant to Section 4.2(b) above, (vi) his or her removal pursuant to Section 4.2(c) above, or (vii) the termination of the Trust pursuant to Section 7.3 below.

(e)     Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as a Trustee for one or more additional terms.

4.4     **Liability of Trustees and Others.**   The Trustees, the Delaware Trustee, the members of the TACs, the FCRs, and each of their officers, employees, consultants, advisors, and agents shall not be liable to the Trust, to any individual holding a Talc Personal Injury Claim, or to any other person, except for their own acts or omissions that constitute a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e).

4.5     **Compensation and Expenses of the Trustees**.

(a)     Each Trustee shall receive a retainer from the Trust for his or her service as a Trustee in the amount of $60,000.00 per annum, paid annually.  Hourly time, as described below, shall first be billed and applied to the annual retainer.  Hourly time in excess of the annual retainer shall be paid by the Trust.  For all time expended as Trustees, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustees shall receive the sum of $800.00 per hour.  For all non-working travel time in connection with Trust business, the Trustees shall receive the sum of $400.00 per hour.  All time shall be computed on a decimal (1/10th) hour basis. The Trustees shall record all hourly time to be charged to the Trust on a daily basis.  The hourly compensation payable to the Trustees hereunder shall be reviewed every year

23

by the Trustees and, after consultation with the members of the TACs and the FCRs, appropriately adjusted for changes in the cost of living.

(b)     The Trust will promptly reimburse the Trustees for all reasonable out-of-pocket costs and expenses incurred by the Trustees in connection with the performance of their duties hereunder.

(c)     The Trust shall include in the Annual Report a description of the amounts paid under this Section 4.5.

**4.6     Indemnification of Trustees and Others**.

(a)     The Trust shall indemnify and defend any Trustee, any member of a TAC, the Delaware Trustee, and each FCR in the performance of their duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware (after the application of Section 7.11) is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment, or funding of the Trust.  The Trust may indemnify to the fullest extent permitted by applicable law any of the Additional Indemnitees in the performance of their duties hereunder against any and all liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment, or funding of the Trust, except for their own acts or omissions that constitute a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e).  Notwithstanding the foregoing, no individual shall be

24

indemnified or defended in any way for any liability, expense, claim, damage, or loss for which he or she is ultimately liable under Section 4.4 above.

(b)      Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trustees, a member of one of the TACs, the Delaware Trustee, either of the FCRs, or an Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative, or arbitrative, from which they are indemnified by the Trust pursuant to Section 4.6(a) above, shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trustee, the TAC member, the Delaware Trustee, the FCR, or the Additional Indemnitee (as applicable), to repay such amount in the event that it shall be determined ultimately by final order that the Trustees, the TAC member, the Delaware Trustee, the FCR, or the Additional Indemnitee (as applicable) is not entitled to be indemnified by the Trust.

(c)      The Trust must purchase and maintain reasonable amounts and types of insurance on behalf of each individual who is or was a Trustee, a TAC member, the Delaware Trustee, or an FCR, and may purchase and maintain reasonable amounts and types of insurance on behalf of each individual who is or was an Additional Indemnitee, including against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, TAC member, Delaware Trustee, FCR, or Additional Indemnitee.

(d)      From and after the Effective Date, the Trust shall indemnify, to the fullest extent permitted by applicable law, each of the Debtors, the Reorganized Debtors, and the other Protected Parties for reasonable documented out-of-pocket expenses (including, without limitation, attorney's fees and expenses) that occur after the Effective Date attributable to the defense of any Talc Personal Injury Claim asserted against the Debtors, Reorganized Debtors, or

25

the other Protected Parties to the extent set forth in Section 4.13 of the Imerys Plan and Section 4.11 of the Cyprus Plan. Nothing provided in this Trust Agreement or the TDP shall obligate the Trust to indemnify or pay any liabilities, fees, or expenses that J&J (as defined in the TDP) is obligated to pay or indemnify.

      **4.7**    **Lien**. The Trustees, the Delaware Trustee, TAC members, the FCRs, and the Additional Indemnitees shall have a first priority lien upon the Talc Personal Injury Trust Assets to secure the payment of any amounts payable to them pursuant to Section 4.6 above.

      **4.8**    **Trustees' Employment of Experts**. The Trustees may, but are not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed by the Trustees to be qualified as experts on the matters submitted to them (the "**Trust Professionals**"). In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e), the written opinion of or information provided by any such party deemed by the Trustees to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustees hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

      **4.9**    **Trustee Independence**. The Trustees shall not, during the term of their service, hold a financial interest in, act as attorney or agent for, or serve as an officer or as any other professional for the Reorganized Debtors. Notwithstanding the foregoing, the Trustees may serve, without any additional compensation other than the compensation to be paid by the Trust pursuant to Section 4.5(a) above, as a director of one or more of the Reorganized Debtors as long as all of the equity interests in such Reorganized Debtor(s) are owned by the Trust. The Trustees shall not

26

act as an attorney, agent, or other professional for any person who holds a Talc Personal Injury Claim.  For the avoidance of doubt, this Section shall not be applicable to the Delaware Trustee.

4.10    **No Bond**.  Neither the Trustees nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

4.11    **Delaware Trustee**.

(a)    There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act.  Wilmington Trust, National Association is hereby appointed as the Delaware Trustee, and Wilmington Trust, National Association hereby accepts such appointment. The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware in accordance with section 3807 of the Act, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity.  If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 4.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.11(c) below.  For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder.

(b)    The Delaware Trustee shall be entitled to request and receive (and rely upon conclusively and exclusively) written instructions from the Trustees and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustees. The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustees set forth herein.  The Delaware Trustee

27

shall be one of the trustees of the Trust for the sole and limited purpose of fulfilling the requirements of section 3807 of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.    The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under section 3811 of the Act (acting solely at the written direction of the Trustees) and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other Parties hereto or any beneficiary of the Trust, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.

      (c)     The Delaware Trustee shall serve until such time as the Trustees remove the Delaware Trustee or the Delaware Trustee resigns, and a successor Delaware Trustee is appointed by the Trustees in accordance with the terms of Section 4.11(d) below.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustees; provided, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustees in accordance with Section 4.11(d) below.  If the Trustees do not act within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

      (d)     Upon the resignation or removal of the Delaware Trustee, the Trustees shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware

28

Trustee.  Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustees and any undisputed fees and expenses due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Trust in accordance with section 3810 of the Act.

(e)      The Delaware Trustee shall neither be required nor permitted to attend meetings relating to the Trust.

(f)      The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

(g)      The Trust will promptly reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Delaware Trustee in connection with the performance of their duties hereunder.

(h)      The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder, and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

29

(i)     Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto; *provided*, *however*, that nothing herein shall prohibit the Trust from identifying and selecting a successor Delaware Trustee following such merger, conversion or consolidation.

(j)     The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(k)     The Corporate Transparency Act (31 U.S.C § 5336) and its implementing regulations (collectively, the "**CTA**"), may require the Trust to file reports with the Financial Crimes Enforcement Network ("**FinCEN**") from time to time.  It shall be the Trustees' duty and not the Delaware Trustee's duty to cause the Trust to make such filings, as applicable, and to cause the Trust to comply with its obligations under the CTA, if any.  The parties hereto agree that for purposes of the CTA, that the Beneficial Owners are and shall be deemed to be the sole direct

30

beneficial owners of the Trust, acknowledge that the Delaware Trustee acts solely as a directed trustee at the direction of the Trustees hereunder, and that one or more controlling parties of the Trustees, as applicable, are and shall deemed to be the parties with the power and authority to exercise substantial control over the Trust.

(l)    The Delaware Trustee shall not be responsible or liable for punitive, exemplary, consequential, special, indirect, or incidental loss or damage of any kind (including but not limited to, loss of profit) or other damages for a breach of this Trust Agreement under any circumstances, irrespective of whether the Delaware Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.  Nothing contained in this section or the Trust Agreement shall be read to protect the Delaware Trustee from actual damages for its own acts or omissions that constitute a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e), as set forth in Section 4.6 hereof.

## ARTICLE V

## TRUST ADVISORY COMMITTEES

5.1    **Members.**  The Mesothelioma / Lung Cancer TAC shall consist of 8 members, who shall initially be the persons named on the signature page hereof.  The Ovarian Cancer TAC shall consist of 7 members, who shall initially be the persons named on the signature page hereof.

5.2    **Duties**.  The members of the Mesothelioma / Lung Cancer TAC shall serve in a fiduciary capacity, representing only the interests of all holders of present Mesothelioma Claims, Lung Cancer Claims, and Other Non-Gynecological Disease Claims.  The members of the Ovarian Cancer TAC shall serve in a fiduciary capacity, representing only the interests of all holders of present Ovarian Cancer Claims and Other Gynecological Disease Claims.  The Trustees must consult with the TACs on matters identified in Section 2.2(e) above and in other provisions herein and must obtain the consent of the TACs on matters identified in Section 2.2(f) above.  Where

31

provided in the TDP or this Trust Agreement, certain other actions by the Trustees are also subject to the consent of the TACs. Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TACs. To the extent that, at law or in equity, the TACs have duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other Parties hereto or any beneficiary of the Trust, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of the TACs expressly set forth in this Trust Agreement and the documents referenced herein (including the TDP, the Plans and the Confirmation Orders).

**5.3**     **Term of Office**.

(a)     The initial members of the TACs appointed in accordance with Section 5.1 above shall serve the staggered three-, four-, or five-year terms shown on the signature pages hereof. Thereafter, each term of office shall be five (5) years. Each TAC member shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.3(b) below, (iii) his or her removal pursuant to Section 5.3(c) below, (iv) the end of his or her term as provided above, or (v) the termination of the Trust or the applicable Fund pursuant to Section 7.3 below.

(b)     A TAC member may resign at any time by written notice to the other members of the applicable TAC, the Trustees, and the applicable FCR. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     A TAC member may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in

32

performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause. Such removal may only be made by the Bankruptcy Court on the motion of the remaining members of the applicable TAC, the Trust, or the applicable FCR.

**5.4    <u>Appointment of Successors</u>**.

(a)    If, prior to the termination of service of a TAC member other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a TAC member, such individual shall be his or her successor. If such TAC member did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor. If: (i) a TAC member did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) a member is removed pursuant to Section 5.3(c) above, his or her successor shall be appointed by a majority of the remaining members of the Mesothelioma / Lung Cancer TAC or the Ovarian Cancer TAC (as applicable) and if such members cannot agree on a successor, the Bankruptcy Court. Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as a member of one of the TACs for an additional term, and there shall be no limit on the number of terms that a TAC member may serve.

(b)    Each successor TAC member shall serve until the earlier of (i) the end of the full term for which he or she was appointed, (ii) the end of the term of the TAC member whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.3(b) above, (v) his or her removal pursuant to Section 5.3(c) above, or (vi) the termination of the Trust or the applicable Fund pursuant to Section 7.3 below.

US-DOCS\163468783RLF1 33768897v.1

(c)     No successor TAC member shall be liable personally for any act or omission of his or her predecessor TAC member.  No successor TAC member shall have any duty to investigate the acts or omissions of his or her predecessor TAC member.  No TAC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

     **5.5     <u>Employment of Professionals by the TACs</u>**.

(a)     Each of the TACs may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed by the TAC to be qualified as experts on the matters submitted to them (the "**<u>TAC Professionals</u>**").  Each of the TACs and the TAC Professionals shall at all times have complete access to the Trust's officers, employees, and agents, as well as to the Trust Professionals, and shall also have complete access to all non-privileged information generated by them or otherwise available to the Trust or the Trustees.  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e), the written opinion of or information provided by any TAC Professional or Trust Professional deemed by the TAC to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by such TAC in good faith and in accordance with the written opinion of or information provided by the TAC Professional or Trust Professional.

(b)     The Trust shall promptly reimburse, or pay directly if so instructed, the TACs for all reasonable fees and costs associated with the TAC's employment of legal counsel and forecasters (including estimation consultants and experts) pursuant to this provision in connection with the TAC's performance of its duties hereunder.  The Trust shall also promptly

34

reimburse, or pay directly if so instructed, the TACs for all reasonable fees and costs associated with the TAC's employment of any other TAC Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder; *provided*, *however*, that (i) the TAC has first submitted to the Trust a written request for such reimbursement setting forth (A) the reasons why the TAC desires to employ such TAC Professional, and (B) the basis upon which the TAC seeks advice independent of the Trust Professionals to meet the needs of the TAC for such expertise or advice, and (ii) the Trust has approved the TAC's request for reimbursement in writing, which approval must not be unreasonably withheld, delayed, or denied.  If the Trust agrees to pay for the TAC Professional, such reimbursement shall be treated as a Trust expense.  If the Trust declines to pay for the TAC Professional, it must set forth its reasons in writing.  If the TAC still desires to employ the TAC Professional at the Trust's expense, such TAC and/or the Trustees shall resolve the dispute pursuant to Section 7.13 below.

(c)    In the event that either TAC retains counsel in connection with any matter whether or not related to any claim that has been or might be asserted against the TAC and irrespective of whether the Trust pays such counsel's fees and related expenses, any communications between such TAC and such counsel shall be deemed to be within the attorney-client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of whether such communications are related to any claim that has been or might be asserted by or against such TAC and regardless of whether the Trust pays such counsel's fees and related expenses.

**5.6    Compensation and Expenses of the TACs**.  The TAC members shall not:  (i) receive compensation from the Trust for their services as TAC members; or (ii) receive reimbursement for any out-of-pocket costs or expenses incurred in connection with the

35

performance of such member's duties hereunder notwithstanding the reasonableness of such cost or expense.

## ARTICLE VI

## THE FCRS

**6.1**    <u>Duties</u>.  The Post-Effective Date Ovarian Cancer FCR shall serve in a fiduciary capacity, representing only the interests of the holders of Talc Personal Injury Demands associated with Ovarian Cancer Claims and Other Gynecological Disease Claims.  The Post-Effective Date Mesothelioma / Lung Cancer FCR shall serve in a fiduciary capacity, representing only the interests of the holders of Talc Personal Injury Demands associated with Mesothelioma Claims, Lung Cancer Claims, and Other Non-Gynecological Disease Claims.  The Trustees must consult with the FCRs on matters identified in Section 2.2(e) above and in other provisions herein and must obtain the consent of the FCRs on matters identified in Section 2.2(f) above.  Where provided in the TDP or this Trust Agreement, certain other actions by the Trustees are also subject to the consent of one or both of the FCRs.  Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the TDP), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the FCRs.  To the extent that, at law or in equity, either FCR has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other Parties hereto or any beneficiary of the Trust, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of such FCR expressly set forth in this Trust Agreement and the documents referenced herein (including the TDP, the Plans and the Confirmation Orders).  The FCRs shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year and commencing on the Effective Date a budget which shall be delivered to the Trustees and the TACs.

36

6.2     **Term of Office**.

(a)     Each FCR shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 6.2(b) below, (iii) his or her removal pursuant to Section 6.2(c) below, or (iv) the termination of the Trust or the applicable Fund pursuant to Section 7.3 below; *provided*, *however*, that on the date that is four years after the Effective Date (as such date may be shortened or extended by the Bankruptcy Court as provided herein, the "**Sunset Date**"), one of the FCRs (or a successor appointed under Section 6.3(a)) shall assume the positions of both Post-Effective Date Ovarian Cancer FCR and Post-Effective Date Mesothelioma / Lung Cancer FCR, and shall thereby assume all duties and obligations under this Trust Agreement to all holders of Talc Personal Injury Demands, *provided further*, that any Trustee, either TAC or either FCR may seek on order from the Bankruptcy Court shortening or extending the Sunset Date.

(b)     As of the Sunset Date, the FCR whose service is concluded is automatically, without further order of the Bankruptcy Court or any other court, discharged from all further duties and obligations under the Trust Agreement and the TDP.

(c)     Either FCR may resign at any time by written notice to the Trustees and the TACs.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(d)     Each FCR may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Such removal may only be made by the Bankruptcy Court on the motion of the Trust or the applicable TAC.

US-DOCS\163468783RLF1 33768897v.1

**6.3** **Appointment of Successor**.

(a) A vacancy caused by resignation or death shall be filled with an individual nominated by the former FCR prior to the effective date of the resignation or death. A vacancy caused by removal of an FCR based on inability of the FCR to discharge his or her duties due to accident, physical deterioration, or mental incompetence shall be filled with an individual nominated by the FCR prior to the inability. In the event a nominee has not been pre-selected, the successor shall be chosen by the Trustees in consultation with the applicable TAC. A vacancy caused by removal of an FCR for other reasons shall be filled by a successor selected by the Trustees in consultation with the Mesothelioma / Lung Cancer TAC or the Ovarian Cancer TAC (as applicable).

(b) No successor FCR shall be liable personally for any act or omission of his or her predecessor. No successor FCR shall have any duty to investigate the acts or omissions of his or her predecessor. No FCR shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**6.4** **Employment of Professionals by the FCRs**.

(a) Each of the FCRs may, but is not required to, retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and such other parties deemed by the FCR to be qualified as experts on the matters submitted to them (the "**FCR Professionals**"), subject to the following: (i) the FCRs shall not hire a financial advisor (either jointly or separately) unless it is deemed necessary to do so by the FCRs to fulfill their duties to holders of Talc Personal Injury Demands; (ii) each FCR may retain his or her own counsel; and (iii) the FCRs shall jointly hire and share a claims estimation expert; *provided, however*, if a conflict develops with the FCRs relying upon a single claims estimation expert, a second such expert may be retained. The FCRs

38

and the FCR Professionals shall at all times have complete access to the Trust's officers, employees, and agents, as well as to the Trust Professionals, and shall also have complete access to all non-privileged information generated by them or otherwise available to the Trust or the Trustees.  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del.  C. § 3806(e), the written opinion of or information provided by any FCR Professional or Trust Professional deemed by the FCRs to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by such FCR in good faith and in accordance with the written opinion of or information provided by the FCR Professional or Trust Professional.

(b)     The Trust shall promptly reimburse, or pay directly if so instructed, each FCR for all reasonable fees and costs associated with the FCR's employment of legal counsel and a joint claims estimation expert or estimation consultants pursuant to this provision in connection with the FCR's performance of his or her duties hereunder.  The Trust shall also promptly reimburse, or pay directly if so instructed, each FCR for all reasonable fees and costs associated with the FCR's employment of any other FCR Professionals pursuant to this provision in connection with the FCR's performance of his or her duties hereunder; *provided*, *however*, that (i) the FCR has first submitted to the Trust a written request for such reimbursement setting forth (A) the reasons why the FCR desires to employ such FCR Professional, and (B) the basis upon which the FCR seeks advice independent of the Trust Professionals to meet the need of the FCR for such expertise or advice, and (ii) the Trust has approved the FCR's request for reimbursement in writing, which approval must not be unreasonably withheld, delayed, or denied.  If the Trust agrees to pay for the FCR Professional, such reimbursement shall be treated as a Trust expense.  If the Trust declines to pay for the FCR Professional, it must set forth its reasons in writing.  If the

39

FCR still desires to employ the FCR Professional at the Trust's expense, the FCR and/or the Trustees shall resolve the dispute pursuant to Section 7.13 below.

(c)   In the event that either FCR retains counsel in connection with any matter whether or not related to any claim that has been or might be asserted against the FCR and irrespective of whether the Trust pays such counsel's fees and related expenses, any communications between the FCR and such counsel shall be deemed to be within the attorney-client privilege and protected by section 3333 of Title 12 of the Delaware Code, regardless of whether such communications are related to any claim that has been or might be asserted by or against the FCR and regardless of whether the Trust pays such counsel's fees and related expenses.

**6.5**   **Compensation and Expenses of the FCRs.**   The FCRs shall receive compensation from the Trust in the form of payment at each FCR's normal hourly rate for services performed, as such may be adjusted from time to time.   The Trust will promptly reimburse each FCR for all reasonable out-of-pocket costs and expenses incurred by such FCR in connection with the performance of his or her duties hereunder.   Such reimbursement or direct payment shall be deemed a Trust expense.   The Trust shall include a description of the amounts paid under this Section 6.5 in the Annual Report to be filed with the Bankruptcy Court and provided to the FCRs and the TACs pursuant to Section 2.2(c)(i).

**ARTICLE VII**

**GENERAL PROVISIONS**

**7.1**   **Procedures for Consulting with or Obtaining Consent of the TACs and FCRs**.

(a)   Consultation Process.

(i)   In the event the Trustees are required to consult with the TACs and FCRs pursuant to Section 2.2(e) above, the TDP, the Plans, or otherwise, the Trustees shall provide

40

the TACs and FCRs with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide the TACs and FCRs with such reasonable access to the Trust Professionals and other experts retained by the Trust and its staff (if any) as the TACs and FCRs may reasonably request during the time that the Trustees are considering such matter, and shall also provide the TACs and FCRs the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustees.

(ii)    In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 7.1(a), the Trustees shall take into consideration the time required for the TACs and FCRs, if they so wish, to engage and consult with their own advisors as to such matter.  In any event, the Trustees shall not take definitive action on any such matter until at least thirty (30) days after providing the TACs and FCRs with the initial written notice that such matter is under consideration by the Trustees, unless such period is waived by such TAC and/or the FCRs.

(b)    Consent Process.

(i)    In the event the Trustees are required to obtain the consent of the TACs and FCRs pursuant to Section 2.2(f) above, the TDP, the Plans, or otherwise, the Trustees shall provide the TACs and FCRs with a written notice stating that their consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustees propose to take, and explaining in detail the reasons why the Trustees desire to take such action. The Trustees shall provide the TACs and FCRs as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustees shall also provide the TACs and FCRs with such reasonable access to the Trust Professionals and

41

other experts retained by the Trust and its staff (if any) as the TACs and FCRs may reasonably request during the time that the Trustees are considering such action, and shall also provide the TACs and FCRs the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustees.

(ii)    The TACs and FCRs must consider in good faith and in a timely fashion any request for their consent by the Trustees and must in any event advise the Trustees in writing of their consent or objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustees, or within such additional time as the Trustees and TACs and FCRs may agree.  The TACs and FCRs may not withhold their consent unreasonably. If any of the TACs or FCRs decide to withhold consent, they must explain in detail their objections to the proposed action.  If either one of the TACs or one of the FCRs does not advise the Trustees in writing of its consent or objections to the proposed action within thirty (30) days of receiving notice regarding such request (or any additional time period agreed to by the Trustees), then consent of such TAC or FCR (as applicable) to the proposed action shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 7.1(b), one or both of the TACs or one or both of the FCRs (as applicable) continues to object to the proposed action and to withhold its consent to the proposed action, the Trustees and such TAC or FCR shall resolve their dispute pursuant to Section 7.13.  The relevant TAC or FCR (as applicable) shall bear the burden of proving that it reasonably withheld its consent.

(iv)    Any release, settlement or abandonment of or litigation related to the Talc Insurance Assets shall be subject to the following requirements: (i) the Trustees must consult with, and obtain the consent of, the TACs and the FCRs in respect of the professionals the

42

Trustees select to represent the Trust in litigation related to the Talc Insurance Assets and the terms of the fee arrangements with such professionals; (ii) on day-to-day litigation matters related to the Talc Insurance Assets (*e.g.*, general trial strategy and proposed motion practice and discovery) the Trustees must consult with the TACs and the FCRs, which consultation should be in a reasonable form (*e.g.*, periodic calls or update memoranda) and provide sufficient time for the TACs and the FCRs to provide meaningful responses to the Trustees' proposals; *provided*, *however*, that decisions with respect to dispositive matters, including the filing of dispositive motions, shall require the consent of the TACs and the FCRs; and (iii) any settlement of the Talc Insurance Assets requires the consent of the TACs and the FCRs.

       **7.2**    <u>**Irrevocability**</u>.   To the fullest extent permitted by applicable law, the Trust is irrevocable.

       **7.3**    <u>**Term; Termination**</u>.

       (a)    The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 7.3 (b) - (d) below.

       (b)    The Trust shall automatically dissolve on the date (the "<u>**Dissolution Date**</u>") ninety (90) days after the first occurrence of any of the following events:

       (i)    the date on which the Trustees decide to dissolve the Trust because (A) all Talc Personal Injury Claims duly filed with the Trust have been liquidated and paid to the extent provided in this Trust Agreement and the TDP or otherwise resolved, (B) twelve (12) consecutive months have elapsed during which no new compensable Talc Personal Injury Claim has been filed with the Trust, (C) in the judgment of the Trustees, after consultation with the TACs and the FCRs, a *de minimis* number of Talc Personal Injury Claims are being filed with the Trust

43

at a *de minimis* rate, or (D) in the judgment of the Trustees, after consultation with the TACs and the FCRs, the continued administration of the Trust is uneconomic given the anticipated future costs of operating the Trust compared with the amount of anticipated future payments to holders of Talc Personal Injury Claims; or

        (ii)     if the Trustees, with the consent of the TACs and the FCRs, have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Trust in a manner consistent with this Trust Agreement and the TDP, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a Final Order; or

        (iii)    subject to the periods provided herein, the Trust shall be perpetual to the fullest extent permitted by Delaware law, provided however to the extent that any property of the Trust is subject to any rule against perpetuities then applicable to the Trust, then the Trust shall terminate as to such property only on the date on which twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof, or such other permissible last day of the perpetuities period.

        (c)     On the Dissolution Date (or as soon thereafter as is reasonably practicable), after the wind-up of the Trust's affairs by the Trustees and payment of all the Trust's liabilities have been provided for as required by applicable law including section 3808 of the Act, all monies remaining in the Trust shall be given to charitable organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Trustees using their reasonable discretion; *provided*, *however*, that (i) if practicable,

the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on the cure of, or other relief for individuals suffering from talc-related disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtors within the meaning of section 468B(d)(3) of the Internal Revenue Code.  Notwithstanding any contrary provision of the Plans and related documents, this Section 7.3(c) cannot be modified or amended.

(d)     Following the dissolution and distribution of the assets of the Trust, the Trust shall terminate and the Trustees (without the need for the Delaware Trustee's consent or signature) shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Trust to be filed in accordance with the Act and shall forward a certified copy of such filed Certificate of Cancellation to the Delaware Trustee.  Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

(e)     Because Fund A and Fund B will be operating separately, it may be that one of the circumstances described in Section 7.3(b)(i) or (ii) above occurs with respect to one of the Funds earlier than the date that one of the circumstances occurs with respect to the other Fund.  In determining whether one of the circumstances described in Section 7.3(b)(i) or (ii) has occurred, only the applicable TAC and the applicable FCR will be involved in such determination with respect to the subject Fund.  If one of the Funds does terminate earlier than the other Fund, the terms of the TAC members and the FCR of the terminating Fund shall end on the Fund's termination date, and if there are any monies remaining in the terminating Fund after the wind-up of the Fund's affairs by the Trustees and the payment of all of the Fund's liabilities, such monies shall be transferred in the discretion of the Trustees with the consent of the applicable TAC and

45

FCR, including through making supplemental distributions, donations to charity, or a transfer to the remaining Fund.

**7.4** **Amendments**.

(a)    The Trustees, after consultation with the TACs and the FCRs, and subject to the unanimous consent of the TACs and the FCRs, may modify or amend this Trust Agreement (except with respect to Section 7.3(c), which by its own terms is expressly not subject to modification or amendment); *provided, however*, that (i) any amendments or modifications to this Trust Agreement that affect only Fund B (the Mesothelioma Claim and/or Lung Cancer Claim sub-account) shall only require the consent of the Mesothelioma / Lung Cancer TAC and the Post-Effective Date Mesothelioma / Lung Cancer FCR, and (ii) any amendments or modifications to this Trust Agreement that affect only Fund A (the Ovarian Cancer Claim sub-account) shall only require the consent of the Ovarian Cancer TAC and the Post-Effective Date Ovarian Cancer FCR.

(b)    Notwithstanding anything to the contrary contained in Section 7.4(a) of this Trust Agreement, (i) any modification or amendment to Section 2.2(f)(v) of this Trust Agreement shall be subject to footnote 7 of the TDP and (ii) no modification or amendment to Section 2.2(i) of this Trust Agreement may be made without the advance written consent of all Protected Parties (which, if given, is to be provided in accordance with footnote 7 of the TDP).

(c)    The Trustees, after consultation with the TACs and the FCRs, and subject to the consent of the applicable TAC and the applicable FCR as set forth in the TDP, may modify or amend the TDP; *provided, however,* that no amendment to the TDP shall be inconsistent with the provisions limiting amendments to that document provided therein, and in particular the provisions limiting amendment of the Payment Percentage set forth in Section 4.2 of the TDP, the

46

provisions prohibiting amendment of the DEF in Section 4.4 of the TDP, and the provisions limiting amendments set forth in Sections 7.2 and 8.1 of the TDP.

(d)      Notwithstanding anything contained in this Trust Agreement or the TDP to the contrary, neither this Trust Agreement, the TDP, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify (i) the applicability of section 524(g) and section 105 of the Bankruptcy Code to the Plans, the Confirmation Orders, or the Trust, (ii) the efficacy or enforceability of the Injunctions or any other injunction, release or other protection issued or granted in connection with the Plans, including to or for the benefit of any Protected Party, (iii) the Trust's Qualified Settlement Fund status under the QSF Regulations, (iv) except with the written advance consent of the Imerys Reorganized Debtors and the Plan Proponents (as defined in the Imerys Plan), the scope and the terms of the releases and Injunctions included in Article XII of the Imerys Plan in favor of and for the benefit of the Imerys Reorganized Debtors and the Plan Proponents (as defined in the Imerys Plan), provided that such modification or amendment does not affect the scope and terms of the releases and Injunctions included in Article XII of the Imerys Plan in favor of and for the benefit of any other Protected Parties, or (v) except with the written advance consent of the Cyprus Reorganized Debtor and the Plan Proponents (as defined in the Cyprus Plan), the scope and the terms of the releases and Injunctions included in Article XII of the Cyprus Plan in favor of and for the benefit of the Cyprus Reorganized Debtor and the Plan Proponents (as defined in the Cyprus Plan), provided that such modification or amendment does not affect the scope and terms of the releases and Injunctions included in Article XII of the Cyprus Plan in favor of and for the benefit of any other Protected Parties.

(e)      Any amendment affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent.

(f)      Any modification or amendment made pursuant to this Section 7.4 must be done in writing.

**7.5      Severability**.  Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

**7.6      Notices**.

(a)      Notices to persons asserting claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's representative, in each case as provided on such person's claim form submitted to the Trust in accordance with the TDP with respect to his or her Talc Personal Injury Claim, or by such other means, including electronic notice, as may be agreed between the Trust and the TACs.

(b)      Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the Trust through the Trustees:

Ivory America/Cyprus Personal Injury Trust
c/o
[_____]

With a copy to:

[_____]

To the Delaware Trustee;

Wilmington Trust, National Association

48

1100 North Market Street
Wilmington, DE 19801
Attn:  Ivory America/Cyprus Personal Injury Trust Administrator

With a copy (which shall not constitute notice) to:

Morris James LLP
Attn: Ross Antonacci (RAntonacci@morrisjames.com)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

To the Ovarian Cancer TAC:

[_____]

To the Mesothelioma / Lung Cancer TAC:

[_____]

To the Post-Effective Date Ovarian Cancer FCR:

[_____]

With a copy to:

[_____]

To the Post-Effective Date Mesothelioma / Lung Cancer FCR:

[_____]

With a copy to:

[_____]

To the Imerys Reorganized Debtors:

[_____]

With a copy to:

[_____]

49

To the Cyprus Reorganized Debtor:

>Cyprus Mines Corporation
>Attn: President
>333 N. Central Ave.
>Phoenix, AZ 85004

With a copy to:

>Reed Smith LLP
>Attn: Paul M. Singer, Esq.
>225 Fifth Avenue, Suite 1200
>Pittsburgh, PA 15222

(c)    All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

**7.7    Successors and Assigns**.  The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Debtors, the Trust, the FCRs, the TACs, the Trustees, and the Reorganized Debtors, and their respective successors and assigns, except that none of the Debtors, the Trust, the FCRs, the TACs, the Trustees, or the Reorganized Debtors may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Trustees in accordance with Section 4.3 above, the TAC members in accordance with Section 5.4 above, and the FCRs in accordance to Section 6.3 above.  Without limiting the foregoing, the Protected Parties shall be third party beneficiaries of and shall be entitled to enforce the provisions of Sections 2.2(f)(v), 7.4(b), and 7.4(d) of this Trust Agreement.

**7.8    Limitation on Claim Interests for Securities Laws Purposes**.  Talc Personal Injury Claims, and any interests therein, (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other

50

instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest; provided, however, that clause (a) of this Section 7.8 shall not apply to the holder of a claim that is subrogated to a Talc Personal Injury Claim as a result of its resolution of such Talc Personal Injury Claim.

**7.9**    **Entire Agreement; No Waiver**.  The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein, and in the documents referred to herein (including the Plans), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.  The Parties do not intend for J&J to be a third-party beneficiary of the Trust or the TDP.

**7.10**    **Headings**.  The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

**7.11**    **Governing Law**.  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Trust, the Trustees, the Delaware Trustee, the TACs, the FCRs, or this Trust Agreement, any

51

provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustees accounts or schedules of Trustees fees and charges; (b) affirmative requirements to post bonds for the Trustees, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustees, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of Trustees, the Delaware Trustee, the TACs, or the FCRs set forth or referenced in this Trust Agreement.  Section 3540 of the Act shall not apply to the Trust.

**7.12**   **Settlors' Representative and Cooperation**.  The Debtors are hereby irrevocably designated as the Settlors and are hereby authorized to take any action required of the Settlors by the Trustees in connection with the Trust Agreement.  The Reorganized Debtors agree to cooperate in implementing the goals and objectives of this Trust Agreement at the sole expense of the Trust.

**7.13**   **Dispute Resolution**.  Any disputes that arise under this Trust Agreement or under the TDP among the Parties hereto shall be resolved by submission of the matter to an alternative dispute resolution ("**ADR**") process mutually agreeable to the Parties involved.  Should any Party

US-DOCS\163468783RLF1 33768897v.1

to the ADR process be dissatisfied with the decision of the arbitrator(s), that Party may apply to the Bankruptcy Court for a judicial determination of the matter. Any review conducted by the Bankruptcy Court shall be *de novo*. In any case, if the dispute arose pursuant to the consent provision set forth in Section 7.1, the Party or Parties who withheld consent shall bear the burden of proving that it reasonably withheld its consent. Should the dispute not be resolved by the ADR process within thirty (30) days after submission, the Parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court. If the Trustees determine that the matter in dispute is exigent and cannot await the completion of the ADR process, the Trustees shall have the discretion to elect out of the ADR process altogether or at any stage of the process and seek resolution of the dispute in the Bankruptcy Court. Notwithstanding anything contained herein to the contrary: (i) to the extent that the Delaware Trustee is the sole party named in a dispute under this Trust Agreement, the dispute shall be adjudicated only by a court of competent jurisdiction; (ii) to the extent that the Delaware Trustee is named in a dispute with other parties but the action or inaction of the Delaware Trustee is not a key fact in dispute, then the ADR procedures set forth herein shall apply.

7.14 **Enforcement and Administration**. The provisions of this Trust Agreement and the TDP shall be enforced by the Bankruptcy Court pursuant to the Plans and the Confirmation Orders. The Parties hereby acknowledge and agree that the Bankruptcy Court shall have continuing exclusive jurisdiction over the settlement of the accounts of the Trustees and over any disputes that arise under this Trust Agreement or the TDP and are not resolved by alternative dispute resolution in accordance with Section 7.13 above.

7.15 **Effectiveness**. This Trust Agreement shall become effective when this Trust Agreement has been executed and delivered by all the Parties hereto.

      **7.16**    **Counterpart Signatures**.  This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

      IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this_____ day of _____, 2025.

**SETTLORS:**

**IMERYS TALC AMERICA, INC.**            **IMERYS TALC VERMONT, INC.**

By:_____      By:_____

**IMERYS TALC CANADA INC.**

By:_____

**CYPRUS MINES CORPORATION**

By:_____

**TRUSTEES**

_____
Name:  Anne M. Ferazzi
Expiration Date of Initial Term:  _____
anniversary of the date of this Trust Agreement


_____
Name: Ellen S. Pryor
Expiration Date of Initial Term:  _____
anniversary of the date of this Trust Agreement

55

**DELAWARE TRUSTEE**
**WILMINGTON TRUST, NATIONAL ASSOCIATION**

_____

Title:    [_____]

56

US-DOCS\163468783RLF1 33768897v.1

**MESOTHELIOMA / LUNG CANCER TRUST ADVISORY COMMITTEE**

Name: [_____]
Initial Term of _____(_) years


Name: [_____]
Initial Term of _____(_) years


Name: [_____]
Initial Term of _____(_) years


Name: [_____]
Initial Term of _____(_) years


Name: [_____]
Initial Term of _____(_) years


Name: [_____]
Initial Term of _____(_) years


Name: [_____]
Initial Term of _____(_) years


Name: [_____]
Initial Term of _____(_) years

57

**OVARIAN CANCER TRUST ADVISORY COMMITTEE**

Name: [_____]
Initial Term of ____(_) years

Name: [_____]
Initial Term of ____(_) years

Name: [_____]
Initial Term of ____(_) years

Name: [_____]
Initial Term of ____(_) years

Name: [_____]
Initial Term of ____(_) years

Name: [_____]
Initial Term of ____(_) years

Name: [_____]
Initial Term of ____(_) years

58

**POST-EFFECTIVE DATE OVARIAN CANCER FCR**

Name: [_____]


**POST-EFFECTIVE DATE MESOTHELIOMA / LUNG CANCER FCR**

Name: [_____]

**Exhibit 1**

**Certificate of Trust**

(TO COME)