**EXHIBIT D**

**XL Settlement Agreement**

US-DOCS\167094262RLF1 34606780v.1

## XL SETTLEMENT AGREEMENT

This Agreement is entered into by and between the Debtors, on behalf of themselves and their Estates, Imerys USA, Inc. ("Imerys USA"), on behalf of itself and the other Non-Debtor Covered Entities, and XL Insurance America, Inc. (collectively with the Debtors and Imerys USA, the "Parties," and each individually, a "Party").  Capitalized terms in this prefatory paragraph, the following recitals, and in the Sections below have the meanings ascribed to them in the below list of Definitions.

## RECITALS

WHEREAS, XL issued the Policies to Imerys USA and its affiliates, including the Debtors, under which the Debtors and Imerys USA assert they are entitled to insurance coverage; and

WHEREAS, certain Talc Personal Injury Claims have been brought, and in the future may be brought, against the Debtors seeking damages and other relief for bodily injury; and

WHEREAS, a dispute has arisen between the Debtors and XL as to the scope of XL's obligations to provide coverage for Talc Personal Injury Claims; and

WHEREAS, on February 13, 2019, ITA, ITV and ITC filed voluntary petitions for relief with the Bankruptcy Court under Chapter 11 of title 11 of the United States Code, commencing their respective Chapter 11 Cases; and

WHEREAS, on [_____], 2025, ITA, ITV and ITC filed with the Bankruptcy Court the Second Joint Plan; and

WHEREAS, the Debtors, on the one hand, and XL, on the other hand, wish to fully and finally resolve the disputes between them, and to provide for the other consideration, promises, releases, and covenants set forth in this Agreement; and

- 1 -

WHEREAS, a dispute has arisen between the Non-Debtor Covered Entities and XL as to the scope of XL's obligations to provide coverage for the California Fire Claim;

WHEREAS, Imerys USA, on the one hand, and XL, on the other hand, wish to fully and finally resolve the disputes between them, and to provide for the other consideration, promises, releases, and covenants set forth in this Agreement;

WHEREAS, in connection with the Imerys Settlement, the Non-Debtor Covered Entities agreed to contribute, or cause to be contributed, to the Debtors, all of their rights and interests in the Policies, subject and pursuant to the terms of the Plan;

WHEREAS, as part of the compromise and resolution of the Parties' disputes as set forth herein, the Debtors have agreed to sell, and XL has agreed to purchase, all of the Debtors' rights and interests in the Policies (including all rights and interests in the Policies contributed by the Non-Debtor Covered Entities to the Debtors pursuant to the Imerys Settlement) free and clear of all interests of any Person, subject and pursuant to section 363 of the Bankruptcy Code and the terms of this Agreement; and

WHEREAS, upon the payment of the Settlement Amounts, as set forth in this Agreement, the Policies shall be fully extinguished and exhausted and XL shall have no further obligation whatsoever under the Policies to any Person, including to the Debtors, Imerys USA, the Talc Personal Injury Trust or the FCR.

NOW THEREFORE, in consideration of the foregoing, and in consideration of the other mutual considerations, promises, releases, and covenants as set forth below, it is hereby agreed as follows:

35954011.13
RLF1 33768910v.1

## DEFINITIONS

The following definitions apply to this Agreement only and are not intended to be used for any other purpose.  The singular form of a word includes the plural and vice versa; the disjunctive "or" is not exclusive and thus includes the conjunctive "and"; all pronouns apply to the male, female, and neutral genders; the word "any" includes the word "all" and vice versa; the words "includes" or "including" are without limitation; and the past tense of a word includes the present tense and vice versa.  Any capitalized term not defined herein will be given the meaning set forth in the Plan.

a. "**Affirmation Order**" shall have the meaning set forth in the Plan.

b. "**Agreement**" means this XL Settlement Agreement.

c. "**Bankruptcy Code**" shall have the meaning set forth in the Plan.

d. "**Bankruptcy Court**" shall have the meaning set forth in the Plan.

e. "**Bankruptcy Rules**" shall have the meaning set forth in the Plan.

f. "**Business Day**" shall have the meaning set forth in the Plan.

g. "**California Fire Claim**" means any claims of the Non-Debtor Covered Entities for insurance coverage or proceeds under the Policies arising from the settlement of the California Fire Suit.

h. "**California Fire Claim Settlement Amount**" means $2.25 million U.S. dollars to be paid by XL in the amounts of (i) $1 million in Cash to the Talc Personal Injury Trust and (ii) $1.25 million in Cash to the Non-Debtor Covered Entities for the California Fire Suit, respectively, in consideration for the release of the California Fire Claim.

- 3 -

i. "**California Fire Suit**" means the lawsuit styled as *California Department of Forestry & Fire Protection v. Imerys Filtration Minerals, Inc., et al.*, Santa Barbara County Superior Court, Case No. 16CV02133.

j. "**Cash**" shall have the meaning set forth in the Plan.

k. "**Channeling Injunction**" shall have the meaning set forth in the Plan.

l. "**Chapter 11 Cases**" shall have the meaning set forth in the Plan.

m. "**Claim**" shall have the meaning set forth in the Plan.

n. "**Confirmation Order**" shall have the meaning set forth in the Plan.

o. "**Consenting Entities**" means the Tort Claimants' Committee and the FCR.

p. "**Cyprus Mines Bankruptcy**" shall have the meaning set forth in the Plan.

q. "**Cyprus Mines Plan**" shall have the meaning set forth in the Plan.

r. "**Debtor Released Claims**" means any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which XL has, had, may have, or may claim to have against any of the Debtors, their Estates, the Reorganized North American Debtors, and the Talc Personal Injury Trust directly or indirectly arising out of, with respect to, or in any way relating to any Talc Claim.  The Debtor Released Claims shall include any claims for recovery of the settlement amount paid by XL, on behalf of the Debtors, in the lawsuit styled as *Gail Ingham v. Johnson & Johnson*, Case No. 1522-CC10417-01 (Mo. Cir. Ct., St. Louis City), and any claims for deductibles or retentions still owed by the Debtors pursuant to the Policies.

35954011.13
RLF1 33768910v.1

For the avoidance of doubt, the Debtor Released Claims shall not include any claims or defenses arising out of or relating to coverage under the Excluded Policies.

s.    "**Debtor Releasees**" means (a) ITA, ITV, and ITC; (b) current and former officers, directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, insurers, investment bankers, consultants, representatives, experts, and other professionals of ITA, ITV and ITC; and (c) the respective heirs, executors, and estates, as applicable, of each Person listed in clauses (a) and (b), and, as to each person listed in clauses (a), (b), or (c), solely in their capacity as such.

t.    "**Debtors**" shall have the meaning set forth in the Plan.

u.    "**Direct Action Claim**" means any claim by a Person against an XL Protected Party, on account of, based upon, arising from, or in any way attributable to the rights afforded to an Imerys Insured Party under a Policy, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an XL Protected Party.

v.    "**Disclosure Statement**" means the *Disclosure Statement for Second Joint Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated November 4, 2024, (ECF No. 6727), or any subsequently filed disclosure statement relating to the Plan, approved by the Bankruptcy Court as containing adequate information, and distributed in accordance with such order of approval, as such disclosure statement may be amended, modified, or supplemented from time to time.

w.    "**District Court**" shall have the meaning set forth in the Plan.

x.    "**Effective Date**" shall have the meaning set forth in Section I.A below.

y.    "**Estate**" shall have the meaning set forth in the Plan.

z.   "**Estate Causes of Action**" shall have the meaning set forth in the Plan.

aa.   "**Excluded Policies**" mean the international insurance policies issued to Imerys S.A. by XL Insurance Company Ltd, including Policy Numbers FR00003071LI11A, FR00003071LI12A, and FR00003071LI13A.

bb.   "**Execution Date**" means the earliest date on which this Agreement is signed by all of the Parties and consented to by the Consenting Entities.

cc.   "**Extra-Contractual Claim**" means any claim against an XL Protected Party, seeking any type of relief based upon conduct prior to the Effective Date, including: compensatory, exemplary, statutory, or punitive damages on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of an XL Protected Party of any type for which an Imerys Insured Party seeks relief other than coverage or benefits under an insurance policy, including any claims for economic loss, general damages, attorneys' fees or costs in connection with XL's handling of, or XL's refusal to handle, any claims against an Imerys Insured Party.

dd.   "**FCR**" shall have the meaning set forth in the Plan.

ee.   "**Final Order**" shall have the meaning set forth in the Plan.

ff.   "**Foreign Claim**" shall have the meaning set forth in the Plan.

gg.   "**Imerys Insured Party**" means the Debtors, the Non-Debtor Covered Entities and any other entity or Person insured or alleged to be insured under the Policies.

hh.   "**Imerys Settlement**" shall have the meaning set forth in the Plan.

ii.   "**Imerys USA**" means Imerys USA, Inc.

jj.   "**Indirect Talc Claim**" shall have the meaning set forth in the Plan.

- 6 -

kk. "**ITA**" means Imerys Talc America, Inc.

ll. "**ITC"** means Imerys Talc Canada Inc.

mm.   "**ITV**" means Imerys Talc Vermont, Inc.

nn. "**J&J**" shall have the meaning set forth in the Plan.

oo. "**Non-Debtor Covered Entities**" means Imerys USA, Imerys Minerals California, Inc., and Imerys Filtration Minerals, Inc., each of which were defendants in the California Fire Suit, and any other affiliated non-Debtor entity which has claimed or may claim coverage under the Policies.

pp. "**Non-Debtor Released Claims**" means any and all Claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or in equity, which XL has, had, may have, or may claim to have against any of the Non-Debtor Covered Entities, directly or indirectly arising out of, with respect to, or in any way relating to the California Fire Claim.  The Non-Debtor Released Claims shall include any claims for deductibles or retentions still owed by any of the Non-Debtor Covered Entities, pursuant to the Policies.  For the avoidance of doubt, the Non-Debtor Released Claims shall not include any claims or defenses arising out of or relating to coverage under the Excluded Policies.

qq. "**Non-Debtor Releasees**" means (a) the Non-Debtor Covered Entities; (b) current and former officers, directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, insurers, investment bankers, consultants, representatives, experts, and other professionals of the Non-Debtor Covered Entities;

- 7 -

and (c) the respective heirs, executors, and estates, as applicable, of each Person listed in clauses (a) and (b), and, as to each person listed in clauses (a), (b), or (c), solely in their capacity as such.

rr.  "**Parties**" shall mean more than one Party to this Agreement.

ss.  "**Party**" shall mean any of the Debtors, the Non-Debtor Covered Entities or XL.

tt.  "**Person**" shall have the meaning set forth in the Plan.

uu.  "**Plan**" shall mean the Second Joint Plan, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code, consistent with the terms of the XL Settlement set out in the Second Joint Plan.

vv.  "**Plan Effective Date**" shall have the meaning set forth in the Plan for the term "Effective Date."

ww.  "**Policies**" means any and all liability insurance policies issued by XL to the Debtors and the Non-Debtor Covered Entities, including Imerys USA, listed on Exhibit 1 hereto. For the avoidance of doubt, the Policies shall not include the Excluded Policies.

xx.  "**Protected Party**" shall have the meaning set forth in the Plan.

yy.  "**Released Party**" shall have the meaning set forth in the Plan.

zz.  "**Reorganized North American Debtors**" shall have the meaning set forth in the Plan.

aaa."**Rio Tinto**" means Rio Tinto America Holdings, Rio Tinto America, Inc., and Rio Tinto Services, Inc.

bbb.  "**2018 Rio Tinto Defense Costs Reimbursement Agreement**" means the 2018 Rio Tinto Defense Costs Reimbursement Agreement executed by and among Rio Tinto, Zurich, and XL.

ccc."**Rio Tinto/Zurich Settlement Agreement**" shall have the meaning set forth in the Plan.

- 8 -

ddd.    "**Second Joint Plan**" means the *Second Joint Plan of Reorganization of Imerys Talc America, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated [_____], 2025 (ECF No. [_____]).

eee."**Settlement Amounts**" means the Trust Settlement Amount and the California Fire Claim Settlement Amount.

fff.    "**Settling Talc Insurance Company**" shall have the meaning set forth in the Plan.

ggg.    "**Supplemental Settlement Injunction Order**" shall have the meaning set forth in the Plan.

hhh.    "**Talc Claim**" shall have the meaning set forth in the Plan.

iii.    "**Talc Personal Injury Claim**" shall have the meaning set forth in the Plan.

jjj.    "**Talc Personal Injury Trust**" shall have the meaning set forth in the Plan.

kkk.    "**Talc Trustee**" shall have the meaning set forth in the Plan.

lll.    "**Tort Claimants' Committee**" shall have the meaning set forth in the Plan.

mmm.    "**Trigger Date**" means, unless waived by the Debtors and XL, the date that the Tort Claimants' Committee or the FCR provides XL with notice that (a) the Confirmation Order and Affirmation Order have been entered and become Final Orders, and (b) the Effective Date has occurred; provided that all of the conditions precedent set forth in Section I.A. shall have been satisfied to the extent not waived pursuant to the terms thereof.

nnn.    "**Trust Settlement Amount**" means $28.25 million U.S. dollars.

ooo.    "**XL**" means XL Insurance America, Inc.

ppp.    "**XL California Fire Released Claims**" means any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments,

- 9 -

executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or in equity, which the Non-Debtor Covered Entities have, had, may have, or may claim to have against any of the XL Protected Parties, directly or indirectly arising out of, with respect to, or in any way relating to the California Fire Claim or the Policies.

qqq.    "**XL Corporate Parties**" means XL and the entities listed on Exhibit 3 to this Agreement.

rrr. "**XL Protected Parties**" means (a) the XL Corporate Parties; (b) the direct or indirect shareholders of the XL Corporate Parties; (c) current and former officers, directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, insurers, consultants, representatives, experts, and other professionals of the XL Corporate Parties; and (d) with respect to each of the foregoing Person in clauses (b) and (c), each such persons respective heirs, executors, estates, and nominees, as applicable and, as to each Person listed in clauses (a), (b), (c) and (d), solely in their capacity as such. For the avoidance of doubt, the XL Protected Parties exclude the Debtors, the Imerys Protected Parties, the Rio Tinto Protected Parties, the Zurich Protected Parties, the Cyprus Protected Parties, and J&J (each as defined in the Plan).

sss. "**XL Released Claims**" mean the XL Talc Released Claims and the XL California Fire Released Claims.  For the avoidance of doubt, the XL Released Claims shall not include any claims arising out of or relating to coverage under the Excluded Policies.

ttt. "**XL Talc Released Claims**" means any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or

- 10 -

unsuspected, in law or in equity, including all Estate Causes of Action, which the Debtors, on their own behalf and as representatives of their respective Estates, the Reorganized North American Debtors, and the Tort Claimants' Committee and FCR, solely on their own behalf, have, had, may have, or may claim to have against any of the XL Protected Parties, directly or indirectly arising out of, with respect to, or in any way relating to the Talc Claims or the Policies.

uuu.    "**Zurich**" means Zurich American Insurance Company, in its own capacity and as the successor-in-interest to Zurich Insurance Company, U.S. Branch.

## TERMS OF AGREEMENT AND RELEASES

## I.    EFFECTIVE DATE AND PAYMENT OF SETTLEMENT AMOUNTS

A.    This Agreement shall become effective (the "Effective Date") on the earliest date upon which all of the following conditions precedent have occurred:

(a) Each Party has executed the Agreement;

(b) The Non-Debtor Covered Entities have contributed all of their rights and interests in the Policies to the Debtors pursuant to the Imerys Settlement;

(c) Each of the Consenting Entities have executed their consent to the Agreement; and

(d) The Bankruptcy Court has entered the Confirmation Order and the District Court has entered the Affirmation Order, and each of the Confirmation Order and Affirmation Order shall be a Final Order.

(e) The Confirmation Order and Affirmation Order shall provide:

(i) This Agreement is approved pursuant to Section 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019;

- 11 -

(ii) The Agreement (a) represents a sound exercise of the Debtors' business judgment, will yield a fair and reasonable price for the assets being sold, is in the best interest of the Debtors' Estates, and otherwise complies with Section 363 of the Bankruptcy Code; (b) meets the requirements for a sale of the Debtors' property free and clear of any interests of third parties (including the Non-Debtor Covered Entities) in such property pursuant to Section 363(f) of the Bankruptcy Code; and (c) constitutes a purchase in good faith pursuant to section 363(m) of the Bankruptcy Code, and making XL a good faith purchaser under Section 363(m);

(iii) The XL Protected Parties shall be Protected Parties and Released Parties under the Plan;

(iv) The XL Protected Parties, as Protected Parties, shall be entitled to all protections of the Channeling Injunction under the Plan. The Channeling Injunction shall permanently channel all Talc Personal Injury Claims, including any Indirect Talc Claim (other than Foreign Claims), against any Protected Party to the Talc Personal Injury Trust, which shall provide that any holder of a Talc Personal Injury Claim shall be permanently and forever stayed, restrained, barred and enjoined from taking any action against a Protected Party for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment of, on, or with respect to any Talc Personal Injury Claim.

(v) The Debtors, for themselves and as representatives of their Estates, Imerys USA, for itself and on behalf of the other Non-Debtor Covered Entities, and

- 12 -

the Consenting Entities, unconditionally and irrevocably release the XL Protected Parties from all XL Released Claims (as applicable). For the avoidance of doubt, the XL Released Claims shall not include any claims arising out of or relating to coverage under the Excluded Policies.

(vi) The XL Protected Parties shall be entitled to all of the protections of the Supplemental Settlement Injunction Order, which shall provide that all Persons are permanently enjoined from pursuing the XL Protected Parties for any XL Talc Released Claim. For the avoidance of doubt, the XL Talc Released Claims shall not include any claims arising out of or relating to coverage under the Excluded Policies.

B.      Within ten (10) days after the Trigger Date, XL shall irrevocably and indefeasibly pay the Trust Settlement Amount in full, by wire transferring $28.25 million to the Talc Personal Injury Trust.  Not later than the Trigger Date, the Talc Personal Injury Trust shall provide all information needed by XL to pay the Trust Settlement Amount, including providing XL with a Form W-9 containing the Talc Personal Injury Trust's tax identification number, and bank account information sufficient to make the required wire transfer.

C.      Within ten (10) days after the Trigger Date, XL shall irrevocably and indefeasibly pay the California Fire Claim Settlement Amount in full, by two wire transfers in the following amounts: (1) $1 million to the Talc Personal Injury Trust; and (2) $1.25 million to Imerys Filtration Minerals, Inc (a Non-Debtor Covered Entity).  Not later than the Trigger Date, both of the Talc Personal Injury Trust and Imerys Filtration Minerals, Inc. shall provide all information needed by XL to pay the California Fire Claim Settlement Amount, including providing XL with Form W-

- 13 -

9's containing the Talc Personal Injury Trust's and Imerys Filtration Minerals, Inc.'s tax identification number, and bank account information sufficient to make the required wire transfer.

     **D.**    XL's payments of the Settlement Amounts are in addition to any and all payments that may have been paid by XL to or for the benefit of the Debtors or any other entity prior to the Effective Date.  Any and all payments by XL under, arising out of, related to, or involving the Policies are deemed final and irrevocable payments.  The Settlement Amounts shall not be subject to any claims for deductions, setoffs, or charge-backs by XL of any kind, including claims involving recoupment of deductibles, contribution, self-insured retentions, allocated loss adjustment expense, additional premiums, or retrospective or reinstatement premiums under the Policies, proofs of claim and/or any other agreement including the 2018 Rio Tinto Defense Costs Reimbursement Agreement.

     **E.**    The Parties expressly agree that the Settlement Amounts, together with any amounts paid by XL prior to the Effective Date, are the total amount the XL Protected Parties are obligated to pay on account of any and all claims by or on behalf of the Debtors and the Non-Debtor Covered Entities arising from or attributable to the Policies.  The Parties further expressly agree that this Agreement and the payment of the Settlement Amounts fully satisfies any and all indemnity, defense or other obligations of the XL Protected Parties under the Policies and exhaust the available limits of the Policies.

## II.    BANKRUPTCY-RELATED OBLIGATIONS

     **A.**    Prior to the Execution Date, the Debtors will seek and obtain the Consenting Entities' written consent to the Debtors' entry into this Agreement and their release of all XL Talc Released Claims, which release shall be effective upon payment of the Settlement Amounts in full, and shall furnish evidence of such written consent to XL.

- 14 -

**B.**     The Parties shall cooperate in good faith to ensure that the Confirmation Order and Affirmation Order are entered and become a Final Orders.

**C.**     After the Execution Date, and except to contend that the Debtors or the Non-Debtor Covered Entities has breached this Agreement, the XL Corporate Parties shall not object to the Plan and further shall not seek discovery from the Debtors, the Non-Debtor Covered Entities, the Tort Claimants' Committee or the FCR (and the Debtors, the Non-Debtor Covered Entities, the Tort Claimants Committee and the FCR shall not seek discovery from the XL Corporate Parties) with respect to the Plan in the Chapter 11 Cases and shall not object to the Cyprus Mines Plan (as defined in the Plan) and further shall not seek discovery from any party in the Cyprus Mines Bankruptcy (as defined in the Plan) with respect to the Cyprus Mines Plan.  The XL Corporate Parties shall withdraw any and all motions, briefs, pleadings, claims, votes, and objections (if any) in the Chapter 11 Cases.  The Proofs of Claims set forth on Exhibit 2 hereto shall be deemed withdrawn on the Execution Date and the XL Corporate Parties shall not file any additional proofs of claim or assert other claims against the Debtors in the Chapter 11 Cases or the debtor in the Cyprus Mines Bankruptcy that have been released pursuant to this Agreement from and after the Execution Date.  Such withdrawals set forth in this paragraph shall be without prejudice until the occurrence of the Effective Date at which time such withdrawals shall be deemed to be with prejudice.

**D.**     On the Plan Effective Date, the rights and obligations of the Debtors under this Agreement shall be deemed to have been assigned and transferred to the Talc Personal Injury Trust without need of further action by any Party or Person, and the Talc Personal Injury Trust shall be bound by all of the provisions of this Agreement, including the release of XL Talc Released Claims

- 15 -

as set forth in <u>Section III.A</u> below.  The Debtors shall continue to be bound by this Agreement and shall retain the obligations and benefits hereunder to the extent consistent with the Plan.

## III.    RELEASES

A.    **Release by Debtors.**  Effective upon XL's payment of the Settlement Amounts in full and in consideration for payment of the Settlement Amounts and all other consideration provided herein, the Talc Personal Injury Trust, the Debtors, on behalf of themselves, their Estates and successors, and the Reorganized North American Debtors, hereby are deemed to (a) fully, finally and forever waive, acquit, surrender, relinquish, discharge and release the XL Protected Parties from any and all XL Talc Released Claims to the fullest extent permitted by law, (b) withdraw any and all requests, demands, or tenders for defense or indemnity previously submitted by or on behalf of the Debtors to XL Protected Parties with respect to any XL Talc Released Claims, and (c) surrender, relinquish, and release any further right to tender or present any claims by or on behalf of the Talc Personal Injury Trust or the Debtors with respect to any XL Talc Released Claims.  By virtue of the foregoing release, the XL Protected Parties shall have no duty to defend or indemnify the Debtors, the Non-Debtor Covered Entities, the Talc Personal Injury Trust or the Reorganized North American Debtors with respect to any claims based on, arising from, or attributable to the XL Talc Released Claims.  For the avoidance of doubt, the foregoing releases and the XL Talc Released Claims shall not include any claims arising out or relating to coverage under the Excluded Policies.

B.    **Release by the Non-Debtor Covered Entities.**  Effective upon XL's payment of the California Fire Claim Settlement Amount in full and in consideration for payment of the California Fire Claim Settlement Amount, Imerys USA, on behalf of itself and the other Non-Debtor Covered Entities, hereby is deemed to (a) fully, finally and forever waive, acquit, surrender,

- 16 -

relinquish, discharge and release the XL Protected Parties from any and all XL California Fire Released Claims to the fullest extent permitted by law, (b) withdraw any and all requests, demands, or tenders for defense or indemnity previously submitted by or on behalf of the Non-Debtor Covered Entities to XL Protected Parties with respect to any XL California Fire Released Claims, and (c) surrender, relinquish, and release any further right to tender or present any claims by or on behalf of the Non-Debtor Covered Entities with respect to any XL California Fire Released Claims. By virtue of the foregoing release, the XL Protected Parties shall have no duty to defend the Non-Debtor Covered Entities with respect to any claims based on, arising from, or attributable to the XL California Fire Released Claims. For the avoidance of doubt, the foregoing releases and the XL California Fire Released Claims shall not include any claims arising out or relating to coverage under the Excluded Policies

    **C.**    **Debtor Release by XL.**  Effective upon the occurrence of the Trigger Date, the XL Protected Parties hereby are deemed to (a) fully, finally and forever waive, acquit, surrender, relinquish, discharge and release the Debtor Releasees from any and all of the Debtor Released Claims to the fullest extent permitted by law, and (b) withdraw any and all requests or demands or tenders for defense or indemnity, including reimbursement of payments made by XL, previously submitted by or on behalf of XL to any of the Debtor Releasees  related to or in connection with any Debtor Released Claims.  By virtue of the foregoing release, the Debtor Releasees shall have no further obligations to the XL Protected Parties with respect to any Claims based on, arising from, or attributable to the Debtor Released Claims.  For the avoidance of doubt, the foregoing releases and the Debtor Released Claims shall not include any claims or defenses arising out of or relating to coverage under the Excluded Policies.

- 17 -

**D.**     **Non-Debtor Release by XL.**  Effective upon the occurrence of the Trigger Date, the XL Protected Parties hereby are deemed to (a) fully, finally and forever waive, acquit, surrender, relinquish, discharge and release the Non-Debtor Releasees from any and all of the Non-Debtor Released Claims to the fullest extent permitted by law, and (b) withdraw any and all requests or demands or tenders for defense or indemnity, including reimbursement of payments made by XL, previously submitted by or on behalf of XL to any of the Non-Debtor Releasees related to or in connection with any Non-Debtor Released Claims.  By virtue of the foregoing release, the Non-Debtor Releasees shall have no further obligations to the XL Protected Parties with respect to any claims based on, arising from, or attributable to the Non-Debtor Released Claims.  For the avoidance of doubt, the foregoing releases and the Non-Debtor Released Claims shall not include any claims or defenses arising out of or relating to coverage under the Excluded Policies.

**E.**     **Unknown or Future Claims.**  The Parties expressly acknowledge that there may be changes in the law or the Parties may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the claims released in Sections III.A, III.B, III.C and III.D above.  Nevertheless, the Parties hereby agree that (subject to Section IV below) the releases set forth in Sections III.A, III.B, III.C and III.D above shall be and remain effective in all respects, notwithstanding any changes in the law or the discovery of such additional or different facts.

In addition, the Parties acknowledge they have been advised by their respective legal counsel and are familiar with the provisions of section 1542 of the California Civil Code, which provides:

- 18 -

**A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of the executing of the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Parties expressly waive and relinquish any and all rights or benefits they have or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement.  In connection with the waiver and relinquishment of rights or benefits under Civil Code § 1542, each Party acknowledges that it fully understands that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

F.    **Agreement Rights and Obligations Not Affected.**  The releases set forth in Sections III.A, III.B, III.C and III.D of this Agreement are not intended to, and shall not, extend to or otherwise release any rights, privileges, benefits, duties, or obligations of the Parties by reason of, or otherwise arising from, this Agreement.

IV.    **CONDITIONS PRECEDENT AND VOIDABILITY**

A.    This Agreement shall become null and void upon the occurrence of any of the following contingencies unless waived by the Parties pursuant to a writing signed by each Party: (1) the entry at any time by the Bankruptcy Court of an order confirming a Chapter 11 plan of reorganization for the Debtors that is not the Plan; (2) the entry by the Bankruptcy Court of any

- 19 -

order stating that an XL Protected Party is not a Settling Talc Insurance Company or that otherwise contravenes the designation of an XL Protected Party entitled to status as a Protected Party or Released Party under the Plan; (3) the entry of any order by the Bankruptcy Court that contravenes the designation of the Non-Debtor Covered Entities as Protected Parties under the Plan, or does not approve the Imerys Settlement set forth in the Plan; (4) the entry of an order by the Bankruptcy Court denying approval of this Agreement; (5) the entry prior to the Trigger Date of an order by the Bankruptcy Court converting the Chapter 11 Cases into cases under Chapter 7 of the Bankruptcy Code or dismissing the Chapter 11 Cases; (6) the entry of an order by the Bankruptcy Court appointing a trustee or an examiner substantially possessing the rights, powers, and duties of a bankruptcy trustee in the Chapter 11 Cases; (7) the approval by the Bankruptcy Court of a Plan which does not channel all current and future Talc Personal Injury Claims to the trust as per the terms and conditions of an injunction entered pursuant to sections 524(g) and 105 of the Bankruptcy Code and as provided in the Plan; and (8) the approval by the Bankruptcy Court of a Plan which does not provide for the assignment of claims against the XL Protected Parties for contribution, indemnity and defense (including any claims for settlement amounts paid pursuant to the Rio Tinto/Zurich Settlement Agreement) of Zurich and the Rio Tinto Settling Parties, as defined in the Rio Tinto/Zurich Settlement Agreement, to the Talc Personal Injury Trust, or otherwise provide for the release of those claims.

B.      Notwithstanding anything in the Agreement to the contrary, in the event that this Agreement becomes null and void pursuant to Section IV.A above, then: (1) this Agreement, except for this Section IV and any definitions of capitalized terms used herein (which Sections shall remain in full force and effect), shall be vitiated and shall be a nullity; (2) XL shall not be obligated to pay the Settlement Amounts pursuant to this Agreement; (3) the XL Protected Parties

- 20 -

shall not be designated as a Settling Talc Insurance Company or included under any injunction in the Plan or the Confirmation Order, and the XL Protected Parties shall not be entitled under this Agreement or the Plan to assert as a defense to any claim any benefit of any injunction under the Plan or contained within the Confirmation Order; (4) the Parties shall have all of the rights, defenses, and obligations under or with respect to any and all of the Policies that they would have had absent this Agreement; and (5) any and all otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date on which this Agreement becomes null and void in accordance with <u>Section IV.A</u> above, and no Party shall assert or rely on any time-related defense to any claim by any other Party related to such period.

## V.    JUDGMENT REDUCTION

In the event that any entity obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from an XL Protected Party as a result of a claim for contribution, subrogation, indemnification, or other similar claim against an XL Protected Party for the alleged share or equitable share of the XL Protected Party, or to enforce subrogation rights, if any, of the defense or indemnity obligation of an XL Protected Party for any claims released in <u>Section III.A</u> or <u>III.C</u> above, the Talc Personal Injury Trust shall voluntarily reduce its judgment(s) or claim(s) against, or settlement with, such other entity to the extent necessary to eliminate such contribution, subrogation, or indemnification claims against the XL Protected Party.  To ensure that such a reduction is accomplished, the XL Protected Parties shall be entitled to assert this paragraph as a defense to any action against them for any such portion of the judgment or claim and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to

- 21 -

effectuate the reduction to protect XL Protected Parties from any liability for the judgment or claim.

## VI.    CONTRIBUTION CLAIMS

XL agrees to not assert or file any new claim seeking contribution, indemnity, or defense against another insurer or other Person in order to recover any portion of the Settlement Amounts or other amounts previously paid by XL to the Debtors or the Non-Debtor Covered Entities under or with respect to the XL Released Claims.    Nothing contained in this Agreement shall be construed to prohibit an XL Protected Party from making a claim against any reinsurer or from pursuing its recoveries from any reinsurer in its capacity as such, regardless of the identity or affiliation of the reinsurer.    To the extent that the Debtors or the Talc Personal Injury Trust settles claims arising out of Talc Personal Injury Claims with any other insurer or other Person, the Debtors or the Talc Personal Injury Trust, as applicable, will use best efforts to obtain a waiver of that other insurer's or other Person's claims seeking contribution, indemnity, or defense against XL Protected Parties based upon, arising out of, or in any way attributable to such Talc Personal Injury Claims.    Such waiver may be accomplished by an assignment of such claims to the Talc Personal Injury Trust, which such claims will be subject to the release in <u>Section III</u>.    As of the Plan Effective Date, each of the Rio Tinto Settling Parties and Zurich, as defined in the Rio Tinto/Zurich Settlement Agreement, shall have assigned all claims against the XL Protected Parties for contribution, indemnity or defense, including any claims arising out of settlement amounts paid pursuant to the Rio Tinto/Zurich Settlement Agreement and any claims arising out of the 2018 Rio Tinto Defense Costs Reimbursement Agreement (any such claim being a  Rio Tinto/Zurich Credit Contribution as defined in the Rio Tinto/Zurich Settlement Agreement), to the Talc Personal Injury Trust, to be released pursuant to <u>Section III</u> of this Agreement.

- 22 -

## VII.    COOPERATION

A.    Each Party shall use its reasonable efforts to obtain the outcomes sought by this Agreement, and to take such steps and execute such documents as may be reasonably necessary and proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.  In the event that any action or proceeding is commenced or prosecuted by any Person to invalidate or prevent the validation, enforcement, or carrying out of all or any provisions of this Agreement, the Parties mutually agree to cooperate fully in opposing such action or proceeding.

B.    Each of the Parties shall reasonably cooperate with each of the other Parties in responding to or opposing any motion, objection, claim, assertion, or argument by any third party that this Agreement is not binding, or should be avoided, or that valuable and fair consideration or reasonably equivalent value have not been exchanged pursuant to this Agreement.

## VIII.   NO ADMISSIONS AND NON-ADMISSIBILITY OF THE AGREEMENT

Nothing contained in this Agreement, or in any negotiations, discussions, correspondence or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties with respect to any matter or any factual or legal issue of any kind.  Except as may be necessary to seek or obtain entry of the order approving this settlement under Bankruptcy Code section 9019 or the Confirmation Order in the Chapter 11 Cases, to enforce the terms of this Agreement, or as may be necessary or useful in the pursuit by an XL Protected Party of a reinsurance recovery for sums to be paid under this Agreement, neither this Agreement itself, nor any negotiations, discussions, correspondence, or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be discoverable or admissible in any legal or equitable proceeding of any kind,

- 23 -

including any lawsuit, mediation, arbitration, administrative proceeding, or action, or any other proceeding or action of any kind.

## IX.    BINDING EFFECT OF AGREEMENT

Upon the Effective Date, all terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties and their respective successors and assigns, and the Talc Personal Injury Trust.

## X.    DISPUTE RESOLUTION

If any dispute should arise concerning the terms, meaning, or implementation of this Agreement, the Parties agree to use their best efforts to reach a prompt resolution of such dispute. If the Parties are unable to reach an agreement, they shall proceed to mediation.  Either Party may initiate litigation in an appropriate forum, including the Bankruptcy Court to the extent the Bankruptcy Court has both subject matter and personal jurisdiction, but no Party may initiate litigation until after a mediation has commenced and the mediator has determined that the Parties' mediation has reached an impasse.

## XI.    CONSTRUCTION OF AGREEMENT

A.    The Parties represent and acknowledge that they have participated in the preparation and drafting of this Agreement or have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party on the basis that one Party drafted the language of this Agreement or played a greater role in the drafting of the language.

B.    The headings of this Agreement are asserted for convenience and are not part of the provisions hereof and shall have no force or effect.

35954011.13
RLF1 33768910v.1

C.      If any provision of this Agreement or application thereof is held to be invalid or unenforceable, the remainder of this Agreement shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties.  Notwithstanding the foregoing, the provisions in this Agreement regarding Payment (<u>Section I</u>) and Releases (<u>Section III</u>) and the definitions of the defined terms that appear in those provisions shall not be severable from this Agreement.

## XII.    MEDICARE AND OTHER THIRD-PARTY CLAIMS

A.      XL's payment obligations under this Agreement are solely to pay the Talc Personal Injury Trust and appropriate Non-Debtor Covered Entity, as set forth in <u>Section I</u> above. In no event shall an XL Protected Party pay or be obligated to pay directly any claimant, representative of any claimant or the Debtors' defense counsel on account of any Talc Personal Injury Claim.

B.      An XL Protected Party shall not have any responsibility to make any required reports (or to make any payments owed or sums to be paid) to Medicare or to the United States government or any agency or instrumentality thereof pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2) and/or under any regulations promulgated thereunder including 42 C.F.R. § 411.20 et seq. with respect to any payment the Debtors or the Talc Personal Injury Trust receives under this Agreement.

C.      The Talc Personal Injury Trust shall be designated as the "RRE Agent."

D.      The RRE Agent shall, at its sole expense, act as XL's reporting agent, and shall timely submit all reports that are required by a Responsible Reporting Entity under the reporting provisions of Section III of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173) or any other similar statute or regulation ("MMSEA") on account of Talc Personal Injury Claims paid by the RRE Agent.  The RRE Agent shall follow all applicable guidance

- 25 -

published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports under MMSEA (collectively, "CMS") to determine whether or not and, if so, how to report to CMS pursuant to MMSEA.

      **E.**     The RRE Agent shall provide a written notification to XL within ten (10) Business Days following receipt of any notification from CMS that any report was rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance.

      **1.**     With respect to any reports rejected or otherwise identified as noncompliant by CMS, the RRE Agent shall, at XL's request, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports.  The RRE Agent shall reasonably undertake to remedy any issues of noncompliance that CMS identifies and to resubmit such reports to CMS.  Upon request by XL, the RRE Agent shall provide copies of such resubmissions.   With respect to copies of original reports and resubmissions provided under this <u>Section XII.E.1</u>, the RRE Agent may redact from such copies the names, social security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the injured parties, claimants, guardians, conservators, and/or other personal representatives, as applicable.

      **2.**     All documentation that the RRE Agent relies upon in making a determination that a payment does not have to be reported to CMS shall be maintained for a minimum of six (6) years following such determination.

      **F.**     Absent guidance to the contrary from CMS, the Secretary of Health and Human Services or a controlling court, including the United States Court of Appeals for the Third Circuit,

the Talc Personal Injury Trust (or the Debtors, as appropriate) is not required by this Agreement to report any Talc Personal Injury Claim for a claimant who alleges that exposure to or ingestion of talc or talc-containing product for which the Debtors allegedly are responsible took place exclusively before December 5, 1980.

G.      In the event that CMS concludes that reporting done by the RRE Agent in accordance with this Section is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the RRE Agent or XL a concern with respect to the sufficiency or timeliness of such reporting or non-reporting, then XL shall have the right to submit its own reports to CMS under MMSEA, and the RRE Agent shall provide to XL such information as either may require to comply with MMSEA including the full reports filed by the RRE Agent without any redactions.  XL shall keep any information received from the RRE Agent pursuant to this Paragraph confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

H.      The Talc Personal Injury Trust shall obtain, prior to remittance of funds to claimants' counsel or the claimant, if pro se, in respect of any Talc Personal Injury Claim, a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Talc Personal Injury Claim.  The Talc Personal Injury Trust shall provide a certification of its compliance with this Section to XL upon XL's request, but not more often than quarterly.

I.      Compliance with the requirements of this Section shall be a material obligation of the Talc Personal Injury Trust in favor of XL under this Agreement.

- 27 -

## XIII.   REPRESENTATIONS, WARRANTIES, AND OTHER MISCELLANEOUS PROVISIONS

**A.**     Each Party represents and warrants that, subject to the Trigger Date, it has taken all necessary corporate and legal action required to duly approve the making and performance of this Agreement and that no further action is necessary to make this Agreement binding and legally enforceable according to its terms.

**B.**     Each Party represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law or any of its respective articles of incorporation or bylaws or any contract or agreement by which it is bound.

**C.**     Each Party represents and warrants that (1) it is the owner of the rights and claims to be compromised and released by it under this Agreement and (2) it has not assigned or transferred to any Person any such right or claim or other matter to be compromised and released hereunder.

**D.**     Each Party represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable on and after the Trigger Date.

**E.**     Each Party represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations, with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good faith compromise of disputed claims, disputed liabilities and disputed issues.

**F.**     Each Party represents and warrants that it has read this Agreement in its entirety, fully understands all of its terms and the consequences thereof, and that the individual signing

- 28 -

this Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Agreement, subject, in the case of the Debtors to the entry of the Confirmation Order and Affirmation Order.

       **G.**    This Agreement (including the exhibits attached to it), together with the Plan and the Disclosure Statement, sets forth the entire agreement among the Parties as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or verbal.

       **H.**    All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the other Parties and Consenting Entities at the addresses set forth below, or to such other persons or addresses as the Parties or Consenting Entities may designate in writing from time to time:

> <u>For XL</u>:
>
> Keith Moskowitz, Esq.
> Patrick C. Maxcy, Esq.
> Dentons US LLP
> 233 South Wacker Drive
> Suite 5900
> Chicago, IL 60606
> keith.moskowitz@dentons.com
> patrick.maxcy@dentons.com
>
> <u>with a copy to</u>:
>
> *XL*:
>
> Kevin Spencer
> 14643 Dallas Parkway, Suite 770
> Dallas, TX 75254
> Kevin.Spencer@xlcatlin.com

- 29 -

For Debtors:

Angela R. Elbert, Esq.
Neal, Gerber & Eisenberg LLP
225 West Randolph Street, Suite 2800
Chicago, IL  60606
aelbert@nge.com

with a copy to:

Kimberly A. Posin, Esq.
Latham & Watkins LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
kim.posin@lw.com

For Imerys USA:

William J. Beausoleil
Hughes Hubbard & Reed LLP
One Battery Park Plaza, 16th Floor
New York, NY 10004-1482
william.beausoleil@hugheshubbard.com

For the Consenting Entities:

*For the Consenting Entities:*

Kami E. Quinn, Esq.
Gilbert LLP
700 Pennsylvania Ave. SE
Washington, DC  20003
quinnk@gilbertlegal.com

with a copy to:

*Tort Claimants' Committee:*

Natalie D. Ramsey
Robinson & Cole LLP
1201 North Market Street
Suite 1406
Wilmington, DE  19801
Direct 302.516.1702
nramsey@rc.com

- 30 -

*FCR:*

Edwin J. Harron, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE  19801
eharron@ycst.com

**I.**      This Agreement may be amended only by a writing signed by or on behalf of each Party and, if before the Effective Date, each of the Consenting Entities.

**J.**      This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  Execution of this Agreement may be effected by PDF or other electronic transmission of executed copies of the signature pages delivered to counsel for the Parties.

- 31 -

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the last date indicated below.

**IMERYS TALC AMERICA, INC. (on behalf of itself and each of the Debtors in the Chapter 11 Cases)**

By:     _____

Name: _____

Title:   _____

Date:   _____


**IMERYS USA, INC. (on behalf of itself and each of the Non-Debtor Covered Entities)**

By:     _____

Name: _____

Title:   _____

Date:   _____


**XL INSURANCE AMERICA, INC.**

By:     _____

Name: _____

Title:   _____

Date:   _____

- 32 -

**IN WITNESS WHEREOF**, the Consenting Entitles have consented to this Agreement as of the last date indicated below.

**TORT CLAIMANTS' COMMITTEE**

By: _____

Name: _____

Title: _____

Date: _____

**FCR**

By: _____

Name: _____

Title: _____

Date: _____

- 33 -

**Exhibit 1**
**XL Insurance Policies Issued to Imerys USA, Inc. and its Affiliates**

| Issuing Insurer | Policy No. | Policy Period |
|---|---|---|
| XL Insurance America, Inc. | US00006616LI11A | 1/1/2011 – 1/1/2012 |
| XL Insurance America, Inc. | US00006617LI11A | 1/1/2011 – 1/1/2012 |
| XL Insurance America, Inc. | US00006616LI12A | 1/1/2012 – 1/1/2013 |
| XL Insurance America, Inc. | US00006617LI12A | 1/1/2012 -1/1/2013 |
| XL Insurance America, Inc. | US00006616LI13A | 1/1/2013 – 1/1/2014 |
| XL Insurance America, Inc. | US00006617LI13A | 1/1/2013 – 1/1/2014 |
| XL Insurance America, Inc. | US00006616LI14A | 1/1/2014 – 1/1/2015 |
| XL Insurance America, Inc. | US00006617LI14A | 1/1/2014 – 1/1/2015 |

35954011.13
RLF1 33768910v.1

**Exhibit 2**
**XL Proofs of Claims Filed in the Chapter 11 Cases**

| Proof of Claim Number | Claimant | Debtor |
|---|---|---|
| 138 | XL Insurance America, Inc. | Imerys Talc America, Inc. |
| 150 | XL Insurance America, Inc. | Imerys Talc Vermont, Inc. |
| 225 | XL Insurance America, Inc. | Imerys Talc America, Inc. |
| 881 | XL Insurance America, Inc. | Imerys Talc America, Inc. |
| 903 | XL Insurance America, Inc. | Imerys Talc Vermont, Inc. |
| 930 | XL Insurance America, Inc. | Imerys Talc Vermont, Inc. |

- 1 -

**Exhibit 3**
**XL Corporate Parties**

- **XL Insurance America, Inc.**
- **Greenwich Insurance Company**
- **XL Specialty Insurance Company**
- **X.L. America, Inc.**

- 1 -