**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>IMERYS TALC AMERICA, INC., *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case No. 19-10289 (LSS)<br><br>Jointly Administered |
| In re:<br><br>CYPRUS MINES CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-10398 (LSS)<br><br>**Hearing Date: Sept. 29, 2026**<br>**Objection Deadline: Sept. 8, 2026** |

**MOTION TO (i) SCHEDULE A STATUS CONFERENCE TO DISCUSS THE IMPLICATIONS, FOR PLAN CONFIRMATION ISSUES IN THIS BANKRUPTCY CASE, OF THE ORDER TO SHOW CAUSE ISSUED BY THE MDL COURT RE PLAINTIFFS' APPARENT INABILITY TO PROVE SPECIFIC CAUSATION REQUIRED TO MAINTAIN OVARIAN CANCER CLAIMS BASED ON EXPOSURE TO J&J TALC AND (ii) HOLD IN ABEYANCE ANY RULING ON PLAN CONFIRMATION PENDING SUCH STATUS CONFERENCE**

The insurers listed in the signature blocks at the end of this brief (collectively, "Certain Insurers") hereby move that the Court schedule a status conference in these Chapter 11 cases to address the implications, for Debtors' pending requests to confirm the Imerys Plan and the Cyprus Plan, of the order to show cause and memorandum opinion issued on July 22, 2026 by the U.S. District Court for the District of New Jersey in the federal MDL relating to talc claims against Johnson & Johnson and Red River Talc LLC (collectively, "J&J").

The insurers further request that the Court hold in abeyance any ruling on plan confirmation until after such status conference has taken place.

The MDL court's order and memorandum opinion are attached as **Exhibits A** and **B**.

***Recent Developments in the J&J Talc MDL***

On May 7, 2026, following "evidentiary hearings on the admissibility of Plaintiffs' specific causation experts, Drs. Wolf and Clarke-Pearson,"[1] the plaintiffs withdrew their specific causation experts. J&J then filed a motion for entry of an order to show cause, arguing that the testimony at the hearing establishes that no plaintiff in the MDL would be capable of meeting Rule 702 to introduce an expert who could reliably opine on specific causation of any plaintiff's gynecological cancer.[2] The court noted that J&J "contends, in essence, that the bellwether Plaintiffs' experts fail under Rule 702 scrutiny because their testimony leads to the undeniable conclusion that any expert's methodology to ascertain specific causation of any given plaintiff's gynecological cancer would be unreliable."[3] Plaintiffs opposed the motion.

The magistrate judge granted J&J's motion for an order to show cause, ordering "all Plaintiffs" in the MDL—more than 69,000 persons[4]--to show cause within 120 days "why their case should not be dismissed with prejudice for failure to point to admissible expert opinion as to specific causation."[5] The court explained:

> These are some of the critical challenges that raise deep skepticism that a plaintiff can proffer admissible expert opinion to support a finding that talcum powder use specifically caused her ovarian cancer. If such uncertainty is indeed reality, then how can any Plaintiff here meet her burden on the merits of her claim?[6]

---

1 Exhibit A at 3 (Memorandum Opinion on Motion for the Entry of an Order to Show Cause, *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 16-2738 (MAS) (RLS) (D.N.J. July 22, 2026)).

2 *Id*. at 4.

3 *Id.*

4 *Id*. at 12 & n.9.

5 Exhibit B at 2 (Order to Show Cause, *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 16-2738 (MAS) (RLS) (D.N.J. July 22, 2026)).

6 *Id.* at 20.

On July 27, 2026, following the MDL court's grant of the order to show cause requested by J&J, the plaintiffs agreed to a settlement with J&J. The J&J press release announcing the settlement states:

> After decades of litigation and full vetting of the science in an extensive hearing, plaintiffs effectively conceded their inability to prove specific causation by withdrawing their experts on the topic in two bellwether cases. In a watershed moment, the Court thereafter ordered plaintiffs to show why the remaining claims should not be dismissed, confirming what we have maintained for years: that these claims lack scientific merit and were sustained only by unreliable expert opinions that could not survive rigorous judicial review. The Court's order placed plaintiffs in an untenable position of having to present specific causation evidence to maintain their claims that does not exist.. [7]

According to the press release, the settlement pays approximately $72,000 per ovarian cancer claimant.[8] But the TDPs in these cases propose allowing ovarian cancer claims in amounts far greater than the J&J settlement even though the claims against the debtor mining companies are far weaker and at best derivative of those against J&J, since any proof of causation would require yet an additional level of proof, putting into question the reasonableness and bona fides of the Plans' and TDPs' proposed payouts to claimants.[9]

***Impact of the MDL court's order to show cause on plan confirmation***

We believe the withdrawal of the MDL plaintiffs' causation experts, the MDL court order to show cause, and the parties' announced settlement are relevant to the issues before this Court on plan confirmation.

---

7 https://www.jnj.com/media-center/press-releases/johnson-johnson-announces-a-proposed-resolution-of-ovarian-talc-litigation (a PDF copy attached hereto as **Exhibit C**).

8 *See id.* (global settlement of $5.5 billion to settle all of the remaining 76,000 ovarian cancer claims in the MDL).

9 *See Trust Distribution Procedures*, at 51, 60 (Dkt. No. 8070-1) (setting out the expedited payment amounts for ovarian cancer claims and the average and maximum amounts from individual review for ovarian cancer claims).

First, this failure of proof in the underlying tort actions underscores the need for an express reservation of insurers' rights in the Plans and/or confirmation order that makes it absolutely clear that the insurers are not bound by any determinations made by the Trust pursuant to the TDPs, particularly when a claim is allowed by the Trust without any consideration of causation defenses. Plan Proponents' witnesses all acknowledged during the confirmation hearing that the TDPs did not require any proof of causation as a precondition to a claimant receiving payment.[10] Although Debtors arguably could agree, as part of a settlement with the TCC, FCR, and claimants, to voluntarily pay their own money and assets to talc claimants without requiring proof of causation, awards to claimants by the 524(g) Trust without any proof of causation cannot form a basis of an insurance claim that insurers could be called upon to pay.[11] Rather, as the Court appeared to recognize,[12] the insurers could not be bound by such awards, and their rights to assert all of Debtor's liability defenses, including lack of specific causation, must be expressly preserved. The Plans and/or confirmation order should also contain clear, unambiguous language preserving the insurers' rights to assert breach of contract claims

---

[10] Tr. of Confirmation Hearing, Feb. 4, 2026, at 85:7-21 (Cyprus FCR Mr. Frankel admitting that the TDP "does not require that the talc causes the disease that you're referring to"); Tr. of Confirmation Hearing, April 22, 2025 at 123:3-13 (Mr. Van Meter of Imerys acknowledging that, pre-petition, Imerys asserted causation defenses in the tort system, including specific causation); Tr. of Confirmation Hearing, April 24, 2025 at 165:17-166:19 (Mr. Baker of Cyprus admitting that the TDP does not permit the trust to assert tort system defenses like lack of causation); *See also* Tr. of Confirmation Hearing, Feb. 6, 2026, at 185:21-23 (insurers' closing argument).

[11] *See, e.g.*, *id.* at 198:4-199:12.

[12] *See* Tr. at 198:22-199:5 ("If the parties have described this to me as a settlement between the trust and the claimants, I don't see how you're [sic; should be "your"] right to raise that issue could be taken away. I don't see how the insurers – there's no causation here, and that's fine for these debtors and these claimants to agree to but I don't understand how that defense gets taken away. I think the insurers have a right to raise any and all defenses. They weren't a part of the settlement. They didn't agree to it.").

against Debtors and the Trust for how they have proceeded, the agreement they struck without insurer input or consent, and if they present claims to the insurers based on allowance to talc claims without any proof of causation.[13]

Second, the developments in the MDL raise a number of other issues for this Court and the parties warranting consideration before any order on the pending motions for confirmation. Those issues include:

- Does the MDL court's order to show cause support designation of votes by holders of gynecological cancer claims, to the extent that such persons do not have claims against Debtors' estates due to an inability to prove specific causation?
- Should the Court approve TDPs that allow payment to persons who are unable, consistent with the requirements of Rule 702 of the Federal Rules of Evidence, to prove specific causation?
- Do plans of reorganization that pay millions of dollars to tort claimants who are unable to prove specific causation meet the requirements of 11 U.S.C. § 1129(a)(3)?
- Should the Court give mesothelioma claimants an opportunity, after appropriate disclosure of the MDL court's order to show cause and any subsequent rulings, to change their votes which previously approved sharing of Debtors' assets with gynecological cancer claimants?
- Is a settlement, embodied in the Plans and TDPs, that proposes to pay millions of dollars to claimants without a cognizable claim "fair and equitable" as required under 11 U.S.C. § 524(g)(4)(B)(ii)?

---

[13] *See id.* at 200:24-201:21 (Court stating "I don't think there's any law that would say that there's immunity [from insurer breach of contract claims] because you've used the TDP").

- Given the causation issues identified by the MDL court, should there be separate FCRs for Fund A Claims and Fund B Claims and a reassessment of the assets being provided to holders of Fund A Claims versus holders of Fund B Claims?
- Should the Court order supplemental briefing on the above issues and any other issues emanating from the MDL court's order to show cause?
- Should plan confirmation be held in abeyance pending further developments in the MDL case?

These are all important, weighty issues on which the Court should hear from the parties before issuing a ruling on whether the Debtors' pending plans should be confirmed.

***Request for judicial notice***

To the extent necessary, the insurers ask the Court to take judicial notice, under Rule 201 of the Federal Rules of Evidence, of the MDL court's issuance of the attached memorandum opinion and order of the MDL court and the contents of both documents.

***Conclusion***

WHEREFORE, Insurers request that the Court enter an order as follows:

1. Scheduling a status conference to discuss the implications of the MDL court's memorandum opinion and order to show cause as it relates to Debtors' pending requests to confirm the Imerys Plan and the Cyprus Plan;

2. Holding in abeyance any ruling on whether to confirm Debtors' respective plans of reorganization until after such status conference;

3. Ordering such supplemental briefing as the Court may find desirable, either before or after the status conference;

4. To the extent necessary, taking judicial notice of the MDL court's memorandum opinion and order of the MDL court and the contents of both documents; and

5. Such other and further relief as the Court may find is just, proper, and equitable.

DATED: July 30, 2026

Respectfully submitted,

By: /s/ Stamatios Stamoulis
Stamatios Stamoulis (#4606)
STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
E-mail: stamoulis@swdelaw.com

Andrew Frackman (pro hac vice)
Tancred Schiavoni (pro hac vice)
Adam Haberkorn (pro had vice)
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, 17th Floor
New York, New York 10019
Telephone: 212 326 2000
E-mail: afrackman@omm.com
tschiavoni@omm.com
ahaberkorn@omm.com

*Attorneys for RMI Insurers, defined as Columbia Casualty Company, Continental Casualty Company, in its own right, and as successor to CNA Casualty of California, The Continental Insurance Company, and as successor in interest to certain insurance policies issued by Harbor Insurance Company, Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company), National Union Fire Insurance Company of Pittsburgh PA, and Lexington Insurance Company to the extent they issued policies to Cyprus Mines Corporation prior to 1981; and AIU Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, Granite State Insurance Company, The Continental Insurance Company, as successor*

*to The Fidelity and Casualty Company of New York and as successor in interest to certain policies issued by London Guarantee & Accident of New York, and Republic Insurance Company to the extent they issued policies to Standard Oil of Indiana prior to 1986*

Timothy S. Martin
Michael Ingrassia
WHITE AND WILLIAMS LLP
Courthouse Square
600 N. King Street, Suite 800
Wilmington, Delaware 19801
Phone: (302) 654-0424
E-mail: martint@whiteandwilliams.com

Mark D. Plevin (admitted *pro hac vice*)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California 94104
Phone: (202) 580-6640
E-mail: mplevin@plevinturner.com

Tacie H. Yoon (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, DC 20006
Phone: (202) 580-6640
Email: tyoon@plevinturner.com

*Attorneys for Century Indemnity Company, in its own right and as successor to CCI Insurance Company, as successor to Insurance Company of North America; Oakwood Insurance Company, as successor by merger to Central National Insurance Company of Omaha, but only as respects policies issued through Cravens, Dargan & Company, Pacific Coast; and Federal Insurance Company*

Marc Casarino
KENNEDYS LLP
1105 North Market Street, Suite 1500
Wilmington, Delaware 19801
Phone: 302-504-7823

Fax: 215-731-3777
mcasarino@kennedys.com

George R. Calhoun (admitted *pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Phone: (202) 525-4147
george@ifrahlaw.com

*Attorneys for TIG Insurance Company, as successor by merger to International Insurance Company, International Surplus Lines Insurance Company, Mt. McKinley Insurance Company (formerly known as Gibraltar Insurance Company), Fairmont Premier Insurance Company (formerly known as Transamerica Premier Insurance Company), Everest Reinsurance Company (formerly known as Prudential Reinsurance Company), and The North River Insurance Company*